Shahrad Milanfar (SBN 201126)
smilanfar@bkscal.com
Alex P. Catalona (SBN 200901)
acatalona@bkscal.com
BECHERER KANNETT & SCHWEITZER
1255 Powell Street
Emeryville, CA 94608
Telephone: (510) 658-3600
Facsimile: (510) 658-1151

Attorneys for Defendant
PRECISION VALVE & AUTOMATION, INC.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RUBEN JUAREZ, an individual and ISELA HERNANDEZ, an individual,<br><br>Plaintiffs,<br><br>PRECISION VALVE & AUTOMATION, INC., a corporation and DOES 1-20,<br><br>Defendants. | CASE NO. CV17-03342-ODW (GJSX) [L.A.S.C. Case No. BC650229]<br><br>**DEFENDANT PRECISION VALVE & AUTOMATION, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**<br><br>Date:        October 1, 2018<br>Time:        1:30 p.m.<br>Ctrm:        5D, 5th Floor<br>Judge:        Hon. Otis D. Wright II<br><br>*This motion is made following the conference of counsel pursuant to L.R. 7-3 which took place on July 16, 2018. (Catalona Dec., 9:9-17, 690-694.)<br><br>**Defendant requests oral argument on this motion for summary judgment. |

Becherer
Kannett &
Schweitzer

1255
Powell St.
Emeryville, CA
94608
510-658-3600

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Becherer Kannett & Schweitzer**

———

1255
Powell St.
Emeryville, CA
94608
510-658-3600

# TABLE OF CONTENTS

I.      INTRODUCTION…………………………….......……………………....1

II.     STATEMENT OF FACTS………………………………………………..2

  A. The Parties……………………………………………………………..2

  B. The PVA 350………………………………………………………......2

  C. SpaceX…………………………………………………………………3

  D. Ruben Juarez…………………………………………………………..4

  E. The Alleged Injuries…………………………………………………....5

  F. The Workers' Compensation Action……………………………………6

  G. SpaceX's MSDS Sheets………………………………………………..7

  H. Plaintiffs' Efforts To Determine The Cause of Juarez's Headaches and
     Other Symptoms………………………………………………………..8

  I. Plaintiffs' Lawsuit……………………………………………………...9

III.    POINTS AND AUTHORITIES……………………………………….10

  A. Standard for Summary Judgment……………………………………..10

  B. Summary Judgment Should Be Granted Because Plaintiffs' Lawsuit
     Is Barred By California's Two-Year Statute Of Limitations…………....11

  C. Partial Summary Judgment Should Be Granted On Plaintiffs'
     Failure To Warn Claims………………………….……………………..22

  D. Partial Summary Judgment Should Be Granted On Plaintiffs' Strict
     Product Liability Cause of Action……...…………………………….....23

IV.     CONCLUSION…………………………………………………………24

# TABLE OF AUTHORITIES

*Cases*

**FEDERAL CASES**

*Anderson v. Liberty Lobby, Inc.*

477 U.S. 242 (1986) ...…………………………..………………………11

*Celotex v. Catrett*

477 U.S. 317 (1986)……………………………..………………………10

*Clark v. Prud. Ins. Co.*

940 F.Supp.2d 186 (D. N.J. 2013)…………………………………….12

*Coleman v. Quaker Oats Co.*

232 F.3d 1271 (9th Cir. 2000)…………………………………………10

*Fairbank v. Wunderman Cato Johnson*

212 F.3d 528 (9th. Cir. (Cal.) 2000)…………………………………10

*In re Lewis*

97 F.3d 1182 (9th Cir. 1996)………………………………………...11

*Maldonaldo v. Harris*

370 F.3d 945 (9th Cir. (Cal.) 2004)……………………..……………...16

*Migliori v. Boeing*

114 F.Supp.2d 976 (C.D. Cal. 2000)………………………………..12

*Motus v. Pfizer Inc.*

358 F.3d 659 (9th Cir. (Cal.) 2004)…………………………………….23

*Navajo Nation v. U.S. Forest Serv.*

535 F.3d 1058, 1080 (9th Cir. 2008)…………………………….18, 23

*Net-Com Services, Inc. v. Eupen Cable USA, Inc.*

2013 WL 12131179, *5 (C.D. Cal. 2013)…………………………..12

*Nilsson, Robins, Dalgren, Berliner, Carson & Wurst v. Louisiana Hydrolec*

854 F.2d 1538 (9th Cir. 1988)………………………………………11

**Becherer
Kannett &
Schweitzer**

1255
Powell St,
Emeryville, CA
94608
510-658-3600

1

2  *Pineda v. Golden Valley Health Centers*

3      2012 WL 2617589, \*3 (E.D. Cal. 2012)...............................................21

4  *Pooshs v. Altria Group, Inc.*

5      331 F.Supp.2d 1089 (N.D. Cal. 2004)................................................12

6  *Rogan v. City of Boston*

7      267 F.2d 24 (1st Cir. 2001)...........................................................11

8  *Scott v. Harris*

9      550 U.S. 372, 380 (2007).........................................................11, 20

10 *Taylor v. List*

11     880 F.2d 1040 (9th Cir. 1989).......................................................11

12

13 **STATE CASES**

14 *Alexander v. Exxon Mobil*

15     219 Cal.App.4th 1236 (2013).........................................................21

16 *Johnson v. American Standard, Inc.*

17     43 Cal.4th 56 (2008)................................................................23

18 *April Enterprises, Inc. v. KTTV*

19     147 Cal.App.3d 805 (1983)...........................................................20

20 *Bernson v. Browning-Ferris Indust. Of Cal., Inc.*

21     7 Cal.4th 926 (1994)................................................................12

22 *Contois v. Aluminum Precision Products, Inc.*

23     2008 WL 5065108 (Cal. Ct. App. 2008)................................................23

24 *Fox v. Ethicon Endo-Surgery, Inc.*

25     35 Cal.4th 797 (2005)...........................................................12, 18

26 *Gonzales v. Texaco, Inc.*

27     2007 WL 4044319 (Cal. Ct. App. 2007)................................................12

28

**Becherer
Kannett &
Schweitzer**

1255
Powell St.
Emeryville, CA
94608
510-658-3600

*Grisham v. Phillip Morris U.S.A., Inc.*

   40 Cal.4th 623 (2007)……………………………………………..12

*Hart v. Robert Bosch Tool Corp.*

   2010 WL 3566715 (Cal. Ct. App. 2010)…..………………………..23

*Heimuli v. Lilja*

   2012 WL 2520907 (Cal. Ct. App. 2012)…..………………………..19

*Jolly v. Eli Lilly & Co.*

   44 Cal.3d 1103 (1988)…………………………………………..17-21

*Leonard v. John Crane, Inc.*

   206 Cal.App.4th 1274 (2012)…………………………………….21

*Maldonado v. Medivators, Inc.*

   2017 WL 2774347 (Cal. Ct. App. 2017)…..………………………15

*Mangini v. Aerojet-General Corporation*

   230 Cal.App.3d 1125 (1991)…………………………………….14

*Meadows v. Laci Le Beau Corp.*

   2009 WL 2875344 (Cal. Ct. App. 2009)…..………………………12

*McCoy v. Gustafson*

   180 Cal.App.4th 56, 108 (2009)…………………………………14

*Meighan v. Shore*

   34 Cal.App.4th 1025 (1995)……………………………………...21

*Miller v. Lakeside Village Condominium Assn.*

   1 Cal.App.4th 1611 (1991)…………………………………..15, 17

*NBCUniversal Media, LLC. v. Superior Court*

   225 Cal.App.4th 1222 (2014)……………………………………12

*Nelson v. Indevus Pharmaceuticals, Inc.*

   142 Cal.App.4th 1202 (2006)……………………………………12

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Becherer Kannett & Schweitzer**

———

1255
Powell St.
Emeryville, CA
94608
510-658-3600

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

*Nguyen v. Western Digital Corporation*

229 Cal.App.4th 1522 (2014)……………………………………………………..21

*Norgart v. Upjohn Co.*

21 Cal.4th 383 (1999)………………………………………………...13-14, 16-18, 21

*O'Neil v. Crane Co.*

53 Cal.4th 335 (2012)……………………………………………………………..24

*Ramirez v. Plough, Inc.*

6 Cal.4th 539 (1993)……………………………………………………………….23

*Riggs v. 7-H Tech. Serv. Group, Inc.*

2006 WL 1720432 (Cal. Ct. App. 2006)…..…………………………………..12

*Rivas v. Safety Kleen Corp.*

98 Cal.App.4th 218 (2002)……………………………………………..15, 16, 19

*Rosas v. BASF Corporation*

236 Cal.App.4th 1378 (2015)…………………………………….…..15, 19, 21

*Scheiding v. Dinwiddie Construction Company*

69 Cal.App.4th 64 (1999)……………………………………………………..10

*Shields v. Hennessy Industries*

(2012) 205 Cal.App.4th 782……………………………………………………24

*Simpson v. Robert Bosch Tool Corp.*

2014 WL 985067 (Cal. Ct. App. 2014)…..……………………………………14

*Tellez-Cordova v. Campbell–Hausfeld/Scott Fetzger Co.*

129 Cal.App.4th 577 (2004)……………………………………………………...24

*Temple v. Velcro USA, Inc.*

148 Cal.App.3d 1090 (1983)……………………………………………………..22

*Treatt USA v. Superior Court*

2015 WL 5895495 (Cal. Ct. App. 2015)…..………………………14-15, 19-21

**Becherer
Kannett &
Schweitzer**

1255
Powell St.
Emeryville, CA
94608
510-658-3600

*Tsaturyan v. Glaxosmithkline, LLC*

    2018 WL 1789379 (Cal. Ct. App. 2018)………...…………………………..21

*Ultimax Cement Mfg. Corp. v. Quikrete Companies, Inc.*

    2009 WL 4307082 (Cal. Ct. App. 2009)…………………………………19

*Viramontes v. Pfizer, Inc.*

    2015 9319497 (Cal. Ct. App. 2015)………...…………………………..12, 22

*Wilson v. Irwin*

    2017 WL 6048209 (Cal. Ct. App. 2017)…..…………………………..12


**FEDERAL RULE**

Fed.R.Civ.P. 56………………………………………………………...10, 11


**STATE STATUTES**

C.C.P. § 335.1…………………………………………………11, 12, 16, 22

C.C.P. § 340.8…………………………………………………........11-14, 20-22

C.C.P. § 474…………………………………………………………..14


**LEGISLATIVE HISTORY**

2002 Cal. Legis. Serv. Ch. 448 (S.B. 688), Legis. Hist. of C.C.P. § 335.1………..16

Stats. 2003 c. 873 (S.B.331), Legis. Hist. of C.C.P. § 340.8………………………13

**Becherer
Kannett &
Schweitzer**
_____
1255
Powell St.
Emeryville, CA
94608
510-658-3600

# I.    INTRODUCTION

Plaintiffs' lawsuit is unquestionably barred by the statute of limitations because although they knew the basis for their claims in 2012, they did not file their complaint until 2017, long after the two-year period of limitations had expired.

And in 2014, also more than two years before suit was filed, plaintiff Ruben Juarez ("Juarez" or "plaintiff") filed his workers' compensation action for the same injuries caused by the same chemicals plaintiffs allege against Precision Valve & Automation, Inc. ("PVA") in this case.  In the workers' compensation action, plaintiff attributed his symptoms—migraine headaches, dizziness, difficulty walking and sinus symptoms—to exposure from PVA's machine which he complained was "hazardous" because it lacked an alarm to warn users when the exhaust system was not in operation.  This is the same product defect claim alleged in the complaint against PVA.

Plaintiffs have no explanation for why their lawsuit was filed after their statutory deadline expired.  They suggest they were unaware that the chemicals used in the machine were hazardous until Juarez's attorneys obtained Material Safety Data Sheets ("MSDS") in May, 2015.  But these same MSDS sheets were always available on the computer which sat on plaintiff's desk at SpaceX, as well as in a three-ring binder a few feet away.  According to his department supervisor, Juarez regularly used these same MSDS sheets as part of his job from 2012 to 2014.  Clearly, Juarez knew at the time that the chemicals he was using were hazardous, and the MSDS sheets are just a strategy to avoid having his untimely lawsuit dismissed.

But even if this explanation is accepted for the sake of argument, it is beyond dispute that plaintiffs did not exercise reasonable diligence in determining the cause of their injuries.  In verified responses to interrogatories, plaintiffs admitted that they never tried to determine the cause of their injuries that started in 2012, *even after filing their workers' compensation action in 2014*, which by itself is

Becherer
Kannett &
Schweitzer

1255
Powell St.
Emeryville, CA
94608
510-658-3600

"definitive proof" under California law that they knew the basis for their claims at that time.  Plaintiffs or their attorneys could have easily asked SpaceX to provide the MSDS sheets, either before or after Juarez left his job, or they could have just downloaded them from any number of websites online.  Summary judgment is required because the incontrovertible evidence shows that plaintiffs were required to file their lawsuit no later than October of 2014, and that when it was eventually filed in 2017, it was barred, indisputably, by the 2-year statute of limitations.

The Court should also grant partial summary judgment on plaintiffs' failure to warn claims, and strict product liability claim which are also prohibited as a matter of law.

## II.   STATEMENT OF FACTS

### A. The Parties

Plaintiffs reside in Granada Hills, California, in the County of Los Angeles. (Please see PVA's Separate Statement of Uncontroverted Facts ("UF") 1.)  PVA is headquartered and incorporated in the State of New York.  (UF 2.)

### B. The PVA 350

The PVA 350 is a conformal coating machine manufactured by PVA which is known in the industry as a "workcell." (UF 3.)  PVA sold a single PVA 350 to SpaceX in 2009.  (UF 4.)  This machine coats printed circuit boards with a thin polymeric film that "conforms" to the board's contours to protect against moisture, dust, chemicals and temperature extremes.  (UF 5.)  When it was manufactured, SpaceX specified that the machine would spray Electrolube "NVOC," a 100% solids content material that did not contain solvent material (such as Humiseal or Arathane.)  (UF 6.)

In any event, the PVA 350 was built with safety features to prevent users from breathing materials used inside the machine.  First, the machine monitored its exhaust flow and turned off if the exhaust system was not operating.  (UF 7.)  As

Becherer
Kannett &
Schweitzer

———
1255
Powell St.
Emeryville, CA
94608
510-658-3600

stated in the manual provided to SpaceX in 2009, it "must exhaust at a rate of no less than 150 cubic feet per minute, otherwise a critical fault will occur shutting the motors down." (UF 8.)  Second, the machine is a closed system with a door and negative air pressure to prevent chemicals from escaping.  (UF 9.)  If the door of the machine is opened, the spraying of materials will stop.  (UF 10.)  "When the door is opened power to the motors and pneumatics is disconnected."  (UF 11.)  Third, the machine cannot be operated until a machine safety check is performed which ensures that all safety features are working properly:  "The machine safety check ensures the workcell safety devices (emergency stop, door interlocks, light curtain, etc.) are operating properly.  During startup, the operator must enter the safety check and complete it successfully. Otherwise the machine halts all operations."  (UF 12.)

The machine's manual lists all of these features and explicitly warn users not to "disable the safety features of the machine." (UF 13.)  It also states:  "NOTE:  The safety features should NEVER be bypassed, disabled or tampered with.  Precision Valve & Automation, Inc. is not responsible for any damages incurred, mechanical or human, because of alteration or destruction of any safety features." (UF 14.)  "Operation of your workcell involves, air pressure, electrical power and mechanical devices *and the use of Hazardous materials*....  There are no dangerous materials or chemicals used in the operation of the machine *except for the required application material*.  The application material *should include a Material Safety Data Sheet (MSDS)*, which specifies known dangers and toxicity."  (UF 15 (emphasis added).)  Juarez testified that when he worked at SpaceX he never looked at this manual or asked to look at this manual for the PVA 350.  (UF 16.)

### C. SpaceX

SpaceX is a designer and manufacturer of advanced rockets and spacecraft. (UF 17.)  After purchasing the PVA 350 in 2009, SpaceX did not begin to use Humiseal or Arathane materials, which were not originally specified for the

Becherer
Kannett &
Schweitzer

————

1255
Powell St.
Emeryville, CA
94608
510-658-3600

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

machine, until 2012 at the earliest.  (UF 18.)  When SpaceX originally began using these chemicals, numerous employees from the Avionics department were brought together to determine the appropriate formulation of Arathane and Humiseal materials for SpaceX's conformal coating applications.  (UF 19.)  These employees included Ruben Juarez who Avionics Department supervisor Gregory Maxwell testified hand-mixed experimental and test batches of Arathane and Humiseal to make different formulations.  (EX. 20.)  Before hand-mixing these materials, Juarez reviewed the MSDS sheets for Arathane and Humiseal to ensure they cured and "set up" properly so SpaceX's desired result was achieved.  (UF 21.)

The Avionics Department also required workers who used the PVA 350, including Juarez, to follow SpaceX's "Standard Operating Procedures" entitled "Avionics Standard Operating Procedure: Polymeric Application of Electronic Assemblies."  (UF 22.)  These Standard Operating Procedures ("SOPs") instructed SpaceX employees to use a facemask and operate the machine in a well-ventilated area, pursuant to instructions in MSDS sheets for the specific coating materials that were used in the machine.  (UF 23.)  These SOPs also specified that the machine's coating materials included Humiseal 1A33 conformal coating and Humiseal 521 thinner.  (UF 24.)  These SOPs also instructed SpaceX employees to "[p]rogram the machine per operating instructions in the PVA Manual."  (UF 25.)  SpaceX maintained copies of all manufacturer manuals and specifications for its purchased equipment including the PVA 350.  (UF 26.)

**D. Ruben Juarez**

Ruben Juarez worked as a programmer at SpaceX from January, 2012 to the end of March, 2014.  (UF 27.)  During this entire period, his job duties never changed.  (UF 28.)  Juarez testified that his job was to program the PVA 350, for which he was its "main support."  (UF 29.)  Plaintiffs also admitted in their complaint that "[d]uring Plaintiff Ruben Juarez's time at Space X, Plaintiff Ruben Juarez was *in charge of* programming the PVA 350 to spray Arathane 5750A,

Becherer
Kannett &
Schweitzer
———
1255
Powell St.
Emeryville, CA
94608
510-658-3600

Arathane 5750B, Arathane 5750 A/B, and Humiseal thinner."  (UF 30 (emphasis added).)

This required Juarez to spend 60% of his time inside the conformal coating room which housed the machine.  (UF 31.)  He testified that he was actually required to work *inside the machine* itself to verify the appropriate thickness of the coatings sprayed on SpaceX components.  (UF 32.)  Throughout his time with SpaceX, he worked with one of the conformal coating materials, Humiseal thinner 521, on a daily basis.  (UF 33.)  Later, he also programmed other machines called "SMT" or "pick and place" machines, but he did not know when this work began during his more than two years at SpaceX.  (UF 34.)

**E. The Alleged Injuries**

Mr. Juarez testified that within "two weeks" after starting at SpaceX, he began to be exposed to "toxic chemicals" when he started programming the PVA 350.  (UF 35.)  Then, in August or September of 2012, he started getting migraine headaches, dizziness, sinus symptoms and difficulty walking.  (UF 36.)  In the complaint, plaintiffs allege that starting in June, 2012, Juarez had "over 9 hospitalizations" and "at least 21 visits to urgent care/emergency room for symptoms associated with toxic chemical exposure."  (UF 37.)

He told neurologist Isaac Regev, M.D., that "almost from the beginning he noted frequent headaches at work which he felt was associated with exposure to various chemicals."  (UF 38.)  He made similar statements to psychologist Gayle K. Windman, Ph.D.:  "*A few months after he began working at SpaceX,* Mr. Juarez developed symptoms of migraine headaches, dizziness, difficulty walking and sinus symptoms due to exposure to electronic materials such as tin and lead; *chemical coatings such as Arathane and Humiseal*; and cleaning substances such as thinners and isopropyl alcohol.  *He reported this issue to his supervisor to no avail.*"  (UF 39 (emphasis added).)  In particular, he was upset that the safety features of the

Becherer
Kannett &
Schweitzer

————
1255
Powell St.
Emeryville, CA
94608
510-658-3600

PVA 350 were being bypassed which he determined was "hazardous":

> So sometimes you have to open it. And in normal conditions, it should have shut down, not allow you to work on the machine. But somebody will *bypass the safety switch.*
>
> Q. So what does that mean? The machine would operate while –
>
> A. While you open it, while it's still open, *which is hazardous.* But that's the way they work.

(UF 40 (emphasis added).) He also told his toxicologist that "my employer bypass the safety switch" on this equipment. (UF 41.) After reporting this issue to his employer, he also asked SpaceX to "upgrade" the PVA 350 which he felt should "have the alarm to know when the suction was working or not" which was necessary "to advise the operator that the suction system was not working or pulling all of the fumes out of it." (UF 42.) As far as he knew, SpaceX never addressed any of his concerns. (UF 43.) Eventually, he purchased a "separate standalone filtration system" for the conformal coating area "because the fumes can be pretty strong." (UF 44.) Humiseal thinner, which he reportedly handled on a daily basis, was both a cleaning agent and a conformal coating material. (UF 45.) On a medical-intake form, he stated that he worked with the Arathane and Humiseal products for 4-5 hours every day, which caused headaches, dizziness, nausea, eye irritation and tiredness. (UF 46.)

Then in January, 2013, he was diagnosed with a brain aneurysm and had brain surgery. (UF 47.) Due to his illness and surgery, Ruben Juarez missed 33.6 weeks of work in 2013 and did not return to work after taking a third medical leave on March 26, 2014. (UF 48.)

### F. The Workers' Compensation Action

Plaintiff filed his workers' compensation action on September 24, 2014, claiming his headaches and aneurysm were caused by "repetitive and continuous exposure" to toxic substances. (UF 49.) On February 3, 2015, he told Neurologist

**Becherer
Kannett &
Schweitzer**

————

1255
Powell St.
Emeryville, CA
94608
510-658-3600

Isaac Regev, M.D. that "almost from the beginning he noted frequent headaches at work and he believed they were associated with chemicals used to clean electrical parts." (UF 50.)  He admitted at his deposition in this action that by this time he suspected his headaches and other symptoms were caused by "toxic exposure." (UF 51.)  These cleaning agents included Humiseal thinner 521 which he used to "soak parts to be cleaned" and to "flush equipment" (UF 52), but he also used this thinner as a conformal coating material in the PVA 350.  (UF 53.)  Humiseal thinner 521 was the only "thinner" Juarez used at SpaceX (UF 54), and it is also the only thinner plaintiffs allege Juarez used in the PVA 350.  (UF 55.)

In his February 3, 2015 report, Dr. Regev recommended Juarez should be "seen by a toxicologist with the MSDS and working environment analysis."  (UF 56.)  On March 3, 2015, Juarez emailed Jane Malubag in SpaceX's human resources department to get copies of the MSDS sheets for "1.  Arathane two part mix.  2.  Thinner 521.  3.  63/67 Eutectic solder wire.  4.  Humiseal 1A33 conformal coating.  5.  Isopropyl alcohol (IPA)."  (UF 57.)  These MSDS sheets were then provided to Ruben Juarez's workers' compensation attorneys.  (UF 58.)[1]  Plaintiffs allege that it was not until then that Juarez "first suspected that the PVA 350 might have caused his injuries."  (UF 60.)[2]

### G. SpaceX's MSDS Sheets

The MSDS sheets for all chemicals used in the conformal coating rooms, including Humiseal and Arathane, were accessible on the computer Juarez used at his workstation and in a three-ring binder kept 3-4 feet from the PVA 350.  (UF 62.)  SpaceX complied with its own internal rules which required MSDS sheets to

---

[1] Copies of the MSDS sheets plaintiff received are attached to this motion as Exhibits 48 through 55.  (UF 59.)

[2] In their original complaint filed in the state court action, plaintiffs alleged that "[p]laintiff RUBEN JUAREZ did not suspect that *the chemicals* may have caused his injuries until March of 2015 when he, for the first time, received the MSDS *of the chemicals*."  (UF 61 (emphasis added).)

Becherer
Kannett &
Schweitzer

———

1255
Powell St.
Emeryville, CA
94608
510-658-3600

"be readily accessible to employees in their work area during all work shifts."  (UF 63.)  The MSDS sheets were also accessible on at least 14 to 18 different computers located inside and outside the conformal coating rooms where Mr. Juarez worked.  (UF 64.)  Juarez consulted the MSDS sheets for Humiseal and Arathane to create experimental and test batches of these materials when SpaceX created the formula it started using in PVA's machine in 2012.  (UF 65.)  On January 20th, 2012, Juarez successfully completed SpaceX's training course entitled "Hazard Communication" during which he was taught that SpaceX's MSDS sheets were "readily accessible to employees in their work area during all work shifts" and were also "always available in our online archive as well as in the big blue MSDS books in the kitchen area."  (UF 66.)  Throughout this time period up until the complaint was filed, MSDS sheets, including for Arathane and Humiseal products, could be downloaded from multiple websites online.  (UF 67.)

In spite of all this, Juarez testified that he could not remember ever seeing the MSDS sheets, or asking to see the MSDS sheets, when he worked at SpaceX.  (UF 68.)

### H. Plaintiffs' Efforts To Determine The Cause of Juarez's Headaches and Other Symptoms

In interrogatories, PVA asked plaintiffs to "DESCRIBE in detail everything YOU did to determine what caused [plaintiffs'] injuries which are alleged in the COMPLAINT . . . including but not limited to any investigation, research, internet research, questions, and communications."  (UF 69.)  As used in the interrogatory, the term "YOU" was defined as plaintiffs Ruben Juarez and Isela Hernandez, and "anyone acting on [their] behalf, including, but not limited to, attorneys, investigators, insurers, and any other agents."  (UF 70.)  In response to these interrogatories, plaintiffs admitted that the only investigation they did was:  "going to see his doctors."  (UF 71.)  PVA also asked plaintiff Isela Hernandez to identify the injuries she suffered which are the basis for her loss of consortium claim

Becherer
Kannett &
Schweitzer

1255
Powell St.
Emeryville, CA
94608
510-658-3600

including "the date(s) the injury took place."  (UF 72.)  In response, plaintiff Hernandez stated that her "loss of love, care [and] companionship" was "derivative" of her husband's claim, and she could not otherwise say when her particular injuries took place.  (UF 73.)

PVA also asked plaintiffs to list all "EVIDENCE" which "establishes or in any way relates to whether plaintiffs' lawsuit is barred by the two-year statute of limitations."  (UF 74.)  "EVIDENCE" was defined as "any facts, witnesses (including contact information), statements, video, pictures, photos, recordings, documents, writings, depositions, transcripts, interviews, data, compilations, reports, productions and any other evidence of any kind whatsoever."  (UF 75.)  In response, plaintiffs identified only "[p]laintiff's medical records, the MSDS of the pertinent chemicals, and the email from Plaintiff to his HR, asking for a disclosure of the MSDS" as well Mr. Juarez's two days of deposition testimony with exhibits in this case, and PVA's document production.  (UF 76.)[3]

### I.  Plaintiffs' Lawsuit

On February 28, 2017, plaintiffs filed their state court action that PVA removed to this Court.  (UF 78.)  In the operative complaint, plaintiffs allege that the PVA 350 caused Juarez to be exposed to Arathane and Humiseal because it did not "sound an alarm" or provide a warning "when the ventilation/exhaust is not in operation," and that defendant PVA "trained" Juarez "to stick his head into the spraying chamber of the conformal coating machine."  (UF 79.)  Other than undisclosed communications with his attorneys, Juarez testified at his deposition that he had no information to explain why he waited until February 27, 2017 to file his lawsuit in this case.  (UF 80.)

Becherer
Kannett &
Schweitzer

———

1255
Powell St.
Emeryville, CA
94608
510-658-3600

---

[3] Plaintiff Juarez asserted legal objections to the above interrogatories based on the attorney-client privilege and work product doctrine, but the only evidence withheld on this or any other ground was plaintiffs' attorney's personal "notes from speaking with the clients and witnesses."  (UF 77.)

## II. POINTS AND AUTHORITIES

### A.    Standard for Summary Judgment

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a); *see* Committee Notes on 2010 Amendment to Rule 56 ("'Shall' is restored to express the direction to grant summary judgment. . . . Restoring 'shall' avoids the unintended consequences of any other word.")  A motion for summary judgment serves to "pierce" the pleadings by putting the non-moving party to the test of affirmatively coming forward with sufficient evidence to support its claims at trial. *Celotex v. Catrett*, 477 U.S. 317, 322-323 (1986) ("[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."); *see also Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1291 (9th Cir. 2000)(holding plaintiff could not oppose summary judgment based on a factual theory not asserted in discovery because that "would prejudice the defendant.")

The moving defendant bears the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323.  On issues where the plaintiff bears the burden of proof at trial, the moving defendant has no initial evidentiary burden and must only, through argument, establish an absence of evidence in the record to support the plaintiff's case. *Id.* at 325.[4]  Where the moving defendant

Becherer
Kannett &
Schweitzer

―――――

1255
Powell St.
Emeryville, CA
94608
510-658-3600

---

[4] This is in contrast with California state law which arguably places an initial burden of production on the moving defendant. *Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 531-33 (9th. Cir. (Cal.) 2000) (rejecting *Scheiding v. Dinwiddie Construction Company,* 69

meets that initial burden, the burden shifts to the plaintiff to provide "significant probative evidence" to establish the existence of a genuine issue of material fact for trial. *In re Lewis*, 97 F.3d 1182, 1187 (9th Cir. 1996); *Anderson v. Liberty Lobby, Inc., supra,* 477 U.S. 242, 249-50 (1986). Plaintiffs may not oppose summary judgment based on "conclusory allegations, empty rhetoric, unsupported speculation, or evidence which, in the aggregate, is less than significantly probative." *Rogan v. City of Boston* 267 F.2d 24, 27 (1st Cir. 2001); *Taylor v. List*, 880 F.2d 1040, 1044 (9th Cir. 1989)(accord).) And although the non-moving party should be afforded inferences based on evidence in the record, those inferences must be reasonable: "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007); *Nilsson, Robins, Dalgren, Berliner, Carson & Wurst v. Louisiana Hydrolec*, 854 F.2d 1538, 1542 (9th Cir. 1988) ("The record made on summary judgment controls, not that record plus speculative inferences a trier of fact might add.")

## B. Summary Judgment Should Be Granted Because Plaintiffs' Lawsuit Is Barred By California's Two-Year Statute Of Limitations.

California has a two year limitations period in both the statute governing toxic exposure suits, Cal. Code of Civil Procedure ("C.C.P.") section 340.8, and the general product liability statute, C.C.P. section 335.1. Under section 340.8, toxic exposure suits must be filed within "two years from the date of the injury, or two years after the plaintiff becomes aware of, or reasonably should have become aware of, (1) an injury, (2) the physical cause of the injury, and (3) sufficient facts to put a reasonable person on inquiry notice that the injury was caused or contributed to by the wrongful act of another, whichever occurs later." (C.C.P. § 340.8(a).) Under

Cal.App.4th 64, 72 (1999) as "different in relevant respects from the standard under Fed.R.Civ.P. 56.")

Becherer
Kannett &
Schweitzer

―――――

1255
Powell St,
Emeryville, CA
94608
510-658-3600

the general product liability statute, section 335.1, plaintiffs must file suit within "two years" after plaintiffs "have reason to suspect that a type of wrongdoing has injured them."[5]

This deadline is subject to California's "delayed discovery" rule, *Gonzales v. Texaco, Inc.,* 2007 WL 4044319, *7 (Cal. Ct. App. 2007) ("Section 340.8(a) codified the discovery rule"), which is an "exception" to the affirmative defense of the statute of limitations. *Grisham v. Phillip Morris U.S.A., Inc.*, 40 Cal.4th 623, 634 (2007); *NBCUniversal Media, LLC. v. Superior Court*, 225 Cal.App.4th 1222, 1232 (2014). Because it is an exception, it is plaintiffs' burden to establish the delayed discovery rule applies. *NBCUniversal, supra,* 225 Cal.App.4th at 1232 (holding plaintiffs "have the burden of demonstrating their entitlement to delayed accrual of their causes of action."); *Migliori v. Boeing*, 114 F.Supp.2d 976, 982 (C.D. Cal. 2000) ("The plaintiff has the burden of showing that the discovery rule applies."); *Bernson v. Browning-Ferris Indust. Of Cal., Inc.*, 7 Cal.4th 926, 937 (1994) (promulgating new "standards emphasizing the burden on the plaintiff to demonstrate reasonable diligence.").[6]

Pursuant to the delayed discovery rule, a cause of action will not accrue until the plaintiff "has 'notice or information of circumstances to put a reasonable person on inquiry'; he need not know the 'specific 'facts' necessary to establish' the cause

---

[5] *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal.4th 797, 807 & 809, fn. 4 (2005); *see also Clark v. Prud. Ins. Co.*, 940 F.Supp.2d 186, 203-204 (D. N.J. 2013) (discussing *Fox*); *Pooshs v. Altria Group, Inc.*, 331 F.Supp.2d 1089, 1092 (N.D. Cal. 2004) ("In California, product liability claims are subject to a two-year statute of limitations. Cal. Civ. P. Code § 335.1.") Section 335.1 arguably applies to this case because PVA did not sell the allegedly "toxic substances" but a machine that plaintiff's employer used with those substances. There is no case which decides this issue but it "makes no difference," *Nelson v. Indevus Pharmaceuticals, Inc.*, 142 Cal.App.4th 1202, 1209, fn. 7 (2006), because "the analysis is the same under either two-year limitations period." *Riggs v. 7-H Tech. Serv. Group, Inc.*, 2006 WL 1720432, *3 (Cal. Ct. App. 2006.); *Viramontes v. Pfizer, Inc.*, 2015 9319497, *6, fn. 8 (Cal. Ct. App. 2015) (accord); *Meadows v. Laci Le Beau Corp.*, 2009 WL 2875344, *4 (Cal.Ct.App. 2009) (accord).

[6] *See also, e.g., Net-Com Services, Inc. v. Eupen Cable USA, Inc.*, 2013 WL 12131179, *5 (C.D. Cal. 2013) (accord); *Wilson v. Irwin*, 2017 WL 6048209, *5 (Cal. Ct. App. 2017) (accord).

Becherer
Kannett &
Schweitzer

1255
Powell St.
Emeryville, CA
94608
510-658-3600

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

of action." *Norgart v. Upjohn Co.*, 21 Cal.4th 383, 398 (1999) (citation omitted). As the California Supreme Court has explained:

> Under *Jolly* [*v. Eli Lilly & Co.*, 44 Cal.3d 1103 (1988)], which relies on decisions such as *Gutierrez* and *Sanchez*, the plaintiff discovers the cause of action when he at least suspects a factual basis, as opposed to a legal theory, for its elements, even if he lacks knowledge thereof — when, simply put, he at least 'suspects ... that someone has done something wrong" to him (*Jolly v. Eli Lilly & Co.*, supra, 44 Cal.3d at p. 1110), 'wrong' being used, not in any technical sense, but rather in accordance with its 'lay understanding' (*id.* at p. 1110, fn. 7). He has reason to discover the cause of action when he has reason at least to suspect a factual basis for its elements. (*Jolly v. Eli Lilly & Co., supra,* 44 Cal.3d at p. 1110.) He has reason to suspect when he has 'notice or information of circumstances to put a reasonable person on inquiry' (*id.* at pp. 1110–1111, italics in original); he need not know the 'specific 'facts' necessary to establish' the cause of action; rather, he may seek to learn such facts through the 'process contemplated by pretrial discovery'; but, within the applicable limitations period, he must indeed seek to learn the facts necessary to bring the cause of action in the first place — he 'cannot wait for' them 'to find' him and 'sit on' his 'rights'; he 'must go find' them himself if he can and "file suit" if he does (*id.* at p. 1111).

*Norgart, supra,* at 397-398 (parallel citations omitted); *See* Legis. Hist. of C.C.P. § 340.8, Stats.2003 c. 873 (S.B.331), § 1 (intent to codify *Jolly, supra* and *Norgart, supra.*)

Importantly, a plaintiff's actual (or purported) ignorance of his claims is irrelevant so long as "sufficient facts" are known which would "put a *reasonable person* on inquiry notice." C.C.P. § 340.8 (emphasis added). "Subjective suspicion is not required. If a person becomes aware of facts which would make a reasonably

Becherer
Kannett &
Schweitzer

————

1255
Powell St.
Emeryville, CA
94608
510-658-3600

prudent person suspicious, he or she has a duty to investigate further and is charged with knowledge of matters which would have been revealed by such an investigation." *McCoy v. Gustafson*, 180 Cal.App.4th 56, 108 (2009).[7]

In *Treatt USA v. Superior Court,* 2015 WL 5895495 (Cal. Ct. App. 2015), plaintiff Linares worked as "compounder" at a food flavoring plant which used chemicals manufactured by defendant Treatt USA, Inc. ("Treatt") *Id.*, at *1. From 1986 to 2011, he was exposed to Treatt's chemicals, including "diacetyl." *Ibid.* By 2009, doctors determined Linares had "obstructive lung disease" possibly caused by his "occupational exposure to toxins." *Id.*, at *8, and *13, fn. 11. He was prescribed albuterol and a QVAR inhaler to treat "any possible underlying component of occupational asthma," and told to wear a mask and avoid the areas of the plant where chemicals were mixed. *Id.*, at *3-*4. On June 20, 2012, more than two years later, plaintiff and his wife sued Treatt for selling diacetyl which caused his lung disease, Bronchiolitis Obliterans. *Id.*, at *1.

Treatt moved for summary judgment arguing plaintiffs' lawsuit was barred by the two-year statute of limitations in C.C.P. § 340.8. *Ibid.* Plaintiffs argued that although Linares knew he could have been injured by "exposure to production chemicals" he could "not recall being told to avoid any particular chemical, or

---

[7] See also *Treatt USA v. Superior Court*, 2015 WL 5895495, *8 (Cal. Ct. App. 2015) (holding cause of action accrues "even if the plaintiff himself is subjectively oblivious"); see also *Mangini v. Aerojet-General Corporation* 230 Cal.App.3d 1125, 1150 (1991) (accord; superseded by statute on different grounds.) "As a result, even 'a plaintiff who did not actually know that his rights were violated will be barred from bringing his claim after the running of the statute of limitations, if he should have known in the exercise of due diligence.'" *Simpson v. Robert Bosch Tool Corp.*, 2014 WL 985067, *4 (Cal. Ct. App. 2014) (citation omitted).

By requiring knowledge that a wrongful act was committed by "another," section 340.8 also codified the longstanding rule that a cause of action accrues even when the identity of the defendant is unknown: "[T]he plaintiff may discover, or have reason to discover, the cause of action even if he does not suspect, or have reason to suspect, the identity of the defendant . . . because the identity of the defendant is not an element of any cause of action." *Norgart, supra,* 21 Cal.4th at 399 (relying on C.C.P. § 474 which requires plaintiffs to sue unknown defendants as "Does.")

Becherer
Kannett &
Schweitzer

1255
Powell St.
Emeryville, CA
94608
510-658-3600

specifically to avoid diacetyl." *Id.*, *4.  Linares also testified that he never suspected "anyone had done anything wrong to cause him lung injury" until "2012, when a doctor told him 'he needed to get professional help for compensation for his injury.' *Id.*, at *5, *12.  "Linares never recall[ed] any doctor identifying his lung condition by name [and] still does not clearly understand the nature of his lung condition." *Id.*, at *5, *12.

When the trial court denied summary judgment, Treatt petitioned the appellate court for a peremptory writ of mandate which was granted. *Id.*, *14.  That court held "that no later than April 2009 . . . Linares was or reasonably should have been aware he had sustained appreciable lung injury caused, *at least in part, by occupational exposure to toxins*, and that a reasonable person in Linares' position would suspect or should have suspected wrongdoing.  Thus, the two-year limitation period expired before the action was filed on June 20, 2012." *Id.*, at *8 (emphasis added).  The Court found plaintiffs' claims, that Linares must actually know diacetyl caused his injuries and that he had a specific lung disease, to be "legally irrelevant." *Id.*, *10, *14; *see also Miller v. Lakeside Village Condominium Assn.*, 1 Cal.App.4th 1611 (1991) (discussed *infra*.)[8]

---

[8] The appellate court also distinguished *Rosas v. BASF Corporation*, 236 Cal.App.4th 1378 (2015) because in that case it was disputed whether the plaintiff suspected his disease was caused by "workplace exposure." *Treatt USA, Inc., supra*, at *11; *see also Rosas, supra*, at 1399 ("Rosas produced evidence that neither he nor his doctor definitively suspected a *workplace chemical exposure* as a cause of his disease." (emphasis added).)  The factual dispute in *Rosas* was created because Rosas' doctors had assured him that "chemical exposure [was] not causing his underlying disease." *Rosas, supra*, at 1396.  In both *Rosas* and *Treatt USA, Inc.*, the courts held that such a dispute was automatically eliminated by the filing of a workers' compensation action "based on exposure to toxic chemicals" because that "constituted further 'definitive proof that he had a suspicion that 'someone ha[d] done something wrong to [him]' long before [he filed] his civil complaint.'" *Treatt USA, Inc., supra*, at *9 fn. 10 (quoting *Rivas, infra*, 98 Cal.App.4th at 229); *Rosas, supra,* 236 Cal.App.4th at 1386, fn. 5, 1391 (quoting *Rivas*), 1397-99.  *See also Maldonado v. Medivators, Inc.*, 2017 WL 2774347, *10 (Cal. Ct. App. 2017) (further distinguishing *Rosas* because the chemicals plaintiff worked with, food flavorings, had at that time not yet been "recognized as being hazardous.")

Becherer
Kannett &
Schweitzer

———

1255
Powell St.
Emeryville, CA
94608
510-658-3600

In *Rivas v. Safety Kleen Corp.,* 98 Cal.App.4th 218 (2002), the court upheld a grant of summary judgment based on the former one-year statute of limitations[9] where the plaintiff believed his kidney injuries were caused by a solvent used at his job. *Id.*, 223. After receiving a kidney transplant in 1995, plaintiff consulted a workers' compensation attorney in September, 1996 to investigate the possibility that this solvent caused his kidney damage. *Ibid.* That same month, and more than a year before filing suit, he filed a workers' compensation action claiming his kidney disease was caused by workplace exposure to toxic fumes, gases, and liquids. *Id.*, 224.

Plaintiff argued the accrual of his cause of action was tolled until he was "explicitly informed" that defendant's "product caused the medical disorder" after he provided a "list of chemicals" to his workers' compensation doctor, or until he "had an opportunity to personally review medical records specifying the cause of the disorder." *Rivas, supra,* 98 Cal.App.4th at 223, 228. This argument was rejected and the appellate court concluded that even if plaintiff's doctors' conclusions were "ambiguous" regarding the cause of his injuries, and insufficient to "arouse a reasonable person's suspicion[,] the fact that he filed a workers' compensation claim . . . *based on exposure to toxic chemicals at work is definitive proof* that he had a suspicion that 'someone ha[d] done something wrong to [him]' long before his civil complaint was filed." *Rivas, supra,* at 228-229 (emphasis added).

In *Norgart v. Upjohn Co.*, 21 Cal.4th 383 (1999), the California Supreme Court held that defendant Upjohn was entitled to summary judgment based on the statute of limitations where the plaintiff suspected his daughter's suicide was

Becherer
Kannett &
Schweitzer

1255
Powell St.,
Emeryville, CA
94608
510-658-3600

___

[9] In 2003, California's statute of limitations for personal injury suits was amended to extend the limitations period from one to two years but has otherwise not been amended. *See* CCP § 335.1, Credits; 2002 Cal. Legis. Serv. Ch. 448 (S.B. 688) (discussed in *Maldonaldo v. Harris*, 370 F.3d 945, 954 (9th. Cir. (Cal.) 2004); *see also Miller, infra,* 1 Cal.App.4th at 1624 (also applying prior 1-year limitations period).)

caused by her psychiatrist's negligent prescription of "Halcion," defendant's drug, and the physical abuse by her husband, both of which occurred more than four years before plaintiff filed suit. *Id*., 406-407. Upjohn, the manufacturer of Halcion, was not required to show that the plaintiff suspected its drug was defective so long as he suspected the suicide was wrongfully caused by "someone": "He thereby expressly admitted – to quote *Jolly* again – that he 'suspect[ed] ... that someone,'" indeed two specific persons, "ha[d] done something wrong' to cause her death." *Norgart*, supra, 21 Cal.4th at 406 (quoting *Jolly*, *supra*, 44 Cal.3d at 1110; ellipses in original.)

In *Miller v. Lakeside Village Condominium Assn*., 1 Cal.App.4th 1611 (1991), the appellate court affirmed summary judgment based on the former one-year statute of limitations because it was undisputed that plaintiff suspected her injuries were caused by exposure to mold more than one year before filing suit. *Id*., 1624. There was also undisputed evidence that plaintiff was hospitalized for asthma and learned her condominium was contaminated with mold approximately two years before filing suit. *Id*., 1616-1617. Plaintiff argued the statute was tolled until she was diagnosed with immune dysregulation, the underlying medical condition which caused her asthma but the appellate court determined this was irrelevant: "She cites no authority for the proposition that a cause of action cannot accrue until a plaintiff can attach a medical diagnosis, whether correct or incorrect, to her condition, even though plaintiff suffers harm and is aware of its negligent cause." *Miller*, *supra*, 1 Cal.App.4th at 1625. The court concluded plaintiff's lawsuit was barred because "reasonable minds can draw only one conclusion" that more than one year before filing suit, the plaintiff "suffered appreciable and actual harm ... and was also aware of its negligent cause." *Id*. at 1624.

Here, plaintiff Juarez admitted that in January or February of 2012, two weeks after starting at SpaceX, he was exposed to toxic materials from PVA's machine. A few months later, he developed migraine headaches, dizziness,

Becherer
Kannett &
Schweitzer

1255
Powell St.
Emeryville, CA
94608
510-658-3600

difficulty walking and sinus symptoms *which he personally attributed to exposure to chemical coating materials Arathane and Humiseal*.  Then, starting in June, 2012, he allegedly had over 9 hospitalizations and at least 21 visits to urgent care/emergency room for symptoms associated with toxic chemical exposure.  He reported these issues to SpaceX who he felt should not have bypassed the machine's safety mechanisms and should have required an alarm system to prevent workers from using it without adequate ventilation.  He even purchased an air filtration system to reduce the exposure to these fumes by SpaceX employees.  Plaintiffs' lawsuit therefore accrued no later than October, 2012, which is the very latest he could have first suspected someone "had done something wrong" to cause his injuries.  UF 35-46; *Norgart, supra,* 21 Cal.4th at 406 (quoting *Jolly, supra,* 44 Cal.3d at 1110); *see also Fox, supra,* 35 Cal.4th at 808-809 (holding "a potential plaintiff who suspects that an injury has been wrongfully caused must conduct a reasonable investigation *of all potential causes* of that injury." (emphasis added).)

In fact, Ruben Juarez never wondered what caused his injuries.  He genuinely believed the PVA 350 was responsible because it did not have "an alarm" and there was nothing "to advise the operator that the suction system was not working or pulling all of the fumes out of it," which is the same factual theory his attorneys alleged against PVA in their complaint.[10]

But that is not all.  Because his headaches and related symptoms were totally disabling, Juarez stopped working at SpaceX in March, 2014 which was the last time he was employed by anyone.  Then in September, 2014, he filed his workers' compensation action for workplace "exposure to toxic chemicals" which under

Becherer
Kannett &
Schweitzer

_____

1255
Powell St,
Emeryville, CA
94608
510-658-3600

---

[10] Like the plaintiff in *Norgart* whose lawsuit against Upjohn accrued when he first suspected his injuries were caused by the negligence of his daughter's psychiatrist who prescribed Upjohn's drug, plaintiffs' lawsuit against PVA accrued when Juarez first suspected his injuries were caused by the negligence of his employer, SpaceX who caused his alleged exposure to toxic chemicals with PVA's machine.  *Norgart, supra,* 21 Cal.4th at 406; *see also Navajo Nation v. U.S. Forest Serv.*, 535 F.3d 1058, 1080 (9th Cir. 2008) (prohibiting parties from opposing summary judgment based on factual theories not alleged in the complaint.)

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

California law is "definitive proof that he had a suspicion that 'someone ha[d] done something wrong to [him]' long before his civil complaint was filed." *Rivas, supra,* 98 Cal.App.4th at 229.[11]  The chemicals he alleged in that action even included Humiseal thinner, which is one of the materials he used in PVA's machine.

The undisputed evidence also proves that plaintiffs did nothing to investigate the cause of their injuries, even after Juarez expressed his concerns about Humiseal, Arathane and the PVA 350 to his employer in 2012 and after filing his workers' compensation action for toxic chemical exposure in September, 2014.  (UF 38-39, 49, 69-71.)  By definition, plaintiffs' actions fail to establish the "diligence" necessary to avoid the statute of limitations.  "This duty to be diligent in discovering facts that would delay accrual of a cause of action ensures that plaintiffs who do 'wait for the facts' will be *unable to successfully avoid summary judgment against them on statute of limitations grounds*." *Heimuli v. Lilja*, 2012 WL 2520907, *6 (Cal. Ct. App. 2012) (emphasis added; citation omitted).

The fact that in March, 2015 SpaceX produced MSDS sheets to Juarez's attorneys is irrelevant, because plaintiffs are not permitted to "wait for facts to find them" and "sit on their rights." *Ultimax Cement Mfg. Corp. v. Quikrete Companies, Inc.*, 2009 WL 4307082, *4 (Cal. Ct. App. 2009) (quoting *Jolly v. Eli Lilly & Co.* 44 Cal.3d 1103, 1111 (1988).)  The MSDS sheets were always available at SpaceX either from SpaceX's online database on plaintiff's computer or in the three-ring binder nearby.  There was also nothing to prevent him or his attorneys from obtaining them once he left SpaceX, or simply downloading them from the internet.  Plaintiffs' reliance on the MSDS sheets fails because plaintiffs are not only held to their "actual knowledge," but to any "sources" of knowledge that are reasonably available. *Jolly, supra,* 44 Cal.3d 1103 at 1109; *Treatt USA,*

[11] It is also important that there is no evidence that Juarez's doctors assured him chemical exposure *was not* the cause of his injuries.  *See, e.g., Rosas, supra,* 236 Cal. App.4th at 1396 (discussed *infra*).  This would have been impossible because, as he admitted, none of his doctors were informed that he was "working with chemicals."  (UF 81.)

Becherer
Kannett &
Schweitzer

1255
Powell St.
Emeryville, CA
94608
510-658-3600

*Inc., supra*, at *12 (accord).

Plaintiffs will most likely argue that Juarez's failure to remember seeing the MSDS sheets at SpaceX creates a dispute of material fact.  (Catalona Dec., Ex. 30, 191:22-23, 192:13-18, 194:5-7.)  Not true.  Considering they were kept on his work computer and in a binder nearby, and that he actually used them as part of his job, and because he passed a "Hazard Communication" course which taught him they were "readily accessible to employees in their work area," the Court should not consider plaintiffs' version of events which "no reasonable jury could believe" because it is "utterly discredited by the record." *Scott v. Harris*, 550 U.S. 372, 380 (2007).  But even if this story were considered, it does not create a dispute of material fact because Juarez never actually disputed the MSDS sheets were available.  (Catalona Dec., Ex. 30, 192:13-18, 194:5-7.)  Although he testified that he could not *remember seeing them,* the fact that they were available remains undisputed: "In sum, Linares does not actually claim he never received or understood the communications he received from anyone from National Jewish [Hospital], *only that he 'does not recall' doing so.*  But Linares's lack of recollection does not constitute affirmative evidence raising a triable issue *concerning Treatt's evidence* that he did receive and understand the communications." *Treatt USA, Inc., supra,* 2015 WL 5895495, *12 (emphasis added); *see also Jolly, supra,* 44 Cal.3d at 1109 (imputing knowledge reasonably discoverable from available "sources.")

Plaintiffs may also suggest that it is somehow PVA's burden to prove plaintiffs are *not* entitled to benefit from the discovery rule because that rule is now codified in section 340.8 and is thus an "element" of that particular statute of limitations, an affirmative defense.  This is incorrect.  Plaintiffs' argument has been uniformly rejected because the discovery rule is an "exception" to the statute of limitations, and is therefore the plaintiffs' burden to prove, regardless of whether its source is a statute or the common law. *April Enterprises, Inc. v. KTTV,* 147

**Becherer Kannett & Schweitzer**

1255 Powell St. Emeryville, CA 94608 510-658-3600

Cal.App.3d 805, 833 (1983) ("It is plaintiff's burden to establish 'facts showing that he was not negligent in failing to make the discovery sooner and that he had no actual or presumptive knowledge of facts sufficient to put him on inquiry.'")
*Nguyen v. Western Digital Corporation*, 229 Cal.App.4th 1522, 1547, 1553 (2014) (holding one of the "purposes in enacting section 340.8 was to codify the discovery rule in cases involving exposures to hazardous materials and toxic substances" which "places the burden on the plaintiff to 'show diligence.'")  "[T]he language of section 340.8 is *not intended to create a special discovery rule of accrual* for claims predicated on exposure to hazardous substances but rather to clarify that California's traditional discovery rule applies to such claims."  *Tsaturyan v. Glaxosmithkline, LLC*, 2018 WL 1789379, *6, fn. 9 (Cal. Ct. App. 2018) (emphasis added; quoting *Alexander v. Exxon Mobil,* 219 Cal.App.4th 1236, 1252 (2013)); *See also Rosas v. BASF Corporation,* 236 Cal.App.4th 1378, 1390 (2015) ("The Legislature passed section 340.8 to codify for toxic torts the delayed discovery rule."); *Norgart, supra,* 21 Cal.4th 383, 397 (placing burden on plaintiffs for purposes of the discovery rule whether rule "expressed by the Legislature or implied by the courts.")[12]

Plaintiff Isela Hernandez's claim for loss of consortium is directly dependent upon plaintiff Juarez's claims for negligence and product liability, and thus "stands or falls with" those claims.  *Leonard v. John Crane, Inc.* 206 Cal.App.4th 1274 1288 (2012); *Meighan v. Shore* 34 Cal.App.4th 1025, 1034-35 (1995) ("Thus, an unsuccessful personal injury suit by the physically injured spouse acts as an estoppel that bars the spouse who would claim damages for loss of consortium."); *see also Pineda v. Golden Valley Health Centers*, 2012 WL 2617589, *3 (E.D. Cal. 2012) (accord); *Treatt USA, Inc., supra,* *8, fn. 9 (accord).  Even if Ms.

**Becherer Kannett & Schweitzer**

———

1255
Powell St.
Emeryville, CA
94608
510-658-3600

---

[12] But even if it were PVA's burden to *disprove* plaintiffs' delayed discovery theory, that burden is still met by PVA's undisputed evidence that the MSDS sheets were available and would have been discovered had a reasonable investigation been conducted.  *Jolly, supra,* 44 Cal.3d at 1109.

Hernandez's claim is analyzed on its own terms, it is still barred because a loss of consortium is legally presumed to accrue on "the date of injury which gives rise to the loss of consortium." *Viramontes v. Pfizer, Inc.*, 2015 WL 9319497, *11 (E.D. Cal. 2015.)  Plaintiff Hernandez's claim is thus equally untimely because it is legally presumed to have accrued when plaintiff Juarez's injuries developed by September, 2012 at the latest, and plaintiff Hernandez could provide no evidence that her injuries began at any other time.

Plaintiffs' claims accrued by either October, 2012 or September, 2014 at the absolute latest.  Plaintiffs' lawsuit was not filed until February 27, 2017 and is therefore barred by California's two-year statute of limitations as a matter of law. (C.C.P. § 340.8(a); C.C.P. § 335.1.)

### C.   Partial Summary Judgment Should Be Granted On Plaintiffs' Failure To Warn Claims.

Plaintiffs' failure to warn claims fail as a matter of law because PVA unquestionably provided warnings with its machine, and also because its warnings could not have caused plaintiffs' injuries as a matter of law because they were never read.  Here, plaintiffs allege the PVA 350 contained "no warning anywhere" about the fact that the machine was "designed to continue to spray chemicals even when the ventilation/exhaust is not in operation." (UF 82; Dec. of Catalona, 58:22-25, 63:15-25, 64:1-21.)   The undisputed evidence proves that this allegation is not true.  The PVA 350 contained safety features that prevented chemicals from being sprayed when its exhaust system was not in operation.  PVA's manual explicitly warned users (1) never to bypass, disable or tamper with this feature and (2) that while the materials used in the machine could be hazardous, those materials came with MSDS sheets that specified known dangers and toxicity.  The fact that these warnings, which were available, were "not on the product" is irrelevant. *Temple v. Velcro USA, Inc.*, 148 Cal.App.3d 1090, 1094-1095 (1983).  Summary judgment should be granted on plaintiffs' failure to warn claims because the undisputed

evidence negates the precise factual theory alleged. *Navajo Nation, supra,* 535 F.3d at 1080 (prohibiting oppositions to summary judgment motions based on factual theories not alleged in the complaint.)

These claims also fail as a matter of law because Juarez never read the PVA manual.[13] "There is no causation when the person to whom the warning is directed did not read the warning." *Contois v. Aluminum Precision Products, Inc.*, 2008 WL 5065108, *4 (Cal. Ct. App. 2008); *Ramirez v. Plough, Inc.*, 6 Cal.4th 539, 556 (1993) (unless the warnings are read, there can be "no conceivable causal connection between the representations or omissions that accompanied the product and plaintiff's injury"); *Hart v. Robert Bosch Tool Corp.*, 2010 WL 3566715, *5 (Cal. Ct. App. 2010) (accord); *Motus v. Pfizer Inc.*, 358 F.3d 659 (9th Cir. (Cal.) 2004)) (holding "the adequacy of Pfizer's warnings is irrelevant" unless they were read.)

Plaintiffs' failure to warn claims therefore fail for two reasons: (1) the undisputed evidence negates plaintiffs' legal theory alleged in the complaint, and (2) plaintiffs cannot establish the legal element of causation or that PVA's warnings were inadequate because they admittedly were never read.[14]

**D.   Partial Summary Judgment Should Be Granted On Plaintiffs' Strict Product Liability Cause of Action.**

The PVA 350 could have been used with virtually any liquid coating material including the non-solvent material, Electrolube's NVOC, that SpaceX specified would be used in the machine when it was sold. Under California law, a product

---

[13] The undisputed evidence also establishes that the PVA manual was available and Juarez was explicitly instructed by his employer to use the manual to program PVA's machine.

[14] The MSDS sheets, provided by the third party suppliers of Arathane and Humiseal materials, also negate plaintiffs' failure to warn claims because they contained admittedly adequate warnings regarding the toxic nature of those substances, and were at all times reasonably accessible on Mr. Juarez's computer and the three ring binders in his department. *Johnson v. American Standard, Inc.*, 43 Cal.4th 56, 61-62 (2008) (HVAC worker's failure to warn claims against air conditioner manufacturer defeated by warnings contained in available MSDS sheets for refrigerant "R-22," used in machine.)

Becherer Kannett & Schweitzer

———

1255 Powell St., Emeryville, CA 94608 510-658-3600

manufacturer may be held *strictly* liable for an injury producing material used in conjunction with its product that it neither manufactured, sold nor supplied, but only if the two products must "necessarily" be used "together." *O'Neil v. Crane Co.*, 53 Cal.4th 335, 361 (2012); *Shields v. Hennessy Industries,* 205 Cal.App.4th 782, 798 (2012) (accord). Strict liability is prohibited even when it is "foreseeable that the products will be used together," unless such use is actually necessary. *O'Neil, supra,* 53 Cal.4th at 361 (also holding that the lower court had "extend[ed] *Tellez-Cordova* [*v. Campbell–Hausfeld/Scott Fetzger Co.* (2004) 129 Cal.App.4th 577], beyond its unique factual context" which "could easily lead to absurd results. It would require match manufacturers to warn about the dangers of igniting dynamite, for example.")

Partial summary judgment should be granted on plaintiffs' strict product liability claim because it is undisputed that PVA did not manufacture, sell, supply or specify the Arathane and Humiseal materials which were not necessarily required to be used with PVA's machine.

## IV.   CONCLUSION

Plaintiffs' lawsuit is barred in its entirety by the statute of limitations, and plaintiffs' failure to warn and strict products liability claims are separately barred pursuant to binding California authority. PVA respectfully requests this Court to grant its motion for summary judgment in its entirety.


DATED: August 24, 2018            BECHERER KANNETT & SCHWEITZER


                                 By:   /s/     Alex P. Catalona
                                       Alex P. Catalona
                                       Attorneys for Defendant
                                       PRECISION VALVE & AUTOMATION,
                                       INC.

Becherer
Kannett &
Schweitzer
_____
1255
Powell St.
Emeryville, CA
94608
510-658-3600

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Becherer**
**Kannett &**
**Schweitzer**

_____

1255
Powell St.
Emeryville, CA
94608
510-658-3600

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on August 27, 2018, a true and correct copy of **DEFENDANT PRECISION VALVE & AUTOMATION, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** has been served via ECF upon all counsel of record in the Court's electronic filing system.

By:    /s/ Jerry Dumlao