**BALABAN & SPIELBERGER, LLP**
11999 San Vicente Blvd., Suite 345
Los Angeles, CA 90049
Tel: (424) 832-7677
Fax: (424) 832-7702
Daniel K. Balaban, SBN 243652
Andrew J. Spielberger, SBN 120231
Vanessa L. Loftus-Brewer, SBN 265213

**LAW OFFICES OF TERESA LI, PC**
315 Montgomery Street, 9th Floor
San Francisco, California 94104
Tel: (415) 423-3377
Fax: (888) 646-5493
Teresa Li, SBN 278779

Attorneys for <u>Plaintiffs</u>

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RUBEN JUAREZ, an individual and ISELA HERNANDEZ, an individual<br><br><br>                              Plaintiffs,<br>            v.<br><br><br>PRECISION VALVE & AUTOMATION, Inc., a corporation and DOES 1-20<br><br>                              Defendants. | **Case No.: 2:17-cv-03342**<br><br>**STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**<br><br>Date: October 1, 2018<br>Time: 1:30 p.m.<br>Ctrm: 5D, 5th Floor<br>Judge: Hon. Otis D. Wright II |

Plaintiffs submit this statement of genuine disputes pursuant to Central District of California Local Rule 56-2 in opposition to the motion for summary judgment herein filed by Facts 1 through 83 below correspond to the facts and supporting evidence presented in the Statement of Uncontroverted Facts filed by the moving party. These facts are followed by additional material facts and supporting evidence showing genuine issues of fact.

## I. STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT (Central District) BASED ON CALIFORNIA'S TWO-YEAR STATUTE OF LIMITATIONS

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| 1.  Plaintiffs reside in Granada Hills, California, in the County of Los Angeles.<br><br>Complaint, Notice of Removal and First Amended Complaint.<br><br>(Declaration of Alex P. Catalona ("Catalona Dec."), 12:22-23, 23:11-12, 57:2-4.) | 1.  Undisputed. |
| 2.  PVA is headquartered and incorporated in the State of New York.<br><br>Notice of Removal and Declaration of Jonathan Urquhart.<br><br>(Catalona Dec., 23:13-15, 24:17-19; Declaration of Jonathan Urquhart ("Urquhart Dec."), 1:4-7.) | 2.  Undisputed. |
| 3.  The PVA 350 is a conformal coating machine manufactured by PVA which is known in the industry as a "workcell."<br><br>Urquhart Dec. and PVA manual.<br><br>(Urquhart Dec., 2:4-5, 77.) | 3.  Undisputed as to the PVA 350 being a conformal coating machine manufactured by PVA. However, disputed to the extent the fact infers the PVA 350 is not a selective conformal coating machine.  This selective conformal coating machine required Mr. Juarez to place his head in the machine to verify the spray was only sprayed on the selected areas |

BALABAN & SPIELBERGER LLP<br>11999 SAN VICENTE BOULEVARD, SUITE 345<br>LOS ANGELES, CALIFORNIA 90049

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

| **MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS** | **RESPONSE TO OPPOSITION** |
|---|---|
| | versus a conformal coating machine that would not have required that step. |
| | • (Dec. of Ruben Juarez) |
| | Disputed to the extent the PVA350 is a work cell.  The PVA 350 is a **standalone device**, which is a mechanism or system that can perform its function without the need of another device, computer, or connection.  In contrast, a work cell is a term used in the manufacturing industry for an arrangement of resources in manufacturing to improve quality, speed, and the costs of the processes. |
| | • (Dec. Ruben Juarez) |
| | • Mr. Juarez never called the machine a work cell.  (Ex 4 Depo. Juarez Volume II: 204 :4-5) |
| 4.    PVA sold a single PVA 350 to SpaceX in 2009.<br><br>Urquhart Dec. and March, 2018 Deposition of Ruben Juarez ("Juarez Depo."), and exhibits.<br><br>(Urquhart Dec., 1:11-18, 1:25-27, 5-6, 8, 12-14, 23; Catalona Dec., 265:21-24, 266:13-18, 267:19-24, 359-61.). | 4.  Undisputed to the extent PVA sold a PVA 350 to Space X in 2009.<br><br>Disputed to the extent PVA Inc. attempts to infer that PVA Inc. only sold a single PVA 350 to Space X in 2009 and disappeared and never interacted with Space X again. In fact, PVA Inc. sold additional equipment, parts, and machines to Space X and had ongoing communications with Space X after 2009 and continued to |

3

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | service and modify the PVA 350 without ever warning the user of the dangers of the product. (Exhibit 25, Sales Documents, Order, and Quotations) |

- (Exhibit 25, PVA 222-234)
- (Exhibit 25, PVA 226)
- (Exhibit 25, PVA 228)
- (Exhibit 25, PVA 230-232)
- (Exhibit 32)
- (Exhibit 33)
- (Exhibit 34, PVA 420-421, 422, 423, 1183-1304)
- (Exhibit 34, PVA 423)

***The evidence below demonstrates the ongoing relationship between PVA and Space X regarding the additional parts, machines, and services provided by Space X. Specific factual references with citations are set forth below for the court's convenience.***

PVA Invoices and Sales Docs to Spacex are attached hereto. (Exhibit 25, PVA 222-234)

On 5-29-12, PVA purchase order included the FC100-MC (front closing dispenser), metal cartridge retainer, mounting brackets, fitting package to connect one cartridge retainer to one valve, 6oz plastic cartridge, one gallon pressure tank for flushing solvent, hoses and fittings. (Exhibit 25)

Invoice dated 5/23/13 shows the purchase of a rework kit (B72-1242) and a side levan window number 114-

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

**STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**
**(Central District)**

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | 3546. (Exhibit 25, PVA 226)<br><br>Purchase order dated 5/7/13 shows a purchase for a B72-1242 for a wire two black LED strips with one off switch and lexon windows. (Exhibit 25, PVA 228)<br><br>Invoice dated 10/11/13 shows a solvent flush machine for W3267 B72-01433 as well as the purchase orders. (Exhibit 25, PVA 230-232)<br><br>**PVA INC. HAD AN ONGOING RELATIONSHIP WITH SPACEX AND SOLD MORE MACHINES THAN PVA 350**<br><br>On December 7, 2012, Mr. Ignaut from SpaceX sent an email to David Gomez and Scott Abarta (PVA) inquiring as to how many dispense head (PC200) they can install on a single "PVA3000?" (Exhibit 33)<br><br>On December 7, 2012 at 8:59 A.M. there is an email from David Gomez (PVA) to Brian Ignaut (Space X) and Scott Abarta asking Space X to review the budget proposal for the MX3000 and PVA 3000 robot indicating if there is a 1 to 1 mix proportion, low viscosity, and no fillers or corrosive chemicals in it, the equipment configuration will do just fine. (Exhibit 33)<br><br>On December 3, 2012 Scott Abarta emailed David Gomez (PVA) with what appears to be a cc to Brian Ignaut with Space X, but the email is indicating it is from Brian Ignaut (Responsible Engineer with Solar Arrays) requesting the need for a quote for the following PVA |

BALABAN & SPIELBERGER LLP<br>11999 SAN VICENTE BOULEVARD, SUITE 345<br>LOS ANGELES, CALIFORNIA 90049

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | equipment: Mx 3000 MMD machine, PVA 200 dispense valve, and PVA 3000 dispense robot. (Exhibit 33)<br><br>**BILLS OF MATERIALS SHOW ONGOING RELATIONSHIP BETWEEN PVA INC. AND SPACE X**<br><br>There are PVA Materials being ordered by Space X in 5/6/03, 4/3/06, 5/8/09, 6/14/12, 10/14/13, 10/8/13, and 12/30/10.   (Exhibit 34, PVA 420-421, 422, 423, 1183-1304) Specifically, PVA Bill of Material dated 6/14/12 showed a purchase of PVA Inc products including the following gallons, fittings, hose, ball valve, cap, cartridge, fitting, fitting, tubing, regulator, air pressure gauge, felon tube, FCS300-ES extended spray, and FC100 MS dispense valve. (Exhibit 34, PVA 423) |
| 5.     This machine coats printed circuit boards with a thin polymeric film that "conforms" to the board's contours to protect against moisture, dust, chemicals and temperature extremes.<br><br>Urquhart Dec.<br><br>(Urquhart Dec., 1:14-17.). | 5. Undisputed. |
| 6.     When it was manufactured, SpaceX specified that the machine would spray Electrolube "NVOC," a 100% solids content material that did not contain solvent material (such as Humiseal or Arathane.)<br><br>Urquhart Dec., and exhibits.<br><br>(Urquhart Dec., 28, 30, 63-64.) | 6. Disputed to the extent this statement attempts to infer that PVA Inc. was unaware how the PVA 350 was utilized by Space X with chemicals (such as Arathane and Humiseal) as set forth in numerous emails and even on plans produced by PVA Inc.<br><br>• (Exhibit 22)<br>• (See   Exhibit   22,   PVA |

6

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | 4463-4481) |
| | • (See Exhibit 9 and Exhibit 22) |
| | • (Exhibit 22, PVA 23 and 24) |
| | • (Exhibit 22 PVA 4449-4452) |
| | • (Exhibit 22 PVA 4463-4481) |
| | On July 30, 2009, PVA Inc. employee Andrew Haraburda serviced the W3267 and recommended that Space X **utilize a different solvent because the "needle is still clogging in the solvent cup" and he recommended Xylene**. The MSDS sheet for **Xylene** shows extensive toxic effects on individuals.  PVA Inc. was aware the selective conformal coating machines were often utilized with toxic chemicals. |
| | • (Exhibit 22, PVA 4449-4452) |
| | • (Exhibit 28, Exemplar MSDS sheet for Xylene) |
| | ***Specific factual references with citations are set forth below for the court's convenience***. |
| | ***PVA HAD KNOWLEDGE OF THE CHEMICALS BEING UTILIZED BY SPACE X AND WAS INVOLVED IN SUBSEQUENT MODIFICATIONS TO THE MACHINE INVOLVING VARIOUS CHEMICALS*** |

**STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**
**(Central District)**

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | •     PVA Inc was aware of the chemicals being utilized with the PVA 350. including the transition to Arathane.  (See Exhibit 22, PVA 4463-4481) |
| | •     The April 11, 2012 conformal coating video with Space X boards utilized the same chemicals as used at Space X at PVA Inc. (See Exhibit 9 and Exhibit 22) |
| | •     On September 19, 2013, PVA Inc. made further modifications to the subject machine including reworking the dispense system on the machine to connect one cartridge to the one gallon tank for "automatic solvent flush of Arathane 5705."  (Exhibit 22, PVA 23 and 24) |
| | •     On July 30, 2009, PVA/Andrew Haraburda serviced the W3267 (subject PVA 350 machine) and this description of the work/changes included:  adding solvent flush option (6 oz cartridge, 3 way ball valve, O-ISPSI Precision Regulator, **which shows PVA Inc. was continuing to modify and upgrade the machine. Then PVA Inc. specifically recommended Space X alter the solvent to a different solvent stating "Space X may need to use a different solvent** (i.e. Xylene)." (Exhibit 22 PVA 4449-4452) |
| | •     Pursuant to email chain dated March 13, 2012 Jonathan |

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | Urquhart **(PVA) was aware of Space X's use of Arathane 5750**  The email specifically states, "I think David has spoken to you **about our customer Space X**.  They build full blown rocket ships. **They plan on pre-mixing this material part A part B and a 3rd part, thinner in small batches apply to board and the purge system** because of shelf life once mixed. **Sounds screwy to me.**"  They were looking for a demo on the 27th of March.  (Exhibit 22, PVA 4463-4481) |
| | •      Pursuant to email dated March 15, 2012 to Jonathan Urquhart, PVA was preparing a demo on the PVA 650 and **PVA were working with the same chemical materials Space X was utilizing, but PVA did not want Space X to know and PVA indicated they were going to convey to Space X that the materials were similar, but not the exact same**. .  (Exhibit 22, PVA 4463-4481) |
| | •      Pursuant to email dated March 30, 2012, the test at PVA Inc. was rescheduled to 4-11-12 to view the 3 part mixing process. (Exhibit 22, PVA 4463-4481) |
| | •      Pursuant to email from David Gomez to Johnathan (PVA) Urquhart dated May 11, 2012 at 2:11 p.m., Space X talked about retrofitting the |

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

| **MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS** | **RESPONSE TO OPPOSITION** |
|---|---|
| | PVA 350, and then subsequently there was confirmation from Jon indicating **Space X wanted to duplicate what was done during the visit.** (Exhibit 22, PVA 4463-4481) |
| | • Jon Urquart performed the demo for Space X on 4-11-12. (Exhibit 22, PVA 4463-4481) |
| | • Email dated December 2, 2014 at 9:03 a.m. Mr. Urquhart (PVA) indicated to Mr. Matupang there would be 2 demos including a coating with **Arathane 2 part mix and spray and dispensing using a 650 or Delta 6 with board head**, JDX (underfill), SVX (past), and FC100 (solder mask). (Exhibit 22) |
| | • On November 17, 2014, Mr. Urquhart (PVA) asked is Space X wanted to mix on the fly with **5750**? (Exhibit 22) |
| | • On January 9, 2013 at 10:38 a.m. David Gomez (PVA) emailed Brian Ignaut (Space X) **doing follow up on the "two part material application project you were working on and kindly presented us with**." There was inquiry as to whether there were any developments in the first few months of 2013. (Exhibit 22) |
| | • On December 3, 2012 at 12:01 PM David Gomez (PVA) wrote Scott Abarta asking for |

**STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**
(Central District)

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | the **two part material brand and part # as well as any MSDS and data sheets**.  Also, there was a request for a shot size and cycle time per part if possible. (Exhibit 22)<br><br>• On **September 10, 2013**, Mr. Gomez (PVA) indicated "they only want a 20 oz cartridge retainer & cap with spray & needle valve for the pre-mix material and 6oz cartridge retainer & cap **for the solvent, so it can flush the premixed material out right after doing a batch of boards**." Mr. Gomez indicated he was **familiar with the "fluid delivery line" because he had done it "several times."** He also indicated they were "**not there yet" for the two part coating spraying**.  (Exhibit 22)<br><br>• On September 9, 2013, Richard Bievenue (PVA) wrote Jonathan Connelly (ccing David Filbert, David Gomez, and Michael R. Leonard) indicating that **he spoke with Duc Phan (Space X) about the 350 machine and how Space X was switching to utilizing a 2 part material including Arathane 5750.  There was discussion about premising the solvents and flushing the solvent valves**.  Also, there was interest regarding a 2 component meter mix system. (Exhibit 22)<br><br>• On September 18, 2013 at 12:41 p.m., **Mr. Gomez (PVA)** |

11

**STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**
(Central District)

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | **indicated that this is not the first time they have done a two part coating system and he thought they were putting to many resources into this. The email specifically references Arathane** 5750. (Exhibit 22)<br><br>• On September 13, 2013, from Duc Phan (Space X) to Jonathan Connelly, Michael R. Leonard (ccing Richard Bievenue and David Filbert) explained the process with pictures. **Specifically, he indicated that Space X removed the hoses from the spray dispensing head and connected the hoses from the Arathane material and solvent to it.  He further explained when the Arathane material was not in use they vaped the solvent hose and connect the Arathane material hose to the other head just for a place holder.  He also explained that Arathane 5750 part A and B is mixed together and poured in the first reservoir and the second reservoir is the solvent use to thin out the mixed Arathane for spray requirement**.  (Exhibit 22)<br><br>• On September 13, 2013 at 6:07 a.m. Jonathan Connelly wrote Duc Phan (Space X). Michael R. Leonard and ccing Richard Bievenue and David Filbert inquiring about the process, requesting a picture, **and asking if the Arathane and the solvent was being run** |

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | **out of the cartridges mounted on the side of the machine**. (Exhibit 22) |
| | • On September 10, 2013, Duc Phan (Space X)wrote Michael R. Leonard and Jonathan Connelly, **and there was a clear indication that Space X was using Arathane 5750 material with a 2 hour cure time, and they were concerned the operator would forget to purge and rinse the material when the job is done. They were looking to automate the process after coating**.  (Exhibit 22) |
| | o The sales order dated September 25, 2013 indicated PVA job number SPCX2115 W3267 indicated **PVA was there to provide onsite support for Mechanical Electrical Programming Fluid Delivery.**  (Exhibit 22) |
| | o The sales quotation dated September 19, 2013, stated that PVA was to "**rework the dispense system on machine serial number W3267 to connect one cartridge to (1) one gallon tank for automatic solvent flush of Arathane 5705**.  This was to include 1) all hoses and fittings needed to complete the integration, 2) pneumatic ball valve for automatic solvent flush, 3) hardware and software needed for integration, and one tank. Further, PVA was to travel to Space X to install the new auto |

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | solvent flush system. (Exhibit 22) |
| | o     The purchase order dated September 24, 2013 issued to PVA and shipping to Space X on a Space X purchase order identified a supplier part number B72-01433 and **there is a full description of the work to be done including reworking the dispense system for an automatic flush of Arathane 5750** and in similar detail as stated above.  There is a separate purchase order for the travel expenditures. (Exhibit 22) |
| | •     On July 21, 2014 at 6:48 p.m. Duc Phan (Space X) emailed Rex indicating the **current machine uses both Humiseal and Arathane and there are separate spray valves for both material**.  They need the pendant purge button to work for both materials. (Exhibit 22) |
| | •     PVA Inc. circulated diagram clearly states **Arathane**.  Additionally, there is a quote work sheet for the 3 way assembly, pressure tank, hoses, fittings, valves as well as programming and engineering. (Ex 22, PVA 340-347) |
| 7.     In any event, the PVA 350 was built with safety features to prevent users from breathing materials used inside the machine.  First, the machine monitored its exhaust flow and turned off if the exhaust system was not | 7.  Disputed.  A number of safety items are not included automatically included with the PVA 350 machines such as the |

14

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| operating.<br><br>Urquhart Dec., PVA Manual.<br><br>(Urquhart Dec., 2:24-26, 98-99.) | following: conveyor type, passive programming camera, XY fiducial camera, exhaust blower, onboard computer, and flow monitoring.  Further, disputed to the extent PVA Inc. trained end users to put their heads inside the machines to program the PVA machine, and the PVA 350 had design defects that caused users to put their heads inside the machines while the machines were spraying to properly program the machine.<br>• (Exhibit 17, PVA 220)<br>• (Exhibit 36, PVA 449-4452)<br>• (Declaration of Glen Stevick)<br>• (Declaration of Ruben Juarez)<br>• (Exhibit 11 and 29 PVA 279-280)<br>• (Exhibit 10, PVA 304)<br>• (Ex 3 Depo. Juarez Volume 1: 77:21-78:2)<br>• (Ex 3 Depo. Juarez Volume I, 79:25-80:4)<br>• (Ex 3 Depo. Juarez Volume I: 87:22-88:1)<br>• (Ex 3 Depo. Juarez Volume 1: 158:3-9)<br>• (Ex 3 Depo. Juarez Volume 1:  61:21-63:14,  58:4-6, 58:12-59:4)<br>• (Exhibit 29, PVA 63, 64, 69, 220, 4537, 4538, 4539, 4540, 4542) |

BALABAN & SPIELBERGER LLP<br>11999 SAN VICENTE BOULEVARD, SUITE 345<br>LOS ANGELES, CALIFORNIA 90049

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | • (Exhibit 9 and 22) |
| | • (Exhibit 5, Video of the PVA 350 shows the machine is far too small for someone to use while wearing a ventilator.) |
| | • (Video Exhibit 11 shows the conformal coating process in a PVA machine in 2010.) |
| | • (Video Exhibit 8 shows all the different types of coating and also shows various designs that were not defective so it is great for comparison and explanation.) |
| | • .(Exhibit 15, PVA 69) |
| | • (Exhibit 20) |
| | • (Exhibit 21, PVA 4537, 4538, 4540) |
| | • (Exhibit 29) |
| | • (Exhibit 11) |
| | • (Exhibit 23, PVA 1181 (Wet Film Thickness Gauge)) |
| | • (Exhibit 23, PVA 1181 (Wet Film Thickness Gauge)) |
| | ***The following evidence demonstrates various safety features were not built into the PVA 350 or were insufficient as provided to Space X. Specific factual allegations are set forth below for the court's convenience.*** |
| | The PVA 350 ventilation indicated |

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

**STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**
**(Central District)**

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | there was "no PVA blower." |
| | (Exhibit 29, PVA 279-280) |
| | _**Specific factual references with citations are set forth below for the court's convenience**_. |
| | **THE MSDS SHEET ESTABLISHES PVA (AS ENGINEERS/ MANUFACTURES) OF THE PVA 350 HAD A DUTY TO ENSURE ADEQUATE VENTILATION** |
| | PVA Inc. failed to ensure users were safe as PVA Inc. failed to comply with their engineering duty as set forth in the MSDS Arathane sheet. Engineering Measures: Use only adequate ventilation.  **Use process enclosures, local exhaust ventilation or other engineering controls to keep worker exposure to airborne contaminants below any recommended or statutory limits**. (Exhibit 10, 304) |
| | **PLAINTIFF TESTIFIED ABOUT A NUMBER OF DEFECTS IN THE PVA 350 AND INADEQUATE SAFETY FEATURES IN HIS DEPOSITIONS, WHICH ALL TOOK PLACE WITHIN THE STATUTORY TIME FRAM FOR FILING A COMPLAINT** |
| | The PVA 350 was built so a programmer had to bypass the safety mechanisms to program the machine. (Ex 3 Depo. Juarez Volume I: 87:22-88:1) |
| | The PVA 350 was defectively designed because a programmer would |

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
|  | have to **put their head inside the machine to look where the machine was spraying**.  (Ex 3 Depo. Juarez Volume 1: 158:3-9)<br><br>Mr. Juarez would program the PVA 350, set up a circuit board in the machine, make sure the pattern is correct, do a dry run, do a wet run, put his head inside the PVA 350 to check the thickness of the layer, clean it up, rerun it again until they got the desired thickness and width.  To facilitate the fine tuning process, the machine has to switch to a bypass door so a programmer can put **their head inside the machine to make sure the spraying head is parallel to the door.  Then the programmer checks the thickness of the layer.  The layer has to be about 1.5 thousandths of an inch.**  (Ex 3 Depo. Juarez Volume 1: 61:21-63:14, 58:4-6, 58:12-59:4)<br><br>**BELOW PLAINTIFFS ASSERT SPECIFIC DISPUTES OF FACT REGARDING THE PVA 350'S MACHINE DEFECTS, INADEQUATE SAFETY MEASURES, AND THE VENTILATION SYSTEM.**<br><br>•       The alleged PVA safety guide states: "Some machines are equipped with an exhaust fan.  The exhaust fan is provided to exhaust fumes from the work area.  The exhaust flange should be connected to an appropriate ducting system that is capable of receiving 150 CFM.  Insufficient airflow through the exhaust system generates an error."  However, **this manual was not provided in a hardcopy form to Space X based on the pictures PVA provided**.  (Exhibit 29, PVA 63)<br><br>•       The Exhaust Verification Process shows **some machines** have |

BALABAN & SPIELBERGER LLP<br>11999 SAN VICENTE BOULEVARD, SUITE 345<br>LOS ANGELES, CALIFORNIA 90049

18

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | an auto shut down.  (Exhibit 29, PVA 64) |
| | •      **A user has to visually inspect the position of a needle with respect to a calibration point and the user may have to physically reposition the needle**.  (Exhibit 29, PVA 69) |
| | •      The PVA Product Overview indicated a number of safety items are not included on the PVA 350 automatically such as: conveyor type, passive programming camera, XY fiducial camera, exhaust blower, onboard computer, and flow monitoring. (Exhibit 29, PVA 220) |
| | •      There is a picture of the module, and there appears to be an insufficient exhaust system in the back of the machine. (Exhibit 29, PVA 4537, 4538, 4539, 4540, and 4542). |
| | •      The April 11, 2012 conformal coating video with Space X boards utilized the same chemicals as used at Space X at PVA Inc. (See Exhibit 9 and Exhibit 22) |
| | •      Exhibit 5, Video of the PVA 350 shows the machine is far too small for someone to use while wearing a ventilator. |
| | •      Video Exhibit 11 shows the conformal coating process in a PVA machine in 2010. |
| | •      Video Exhibit 8 shows all the different types of coating and also shows various designs that were not defective so it is great for comparison and explanation. |

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | • The comparison PVA 350 shows there is a **low exhaust and no conveyer** belt option on the PVA 350. (Exhibit 20)<br><br>**THE PVA DID NOT COME WITH VARIOUS SAFETY MEASURES INCLUDING A PVA BLOWER**<br><br>• On April 24, 2009, Alex Duggan wrote Nicholas Wong (Space X) regarding Frank Hart (Space X)'s order for a PVA 350 forwarding preliminary machine specifications. (Exhibit 29)<br><br>o The attachment to this email is a Workcell Specification dated 4-24-09. Essentially, the machine was a 350 with no custom requirements.  The needle was not "calibrated." The ventilation was listed at a Minimum CFM of 300 without a "PVA blower" with an exhaust switch.  The coating material and solvents are listed as "unknown." There are 2 solvent cups listed and 2 purge pans listed as well. (Exhibit 29)<br><br>• Attached to an email dated October 14, 2013, there is an excel sheet for the parts, which is relevant as there is a **low exhaust** flow listed. (Exhibit 29)<br><br>• The breakdown showing the **PVA 350 was sold with no PVA blower and less than 10 CFM** is referenced as Exhibit 11.<br><br>**END USERS MUST PUT THEIR HEAD INTO THE PVA 350 MACHINE TO CHECK THE THICKNESS OF THE CHEMICAL COATING AND TO** |

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | **SPRAY THE PROPER AREAS OF THE CIRCUIT BOARD** |
| | • The Wet Film Thickness Gauge shows how Mr. Juarez **had to measure the level of the fluid on the boards and is relevant to show he had to stick his head in the machine**. (Exhibit 23, PVA 1181 (Wet Film Thickness Gauge)) |
| | • Pursuant to email dated December 15, 2014 on 11:47 a.m. Bievenue emailed to Matupang indicating the **only way to know for sure the mix ratio is coming out of a spray valve is with flow monitors and if you don't have flow monitors you are "spraying blind."** (Exhibit 30) |
| 8.     As stated in the manual provided to SpaceX in 2009, it "must exhaust at a rate of no less than 150 cubic feet per minute, otherwise a critical fault will occur shutting the motors down."  <br><br>Urquhart Dec., PVA Manual and exhibits.  <br><br>(Urquhart Dec., 2:23-26, 21, 98-99.) | 8.  Disputed to the extent this infers that Mr. Juarez saw the manual.  The manual was not provided to Mr. Juarez.  Also, disputed because a number of safety items are not included with the PVA 350 machine such as the following: conveyor type, passive programming camera, XY fiducial camera, exhaust blower, onboard computer, and flow monitoring.  <br><br>(Exhibit 29, PVA 220)  <br><br>The work order on 7-28-2009 to 7-30-09 did not clarify the ventilation system was operational even after PVA Inc. added a **solvent flush** option flushed the material, and rebuilt the FCM100 valve. |

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | (Exhibit 22 and 36 PVA 4449-4452) |
| | Disputed to the extent the fact infers the PVA 350 was not defectively designed by not being large enough to allow users to utilize a ventilation mask when the PVA 350 was being utilized. |
| | (Dec. Glen Stevick) |
| | The PVA 350 was designed without a conveyer belt to ensure employees of Space X did not have to put their head inside the machine and be exposed to toxic chemicals. |
| | (Dec. Glen Stevick) |
| | PVA Inc. trained Mr. Juarez to put his head inside the machine to check various chemical levels without the ventilation system being operations. |
| | • (Dec. Ruben Juarez) |
| | • (Ex 3 Depo. Juarez Volume 1: 91:3-93:24, 96:10-19, 98:20-21, 100:4-9) |
| | • (Ex 3 Depo. Juarez Volume 1: 77:21-78:2) |
| | • (Ex 3 Depo. Juarez Volume I, 79:25-80:4) |
| | • (Ex 3 Depo. Juarez Volume I: 87:22-88:1) |
| | • (Exhibit 31, PVA 51) |
| | • (Exhibit 31, PVA30-32) |
| | • (Exhibit 31, PVA 40-41) |
| | • (Exhibit 15, PVA 69) |
| | • (Exhibit 16, PVA 0272) |
| | • (Exhibit 31, PVA 30-32, 51) |
| | • (Exhibit 29, PVA 63, 64, 69, |

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | 220)
• (PVA 4537, 4538, 4539, 4540, and 4542).
• (See Exhibit 9 and Exhibit 22)
• Exhibit 5, Video of the PVA 350 shows the machine is far too small for someone to use while wearing a ventilator.
• Video Exhibit 11 shows the conformal coating process in a PVA machine in 2010.
• Video Exhibit 8 shows all the different types of coating and also shows various designs that were not defective so it is great for comparison and explanation.
• (Exhibit 15, PVA 69)
• (Exhibit 20)
• (Exhibit 21, PVA 4537, 4538, 4540)
***Specific factual references with citations are set forth below for the court's convenience that address safety concerns, defects in the PVA 350, and concerns regarding the manual.***

Mr. Juarez never read the manual for the PVA 350 because it was not available to him, but he was trained by PVA Inc. on how to use the PVA machines, and at these trainings PVA Inc. never told Mr. Juarez to review any manual.  (Ex 3 Depo. Juarez Volume 1: 91:3-93:24, 96:10-19, 98:20-21, 100:4-9)

In the first room, the ventilation for the PVA 350 was a manual switch. (Ex 3 Depo. Juarez Volume 1: 77:21-78:2) |

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

| **MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS** | **RESPONSE TO OPPOSITION** |
|---|---|
| | The PVA 350 was built so a programmer had to bypass the safety mechanisms to program the machine. (Ex 3 Depo. Juarez Volume I: 87:22-88:1)<br><br>**THE PVA INC. MANUAL WAS NOT PROVIDED TO MR. JUAREZ AND THE MANUAL WAS INSUFFICIENT**<br><br>• PVA Inc. specifically indicated the **manual was for production and operators not technical personnel, but it might be "useful for introduction or training.**" (Exhibit 31, PVA 51)<br><br>• The **manual was only produced electronically**.  (No hardcopy.) (Exhibit 31, PVA30-32)<br><br>• The Operations and Maintenance manual **does not warn to wear a face mask** or a ventilator. (Exhibit 31, PVA 40-41)<br><br>• The manual indicated the PVA machines required that end users must visually inspect the position of the needle with response to a calibration point and physically reposition the needle.  (Exhibit 15, PVA 69)<br><br>• The Final Shipment Sign-Off does not indicate the operating manual was even sent to Space X only machine photos were taken.  Also, there is an issue of fact as to whether the exhaust switch was included. (Exhibit 16, PVA 0272)<br><br>• The PVA manual **was not physically produced** and **there was no requirement to review it**. |

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

24

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | (Exhibit 31, PVA 30-32, 51)

**BELOW PLAINTIFFS ASSERT SPECIFIC DISPUTES OF FACT REGARDING THE PVA 350'S MACHINE DEFECTS, INADEQUATE SAFETY MEASURES, AND THE VENTILATION SYSTEM.**

• The alleged PVA safety guide states: "Some machines are equipped with an exhaust fan. The exhaust fan is provided to exhaust fumes from the work area. The exhaust flange should be connected to an appropriate ducting system that is capable of receiving 150 CFM. Insufficient airflow through the exhaust system generates an error." However, **this manual was not provided in a hardcopy form to Space X based on the pictures PVA provided**. (Exhibit 29, PVA 63)

• The Exhaust Verification Process shows **some machines** have an auto shut down. (Exhibit 29, PVA 64)

• **A user has to visually inspect the position of a needle with respect to a calibration point and the user may have to physically reposition the needle**. (Exhibit 29, PVA 69)

• The PVA Product Overview indicated a number of safety items are not included on the PVA 350 automatically such as: conveyor type, passive programming camera, XY fiducial camera, exhaust blower, onboard computer, and flow monitoring. (Exhibit 29, PVA 220)

• There is a picture of the module, |

**STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**
**(Central District)**

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | and there appears to be an insufficient exhaust system in the back of the machine. (Exhibit 29, PVA 4537, 4538, 4539, 4540, and 4542).<br><br>•      The April 11, 2012 conformal coating video with Space X boards utilized the same chemicals as used at Space X at PVA Inc. (See Exhibit 9 and Exhibit 22)<br><br>•      Exhibit 5, Video of the PVA 350 shows the machine is far too small for someone to use while wearing a ventilator.<br><br>•      Video Exhibit 11 shows the conformal coating process in a PVA machine in 2010.<br><br>•      Video Exhibit 8 shows all the different types of coating and also shows various designs that were not defective so it is great for comparison and explanation.<br><br>•      The comparison PVA 350 shows there is a **low exhaust and no conveyer** belt option on the PVA 350. (Exhibit 20) |
| 9.      Second, the machine is a closed system with a door and negative air pressure to prevent chemicals from escaping.<br><br>Urquhart Dec.<br><br>(Urquhart Dec., 2:27-28.) | 9.  Disputed.  The PVA 350 is not equipped with a positive or negative air pressure system.<br><br>(Dec. Ruben Juarez)<br><br>Further, the PVA 350 had a defective Lexon door that permitted chemicals to escape and even had to be replaced at least once. |

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | (Exhibit 13) PVA 277 |
| | The PVA 350 ventilation indicated there was "**no PVA blower**." |
| | (Exhibit 17, PVA 279-280 |
| | PVA Inc specifically trained users to utilize the PVA 350 with the door open and with their heads inside without providing a warning to utilize a ventilation mask because the machine was too small to permit a user to utilize a ventilation mask. |
| | (Dec. Ruben Juarez) |
| | (Dec. Glen Stevick) |
| | The second room at a positive pressure ventilation system, but that was not connected to the PVA 350.  (Ex 3 Depo. Juarez Volume I: 84:6-13) |
| 10.    If the door of the machine is opened, the spraying of materials will stop.<br><br>Urquhart Dec., PVA Manual and exhibits.<br><br>(Urquhart Dec., 2:28-3:1, 21, 96-97.) | 10. Disputed to the extent that PVA Inc. attempts to infer that the PVA 350 was not defective we PVA trained users to open the door, put their heads inside the machine while it was spraying, and utilize the bypass system to ensure the circuit boards were uniformly coated without the use of a ventilation mask. PVA Inc. specifically provided a bypass system with the machine and trained Space X employees to utilize it without providing adequate safety controls to the bypass system.<br><br>• (Dec. Glen Stevick)<br>• (Dec. Ruben Juarez)<br>• (Ex 3 Depo. Juarez Volume I: |

**STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**
**(Central District)**

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | 87:22-88:1) |
| | • (Ex 3 Depo. Juarez Volume 1: 89:14-18, 90:8-11) |
| | • (Ex 3 Depo. Juarez Volume 1: 121:16-19) |
| | • (Ex 3 Depo. Juarez Volume 1: 121: 22- 122:20, 122:22-123:1) |
| | • (Ex 3 Depo. Juarez Volume I: 123:19-124:12) |
| | • (Ex 4 Depo. Juarez Volume II: 226:12-227:6) |
| | • (Ex. 4 Depo. Juarez Volume II232:1-7, 232: 23-25) |
| | • (Ex 3 Depo. Juarez Volume 1: 61:21-63:14) |
| | • (Exhibit 13, PVA 277) |
| | • .(Exhibit 17, PVA 63, 64, 219-220, 277, 279-280) |
| | • (Exhibit 29, PVA 63) |
| | • (Exhibit 29, PVA 64, 69, 220, ) |
| | • (PVA 4537, 4538, 4539, 4540, and 4542). |
| | • (See Exhibit 9 and Exhibit 22) |
| | • Exhibit 5, Video of the PVA 350 shows the machine is far too small for someone to use while wearing a ventilator. |
| | • Video Exhibit 11 shows the conformal coating process in a PVA machine in 2010. |
| | • Video Exhibit 8 shows all the different types of coating and also shows various designs that were not defective so it is great for comparison and explanation. |
| | • .(Exhibit 15, PVA 69) |
| | • (Exhibit 20) |

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | • (Exhibit 21, PVA 4537, 4538, 4540)<br>• (Exhibit 24, 4458-4462)<br>• (Exhibit 24)<br>• (Exhibit 23, PVA 1181 (Wet Film Thickness Gauge))<br>• (Exhibit 30)<br>***Specific factual references with citations are set forth below for the court's convenience.***<br><br>**DEPOSITION TESTIMONY PORTRAYING THE DEFECTIVE DESIGN OF THE PVA 350 AND HOW END USERS WERE TRAINED TO USE THE MACHINE WITH THE DOOR OPEN**<br><br>The PVA 350 was built so a programmer had to bypass the safety mechanisms to program the machine. (Ex 3 Depo. Juarez Volume I: 87:22-88:1)<br><br>PVA Inc. trained Mr. Juarez to put his head in the PVA 350 machine and bypass the machine. (Ex 3 Depo. Juarez Volume 1: 89:14-18, 90:8-11)<br><br>Part of Mr. Juarez' training by PVA Inc. was to bypass the safety switch to do the programming of the PVA 350 machine. (Ex 3 Depo. Juarez Volume 1: 121:16-19)<br><br>Mr. Juarez was trained by PVA Inc. to open the door of the machine to perform programming job duties. (Ex 3 Depo. Juarez Volume 1: 121: 22-122:20, 122:22-123:1)<br><br>Mr. Juarez believe it was unsafe for the operators to open the machine door and operate the PVA 350 because they could get their hand stuck in the machine, but he did not have a |

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | chemistry background so he did not know whether the chemicals were harmful or not, ***and he relied on the training provided by PVA Inc. that he could put is head safely in the machine while programming the machine***.  (Ex 3 Depo. Juarez Volume I: 123:19-124:12)<br><br>Mr. Juarez had to place his head into the machine to see what portions of the circuit boards were covered because he would not be able to see into the machine and view the fine spray pattern by just looking through the window.  (Ex 4 Depo. Juarez Volume II: 226:12-227:6)<br><br>Mr. Juarez was trained in 2011 by PVA Inc. through a hands on approach on how to use the PVA machine without any hazardous chemical training.  (Ex. 4 Depo. Juarez Volume II232:1-7, 232: 23-25)<br><br>Mr. Juarez would program the PVA 350, set up a circuit board in the machine, make sure the pattern is correct, do a dry run, do a wet run, make sure his head was inside to check the thickness of the layer, clean it up, rerun it again until they got the desired thickness and width.  The programmer has to fine tune the thickness of the conformal coating layer.  To facilitate the fine tuning process, the machine has to switch to a bypass door so a programmer can put their head inside the machine to make sure the spraying head is parallel to the door.  Then a programmer does a dry run, a wet run, and checks the thickness of the layer.  The layer has to be about 1.5 thousandths of an inch.  (Ex 3 Depo. Juarez Volume 1: 61:21-63:14)<br><br>**ADDITIONAL SAFETY MEASURES WERE INACTIVE, BYPASSED PURSUANT TO TRAINING BY PVA, AND NOT INCLUDED WITH EACH PVA 350** |

BALABAN & SPIELBERGER LLP<br>11999 SAN VICENTE BOULEVARD, SUITE 345<br>LOS ANGELES, CALIFORNIA 90049

30

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | •    The system debug dated 5-1-09 indicates the machine needed the material lines, fixed or replaced the **Lexon side**, valve/2 micrometer needs to be, and they needed **to add a camera cable in the back of the machine**.  Further, PVA Inc. presents no evidence the Lexon glass door was timely replaced or the camera cord was ever installed. (Exhibit 13, PVA 277) |
| | •    <u>**Not all PVA 350s have the alleged safety features including an exhaust fan/conveyer belt/an auto shut down/exhaust blower/flow monitoring, and cameras**</u>.  Further, pursuant to training provided by PVA Inc., there are <u>**bypass systems that must be utilized so programmers can complete their jobs**</u>.  (Exhibit 17, PVA 63, 64, 219-220, 277, 279-280) |
| | **BELOW PLAINTIFFS ASSERT SPECIFIC DISPUTES OF FACT REGARDING THE PVA 350'S MACHINE DEFECTS, INADEQUATE SAFETY MEASURES, AND THE VENTILATION SYSTEM.** |
| | •    The alleged PVA safety guide states: "Some machines are equipped with an exhaust fan.  The exhaust fan is provided to exhaust fumes from the work area.  The exhaust flange should be connected to an appropriate ducting system that is capable of receiving 150 CFM.  Insufficient airflow through the exhaust system generates an error."  However, <u>**this manual was not provided in a hardcopy form to Space X based on the pictures PVA provided**</u>.  (Exhibit 29, PVA 63) |
| | •    The Exhaust Verification |

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

**STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**
**(Central District)**

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | Process shows **some machines** have an auto shut down.  (Exhibit 29, PVA 64)<br><br>•      **A user has to visually inspect the position of a needle with respect to a calibration point and the user may have to physically reposition the needle**.  (Exhibit 29, PVA 69)<br><br>•      The PVA Product Overview indicated a number of safety items are not included on the PVA 350 automatically such as: conveyor type, passive programming camera, XY fiducial camera, exhaust blower, onboard computer, and flow monitoring. (Exhibit 29, PVA 220)<br><br>•      There is a picture of the module, and there appears to be an insufficient exhaust system in the back of the machine. (Exhibit 29, PVA 4537, 4538, 4539, 4540, and 4542).<br><br>•      The April 11, 2012 conformal coating video with Space X boards utilized the same chemicals as used at Space X at PVA Inc. (See Exhibit 9 and Exhibit 22)<br><br>•      Exhibit 5, Video of the PVA 350 shows the machine is far too small for someone to use while wearing a ventilator.<br><br>•      Video Exhibit 11 shows the conformal coating process in a PVA machine in 2010.<br><br>•      Video Exhibit 8 shows all the different types of coating and also shows various designs that were not defective so it is great for comparison |

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | and explanation. |

• The comparison PVA 350 shows there is a **low exhaust and no conveyer** belt option on the PVA 350. (Exhibit 20)

**PVA INC. PROVIDED TRAINING AND TRAINED MR. JUAREZ TO PUT HIS HEAD INSIDE THE PVA MACHINE WITHOUT ANY PROTECTIVE GEAR**

Ruben Juarez attended training at PVA Inc., and PVA trained him to put his head inside the machine while spraying without any protective gear. He attended these trainings while working for EMI and Space X. (See Exhibit 24, 4458-4462)

**END USERS MUST PUT THEIR HEAD INTO THE PVA 350 MACHINE TO CHECK THE THICKNESS OF THE CHEMICAL COATING AND TO SPRAY THE PROPER AREAS OF THE CIRCUIT BOARD**

• The Wet Film Thickness Gauge shows how Mr. Juarez **had to measure the level of the fluid on the boards and is relevant to show he had to stick his head in the machine**. (Exhibit 23, PVA 1181 (Wet Film Thickness Gauge))

• Pursuant to email dated December 15, 2014 on 11:47 a.m. Bievenue emailed to Matupang indicating the **only way to know for sure the mix ratio is coming out of a spray valve is with flow monitors and if you don't have flow monitors you are "spraying blind."** (Exhibit

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

| **MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS** | **RESPONSE TO OPPOSITION** |
|---|---|
| | 30) |
| 11.   "When the door is opened power to the motors and pneumatics is disconnected." <br><br> Urquhart Dec., PVA Manual and exhibits. <br><br> (Urquhart Dec., 2:28-3:1, 21, 96-97.) | 11.Disputed to the extent the statement alleges inaccurate factual inferences.  PVA Inc. trained users to open the door, put their heads inside the machine, and utilize the bypass system to ensure the circuit boards were uniformly coated without the use of a ventilation mask. PVA Inc. specifically provided a bypass system with the machine and trained Space X employees to utilize the PVA machine without providing adequate safety controls to the bypass system. <br> • (Dec. Glen Stevick) <br> • (Dec. Ruben Juarez) <br> • (Ex 3 Depo. Juarez Volume I: 87:22-88:1) <br> • (Ex 3 Depo. Juarez Volume 1: 89:14-18, 90:8-11) <br> • (Ex 3 Depo. Juarez Volume 1: 121: 22- 122:20, 122:22-123:1) <br> • (Ex 3 Depo. Juarez Volume I: 123:19-124:12) <br> • (Ex 4 Depo. Juarez Volume II: 226:12-227:6) <br> • (Ex. 4 Depo. Juarez Volume II232:1-7, 232: 23-25) <br> • (Ex 3 Depo. Juarez Volume 1: 61:21-63:14) <br> • (Exhibit 13, PVA 277) <br> • (Exhibit 17, PVA 63, 64, 219- |

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

**STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**
**(Central District)**

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | 220, 277, 279-280) |
| | • (Exhibit 29, PVA 63, 69, 220) |
| | • (PVA 4537, 4538, 4539, 4540, and 4542). |
| | • (See Exhibit 9 and Exhibit 22) |
| | • Exhibit 5, Video of the PVA 350 shows the machine is far too small for someone to use while wearing a ventilator. |
| | • Video Exhibit 11 shows the conformal coating process in a PVA machine in 2010. |
| | • Video Exhibit 8 shows all the different types of coating and also shows various designs that were not defective so it is great for comparison and explanation. |
| | • (Exhibit 15, PVA 69) |
| | • (Exhibit 20) |
| | • (Exhibit 21, PVA 4537, 4538, 4540) |
| | • (Exhibit 24, 4458-4462) |
| | • (Exhibit 24) |
| | • (Exhibit 23, PVA 1181 (Wet Film Thickness Gauge)) |
| | • (Exhibit 30) |
| | ***Specific factual references with citations are set forth below for the court's convenience that portray PVA 350 operated when the door was open as PVA Inc. trained Mr. Juarez.*** |
| | **DEPOSITION TESTIMONY PORTRAYING THE DEFECTIVE DESIGN OF THE PVA 350 AND HOW END USERS WERE TRAINED TO USE THE MACHINE WITH THE DOOR** |

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | **OPEN BY PVA INC.** |
| | The PVA 350 was built so a programmer had to bypass the safety mechanisms to program the machine. (Ex 3 Depo. Juarez Volume I: 87:22-88:1) |
| | PVA Inc. trained Mr. Juarez to put his head in the PVA 350 machine and bypass the machine. (Ex 3 Depo. Juarez Volume 1: 89:14-18, 90:8-11) |
| | Part of Mr. Juarez' training by PVA Inc. was to bypass the safety switch to do the programming of the PVA 350 machine. (Ex 3 Depo. Juarez Volume 1: 121:16-19) |
| | Mr. Juarez was trained by PVA Inc. to open the door of the machine to perform programming job duties. (Ex 3 Depo. Juarez Volume 1: 121: 22-122:20, 122:22-123:1) |
| | Mr. Juarez believe it was unsafe for the operators to open the machine door and operate the PVA 350 because they could get their hand stuck in the machine, but he did not have a chemistry background so he did not know whether the chemicals were harmful or not, *and he relied on the training provided by PVA Inc. that he could put is head safely in the machine while programming the machine*. (Ex 3 Depo. Juarez Volume I: 123:19-124:12) |
| | **Mr. Juarez had to place his head into the machine to see what portions of the circuit boards were covered because he would not be able to see into the machine and view the fine spray pattern by just looking through the window**. (Ex 4 Depo. Juarez Volume II: 226:12-227:6) |
| | Mr. Juarez was trained in 2011 by PVA Inc. through a **hands on approach on how to use the PVA** |

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | **machine without any hazardous chemical training**. (Ex. 4 Depo. Juarez Volume II232:1-7, 232: 23-25)<br><br>Mr. Juarez would program the PVA 350, set up a circuit board in the machine, make sure the pattern is correct, do a dry run, do a wet run, make sure his head was inside to check the thickness of the layer, clean it up, rerun it again until they got the desired thickness and width. The programmer has to fine tune the thickness of the conformal coating layer. **To facilitate the fine tuning process, the machine has to switch to a bypass door so a programmer can put their head inside the machine to make sure the spraying head is parallel to the door. Then a programmer does a dry run, a wet run, and checks the thickness of the layer. The layer has to be about 1.5 thousandths of an inch.** (Ex 3 Depo. Juarez Volume 1: 61:21-63:14)<br><br>**ADDITIONAL SAFETY MEASURES WERE INACTIVE, BYPASSED PURSUANT TO TRAINING BY PVA, AND NOT INCLUDED WITH EACH PVA 350**<br><br>• The system debug dated 5-1-09 indicates the machine needed the material lines, fixed or replaced the **Lexon side**, valve/2 micrometer needs to be, and they needed **to add a camera cable in the back of the machine**. Further, PVA Inc. presents no evidence the Lexon glass door was timely replaced or the camera cord was ever installed. (Exhibit 13, PVA 277)<br><br>• **Not all PVA 350s have the alleged safety features including an exhaust fan/conveyer belt/an auto shut down/exhaust blower/flow monitoring, and cameras.** Further, pursuant to training provided by PVA Inc., there are **bypass systems that must be utilized so programmers** |

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | **can complete their jobs**.  (Exhibit 17, PVA 63, 64, 219-220, 277, 279-280)

**BELOW PLAINTIFFS ASSERT SPECIFIC DISPUTES OF FACT REGARDING THE PVA 350'S MACHINE DEFECTS, INADEQUATE SAFETY MEASURES, AND THE VENTILATION SYSTEM.**

•      The alleged PVA safety guide states: "Some machines are equipped with an exhaust fan.  The exhaust fan is provided to exhaust fumes from the work area.  The exhaust flange should be connected to an appropriate ducting system that is capable of receiving 150 CFM.  Insufficient airflow through the exhaust system generates an error." However, **this manual was not provided in a hardcopy form to Space X based on the pictures PVA provided**.  (Exhibit 29, PVA 63)

•      The Exhaust Verification Process shows **some machines** have an auto shut down.  (Exhibit 29, PVA 64)

•      **A user has to visually inspect the position of a needle with respect to a calibration point and the user may have to physically reposition the needle**.  (Exhibit 29, PVA 69)

•      The PVA Product Overview indicated a number of safety items are not included on the PVA 350 automatically such as: conveyor type, passive programming camera, XY fiducial camera, exhaust blower, onboard computer, and flow |

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

38

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | monitoring. (Exhibit 29, PVA 220)<br><br>• There is a picture of the module, and there appears to be an insufficient exhaust system in the back of the machine. (Exhibit 29, PVA 4537, 4538, 4539, 4540, and 4542).<br><br>• The April 11, 2012 conformal coating video with Space X boards utilized the same chemicals as used at Space X at PVA Inc. (See Exhibit 9 and Exhibit 22)<br><br>• Exhibit 5, Video of the PVA 350 shows the machine is far too small for someone to use while wearing a ventilator.<br><br>• Video Exhibit 11 shows the conformal coating process in a PVA machine in 2010.<br><br>• Video Exhibit 8 shows all the different types of coating and also shows various designs that were not defective so it is great for comparison and explanation.<br><br>• The comparison PVA 350 shows there is a **low exhaust and no conveyer** belt option on the PVA 350. (Exhibit 20)<br><br>**PVA INC. PROVIDED TRAINING AND TRAINED MR. JUAREZ TO PUT HIS HEAD INSIDE THE PVA MACHINE WITHOUT ANY PROTECTIVE GEAR**<br><br>Ruben Juarez attended training at PVA Inc., and PVA trained him to put his head inside the machine while spraying without any protective gear. He attended these trainings while |

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | working for EMI and Space X. (Exhibit 24, 4458-4462) **END USERS MUST PUT THEIR HEAD INTO THE PVA 350 MACHINE TO CHECK THE THICKNESS OF THE CHEMICAL COATING AND TO SPRAY THE PROPER AREAS OF THE CIRCUIT BOARD** • The Wet Film Thickness Gauge shows how Mr. Juarez **had to measure the level of the fluid on the boards and is relevant to show he had to stick his head in the machine**. (Exhibit 23, PVA 1181 (Wet Film Thickness Gauge)) • Pursuant to email dated December 15, 2014 on 11:47 a.m. Bievenue emailed to Matupang indicating the **only way to know for sure the mix ratio is coming out of a spray valve is with flow monitors and if you don't have flow monitors you are "spraying blind."** (Exhibit 30) |
| 12. Third, the machine cannot be operated until a machine safety check is performed which ensures that all safety features are working properly: "The machine safety check ensures the workcell safety devices (emergency stop, door interlocks, light curtain, etc.) are operating properly. During startup, the operator must enter the safety check and complete it successfully. Otherwise the machine halts all operations." Urquhart Dec., PVA Manual and exhibits. | 12. Disputed. The PVA 350 does a quick check at the start up or a "0" check. However, PVA Inc. trained users to bypass this system with the bypass key. Further, a number of safety features are options that are not included with the PVA 350, inadequate, or were not operational. • (Dec. Ruben Juarez) • (Ex 3 Depo. Juarez Volume |

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| (Urquhart Dec., 3:2-6, 21, 96-99.) | I: 87:22-88:1) |
| | • (Ex 3 Depo. Juarez Volume 1: 89:14-18, 90:8-11) |
| | • (Ex 3 Depo. Juarez Volume 1: 121:16-19) |
| | • (Ex 3 Depo. Juarez Volume 1: 121: 22- 122:20, 122:22-123:1) |
| | • (Ex 3 Depo. Juarez Volume I: 123:19-124:12) |
| | • (Ex 4 Depo. Juarez Volume II: 226:12-227:6) |
| | • (Ex. 4 Depo. Juarez Volume II232:1-7, 232: 23-25) |
| | • (Ex 3 Depo. Juarez Volume 1: 61:21-63:14) |
| | • (Ex 3 Depo. Juarez Volume 1: 74:22-75:7) |
| | • (Exhibit 13, PVA 277) |
| | • (Exhibit 17, PVA 63, 64, 219-220, 277, 279-280) |
| | • (Exhibit 29, PVA 63, 64, 69, 220) |
| | • (PVA 4537, 4538, 4539, 4540, and 4542). |
| | • Exhibit 5, Video of the PVA 350 shows the machine is far too small for someone to use while wearing a ventilator. |
| | • • Video Exhibit 11 shows the conformal coating process in a PVA machine in 2010. |
| | • • Video Exhibit 8 shows all the different types of |

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | coating and also shows various designs that were not defective so it is great for comparison and explanation. |

- .(Exhibit 15, PVA 69)
- (Exhibit 20)
- (Exhibit 21, PVA 4537, 4538, 4540)
- (Exhibit 24, 4458-4462)
- (Exhibit 23, PVA 1181 (Wet Film Thickness Gauge))
- (Exhibit 30)

***Specific factual references with citations are set forth below for the court's convenience***.

**DEPOSITION TESTIMONY PORTRAYING THE DEFECTIVE DESIGN OF THE PVA 350 AND HOW END USERS WERE TRAINED TO USE THE MACHINE WITH THE DOOR OPEN BY PVA INC.**

The PVA 350 was built so a programmer had to bypass the safety mechanisms to program the machine. (Ex 3 Depo. Juarez Volume I: 87:22-88:1)

PVA Inc. trained Mr. Juarez to put his head in the PVA 350 machine and bypass the machine. (Ex 3 Depo. Juarez Volume 1: 89:14-18, 90:8-11)

Part of Mr. Juarez' training by PVA Inc. was to bypass the safety switch to do the programming of the PVA 350 machine. (Ex 3 Depo. Juarez Volume 1: 121:16-19)

Mr. Juarez was trained by PVA Inc. to open the door of the machine to

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

**STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT (Central District)**

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | perform programming job duties. (Ex 3 Depo. Juarez Volume 1: 121: 22-122:20, 122:22-123:1) |
| | Mr. Juarez believe it was unsafe for the operators to open the machine door and operate the PVA 350 because they could get their hand stuck in the machine, but he did not have a chemistry background so he did not know whether the chemicals were harmful or not, ***and he relied on the training provided by PVA Inc. that he could put is head safely in the machine while programming the machine***. (Ex 3 Depo. Juarez Volume I: 123:19-124:12) |
| | Mr. Juarez had to place his head into the machine to see what portions of the circuit boards were covered because he would not be able to see into the machine and view the fine spray pattern by just looking through the window. (Ex 4 Depo. Juarez Volume II: 226:12-227:6) |
| | Mr. Juarez was trained in 2011 by PVA Inc. through a hands on approach on how to use the PVA machine without any hazardous chemical training. (Ex. 4 Depo. Juarez Volume II232:1-7, 232: 23-25) |
| | Mr. Juarez would program the PVA 350, set up a circuit board in the machine, make sure the pattern is correct, do a dry run, do a wet run, make sure his head was inside to check the thickness of the layer, clean it up, rerun it again until they got the desired thickness and width. The programmer has to fine tune the thickness of the conformal coating layer. To facilitate the fine tuning process, the machine has to switch to a bypass door so a programmer can put their head inside the machine to make sure the spraying head is parallel to the door. Then a programmer does a dry run, a wet run, and checks the thickness of the layer. The layer has |

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | to be about 1.5 thousandths of an inch. (Ex 3 Depo. Juarez Volume 1: 61:21-63:14)

The PVA 350 was programmed by a handheld controller, and it was a rudimentary interface.  (Ex 3 Depo. Juarez Volume 1: 74:22-75:7)

**ADDITIONAL SAFETY MEASURES WERE INACTIVE, BYPASSED PURSUANT TO TRAINING BY PVA, AND NOT INCLUDED WITH EACH PVA 350**

•    The system debug dated 5-1-09 indicates the machine needed the material lines, fixed or replaced the **Lexon side**, valve/2 micrometer needs to be, and they needed **to add a camera cable in the back of the machine**.  Further, PVA Inc. presents no evidence the Lexon glass door was timely replaced or the camera cord was ever installed. (Exhibit 13, PVA 277)

•    <u>**Not all PVA 350s have the alleged safety features including an exhaust fan/conveyer belt/an auto shut down/exhaust blower/flow monitoring, and cameras**</u>.  Further, pursuant to training provided by PVA Inc., there are <u>**bypass systems that must be utilized so programmers can complete their jobs**</u>.  (Exhibit 17, PVA 63, 64, 219-220, 277, 279-280)


**BELOW PLAINTIFFS ASSERT SPECIFIC DISPUTES OF FACT REGARDING THE PVA 350'S MACHINE DEFECTS, INADEQUATE SAFETY MEASURES, AND THE VENTILATION SYSTEM.**

•    The alleged PVA safety guide states: "Some machines are equipped with an exhaust fan.  The exhaust fan |

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | is provided to exhaust fumes from the work area.  The exhaust flange should be connected to an appropriate ducting system that is capable of receiving 150 CFM.  Insufficient airflow through the exhaust system generates an error." However, **this manual was not provided in a hardcopy form to Space X based on the pictures PVA provided**.  (Exhibit 29, PVA 63)<br><br>•     The Exhaust Verification Process shows **some machines** have an auto shut down.  (Exhibit 29, PVA 64)<br><br>•     **A user has to visually inspect the position of a needle with respect to a calibration point and the user may have to physically reposition the needle**.  (Exhibit 29, PVA 69)<br><br>•     The PVA Product Overview indicated a number of safety items are not included on the PVA 350 automatically such as: conveyor type, passive programming camera, XY fiducial camera, exhaust blower, onboard computer, and flow monitoring. (Exhibit 29, PVA 220)<br><br>•     There is a picture of the module, and there appears to be an insufficient exhaust system in the back of the machine. (Exhibit 29, PVA 4537, 4538, 4539, 4540, and 4542).<br><br>•     The April 11, 2012 conformal coating video with Space X boards utilized the same chemicals as used at Space X at PVA Inc. (See Exhibit 9 and Exhibit 22)<br><br>•     Exhibit 5, Video of the PVA 350 shows the machine is far too small |

45

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

| **MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS** | **RESPONSE TO OPPOSITION** |
|---|---|
| | for someone to use while wearing a ventilator. |
| | •     Video Exhibit 11 shows the conformal coating process in a PVA machine in 2010. |
| | •     Video Exhibit 8 shows all the different types of coating and also shows various designs that were not defective so it is great for comparison and explanation. |
| | •     The comparison PVA 350 shows there is a **low exhaust and no conveyer** belt option on the PVA 350. (Exhibit 20) |
| | **PVA INC. PROVIDED TRAINING AND TRAINED MR. JUAREZ TO PUT HIS HEAD INSIDE THE PVA MACHINE WITHOUT ANY PROTECTIVE GEAR** |
| | Ruben Juarez attended training at PVA Inc., and PVA trained him to put his head inside the machine while spraying without any protective gear. He attended these trainings while working for EMI and Space X. (Exhibit 24, 4458-4462) |
| | **END USERS MUST PUT THEIR HEAD INTO THE PVA 350 MACHINE TO CHECK THE THICKNESS OF THE CHEMICAL COATING AND TO SPRAY THE PROPER AREAS OF THE CIRCUIT BOARD** |
| | •     The Wet Film Thickness Gauge shows how Mr. Juarez **had to measure the level of the fluid on the boards and is relevant to show he had to stick his head in the machine**. |

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | (Exhibit 23, PVA 1181 (Wet Film Thickness Gauge)) |
| | • Pursuant to email dated December 15, 2014 on 11:47 a.m. Bievenue emailed to Matupang indicating the **only way to know for sure the mix ratio is coming out of a spray valve is with flow monitors and if you don't have flow monitors you are "spraying blind."** (Exhibit 30) |
| 13. The machine's manual lists all of these features and explicitly warn users not to "disable the safety features of the machine." PVA Manual. (Urquhart Dec., 96.) | 13. Disputed to the extent Defendant infers that Mr. Juarez saw the manual as Mr. Juarez was never provided the manual. Further, the manual was not available in the computer connected to the PVA 350 because the PVA 350 is a standalone machine, the manual was not uploaded to the company network. (Dec. Ruben Juarez) Also, PVA provided photographs of the PVA 350 machine when it shipped and there is no hardcopy of the manual included in the delivery. Further, PVA Inc. specifically trained Mr. Juarez to bypass the safety systems so the machine could be utilized as it was designed defectively and could not be utilized otherwise. • (Dec. Ruben Juarez) • (Dec. Glen Stevick) • (Ex 3 Depo. Juarez Volume |

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

| **MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS** | **RESPONSE TO OPPOSITION** |
|---|---|
| | 1: 91:3-93:24, 96:10-19, 98:20-21, 100<br>• (Ex 3 Depo. Juarez Volume I: 87:22-88:1)<br>• (Ex 3 Depo. Juarez Volume 1: 121:16-19)<br>• (Ex 3 Depo. Juarez Volume 1: 121: 22- 122:20, 122:22-123:1)<br>• (Ex 3 Depo. Juarez Volume I: 123:19-124:12)<br>• (Ex 4 Depo. Juarez Volume II: 226:12-227:6)<br>• (Ex 3 Depo. Juarez Volume 1: 61:21-63:14)<br>• (Exhibit 31, PVA 51)<br>• (Exhibit 31, PVA30-32)<br>• (Exhibit 31, PVA 40-41)<br>• (Exhibit 15, PVA 69)<br>• (Exhibit 16, PVA 0272)<br>• (Exhibit 31, PVA 30-32, 51)<br>• (Exhibit 29, PVA 63, 64, 69, 220)<br>• (See Exhibit 9 and Exhibit 22)<br>• Exhibit 5, Video of the PVA 350 shows the machine is far too small for someone to use while wearing a ventilator.<br>• Video Exhibit 11 shows the conformal coating process in a PVA machine in 2010.<br>• Video Exhibit 8 shows all the different types of |

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | coating and also shows various designs that were not defective so it is great for comparison and explanation.<br>• . (Exhibit 15, PVA 69)<br>• (Exhibit 20)<br>• (Exhibit 21, PVA 4537, 4538, 4540)<br>• (Exhibit 18, PVA 40)<br>• (Exhibit 35)<br>• (Exhibit 24, 4458-4462)<br>• (Exhibit 24)<br>• (Exhibit 23, PVA 1181 (Wet Film Thickness Gauge))<br>• (Exhibit 30)<br>***Specific factual references with citations are set forth below for the court's convenience***.<br><br>**DEPOSITION TESTIMONY SHOWING THERE IS DISPUTE AS TO THE CONTENTS OF THE PVA MANUAL, THE SAFETY OF THE PVA 350, THE DEFECTS OF THE PVA 350, AND PVA INC.'S TRAINING**<br><br>Mr. Juarez never read the manual for the PVA 350 because it was not available to him, but he was trained by PVA Inc. on how to use the PVA machines, and at these trainings PVA Inc. never told Mr. Juarez to review any manual. (Ex 3 Depo. Juarez Volume 1: 91:3-93:24, 96:10-19, 98:20-21, 100)<br><br>The PVA 350 was built so a programmer had to bypass the safety mechanisms to program the machine. |

BALABAN & SPIELBERGER LLP<br>11999 SAN VICENTE BOULEVARD, SUITE 345<br>LOS ANGELES, CALIFORNIA 90049

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | (Ex 3 Depo. Juarez Volume I: 87:22-88:1) |
| | PVA Inc. trained Mr. Juarez to put his head in the PVA 350 machine and bypass the machine. (Ex 3 Depo. Juarez Volume 1: 89:14-18, 90:8-11) |
| | Part of Mr. Juarez' training by PVA Inc. was to bypass the safety switch to do the programming of the PVA 350 machine. (Ex 3 Depo. Juarez Volume 1: 121:16-19) |
| | Mr. Juarez was trained by PVA Inc. to open the door of the machine to perform programming job duties. (Ex 3 Depo. Juarez Volume 1: 121: 22-122:20, 122:22-123:1) |
| | Mr. Juarez believe it was unsafe for the operators to open the machine door and operate the PVA 350 because they could get their hand stuck in the machine, but he did not have a chemistry background so he did not know whether the chemicals were harmful or not, *and he relied on the training provided by PVA Inc. that he could put is head safely in the machine while programming the machine*. (Ex 3 Depo. Juarez Volume I: 123:19-124:12) |
| | Mr. Juarez had to place his head into the machine to see what portions of the circuit boards were covered because he would not be able to see into the machine and view the fine spray pattern by just looking through the window. (Ex 4 Depo. Juarez Volume II: 226:12-227:6) |
| | Mr. Juarez was trained in 2011 by PVA Inc. through a hands on approach on how to use the PVA machine without any hazardous chemical training. (Ex. 4 Depo. Juarez Volume II232:1-7, 232: 23-25) |
| | Mr. Juarez would program the PVA 350, set up a circuit board in the |

50

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | machine, make sure the pattern is correct, do a dry run, do a wet run, make sure his head was inside to check the thickness of the layer, clean it up, rerun it again until they got the desired thickness and width.  The programmer has to fine tune the thickness of the conformal coating layer.  To facilitate the fine tuning process, the machine has to switch to a bypass door so a programmer can put their head inside the machine to make sure the spraying head is parallel to the door.  Then a programmer does a dry run, a wet run, and checks the thickness of the layer.  The layer has to be about 1.5 thousandths of an inch. (Ex 3 Depo. Juarez Volume 1: 61:21-63:14)<br><br>The PVA 350 was programmed by a handheld controller, and it was a rudimentary interface.  (Ex 3 Depo. Juarez Volume 1: 74:22-75:7)<br><br>**BELOW ARE FACTUAL ALLEGATIONS REGARDING THE MANUAL NOT BEING PRODUCED AND PVA MANUAL BEING INEFFECTIVE AND INSUFFICIENT**<br><br>•      PVA specifically indicated the manual was for production and **operators not technical personnel, but it might be "useful for introduction or training**." (Exhibit 31, PVA 51)<br><br>•      The manual was **only produced electronically**.  (No hardcopy.) (Exhibit 31, PVA30-32)<br><br>•      The Operations and Maintenance manual **does not warn to wear a face mask or protection** from any inhalants.  (Exhibit 31, PVA |

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | 40-41)
•   The manual indicates the PVA machines require that end users must **visually inspect the position of the needle with response to a calibration point and physically reposition the needle.** (Exhibit 15, PVA 69)
•   The Final Shipment Sign-Off does not indicate the operating manual was sent to Space X only machine photos were taken. Also, there is an issue of facts as to whether the **exhaust switch was included.** (Exhibit 16, PVA 0272)
•   The PVA manual was not **physically produced and there was no requirement to review it**. (Exhibit 31, PVA 30-32, 51)
**BELOW PLAINTIFFS ASSERT SPECIFIC DISPUTES OF FACT REGARDING THE PVA 350'S MACHINE DEFECTS, INADEQUATE SAFETY MEASURES, AND THE VENTILATION SYSTEM.**
•   The alleged PVA safety guide states: "Some machines are equipped with an exhaust fan. The exhaust fan is provided to exhaust fumes from the work area. The exhaust flange should be connected to an appropriate ducting system that is capable of receiving 150 CFM. Insufficient airflow through the exhaust system generates an error." However, **this manual was not provided in a hardcopy form to Space X based on the pictures PVA provided**. (Exhibit 29, PVA 63)
•   The Exhaust Verification |

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | Process shows **some machines** have an auto shut down.  (Exhibit 29, PVA 64) |
| | •    **A user has to visually inspect the position of a needle with respect to a calibration point and the user may have to physically reposition the needle**.  (Exhibit 29, PVA 69) |
| | •    The PVA Product Overview indicated a number of safety items are not included on the PVA 350 automatically such as: conveyor type, passive programming camera, XY fiducial camera, exhaust blower, onboard computer, and flow monitoring. (Exhibit 29, PVA 220) |
| | •    There is a picture of the module, and there appears to be an insufficient exhaust system in the back of the machine. (Exhibit 29, PVA 4537, 4538, 4539, 4540, and 4542). |
| | •    The April 11, 2012 conformal coating video with Space X boards utilized the same chemicals as used at Space X at PVA Inc. (See Exhibit 9 and Exhibit 22) |
| | •    Exhibit 5, Video of the PVA 350 shows the machine is far too small for someone to use while wearing a ventilator. |
| | •    Video Exhibit 11 shows the conformal coating process in a PVA machine in 2010. |
| | •    Video Exhibit 8 shows all the different types of coating and also shows various designs that were not defective so it is great for comparison |

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | and explanation. |
| | • The comparison PVA 350 shows there is a **low exhaust and no conveyer** belt option on the PVA 350. (Exhibit 20) |
| | **PVA INC. PROVIDED TRAINING AND TRAINED MR. JUAREZ TO PUT HIS HEAD INSIDE THE PVA MACHINE WITHOUT ANY PROTECTIVE GEAR** |
| | Ruben Juarez attended training at PVA Inc., and PVA trained him to put his head inside the machine while spraying without any protective gear. He attended these trainings while working for EMI and Space X. (Exhibit 24, 4458-4462) |
| | **END USERS MUST PUT THEIR HEAD INTO THE PVA 350 MACHINE TO CHECK THE THICKNESS OF THE CHEMICAL COATING AND TO SPRAY THE PROPER AREAS OF THE CIRCUIT BOARD** |
| | • The Wet Film Thickness Gauge shows how Mr. Juarez **had to measure the level of the fluid on the boards and is relevant to show he had to stick his head in the machine**. (Exhibit 23, PVA 1181 (Wet Film Thickness Gauge)) |
| | • Pursuant to email dated December 15, 2014 on 11:47 a.m. Bievenue emailed to Matupang indicating the **only way to know for sure the mix ratio is coming out of a spray valve is with flow monitors and if you don't have flow monitors you are "spraying blind."** (Exhibit |

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

54

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
|  | 30) |
| 14.    It also states:  "NOTE: The safety features should NEVER be bypassed, disabled or tampered with.  Precision Valve & Automation, Inc. is not responsible for any damages incurred, mechanical or human, because of alteration or destruction of any safety features."<br><br>PVA Manual.<br><br>(Urquhart Dec., 74, 96.) | 14. Disputed to the extent Defendant infers that Mr. Juarez saw the manual as Mr. Juarez was never provided the manual. Further, the manual was not available in the computer connected to the PVA 350 because the PVA 350 is a standalone machine, the manual was not uploaded to the company network.<br><br>Mr. Juarez never read the manual for the PVA 350 because it was not available to him, but he was trained by PVA Inc. on how to use the PVA machines, and at these trainings PVA Inc. never told Mr. Juarez to review any manual.  (Ex 3 Depo. Juarez Volume 1: 91:3-93:24, 96:10-19, 98:20-21, 100<br><br>Also, PVA provided photographs of the PVA 350 machine when it shipped and there is no hardcopy of the manual included in the delivery. Further, PVA Inc. specifically trained Mr. Juarez to bypass the safety systems so the machine could be utilized as it was designed defectively and could not be utilized otherwise.<br>• (Dec. Glen Stevick)<br>• (Dec. Ruben Juarez)<br>• (Ex 3 Depo. Juarez Volume 1: 91:3-93:24, 96:10-19, 98:20-21, 100)<br>• (Ex 3 Depo. Juarez Volume I: 87:22-88:1) |

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | • (Ex 3 Depo. Juarez Volume 1: 89:14-18, 90:8-11)<br>• (Ex 3 Depo. Juarez Volume 1: 121:16-19)<br>• (Ex 3 Depo. Juarez Volume 1: 121: 22- 122:20, 122:22-123:1)<br>• (Ex 3 Depo. Juarez Volume I: 123:19-124:12)<br>• (Ex 4 Depo. Juarez Volume II: 226:12-227:6)<br>• (Ex. 4 Depo. Juarez Volume II232:1-7, 232: 23-25)<br>• (Ex 3 Depo. Juarez Volume 1: 61:21-63:14)<br>• (Exhibit 31, PVA 51)<br>• (Exhibit 31, PVA30-32)<br>• (Exhibit 31, PVA 40-41)<br>• (Exhibit 15, PVA 69)<br>• (Exhibit 16, PVA 0272)<br>• (Exhibit 31, PVA 30-32, 51)<br>• (Exhibit 29, PVA 63, 64, 69, 220)<br>• (See Exhibit 9 and Exhibit 22)<br>• Exhibit 5, Video of the PVA 350 shows the machine is far too small for someone to use while wearing a ventilator.<br>• Video Exhibit 11 shows the conformal coating process in a PVA machine in 2010.<br>• Video Exhibit 8 shows all the different types of coating and also shows various designs that were not defective so it is great for comparison and explanation.<br>• (Exhibit 15, PVA 69)<br>• (Exhibit 20) |

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | - (Exhibit 21, PVA 4537, 4538, 4540) |
| | - (Exhibit 18, PVA 40) |
| | - (Exhibit 35) |
| | - (Exhibit 24, 4458-4462) |
| | - (Exhibit 24) |
| | - (Exhibit 23, PVA 1181 (Wet Film Thickness Gauge)) |
| | - (Exhibit 30) |
| | ***Specific factual references with citations are set forth below for the court's convenience***. |
| | **DEPOSITION TESTIMONY PORTRAYING THE DEFECTIVE DESIGN OF THE PVA 350 AND HOW END USERS WERE TRAINED TO USE THE MACHINE WITH THE DOOR OPEN BY PVA INC.** |
| | Mr. Juarez never read the manual for the PVA 350 because it was not available to him, but he was trained by PVA Inc. on how to use the PVA machines, and at these trainings PVA Inc. never told Mr. Juarez to review any manual.  (Ex 3 Depo. Juarez Volume 1: 91:3-93:24, 96:10-19, 98:20-21, 100) |
| | The PVA 350 was built so a programmer had to bypass the safety mechanisms to program the machine. (Ex 3 Depo. Juarez Volume I: 87:22-88:1) |
| | PVA Inc. trained Mr. Juarez to put his head in the PVA 350 machine and bypass the machine.  (Ex 3 Depo. Juarez Volume 1: 89:14-18, 90:8-11) |

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | Part of Mr. Juarez' training by PVA Inc. was to bypass the safety switch to do the programming of the PVA 350 machine.  (Ex 3 Depo. Juarez Volume 1: 121:16-19) |
| | Mr. Juarez was trained by PVA Inc. to open the door of the machine to perform programming job duties.  (Ex 3 Depo. Juarez Volume 1: 121: 22-122:20, 122:22-123:1) |
| | Mr. Juarez believe it was unsafe for the operators to open the machine door and operate the PVA 350 because they could get their hand stuck in the machine, but he did not have a chemistry background so he did not know whether the chemicals were harmful or not, *and he relied on the training provided by PVA Inc. that he could put is head safely in the machine while programming the machine*.  (Ex 3 Depo. Juarez Volume I: 123:19-124:12) |
| | Mr. Juarez had to place his head into the machine to see what portions of the circuit boards were covered because he would not be able to see into the machine and view the fine spray pattern by just looking through the window.  (Ex 4 Depo. Juarez Volume II: 226:12-227:6) |
| | Mr. Juarez was trained in 2011 by PVA Inc. through a hands on approach on how to use the PVA machine without any hazardous chemical training.  (Ex. 4 Depo. Juarez Volume II232:1-7, 232: 23-25) |
| | Mr. Juarez would program the PVA 350, set up a circuit board in the machine, make sure the pattern is correct, do a dry run, do a wet run, make sure his head was inside to check the thickness of the layer, clean it up, rerun it again until they got the desired thickness and width.  The programmer has to fine tune the thickness of the conformal coating |

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

| **MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS** | **RESPONSE TO OPPOSITION** |
|---|---|
| | layer.  To facilitate the fine tuning process, the machine has to switch to a bypass door so a programmer can put their head inside the machine to make sure the spraying head is parallel to the door.  Then a programmer does a dry run, a wet run, and checks the thickness of the layer.  The layer has to be about 1.5 thousandths of an inch.  (Ex 3 Depo. Juarez Volume 1: 61:21-63:14) |
| | The PVA 350 was programmed by a handheld controller, and it was a rudimentary interface.  (Ex 3 Depo. Juarez Volume 1: 74:22-75:7) |
| | **BELOW ARE FACTUAL ALLEGATIONS REGARDING THE MANUAL NOT BEING PRODUCED AND PVA MANUAL BEING INEFFECTIVE AND INSUFFICIENT** |
| | •      PVA specifically indicated the manual was for production and **operators not technical personnel, but it might be "useful for introduction or training**." (Exhibit 31, PVA 51) |
| | •      The manual was **only produced electronically**.  (No hardcopy.) (Exhibit 31, PVA30-32) |
| | •      The Operations and Maintenance manual **does not warn to wear a face mask or protection** from any inhalants.  (Exhibit 31, PVA 40-41) |
| | •      The manual indicates the PVA machines require that end users must **visually inspect the position of the needle with response to a calibration point and physically reposition the** |

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | **needle.**  (Exhibit 15, PVA 69)

•      The Final Shipment Sign-Off does not indicate the operating manual was sent to Space X only machine photos were taken.  Also, there is an issue of facts as to whether the **exhaust switch was included.** (Exhibit 16, PVA 0272)

•      The PVA manual was not **physically produced and there was no requirement to review it**. (Exhibit 31, PVA 30-32, 51)

**BELOW PLAINTIFFS ASSERT SPECIFIC DISPUTES OF FACT REGARDING THE PVA 350'S MACHINE DEFECTS, INADEQUATE SAFETY MEASURES, AND THE VENTILATION SYSTEM.**

•      The alleged PVA safety guide states: "Some machines are equipped with an exhaust fan.  The exhaust fan is provided to exhaust fumes from the work area.  The exhaust flange should be connected to an appropriate ducting system that is capable of receiving 150 CFM.  Insufficient airflow through the exhaust system generates an error." However, **this manual was not provided in a hardcopy form to Space X based on the pictures PVA provided**.  (Exhibit 29, PVA 63)

•      The Exhaust Verification Process shows **some machines** have an auto shut down.  (Exhibit 29, PVA 64)

•      **A user has to visually inspect the position of a needle with respect to a calibration point and the user** |

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

| **MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS** | **RESPONSE TO OPPOSITION** |
|---|---|
| | **may have to physically reposition the needle**.  (Exhibit 29, PVA 69) |

• The PVA Product Overview indicated a number of safety items are not included on the PVA 350 automatically such as: conveyor type, passive programming camera, XY fiducial camera, exhaust blower, onboard computer, and flow monitoring. (Exhibit 29, PVA 220)

• There is a picture of the module, and there appears to be an insufficient exhaust system in the back of the machine. (Exhibit 29, PVA 4537, 4538, 4539, 4540, and 4542).

• The April 11, 2012 conformal coating video with Space X boards utilized the same chemicals as used at Space X at PVA Inc. (See Exhibit 9 and Exhibit 22)

• Exhibit 5, Video of the PVA 350 shows the machine is far too small for someone to use while wearing a ventilator.

• Video Exhibit 11 shows the conformal coating process in a PVA machine in 2010.

• Video Exhibit 8 shows all the different types of coating and also shows various designs that were not defective so it is great for comparison and explanation.

• The comparison PVA 350 shows there is a **low exhaust and no conveyer** belt option on the PVA 350. (Exhibit 20)

**PVA INC. PROVIDED TRAINING**

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | **AND TRAINED MR. JUAREZ TO PUT HIS HEAD INSIDE THE PVA MACHINE WITHOUT ANY PROTECTIVE GEAR** |
| | Ruben Juarez attended training at PVA Inc., and PVA trained him to put his head inside the machine while spraying without any protective gear. He attended these trainings while working for EMI and Space X. (Exhibit 24, 4458-4462) |
| | **END USERS MUST PUT THEIR HEAD INTO THE PVA 350 MACHINE TO CHECK THE THICKNESS OF THE CHEMICAL COATING AND TO SPRAY THE PROPER AREAS OF THE CIRCUIT BOARD** |
| | •     The Wet Film Thickness Gauge shows how Mr. Juarez **had to measure the level of the fluid on the boards and is relevant to show he had to stick his head in the machine**. (Exhibit 23, PVA 1181 (Wet Film Thickness Gauge)) |
| | •     Pursuant to email dated December 15, 2014 on 11:47 a.m. Bievenue emailed to Matupang indicating the **only way to know for sure the mix ratio is coming out of a spray valve is with flow monitors and if you don't have flow monitors you are "spraying blind."** (Exhibit 30) |
| 15.    "Operation of your workcell involves, air pressure, electrical power and mechanical devices *and the use of Hazardous materials*....  There are no dangerous materials or chemicals used in the operation of the machine *except for the required* | 15. Disputed to the extent Defendant infers that Mr. Juarez saw the manual as Mr. Juarez was never provided the manual.  Further, the manual was not available in the computer connected to the PVA 350 because the PVA 350 is |

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

| **MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS** | **RESPONSE TO OPPOSITION** |
|---|---|
| *application material.* The application material *should include a Material Safety Data Sheet (MSDS)*, which specifies known dangers and toxicity."<br><br>PVA Manual.<br><br>(Urquhart Dec., 86-87 (emphasis added).). | a standalone machine, the manual was not uploaded to the company network.<br><br>Also, PVA provided photographs of the PVA 350 machine when it shipped and there is no hardcopy of the manual included in the delivery. Further, PVA Inc. specifically trained Mr. Juarez to bypass the safety systems so the machine could be utilized as it was designed defectively and could not be utilized otherwise.<br><br><ul><li>(Dec. Glen Stevick)</li><li>(Dec. Ruben Juarez)</li><li>(Ex 3 Depo. Juarez Volume 1: 91:3-93:24, 96:10-19, 98:20-21, 100)</li><li>(Ex 3 Depo. Juarez Volume I: 87:22-88:1)</li><li>(Ex 3 Depo. Juarez Volume 1: 89:14-18, 90:8-11)</li><li>(Ex 3 Depo. Juarez Volume 1: 121:16-19)</li><li>(Ex 3 Depo. Juarez Volume 1: 121: 22- 122:20, 122:22-123:1)</li><li>(Ex 3 Depo. Juarez Volume I: 123:19-124:12)</li><li>(Ex 4 Depo. Juarez Volume II: 226:12-227:6)</li><li>(Ex. 4 Depo. Juarez Volume II232:1-7, 232: 23-25)</li><li>(Ex 3 Depo. Juarez Volume 1: 61:21-63:14)</li><li>(Exhibit 31, PVA 51)</li><li>(Exhibit 31, PVA30-32)</li><li>(Exhibit 31, PVA 40-41)</li></ul> |

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | • (Exhibit 15, PVA 69) |
| | • (Exhibit 16, PVA 0272) |
| | • (Exhibit 31, PVA 30-32, 51) |
| | • (Exhibit 29, PVA 63, 64, 69, 220) |
| | • (See Exhibit 9 and Exhibit 22) |
| | • Exhibit 5, Video of the PVA 350 shows the machine is far too small for someone to use while wearing a ventilator. |
| | • Video Exhibit 11 shows the conformal coating process in a PVA machine in 2010. |
| | • Video Exhibit 8 shows all the different types of coating and also shows various designs that were not defective so it is great for comparison and explanation. |
| | • (Exhibit 15, PVA 69) |
| | • (Exhibit 20) |
| | • (Exhibit 21, PVA 4537, 4538, 4540) |
| | • (Exhibit 18, PVA 40) |
| | • (Exhibit 35) |
| | • (Exhibit 24, 4458-4462) |
| | • (Exhibit 24) |
| | • (Exhibit 23, PVA 1181 (Wet Film Thickness Gauge)) |
| | • (Exhibit 30) |
| | • (See Exhibit 22, PVA |

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

**STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**
**(Central District)**

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | 4463-4481) |
| | • (See Exhibit 9 and Exhibit 22) |
| | • (Exhibit 22, PVA 23 and 24) |
| | • (Exhibit 22 PVA 4449-4452) |
| | • (Exhibit 22 PVA 4463-4481) |
| | • (Exhibit 22) |

*Specific factual references with citations are set forth below for the court's convenience.*

**FAILURE TO WARN/WARNING ON MACHINE IS REGARDING HAZARD OF VOLTAGE NOT CHEMICALS**

•      The PVA Manual does not warn users to use a face mask or ventilator. (Exhibit 18, PVA 40)

•      The warning on the sides states, "WARNING, Hazardous voltage. Power shall be disconnected before enclosure is opened.  Enclosure shall be closed before power is restored." (Exhibit 35)

**DEPOSITION TESTIMONY REGARDING TRAINING RECEIVED BY MR. JUAREZ AND INADEQUATE WARNINGS.**

Mr. Juarez never read the manual for the PVA 350 because it was not available to him, but he was trained by PVA Inc. on how to use the PVA machines, and at these trainings PVA Inc. never told Mr. Juarez to review any manual.  (Ex 3 Depo. Juarez Volume 1: 91:3-93:24, 96:10-19,

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

**STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT (Central District)**

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | 98:20-21, 100:4-9)<br><br>Mr. Juarez never called the machine a work cell. (Ex 4 Depo. Juarez Volume II: 204 :4-5)<br><br>Mr. Juarez was never given any written instructions with the incoming Humiseal products that were delivered to Space X. (Ex 4 Depo. Juarez Volume II: 220:5-11)<br><br>Mr. Juarez indicated he does not have a chemistry background at his deposition on March 8, 2018. (Ex 3 Depo. Juarez Volume 1: 55:21-56:5)<br><br>Mr. Juarez was trained by PVA Inc. to open the door of the machine to perform programming job duties. (Ex 3 Depo. Juarez Volume 1: 121: 22-122:20, 122:22-123:1)<br><br>Mr. Juarez believed it was unsafe for the operators to open the machine door and operate the PVA 350 because they could get their hand stuck in the machine, Additionally, he did not have a chemistry background so he did not know whether the chemicals were harmful or not, and he relied on the training provided by PVA Inc. that he could put is head safely in the machine while programming the machine. (Ex 3 Depo. Juarez Volume I: 123:19-124:12)<br><br>**BELOW ARE FACTUAL ALLEGATIONS REGARDING THE MANUAL NOT BEING PRODUCED AND PVA MANUAL BEING INEFFECTIVE AND INSUFFICIENT**<br><br>• PVA specifically indicated the manual was for production and **operators not technical personnel, but it might be "useful for introduction or training**." (Exhibit |

| **MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS** | **RESPONSE TO OPPOSITION** |
|---|---|
| | 31, PVA 51) |
| | • The manual was **only produced electronically**.  (No hardcopy.) (Exhibit 31, PVA30-32) |
| | • The Operations and Maintenance manual **does not warn to wear a face mask or protection** from any inhalants.  (Exhibit 31, PVA 40-41) |
| | • The manual indicates the PVA machines require that end users must **visually inspect the position of the needle with response to a calibration point and physically reposition the needle.**  (Exhibit 15, PVA 69) |
| | • The Final Shipment Sign-Off does not indicate the operating manual was sent to Space X only machine photos were taken.  Also, there is an issue of facts as to whether the **exhaust switch was included.** (Exhibit 16, PVA 0272) |
| | • The PVA manual was not **physically produced and there was no requirement to review it**. (Exhibit 31, PVA 30-32, 51) |
| | **BELOW PLAINTIFFS ASSERT SPECIFIC DISPUTES OF FACT REGARDING THE PVA 350'S MACHINE DEFECTS, INADEQUATE SAFETY MEASURES, AND THE VENTILATION SYSTEM.** |
| | • The alleged PVA safety guide states: "Some machines are equipped with an exhaust fan.  The exhaust fan is provided to exhaust fumes from the work area.  The exhaust flange should |

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | be connected to an appropriate ducting system that is capable of receiving 150 CFM. Insufficient airflow through the exhaust system generates an error." However, **this manual was not provided in a hardcopy form to Space X based on the pictures PVA provided**. (Exhibit 29, PVA 63)

• The Exhaust Verification Process shows **some machines** have an auto shut down. (Exhibit 29, PVA 64)

• **A user has to visually inspect the position of a needle with respect to a calibration point and the user may have to physically reposition the needle**. (Exhibit 29, PVA 69)

• The PVA Product Overview indicated a number of safety items are not included on the PVA 350 automatically such as: conveyor type, passive programming camera, XY fiducial camera, exhaust blower, onboard computer, and flow monitoring. (Exhibit 29, PVA 220)

• There is a picture of the module, and there appears to be an insufficient exhaust system in the back of the machine. (Exhibit 29, PVA 4537, 4538, 4539, 4540, and 4542).

• The April 11, 2012 conformal coating video with Space X boards utilized the same chemicals as used at Space X at PVA Inc. (See Exhibit 9 and Exhibit 22)

• Exhibit 5, Video of the PVA 350 shows the machine is far too small for someone to use while wearing a |

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | ventilator. |

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

• Video Exhibit 11 shows the conformal coating process in a PVA machine in 2010.

• Video Exhibit 8 shows all the different types of coating and also shows various designs that were not defective so it is great for comparison and explanation.

• The comparison PVA 350 shows there is a **low exhaust and no conveyer** belt option on the PVA 350. (Exhibit 20)

**PVA INC. PROVIDED TRAINING AND TRAINED MR. JUAREZ TO PUT HIS HEAD INSIDE THE PVA MACHINE WITHOUT ANY PROTECTIVE GEAR**

Ruben Juarez attended training at PVA Inc., and PVA trained him to put his head inside the machine while spraying without any protective gear. He attended these trainings while working for EMI and Space X. (Exhibit 24, 4458-4462)

**END USERS MUST PUT THEIR HEAD INTO THE PVA 350 MACHINE TO CHECK THE THICKNESS OF THE CHEMICAL COATING AND TO SPRAY THE PROPER AREAS OF THE CIRCUIT BOARD**

• The Wet Film Thickness Gauge shows how Mr. Juarez **had to measure the level of the fluid on the boards and is relevant to show he had to stick his head in the machine**. (Exhibit 23, PVA 1181 (Wet Film

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | Thickness Gauge)) |
| | • Pursuant to email dated December 15, 2014 on 11:47 a.m. Bievenue emailed to Matupang indicating the **only way to know for sure the mix ratio is coming out of a spray valve is with flow monitors and if you don't have flow monitors you are "spraying blind."** (Exhibit 30) |
| | ***PVA HAD KNOWLEDGE OF THE CHEMICALS BEING UTILIZED BY SPACE X AND WAS INVOLVED IN SUBSEQUENT MODIFICATIONS TO THE MACHINE INVOLVING VARIOUS CHEMICALS*** |
| | • PVA Inc was aware of the chemicals being utilized with the PVA 350. including the **transition to Arathane**.  (See Exhibit 22, PVA 4463-4481) |
| | • The April 11, 2012 conformal coating video with Space X boards utilized the **same chemicals as used at Space X at PVA Inc**. (See Exhibit 9 and Exhibit 22) |
| | • On September 19, 2013, PVA Inc. made further modifications to the subject machine including reworking the dispense system on the machine to connect one cartridge to the one gallon tank for "**automatic solvent flush of Arathane 5705**." (Exhibit 22, PVA 23 and 24) |
| | • On July 30, 2009, |

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | PVA/Andrew Haraburda serviced the W3267 (subject PVA 350 machine) and this description of the work/changes included:  adding solvent flush option (6 oz cartridge, 3 way ball valve, O-ISPSI Precision Regulator, which shows **PVA Inc. was continuing to modify and upgrade the machine. Then PVA Inc. specifically recommended Space X alter the solvent to a different solvent stating "Space X may need to use a different solvent (i.e. Xylene)."** (Exhibit 22 PVA 4449-4452) |

•      Pursuant to email chain dated March 13, 2012 Jonathan Urquhart **(PVA) was aware of Space X's use of Arathane 5750**   The email specifically states, "I think David has spoken to you **about our customer Spac**e X.  They build full blown rocket ships.  **They plan on pre-mixing this material part A part B and a 3rd part, thinner in small batches apply to board and the purge system** because of shelf life once mixed.  **Sounds screwy to me.**"  They were looking for a demo on the 27th of March.  (Exhibit 22, PVA 4463-4481)

•      Pursuant to email dated March 15, 2012 to Jonathan Urquhart, PVA was preparing a demo on the PVA 650 and **PVA were working with the same chemical materials Space X was utilizing, but PVA did not**

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

| **MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS** | **RESPONSE TO OPPOSITION** |
|---|---|
| | **want Space X to know and PVA indicated they were going to convey to Space X that the materials were similar, but not the exact same**.  .  (Exhibit 22, PVA 4463-4481) |
| | •     Pursuant to email dated March 30, 2012, the test at PVA Inc. was rescheduled to **4-11-12 to view the** 3 part mixing process. (Exhibit 22, PVA 4463-4481) |
| | •     Pursuant to email from David Gomez to Johnathan (PVA) Urquhart dated May 11, 2012 at 2:11 p.m., Space X talked about retrofitting the PVA 350, and then subsequently there was confirmation from Jon indicating **Space X wanted to duplicate what was done during the visit.**  (Exhibit 22, PVA 4463-4481) |
| | •     Jon Urquart performed **the demo for Space X on 4-11-12**. (Exhibit 22, PVA 4463-4481) |
| | •     Email dated December 2, 2014 at 9:03 a.m. Mr. Urquhart (PVA) indicated to Mr. Matupang there would be 2 demos including a coating with **Arathane 2 part mix and spray and dispensing using a 650 or Delta 6 with board head**, JDX (underfill), SVX (past), and FC100 (solder mask). (Exhibit 22) |

72

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | • On November 17, 2014, Mr. Urquhart (PVA) asked is Space X wanted to mix on the fly with **5750**?  (Exhibit 22)<br><br>• On January 9, 2013 at 10:38 a.m. David Gomez (PVA) emailed Brian Ignaut (Space X) **doing follow up on the "two part material application project you were working on and kindly presented us with**." There was inquiry as to whether there were any developments in the first few months of 2013. (Exhibit 22)<br><br>• On December 3, 2012 at 12:01 PM David Gomez (PVA) wrote Scott Abarta asking for the **two part material brand and part # as well as any MSDS and data sheets**.  Also, there was a request for a shot size and cycle time per part if possible. (Exhibit 22)<br><br>• On **September 10, 2013**, Mr. Gomez (PVA) indicated "they only want a 20 oz cartridge retainer & cap with spray & needle valve for the pre-mix material and 6oz cartridge retainer & cap **for the solvent, so it can flush the premixed material out right after doing a batch of boards**." Mr. Gomez indicated he was **familiar with the "fluid delivery line" because he had done it "several times."** He also indicated they were "**not there yet**" for the two part **coating spraying**.  (Exhibit 22) |

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | •     On September 9, 2013, Richard Bievenue (PVA) wrote Jonathan Connelly (ccing David Filbert, David Gomez, and Michael R. Leonard) indicating that **he spoke with Duc Phan (Space X) about the 350 machine and how Space X was switching to utilizing a 2 part material including Arathane 5750.  There was discussion about premising the solvents and flushing the solvent valves**.  Also, there was interest regarding a 2 component meter mix system. (Exhibit 22) <br><br> •     On September 18, 2013 at 12:41 p.m., **Mr. Gomez (PVA) indicated that this is not the first time they have done a two part coating system and he thought they were putting to many resources into this. The email specifically references Arathane** 5750. (Exhibit 22) <br><br> •     On September 13, 2013, from Duc Phan (Space X) to Jonathan Connelly, Michael R. Leonard (ccing Richard Bievenue and David Filbert) explained the process with pictures. **Specifically, he indicated that Space X removed the hoses from the spray dispensing head and connected the hoses from the Arathane material and solvent to it.  He further explained when the Arathane material was not in use they vaped the solvent hose and connect the** |

BALABAN & SPIELBERGER LLP<br>11999 SAN VICENTE BOULEVARD, SUITE 345<br>LOS ANGELES, CALIFORNIA 90049

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | **Arathane material hose to the other head just for a place holder.  He also explained that Arathane 5750 part A and B is mixed together and poured in the first reservoir and the second reservoir is the solvent use to thin out the mixed Arathane for spray requirement**.  (Exhibit 22) |
| | •       On September 13, 2013 at 6:07 a.m. Jonathan Connelly wrote Duc Phan (Space X). Michael R. Leonard and ccing Richard Bievenue and David Filbert inquiring about the process, requesting a picture, **and asking if the Arathane and the solvent was being run out of the cartridges mounted on the side of the machine**. (Exhibit 22) |
| | •       On September 10, 2013, Duc Phan (Space X)wrote Michael R. Leonard and Jonathan Connelly, **and there was a clear indication that Space X was using Arathane 5750 material with a 2 hour cure time, and they were concerned the operator would forget to purge and rinse the material when the job is done. They were looking to automate the process after coating**.  (Exhibit 22) |
| | o       The sales order dated September 25, 2013 indicated PVA job number SPCX2115 W3267 indicated **PVA was there to provide onsite support for Mechanical** |

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

**STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**
(Central District)

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | **Electrical Programming Fluid Delivery.** (Exhibit 22) |
| | o      The sales quotation dated September 19, 2013, stated that PVA was to "**rework the dispense system on machine serial number W3267 to connect one cartridge to (1) one gallon tank for automatic solvent flush of Arathane 5705**. This was to include 1) all hoses and fittings needed to complete the integration, 2) pneumatic ball valve for automatic solvent flush, 3) hardware and software needed for integration, and one tank. Further, PVA was to travel to Space X to install the new auto solvent flush system. (Exhibit 22) |
| | o      The purchase order dated September 24, 2013 issued to PVA and shipping to Space X on a Space X purchase order identified a supplier part number B72-01433 and **there is a full description of the work to be done including reworking the dispense system for an automatic flush of Arathane 5750** and in similar detail as stated above. There is a separate purchase order for the travel expenditures. (Exhibit 22) |
| | •      On July 21, 2014 at 6:48 p.m. Duc Phan (Space X) emailed Rex indicating the **current machine uses both Humiseal and Arathane and there are separate spray valves for both material.** They |

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | need the pendant purge button to work for both materials. (Exhibit 22)<br><br>•    PVA Inc. circulated diagram clearly states **Arathane**.  Additionally, there is a quote work sheet for the 3 way assembly, pressure tank, hoses, fittings, valves as well as programming and engineering. (Ex 22, PVA 340-347) |
| 16.    Juarez testified that when he worked at SpaceX he never looked at this manual or asked to look at this manual for the PVA 350.<br><br>Deposition of Ruben Juarez ("Juarez Depo.).<br><br>(Catalona Dec., 279:16, 291:17-18, 293:4-17.) | 16. Disputed to the extent Defendant infers that Mr. Juarez saw the manual as Mr. Juarez was never provided the manual. Further, the manual was not available in the computer connected to the PVA 350 because the PVA 350 is a standalone machine, the manual was not uploaded to the company network.<br><br>(Dec. Ruben Juarez)<br><br>Also, PVA provided photographs of the PVA 350 machine when it shipped and there is no hardcopy of the manual included in the delivery. Further, PVA Inc. specifically trained Mr. Juarez to bypass the safety systems so the machine could be utilized as it was designed defectively and could not be utilized otherwise.<br>• (Dec. Glen Stevick)<br>• (Dec. Ruben Juarez)<br>• (Ex 3 Depo. Juarez Volume |

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | 1: 91:3-93:24, 96:10-19, 98:20-21, 100:4-9) |
| | • (Exhibit 31, PVA 51) |
| | • (Exhibit 31, PVA30-32) |
| | • (Exhibit 31, PVA 40-41) |
| | • (Exhibit 15, PVA 69) |
| | • (Exhibit 16, PVA 0272) |
| | • (Exhibit 31, PVA 30-32, 51) |
| | ***Specific factual references with citations are set forth below for the court's convenience regarding PVA Inc. inadequate training of Mr. Juarez and PVA Inc. failure to provide a hardcopy of the manual and sufficient warnings.*** |
| | **DEPOSITION TESTIMONY REGARDING PVA INC. NOT PROVIDING THE MANUAL AND PROVIDING INADEQUATE TRAINING** |
| | Mr. Juarez never read the manual for the PVA 350 because it was not available to him, but he was trained by PVA Inc. on how to use the PVA machines, and at these trainings PVA Inc. never told Mr. Juarez to review any manual. (Ex 3 Depo. Juarez Volume 1: 91:3-93:24, 96:10-19, 98:20-21, 100:4-9) |
| | **BELOW ARE FACTUAL ALLEGATIONS REGARDING THE MANUAL NOT BEING PRODUCED AND PVA MANUAL BEING INEFFECTIVE AND INSUFFICIENT** |
| | • PVA specifically indicated the manual was for production and |

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | **operators not technical personnel, but it might be "useful for introduction or training**." (Exhibit 31, PVA 51) |
| | •        The manual was **only produced electronically**.  (No hardcopy.) (Exhibit 31, PVA30-32) |
| | •        The Operations and Maintenance manual **does not warn to wear a face mask or protection** from any inhalants.  (Exhibit 31, PVA 40-41) |
| | •        The manual indicates the PVA machines require that end users must **visually inspect the position of the needle with response to a calibration point and physically reposition the needle.**  (Exhibit 15, PVA 69) |
| | •        The Final Shipment Sign-Off does not indicate the operating manual was sent to Space X only machine photos were taken.  Also, there is an issue of facts as to whether the **exhaust switch was included.** (Exhibit 16, PVA 0272) |
| | •        The PVA manual was not **physically produced and there was no requirement to review it**. (Exhibit 31, PVA 30-32, 51) |
| 17.      SpaceX is a designer and manufacturer of advanced rockets and spacecraft. Declaration of Gregory Maxwell. (Declaration of Gregory Maxwell ("Maxwell Dec."), 1:5-6.) | 17. Undisputed. |

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| 18.    After purchasing the PVA 350 in 2009, SpaceX did not begin to use Humiseal and Arathane materials, which were not originally specified for the machine, until 2012 at the earliest.<br><br>Urquhart Dec., and exhibits; Declaration of David Hwang ("Hwang Dec.") and exhibits.<br><br>(Urquhart Dec., 3:15-17, 28, 63, 230; Hwang Dec., 2:6-12, 35-41.) | 18. Disputed.  Humiseal was being utilized before Mr. Juarez started working with Space X in 2010.<br><br>• (Dec. Christopher Mendoza, paragraph 2)<br>• (Exhibit 46)<br>• (Ex 3 Depo. Juarez Volume I: 113 :1-3)<br>• (Ex 4 Depo. Juarez Volume II: 224:14-17)<br>• (See Exhibit 22, PVA 4463-4481)<br>• (See Exhibit 9 and Exhibit 22)<br>• (Exhibit 22, PVA 23 and 24)<br>• (Exhibit 22 PVA 4449-4452)<br>• (Exhibit 22 PVA 4463-4481)<br>• (Exhibit 22)<br>• (Exhibit 36 PVA 4449-4452)<br>• (Exhibit 36)<br>• (Exhibit 36, PVA 1727-1731)<br>• (Exhibit 25, PVA 7-9, 17-29, 222-234, 250-251, 4449-4452)<br><br>***Specific factual references with citations are set forth below for the court's convenience***.<br><br>Mr. Mendoza a **former employee of Space X indicated that Space X was using Humiseal in 2010**.<br><br>• (Dec. Christopher Mendoza, paragraph 2)<br><br>**DEPOSITION TESTIMONY REGARDING MR. JUAREZ' UNDERSTANDING IN 2015 OF THE DIFFERENT CHEMICALS HE WAS EXPOSED TO WHILE WORKING WITH PVA INC.** |

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | Mr. Juarez utilized HumiSeal and Arathane with the PVA 350.  (Ex 3 Depo. Juarez Volume I: 113 :1-3)

Mr. Juarez was exposed to Arathane products at Space X while programming the machine.  (Ex 4 Depo. Juarez Volume II: 224:14-17)

***PVA HAD KNOWLEDGE OF THE CHEMICALS BEING UTILIZED BY SPACE X AND WAS INVOLVED IN SUBSEQUENT MODIFICATIONS TO THE MACHINE INVOLVING VARIOUS CHEMICALS***

• PVA Inc was aware of the chemicals being utilized with the PVA 350. including the **transition to Arathane**.  (See Exhibit 22, PVA 4463-4481)

• The April 11, 2012 conformal coating video with Space X boards utilized the **same chemicals as used at Space X at PVA Inc**. (See Exhibit 9 and Exhibit 22)

• On September 19, 2013, PVA Inc. made further modifications to the subject machine including reworking the dispense system on the machine to connect one cartridge to the one gallon tank for "**automatic solvent flush of Arathane 5705**."  (Exhibit 22, PVA 23 and 24)

• On July 30, 2009, PVA/Andrew Haraburda serviced the W3267 (subject PVA 350 machine) and this description of the work/changes |

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | included: adding solvent flush option (6 oz cartridge, 3 way ball valve, O-ISPSI Precision Regulator, which shows **PVA Inc. was continuing to modify and upgrade the machine. Then PVA Inc. specifically recommended Space X alter the solvent to a different solvent stating "Space X may need to use a different solvent (i.e. Xylene)."** (Exhibit 22 PVA 4449-4452)

• Pursuant to email chain dated March 13, 2012 Jonathan Urquhart **(PVA) was aware of Space X's use of Arathane 5750**  The email specifically states, "I think David has spoken to you **about our customer Space X**.  They build full blown rocket ships.  **They plan on pre-mixing this material part A part B and a 3rd part, thinner in small batches apply to board and the purge system** because of shelf life once mixed.  **Sounds screwy to me.**"  They were looking for a demo on the 27th of March.  (Exhibit 22, PVA 4463-4481)

• Pursuant to email dated March 15, 2012 to Jonathan Urquhart, PVA was preparing a demo on the PVA 650 and **PVA were working with the same chemical materials Space X was utilizing, but PVA did not want Space X to know and PVA indicated they were going to convey to Space X that the materials were** |

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | **similar, but not the exact same**.  .  (Exhibit 22, PVA 4463-4481) |
| | •       Pursuant to email dated March 30, 2012, the test at PVA Inc. was rescheduled to **4-11-12 to view the** 3 part mixing process. (Exhibit 22, PVA 4463-4481) |
| | •       Pursuant to email from David Gomez to Johnathan (PVA) Urquhart dated May 11, 2012 at 2:11 p.m., Space X talked about retrofitting the PVA 350, and then subsequently there was confirmation from Jon indicating **Space X wanted to duplicate what was done during the visit.**  (Exhibit 22, PVA 4463-4481) |
| | •       Jon Urquart performed **the demo for Space X on 4-11-12**. (Exhibit 22, PVA 4463-4481) |
| | •       Email dated December 2, 2014 at 9:03 a.m. Mr. Urquhart (PVA) indicated to Mr. Matupang there would be 2 demos including a coating with **Arathane 2 part mix and spray and dispensing using a 650 or Delta 6 with board head**, JDX (underfill), SVX (past), and FC100 (solder mask). (Exhibit 22) |
| | •       On November 17, 2014, Mr. Urquhart (PVA) asked is Space X wanted to mix on the |

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | fly with **5750**?  (Exhibit 22)<br><br>•      On January 9, 2013 at 10:38 a.m. David Gomez (PVA) emailed Brian Ignaut (Space X) **doing follow up on the "two part material application project you were working on and kindly presented us with**." There was inquiry as to whether there were any developments in the first few months of 2013. (Exhibit 22)<br><br>•      On December 3, 2012 at 12:01 PM David Gomez (PVA) wrote Scott Abarta asking for the **two part material brand and part # as well as any MSDS and data sheets**.  Also, there was a request for a shot size and cycle time per part if possible. (Exhibit 22)<br><br>•      On **September 10, 2013**, Mr. Gomez (PVA) indicated "they only want a 20 oz cartridge retainer & cap with spray & needle valve for the pre-mix material and 6oz cartridge retainer & cap **for the solvent, so it can flush the premixed material out right after doing a batch of boards**." Mr. Gomez indicated he was **familiar with the "fluid delivery line" because he had done it "several times."** He also indicated they were "**not there yet" for the two part coating spraying**.  (Exhibit 22)<br><br>•      On September 9, 2013, Richard Bievenue (PVA) wrote Jonathan Connelly (ccing David |

**STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**
(Central District)

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | Filbert, David Gomez, and Michael R. Leonard) indicating that **he spoke with Duc Phan (Space X) about the 350 machine and how Space X was switching to utilizing a 2 part material including Arathane 5750.  There was discussion about premising the solvents and flushing the solvent valves**.  Also, there was interest regarding a 2 component meter mix system. (Exhibit 22)

•        On September 18, 2013 at 12:41 p.m., **Mr. Gomez (PVA) indicated that this is not the first time they have done a two part coating system and he thought they were putting to many resources into this. The email specifically references Arathane** 5750. (Exhibit 22)

•        On September 13, 2013, from Duc Phan (Space X) to Jonathan Connelly, Michael R. Leonard (ccing Richard Bievenue and David Filbert) explained the process with pictures. **Specifically, he indicated that Space X removed the hoses from the spray dispensing head and connected the hoses from the Arathane material and solvent to it.   He further explained when the Arathane material was not in use they vaped the solvent hose and connect the Arathane material hose to the other head just for a place holder.  He also explained that** |

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | **Arathane 5750 part A and B is mixed together and poured in the first reservoir and the second reservoir is the solvent use to thin out the mixed Arathane for spray requirement**.  (Exhibit 22)<br><br>•      On September 13, 2013 at 6:07 a.m. Jonathan Connelly wrote Duc Phan (Space X). Michael R. Leonard and ccing Richard Bievenue and David Filbert inquiring about the process, requesting a picture, **and asking if the Arathane and the solvent was being run out of the cartridges mounted on the side of the machine**. (Exhibit 22)<br><br>•      On September 10, 2013, Duc Phan (Space X)wrote Michael R. Leonard and Jonathan Connelly, **and there was a clear indication that Space X was using Arathane 5750 material with a 2 hour cure time, and they were concerned the operator would forget to purge and rinse the material when the job is done. They were looking to automate the process after coating**.  (Exhibit 22)<br><br>o      The sales order dated September 25, 2013 indicated PVA job number SPCX2115 W3267 indicated **PVA was there to provide onsite support for Mechanical Electrical Programming Fluid Delivery.**  (Exhibit 22) |

86

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

| **MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS** | **RESPONSE TO OPPOSITION** |
|---|---|
| | o       The sales quotation dated September 19, 2013, stated that PVA was to "**rework the dispense system on machine serial number W3267 to connect one cartridge to (1) one gallon tank for automatic solvent flush of Arathane 5705**.  This was to include 1) all hoses and fittings needed to complete the integration, 2) pneumatic ball valve for automatic solvent flush, 3) hardware and software needed for integration, and one tank.  Further, PVA was to travel to Space X to install the new auto solvent flush system. (Exhibit 22)

o       The purchase order dated September 24, 2013 issued to PVA and shipping to Space X on a Space X purchase order identified a supplier part number B72-01433 and **there is a full description of the work to be done including reworking the dispense system for an automatic flush of Arathane 5750** and in similar detail as stated above.  There is a separate purchase order for the travel expenditures. (Exhibit 22)

•       On July 21, 2014 at 6:48 p.m. Duc Phan (Space X) emailed Rex indicating the **current machine uses both Humiseal and Arathane and there are separate spray valves for both material**.  They need the pendant purge button to work for both materials. |

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | (Exhibit 22)

• PVA Inc. circulated diagram clearly states **Arathane**. Additionally, there is a quote work sheet for the 3 way assembly, pressure tank, hoses, fittings, valves as well as programming and engineering. (Ex 22, PVA 340-347)

**PVA INC. INSTALLED THE PVA 350 AND CONTINUED TO MODIFIED PROGRAM THROUGHOUT THE PVA 350'S LIFETIME**

• On 6-23-2009 to 6-24-2009, PVA Inc. installed and serviced the W3267 machine at Space X. The work was performed by Andrew Haraburde. He trained Juan Sotelo and Marsha Thompson in installation and training. The installation check list specifically indicated various items were working, but there is an X versus a check mark on the pump and SEMEA boxes. The description of the work/changes including "**modified main program (mo2).**" (Exhibit 36 PVA 4449-4452)

There are a series of work orders regarding modifications and sales showing PVA Inc. continued to service and support the use and modification of the PVA 350. (Exhibit 25, PVA 7-9, 17-29, 222-234, 250-251, 4449-4452) |
| 19.    When SpaceX originally began using these chemicals, numerous employees from the Avionics department were brought together to determine the appropriate formulation of Arathane and Humiseal | 19.Disputed. Mr. Juarez was not brought in to determine the appropriate formulation of Arathane and Humiseal materials for Space X's |

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

88

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| materials for SpaceX's conformal coating applications.<br><br>Maxwell Dec.<br><br>(Maxwell Dec., 2:19-28.) | conformal coating applications. Space X originally began using the chemicals Humiseal, which was set up by Space X with the assistance of PVA Inc. in 2010. Further, PVA Inc. assisted Space X with the transition to the use of Arathane.<br><br>(Dec. Ruben Juarez)<br><br>(Dec. Christopher Mendoza)<br><br>(Dec. Manuel Gutierrez)<br><br>Arathane was introduced by David Hwang to replace Humiseal. PVA Inc. was aware of this transition, and David Hwang indicated he purchased parts to the PVA 350 can spray Arathane<br><ul><li>(Dec. Ruben Juarez)</li><li>(Ex 3 Depo. Juarez Volume 1: 55:21-56:5)</li><li>(Ex. 1 Depo. Ruben Juarez Volume 1 p. 60:6-25; Dec. Ruben Juarez)</li><li>(Ex 3 Depo. Juarez Volume I: 139:17-20)</li><li>(Ex 3 Depo. Juarez Volume 1 144:12-16)</li><li>(See Exhibit 22, PVA 4463-4481)</li><li>(See Exhibit 9 and Exhibit 22)</li><li>(Exhibit 22, PVA 23 and 24)</li><li>(Exhibit 22 PVA 4449-4452)</li></ul> |

BALABAN & SPIELBERGER LLP<br>11999 SAN VICENTE BOULEVARD, SUITE 345<br>LOS ANGELES, CALIFORNIA 90049

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | • (Exhibit 22 PVA 4463-4481)
• (Exhibit 22)
• (Ex 22, PVA 340-347)
• (Exhibit 36 PVA 4449-4452)
• (Exhibit 36, PVA 1728-1731)
• (Exhibit 25, PVA 7-9, 17-29, 222-234, 250-251, 4449-4452)
• (Exhibit 36)

***Specific factual references with citations are set forth below for the court's convenience to show there is a factual dispute regarding PVA Inc. having no knowledge and or involvement in Space X's use of Arathane and Humiseal and the inference that Mr. Juarez was involved.***

Mr. Juarez indicated he does not have a chemistry background at his deposition on March 8, 2018.  (Ex 3 Depo. Juarez Volume 1: 55:21-56:5)

***PVA HAD KNOWLEDGE OF THE CHEMICALS BEING UTILIZED BY SPACE X AND WAS INVOLVED IN SUBSEQUENT MODIFICATIONS TO THE MACHINE INVOLVING VARIOUS CHEMICALS***

•      PVA Inc was aware of the chemicals being utilized with the PVA 350. including the **transition to Arathane**.  (See |

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | Exhibit 22, PVA 4463-4481) |
| | • The April 11, 2012 conformal coating video with Space X boards utilized the **same chemicals as used at Space X at PVA Inc**. (See Exhibit 9 and Exhibit 22) |
| | • On September 19, 2013, PVA Inc. made further modifications to the subject machine including reworking the dispense system on the machine to connect one cartridge to the one gallon tank for "**automatic solvent flush of Arathane 5705**." (Exhibit 22, PVA 23 and 24) |
| | • On July 30, 2009, PVA/Andrew Haraburda serviced the W3267 (subject PVA 350 machine) and this description of the work/changes included: adding solvent flush option (6 oz cartridge, 3 way ball valve, O-ISPSI Precision Regulator, which shows **PVA Inc. was continuing to modify and upgrade the machine. Then PVA Inc. specifically recommended Space X alter the solvent to a different solvent stating "Space X may need to use a different solvent (i.e. Xylene)."** (Exhibit 22 PVA 4449-4452) |
| | • Pursuant to email chain dated March 13, 2012 Jonathan Urquhart **(PVA) was aware of Space X's use of Arathane 5750** The email specifically states, "I think David has |

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | spoken to you **about our customer Space X**. They build full blown rocket ships. **They plan on pre-mixing this material part A part B and a 3rd part, thinner in small batches apply to board and the purge system** because of shelf life once mixed. **Sounds screwy to me.**" They were looking for a demo on the 27th of March. (Exhibit 22, PVA 4463-4481)

• Pursuant to email dated March 15, 2012 to Jonathan Urquhart, PVA was preparing a demo on the PVA 650 and **PVA were working with the same chemical materials Space X was utilizing, but PVA did not want Space X to know and PVA indicated they were going to convey to Space X that the materials were similar, but not the exact same**. . (Exhibit 22, PVA 4463-4481)

• Pursuant to email dated March 30, 2012, the test at PVA Inc. was rescheduled to **4-11-12 to view the** 3 part mixing process. (Exhibit 22, PVA 4463-4481)

• Pursuant to email from David Gomez to Johnathan (PVA) Urquhart dated May 11, 2012 at 2:11 p.m., Space X talked about retrofitting the PVA 350, and then subsequently there was confirmation from Jon indicating **Space X wanted to** |

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | **duplicate what was done during the visit.** (Exhibit 22, PVA 4463-4481) |
| | • Jon Urquart performed **the demo for Space X on 4-11-12**. (Exhibit 22, PVA 4463-4481) |
| | • Email dated December 2, 2014 at 9:03 a.m. Mr. Urquhart (PVA) indicated to Mr. Matupang there would be 2 demos including a coating with **Arathane 2 part mix and spray and dispensing using a 650 or Delta 6 with board head**, JDX (underfill), SVX (past), and FC100 (solder mask). (Exhibit 22) |
| | • On November 17, 2014, Mr. Urquhart (PVA) asked is Space X wanted to mix on the fly with **5750**? (Exhibit 22) |
| | • On January 9, 2013 at 10:38 a.m. David Gomez (PVA) emailed Brian Ignaut (Space X) **doing follow up on the "two part material application project you were working on and kindly presented us with**." There was inquiry as to whether there were any developments in the first few months of 2013. (Exhibit 22) |
| | • On December 3, 2012 at 12:01 PM David Gomez (PVA) wrote Scott Abarta asking for the **two part material brand and part # as well as any MSDS and data sheets**. Also, there was a request for a shot |

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | size and cycle time per part if possible. (Exhibit 22)

• On **September 10, 2013**, Mr. Gomez (PVA) indicated "they only want a 20 oz cartridge retainer & cap with spray & needle valve for the pre-mix material and 6oz cartridge retainer & cap **for the solvent, so it can flush the premixed material out right after doing a batch of boards**." Mr. Gomez indicated he was **familiar with the "fluid delivery line" because he had done it "several times."** He also indicated they were "**not there yet" for the two part coating spraying**.  (Exhibit 22)

• On September 9, 2013, Richard Bievenue (PVA) wrote Jonathan Connelly (ccing David Filbert, David Gomez, and Michael R. Leonard) indicating that **he spoke with Duc Phan (Space X) about the 350 machine and how Space X was switching to utilizing a 2 part material including Arathane 5750.  There was discussion about premising the solvents and flushing the solvent valves**.  Also, there was interest regarding a 2 component meter mix system. (Exhibit 22)

• On September 18, 2013 at 12:41 p.m., **Mr. Gomez (PVA) indicated that this is not the first time they have done a two part coating system and he thought they were putting** |

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | **to many resources into this. The email specifically references Arathane** 5750. (Exhibit 22) |

• On September 13, 2013, from Duc Phan (Space X) to Jonathan Connelly, Michael R. Leonard (ccing Richard Bievenue and David Filbert) explained the process with pictures. **Specifically, he indicated that Space X removed the hoses from the spray dispensing head and connected the hoses from the Arathane material and solvent to it.   He further explained when the Arathane material was not in use they vaped the solvent hose and connect the Arathane material hose to the other head just for a place holder.  He also explained that Arathane 5750 part A and B is mixed together and poured in the first reservoir and the second reservoir is the solvent use to thin out the mixed Arathane for spray requirement**.  (Exhibit 22)

• On September 13, 2013 at 6:07 a.m. Jonathan Connelly wrote Duc Phan (Space X). Michael R. Leonard and ccing Richard Bievenue and David Filbert inquiring about the process, requesting a picture, **and asking if the Arathane and the solvent was being run out of the cartridges mounted on the side of the machine**. (Exhibit 22)

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

| **MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS** | **RESPONSE TO OPPOSITION** |
|---|---|
| | • On September 10, 2013, Duc Phan (Space X)wrote Michael R. Leonard and Jonathan Connelly, **and there was a clear indication that Space X was using Arathane 5750 material with a 2 hour cure time, and they were concerned the operator would forget to purge and rinse the material when the job is done. They were looking to automate the process after coating**.  (Exhibit 22) |
| | o    The sales order dated September 25, 2013 indicated PVA job number SPCX2115 W3267 indicated **PVA was there to provide onsite support for Mechanical Electrical Programming Fluid Delivery.**  (Exhibit 22) |
| | o    The sales quotation dated September 19, 2013, stated that PVA was to "**rework the dispense system on machine serial number W3267 to connect one cartridge to (1) one gallon tank for automatic solvent flush of Arathane 5705**.  This was to include 1) all hoses and fittings needed to complete the integration, 2) pneumatic ball valve for automatic solvent flush, 3) hardware and software needed for integration, and one tank. Further, PVA was to travel to Space X to install the new auto solvent flush system. (Exhibit 22) |
| | o    The purchase order dated |

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

**STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**
**(Central District)**

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | September 24, 2013 issued to PVA and shipping to Space X on a Space X purchase order identified a supplier part number B72-01433 and **there is a full description of the work to be done including reworking the dispense system for an automatic flush of Arathane 5750** and in similar detail as stated above.  There is a separate purchase order for the travel expenditures. (Exhibit 22)

•      On July 21, 2014 at 6:48 p.m. Duc Phan (Space X) emailed Rex indicating the **current machine uses both Humiseal and Arathane and there are separate spray valves for both material**.  They need the pendant purge button to work for both materials. (Exhibit 22)

•      PVA Inc. circulated diagram clearly states **Arathane**.  Additionally, there is a quote work sheet for the 3 way assembly, pressure tank, hoses, fittings, valves as well as programming and engineering. (Ex 22, PVA 340-347)


**PVA INC. INSTALLED THE PVA 350 AND CONTINUED TO MODIFIED PROGRAM THROUGHOUT THE PVA 350'S LIFETIME**

•      On 6-23-2009 to 6-24-2009, PVA Inc. installed and serviced the W3267 machine at Space X.  The |

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

**STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**
**(Central District)**

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | work was performed by Andrew Haraburde.  He trained Juan Sotelo and Marsha Thompson in installation and training.  The installation check list specifically indicated various items were working, but there is an X versus a check mark on the pump and SEMEA boxes. The description of the work/changes including "**modified main program (mo2)."**  (Exhibit 36 PVA 4449-4452)<br><br>There are a series of work orders regarding modifications and sales showing PVA Inc. continued to service and support the use and modification of the PVA 350. (Exhibit 25, PVA 7-9, 17-29, 222-234, 250-251, 4449-4452) |
| 20.    These employees included Ruben Juarez who Avionics Department supervisor Gregory Maxwell testified hand-mixed experimental and test batches of Arathane and Humiseal to make different formulations.<br><br>Maxwell Dec.; Juarez Depo.<br><br>(Maxwell Dec., 2:21-23; Catalona Dec., 246:10-12, 247:18-22, 322:1-2, 322:9-15, 329:17-330:4, 686-88.) | 20.Disputed Mr. Juarez was not part of the team handmixing batches of Arathane.  Francisco was the operator of the PVA 350.  Mixing the chemicals was part of Francisco's job duties. The only person that tested the chemical interaction was David Hwang since he was the main person to substitute Humiseal to Arathane.<br>• (Dec. Jose Vasequez)<br>• (Dec.Christopher Mendoza)<br>• (Dec. Ruben Juarez)<br>• (Ex 3 Depo. Juarez Volume 1: 55:21-56:5)<br>• (Ex. 1 Depo. Ruben Juarez Volume 1 p. 60:6-25; Dec. Ruben Juarez)<br>• (Ex 3 Depo. Juarez Volume |

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | I: 139:17-20)<br>• (Ex 3 Depo. Juarez Volume 1 144:12-16)<br>• (Ex 4 Depo. Juarez Volume II, 235:1-238: 5, 238: 19-22)<br>• (See Exhibit 22, PVA 4463-4481)<br>• (See Exhibit 9 and Exhibit 22)<br>• (Exhibit 22, PVA 23 and 24)<br>• (Exhibit 22 PVA 4449-4452)<br>• (Exhibit 22 PVA 4463-4481)<br>• (Exhibit 22)<br>• (Ex 22, PVA 340-347)<br><br>***Specific factual references with citations are set forth below for the court's convenience regarding Mr. Juarez not mixing chemicals at Space X***.<br><br>Mr. Juarez indicated he does not have a chemistry background at his deposition on March 8, 2018.   (Ex 3 Depo. Juarez Volume 1: 55:21-56:5)<br><br>Mr. Juarez called Francisco and received a list of the chemicals that Mr. Juarez was exposed to, and he thus requested the MSDS sheets from Space X to forward to his attorney so that could figure out what was going on and what was making him sick. (Ex 4 Depo. Juarez Volume II, 235:1-238: 5, 238: 19-22)<br><br>***PVA HAD KNOWLEDGE OF THE CHEMICALS BEING UTILIZED BY SPACE X AND*** |

BALABAN & SPIELBERGER LLP<br>11999 SAN VICENTE BOULEVARD, SUITE 345<br>LOS ANGELES, CALIFORNIA 90049

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | ***WAS INVOLVED IN SUBSEQUENT MODIFICATIONS TO THE MACHINE INVOLVING VARIOUS CHEMICALS***<br><br>•    PVA Inc was aware of the chemicals being utilized with the PVA 350. including the **transition to Arathane**.  (See Exhibit 22, PVA 4463-4481)<br><br>•    The April 11, 2012 conformal coating video with Space X boards utilized the **same chemicals as used at Space X at PVA Inc**. (See Exhibit 9 and Exhibit 22)<br><br>•    On September 19, 2013, PVA Inc. made further modifications to the subject machine including reworking the dispense system on the machine to connect one cartridge to the one gallon tank for "**automatic solvent flush of Arathane 5705**."  (Exhibit 22, PVA 23 and 24)<br><br>•    On July 30, 2009, PVA/Andrew Haraburda serviced the W3267 (subject PVA 350 machine) and this description of the work/changes included:  adding solvent flush option (6 oz cartridge, 3 way ball valve, O-ISPSI Precision Regulator, which shows **PVA Inc. was continuing to modify and upgrade the machine. Then PVA Inc. specifically recommended Space X alter the solvent to a different solvent stating "Space X may** |

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

| **MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS** | **RESPONSE TO OPPOSITION** |
|---|---|
| | **need to use a different solvent (i.e. Xylene)."** (Exhibit 22 PVA 4449-4452) |
| | •     Pursuant to email chain dated March 13, 2012 Jonathan Urquhart **(PVA) was aware of Space X's use of Arathane 5750**   The email specifically states, "I think David has spoken to you **about our customer Space X**.  They build full blown rocket ships.  **They plan on pre-mixing this material part A part B and a 3rd part, thinner in small batches apply to board and the purge system** because of shelf life once mixed.  **Sounds screwy to me."**  They were looking for a demo on the 27th of March.  (Exhibit 22, PVA 4463-4481) |
| | •     Pursuant to email dated March 15, 2012 to Jonathan Urquhart, PVA was preparing a demo on the PVA 650 and **PVA were working with the same chemical materials Space X was utilizing, but PVA did not want Space X to know and PVA indicated they were going to convey to Space X that the materials were similar, but not the exact same**.  .  (Exhibit 22, PVA 4463-4481) |
| | •     Pursuant to email dated March 30, 2012, the test at PVA Inc. was rescheduled to **4-11-12 to view the** 3 part mixing process. (Exhibit 22, PVA |

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | 4463-4481) |
| | • Pursuant to email from David Gomez to Johnathan (PVA) Urquhart dated May 11, 2012 at 2:11 p.m., Space X talked about retrofitting the PVA 350, and then subsequently there was confirmation from Jon indicating **Space X wanted to duplicate what was done during the visit.** (Exhibit 22, PVA 4463-4481) |
| | • Jon Urquart performed **the demo for Space X on 4-11-12**. (Exhibit 22, PVA 4463-4481) |
| | • Email dated December 2, 2014 at 9:03 a.m. Mr. Urquhart (PVA) indicated to Mr. Matupang there would be 2 demos including a coating with **Arathane 2 part mix and spray and dispensing using a 650 or Delta 6 with board head**, JDX (underfill), SVX (past), and FC100 (solder mask). (Exhibit 22) |
| | • On November 17, 2014, Mr. Urquhart (PVA) asked is Space X wanted to mix on the fly with **5750**? (Exhibit 22) |
| | • On January 9, 2013 at 10:38 a.m. David Gomez (PVA) emailed Brian Ignaut (Space X) **doing follow up on the "two part material application project you were working on and kindly presented us with**." There was inquiry as to whether |

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

| **MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS** | **RESPONSE TO OPPOSITION** |
|---|---|
| | there were any developments in the first few months of 2013. (Exhibit 22)

• On December 3, 2012 at 12:01 PM David Gomez (PVA) wrote Scott Abarta asking for the **two part material brand and part # as well as any MSDS and data sheets**. Also, there was a request for a shot size and cycle time per part if possible. (Exhibit 22)

• On **September 10, 2013**, Mr. Gomez (PVA) indicated "they only want a 20 oz cartridge retainer & cap with spray & needle valve for the pre-mix material and 6oz cartridge retainer & cap **for the solvent, so it can flush the premixed material out right after doing a batch of boards**." Mr. Gomez indicated he was **familiar with the "fluid delivery line"** because he had done it "**several times.**" He also indicated they were "**not there yet**" for the two part coating spraying. (Exhibit 22)

• On September 9, 2013, Richard Bievenue (PVA) wrote Jonathan Connelly (ccing David Filbert, David Gomez, and Michael R. Leonard) indicating that **he spoke with Duc Phan (Space X) about the 350 machine and how Space X was switching to utilizing a 2 part material including Arathane 5750. There was discussion about premising the solvents and flushing the** |

**STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**
**(Central District)**

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | **solvent valves**.  Also, there was interest regarding a 2 component meter mix system. (Exhibit 22)

•      On September 18, 2013 at 12:41 p.m., **Mr. Gomez (PVA) indicated that this is not the first time they have done a two part coating system and he thought they were putting to many resources into this. The email specifically references Arathane** 5750. (Exhibit 22)

•      On September 13, 2013, from Duc Phan (Space X) to Jonathan Connelly, Michael R. Leonard (ccing Richard Bievenue and David Filbert) explained the process with pictures. **Specifically, he indicated that Space X removed the hoses from the spray dispensing head and connected the hoses from the Arathane material and solvent to it.   He further explained when the Arathane material was not in use they vaped the solvent hose and connect the Arathane material hose to the other head just for a place holder.  He also explained that Arathane 5750 part A and B is mixed together and poured in the first reservoir and the second reservoir is the solvent use to thin out the mixed Arathane for spray requirement**.  (Exhibit 22)

•      On September 13, 2013 at 6:07 a.m. Jonathan Connelly |

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**
**(Central District)**

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | wrote Duc Phan (Space X). Michael R. Leonard and ccing Richard Bievenue and David Filbert inquiring about the process, requesting a picture, **and asking if the Arathane and the solvent was being run out of the cartridges mounted on the side of the machine**. (Exhibit 22)<br><br>• On September 10, 2013, Duc Phan (Space X) wrote Michael R. Leonard and Jonathan Connelly, **and there was a clear indication that Space X was using Arathane 5750 material with a 2 hour cure time, and they were concerned the operator would forget to purge and rinse the material when the job is done. They were looking to automate the process after coating**. (Exhibit 22)<br><br>o The sales order dated September 25, 2013 indicated PVA job number SPCX2115 W3267 indicated **PVA was there to provide onsite support for Mechanical Electrical Programming Fluid Delivery.** (Exhibit 22)<br><br>o The sales quotation dated September 19, 2013, stated that PVA was to "**rework the dispense system on machine serial number W3267 to connect one cartridge to (1) one gallon tank for automatic solvent flush of Arathane 5705**. This was to include 1) all hoses and fittings needed to |

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
|  | complete the integration, 2) pneumatic ball valve for automatic solvent flush, 3) hardware and software needed for integration, and one tank. Further, PVA was to travel to Space X to install the new auto solvent flush system. (Exhibit 22)

o      The purchase order dated September 24, 2013 issued to PVA and shipping to Space X on a Space X purchase order identified a supplier part number B72-01433 and **there is a full description of the work to be done including reworking the dispense system for an automatic flush of Arathane 5750** and in similar detail as stated above.  There is a separate purchase order for the travel expenditures. (Exhibit 22)

•      On July 21, 2014 at 6:48 p.m. Duc Phan (Space X) emailed Rex indicating the **current machine uses both Humiseal and Arathane and there are separate spray valves for both material**.  They need the pendant purge button to work for both materials. (Exhibit 22)

•      PVA Inc. circulated diagram clearly states **Arathane**.  Additionally, there is a quote work sheet for the 3 way assembly, pressure tank, hoses, fittings, valves as well as programming and engineering. (Ex 22, PVA 340-347) |

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | **PVA INC. INSTALLED THE PVA 350 AND CONTINUED TO MODIFIED PROGRAM THROUGHOUT THE PVA 350'S LIFETIME**<br><br>• On 6-23-2009 to 6-24-2009, PVA Inc. installed and serviced the W3267 machine at Space X. The work was performed by Andrew Haraburde. He trained Juan Sotelo and Marsha Thompson in installation and training. The installation check list specifically indicated various items were working, but there is an X versus a check mark on the pump and SEMEA boxes. The description of the work/changes including "**modified main program (mo2)."** (Exhibit 36 PVA 4449-4452)<br><br>There are a series of work orders regarding modifications and sales showing PVA Inc. continued to service and support the use and modification of the PVA 350. (Exhibit 25, PVA 7-9, 17-29, 222-234, 250-251, 4449-4452) |
| 21.    Before hand-mixing these materials, Juarez reviewed the MSDS sheets for Arathane and Humiseal to ensure they cured and "set up" properly so SpaceX's desired result was achieved.<br><br>Maxwell Dec.<br><br>(Maxwell Dec., 2:25-28.) | 21.Disputed. Mr. Juarez was not the process engineer or materials engineer that would have mixed the chemicals. Per David Hwang's instructions and with the support of PVA Inc, Mr. Juarez only installed the separate dispensing canisters and materials lines, but not the chemicals.<br><br>• (Dec. Chris Mendoza)<br>• (Dec. Manuel Guiterrez) |

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

**STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**
**(Central District)**

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | • (Dec. of Juarez Ruben)<br>• (Ex 3 Depo. Juarez Volume 1: 55:21-56:5)<br>• (Ex. 1 Depo. Ruben Juarez Volume 1 p. 60:6-25; Dec. Ruben Juarez)<br>• (Ex 3 Depo. Juarez Volume I: 139:17-20)<br>• (Ex 3 Depo. Juarez Volume 1 144:12-16)<br>• (Ex 4 Depo. Juarez Volume II, 235:1-238: 5, 238: 19-22)<br>• (Ex 3 Depo. Juarez Volume 1: 54:11-13)<br>• (Ex 3 Depo. Juarez Volume 1: 103:18-104:10, 104:25-105:7,  107:5-24,  108:5-13)<br>• (See  Exhibit  22,  PVA 4463-4481)<br>• (See Exhibit 9 and Exhibit 22)<br>• (Exhibit 22, PVA 23 and 24)<br>• (Exhibit  22  PVA  4449-4452)<br>• (Exhibit  22  PVA  4463-4481)<br>• (Exhibit 22)<br>• (Ex 22, PVA 340-347)<br>• (Exhibit  36  PVA  4449-4452)<br>• (Exhibit 36)<br>• (Exhibit  36,  PVA  1728-1731)<br>• (Exhibit 25, PVA 7-9, 17- |

**STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**
**(Central District)**

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
|  | 29,   222-234,   250-251, 4449-4452) |
|  | ***Specific factual references with citations are set forth below for the court's convenience disputing the alleged facts that Mr. Juarez reviewed the MSDS sheets and allegedly mixed the Arathane and Humiseal.*** |
|  | Mr. Mendoza never saw Ruben mixing chemicals at Space X. Further, while being an employee at Space X. Mr. Mendoza was never was never trained regarding how to read, interpret, and locate MSDS sheets. Further, Mr. Mendoza indicated Space X was using Humiseal since 2010, and he was never provided any Standard Operating Procedures.  (Dec. Christopher Mendoza) |
|  | Mr. Gutierrez indicated he never saw a binder of MSDS sheets nor did he ever see any MSDS sheets in the conformal coating area. Further, he never saw any Standard of Practice while working with Space X.  Moreover, Mr. Gutierrez never saw Ruben mix chemicals, but he saw Franciso mix chemicals.  (Dec. Manuel Gutierrez) |
|  | Mr. Juarez indicated he does not have a chemistry background at his deposition on March 8, 2018.   (Ex 3 Depo. Juarez Volume 1: 55:21-56:5) |
|  | Mr. Juarez called Francisco and received a list of the chemicals that Mr. Juarez was exposed to, and he |

109

**STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**
**(Central District)**

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | thus requested the MSDS sheets from Space X to forward to his attorney so that could figure out what was going on and what was making him sick. (Ex 4 Depo. Juarez Volume II, 235:1-238: 5, 238: 19-22)<br><br>Mr. Juarez testified at his deposition on March 8, 2018 that Space X did modify the machine to be able to spray other new products and new coating materials.  (Ex 3 Depo. Juarez Volume 1: 54:11-13)<br><br>PVA 350 was modified when Mr. Juarez worked at Space X so it would spray a different coating material with PVA Inc.'s support over the telephone by installing hardware.  (Ex 3 Depo. Juarez Volume 1: 103:18-104:10, 104:25-105:7, 107:5-24, 108:5-13) |
| 22.    The Avionics Department also required workers who used the PVA 350, including Juarez, to follow SpaceX's "standard operating procedures" entitled "Avionics Standard Operating Procedure: Polymeric Application of Electronic Assemblies."<br><br>Hwang Dec.; Maxwell Dec., Declaration of Duc Q. Phan ("Phan Dec."); SpaceX Standard Operating Procedures.<br><br>(Hwang Dec., 1:15-26, 4, 14, 24; Maxwell Dec., 1:23-2:2, 5, 15, 25, Phan Dec., 1:14-20, 4, 14; Dec. of SpaceX records custodian, Lynette Dhillon ("Dhillon Dec."), 1:16-17, 3:11-17, 5, 15, 25.) | 22. Disputed.  Mr. Juarez was never provided with an Standard Operating Procedure ("SOP") for programmers for any assembly area in Space X. Upon asking the lead person, Mr. Juan Soltelo about the SOP, Mr. Soltelo laughed at him.<br><br>• (Dec. Ruben Juarez)<br><br>• (Ex 4 Depo. Juarez Volume II: 182:1-5)<br><br>• (Ex 4 Depo. Juarez Volume II: 220:5-11)<br><br>***Specific factual references with citations are set forth below for the court's convenience disputing the alleged facts that Mr. Juarez reviewed the MSDS sheets and*** |

BALABAN & SPIELBERGER LLP<br>11999 SAN VICENTE BOULEVARD, SUITE 345<br>LOS ANGELES, CALIFORNIA 90049

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | ***allegedly mixed the Arathane and Humiseal***. |
| | Mr. Mendoza never saw Ruben mixing chemicals at Space X. Further, while being an employee at Space X. Mr. Mendoza was never was never trained regarding how to read, interpret, and locate MSDS sheets. Further, Mr. Mendoza indicated Space X was using Humiseal since 2010, and he was never provided any Standard Operating Procedures.  (Dec. Christopher Mendoza) |
| | Mr. Gutierrez indicated he never saw a binder of MSDS sheets nor did he ever see any MSDS sheets in the conformal coating area. Further, he never saw any Standard of Practice while working with Space X.  Moreover, Mr. Gutierrez never saw Ruben mix chemicals, but he saw Francisco mix chemicals.  (Dec. Manuel Gutierrez |
| | Mr. Juarez was not given any Standard Operating Procedures that pertained to how he was to perform his job.  (Ex. 4 Depo. Juarez Volume II: 172:17-25) Initially, when Mr. Juarez was hired, he was hired as an SMT and thus the SOP cited by defense was not applicable.  (Ex 4 Depo. Juarez Volume II: 182:1-5) |
| 23.     These Standard Operating Procedures ("SOPs") instructed SpaceX employees to use a facemask and operate the machine in a well-ventilated area, pursuant to instructions in MSDS sheets for the specific coating materials that were used in the machine. | 23. Disputed.  Mr. Juarez was never provided with an Standard Operating Procedure ("SOP") for programmers for any assembly area in Space X. Upon asking the lead person, Mr. Juan Soltelo about the SOP, |

**STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**
**(Central District)**

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

| **MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS** | **RESPONSE TO OPPOSITION** |
|---|---|
| Hwang Dec.; SpaceX Standard Operating Procedures.<br><br>(Hwang Dec., 1:25-26, 5, 6, 15, 16, 25, 26.) | Mr. Soltelo laughed at him.<br><br>• (Dec. Ruben Juarez)<br><br>As a result of the defective design of the PVA 350, it would be impossible to utilize the machine with a ventilation mask because the machine is too small.<br><br>• (Dec. Glen Stevick)<br>• (Ex. 4 Depo. Juarez Volume II: 172:17-25)<br>• (Ex 4 Depo. Juarez Volume II: 182:1-5)<br>• (Ex 4 Depo. Juarez Volume II: 220:5-11)<br>• (Exhibit 31, PVA 51)<br>• (Exhibit 31, PVA30-32)<br>• (Exhibit 31, PVA 40-41)<br>• (Exhibit 15, PVA 69)<br>• (Exhibit 16, PVA 0272)<br>• (Exhibit 31, PVA 30-32, 51)<br>• (Exhibit 18, PVA 40)<br>• (Exhibit 35)<br><br>***Specific factual references with citations are set forth below for the court's convenience disputing the alleged facts that Mr. Juarez reviewed the MSDS sheets and allegedly mixed the Arathane and Humiseal***.<br><br><br>Mr. Mendoza never saw Ruben mixing chemicals at Space X. Further, while being an employee at Space X. Mr. Mendoza was never was never trained regarding how to read, interpret, and locate MSDS sheets. Further, Mr. Mendoza indicated Space |

**STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT (Central District)**

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | X was using Humiseal since 2010, and he was never provided any Standard Operating Procedures.  (Dec. Christopher Mendoza) |
| | Mr. Gutierrez indicated he never saw a binder of MSDS sheets nor did he ever see any MSDS sheets in the conformal coating area. Further, he never saw any Standard of Practice while working with Space X.  Moreover, Mr. Gutierrez never saw Ruben mix chemicals, but he saw Francisco mix chemicals.  (Dec. Manuel Gutierrez |
| | Mr. Juarez was not given any Standard Operating Procedures that pertained to how he was to perform his job.  (Ex. 4 Depo. Juarez Volume II: 172:17-25) |
| | Initially, when Mr. Juarez was hired, he was hired as an SMT and thus the SOP cited by defense was not applicable.  (Ex 4 Depo. Juarez Volume II: 182:1-5) |
| 24.     These SOPs also specified that the machine's coating materials included Humiseal 1A33 conformal coating and Humiseal 521 thinner.<br><br>Hwang Dec.; SpaceX Standard Operating Procedures.<br><br>(Hwang Dec., 1:15-26, 6, 16, 26.) | 24. Disputed.  Mr. Juarez was never provided with an Standard Operating Procedure ("SOP") for programmers for any assembly area in Space X. Upon asking the lead person, Mr. Juan Soltelo about the SOP, Mr. Soltelo laughed at him.<br><br>• (Dec. Ruben Juarez)<br><br>*__Specific factual references with citations are set forth below for the court's convenience disputing the alleged facts that Mr. Juarez reviewed the MSDS sheets and allegedly mixed the Arathane and__* |

BALABAN & SPIELBERGER LLP<br>11999 SAN VICENTE BOULEVARD, SUITE 345<br>LOS ANGELES, CALIFORNIA 90049

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | ***Humiseal***. |
| | Mr. Mendoza never saw Ruben mixing chemicals at Space X. Further, while being an employee at Space X. Mr. Mendoza was never was never trained regarding how to read, interpret, and locate MSDS sheets. Further, Mr. Mendoza indicated Space X was using Humiseal since 2010, and he was never provided any Standard Operating Procedures.  (Dec. Christopher Mendoza) |
| | Mr. Gutierrez indicated he never saw a binder of MSDS sheets nor did he ever see any MSDS sheets in the conformal coating area. Further, he never saw any Standard of Practice while working with Space X.  Moreover, Mr. Gutierrez never saw Ruben mix chemicals, but he saw Francisco mix chemicals.  (Dec. Manuel Gutierrez) |
| | As a result of the defective design of the PVA 350, it would be impossible to utilize the machine with a ventilation mask because the machine is too small. |
| | • (Dec. Ruben Juarez) |
| | The SOPs did not indicate the chemicals utilized with the machine were dangerous and potentially toxic. |
| | • Defendant Hwang Dec.; SpaceX Standard Operating Procedures; (Hwang Dec., 1:15-26, 6, 16, 26.) |
| | • (Ex. 4 Depo. Juarez Volume |

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | II: 172:17-25) |
| | • (Ex 4 Depo. Juarez Volume II: 182:1-5) |
| | • (Ex 4 Depo. Juarez Volume II: 220:5-11) |
| | • (Exhibit 31, PVA 51) |
| | • (Exhibit 31, PVA30-32) |
| | • (Exhibit 31, PVA 40-41) |
| | • (Exhibit 15, PVA 69) |
| | • (Exhibit 16, PVA 0272) |
| | • (Exhibit 31, PVA 30-32, 51) |
| | • (Exhibit 18, PVA 40) |
| | • (Exhibit 35) |
| | ***Specific factual references with citations are set forth below for the court's convenience supporting the factual dispute that the SOPs were not provided to Mr. Juarez.*** |
| | Mr. Juarez was not given any Standard Operating Procedures that pertained to how he was to perform his job.  (Ex. 4 Depo. Juarez Volume II: 172:17-25) |
| | Initially, when Mr. Juarez was hired, he was hired as an SMT and thus the SOP cited by defense was not applicable.  (Ex 4 Depo. Juarez Volume II: 182:1-5) |
| 25.    These SOPs also instructed SpaceX employees to "[p]rogram the machine per operating instructions in the PVA Manual."  Hwang Dec.; SpaceX Standard Operating Procedures.  (Hwang Dec., 1:15-26, 9, 11, 19, 21, 29, 32.) | 25. Disputed. The PVA Manual and SOPs were not provided to Mr. Juarez.  Further, the manual was not available in the computer connected to the PVA 350.  Since the PVA 350 is a standalone machine, the manual was not uploaded to the company network.  (Dec. Ruben Juarez) |

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

| **MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS** | **RESPONSE TO OPPOSITION** |
|---|---|
|  | ***Specific factual references with citations are set forth below for the court's convenience disputing the alleged facts that Mr. Juarez reviewed the MSDS sheets and allegedly mixed the Arathane and Humiseal.*** |
|  | Mr. Mendoza never saw Ruben mixing chemicals at Space X. Further, while being an employee at Space X. Mr. Mendoza was never was never trained regarding how to read, interpret, and locate MSDS sheets. Further, Mr. Mendoza indicated Space X was using Humiseal since 2010, and he was never provided any Standard Operating Procedures.  (Dec. Christopher Mendoza) |
|  | Mr. Gutierrez indicated he never saw a binder of MSDS sheets nor did he ever see any MSDS sheets in the conformal coating area. Further, he never saw any Standard of Practice while working with Space X.  Moreover, Mr. Gutierrez never saw Ruben mix chemicals, but he saw Francisco mix chemicals.  (Dec. Manuel Gutierrez) |
|  | Also, PVA provided photographs of the PVA 350 machine when it shipped and there is no hardcopy of the manual included in the delivery. Further, PVA Inc. specifically trained Mr. Juarez to bypass the safety systems so the machine could be utilized as it was designed defectively and could not be utilized otherwise.<br>•(Dec. Glen Stevick) |

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

**STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**
**(Central District)**

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | • (Dec. Ruben Juarez) |
| | • (Ex. 4 Depo. Juarez Volume II: 172:17-25) |
| | • (Ex 4 Depo. Juarez Volume II: 182:1-5) |
| | • (Ex 4 Depo. Juarez Volume II: 220:5-11) |
| | • (Exhibit 31, PVA 51) |
| | • (Exhibit 31, PVA30-32) |
| | • (Exhibit 31, PVA 40-41) |
| | • (Exhibit 16, PVA 0272) |
| | • (Exhibit 31, PVA 30-32, 51) |
| | • (Exhibit 18, PVA 40) |
| | • (Exhibit 35) |
| | Mr. Juarez was not given any Standard Operating Procedures that pertained to how he was to perform his job. (Ex. 4 Depo. Juarez Volume II: 172:17-25) |
| | Initially, when Mr. Juarez was hired, he was hired as an SMT and thus the SOP cited by defense was not applicable. (Ex 4 Depo. Juarez Volume II: 182:1-5) |
| | **BELOW ARE FACTUAL ALLEGATIONS REGARDING THE MANUAL NOT BEING PRODUCED AND PVA MANUAL BEING INEFFECTIVE AND INSUFFICIENT** |
| | • PVA specifically indicated the manual was for production and **operators not technical personnel, but it might be "useful for introduction or training**." (Exhibit |

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

| **MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS** | **RESPONSE TO OPPOSITION** |
|---|---|
| | 31, PVA 51)<br><br>• The manual was **only produced electronically**.  (No hardcopy.) (Exhibit 31, PVA30-32)<br><br>• The Operations and Maintenance manual **does not warn to wear a face mask or protection** from any inhalants.  (Exhibit 31, PVA 40-41)<br><br>• The manual indicates the PVA machines require that end users must **visually inspect the position of the needle with response to a calibration point and physically reposition the needle.**  (Exhibit 15, PVA 69)<br><br>• The Final Shipment Sign-Off does not indicate the operating manual was sent to Space X only machine photos were taken.  Also, there is an issue of facts as to whether the **exhaust switch was included.** (Exhibit 16, PVA 0272)<br><br>• The PVA manual was not **physically produced and there was no requirement to review it**. (Exhibit 31, PVA 30-32, 51)<br><br>Mr. Mendoza a former employee of Space X indicated that Space X was using Humiseal in 2010.<br><br>• (Dec.   Christopher   Mendoza, paragraph 2) |
| 26.    SpaceX maintained copies of all manufacturer operating instructions and specifications for its purchased equipment | 26. Disputed to the extent it infers that Mr. Juarez saw copies of the manufacturer operating instructions and specifications |

**STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT (Central District)**

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| including the PVA 350.<br><br>Hwang Dec.<br><br>(Hwang Dec., 1:15-17.) | for its purchase.  Further, the manual was not available in the computer connected to the PVA 350.  Since the PVA 350 is a standalone machine, the manual was not uploaded to the company network.<br><br>(Dec. Ruben Juarez)<br><br>Also, PVA provided photographs of the PVA 350 machine when it shipped and there is no hardcopy of the manual included in the delivery. Further, PVA Inc. specifically trained Mr. Juarez to bypass the safety systems so the machine could be utilized as it was designed defectively and could not be utilized otherwise.<br>• -(Dec. Ruben Juarez)<br>• (Dec. Glen Stevick)<br>• (Ex 3 Depo. Juarez Volume 1:  91:3-93:24,  96:10-19, 98:20-21, 100:4-9)<br>• (Exhibit 31, PVA 51)<br>• (Exhibit 31, PVA30-32)<br>• (Exhibit 31, PVA 40-41)<br>• (Exhibit 15, PVA 69)<br>• (Exhibit 16, PVA 0272)<br>• (Exhibit  31,  PVA  30-32, 51)<br>• (Exhibit 18, PVA 40)<br>• (Exhibit 35)<br>***Specific factual references with citations are set forth below for the court's convenience regarding disputes of fact regarding the PVA Manual and the SOPs.*** |

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | ***Specific factual references with citations are set forth below for the court's convenience disputing the alleged facts that Mr. Juarez reviewed the MSDS sheets and allegedly mixed the Arathane and Humiseal.*** |
| | Mr. Mendoza never saw Ruben mixing chemicals at Space X. Further, while being an employee at Space X. Mr. Mendoza was never was never trained regarding how to read, interpret, and locate MSDS sheets. Further, Mr. Mendoza indicated Space X was using Humiseal since 2010, and he was never provided any Standard Operating Procedures.  (Dec. Christopher Mendoza) |
| | Mr. Gutierrez indicated he never saw a binder of MSDS sheets nor did he ever see any MSDS sheets in the conformal coating area. Further, he never saw any Standard of Practice while working with Space X.  Moreover, Mr. Gutierrez never saw Ruben mix chemicals, but he saw Francisco mix chemicals.  (Dec. Manuel Gutierrez) |
| | Mr. Juarez never read the manual for the PVA 350 because it was not available to him, but he was trained by PVA Inc. on how to use the PVA machines, and at these trainings PVA Inc. never told Mr. Juarez to review any manual.  (Ex 3 Depo. Juarez Volume 1: 91:3-93:24, 96:10-19, 98:20-21, 100:4-9) |
| | **BELOW ARE FACTUAL** |

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

**STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**
**(Central District)**

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | **ALLEGATIONS REGARDING THE MANUAL NOT BEING PRODUCED AND PVA MANUAL BEING INEFFECTIVE AND INSUFFICIENT**<br><br>• PVA specifically indicated the manual was for production and **operators not technical personnel, but it might be "useful for introduction or training**." (Exhibit 31, PVA 51)<br><br>• The manual was **only produced electronically**.  (No hardcopy.) (Exhibit 31, PVA30-32)<br><br>• The Operations and Maintenance manual **does not warn to wear a face mask or protection** from any inhalants.  (Exhibit 31, PVA 40-41)<br><br>• The manual indicates the PVA machines require that end users must **visually inspect the position of the needle with response to a calibration point and physically reposition the needle.**  (Exhibit 15, PVA 69)<br><br>• The Final Shipment Sign-Off does not indicate the operating manual was sent to Space X only machine photos were taken.  Also, there is an issue of facts as to whether the **exhaust switch was included.** (Exhibit 16, PVA 0272)<br><br>• The PVA manual was not **physically produced and there was no requirement to review it**. (Exhibit 31, PVA 30-32, 51)<br><br>Mr. Mendoza a former employee of Space X indicated that Space X was |

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | using Humiseal in 2010. |
| | • (Dec. Christopher Mendoza, paragraph 2) |
| | **FAILURE TO WARN/HAZARD COMMENTS**<br>•     The PVA Manual does not warn users to use a face mask or ventilator. (Exhibit 18, PVA 40)<br>•     The warning on the sides states, "WARNING, Hazardous voltage. Power shall be disconnected before enclosure is opened.  Enclosure shall be closed before power is restored." (Exhibit 35) |
| 27.     Ruben Juarez worked as a programmer at SpaceX from January, 2012 to the end of March, 2014.<br><br>Juarez Depo.; job offer letter with acceptance; Workers' Compensation ("Comp.") Claim.<br><br>(Catalona Dec., 261:21-24, 301:17-22, 303:25-304:8, 307:14-19, 317:7-9, 355, 357.) | 27. Undisputed. |
| 28.     During this entire period, his job duties never changed.<br><br>Juarez Depo.; Deposition of Ruben Juarez in Workers' Compensation Action ("Juarez Workers' Comp. Depo.").<br><br>(Catalona Dec., 256:23-24, 443:22-444:9.) | 28. Disputed.  Mr. Juarez's job duties were changed to include AOI programming and SMT programming.<br>• (Dec. Ruben Juarez)<br>• (Ex 4 Depo. Juarez Volume II: 182:1-5)<br>• (Ex. 2 Depo. Ruben Juarez Volume 2 p. 78:15-79:12, 81:10-15)<br>• (Ex 3 Depo. Juarez Volume 1: 61:21-63:14)<br>• (Ex 3 Depo. Juarez Volume 1: 152:11-15) |

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | Initially, when Mr. Juarez was hired, he was hired as an SMT and thus the SOP cited by defense was not applicable. (Ex 4 Depo. Juarez Volume II: 182:1-5) |
| 29.  Juarez testified that his job was to program the PVA 350, for which he was its "main support."<br><br>Juarez Depo.<br><br>(Catalona Dec., 257:25-258:6, 263:1-5.) | 29. Undisputed to the extent that Mr. Juarez worked with the PVA 350, but disputed to the extent that there is an inference that PVA Inc. was not responsible for the service and maintenance of the PVA 350 machine. As stated at Mr. Juarez' deposition on March 30, 2015 (within the two year filing period) Mr. Juarez did not operate the equipment; he was a programmer.<br>• (Ex. 2 Depo. Ruben Juarez Volume 2 p. 78:15-79:12, 81:10-15)<br>• (Ex 3 Depo. Juarez Volume 1: 58:4-6, 58:12-59:4)<br>• (Ex 3 Depo. Juarez Volume 1: 61:21-63:14)<br>• (Ex 3 Depo. Juarez Volume I: 145:25-147:2)<br>• (Ex 3 Depo. Juarez Volume 1: 152:11-15)<br>• (See Exhibit 22, PVA 4463-4481)<br>• (See Exhibit 9 and Exhibit 22)<br>• (Exhibit 22, PVA 23 and 24)<br>• (Exhibit 22 PVA 4449-4452)<br>• (Exhibit 22 PVA 4463-4481)<br>• (Exhibit 22)<br>• (Ex 22, PVA 340-347)<br>• (Exhibit 36 PVA 4449-4452)<br>• (Exhibit 36)<br>• (Exhibit 36, PVA 1728-1731) |

**STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**
**(Central District)**

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | • (Exhibit 25, PVA 7-9, 17-29, 222-234, 250-251, 4449-4452)<br><br>***Specific factual references with citations are set forth below for the court's convenience regarding Mr. Juarez' job duties.***<br><br>Mr. Juarez was a programmer and did mostly machinery, programming, troubleshooting, ordering equipment, Automatic Optical Inspection work, equipment repair, and other manufacturing engineering work. (Ex. 2 Depo. Ruben Juarez Volume 2 p. 78:15-79:12, 81:10-15<br><br>Mr. Juarez' job was to program the machine not to operate the machine, and he would spend 8 to 10 hours developing a program and working inside the machine itself. (Ex 3 Depo. Juarez Volume 1: 58:4-6, 58:12-59:4)<br><br>Mr. Juarez would program the PVA 350, set up a circuit board in the machine, make sure the pattern is correct, do a dry run, do a wet run, make sure his head was inside to check the thickness of the layer, clean it up, rerun it again until they got the desired thickness and width. The programmer has to fine tune the thickness of the conformal coating.  To facilitate the fine tuning process, the machine has to switch to a bypass door so a programmer can put their head inside the machine to make sure the spraying head is parallel to the |

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

**STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**
**(Central District)**

| **MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS** | **RESPONSE TO OPPOSITION** |
|---|---|
| | door.  Then a programmer does a dry run, a wet run, and checks the thickness of the layer.  The layer has to be about 1.5 thousandths of an inch.  (Ex 3 Depo. Juarez Volume 1: 61:21-63:14)

Mr. Juarez would program the machine, check the thickness of the PVA 350 spray, ensure the tanks had enough materials, make sure the materials were consistent, and deal with the fixtures involved in the process. (Ex 3 Depo. Juarez Volume I: 145:25-147:2)

Mr. Juarez would leave the operators after the PVA 350 was programmed sometimes because he was called back for a new product and to work on a variety of assemblies and subassemblies.  (Ex 3 Depo. Juarez Volume 1: 152:11-15)

***PVA HAD KNOWLEDGE OF THE CHEMICALS BEING UTILIZED BY SPACE X AND WAS INVOLVED IN SUBSEQUENT MODIFICATIONS TO THE MACHINE INVOLVING VARIOUS CHEMICALS***

•      PVA Inc was aware of the chemicals being utilized with the PVA 350. including the **transition to Arathane**.  (See Exhibit 22, PVA 4463-4481)

•      The April 11, 2012 conformal coating video with Space X boards utilized the **same chemicals as used at Space X at PVA Inc**. (See |

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | Exhibit 9 and Exhibit 22) |
| | • On September 19, 2013, PVA Inc. made further modifications to the subject machine including reworking the dispense system on the machine to connect one cartridge to the one gallon tank for "**automatic solvent flush of Arathane 5705**." (Exhibit 22, PVA 23 and 24) |
| | • On July 30, 2009, PVA/Andrew Haraburda serviced the W3267 (subject PVA 350 machine) and this description of the work/changes included: adding solvent flush option (6 oz cartridge, 3 way ball valve, O-ISPSI Precision Regulator, which shows **PVA Inc. was continuing to modify and upgrade the machine. Then PVA Inc. specifically recommended Space X alter the solvent to a different solvent stating "Space X may need to use a different solvent (i.e. Xylene)."** (Exhibit 22 PVA 4449-4452) |
| | • Pursuant to email chain dated March 13, 2012 Jonathan Urquhart **(PVA) was aware of Space X's use of Arathane 5750** The email specifically states, "I think David has spoken to you **about our customer Space X**. They build full blown rocket ships. **They plan on pre-mixing this material part A part B and a 3rd part, thinner in small batches apply to board and** |

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | **the purge system** because of shelf life once mixed.  **Sounds screwy to me.**"  They were looking for a demo on the 27th of March.  (Exhibit 22, PVA 4463-4481)<br><br>•      Pursuant to email dated March 15, 2012 to Jonathan Urquhart, PVA was preparing a demo on the PVA 650 and **PVA were working with the same chemical materials Space X was utilizing, but PVA did not want Space X to know and PVA indicated they were going to convey to Space X that the materials were similar, but not the exact same**. .  (Exhibit 22, PVA 4463-4481)<br><br>•      Pursuant to email dated March 30, 2012, the test at PVA Inc. was rescheduled to **4-11-12 to view the** 3 part mixing process. (Exhibit 22, PVA 4463-4481)<br><br>•      Pursuant to email from David Gomez to Johnathan (PVA) Urquhart dated May 11, 2012 at 2:11 p.m., Space X talked about retrofitting the PVA 350, and then subsequently there was confirmation from Jon indicating **Space X wanted to duplicate what was done during the visit.**  (Exhibit 22, PVA 4463-4481)<br><br>•      Jon Urquart performed **the demo for Space X on 4-11-12.** (Exhibit 22, PVA 4463- |

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

| **MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS** | **RESPONSE TO OPPOSITION** |
|---|---|
| | 4481) |
| | • Email dated December 2, 2014 at 9:03 a.m. Mr. Urquhart (PVA) indicated to Mr. Matupang there would be 2 demos including a coating with **Arathane 2 part mix and spray and dispensing using a 650 or Delta 6 with board head**, JDX (underfill), SVX (past), and FC100 (solder mask). (Exhibit 22) |
| | • On November 17, 2014, Mr. Urquhart (PVA) asked is Space X wanted to mix on the fly with **5750**?  (Exhibit 22) |
| | • On January 9, 2013 at 10:38 a.m. David Gomez (PVA) emailed Brian Ignaut (Space X) **doing follow up on the "two part material application project you were working on and kindly presented us with**." There was inquiry as to whether there were any developments in the first few months of 2013. (Exhibit 22) |
| | • On December 3, 2012 at 12:01 PM David Gomez (PVA) wrote Scott Abarta asking for the **two part material brand and part # as well as any MSDS and data sheets**.  Also, there was a request for a shot size and cycle time per part if possible. (Exhibit 22) |
| | • On **September 10, 2013**, Mr. Gomez (PVA) indicated "they only want a 20 oz cartridge retainer & cap with |

**STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**
**(Central District)**

| **MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS** | **RESPONSE TO OPPOSITION** |
|---|---|

spray & needle valve for the pre-mix material and 6oz cartridge retainer & cap **for the solvent, so it can flush the premixed material out right after doing a batch of boards**." Mr. Gomez indicated he was **familiar with the "fluid delivery line"** because he had done it **"several times."** He also indicated they were "**not there yet" for the two part coating spraying**.  (Exhibit 22)

• On September 9, 2013, Richard Bievenue (PVA) wrote Jonathan Connelly (ccing David Filbert, David Gomez, and Michael R. Leonard) indicating that **he spoke with Duc Phan (Space X) about the 350 machine and how Space X was switching to utilizing a 2 part material including Arathane 5750.  There was discussion about premising the solvents and flushing the solvent valves**.  Also, there was interest regarding a 2 component meter mix system. (Exhibit 22)

• On September 18, 2013 at 12:41 p.m., **Mr. Gomez (PVA) indicated that this is not the first time they have done a two part coating system and he thought they were putting to many resources into this. The email specifically references Arathane** 5750. (Exhibit 22)

• On September 13, 2013, from Duc Phan (Space X) to

**STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**
**(Central District)**

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

| **MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS** | **RESPONSE TO OPPOSITION** |
|---|---|
| | Jonathan Connelly, Michael R. Leonard (ccing Richard Bievenue and David Filbert) explained the process with pictures. **Specifically, he indicated that Space X removed the hoses from the spray dispensing head and connected the hoses from the Arathane material and solvent to it.   He further explained when the Arathane material was not in use they vaped the solvent hose and connect the Arathane material hose to the other head just for a place holder.  He also explained that Arathane 5750 part A and B is mixed together and poured in the first reservoir and the second reservoir is the solvent use to thin out the mixed Arathane for spray requirement**.  (Exhibit 22)

 •      On September 13, 2013 at 6:07 a.m. Jonathan Connelly wrote Duc Phan (Space X). Michael R. Leonard and ccing Richard Bievenue and David Filbert inquiring about the process, requesting a picture, **and asking if the Arathane and the solvent was being run out of the cartridges mounted on the side of the machine**. (Exhibit 22)

 •      On September 10, 2013, Duc Phan (Space X)wrote Michael R. Leonard and Jonathan Connelly, **and there was a clear indication that Space X was using Arathane 5750 material with a 2 hour** |

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

**STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**
**(Central District)**

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | **cure time, and they were concerned the operator would forget to purge and rinse the material when the job is done. They were looking to automate the process after coating**.  (Exhibit 22) |
| | o      The sales order dated September 25, 2013 indicated PVA job number SPCX2115 W3267 indicated **PVA was there to provide onsite support for Mechanical Electrical Programming Fluid Delivery.**  (Exhibit 22) |
| | o      The sales quotation dated September 19, 2013, stated that PVA was to "**rework the dispense system on machine serial number W3267 to connect one cartridge to (1) one gallon tank for automatic solvent flush of Arathane 5705**.  This was to include 1) all hoses and fittings needed to complete the integration, 2) pneumatic ball valve for automatic solvent flush, 3) hardware and software needed for integration, and one tank. Further, PVA was to travel to Space X to install the new auto solvent flush system. (Exhibit 22) |
| | o      The purchase order dated September 24, 2013 issued to PVA and shipping to Space X on a Space X purchase order identified a supplier part number B72-01433 and **there is a full description of the work to be done including** |

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | **reworking the dispense system for an automatic flush of Arathane 5750** and in similar detail as stated above.  There is a separate purchase order for the travel expenditures. (Exhibit 22) |
| | •        On July 21, 2014 at 6:48 p.m. Duc Phan (Space X) emailed Rex indicating the **current machine uses both Humiseal and Arathane and there are separate spray valves for both material**.  They need the pendant purge button to work for both materials. (Exhibit 22) |
| | •        PVA Inc. circulated diagram clearly states **Arathane**.  Additionally, there is a quote work sheet for the 3 way assembly, pressure tank, hoses, fittings, valves as well as programming and engineering. (Ex 22, PVA 340-347) |
| | **PVA INC. INSTALLED THE PVA 350 AND CONTINUED TO MODIFIED PROGRAM THROUGHOUT THE PVA 350'S LIFETIME** |
| | •        On 6-23-2009 to 6-24-2009, PVA Inc. installed and serviced the W3267 machine at Space X.  The work was performed by Andrew Haraburde.  He trained Juan Sotelo and Marsha Thompson in installation and training.  The installation check list specifically indicated various items were working, but there is an X versus a check mark on the pump and |

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | SEMEA boxes. The description of the work/changes including "**modified main program (mo2).**" (Exhibit 36 PVA 4449-4452)<br><br>There are a series of work orders regarding modifications and sales showing PVA Inc. continued to service and support the use and modification of the PVA 350. (Exhibit 25, PVA 7-9, 17-29, 222-234, 250-251, 4449-4452) |
| 30.   Plaintiffs also admitted in their complaint that "[d]uring Plaintiff Ruben Juarez's time at Space X, Plaintiff Ruben Juarez was *in charge of* programming the PVA 350 to spray Arathane 5750A, Arathane 5750B, Arathane 5750 A/B, and Humiseal thinner."<br><br>First Amended Complaint ("FAC.")<br><br>(Catalona Dec, 59:5-8 (emphasis added).) | 30. Disputed to the extent the fact infers Mr. Juarez knew he was spraying Arathane prior to obtaining the MSDS sheets for said products in March of 2015. Mr. Juarez was not aware of the danger of the chemicals being loaded in the PVA 350. Further, Mr. Juarez traveled to PVA Inc. with John Pena to see it the PVA machines could spray various chemicals.  Mr. Pena and Mr. Juarez were at PVA Inc. for 2 days, and during this time, PVA Inc. employees did not wear any safety gear and they programmed the machines the same way Mr. Juarez had been programming the machines.<br><br>• (Dec. Ruben Juarez)<br>• (Ex 3 Depo. Juarez Volume 1: 55:21-56:5)<br>• (See Exhibit 22, PVA 4463-4481)<br>• (See Exhibit 9 and Exhibit 22)<br>• (Exhibit 22, PVA 23 and 24) |

133

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | • (Exhibit 22 PVA 4449-4452)<br>• (Exhibit 22 PVA 4463-4481)<br>• (Exhibit 22)<br>• (Ex 22, PVA 340-347)<br><br>*__Specific factual references with citations are set forth below for the court's convenience regarding PVA Inc.'s knowledge of the chemicals used with the PVA 350 and the role of Mr. Juarez at Space X__*.<br><br>Mr. Juarez indicated he does not have a chemistry background at his deposition on March 8, 2018.  (Ex 3 Depo. Juarez Volume 1: 55:21-56:5)<br><br>*__PVA HAD KNOWLEDGE OF THE CHEMICALS BEING UTILIZED BY SPACE X AND WAS INVOLVED IN SUBSEQUENT MODIFICATIONS TO THE MACHINE INVOLVING VARIOUS CHEMICALS__*<br><br>•      PVA Inc was aware of the chemicals being utilized with the PVA 350. including the **transition to Arathane**.  (See Exhibit 22, PVA 4463-4481)<br><br>•      The April 11, 2012 conformal coating video with Space X boards utilized the **same chemicals as used at Space X at PVA Inc**. (See Exhibit 9 and Exhibit 22)<br><br>•      On September 19, 2013, |

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | PVA Inc. made further modifications to the subject machine including reworking the dispense system on the machine to connect one cartridge to the one gallon tank for "**automatic solvent flush of Arathane 5705**." (Exhibit 22, PVA 23 and 24) |
| | • On July 30, 2009, PVA/Andrew Haraburda serviced the W3267 (subject PVA 350 machine) and this description of the work/changes included: adding solvent flush option (6 oz cartridge, 3 way ball valve, O-ISPSI Precision Regulator, which shows **PVA Inc. was continuing to modify and upgrade the machine. Then PVA Inc. specifically recommended Space X alter the solvent to a different solvent stating "Space X may need to use a different solvent (i.e. Xylene)."** (Exhibit 22 PVA 4449-4452) |
| | • Pursuant to email chain dated March 13, 2012 Jonathan Urquhart **(PVA) was aware of Space X's use of Arathane 5750** The email specifically states, "I think David has spoken to you **about our customer Space X**. They build full blown rocket ships. **They plan on pre-mixing this material part A part B and a 3rd part, thinner in small batches apply to board and the purge system** because of shelf life once mixed. **Sounds screwy to me.**" They were |

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | looking for a demo on the 27th of March.  (Exhibit 22, PVA 4463-4481) |
| | •      Pursuant to email dated March 15, 2012 to Jonathan Urquhart, PVA was preparing a demo on the PVA 650 and **PVA were working with the same chemical materials Space X was utilizing, but PVA did not want Space X to know and PVA indicated they were going to convey to Space X that the materials were similar, but not the exact same**. .  (Exhibit 22, PVA 4463-4481) |
| | •      Pursuant to email dated March 30, 2012, the test at PVA Inc. was rescheduled to **4-11-12 to view the** 3 part mixing process. (Exhibit 22, PVA 4463-4481) |
| | •      Pursuant to email from David Gomez to Johnathan (PVA) Urquhart dated May 11, 2012 at 2:11 p.m., Space X talked about retrofitting the PVA 350, and then subsequently there was confirmation from Jon indicating **Space X wanted to duplicate what was done during the visit.**  (Exhibit 22, PVA 4463-4481) |
| | •      Jon Urquart performed **the demo for Space X on 4-11-12**. (Exhibit 22, PVA 4463-4481) |
| | •      Email dated December 2, |

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

| **MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS** | **RESPONSE TO OPPOSITION** |
|---|---|
| | 2014 at 9:03 a.m. Mr. Urquhart (PVA) indicated to Mr. Matupang there would be 2 demos including a coating with **Arathane 2 part mix and spray and dispensing using a 650 or Delta 6 with board head**, JDX (underfill), SVX (past), and FC100 (solder mask). (Exhibit 22)<br><br>•   On November 17, 2014, Mr. Urquhart (PVA) asked is Space X wanted to mix on the fly with **5750**?  (Exhibit 22)<br><br>•   On January 9, 2013 at 10:38 a.m. David Gomez (PVA) emailed Brian Ignaut (Space X) **doing follow up on the "two part material application project you were working on and kindly presented us with**." There was inquiry as to whether there were any developments in the first few months of 2013. (Exhibit 22)<br><br>•   On December 3, 2012 at 12:01 PM David Gomez (PVA) wrote Scott Abarta asking for the **two part material brand and part # as well as any MSDS and data sheets**.  Also, there was a request for a shot size and cycle time per part if possible. (Exhibit 22)<br><br>•   On **September 10, 2013**, Mr. Gomez (PVA) indicated "they only want a 20 oz cartridge retainer & cap with spray & needle valve for the pre-mix material and 6oz cartridge retainer & cap **for the** |

BALABAN & SPIELBERGER LLP<br>11999 SAN VICENTE BOULEVARD, SUITE 345<br>LOS ANGELES, CALIFORNIA 90049

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | **solvent, so it can flush the premixed material out right after doing a batch of boards**." Mr. Gomez indicated he was **familiar with the "fluid delivery line" because he had done it "several times."** He also indicated they were "**not there yet**" for the two part coating spraying.  (Exhibit 22)

•       On September 9, 2013, Richard Bievenue (PVA) wrote Jonathan Connelly (ccing David Filbert, David Gomez, and Michael R. Leonard) indicating that **he spoke with Duc Phan (Space X) about the 350 machine and how Space X was switching to utilizing a 2 part material including Arathane 5750.  There was discussion about premising the solvents and flushing the solvent valves**.  Also, there was interest regarding a 2 component meter mix system. (Exhibit 22)

•       On September 18, 2013 at 12:41 p.m., **Mr. Gomez (PVA) indicated that this is not the first time they have done a two part coating system and he thought they were putting to many resources into this. The email specifically references Arathane** 5750. (Exhibit 22)

•       On September 13, 2013, from Duc Phan (Space X) to Jonathan Connelly, Michael R. Leonard (ccing Richard Bievenue and David Filbert) |

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | explained the process with pictures. **Specifically, he indicated that Space X removed the hoses from the spray dispensing head and connected the hoses from the Arathane material and solvent to it.   He further explained when the Arathane material was not in use they vaped the solvent hose and connect the Arathane material hose to the other head just for a place holder.  He also explained that Arathane 5750 part A and B is mixed together and poured in the first reservoir and the second reservoir is the solvent use to thin out the mixed Arathane for spray requirement**.  (Exhibit 22) |
| | •      On September 13, 2013 at 6:07 a.m. Jonathan Connelly wrote Duc Phan (Space X). Michael R. Leonard and ccing Richard Bievenue and David Filbert inquiring about the process, requesting a picture, **and asking if the Arathane and the solvent was being run out of the cartridges mounted on the side of the machine**. (Exhibit 22) |
| | •      On September 10, 2013, Duc Phan (Space X)wrote Michael R. Leonard and Jonathan Connelly, **and there was a clear indication that Space X was using Arathane 5750 material with a 2 hour cure time, and they were concerned the operator would forget to purge and rinse the** |

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | **material when the job is done. They were looking to automate the process after coating**.  (Exhibit 22)<br><br>o      The sales order dated September 25, 2013 indicated PVA job number SPCX2115 W3267 indicated **PVA was there to provide onsite support for Mechanical Electrical Programming Fluid Delivery.**  (Exhibit 22)<br><br>o      The sales quotation dated September 19, 2013, stated that PVA was to "**rework the dispense system on machine serial number W3267 to connect one cartridge to (1) one gallon tank for automatic solvent flush of Arathane 5705**.  This was to include 1) all hoses and fittings needed to complete the integration, 2) pneumatic ball valve for automatic solvent flush, 3) hardware and software needed for integration, and one tank. Further, PVA was to travel to Space X to install the new auto solvent flush system. (Exhibit 22)<br><br>o      The purchase order dated September 24, 2013 issued to PVA and shipping to Space X on a Space X purchase order identified a supplier part number B72-01433 and **there is a full description of the work to be done including reworking the dispense system for an automatic flush of Arathane 5750** and in similar |

BALABAN & SPIELBERGER LLP<br>11999 SAN VICENTE BOULEVARD, SUITE 345<br>LOS ANGELES, CALIFORNIA 90049

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | detail as stated above.  There is a separate purchase order for the travel expenditures. (Exhibit 22) |
| | •   On July 21, 2014 at 6:48 p.m. Duc Phan (Space X) emailed Rex indicating the **current machine uses both Humiseal and Arathane and there are separate spray valves for both material**.  They need the pendant purge button to work for both materials. (Exhibit 22) |
| | •   PVA Inc. circulated diagram clearly states **Arathane**.  Additionally, there is a quote work sheet for the 3 way assembly, pressure tank, hoses, fittings, valves as well as programming and engineering. (Ex 22, PVA 340-347) |
| 31.    This required Juarez to spend 60% of his time inside the conformal coating room which housed the machine.<br><br>Juarez Depo.<br><br>(Catalona Dec., 258:12-259:4, 261:21-24, 264:1-9.) | 31. Disputed to the extent the PVA 350 was not the only machine in the area where Mr. Juarez spent 60% of his time.  Disputed to the extent there is an inference that Mr. Juarez was not surrounded by other potential hazards during this time while working at Space X such as the lead wiring and the chemical baths.<br><br>•   (Ex 3 Depo. Ruben Juarez Volume 1, 36:17-37:22)<br>•   (Ex 3 Depo. Ruben Juarez Volume 1, 43:12-14)<br>•   (Ex 3 Depo. Ruben Juarez Volume 1, 43:12-46:19)<br>•   (Ex 1. Depo. Ruben Juarez |

**STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**
**(Central District)**

| **MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS** | **RESPONSE TO OPPOSITION** |
|---|---|
| | Volume I, p. 49:22-50:8, 51:17, 52:8-16, 53:15-21, 54:11-55:15, 55:21-56:8, 56:14-18 , 57:16-23-58:18, 59: 4-5, 59: 22-24,60:17-61:20, 62:1-15)<br>• (Ex. 2 Depo. Ruben Juarez Volume 2 p. 77:5-78:3)<br>• (Ex 3 Depo. Ruben Juarez Volume 1, 49:25-50:3)<br>• (Ex 3 Depo. Juarez Volume 1: 66:19-22, 116:1-14)<br>• (Ex 3 Depo. Juarez Volume 1: 108:20-109:12)<br>• (Ex 4 Depo. Juarez Volume II, 332:7-337:14)<br>• (Ex 4 Depo. Juarez Volume II, 249:22-250:12)<br>• (Ex 4 Depo. Juarez Volume II, 262:21-263: 13)<br>• (Ex 4 Depo. Juarez Volume II, 287:6-288:3, 288:24-289:6)<br>• (Ex 4 Depo. Juarez Volume II, 235:1-238: 5, 238: 19-22)<br>• (Ex 4 Depo. Juarez Volume II, 241:4-15)<br><br>***Specific factual references with citations are set forth below for the court's convenience regarding Mr. Juarez' job duties and exposure while working at Space X to machines and chemicals***.<br><br>Mr. Juarez' work station was outside the conformal coating room, and the wash area was next to my computer. (Ex 3 Depo. Ruben Juarez Volume 1, 43:12-14)<br><br>At Mr. Juarez' deposition on March 30, 2015, (within the two year filing period) he implicated a number of reasons he could have been injured as he was not yet clear on the specific cause of his injuries, whether wrongdoing had occurred, or whether |

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

**STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**
**(Central District)**

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | any wrongdoing specifically caused his injuries.  Specifically, Mr. Juarez indicated he was exposed to Humiseal 527 thinner while soaking parts to be cleaned (cleaning bath), doing maintenance work, flushing equipment, verifying fluids were flushed, bleeding the lines, and doing detailed cleaning of the machines so the operators could try new chemicals to better protect the electronic devices. Further, Mr. Juarez also discussed his exposure to a product called solder wire as a potential cause of injuries when he would replace the fume extractor filters while cleaning re-workstations that were similar to a fountain also called a cleaning bath where Mr. Juarez would remove soldering tools and reassembling them, which took a couple of hours. Mr. Juarez also discussed his exposure to Humiseal 1A33 for conformal coating by programming the machines and tooling and doing dry/wet runs while programming the machines. (Ex 1, Depo. Ruben Juarez Volume I, p. 49:22-50:8, 51:17, 52:8-16, 53:15-21, 54:11-55:15, 55:21-56:8, 56:14-18, 57:16-23-58:18, 59: 4-5, 59: 22-24,60:17-61:20, 62:1-15) |
| | On May 20, 2015, Mr. Juarez indicated at the second session of his deposition (within the two year filing period), the wash station for printed circuit board assemblies was right next to his station.  (Ex 2 Depo. Ruben Juarez Volume 2 p. 77:5-78:3) |
| | The equipment in the rooms where Mr. Juarez was working was constantly changing.  (Ex 3 Depo. Ruben Juarez Volume 1, 49:25-50:3) |
| | Initially, Mr. Juarez thought his problems were caused by alcohol chemical baths and solder wire, but later he found out that lead-free solder wire was used.  Upon this discovery, Mr. Juarez reached out to Francisco |

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

143

**STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**
**(Central District)**

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | and then to Space X to get the MSDS sheets.  (Ex 4 Depo. Juarez Volume II, 241:4-15) |
| 32.    He testified that he was actually required to work *inside the machine* itself to verify the appropriate thickness of the coatings sprayed on SpaceX components.<br><br>Juarez Depo.<br><br>(Catalona Dec., 258:12-259:4, 261:25-262:25, 449:24-450:24, 451:17-23, 452:2-10, 460:6-13, 461:1-12.) | 32. Disputed as to the inaccurate factual inferences. PVA Inc. specifically trained to Mr. Juarez to put his head inside the machine itself to verify the appropriate thickness of the coatings sprayed on the Space X components.  Further, disputed to the extent that users are able to utilize the PVA 350 to do their job any other way other than placing their heads inside the machine to verify the thickness as a result of the size of the machine and the design of the machine.<br>• (Dec. Ruben Juarez)<br>• (Dec. Glen Stevick)<br>• (Ex 3 Depo. Ruben Juarez Volume 1 : 30 :16-18, 30 :24-31 :5, 72:9-14)<br>• (Ex 3 Depo. Juarez Volume 1: 89:14-18, 90:8-11)<br>• (Ex 3 Depo. Juarez Volume 1: 121:16-19)<br>• (Ex 3 Depo. Juarez Volume 1: 121: 22- 122:20, 122:22-123:1)<br>• (Ex 3 Depo. Juarez Volume I: 123:19-124:12)<br>• (Ex 4 Depo. Juarez Volume II: 226:12-227:6) |

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

**STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**
**(Central District)**

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | • (Ex. 4 Depo. Juarez Volume II232:1-7, 232: 23-25) |
| | • (Exhibit 18, PVA 40) |
| | • (Exhibit 35) |
| | • (Exhibit 24, 4458-4462) |
| | • (Exhibit 24) |
| | • (Exhibit 23, PVA 1181 (Wet Film Thickness Gauge)) |
| | • (Exhibit 30) |
| | • (Exhibit 29, PVA 63, 64, 69, 220) |
| | • (See Exhibit 9 and Exhibit 22) |
| | • Exhibit 5, Video of the PVA 350 shows the machine is far too small for someone to use while wearing a ventilator. |
| | • Video Exhibit 11 shows the conformal coating process in a PVA machine in 2010. |
| | • Video Exhibit 8 shows all the different types of coating and also shows various designs that were not defective so it is great for comparison and explanation. |
| | • (Exhibit 15, PVA 69) |
| | • (Exhibit 20) |
| | • (Exhibit 21, PVA 4537, 4538, 4540) |
| | **_Specific factual references with citations are set forth below for the_** |

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

**STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**
**(Central District)**

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | ***court's convenience showing PVA Inc. trained end users and designed the PVA 350 so end users had to work inside the machine***. |
| | Mr. Juarez was trained on the PVA 650 machine. (Ex 3 Depo. Ruben Juarez Volume 1 : 30 :16-18, 30 :24-31 :5, 72:9-14) |
| | PVA Inc. trained Mr. Juarez to put his head in the PVA 350 machine. (Ex 3 Depo. Juarez Volume 1: 89:14-18, 90:8-11) Part of Mr. Juarez would bypass the safety switch to do the programming of the PVA 350 machine. (Ex 3 Depo. Juarez Volume 1: 121:16-19) |
| | Mr. Juarez was trained by PVA Inc. to open the door of the machine to perform programming job duties. (Ex 3 Depo. Juarez Volume 1: 121: 22-122:20, 122:22-123:1) |
| | Mr. Juarez believe it was unsafe for the operators to open the machine door and operate the PVA 350 because they could get their hand stuck in the machine, but he did not have a chemistry background so he did not know whether the chemicals were harmful or not, and he relied on the training provided by PVA Inc. that he could put is head safely in the machine while programming the machine. (Ex 3 Depo. Juarez Volume I: 123:19-124:12) |
| | Mr. Juarez had to place his head into the machine to see what portions were covered because he would not be able to see into the machine by just looking through the window. (Ex 4 Depo. Juarez Volume II: 226:12-227:6) |
| | Mr. Juarez was trained in 2011 by PVA Inc. through a hands on approach on how to use the PVA 650 machine, but there was no hazardous chemical |

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | training.  (Ex. 4 Depo. Juarez Volume II232:1-7, 232: 23-25) **PVA INC. PROVIDED TRAINING AND TRAINED MR. JUAREZ TO PUT HIS HEAD INSIDE THE PVA MACHINE WITHOUT ANY PROTECTIVE GEAR** Ruben Juarez attended training at PVA Inc., and PVA trained him to put his head inside the machine while spraying without any protective gear. He attended these trainings while working for EMI and Space X. (Exhibit 24, 4458-4462) **END USERS MUST PUT THEIR HEAD INTO THE PVA 350 MACHINE TO CHECK THE THICKNESS OF THE CHEMICAL COATING AND TO SPRAY THE PROPER AREAS OF THE CIRCUIT BOARD** •     The Wet Film Thickness Gauge shows how Mr. Juarez **had to measure the level of the fluid on the boards and is relevant to show he had to stick his head in the machine**. (Exhibit 23, PVA 1181 (Wet Film Thickness Gauge)) •     Pursuant to email dated December 15, 2014 on 11:47 a.m. Bievenue emailed to Matupang indicating the **only way to know for sure the mix ratio is coming out of a spray valve is with flow monitors and if you don't have flow monitors you are "spraying blind."** (Exhibit 30) **BELOW PLAINTIFFS ASSERT** |

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

| **MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS** | **RESPONSE TO OPPOSITION** |
|---|---|
| | **SPECIFIC DISPUTES OF FACT REGARDING THE PVA 350'S MACHINE DEFECTS, INADEQUATE SAFETY MEASURES, AND THE VENTILATION SYSTEM.**<br><br>•      The alleged PVA safety guide states: "Some machines are equipped with an exhaust fan.  The exhaust fan is provided to exhaust fumes from the work area.  The exhaust flange should be connected to an appropriate ducting system that is capable of receiving 150 CFM.  Insufficient airflow through the exhaust system generates an error." However, **this manual was not provided in a hardcopy form to Space X based on the pictures PVA provided**.  (Exhibit 29, PVA 63)<br><br>•      The Exhaust Verification Process shows **some machines** have an auto shut down.  (Exhibit 29, PVA 64)<br><br>•      **A user has to visually inspect the position of a needle with respect to a calibration point and the user may have to physically reposition the needle**.  (Exhibit 29, PVA 69)<br><br>•      The PVA Product Overview indicated a number of safety items are not included on the PVA 350 automatically such as: conveyor type, passive programming camera, XY fiducial camera, exhaust blower, onboard computer, and flow monitoring. (Exhibit 29, PVA 220)<br><br>•      There is a picture of the module, and there appears to be an insufficient exhaust system in the back of the machine. (Exhibit 29, PVA 4537, |

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | 4538, 4539, 4540, and 4542). |
| | • The April 11, 2012 conformal coating video with Space X boards utilized the same chemicals as used at Space X at PVA Inc. (See Exhibit 9 and Exhibit 22) |
| | • Exhibit 5, Video of the PVA 350 shows the machine is far too small for someone to use while wearing a ventilator. |
| | • Video Exhibit 11 shows the conformal coating process in a PVA machine in 2010. |
| | • Video Exhibit 8 shows all the different types of coating and also shows various designs that were not defective so it is great for comparison and explanation. |
| | • The comparison PVA 350 shows there is a **low exhaust and no conveyer** belt option on the PVA 350. (Exhibit 20) |
| 33.    Throughout his time with SpaceX, he worked with one of the conformal coating materials, Humiseal thinner 521, on a daily basis.<br><br>Juarez Depo.<br><br>(Catalona Dec., 336:3-8, 336:17-19, 385, 448:12-449:12.) | 33. Disputed to the extent that this fact infers that Mr. Juarez was aware of the danger of working with Humiseal, the chemical make up of Humiseal, or the defective PVA 350 prior to obtaining the MSDS sheets in March 2015. Further, disputed to the extent that Mr. Juarez was also working around other chemicals, machines, and a chemical bath.<br>• (Ex 3 Depo. Juarez Volume 1: 55:21-56:5)<br>• (Ex. 1. Depo. Ruben Juarez |

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

149

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | Volume I, p. 49:22-50:8, 51:17, 52:8-16, 53:15-21, 54:11-55:15, 55:21-56:8, 56:14-18 , 57:16-23-58:18, 59: 4-5, 59: 22-24,60:17-61:20, 62:1-15)<br>• (Ex. 2 Depo. Ruben Juarez Volume 2 p. 77:5-78:3)<br>• (Ex 3 Depo. Ruben Juarez Volume 1, 49:25-50:3)<br>• (Ex 3 Depo. Juarez Volume 1: 66:19-22, 116:1-14)<br>• (Ex 3 Depo. Juarez Volume 1: 108:20-109:12)<br>• (Ex 4 Depo. Juarez Volume II, 332:7-337:14)<br>• (Ex 4 Depo. Juarez Volume II, 249:22-250:12)<br>• (Ex 4 Depo. Juarez Volume II, 262:21-263: 13)<br>• (Ex 4 Depo. Juarez Volume II, 262:21-263:13)<br>• (Ex 4 Depo. Juarez Volume II, 287:6-288:3, 288:24-289:6)<br>• (Ex 4 Depo. Juarez Volume II, 235:1-238: 5, 238: 19-22)<br>• (Ex 4 Depo. Juarez Volume II, 241:4-15)<br>• (See Exhibit 22, PVA 4463-4481)<br>• (See Exhibit 9 and Exhibit 22)<br>• (Exhibit 22, PVA 23 and 24)<br>• (Exhibit 22 PVA 4449-4452)<br>• (Exhibit 22 PVA 4463-4481)<br>• (Exhibit 22)<br>• (Ex 22, PVA 340-347)<br>• (Exhibit 36 PVA 4449-4452)<br>• (Exhibit 36)<br>• (Exhibit 36, PVA 1728-1731)<br>• (Exhibit 25, PVA 7-9, 17-29, 222-234, 250-251, 4449-4452)<br><br>***Specific factual references with citations are set forth below for the court's convenience portraying the*** |

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | ***factual dispute that Mr. Juarez was not aware of the danger of Humiseal and defects with the PVA 350.*** . |
| | Mr. Juarez indicated he does not have a chemistry background at his deposition on March 8, 2018.  (Ex 3 Depo. Juarez Volume 1: 55:21-56:5) |
| | On May 20, 2015, Mr. Juarez indicated at the second session of his deposition (within the two year filing period), the wash station for printed circuit board assemblies was right next to his station.  (Ex. 2 Depo. Ruben Juarez Volume 2 p. 77:5-78:3) |
| | The equipment in the rooms where Mr. Juarez was working was constantly changing.  (Ex 3 Depo. Ruben Juarez Volume 1, 49:25-50:3) |
| | Initially, Mr. Juarez did not know what chemicals were in the chemical baths, and he found out, but the chemical baths did not have anything to do with the PVA 350, and when he filed the worker's compensation claim his claim was derived from the chemical washes.  (Ex 3 Depo. Juarez Volume 1: 66:19-22, 116:1-14) |
| | Mr. Juarez called a co-worker to get a list of the chemicals utilized in the wash area at Space X, and he may have offered to give the names of the rest of the chemicals used in the conformal coating area.  (Ex 3 Depo. Juarez Volume 1: 108:20-109:12) |
| | Mr Juarez tried to get a list of chemicals from Space X, which were not provided initially.  Afterwhich, Mr. Juarez called Francisco to get a list of chemicals he had worked with. After Francisco provided the list of chemicals, Mr. Juarez emailed Space X requested the MSDS sheets for the chemicals that Francisco listed.  (Ex 4 |

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | Depo. Juarez Volume II, 332:7-337:14) |
| | Mr. Juarez filed his worker's compensation claim based on his belief the chemical baths were making him sick as well as a solder wire until he learned only alcohol was used in the baths and only lead free solder wire were used in the filters. (Ex 4 Depo. Juarez Volume II, 262:21-263:13) |
| | Mr. Juarez had no reason to suspect any wrongdoing on behalf of PVA and Space X, and he did not know the reason he was getting sick when he filed the worker's compensation claim.  (Ex 4 Depo. Juarez Volume II, 262:21-263:13) |
| | Mr. Juarez first suspected he was working in a toxic work environment when he received the MSDS sheets from Space X after requesting the MSDS sheets via email after March 3, 2015.  (Ex 4 Depo. Juarez Volume II, 287:6-288:3, 288:24-289:6) |
| | Initially, Mr. Juarez thought his problems were caused by alcohol chemical baths and solder wire, but later he found out that lead-free solder wire was used.  Upon this discovery, Mr. Juarez reached out to Francisco and then to Space X to get the MSDS sheets.  (Ex 4 Depo. Juarez Volume II, 241:4-15) |
| | ***PVA HAD KNOWLEDGE OF THE CHEMICALS BEING UTILIZED BY SPACE X AND WAS INVOLVED IN SUBSEQUENT MODIFICATIONS TO THE MACHINE INVOLVING VARIOUS CHEMICALS*** |
| | • PVA Inc was aware of |

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | the chemicals being utilized with the PVA 350. including the **transition to Arathane**.  (See Exhibit 22, PVA 4463-4481)<br><br>•        The April 11, 2012 conformal coating video with Space X boards utilized the **same chemicals as used at Space X at PVA Inc**. (See Exhibit 9 and Exhibit 22)<br><br>•        On September 19, 2013, PVA Inc. made further modifications to the subject machine including reworking the dispense system on the machine to connect one cartridge to the one gallon tank for "**automatic solvent flush of Arathane 5705**."  (Exhibit 22, PVA 23 and 24)<br><br>•        On July 30, 2009, PVA/Andrew Haraburda serviced the W3267 (subject PVA 350 machine) and this description of the work/changes included:  adding solvent flush option (6 oz cartridge, 3 way ball valve, O-ISPSI Precision Regulator, which shows **PVA Inc. was continuing to modify and upgrade the machine. Then PVA Inc. specifically recommended Space X alter the solvent to a different solvent stating "Space X may need to use a different solvent (i.e. Xylene)."** (Exhibit 22 PVA 4449-4452)<br><br>•        Pursuant to email chain dated March 13, 2012 Jonathan Urquhart (**PVA**) was aware of |

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | **Space X's use of Arathane 5750**   The email specifically states, "I think David has spoken to you **about our customer Space X**.  They build full blown rocket ships.  **They plan on pre-mixing this material part A part B and a 3rd part, thinner in small batches apply to board and the purge system** because of shelf life once mixed.  **Sounds screwy to me.**"  They were looking for a demo on the 27th of March.  (Exhibit 22, PVA 4463-4481) |
| | •      Pursuant to email dated March 15, 2012 to Jonathan Urquhart, PVA was preparing a demo on the PVA 650 and **PVA were working with the same chemical materials Space X was utilizing, but PVA did not want Space X to know and PVA indicated they were going to convey to Space X that the materials were similar, but not the exact same**. .  (Exhibit 22, PVA 4463-4481) |
| | •      Pursuant to email dated March 30, 2012, the test at PVA Inc. was rescheduled to **4-11-12 to view the** 3 part mixing process. (Exhibit 22, PVA 4463-4481) |
| | •      Pursuant to email from David Gomez to Johnathan (PVA) Urquhart dated May 11, 2012 at 2:11 p.m., Space X talked about retrofitting the PVA 350, and then |

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

**STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**
**(Central District)**

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | subsequently there was confirmation from Jon indicating **Space X wanted to duplicate what was done during the visit.** (Exhibit 22, PVA 4463-4481) |
| | •   Jon Urquart performed **the demo for Space X on 4-11-12**. (Exhibit 22, PVA 4463-4481) |
| | •   Email dated December 2, 2014 at 9:03 a.m. Mr. Urquhart (PVA) indicated to Mr. Matupang there would be 2 demos including a coating with **Arathane 2 part mix and spray and dispensing using a 650 or Delta 6 with board head**, JDX (underfill), SVX (past), and FC100 (solder mask). (Exhibit 22) |
| | •   On November 17, 2014, Mr. Urquhart (PVA) asked is Space X wanted to mix on the fly with **5750**? (Exhibit 22) |
| | •   On January 9, 2013 at 10:38 a.m. David Gomez (PVA) emailed Brian Ignaut (Space X) **doing follow up on the "two part material application project you were working on and kindly presented us with**." There was inquiry as to whether there were any developments in the first few months of 2013. (Exhibit 22) |
| | •   On December 3, 2012 at 12:01 PM David Gomez (PVA) wrote Scott Abarta asking for the **two part material brand** |

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | **and part # as well as any MSDS and data sheets**.  Also, there was a request for a shot size and cycle time per part if possible. (Exhibit 22)<br><br>•      On **September 10, 2013**, Mr. Gomez (PVA) indicated "they only want a 20 oz cartridge retainer & cap with spray & needle valve for the pre-mix material and 6oz cartridge retainer & cap **for the solvent, so it can flush the premixed material out right after doing a batch of boards**." Mr. Gomez indicated he was **familiar with the "fluid delivery line" because he had done it "several times."** He also indicated they were "**not there yet**" for the two part coating spraying.  (Exhibit 22)<br><br>•      On September 9, 2013, Richard Bievenue (PVA) wrote Jonathan Connelly (ccing David Filbert, David Gomez, and Michael R. Leonard) indicating that **he spoke with Duc Phan (Space X) about the 350 machine and how Space X was switching to utilizing a 2 part material including Arathane 5750.  There was discussion about premising the solvents and flushing the solvent valves**.  Also, there was interest regarding a 2 component meter mix system. (Exhibit 22)<br><br>•      On September 18, 2013 at 12:41 p.m., **Mr. Gomez (PVA) indicated that this is not the** |

**STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**
**(Central District)**

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | **first time they have done a two part coating system and he thought they were putting to many resources into this. The email specifically references Arathane** 5750. (Exhibit 22) |
| | • On September 13, 2013, from Duc Phan (Space X) to Jonathan Connelly, Michael R. Leonard (ccing Richard Bievenue and David Filbert) explained the process with pictures. **Specifically, he indicated that Space X removed the hoses from the spray dispensing head and connected the hoses from the Arathane material and solvent to it.   He further explained when the Arathane material was not in use they vaped the solvent hose and connect the Arathane material hose to the other head just for a place holder.  He also explained that Arathane 5750 part A and B is mixed together and poured in the first reservoir and the second reservoir is the solvent use to thin out the mixed Arathane for spray requirement**.  (Exhibit 22) |
| | • On September 13, 2013 at 6:07 a.m. Jonathan Connelly wrote Duc Phan (Space X). Michael R. Leonard and ccing Richard Bievenue and David Filbert inquiring about the process, requesting a picture, **and asking if the Arathane and the solvent was being run out of the cartridges mounted** |

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

**STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**
(Central District)

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | **on the side of the machine**. (Exhibit 22)<br><br>•  On September 10, 2013, Duc Phan (Space X)wrote Michael R. Leonard and Jonathan Connelly, **and there was a clear indication that Space X was using Arathane 5750 material with a 2 hour cure time, and they were concerned the operator would forget to purge and rinse the material when the job is done. They were looking to automate the process after coating**.  (Exhibit 22)<br><br>o  The sales order dated September 25, 2013 indicated PVA job number SPCX2115 W3267 indicated **PVA was there to provide onsite support for Mechanical Electrical Programming Fluid Delivery.**  (Exhibit 22)<br><br>o  The sales quotation dated September 19, 2013, stated that PVA was to "**rework the dispense system on machine serial number W3267 to connect one cartridge to (1) one gallon tank for automatic solvent flush of Arathane 5705**.  This was to include 1) all hoses and fittings needed to complete the integration, 2) pneumatic ball valve for automatic solvent flush, 3) hardware and software needed for integration, and one tank. Further, PVA was to travel to Space X to install the new auto solvent flush system. (Exhibit |

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | 22) |
| | o       The purchase order dated September 24, 2013 issued to PVA and shipping to Space X on a Space X purchase order identified a supplier part number B72-01433 and **there is a full description of the work to be done including reworking the dispense system for an automatic flush of Arathane 5750** and in similar detail as stated above.  There is a separate purchase order for the travel expenditures. (Exhibit 22) |
| | •       On July 21, 2014 at 6:48 p.m. Duc Phan (Space X) emailed Rex indicating the **current machine uses both Humiseal and Arathane and there are separate spray valves for both material**.  They need the pendant purge button to work for both materials. (Exhibit 22) |
| | •       PVA Inc. circulated diagram clearly states **Arathane**.  Additionally, there is a quote work sheet for the 3 way assembly, pressure tank, hoses, fittings, valves as well as programming and engineering. (Ex 22, PVA 340-347) |
| | **PVA INC. INSTALLED THE PVA 350 AND CONTINUED TO MODIFIED PROGRAM THROUGHOUT THE PVA 350'S LIFETIME** |
| | •       On 6-23-2009 to 6-24-2009, PVA Inc. installed and serviced the |

**STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**
**(Central District)**

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | W3267 machine at Space X.  The work was performed by Andrew Haraburde.  He trained Juan Sotelo and Marsha Thompson in installation and training.  The installation check list specifically indicated various items were working, but there is an X versus a check mark on the pump and SEMEA boxes. The description of the work/changes including "**modified main program (mo2).**"  (Exhibit 36 PVA 4449-4452)<br><br>There are a series of work orders regarding modifications and sales showing PVA Inc. continued to service and support the use and modification of the PVA 350. (Exhibit 25, PVA 7-9, 17-29, 222-234, 250-251, 4449-4452) |
| 34.     Later, he also programmed other machines called "SMT" or "pick and place" machines, but he did not know when this work began during his more than two years at SpaceX.<br><br>Juarez Depo.<br><br>(Catalona Dec., 320:4-7, 320:19-321:7, 321:16-25.) | 34. Undisputed to the extent Mr. Juarez also worked programming SMT machines.<br><br>• (Ex 4 Depo. Juarez Volume II: 182:1-5)<br>• (Dec. Ruben Juarez)<br><br>***Specific factual references with citations are set forth below for the court's convenience***.<br><br>Disputed as to the term later.  Initially, when Mr. Juarez was hired, he was hired as an SMT and thus the SOP cited by defense was not applicable. (Ex 4 Depo. Juarez Volume II: 182:1-5) |
| 35.     Mr. Juarez testified that within "two weeks" after starting at SpaceX, he began to be exposed to "toxic chemicals" when he | 35. Disputed to the extent this fact infers Mr. Juarez was aware of the chemical exposure at the time he was working with the |

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

| **MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS** | **RESPONSE TO OPPOSITION** |
|---|---|
| started programming the PVA 350.<br><br>Juarez Depo.<br><br>(Catalona Dec., 261:21-263:14, 317:7-318:10.) | defective PVA 350 machine. Disputed to the extent that Mr. Juarez was aware of the product defect that lead to the exposure of the toxic chemicals.  Mr. Juarez was unsure as to the source of the chemical exposure and was operating under the belief the chemical bath caused the dangerous exposure and/or exposure to lead wiring.<br>• (Dec. Ruben Juarez)<br>•  (Ex 3 Depo. Juarez Volume 1: 55:21-56:5)<br>• (Ex 1, Depo. Ruben Juarez Volume I, p. 49:22-50:8, 51:17, 52:8-16, 53:15-21, 54:11-55:15, 55:21-56:8, 56:14-18 , 57:16-23-58:18, 59: 4-5, 59: 22-24,60:17-61:20, 62:1-15)<br>• (Ex. 2 Depo. Ruben Juarez Volume 2 p. 77:5-78:3)<br>• (Ex 3 Depo. Ruben Juarez Volume 1, 49:25-50:3)<br>• (Ex 3 Depo. Juarez Volume 1: 66:19-22, 116:1-14)<br>• (Ex 3 Depo. Juarez Volume 1: 108:20-109:12)<br>• (Ex 4 Depo. Juarez Volume II, 332:7-337:14)<br>• (Ex 4 Depo. Juarez Volume II, 249:22-250:12)<br>• (Ex 4 Depo. Juarez Volume II, 262:21-263: 13)<br>• (Ex 4 Depo. Juarez Volume II, 262:21-263:13)<br>• (Ex 4 Depo. Juarez Volume II, 287:6-288:3, 288:24-289:6) |

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | • (Ex 4 Depo. Juarez Volume II, 235:1-238: 5, 238: 19-22)
• (Ex 4 Depo. Juarez Volume II, 241:4-15)

***Specific factual references with citations are set forth below for the court's convenience portraying that Mr. Juarez was not aware his symptoms related to toxic chemicals utilized with the PVA 350 before March 2015..***

Mr. Juarez indicated he does not have a chemistry background at his deposition on March 8, 2018.  (Ex 3 Depo. Juarez Volume 1: 55:21-56:5)

On May 20, 2015, Mr. Juarez indicated at the second session of his deposition (within the two year filing period), the wash station for printed circuit board assemblies was right next to his station.  (Ex. 2 Depo. Ruben Juarez Volume 2 p. 77:5-78:3)

The equipment in the rooms where Mr. Juarez was working was constantly changing.  (Ex 3 Depo. Ruben Juarez Volume 1, 49:25-50:3)

Initially, Mr. Juarez did not know what chemicals were in the chemical baths, and he found out, but the chemical baths did not have anything to do with the PVA 350, and when he filed the worker's compensation claim his claim was derived from the chemical washes. (Ex 3 Depo. Juarez Volume 1: 66:19-22, 116:1-14)

Mr. Juarez called a co-worker to |

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

**STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**
**(Central District)**

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
| --- | --- |
| | get a list of the chemicals utilized in the wash area at Space X, and he may have offered to give the names of the rest of the chemicals used in the conformal coating area.  (Ex 3 Depo. Juarez Volume 1: 108:20-109:12)

Mr Juarez tried to get a list of chemicals from Space X, which did not work out.  Afterwhich, Mr. Juarez called Francisco to get a list of chemicals he had worked with. After Francisco provided the list of chemicals, Mr. Juarez emailed Space X requested the MSDS sheets for the chemicals that Francisco listed.  (Ex 4 Depo. Juarez Volume II, 332:7-337:14)

Mr. Juarez filed his worker's compensation claim based on his belief the chemical baths were making him sick as well as a solder wire until he learned only alcohol was used in the baths and only lead free solder wire were used in the filters. (Ex 4 Depo. Juarez Volume II, 262:21-263: 13)

Mr. Juarez had no reason to suspect any wrongdoing on behalf of PVA and Space X, and he did not know the reason he was getting sick when he filed the worker's compensation claim.  (Ex 4 Depo. Juarez Volume II, 262:21-263:13)

Mr. Juarez first suspected he was working in a toxic work environment when he received the MSDS sheets from Space X after requesting the MSDS sheets via email after March 3, 2015.  (Ex 4 Depo. Juarez Volume II, 287:6- |

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

**STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**
**(Central District)**

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
|  | 288:3, 288:24-289:6) Mr. Juarez called Francisco and received a list of the chemicals that Mr. Juarez was exposed to, and he thus requested the MSDS sheets from Space X to forward to his attorney so that could figure out what was going on and what was making him sick.  (Ex 4 Depo. Juarez Volume II, 235:1-238: 5, 238: 19-22) Initially, Mr. Juarez thought his problems were caused by alcohol chemical baths and solder wire, but later he found out that lead-free solder wire was used.  Upon this discovery, Mr. Juarez reached out to Francisco and then to Space X to get the MSDS sheets.  (Ex 4 Depo. Juarez Volume II, 241:4-15) |
| 36.    Then, in August or September of 2012, he started getting migraine headaches, dizziness, sinus symptoms and difficulty walking. Juarez Depo.; Windman Report; Juarez Workers' Comp. Depo. (Catalona Dec., 316:3-4, 318:20-22, 402, 446:6-10, 471:4-14.) | 36.Disputed.  This report by Gayle K. Windham indicates the date of the evaluation is March 31, 2016, well within the 2 year statute of limitations.  Although Mr. Juarez was experiencing headaches shortly after working at Space X, he also underwent an aneurysm surgery.  Mr. Juarez did not gain knowledge of the chemicals until the MSDS sheets were provided by Space X in March of 2015.  Before that time, he was not familiar with the chemical toxicity or the defects with the PVA 350.  However, he did |

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | report the smell and a stand alone filter was subsequently purchased for the operators. |
| | • (Exhibit 51, Windman Report) |
| | • (Ex 1, Depo. Ruben Juarez Volume I, p. 49:22-50:8, 51:17, 52:8-16, 53:15-21, 54:11-55:15, 55:21-56:8, 56:14-18 , 57:16-23-58:18, 59: 4-5, 59: 22-24,60:17-61:20, 62:1-15) |
| | • (Ex. 2 Depo. Ruben Juarez Volume 2 p. 77:5-78:3) |
| | • (Ex 3 Depo. Ruben Juarez Volume 1, 49:25-50:3) |
| | • (Ex 3 Depo. Juarez Volume 1: 66:19-22, 116:1-14) |
| | • (Ex 3 Depo. Juarez Volume 1: 108:20-109:12) |
| | • (Ex 4 Depo. Juarez Volume II, 332:7-337:14) |
| | • (Ex 4 Depo. Juarez Volume II, 249:22-250:12) |
| | • (Ex 4 Depo. Juarez Volume II, 262:21-263: 13) |
| | • (Ex 4 Depo. Juarez Volume II, 262:21-263:13) |
| | • (Ex 4 Depo. Juarez Volume II, 287:6-288:3, 288:24-289:6) |
| | • (Ex 4 Depo. Juarez Volume II, 235:1-238: 5, 238: 19-22) |
| | • (Ex 4 Depo. Juarez Volume II, 241:4-15) |
| | • (Ex 3 Depo. Juarez Volume 1: 55:21-56:5) |

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | ***Specific factual references with citations are set forth below for the court's convenience showing Mr. Juarez was not aware his symptoms were related to the toxic chemicals utilized with the PVA 350 until March 2015.***. |
| | On May 20, 2015, Mr. Juarez indicated at the second session of his deposition (within the two year filing period), the wash station for printed circuit board assemblies was right next to his station.  (Ex. 2 Depo. Ruben Juarez Volume 2 p. 77:5-78:3) |
| | The equipment in the rooms where Mr. Juarez was working was constantly changing.  (Ex 3 Depo. Ruben Juarez Volume 1, 49:25-50:3) |
| | Initially, Mr. Juarez did not know what chemicals were in the chemical baths, and he found out, but the chemical baths did not have anything to do with the PVA 350, and when he filed the worker's compensation claim his claim was derived from the chemical washes.  (Ex 3 Depo. Juarez Volume 1: 66:19-22, 116:1-14) |
| | Mr. Juarez called a co-worker to get a list of the chemicals utilized in the wash area at Space X, and he may have offered to give the names of the rest of the chemicals used in the conformal coating area.  (Ex 3 Depo. Juarez Volume 1: 108:20-109:12) Mr Juarez tried to get a list of chemicals from Space X, which did not work out.  Afterwhich, Mr. Juarez called Francisco to get a list of chemicals he had worked with.  After Francisco provided the list of chemicals, Mr. Juarez emailed Space X requested the MSDS sheets for the chemicals that Francisco listed.  (Ex 4 |

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | Depo. Juarez Volume II, 332:7-337:14) |
| | Mr. Juarez took a spray for medical problems to clear his airways, but nobody every pinpointed a cause for him to take the medicine. (Ex 4 Depo. Juarez Volume II, 249:22-250:12) |
| | Mr. Juarez filed his worker's compensation claim based on his belief the chemical baths were making him sick as well as a solder wire until he learned only alcohol was used in the baths and only lead free solder wire were used in the filters. (Ex 4 Depo. Juarez Volume II, 262:21-263:13) |
| | Mr. Juarez had no reason to suspect any wrongdoing on behalf of PVA and Space X, and he did not know the reason he was getting sick when he filed the worker's compensation claim. (Ex 4 Depo. Juarez Volume II, 262:21-263:13) |
| | Mr. Juarez first suspected he was working in a toxic work environment when he received the MSDS sheets from Space X after requesting the MSDS sheets via email after March 3, 2015. (Ex 4 Depo. Juarez Volume II, 287:6-288:3, 288:24-289:6) |
| | Mr. Juarez called Francisco and received a list of the chemicals that Mr. Juarez was exposed to, and he thus requested the MSDS sheets from Space X to forward to his attorney so that could figure out what was going on and what was making him sick. (Ex 4 Depo. Juarez Volume II, 235:1-238: 5, 238: 19-22) |
| | Initially, Mr. Juarez thought his problems were caused by alcohol chemical baths and solder wire, but later he found out that lead-free solder wire was used. Upon this discovery, Mr. Juarez reached out to Francisco and then to Space X to get the MSDS |

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | sheets.  (Ex 4 Depo. Juarez Volume II, 241:4-15)<br><br>Mr. Juarez indicated he does not have a chemistry background at his deposition on March 8, 2018.  (Ex 3 Depo. Juarez Volume 1: 55:21-56:5) |
| 37.    In the complaint, plaintiffs allege that starting in June, 2012, Juarez had "over 9 hospitalizations" and "at least 21 visits to urgent care/emergency room for symptoms associated with toxic chemical exposure."<br><br>FAC.<br><br>(Catalona Dec., 62:3-6.) | 37. Disputed to the extent Mr. Juarez later associated the toxic chemical exposure in March 2015 with his symptoms.  Mr. Juarez was not aware of the product defects in the PVA 350 that lead to the exposure of the toxic chemicals until he sat for his workers' compensation depositions in 2015.<br>• (Ex 3 Depo. Juarez Volume 1: 55:21-56:5)<br>• (Ex 1, Depo. Ruben Juarez Volume I, p. 49:22-50:8, 51:17, 52:8-16, 53:15-21, 54:11-55:15, 55:21-56:8, 56:14-18 , 57:16-23-58:18, 59: 4-5, 59: 22-24,60:17-61:20, 62:1-15)<br>• (Ex. 2 Depo. Ruben Juarez Volume 2 p. 77:5-78:3)<br>• (Ex 3 Depo. Ruben Juarez Volume 1, 49:25-50:3)<br>• (Ex 3 Depo. Juarez Volume 1: 66:19-22, 116:1-14)<br>• (Ex 3 Depo. Juarez Volume 1: 108:20-109:12)<br>• (Ex 4 Depo. Juarez Volume II, 332:7-337:14)<br>• (Ex 4 Depo. Juarez Volume |

BALABAN & SPIELBERGER LLP<br>11999 SAN VICENTE BOULEVARD, SUITE 345<br>LOS ANGELES, CALIFORNIA 90049

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | II, 249:22-250:12) |
| | • (Ex 4 Depo. Juarez Volume II, 262:21-263: 13) |
| | • (Ex 4 Depo. Juarez Volume II, 262:21-263:13) |
| | • (Ex 4 Depo. Juarez Volume II, 287:6-288:3, 288:24-289:6) |
| | • (Ex 4 Depo. Juarez Volume II, 235:1-238: 5, 238: 19-22) |
| | • (Ex 4 Depo. Juarez Volume II, 241:4-15) |
| | ***Specific factual references with citations are set forth below for the court's convenience disputing the factual inferences Mr. Juarez was aware his symptoms were related to the toxic chemicals coming from the PVA 350.*** |
| | Mr. Juarez indicated he does not have a chemistry background at his deposition on March 8, 2018.  (Ex 3 Depo. Juarez Volume 1: 55:21-56:5) |
| | On May 20, 2015, Mr. Juarez indicated at the second session of his deposition (within the two year filing period), the wash station for printed circuit board assemblies was right next to his station.  (Ex. 2 Depo. Ruben Juarez Volume 2 p. 77:5-78:3) |
| | The equipment in the rooms where Mr. Juarez was working was constantly changing.  (Ex 3 Depo. Ruben Juarez Volume 1, 49:25-50:3) |
| | Initially, Mr. Juarez did not know what chemicals were in the chemical baths, and he found out, but the |

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

**STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**
**(Central District)**

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | chemical baths did not have anything to do with the PVA 350, and when he filed the worker's compensation claim his claim was derived from the chemical washes. (Ex 3 Depo. Juarez Volume 1: 66:19-22, 116:1-14)
Mr. Juarez called a co-worker to get a list of the chemicals utilized in the wash area at Space X, and he may have offered to give the names of the rest of the chemicals used in the conformal coating area. (Ex 3 Depo. Juarez Volume 1: 108:20-109:12)
Mr Juarez tried to get a list of chemicals from Space X, which did not work out. Afterwhich, Mr. Juarez called Francisco to get a list of chemicals he had worked with. After Francisco provided the list of chemicals, Mr. Juarez emailed Space X requested the MSDS sheets for the chemicals that Francisco listed. (Ex 4 Depo. Juarez Volume II, 332:7-337:14)
Mr. Juarez took a spray for medical problems to clear his airways, but nobody every pinpointed a cause for him to take the medicine. (Ex 4 Depo. Juarez Volume II, 249:22-250:12)
Mr. Juarez filed his worker's compensation claim based on his belief the chemical baths were making him sick as well as a solder wire until he learned only alcohol was used in the baths and only lead free solder wire were used in the filters. (Ex 4 Depo. Juarez Volume II, 262:21-263:13)
Mr. Juarez had no reason to suspect any wrongdoing on behalf of PVA and Space X, and he did not know the reason he was getting sick when he filed the worker's compensation claim. (Ex 4 Depo. Juarez Volume II, 262:21-263:13) |

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | Mr. Juarez first suspected he was working in a toxic work environment when he received the MSDS sheets from Space X after requesting the MSDS sheets via email after March 3, 2015.  (Ex 4 Depo. Juarez Volume II, 287:6-288:3, 288:24-289:6)

Mr. Juarez called Francisco and received a list of the chemicals that Mr. Juarez was exposed to, and he thus requested the MSDS sheets from Space X to forward to his attorney so that could figure out what was going on and what was making him sick.  (Ex 4 Depo. Juarez Volume II, 235:1-238: 5, 238: 19-22)

Initially, Mr. Juarez thought his problems were caused by alcohol chemical baths and solder wire, but later he found out that lead-free solder wire was used.  Upon this discovery, Mr. Juarez reached out to Francisco and then to Space X to get the MSDS sheets.  (Ex 4 Depo. Juarez Volume II, 241:4-15) |
| 38.    He told neurologist Isaac Regev, M.D., that "almost from the beginning he noted frequent headaches at work which he felt was associated with exposure to various chemicals."


Regev Report.

(Catalona Dec., 368.) | 38. Objection to this record as hearsay.

Disputed. This record shows that Mr. Juarez' ongoing thought that his headaches were due to his medical condition of having an aneurysm or due to Mr. Juarez' unique sensitivities. Then, after his aneurysm, Mr. Juarez realized his headaches had not gone away and he guessed that his headaches were caused by exposure to the nearby chemical bath and those lead wires in nearby filters.  It was not until Mr. Juarez |

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | received the MSDS sheets in March of 2015, that Mr. Juarez felt his headaches were associated from chemical exposure from something other than the chemical bath or lead wiring.  This report was prepared in 2015. |

- (Exhibit 48, Dr. Regev M.D. Report 2015)
- (Ex 3 Depo. Juarez Volume 1: 55:21-56:5)
- (Ex 1, Depo. Ruben Juarez Volume I, p. 49:22-50:8, 51:17, 52:8-16, 53:15-21, 54:11-55:15, 55:21-56:8, 56:14-18   ,   57:16-23-58:18, 59: 4-5, 59: 22-24,60:17-61:20, 62:1-15)
- (Ex. 2 Depo. Ruben Juarez Volume 2 p. 77:5-78:3)
- (Ex 3 Depo. Ruben Juarez Volume 1, 49:25-50:3)
- (Ex 3 Depo. Juarez Volume 1: 66:19-22, 116:1-14)
- (Ex 3 Depo. Juarez Volume 1: 108:20-109:12)
- (Ex 4 Depo. Juarez Volume II, 332:7-337:14)
- .(Ex 4 Depo. Juarez Volume II, 249:22-250:12)
- (Ex 4 Depo. Juarez Volume II, 262:21-263: 13)
- (Ex 4 Depo. Juarez Volume II, 262:21-263:13)
- (Ex 4 Depo. Juarez Volume II, 287:6-288:3, 288:24-

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | 289:6)<br>● .(Ex 4 Depo. Juarez Volume II, 235:1-238: 5, 238: 19-22)<br>● (Ex 4 Depo. Juarez Volume II, 241:4-15)<br>***Specific factual references with citations are set forth below for the court's convenience portraying the factual dispute that Mr. Juarez was not aware his symptoms were related to the toxic chemical exposure from the PVA 350 defects.***<br><br>Mr. Juarez indicated he does not have a chemistry background at his deposition on March 8, 2018.  (Ex 3 Depo. Juarez Volume 1: 55:21-56:5)<br><br>At Mr. Juarez' deposition on March 30, 2015, (within the two year filing period) he implicated a number of reasons he could have been injured as he was not yet clear on the specific cause of his injuries, whether wrongdoing had occurred, or whether any wrongdoing specifically caused his injuries.  Specifically, Mr. Juarez indicated he was exposed to Humiseal 527 thinner while soaking parts to be cleaned (cleaning bath), doing maintenance work, flushing equipment, verifying fluids were flushed, bleeding the lines, and doing detailed cleaning of the machines so the operators could try new chemicals to better protect the electronic devices. Further, Mr. Juarez also discussed his |

**STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT (Central District)**

BALABAN & SPIELBERGER LLP<br>11999 SAN VICENTE BOULEVARD, SUITE 345<br>LOS ANGELES, CALIFORNIA 90049

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | exposure to a product called solder wire as a potential cause of injuries when he would replace the fume extractor filters while cleaning re-workstations that were similar to a fountain also called a cleaning bath where Mr. Juarez would remove soldering tools and reassembling them, which took a couple of hours. Mr. Juarez also discussed his exposure to Humiseal 1A33 for conformal coating by programming the machines and tooling and doing dry/wet runs while programming the machines. |
| | (Ex 1, Depo. Ruben Juarez Volume I, p. 49:22-50:8, 51:17, 52:8-16, 53:15-21, 54:11-55:15, 55:21-56:8, 56:14-18, 57:16-23-58:18, 59: 4-5, 59: 22-24,60:17-61:20, 62:1-15) |
| | On May 20, 2015, Mr. Juarez indicated at the second session of his deposition (within the two year filing period), the wash station for printed circuit board assemblies was right next to his station.  (Ex. 2 Depo. Ruben Juarez Volume 2 p. 77:5-78:3) |
| | The equipment in the rooms where Mr. Juarez was working was constantly changing.  (Ex 3 Depo. Ruben Juarez Volume 1, 49:25-50:3) |
| | Initially, Mr. Juarez did not know what chemicals were in the chemical baths, and he found out, but the chemical baths did not have anything |

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | to do with the PVA 350, and when he filed the worker's compensation claim his claim was derived from the chemical washes.  (Ex 3 Depo. Juarez Volume 1: 66:19-22, 116:1-14)<br><br>Mr. Juarez called a co-worker to get a list of the chemicals utilized in the wash area at Space X, and he may have offered to give the names of the rest of the chemicals used in the conformal coating area.  (Ex 3 Depo. Juarez Volume 1: 108:20-109:12)<br><br>Mr Juarez tried to get a list of chemicals from Space X, which did not work out.  Afterwhich, Mr. Juarez called Francisco to get a list of chemicals he had worked with.  After Francisco provided the list of chemicals, Mr. Juarez emailed Space X requested the MSDS sheets for the chemicals that Francisco listed.  (Ex 4 Depo. Juarez Volume II, 332:7-337:14)<br><br>Mr. Juarez took a spray for medical problems to clear his airways, but nobody every pinpointed a cause for him to take the medicine.  (Ex 4 Depo. Juarez Volume II, 249:22-250:12)<br><br>Mr. Juarez filed his worker's compensation claim based on his belief the chemical baths were making him sick as well as a solder wire until he learned only alcohol was used in the baths and only lead free solder |

BALABAN & SPIELBERGER LLP<br>11999 SAN VICENTE BOULEVARD, SUITE 345<br>LOS ANGELES, CALIFORNIA 90049

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | wire were used in the filters. (Ex 4 Depo. Juarez Volume II, 262:21-263: 13) |
| | Mr. Juarez had no reason to suspect any wrongdoing on behalf of PVA and Space X, and he did not know the reason he was getting sick when he filed the worker's compensation claim.  (Ex 4 Depo. Juarez Volume II, 262:21-263:13) |
| | Mr. Juarez first suspected he was working in a toxic work environment when he received the MSDS sheets from Space X after requesting the MSDS sheets via email after March 3, 2015.  (Ex 4 Depo. Juarez Volume II, 287:6-288:3, 288:24-289:6) |
| | Mr. Juarez called Francisco and received a list of the chemicals that Mr. Juarez was exposed to, and he thus requested the MSDS sheets from Space X to forward to his attorney so that could figure out what was going on and what was making him sick. (Ex 4 Depo. Juarez Volume II, 235:1-238: 5, 238: 19-22) |
| | Initially, Mr. Juarez thought his problems were caused by alcohol chemical baths and solder wire, but later he found out that lead-free solder wire was used.  Upon this discovery, Mr. Juarez reached out to Francisco and then to Space X to get the MSDS |

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | sheets.  (Ex 4 Depo. Juarez Volume II, 241:4-15) |
| 39.    He made similar statements to psychologist Gayle K. Windman, Ph.D.:  *"A few months after he began working at SpacexX,* Mr. Juarez developed symptoms of migraine headaches, dizziness, difficulty walking and sinus symptoms due to exposure to electronic materials such as tin and lead; *chemical coatings such as Arathane and HumiSeal*; and cleaning substances such as thinners and ispropyl alcohol.  *He reported this issue to his supervisor to no avail."*<br><br>Windman Report.<br><br>(Catalona Dec., 402 (emphasis added).) | 39. Objection this statement is vague and ambiguous as to time and hearsay.<br><br>Disputed. This record shows that Mr. Juarez' ongoing thought that his headaches were due to his medical condition of having an aneurysm or due to Mr. Juarez' unique sensitivities. Then, after his aneurysm, Mr. Juarez realized his headaches had not gone away and he guessed that his headaches were caused by exposure to the nearby chemical bath and those lead wires in nearby filters.  It was not until Mr. Juarez received the MSDS sheets in March of 2015, that Mr. Juarez felt his headaches were associated from chemical exposure from something other than the chemical bath or lead wiring.  This report was prepared in 2015.<br><br>Disputed.  This report by Gayle K. Windham indicates the date of the evaluation is March 31, 2016, well within the 2 year statute of limitations.  Although Mr. Juarez was experiencing |

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
|  | headaches shortly after working at Space X, he also underwent an aneurysm surgery.  Mr. Juarez did not gain knowledge of the chemicals he was working with until the MSDS sheets were provided by Space X.  Before that time, he was not familiar with the chemical toxicity or the defects with the PVA 350.  Further, disputed to the extent Mr. Juarez was unsure as to the source of the chemical exposure and was operating under the belief the chemical bath caused the dangerous exposure and/or exposure to lead wiring. |

- (Exhibit 51, Windman Report)
- (Ex 3 Depo. Juarez Volume 1: 55:21-56:5)
- (Ex 1, Depo. Ruben Juarez Volume I, p. 49:22-50:8, 51:17, 52:8-16, 53:15-21, 54:11-55:15,  55:21-56:8, 56:14-18  ,  57:16-23-58:18, 59: 4-5, 59: 22-24,60:17-61:20, 62:1-15)
- (Ex. 2 Depo. Ruben Juarez Volume 2 p. 77:5-78:3)
- (Ex 3 Depo. Ruben Juarez Volume 1, 49:25-50:3)
- (Ex 3 Depo. Juarez Volume 1: 66:19-22, 116:1-14)
- (Ex 3 Depo. Juarez Volume 1: 108:20-109:12)
- (Ex 4 Depo. Juarez Volume

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

| **MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS** | **RESPONSE TO OPPOSITION** |
|---|---|
| | II, 332:7-337:14) |
| | • (Ex 4 Depo. Juarez Volume II, 249:22-250:12) |
| | • (Ex 4 Depo. Juarez Volume II, 262:21-263: 13) |
| | • (Ex 4 Depo. Juarez Volume II, 262:21-263:13) |
| | • (Ex 4 Depo. Juarez Volume II,  287:6-288:3,  288:24-289:6) |
| | • (Ex 4 Depo. Juarez Volume II, 235:1-238: 5, 238: 19-22) |
| | • (Ex 4 Depo. Juarez Volume II, 241:4-15) |
| | ***Specific factual references with citations are set forth below for the court's convenience showing that Mr. Juarez was not aware of PVA Inc.'s training and the chemicals he was utilizing made him sick.*** |
| | Mr. Juarez indicated he does not have a chemistry background at his deposition on March 8, 2018.   (Ex 3 Depo. Juarez Volume 1: 55:21-56:5) |
| | At Mr. Juarez' deposition on March 30, 2015, (within the two year filing period) he implicated a number of reasons he could have been injured as he was not yet clear on the specific cause of his injuries, whether wrongdoing had occurred, or whether any wrongdoing specifically caused his injuries.  Specifically, Mr. Juarez indicated he was exposed to Humiseal 527 thinner while soaking parts to be cleaned (cleaning bath), doing maintenance work, flushing equipment, verifying fluids were flushed, bleeding the lines, and doing detailed cleaning of the machines so the operators could try new chemicals to better protect the electronic devices. |

179

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | Further, Mr. Juarez also discussed his exposure to a product called solder wire as a potential cause of injuries when he would replace the fume extractor filters while cleaning re-workstations that were similar to a fountain also called a cleaning bath where Mr. Juarez would remove soldering tools and reassembling them, which took a couple of hours. Mr. Juarez also discussed his exposure to Humiseal 1A33 for conformal coating by programming the machines and tooling and doing dry/wet runs while programming the machines. (Ex 1, Depo. Ruben Juarez Volume I, p. 49:22-50:8, 51:17, 52:8-16, 53:15-21, 54:11-55:15, 55:21-56:8, 56:14-18, 57:16-23-58:18, 59: 4-5, 59: 22-24,60:17-61:20, 62:1-15)

On May 20, 2015, Mr. Juarez indicated at the second session of his deposition (within the two year filing period), the wash station for printed circuit board assemblies was right next to his station.  (Ex. 2 Depo. Ruben Juarez Volume 2 p. 77:5-78:3)

The equipment in the rooms where Mr. Juarez was working was constantly changing.  (Ex 3 Depo. Ruben Juarez Volume 1, 49:25-50:3)

Initially, Mr. Juarez did not know what chemicals were in the chemical baths, and he found out, but the chemical baths did not have anything to do with the PVA 350, and when he filed the worker's compensation claim his claim was derived from the chemical washes.  (Ex 3 Depo. Juarez Volume 1: 66:19-22, 116:1-14)

Mr. Juarez called a co-worker to get a list of the chemicals utilized in the wash area at Space X, and he may have offered to give the names of the rest of the chemicals used in the conformal coating area.  (Ex 3 Depo. Juarez Volume 1: 108:20-109:12) |

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
|  | Mr Juarez tried to get a list of chemicals from Space X, which did not work out.  Afterwhich, Mr. Juarez called Francisco to get a list of chemicals he had worked with.  After Francisco provided the list of chemicals, Mr. Juarez emailed Space X requested the MSDS sheets for the chemicals that Francisco listed.  (Ex 4 Depo. Juarez Volume II, 332:7-337:14) |
|  | Mr. Juarez took a spray for medical problems to clear his airways, but nobody every pinpointed a cause for him to take the medicine.  (Ex 4 Depo. Juarez Volume II, 249:22-250:12) |
|  | Mr. Juarez filed his worker's compensation claim based on his belief the chemical baths were making him sick as well as a solder wire until he learned only alcohol was used in the baths and only lead free solder wire were used in the filters. (Ex 4 Depo. Juarez Volume II, 262:21-263:13) |
|  | Mr. Juarez had no reason to suspect any wrongdoing on behalf of PVA and Space X, and he did not know the reason he was getting sick when he filed the worker's compensation claim.  (Ex 4 Depo. Juarez Volume II, 262:21-263:13) |
|  | Mr. Juarez first suspected he was working in a toxic work environment when he received the MSDS sheets from Space X after requesting the MSDS sheets via email after March 3, 2015.  (Ex 4 Depo. Juarez Volume II, 287:6-288:3, 288:24-289:6) |
|  | Mr. Juarez called Francisco and received a list of the chemicals that Mr. Juarez was exposed to, and he thus requested the MSDS sheets from Space X to forward to his attorney so that could figure out what was going on and what was making him sick.  (Ex 4 Depo. |

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | Juarez Volume II, 235:1-238: 5, 238: 19-22)<br><br>Initially, Mr. Juarez thought his problems were caused by alcohol chemical baths and solder wire, but later he found out that lead-free solder wire was used.  Upon this discovery, Mr. Juarez reached out to Francisco and then to Space X to get the MSDS sheets.  (Ex 4 Depo. Juarez Volume II, 241:4-15) |
| 40.     In particular, he was upset that the safety features of the PVA 350 were being bypassed which he determined was "hazardous":<br><br>So sometimes you have to open it.  And in normal conditions, it should have shut down, not allow you to work on the machine.  But somebody will *bypass the safety switch.*<br><br>Q. So what does that mean?  The machine would operate while –<br><br>A.  While you open it, while it's still open, *which is hazardous*.  But that's the way they work<br><br>Workers' Comp. Depo.<br><br>(Catalona Dec., 450:14-20, 452:22-24 (emphasis added).) | 40. Disputed to the extent this fact infers Mr. Juarez was aware of the chemical exposure at the time he was working with Space X as the hazard Mr. Juarez was referring to at his deposition was an injury to a hand or an electric shock hazard not chemical exposure.  PVA Inc. specifically trained users to bypass the safety features, which had to be done to utilize the machine without proper safety controls.<br>• (Ex 3 Depo.  Ruben  Juarez  Volume  1 :  30 :16-18,  30 :24-31 :5, 72:9-14)<br>• (Ex 3 Depo. Juarez Volume 1: 89:14-18, 90:8-11)<br>• (Ex 3 Depo. Juarez Volume 1: 121:16-19)<br>• (Ex 3 Depo. Juarez Volume 1: 121: 22- 122:20, 122:22-123:1)<br>• (Ex 3 Depo. Juarez Volume I: 123:19-124:12)<br>• (Ex 4 Depo. Juarez Volume II: 226:12-227:6) |

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | • (Ex. 4 Depo. Juarez Volume II232:1-7, 232: 23-25) |
| | • (Ex. 1 Depo. Ruben Juarez Volume 1 p. 51:17-52 :16) |
| | • (Ex 3 Depo. Juarez Volume I: 135:7-14, 136:1-3) |
| | • (Exhibit 31, PVA 51) |
| | • (Exhibit 31, PVA 40-41) |
| | • (Exhibit 15, PVA 69) |
| | • (Exhibit 16, PVA 0272) |
| | • (Exhibit 31, PVA 30-32, 51) |
| | • (Exhibit 18, PVA 40) |
| | • (Exhibit 35) |
| | • (Exhibit 17, PVA 63, 64, 219-220, 277, 279-280) |
| | • (Exhibit 24, 4458-4462) |
| | • (Exhibit 24) |
| | • (Exhibit 23, PVA 1181 (Wet Film Thickness Gauge)) |
| | • (Exhibit 30) |
| | ***Specific factual references with citations are set forth below for the court's convenience showing Mr. Juarez was not aware that the PVA 350 created a chemical hazard when he was using it.*** |
| | Mr. Juarez believe it was unsafe for the operators to open the machine door and operate the PVA 350 because they could get their hand stuck in the machine, but he did not have a chemistry background so he did not know whether the chemicals were harmful or not, and he relied on the training provided by PVA Inc. that he could put is head safely in the machine while programming the machine. (Ex |

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | 3 Depo. Juarez Volume I: 123:19-124:12) |

Mr. Juarez was trained in 2011 by PVA Inc. through a hands on approach on how to use the PVA 650 machine, but there was no hazardous chemical training. (Ex. 4 Depo. Juarez Volume II232:1-7, 232: 23-25)

As stated at Mr. Juarez' deposition on March 30, 2015 (within the two year filing period) Mr. Juarez did not operate the equipment; he was a programmer so he was not exposed to the same hazards. However, he specifically requested additional safety equipment to address the hazards to the operators because the machine did not have an alarm system when the exhaust fan was not working. (Ex. 1 Depo. Ruben Juarez Volume 1 p. 51:17-52 :16)

Mr. Juarez clarified the main reason they were looking to upgrade our equipment was to have the suction or the exhaust sensor get rid of the fumes, and Mr. Juarez did not know the chemicals were hazardous. (Ex 3 Depo. Juarez Volume I: 135:7-14, 136:1-3)

**THE MANUAL AND PVA INC. PROVIDED AN INADEQUATE WARNING**

The PVA Manual does not warn users to use a face mask or ventilator. (Exhibit 18, PVA 40)

• The warning on the sides states, "WARNING, Hazardous voltage. Power shall be disconnected before enclosure is opened. Enclosure shall be closed before power is restored." (Exhibit 35)

• **Not all PVA 350s have the alleged safety features including an**

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
|  | **exhaust fan/conveyer belt/an auto shut down/exhaust blower/flow monitoring, and cameras**.  Further, pursuant to training provided by PVA Inc., there are **bypass systems that must be utilized so programmers can complete their jobs**.  (Exhibit 17, PVA 63, 64, 219-220, 277, 279-280)

**PVA INC. PROVIDED TRAINING AND TRAINED MR. JUAREZ TO PUT HIS HEAD INSIDE THE PVA MACHINE WITHOUT ANY PROTECTIVE GEAR**

Ruben Juarez attended training at PVA Inc., and PVA trained him to put his head inside the machine while spraying without any protective gear. He attended these trainings while working for EMI and Space X. (Exhibit 24, 4458-4462)

**END USERS MUST PUT THEIR HEAD INTO THE PVA 350 MACHINE TO CHECK THE THICKNESS OF THE CHEMICAL COATING AND TO SPRAY THE PROPER AREAS OF THE CIRCUIT BOARD**

•     The Wet Film Thickness Gauge shows how Mr. Juarez **had to measure the level of the fluid on the boards and is relevant to show he had to stick his head in the machine**. (Exhibit 23, PVA 1181 (Wet Film Thickness Gauge))

•     Pursuant to email dated December 15, 2014 on 11:47 a.m. Bievenue emailed to Matupang indicating the **only way to know for sure the mix ratio is coming out of a spray valve is with flow monitors** |

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | **and if you don't have flow monitors you are "spraying blind."** (Exhibit 30) |
| 41.    He also told his toxicologist that "my employer bypass the safety switch" on this equipment.<br><br>Medical Intake Form; Juarez Workers' Comp. Depo.<br><br>(Catalona Dec., 384, 450:14-20, 452:22-24.) | 41. Disputed to the extent this fact appears vague as to time as this fact is derived from a form dated March 25, 2015, which is within the 2 year statute of limitations period.  Disputed to the extent this fact infers Mr. Juarez was aware of the dangerous chemical exposure at the time he was working with the PVA 350.  Disputed to the extent that Mr. Juarez was aware of the PVA 350 product defect.  Mr. Juarez was unsure as to the source of the chemical exposure and was operating under the belief the chemical bath caused the dangerous exposure and/or exposure to lead wiring.  Further, PVA Inc. specifically trained users to bypass the safety features, which had to be done to utilize the machine without proper safety controls.<br>• (Exhibit 50, Patient History Form March 25, 2015)<br>• (Ex 3 Depo. Ruben Juarez Volume 1 :  30 :16-18, 30 :24-31 :5, 72:9-14)<br>• (Ex 3 Depo. Juarez Volume 1: 89:14-18, 90:8-11)<br>• (Ex 3 Depo. Juarez Volume 1: 121:16-19)<br>• (Ex 3 Depo. Juarez Volume 1:  121: 22- 122:20, 122:22-123:1) |

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

**STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**
**(Central District)**

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | • (Ex 3 Depo. Juarez Volume I: 123:19-124:12) |
| | • (Ex 4 Depo. Juarez Volume II: 226:12-227:6) |
| | • (Ex. 4 Depo. Juarez Volume II232:1-7, 232:23-25) |
| | • (Ex 3 Depo. Juarez Volume I: 87:22-88:1) |
| | • (Ex 3 Depo. Juarez Volume 1: 156:15-157:2) |
| | • (Ex 3 Depo. Juarez Volume 1: 158:3-9) |
| | • (Exhibit 31, PVA 51) |
| | • (Exhibit 31, PVA30-32) |
| | • (Exhibit 31, PVA 40-41) |
| | • (Exhibit 15, PVA 69) |
| | • (Exhibit 16, PVA 0272) |
| | • (Exhibit 31, PVA 30-32, 51) |
| | • (Exhibit 18, PVA 40) |
| | • (Exhibit 35) |
| | • (Exhibit 17, PVA 63, 64, 219-220, 277, 279-280) |
| | • (Exhibit 24, 4458-4462) |
| | • (Exhibit 24) |
| | • (Exhibit 23, PVA 1181 (Wet Film Thickness Gauge)) |
| | • (Exhibit 30) |
| | ***Specific factual references with citations are set forth below for the court's convenience showing PVA Inc. trained Mr. Juarez and designed the PVA 350 to use the bypass system to program the machine.*** |

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | PVA Inc. trained Mr. Juarez to put his head in the PVA 350 machine and use the safety bypass system.  (Ex 3 Depo. Juarez Volume 1: 89:14-18, 90:8-11) |
| | Mr. Juarez was trained by PVA Inc. to open the door of the machine to perform programming job duties.  (Ex 3 Depo. Juarez Volume 1: 121: 22-122:20, 122:22-123:1) |
| | The PVA 350 was built so a programmer had to bypass the safety mechanisms to program the machine.  (Ex 3 Depo. Juarez Volume I: 87:22-88:1) |
| | Mr. Juarez indicated the PVA 350 is a bad design because the boards alter in size so the programmer has to put their head inside the machine to make sure the valve is aligned.  (Ex 3 Depo. Juarez Volume 1: 156:15-157:2) |
| | The PVA 350 was defectively designed because a programmer would have to put their head inside the machine to look where the machine was spraying.  (Ex 3 Depo. Juarez Volume 1: 158:3-9) |
| | **PVA INC. PROVIDED TRAINING AND TRAINED MR. JUAREZ TO PUT HIS HEAD INSIDE THE PVA MACHINE WITHOUT ANY PROTECTIVE GEAR** |
| | Ruben Juarez attended training at PVA Inc., and PVA trained him to put his head inside the machine while spraying without any protective gear. He attended these trainings while working for EMI and Space X. (Exhibit 24, 4458-4462) |
| | **END USERS MUST PUT THEIR** |

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | **HEAD INTO THE PVA 350 MACHINE TO CHECK THE THICKNESS OF THE CHEMICAL COATING AND TO SPRAY THE PROPER AREAS OF THE CIRCUIT BOARD**<br><br>•     The Wet Film Thickness Gauge shows how Mr. Juarez **had to measure the level of the fluid on the boards and is relevant to show he had to stick his head in the machine**. (Exhibit 23, PVA 1181 (Wet Film Thickness Gauge))<br><br>•     Pursuant to email dated December 15, 2014 on 11:47 a.m. Bievenue emailed to Matupang indicating the **only way to know for sure the mix ratio is coming out of a spray valve is with flow monitors and if you don't have flow monitors you are "spraying blind."** (Exhibit 30) |
| 42.     After reporting this issue to his employer, he also asked SpaceX to "upgrade" the PVA 350 which he felt should "have the alarm to know when the suction was working or not" which was necessary "to advise the operator that the suction system was not working or pulling all of the fumes out of it."<br><br>Juarez Workers' Comp. Depo.<br><br>(Catalona Dec., 472:13-473:6.) | 42.Disputed to the extent this fact infers Mr. Juarez thought that something wrong with the PVA 350 could cause his injuries. This fact merely shows that Mr. Juarez wanted an upgrade of the alarm system on the PVA 350. Requesting an upgrade is nto equivalent to stating that a machine has wrongfully caused an injury.  Mr. Juarez requested additional safety mechanisms on the machine for the operator's safety for safety reasons unrelated to his claim in |

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | this adjudication. |

- (Ex 3 Depo. Juarez Volume 1: 121: 22- 122:20, 122:22-123:1)
- (Ex 3 Depo. Juarez Volume I: 123:19-124:12)
- (Ex. 2 Depo. Ruben Juarez Volume 2 p. 78:15-79:12, 79:21-80:14)
- (Ex 3 Depo. Juarez Volume 1: 60:21-61:4)
- (Ex 3 Depo. Juarez Volume 1: 127:1-129:4)
- (Ex 3 Depo. Juarez Volume I: 135:7-14, 136:1-3)
- (Ex 4 Depo. Juarez Volume II, 317: 15-19)
- (Ex. 1 Depo. Ruben Juarez Volume 1 p. 51:17-52 :16)
- (Exhibit 31, PVA 51)
- (Exhibit 31, PVA30-32)
- (Exhibit 31, PVA 40-41)
- (Exhibit 15, PVA 69)
- (Exhibit 16, PVA 0272
- (Exhibit 31, PVA 30-32, 51)
- (Exhibit 18, PVA 40)
- (Exhibit 35)

***Specific factual references with citations are set forth below for the court's convenience regarding the safety hazards of the machine posed to the operators that were unrelated to Mr. Juarez' claims.***

Mr. Juarez was trained by PVA Inc. to open the door of the machine to

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
|  | perform programming job duties. (Ex 3 Depo. Juarez Volume 1: 121: 22-122:20, 122:22-123:1)  Mr. Juarez believe it was unsafe for the operators to open the machine door and operate the PVA 350 because they could get their hand stuck in the machine, but he did not have a chemistry background so he did not know whether the chemicals were harmful or not, and he relied on the training provided by PVA Inc. that he could put is head safely in the machine while programming the machine.  (Ex 3 Depo. Juarez Volume I: 123:19-124:12)

Mr. Juarez did order new equipment and purchase stand alone filtration systems to ensure the **operators were safe while operating conformal coating** machines because there was no alarm system to advise the operators that the suction system was not working.  .  (Ex. 2 Depo. Ruben Juarez Volume 2 p. 78:15-79:12, 79:21-80:14)

Mr. Juarez **purchased the filtration system when the PVA 350 moved to the larger room with additional equipment**.  (Ex 3 Depo. Juarez Volume 1: 60:21-61:4)

Mr. Juarez wanted additional equipment to facilitate the production process and ensure the operator safety by having the boards come out of the machine without anyone putting their heads in the machine (Ex 3 Depo. Juarez Volume 1: 127:1-129:4)

Mr. Juarez clarified the main reason they were looking to upgrade our equipment was to have the suction or |

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | the exhaust sensor get rid of the fumes, and **Mr. Juarez did not know the chemicals were hazardous**.  (Ex 3 Depo. Juarez Volume I: 135:7-14, 136:1-3)

Mr. Juarez purchased the air filtration system to **get rid of the smell of the chemicals.**  (Ex 4 Depo. Juarez Volume II, 317: 15-19)


As stated at Mr. Juarez' deposition on March 30, 2015 (within the two year filing period) Mr. Juarez did not operate the equipment; he was a programmer so he was not exposed to the same hazards.  However, he specifically requested additional safety equipment to address the hazards to the operators because the **machine did not have an alarm system when the exhaust fan was not working**.

(Ex. 1 Depo. Ruben Juarez Volume 1 p. 51:17-52 :16)

**THE MANUAL AND PVA INC. PROVIDED AN INADEQUATE WARNING**

•       The warning on the sides states, "WARNING, Hazardous voltage. Power shall be disconnected before enclosure is opened.  Enclosure shall be closed before power is restored." (Exhibit 35) |
| 43.     As far as he knew, SpaceX never addressed any of his concerns.

Juarez Depo.; Juarez Workers' Comp. Depo. | 43.Objection to the extent this reference is vague, ambiguous, and misleading. |

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

**STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**
**(Central District)**

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| (Catalona Dec., 334:18-335:14, 450:23.) | Disputed. This record shows that Mr. Juarez' ongoing thought that his headaches were due to his medical condition of having an aneurysm or due to Mr. Juarez' unique sensitivities. Then, after his aneurysm, Mr. Juarez realized his headaches had not gone away and he guessed that his headaches were caused by exposure to the nearby chemical bath and those lead wires in nearby filters.  It was not until Mr. Juarez received the MSDS sheets in March of 2015, that Mr. Juarez felt his headaches were associated from chemical exposure from something other than the chemical bath or lead wiring.  This report was prepared in 2015.

Disputed.  At Mr. Juarez' deposition, Mr. Catalona asked Mr. Juarez about the report taken by Dr. Regev in February 2015 when Mr. Juarez was still unsure as to the specific cause of his headaches that started after he began working at Space X as he was still operating under the impression his injuries post aneurysm surgery may be related to the lead wires or chemical baths.  (Note: Defendant has not included page 317 in the deposition |

**STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**
**(Central District)**

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | cited.) |
| | • (Exhibit 4, missing page 317:15-19, 317:21-320:20) |
| | • (Ex. 2 Depo. Ruben Juarez Volume 2 p. 78:15-79:12, 79:21-80:14) |
| | • (Ex 3 Depo. Juarez Volume 1: 60:21-61:4) |
| | • (Ex 3 Depo. Juarez Volume 1: 127:1-129:4) |
| | • (Ex 3 Depo. Juarez Volume I: 135:7-14, 136:1-3) |
| | • (Ex 4 Depo. Juarez Volume II, 317: 15-19) |
| | • (Exhibit 31, PVA 51) |
| | • (Exhibit 31, PVA30-32) |
| | • (Exhibit 31, PVA 40-41) |
| | • (Exhibit 15, PVA 69) |
| | • (Exhibit 16, PVA 0272) |
| | • (Exhibit 31, PVA 30-32, 51) |
| | • (Exhibit 18, PVA 40) |
| | • (Exhibit 35) |
| 44.    Eventually, he purchased a "separate standalone filtration system" for the conformal coating area "because the fumes can be pretty strong." Juarez Depo.; Juarez Workers' Comp. Depo. (Catalona Dec., 254:20-255:3, 472:13-473:6, 473:20-474:2.) | 44. Disputed to the extent the conformal coating area included a number of items and chemicals such as a chemical bath, lead wires, and other items. The PVA 350 had moved to a larger room with more equipment. Also, it is disputed to the extent this suggests and inference that Mr. |

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | Juarez was aware the PVA 350 defects. |
| | • (Ex. 2 Depo. Ruben Juarez Volume 2 p. 78:15-79:12, 79:21-80:14) |
| | • (Ex 3 Depo. Juarez Volume 1: 60:21-61:4) |
| | • (Ex 3 Depo. Juarez Volume 1: 127:1-129:4) |
| | • (Ex 3 Depo. Juarez Volume I: 135:7-14, 136:1-3) |
| | • (Ex 4 Depo. Juarez Volume II, 317: 15-19) |
| | • (Exhibit 31, PVA 51) |
| | • (Exhibit 31, PVA30-32) |
| | • (Exhibit 31, PVA 40-41) |
| | • (Exhibit 15, PVA 69) |
| | • (Exhibit 16, PVA 0272) |
| | • (Exhibit 31, PVA 30-32, 51) |
| | • (Exhibit 18, PVA 40) |
| | • (Exhibit 35) |
| | ***Specific factual references with citations are set forth below for the court's convenience regarding the purchase of the filtration system.*** |
| | Mr. Juarez purchased the filtration system when the PVA 350 moved to the larger room with additional equipment. (Ex 3 Depo. Juarez Volume 1: 60:21-61:4) |
| | Mr. Juarez clarified the main reason they were looking to upgrade our equipment was to have the suction or the exhaust sensor get rid of the fumes, and Mr. Juarez did not know the chemicals were hazardous. (Ex 3 Depo. Juarez Volume I: 135:7-14, 136:1-3) |

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | Mr. Juarez purchased the air filtration system to get rid of the smell of the chemicals.  (Ex 4 Depo. Juarez Volume II, 317: 15-19) |
| | **THE MANUAL AND PVA INC. PROVIDED AN INADEQUATE WARNING** |
| | The PVA Manual does not warn users to use a face mask or ventilator. (Exhibit 18, PVA 40) |
| | •    The warning on the sides states, "WARNING, **Hazardous voltage**. Power shall be disconnected before enclosure is opened.  Enclosure shall be closed before power is restored." (Exhibit 35) |
| 45.    Humiseal thinner, which he reportedly handled on a daily basis, was both a cleaning agent and a conformal coating material.<br><br>Juarez Depo.; Juarez Workers' Comp. Depo.<br><br>(Catalona Dec., 270:20-25, 312:10-22, 448:12-449:12, 449:24-450:16.) | 45.Disputed.  This record shows that Mr. Juarez' ongoing thought that his headaches were due to his medical condition of having an aneurysm or due to Mr. Juarez' unique sensitivities. Then, after his aneurysm, Mr. Juarez realized his headaches had not gone away and he guessed that his headaches were caused by exposure to the nearby chemical bath and those lead wires in nearby filters.  It was not until Mr. Juarez received the MSDS sheets in March of 2015, that Mr. Juarez felt his headaches were associated from chemical exposure from something other than the chemical bath or lead |

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

**STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**
**(Central District)**

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | wiring.  This report was prepared in 2015.<br><br>• Depo. Juarez, p. 49:22-50:8, Volume I, 3-30-15<br>• (Ex 3 Depo. Juarez Volume 1: 55:21-56:5)<br>• (Ex 3 Depo. Juarez Volume 1: 121: 22- 122:20, 122:22-123:1)<br>• (Ex 3 Depo. Juarez Volume I: 123:19-124:12)<br>• (Ex 1, Depo. Ruben Juarez Volume I, p. 49:22-50:8, 51:17, 52:8-16, 53:15-21, 54:11-55:15, 55:21-56:8, 56:14-18 , 57:16-23-58:18, 59: 4-5, 59: 22-24,60:17-61:20, 62:1-15)<br>• (Ex. 2 Depo. Ruben Juarez Volume 2 p. 77:5-78:3)<br>• (Ex 3 Depo. Ruben Juarez Volume 1, 49:25-50:3)<br>• (Ex 3 Depo. Juarez Volume 1: 66:19-22, 116:1-14)<br>• (Ex 3 Depo. Juarez Volume 1: 108:20-109:12)<br>• (Ex 4 Depo. Juarez Volume II, 332:7-337:14)<br>• (Ex 4 Depo. Juarez Volume II, 249:22-250:12)<br>• (Ex 4 Depo. Juarez Volume II, 262:21-263: 13)<br>• (Ex 4 Depo. Juarez Volume II, 262:21-263:13)<br>• (Ex 4 Depo. Juarez Volume II, 287:6-288:3, 288:24-289:6) |

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | • (Ex 4 Depo. Juarez Volume II, 235:1-238: 5, 238: 19-22) |
| | • (Ex 4 Depo. Juarez Volume II, 241:4-15) |
| | • (Exhibit 31, PVA 51) |
| | • (Exhibit 31, PVA30-32) |
| | • (Exhibit 31, PVA 40-41) |
| | • (Exhibit 15, PVA 69) |
| | • (Exhibit 16, PVA 0272) |
| | • (Exhibit 31, PVA 30-32, 51) |
| | • (Exhibit 18, PVA 40) |
| | • (Exhibit 35) |
| | ***Specific factual references with citations are set forth below for the court's convenience regarding PVA Inc.'s knowledge of the chemicals utilized with the PVA 350 and other dangers.*** |
| | Mr. Juarez indicated he does not have a chemistry background at his deposition on March 8, 2018.   (Ex 3 Depo. Juarez Volume 1: 55:21-56:5) |
| | Mr. Juarez was trained by PVA Inc. to open the door of the machine to perform programming job duties.  (Ex 3 Depo. Juarez Volume 1: 121: 22-122:20, 122:22-123:1)  Mr. Juarez believe it was unsafe for the operators to open the machine door and operate the PVA 350 because they could get their hand stuck in the machine, but he did not have a chemistry background so he did not know whether the chemicals were harmful or not, and he relied on the training provided by PVA Inc. that he could put is head safely in the machine while programming the machine. (Ex 3 Depo. Juarez Volume I: 123:19-124:12) |

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | On May 20, 2015, Mr. Juarez indicated at the second session of his deposition (within the two year filing period), the wash station for printed circuit board assemblies was right next to his station. (Ex. 2 Depo. Ruben Juarez Volume 2 p. 77:5-78:3) |
| | The equipment in the rooms where Mr. Juarez was working was constantly changing. (Ex 3 Depo. Ruben Juarez Volume 1, 49:25-50:3) |
| | Mr. Juarez called a co-worker to get a list of the chemicals utilized in the wash area at Space X, and he may have offered to give the names of the rest of the chemicals used in the conformal coating area. (Ex 3 Depo. Juarez Volume 1: 108:20-109:12) |
| | Mr Juarez tried to get a list of chemicals from Space X, which did not work out. Afterwhich, Mr. Juarez called Francisco to get a list of chemicals he had worked with. After Francisco provided the list of chemicals, Mr. Juarez emailed Space X requested the MSDS sheets for the chemicals that Francisco listed. (Ex 4 Depo. Juarez Volume II, 332:7-337:14) |
| | Mr. Juarez took a spray for medical problems to clear his airways, but nobody every pinpointed a cause for |

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | him to take the medicine.  (Ex 4 Depo. Juarez Volume II, 249:22-250:12) |
| | Mr. Juarez filed his worker's compensation claim based on his belief the chemical baths were making him sick as well as a solder wire until he learned only alcohol was used in the baths and only lead free solder wire were used in the filters. (Ex 4 Depo. Juarez Volume II, 262:21-263:13) |
| | Mr. Juarez had no reason to suspect any wrongdoing on behalf of PVA and Space X, and he did not know the reason he was getting sick when he filed the worker's compensation claim.  (Ex 4 Depo. Juarez Volume II, 262:21-263:13) |
| | Mr. Juarez first suspected he was working in a toxic work environment when he received the MSDS sheets from Space X after requesting the MSDS sheets via email after March 3, 2015.  (Ex 4 Depo. Juarez Volume II, 287:6-288:3, 288:24-289:6) |
| | Mr. Juarez called Francisco and received a list of the chemicals that Mr. Juarez was exposed to, and he thus requested the MSDS sheets from Space X to forward to his attorney so that could figure out what was going on and what was making him sick. |

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | (Ex 4 Depo. Juarez Volume II, 235:1-238: 5, 238: 19-22) |
| | Initially, Mr. Juarez thought his problems were caused by alcohol chemical baths and solder wire, but later he found out that lead-free solder wire was used.  Upon this discovery, Mr. Juarez reached out to Francisco and then to Space X to get the MSDS sheets.  (Ex 4 Depo. Juarez Volume II, 241:4-15) |
| 46.    On a medical-intake form, he stated that he worked with the Arathane and Humiseal products for 4-5 hours every day, which caused headaches, dizziness, nausea, eye irritation and tiredness. <br><br>Juarez Depo.; Medical Intake Form. <br><br>(Catalona Dec., 309:24-310:1, 310:8-21, 312:10-22, 313:24-314:8, 385-386, 398.) | 46. Objection as this statement is vague and ambiguous as to time. <br><br>Disputed. This form was completed on March 25, 2015, so the knowledge in this form is within the 2 year statute of limitations period.  Further, the presence of symptoms alone on various dates might be captured, but the cause of the symptoms are not. <br><br>(Catalona Dec. 383) <br><br>(Exhibit 50, Patient History Form March 25, 2015) |
| 47.    Then in January, 2013, he was diagnosed with a brain aneurysm and had brain surgery. <br><br>Juarez Depo.; History and Physical by Michael Alyesh, M.D. <br><br>(Catalona Dec., 304:19-305:4, 316:1-2, | 47. Undisputed to the extent Mr. Juarez was diagnosed with a brain aneurysm and had surgery. <br><br>Mr. Juarez had a history and physical dated March 14, 2013 where he had a coil embolization for nonruptured ACA aneurysm.  (Ex 4 Depo. Juarez Volume II, 246:12-18) |

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| 318:23-25, 363.) | |
| 48.    Due to his illness and surgery, Ruben Juarez missed 33.6 weeks of work in 2013 and did not return to work after taking a third medical leave on March 26, 2014.<br><br>SpaceX employment records; FAC.<br><br>(Dhillon Dec., 36-37; Catalona Dec., 62:16-17.) | 48. Objection the declaration Ms. Dhillon is not a doctor and does not have personal knowledge of the reasons Mr. Juarez missed work in 2013.<br><br>Disputed to the extent the actual evidence is either misstated or miscited.  Exhibits 36-37 are reports from Mr. Regev and there is not Exhibit 36-37 cited in Ms. Dhillon's declaration.<br><br>The FAC cited by defendant merely states: "[d]ue to continuing medical treatment, hospitalization, and urgent care visits, Plaintiff has not worked since May or June of 2014.<br><br>(Exhibit 38 FAC 7:16-17) |
| 49.    Plaintiff filed his workers' compensation action on September 24, 2014, claiming his headaches and aneurysm were caused by "repetitive and continuous exposure" to toxic substances.<br><br>Workers' Comp. Claim.<br><br>(Catalona Dec., 357.) | 49. Disputed to the extent this is not what the worker's compensation form states.  Specifically, the worker's compensation form states: "DUE TO REPITITIVE AND CONTINUOUS EXPOSURE TO ELECTRONIC PARTS CLEANING & LEAD SO." This claim form does not state "toxic substances."<br><br>• (Exhibit 49 Workers Comp. Claim)<br>• (Ex 3 Depo. Juarez Volume 1: 55:21-56:5)<br>• (Ex 1, Depo. Ruben Juarez Volume I, p. 49:22-50:8, 51:17, 52:8-16, 53:15-21, 54:11-55:15, 55:21-56:8, 56:14-18 , 57:16-23- |

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

| **MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS** | **RESPONSE TO OPPOSITION** |
|---|---|
| | 58:18, 59: 4-5, 59: 22-24,60:17-61:20, 62:1-15)
• (Ex. 2 Depo. Ruben Juarez Volume 2 p. 77:5-78:3)
• (Ex 3 Depo. Ruben Juarez Volume 1, 49:25-50:3)
• (Ex 3 Depo. Juarez Volume 1: 66:19-22, 116:1-14)
• (Ex 3 Depo. Juarez Volume 1: 108:20-109:12)
• (Ex 4 Depo. Juarez Volume II, 332:7-337:14)
• (Ex 4 Depo. Juarez Volume II, 249:22-250:12)
• (Ex 4 Depo. Juarez Volume II, 262:21-263: 13)
• (Ex 4 Depo. Juarez Volume II, 262:21-263:13)
• (Ex 4 Depo. Juarez Volume II, 287:6-288:3, 288:24-289:6)
• (Ex 4 Depo. Juarez Volume II, 235:1-238: 5, 238: 19-22)
• (Ex 4 Depo. Juarez Volume II, 241:4-15)

***Specific factual references with citations are set forth below for the court's convenience regarding additional facts to support Mr. Juarez' claim he was not aware of the PVA defects or toxic chemicals coming from the PVA 350 machine.***

Mr. Juarez indicated he does not have a chemistry background at his deposition on March 8, 2018.   (Ex 3 Depo. Juarez Volume 1: 55:21-56:5)

At Mr. Juarez' deposition on March 30, 2015, (within the two year filing |

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

| **MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS** | **RESPONSE TO OPPOSITION** |
|---|---|
| | period) he implicated a number of reasons he could have been injured as he was not yet clear on the specific cause of his injuries, whether wrongdoing had occurred, or whether any wrongdoing specifically caused his injuries.  Specifically, Mr. Juarez indicated he was exposed to Humiseal 527 thinner while soaking parts to be cleaned (cleaning bath), doing maintenance work, flushing equipment, verifying fluids were flushed, bleeding the lines, and doing detailed cleaning of the machines so the operators could try new chemicals to better protect the electronic devices.  Further, Mr. Juarez also discussed his exposure to a product called solder wire as a potential cause of injuries when he would replace the fume extractor filters while cleaning re-workstations that were similar to a fountain also called a cleaning bath where Mr. Juarez would remove soldering tools and reassembling them, which took a couple of hours.  Mr. Juarez also discussed his exposure to Humiseal 1A33 for conformal coating by programming the machines and tooling and doing dry/wet runs while programming the machines.  (Ex 1, Depo. Ruben Juarez Volume I, p. 49:22-50:8, 51:17, 52:8-16, 53:15-21, 54:11-55:15, 55:21-56:8, 56:14-18, 57:16-23-58:18, 59: 4-5, 59: 22-24,60:17-61:20, 62:1-15)

On May 20, 2015, Mr. Juarez indicated at the second session of his deposition (within the two year filing period), the wash station for printed circuit board assemblies was right next to his station.  (Ex. 2 Depo. Ruben Juarez Volume 2 p. 77:5-78:3)

The equipment in the rooms where Mr. Juarez was working was constantly changing.  (Ex 3 Depo. Ruben Juarez Volume 1, 49:25-50:3) Initially, Mr. Juarez did not know what chemicals were in the chemical baths, and he found out, but the |

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

204

**STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**
**(Central District)**

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | chemical baths did not have anything to do with the PVA 350, and when he filed the worker's compensation claim his claim was derived from the chemical washes. (Ex 3 Depo. Juarez Volume 1: 66:19-22, 116:1-14) |
| | Mr. Juarez called a co-worker to get a list of the chemicals utilized in the wash area at Space X, and he may have offered to give the names of the rest of the chemicals used in the conformal coating area. (Ex 3 Depo. Juarez Volume 1: 108:20-109:12) |
| | Mr Juarez tried to get a list of chemicals from Space X, which did not work out. Afterwhich, Mr. Juarez called Francisco to get a list of chemicals he had worked with. After Francisco provided the list of chemicals, Mr. Juarez emailed Space X requested the MSDS sheets for the chemicals that Francisco listed. (Ex 4 Depo. Juarez Volume II, 332:7-337:14) |
| | Mr. Juarez took a spray for medical problems to clear his airways, but nobody every pinpointed a cause for him to take the medicine. (Ex 4 Depo. Juarez Volume II, 249:22-250:12) |
| | Mr. Juarez filed his worker's compensation claim based on his belief the chemical baths were making him sick as well as a solder wire until he learned only alcohol was used in the baths and only lead free solder wire were used in the filters. (Ex 4 Depo. Juarez Volume II, 262:21-263:13) |
| | Mr. Juarez had no reason to suspect any wrongdoing on behalf of PVA and Space X, and he did not know the reason he was getting sick when he filed the worker's compensation claim. (Ex 4 Depo. Juarez Volume II, 262:21-263:13) |

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | Mr. Juarez first suspected the toxicity of the chemicals at Space X when he received the MSDS sheets from Space X after requesting the MSDS sheets via email after March 3, 2015.  (Ex 4 Depo. Juarez Volume II, 287:6-288:3, 288:24-289:6)

Mr. Juarez called Francisco and received a list of the chemicals that Mr. Juarez was exposed to, and he thus requested the MSDS sheets from Space X to forward to his attorney so that could figure out what was going on and what was making him sick. (Ex 4 Depo. Juarez Volume II, 235:1-238: 5, 238: 19-22)

Initially, Mr. Juarez thought his problems were caused by alcohol chemical baths and solder wire, but later he found out that lead-free solder wire was used.  Upon this discovery, Mr. Juarez reached out to Francisco and then to Space X to get the MSDS sheets.  (Ex 4 Depo. Juarez Volume II, 241:4-15) |
| 50.     On February 3, 2015, he told Neurologist Isaac Regev, M.D. that "almost from the beginning he noted frequent headaches at work and he believed they were associated with chemicals used to clean electrical parts."

Juarez Depo.; Regev Report.

(Catalona Dec., 337:20, 370.) | 50. Objection this statement is hearsay.

Disputed. This record shows that Mr. Juarez' ongoing thought that his headaches were due to his medical condition of having an aneurysm or due to Mr. Juarez' unique sensitivities. Then, after his aneurysm, Mr. Juarez realized his headaches had not gone away and he guessed that his headaches were caused by exposure to the nearby chemical bath and those lead wires in nearby filters.  It was not until Mr. Juarez |

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | received the MSDS sheets in March of 2015, that Mr. Juarez felt his headaches were associated from chemical exposure from something other than the chemical bath or lead wiring. This report was prepared in 2015. |

- (Exhibit 48)
- (Ex 3 Depo. Juarez Volume 1: 55:21-56:5)
- (Ex 1, Depo. Ruben Juarez Volume I, p. 49:22-50:8, 51:17, 52:8-16, 53:15-21, 54:11-55:15, 55:21-56:8, 56:14-18 , 57:16-23-58:18, 59: 4-5, 59: 22-24,60:17-61:20, 62:1-15)
- (Ex. 2 Depo. Ruben Juarez Volume 2 p. 77:5-78:3)
- (Ex 3 Depo. Ruben Juarez Volume 1, 49:25-50:3)
- (Ex 3 Depo. Juarez Volume 1: 66:19-22, 116:1-14)
- (Ex 3 Depo. Juarez Volume 1: 108:20-109:12)
- (Ex 4 Depo. Juarez Volume II, 332:7-337:14)
- (Ex 4 Depo. Juarez Volume II, 249:22-250:12)
- (Ex 4 Depo. Juarez Volume II, 262:21-263: 13)
- (Ex 4 Depo. Juarez Volume II, 262:21-263:13)
- (Ex 4 Depo. Juarez Volume II, 287:6-288:3, 288:24-289:6)
- (Ex 4 Depo. Juarez Volume II, 235:1-238: 5, 238: 19-22)
- (Ex 4 Depo. Juarez Volume II,

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | 241:4-15) |

***Specific factual references with citations are set forth below for the court's convenience supporting Mr. Juarez' claim he was not aware of the defect of the PVA 350 and the toxicity of the chemicals until he received the MSDS sheets.***

Mr. Juarez indicated he does not have a chemistry background at his deposition on March 8, 2018.   (Ex 3 Depo. Juarez Volume 1: 55:21-56:5)

At Mr. Juarez' deposition on March 30, 2015, (within the two year filing period) he implicated a number of reasons he could have been injured as he was not yet clear on the specific cause of his injuries, whether wrongdoing had occurred, or whether any wrongdoing specifically caused his injuries.  Specifically, Mr. Juarez indicated he was exposed to Humiseal 527 thinner while soaking parts to be cleaned (cleaning bath), doing maintenance work, flushing equipment, verifying fluids were flushed, bleeding the lines, and doing detailed cleaning of the machines so the operators could try new chemicals to better protect the electronic devices. Further, Mr. Juarez also discussed his exposure to a product called solder wire as a potential cause of injuries when he would replace the fume extractor filters while cleaning re-workstations that were similar to a fountain also called a cleaning bath where Mr. Juarez would remove soldering tools and reassembling them, which took a couple of hours. Mr. Juarez also discussed his exposure to Humiseal 1A33 for conformal coating by programming the machines and tooling and doing dry/wet runs while programming the machines.

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | (Ex 1, Depo. Ruben Juarez Volume I, p. 49:22-50:8, 51:17, 52:8-16, 53:15-21, 54:11-55:15, 55:21-56:8, 56:14-18 , 57:16-23-58:18, 59: 4-5, 59: 22-24,60:17-61:20, 62:1-15)

On May 20, 2015, Mr. Juarez indicated at the second session of his deposition (within the two year filing period), the wash station for printed circuit board assemblies was right next to his station.  (Ex. 2 Depo. Ruben Juarez Volume 2 p. 77:5-78:3)

The equipment in the rooms where Mr. Juarez was working was constantly changing.  (Ex 3 Depo. Ruben Juarez Volume 1, 49:25-50:3)

Initially, Mr. Juarez did not know what chemicals were in the chemical baths, and he found out, but the chemical baths did not have anything to do with the PVA 350, and when he filed the worker's compensation claim his claim was derived from the chemical washes.  (Ex 3 Depo. Juarez Volume 1: 66:19-22, 116:1-14)

Mr. Juarez called a co-worker to get a list of the chemicals utilized in the wash area at Space X, and he may have offered to give the names of the rest of the chemicals used in the conformal coating area.  (Ex 3 Depo. Juarez Volume 1: 108:20-109:12)

Mr Juarez tried to get a list of chemicals from Space X, which did not work out.  Afterwhich, Mr. Juarez called Francisco to get a list of chemicals he had worked with.  After Francisco provided the list of chemicals, Mr. Juarez emailed Space X requested the MSDS sheets for the chemicals that Francisco listed.  (Ex 4 Depo. Juarez Volume II, 332:7-337:14)

Mr. Juarez took a spray for medical problems to clear his airways, but nobody every pinpointed a cause for |

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | him to take the medicine.  (Ex 4 Depo. Juarez Volume II, 249:22-250:12)

Mr. Juarez filed his worker's compensation claim based on his belief the chemical baths were making him sick as well as a solder wire until he learned only alcohol was used in the baths and only lead free solder wire were used in the filters. (Ex 4 Depo. Juarez Volume II, 262:21-263: 13)

Mr. Juarez had no reason to suspect any wrongdoing on behalf of PVA and Space X, and he did not know the reason he was getting sick when he filed the worker's compensation claim.  (Ex 4 Depo. Juarez Volume II, 262:21-263:13)

Mr. Juarez first suspected he was working in a toxic work environment when he received the MSDS sheets from Space X after requesting the MSDS sheets via email after March 3, 2015.  (Ex 4 Depo. Juarez Volume II, 287:6-288:3, 288:24-289:6)

Mr. Juarez called Francisco and received a list of the chemicals that Mr. Juarez was exposed to, and he thus requested the MSDS sheets from Space X to forward to his attorney so that could figure out what was going on and what was making him sick. (Ex 4 Depo. Juarez Volume II, 235:1-238: 5, 238: 19-22)

Initially, Mr. Juarez thought his problems were caused by alcohol chemical baths and solder wire, but later he found out that lead-free solder wire was used.  Upon this discovery, Mr. Juarez reached out to Francisco and then to Space X to get the MSDS sheets.  (Ex 4 Depo. Juarez Volume II, 241:4-15) |

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | |
| 51.    He admitted at his deposition that by this time he suspected his headaches and other symptoms were caused by "toxic exposure."<br><br>Juarez Depo.; Regev Report.<br><br>(Catalona Dec., 337:20, 338:15-19, 370.) | 51.Disputed. This record shows that Mr. Juarez' ongoing thought that his headaches were due to his medical condition of having an aneurysm or due to Mr. Juarez' unique sensitivities. Then, after his aneurysm, Mr. Juarez realized his headaches had not gone away and he guessed that his headaches were caused by exposure to the nearby chemical bath and those lead wires in nearby filters.  It was not until Mr. Juarez received the MSDS sheets in March of 2015, that Mr. Juarez felt his headaches were associated from chemical exposure from something other than the chemical bath or lead wiring.  This report was prepared in 2015.<br><br><br>• (Exhibit 4, Depo Juarez Volume II, 331:3-19)<br>• (Ex 1, Depo. Ruben Juarez Volume I, p. 49:22-50:8, 51:17, 52:8-16, 53:15-21, 54:11-55:15, 55:21-56:8, 56:14-18  ,  57:16-23-58:18, 59: 4-5, 59: 22-24,60:17-61:20, 62:1-15)<br>• (Ex. 2 Depo. Ruben Juarez Volume 2 p. 77:5-78:3)<br>• (Ex 3 Depo. Ruben Juarez |

BALABAN & SPIELBERGER LLP<br>11999 SAN VICENTE BOULEVARD, SUITE 345<br>LOS ANGELES, CALIFORNIA 90049

**STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**
**(Central District)**

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | Volume 1, 49:25-50:3) |
| | • (Ex 3 Depo. Juarez Volume 1: 66:19-22, 116:1-14) |
| | • (Ex 3 Depo. Juarez Volume 1: 108:20-109:12) |
| | • .(Ex 4 Depo. Juarez Volume II, 332:7-337:14) |
| | • .(Ex 4 Depo. Juarez Volume II, 249:22-250:12) |
| | • (Ex 4 Depo. Juarez Volume II, 262:21-263: 13) |
| | • (Ex 4 Depo. Juarez Volume II, 262:21-263:13) |
| | • (Ex 4 Depo. Juarez Volume II, 287:6-288:3, 288:24-289:6) |
| | • (Ex 4 Depo. Juarez Volume II, 235:1-238: 5, 238: 19-22) |
| | • (Ex 4 Depo. Juarez Volume II, 241:4-15) |
| | ***Specific factual references with citations are set forth below for the court's convenience regarding Plaintiffs' belief the PVA 350 did not have anything to do with his injuries before 2015.*** |
| | At Mr. Juarez' deposition on March 30, 2015, (within the two year filing period) he implicated a number of reasons he could have been injured as he was not yet clear on the specific cause of his injuries, whether wrongdoing had occurred, or whether any wrongdoing specifically caused |

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | his injuries. Specifically, Mr. Juarez indicated he was exposed to Humiseal 527 thinner while soaking parts to be cleaned (cleaning bath), doing maintenance work, flushing equipment, verifying fluids were flushed, bleeding the lines, and doing detailed cleaning of the machines so the operators could try new chemicals to better protect the electronic devices. Further, Mr. Juarez also discussed his exposure to a product called solder wire as a potential cause of injuries when he would replace the fume extractor filters while cleaning re-workstations that were similar to a fountain also called a cleaning bath where Mr. Juarez would remove soldering tools and reassembling them, which took a couple of hours. Mr. Juarez also discussed his exposure to Humiseal 1A33 for conformal coating by programming the machines and tooling and doing dry/wet runs while programming the machines. |
| | (Ex 1, Depo. Ruben Juarez Volume I, p. 49:22-50:8, 51:17, 52:8-16, 53:15-21, 54:11-55:15, 55:21-56:8, 56:14-18, 57:16-23-58:18, 59: 4-5, 59: 22-24,60:17-61:20, 62:1-15) |
| | On May 20, 2015, Mr. Juarez indicated at the second session of his deposition (within the two year filing period), the wash station for printed circuit board assemblies was right next |

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | to his station.  (Ex. 2 Depo. Ruben Juarez Volume 2 p. 77:5-78:3) |
| | The equipment in the rooms where Mr. Juarez was working was constantly changing.  (Ex 3 Depo. Ruben Juarez Volume 1, 49:25-50:3) |
| | Initially, Mr. Juarez did not know what chemicals were in the chemical baths, and he found out, but the chemical baths did not have anything to do with the PVA 350, and when he filed the worker's compensation claim his claim was derived from the chemical washes.  (Ex 3 Depo. Juarez Volume 1: 66:19-22, 116:1-14) |
| | Mr. Juarez called a co-worker to get a list of the chemicals utilized in the wash area at Space X, and he may have offered to give the names of the rest of the chemicals used in the conformal coating area.  (Ex 3 Depo. Juarez Volume 1: 108:20-109:12) |
| | Mr Juarez tried to get a list of chemicals from Space X, which did not work out.  Afterwhich, Mr. Juarez called Francisco to get a list of chemicals he had worked with.  After Francisco provided the list of chemicals, Mr. Juarez emailed Space X requested the MSDS sheets for the chemicals that Francisco listed.  (Ex 4 Depo. Juarez Volume II, 332:7-337:14) |

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

| **MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS** | **RESPONSE TO OPPOSITION** |
|---|---|
| | Mr. Juarez took a spray for medical problems to clear his airways, but nobody every pinpointed a cause for him to take the medicine. (Ex 4 Depo. Juarez Volume II, 249:22-250:12) |
| | Mr. Juarez filed his worker's compensation claim based on his belief the chemical baths were making him sick as well as a solder wire until he learned only alcohol was used in the baths and only lead free solder wire were used in the filters. (Ex 4 Depo. Juarez Volume II, 262:21-263:13) |
| | Mr. Juarez had no reason to suspect any wrongdoing on behalf of PVA and Space X, and he did not know the reason he was getting sick when he filed the worker's compensation claim. (Ex 4 Depo. Juarez Volume II, 262:21-263:13) |
| | Mr. Juarez first suspected he was working in a toxic work environment when he received the MSDS sheets from Space X after requesting the MSDS sheets via email after March 3, 2015. (Ex 4 Depo. Juarez Volume II, 287:6-288:3, 288:24-289:6) |
| | Mr. Juarez called Francisco and received a list of the chemicals that Mr. Juarez was exposed to, and he thus requested the MSDS sheets from Space X to forward to his attorney so that could figure out what was going |

**STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**
**(Central District)**

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | on and what was making him sick. (Ex 4 Depo. Juarez Volume II, 235:1-238: 5, 238: 19-22)

Initially, Mr. Juarez thought his problems were caused by alcohol chemical baths and solder wire, but later he found out that lead-free solder wire was used.  Upon this discovery, Mr. Juarez reached out to Francisco and then to Space X to get the MSDS sheets.  (Ex 4 Depo. Juarez Volume II, 241:4-15) |
| 52.    The cleaning agents to which he alleged exposure in the workers' compensation action included Humiseal thinner 521 which he used to "soak parts to be cleaned" and to "flush equipment."

Workers' Comp. Depo.; March 3, 2015 Email.

(Catalona Dec., 449:5-8, 449:19-23, 485-486.) | 52. Disputed. This record shows that Mr. Juarez' ongoing thought that his headaches were due to his medical condition of having an aneurysm or due to Mr. Juarez' unique sensitivities. Then, after his aneurysm, Mr. Juarez realized his headaches had not gone away and he guessed that his headaches were caused by exposure to the nearby chemical bath and those lead wires in nearby filters.  It was not until Mr. Juarez received the MSDS sheets in March of 2015, that Mr. Juarez felt his headaches were associated from chemical exposure from something other than the chemical bath or lead wiring.  This report was prepared in 2015. |

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

**STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**
(Central District)

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | • (Dec. Ruben Juarez) |
| | • (Ex 3 Depo. Juarez Volume 1: 55:21-56:5) |
| | • (Ex 1, Depo. Ruben Juarez Volume I, p. 49:22-50:8, 51:17, 52:8-16, 53:15-21, 54:11-55:15, 55:21-56:8, 56:14-18 , 57:16-23-58:18, 59: 4-5, 59: 22-24,60:17-61:20, 62:1-15) |
| | • (Ex. 2 Depo. Ruben Juarez Volume 2 p. 77:5-78:3) |
| | • (Ex 3 Depo. Ruben Juarez Volume 1, 49:25-50:3) |
| | • (Ex 3 Depo. Juarez Volume 1: 66:19-22, 116:1-14) |
| | • (Ex 3 Depo. Juarez Volume 1: 108:20-109:12) |
| | • .(Ex 4 Depo. Juarez Volume II, 332:7-337:14) |
| | • (Ex 4 Depo. Juarez Volume II, 249:22-250:12) |
| | • (Ex 4 Depo. Juarez Volume II, 262:21-263: 13) |
| | • (Ex 4 Depo. Juarez Volume II, 262:21-263:13) |
| | • (Ex 4 Depo. Juarez Volume II, 287:6-288:3, 288:24-289:6) |
| | • (Ex 4 Depo. Juarez Volume II, 235:1-238: 5, 238: 19-22) |
| | • (Ex 4 Depo. Juarez Volume II, 241:4-15) |
| | ***Specific factual references with citations are set forth below for the court's convenience regarding the*** |

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | ***chemical bath and lead wiring as well as the lack of knowing any PVA 350 defects.*** |
| | Mr. Juarez indicated he does not have a chemistry background at his deposition on March 8, 2018.   (Ex 3 Depo. Juarez Volume 1: 55:21-56:5) |
| | At Mr. Juarez' deposition on March 30, 2015, (within the two year filing period) he implicated a number of reasons he could have been injured as he was not yet clear on the specific cause of his injuries, whether wrongdoing had occurred, or whether any wrongdoing specifically caused his injuries.  Specifically, Mr. Juarez indicated he was exposed to Humiseal 527 thinner while soaking parts to be cleaned (cleaning bath), doing maintenance work, flushing equipment, verifying fluids were flushed, bleeding the lines, and doing detailed cleaning of the machines so the operators could try new chemicals to better protect the electronic devices. Further, Mr. Juarez also discussed his exposure to a product called solder wire as a potential cause of injuries when he would replace the fume extractor filters while cleaning re-workstations that were similar to a fountain also called a cleaning bath where Mr. Juarez would remove soldering tools and reassembling them, which took a couple of hours. |

**STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**
**(Central District)**

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | Mr. Juarez also discussed his exposure to Humiseal 1A33 for conformal coating by programming the machines and tooling and doing dry/wet runs while programming the machines. |
| | (Ex 1, Depo. Ruben Juarez Volume I, p. 49:22-50:8, 51:17, 52:8-16, 53:15-21, 54:11-55:15, 55:21-56:8, 56:14-18, 57:16-23-58:18, 59: 4-5, 59: 22-24,60:17-61:20, 62:1-15) |
| | On May 20, 2015, Mr. Juarez indicated at the second session of his deposition (within the two year filing period), the wash station for printed circuit board assemblies was right next to his station.  (Ex. 2 Depo. Ruben Juarez Volume 2 p. 77:5-78:3) |
| | The equipment in the rooms where Mr. Juarez was working was constantly changing.  (Ex 3 Depo. Ruben Juarez Volume 1, 49:25-50:3) |
| | Initially, Mr. Juarez did not know what chemicals were in the chemical baths, and he found out, but the chemical baths did not have anything to do with the PVA 350, and when he filed the worker's compensation claim his claim was derived from the chemical washes.  (Ex 3 Depo. Juarez Volume 1: 66:19-22, 116:1-14) |
| | Mr. Juarez called a co-worker to get a list of the chemicals utilized in the wash area at Space X, and he may |

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
|  | have offered to give the names of the rest of the chemicals used in the conformal coating area.  (Ex 3 Depo. Juarez Volume 1: 108:20-109:12)

Mr Juarez tried to get a list of chemicals from Space X, which did not work out.  Afterwhich, Mr. Juarez called Francisco to get a list of chemicals he had worked with.  After Francisco provided the list of chemicals, Mr. Juarez emailed Space X requested the MSDS sheets for the chemicals that Francisco listed.  (Ex 4 Depo. Juarez Volume II, 332:7-337:14)

Mr. Juarez took a spray for medical problems to clear his airways, but nobody every pinpointed a cause for him to take the medicine.  (Ex 4 Depo. Juarez Volume II, 249:22-250:12)

Mr. Juarez filed his worker's compensation claim based on his belief the chemical baths were making him sick as well as a solder wire until he learned only alcohol was used in the baths and only lead free solder wire were used in the filters. (Ex 4 Depo. Juarez Volume II, 262:21-263:13)

Mr. Juarez had no reason to suspect any wrongdoing on behalf of PVA and Space X, and he did not know the reason he was getting sick when he filed the worker's compensation |

**STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**
**(Central District)**

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | claim.  (Ex 4 Depo. Juarez Volume II, 262:21-263:13) |
| | Mr. Juarez first suspected he was working in a toxic work environment when he received the MSDS sheets from Space X after requesting the MSDS sheets via email after March 3, 2015.  (Ex 4 Depo. Juarez Volume II, 287:6-288:3, 288:24-289:6) |
| | Mr. Juarez called Francisco and received a list of the chemicals that Mr. Juarez was exposed to, and he thus requested the MSDS sheets from Space X to forward to his attorney so that could figure out what was going on and what was making him sick. (Ex 4 Depo. Juarez Volume II, 235:1-238: 5, 238: 19-22) |
| | Initially, Mr. Juarez thought his problems were caused by alcohol chemical baths and solder wire, but later he found out that lead-free solder wire was used.  Upon this discovery, Mr. Juarez reached out to Francisco and then to Space X to get the MSDS sheets.  (Ex 4 Depo. Juarez Volume II, 241:4-15) |
| 53.     He also used Humiseal thinner 521 as a conformal coating material in the PVA 350.<br><br>Juarez Depo.; Workers' Comp. Depo. | 53. Disputed. This record shows that Mr. Juarez' ongoing thought that his headaches were due to his medical condition of |

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

| **MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS** | **RESPONSE TO OPPOSITION** |
|---|---|
| (Catalona Dec., 270:20-25, 312:10-22, 448:12-25, 450:6-16.) | having an aneurysm or due to Mr. Juarez' unique sensitivities. Then, after his aneurysm, Mr. Juarez realized his headaches had not gone away and he guessed that his headaches were caused by exposure to the nearby chemical bath and those lead wires in nearby filters.  It was not until Mr. Juarez received the MSDS sheets in March of 2015, that Mr. Juarez felt his headaches were associated from chemical exposure from something other than the chemical bath or lead wiring.  This report was prepared in 2015.<br><br>• (Exhibit 38, FAC 7:24-8:7)<br>• (Dec. Chris Mendoza)<br>• (Dec. Manuel Gutierrez)<br>• (Ex 3 Depo. Juarez Volume 1: 55:21-56:5)<br>• (Ex 1, Depo. Ruben Juarez Volume I, p. 49:22-50:8, 51:17, 52:8-16, 53:15-21, 54:11-55:15, 55:21-56:8, 56:14-18 , 57:16-23-58:18, 59: 4-5, 59: 22-24,60:17-61:20, 62:1-15)<br>• (Ex. 2 Depo. Ruben Juarez Volume 2 p. 77:5-78:3)<br>• (Ex 3 Depo. Ruben Juarez Volume 1, 49:25-50:3)<br>• (Ex 3 Depo. Juarez Volume 1: 66:19-22, 116:1-14) |

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

**STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**
**(Central District)**

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | • (Ex 3 Depo. Juarez Volume 1: 108:20-109:12) |
| | • (Ex 4 Depo. Juarez Volume II, 332:7-337:14) |
| | • (Ex 4 Depo. Juarez Volume II, 249:22-250:12) |
| | • (Ex 4 Depo. Juarez Volume II, 262:21-263: 13) |
| | • (Ex 4 Depo. Juarez Volume II, 262:21-263:13) |
| | • (Ex 4 Depo. Juarez Volume II, 287:6-288:3, 288:24-289:6) |
| | • (Ex 4 Depo. Juarez Volume II, 235:1-238: 5, 238: 19-22) |
| | • (Ex 4 Depo. Juarez Volume II, 241:4-15) |

***Specific factual references with citations are set forth below for the court's convenience showing Mr. Juarez was not aware of the chemicals being utilized with the PVA Inc. the defects of the PVA 350, and the toxicity of the chemicals being utilized.***

The First Amended Complaint alleges as follows: "Up until May of 2015, Plaintiff RUBEN JUAREZ thought that his injury was caused by lead solder wire and cleaning solution to clean electronic parts operated by other Space X employees near Plaintiff's work station. The solder wire and the cleaning solution had nothing to do with the PVA 350—they were not even housed in the same location as the PVA 350. It was not until May of 2015, when Plaintiff Juarez saw the MSDS

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

**STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**
**(Central District)**

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | sheets from Space X that he first saw that the solder wire was actually lead-free and the detergent was only alcohol and that he first suspected that the PVA 350 might have caused his injuries. Therefore, despite diligent investigation of the circumstances of the injury, Plaintiff RUBEN JUAREZ could not have reasonably discovered facts supporting the cause of action against PVA within the application statute of limitations period. (Exhibit 38, FAC 7:24-8:7) |

Mr. Juarez indicated he does not have a chemistry background at his deposition on March 8, 2018.   (Ex 3 Depo. Juarez Volume 1: 55:21-56:5)

At Mr. Juarez' deposition on March 30, 2015, (within the two year filing period) he implicated a number of reasons he could have been injured as he was not yet clear on the specific cause of his injuries, whether wrongdoing had occurred, or whether any wrongdoing specifically caused his injuries.  Specifically, Mr. Juarez indicated he was exposed to Humiseal 527 thinner while soaking parts to be cleaned (cleaning bath), doing maintenance work, flushing equipment, verifying fluids were flushed, bleeding the lines, and doing detailed cleaning of the machines so the operators could try new chemicals to better protect the electronic devices. Further, Mr. Juarez also discussed his

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | exposure to a product called solder wire as a potential cause of injuries when he would replace the fume extractor filters while cleaning re-workstations that were similar to a fountain also called a cleaning bath where Mr. Juarez would remove soldering tools and reassembling them, which took a couple of hours. Mr. Juarez also discussed his exposure to Humiseal 1A33 for conformal coating by programming the machines and tooling and doing dry/wet runs while programming the machines. |
| | (Ex 1, Depo. Ruben Juarez Volume I, p. 49:22-50:8, 51:17, 52:8-16, 53:15-21, 54:11-55:15, 55:21-56:8, 56:14-18 , 57:16-23-58:18, 59: 4-5, 59: 22-24,60:17-61:20, 62:1-15) |
| | On May 20, 2015, Mr. Juarez indicated at the second session of his deposition (within the two year filing period), the wash station for printed circuit board assemblies was right next to his station.  (Ex. 2 Depo. Ruben Juarez Volume 2 p. 77:5-78:3) |
| | The equipment in the rooms where Mr. Juarez was working was constantly changing.  (Ex 3 Depo. Ruben Juarez Volume 1, 49:25-50:3) |
| | Initially, Mr. Juarez did not know what chemicals were in the chemical baths, and he found out, but the chemical baths did not have anything |

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | to do with the PVA 350, and when he filed the worker's compensation claim his claim was derived from the chemical washes.  (Ex 3 Depo. Juarez Volume 1: 66:19-22, 116:1-14)

Mr. Juarez called a co-worker to get a list of the chemicals utilized in the wash area at Space X, and he may have offered to give the names of the rest of the chemicals used in the conformal coating area.  (Ex 3 Depo. Juarez Volume 1: 108:20-109:12)

Mr Juarez tried to get a list of chemicals from Space X, which did not work out.  Afterwhich, Mr. Juarez called Francisco to get a list of chemicals he had worked with.  After Francisco provided the list of chemicals, Mr. Juarez emailed Space X requested the MSDS sheets for the chemicals that Francisco listed.  (Ex 4 Depo. Juarez Volume II, 332:7-337:14)

Mr. Juarez took a spray for medical problems to clear his airways, but nobody every pinpointed a cause for him to take the medicine.  (Ex 4 Depo. Juarez Volume II, 249:22-250:12)

Mr. Juarez filed his worker's compensation claim based on his belief the chemical baths were making him sick as well as a solder wire until he learned only alcohol was used in the baths and only lead free solder |

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

226

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

| **MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS** | **RESPONSE TO OPPOSITION** |
|---|---|
| | wire were used in the filters. (Ex 4 Depo. Juarez Volume II, 262:21-263: 13) |
| | Mr. Juarez had no reason to suspect any wrongdoing on behalf of PVA and Space X, and he did not know the reason he was getting sick when he filed the worker's compensation claim.  (Ex 4 Depo. Juarez Volume II, 262:21-263:13) |
| | Mr. Juarez first suspected he was working in a toxic work environment when he received the MSDS sheets from Space X after requesting the MSDS sheets via email after March 3, 2015.  (Ex 4 Depo. Juarez Volume II, 287:6-288:3, 288:24-289:6) |
| | Mr. Juarez called Francisco and received a list of the chemicals that Mr. Juarez was exposed to, and he thus requested the MSDS sheets from Space X to forward to his attorney so that could figure out what was going on and what was making him sick. (Ex 4 Depo. Juarez Volume II, 235:1-238: 5, 238: 19-22) |
| | Initially, Mr. Juarez thought his problems were caused by alcohol chemical baths and solder wire, but later he found out that lead-free solder wire was used.  Upon this discovery, Mr. Juarez reached out to Francisco and then to Space X to get the MSDS |

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | sheets.  (Ex 4 Depo. Juarez Volume II, 241:4-15) |
| 54.     Humiseal thinner 521 was the only "thinner" Juarez used at SpaceX.<br><br>Juarez Depo.; Regev Report; March 3, 2015 Email.<br><br>(Catalona Dec., 270:20-25, 312:10-22, 336:3-8, 336:17-19, 385, 485-486.) | 54. Disputed to the extent that this fact infers Mr. Juarez was not exposed to additional chemicals. Space X provided a list of chemicals Mr. Juarez was exposed to while working at Space X.  Also, with the assistance of PVA Inc., Space X started using additional chemicals such as Arathane.<br><ul><li>(Ex 1, Depo. Ruben Juarez Volume I, p. 49:22-50:8, 51:17, 52:8-16, 53:15-21, 54:11-55:15,  55:21-56:8, 56:14-18  ,  57:16-23-58:18, 59: 4-5, 59: 22-24,60:17-61:20, 62:1-15)</li><li>(Ex. 2 Depo. Ruben Juarez Volume 2 p. 77:5-78:3)</li><li>(Ex 3 Depo. Ruben Juarez Volume 1, 49:25-50:3)</li><li>(Ex 3 Depo. Juarez Volume 1: 66:19-22, 116:1-14)</li><li>(Ex 3 Depo. Juarez Volume 1: 108:20-109:12)</li><li>(Ex 4 Depo. Juarez Volume II, 332:7-337:14)</li><li>(Ex 4 Depo. Juarez Volume II, 249:22-250:12)</li><li>(Ex 4 Depo. Juarez Volume II, 262:21-263: 13)</li><li>.(Ex 4 Depo. Juarez Volume II, 262:21-263:13)</li></ul> |

**STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**
**(Central District)**

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
|  | • (Ex 4 Depo. Juarez Volume II, 287:6-288:3, 288:24-289:6) |
|  | • (Ex 4 Depo. Juarez Volume II, 235:1-238: 5, 238: 19-22) |
|  | • (Ex 4 Depo. Juarez Volume II, 241:4-15) |
|  | • (Ex 3 Depo. Juarez Volume 1: 55:21-56:5) |
|  | • (Ex 3 Depo. Juarez Volume I: 113 :1-3) |
|  | • (Ex 4 Depo. Juarez Volume II: 224:14-17) |
|  | • (See Exhibit 22, PVA 4463-4481) |
|  | • (See Exhibit 9 and Exhibit 22) |
|  | • (Exhibit 22, PVA 23 and 24) |
|  | • (Exhibit 22 PVA 4449-4452) |
|  | • (Exhibit 22 PVA 4463-4481) |
|  | • (Exhibit 22) |
|  | • (Ex 22, PVA 340-347) |
|  | • (Exhibit 36 PVA 4449-4452) |
|  | • (Exhibit 36) |
|  | • (Exhibit 36, PVA 1728-1731) |
|  | • (Exhibit 25, PVA 7-9, 17-29, 222-234, 250-251, 4449-4452) |
|  | ***Specific factual references with citations are set forth below for the*** |

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

229

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | ***court's convenience showing Mr. Juarez' lack of awareness of the chemicals and toxicity of the chemicals utilized with the PVA 350 as well as PVA Inc.'s knowledge of the dangerous chemicals being utilized with the PVA 350.*** |
| | At Mr. Juarez' deposition on March 30, 2015, (within the two year filing period) he implicated a number of reasons he could have been injured as he was not yet clear on the specific cause of his injuries, whether wrongdoing had occurred, or whether any wrongdoing specifically caused his injuries. Specifically, Mr. Juarez indicated he was exposed to Humiseal 527 thinner while soaking parts to be cleaned (cleaning bath), doing maintenance work, flushing equipment, verifying fluids were flushed, bleeding the lines, and doing detailed cleaning of the machines so the operators could try new chemicals to better protect the electronic devices.  Further, Mr. Juarez also discussed his exposure to a product called solder wire as a potential cause of injuries when he would replace the fume extractor filters while cleaning re-workstations that were similar to a fountain also called a cleaning bath where Mr. Juarez would remove soldering tools and reassembling them, which took a couple of hours. Mr. Juarez also discussed his exposure to Humiseal 1A33 for |

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | conformal coating by programming the machines and tooling and doing dry/wet runs while programming the machines.

(Ex 1, Depo. Ruben Juarez Volume I, p. 49:22-50:8, 51:17, 52:8-16, 53:15-21, 54:11-55:15, 55:21-56:8, 56:14-18 , 57:16-23-58:18, 59: 4-5, 59: 22-24,60:17-61:20, 62:1-15)

On May 20, 2015, Mr. Juarez indicated at the second session of his deposition (within the two year filing period), the wash station for printed circuit board assemblies was right next to his station.  (Ex. 2 Depo. Ruben Juarez Volume 2 p. 77:5-78:3)

The equipment in the rooms where Mr. Juarez was working was constantly changing.  (Ex 3 Depo. Ruben Juarez Volume 1, 49:25-50:3)

Initially, Mr. Juarez did not know what chemicals were in the chemical baths, and he found out, but the chemical baths did not have anything to do with the PVA 350, and when he filed the worker's compensation claim his claim was derived from the chemical washes.  (Ex 3 Depo. Juarez Volume 1: 66:19-22, 116:1-14)

Mr. Juarez called a co-worker to get a list of the chemicals utilized in the wash area at Space X, and he may have offered to give the names of the |

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | rest of the chemicals used in the conformal coating area. (Ex 3 Depo. Juarez Volume 1: 108:20-109:12)<br><br>Mr Juarez tried to get a list of chemicals from Space X, which did not work out. Afterwhich, Mr. Juarez called Francisco to get a list of chemicals he had worked with. After Francisco provided the list of chemicals, Mr. Juarez emailed Space X requested the MSDS sheets for the chemicals that Francisco listed. (Ex 4 Depo. Juarez Volume II, 332:7-337:14)<br><br>Mr. Juarez took a spray for medical problems to clear his airways, but nobody every pinpointed a cause for him to take the medicine. (Ex 4 Depo. Juarez Volume II, 249:22-250:12)<br><br>Mr. Juarez filed his worker's compensation claim based on his belief the chemical baths were making him sick as well as a solder wire until he learned only alcohol was used in the baths and only lead free solder wire were used in the filters. (Ex 4 Depo. Juarez Volume II, 262:21-263: 13)<br><br>Mr. Juarez had no reason to suspect any wrongdoing on behalf of PVA and Space X, and he did not know the reason he was getting sick when he filed the worker's compensation claim. (Ex 4 Depo. Juarez |

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | Volume II, 262:21-263:13) |
| | Mr. Juarez first suspected he was working in a toxic work environment when he received the MSDS sheets from Space X after requesting the MSDS sheets via email after March 3, 2015. (Ex 4 Depo. Juarez Volume II, 287:6-288:3, 288:24-289:6) |
| | Mr. Juarez called Francisco and received a list of the chemicals that Mr. Juarez was exposed to, and he thus requested the MSDS sheets from Space X to forward to his attorney so that could figure out what was going on and what was making him sick. (Ex 4 Depo. Juarez Volume II, 235:1-238: 5, 238: 19-22) |
| | Initially, Mr. Juarez thought his problems were caused by alcohol chemical baths and solder wire, but later he found out that lead-free solder wire was used. Upon this discovery, Mr. Juarez reached out to Francisco and then to Space X to get the MSDS sheets. (Ex 4 Depo. Juarez Volume II, 241:4-15) |
| | Mr. Juarez indicated he does not have a chemistry background at his deposition on March 8, 2018. (Ex 3 Depo. Juarez Volume 1: 55:21-56:5) |
| | Mr. Juarez utilized HumiSeal and Arathane with the PVA 350. (Ex 3 Depo. Juarez Volume I: 113 :1-3) |

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | Mr. Juarez was exposed to Arathane products at Space X while programming the machine.  (Ex 4 Depo. Juarez Volume II: 224:14-17)

***PVA HAD KNOWLEDGE OF THE CHEMICALS BEING UTILIZED BY SPACE X AND WAS INVOLVED IN SUBSEQUENT MODIFICATIONS TO THE MACHINE INVOLVING VARIOUS CHEMICALS***

• PVA Inc was aware of the chemicals being utilized with the PVA 350. including the **transition to Arathane**.  (See Exhibit 22, PVA 4463-4481)

• The April 11, 2012 conformal coating video with Space X boards utilized the **same chemicals as used at Space X at PVA Inc**. (See Exhibit 9 and Exhibit 22)

• On September 19, 2013, PVA Inc. made further modifications to the subject machine including reworking the dispense system on the machine to connect one cartridge to the one gallon tank for "**automatic solvent flush of Arathane 5705**." (Exhibit 22, PVA 23 and 24)

• On July 30, 2009, PVA/Andrew Haraburda serviced the W3267 (subject PVA 350 machine) and this description of the work/changes included:  adding solvent flush option (6 oz cartridge, 3 way ball valve, O-ISPSI Precision |

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | Regulator, which shows **PVA Inc. was continuing to modify and upgrade the machine. Then PVA Inc. specifically recommended Space X alter the solvent to a different solvent stating "Space X may need to use a different solvent (i.e. Xylene)."** (Exhibit 22 PVA 4449-4452)<br><br>• Pursuant to email chain dated March 13, 2012 Jonathan Urquhart **(PVA) was aware of Space X's use of Arathane 5750** The email specifically states, "I think David has spoken to you **about our customer Space X**. They build full blown rocket ships. **They plan on pre-mixing this material part A part B and a 3rd part, thinner in small batches apply to board and the purge system** because of shelf life once mixed. **Sounds screwy to me.**" They were looking for a demo on the 27th of March. (Exhibit 22, PVA 4463-4481)<br><br>• Pursuant to email dated March 15, 2012 to Jonathan Urquhart, PVA was preparing a demo on the PVA 650 and **PVA were working with the same chemical materials Space X was utilizing, but PVA did not want Space X to know and PVA indicated they were going to convey to Space X that the materials were similar, but not the exact same**. . (Exhibit 22, PVA |

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT (Central District)

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | 4463-4481) |
| | • Pursuant to email dated March 30, 2012, the test at PVA Inc. was rescheduled to **4-11-12 to view the** 3 part mixing process. (Exhibit 22, PVA 4463-4481) |
| | • Pursuant to email from David Gomez to Johnathan (PVA) Urquhart dated May 11, 2012 at 2:11 p.m., Space X talked about retrofitting the PVA 350, and then subsequently there was confirmation from Jon indicating **Space X wanted to duplicate what was done during the visit.** (Exhibit 22, PVA 4463-4481) |
| | • Jon Urquart performed **the demo for Space X on 4-11-12**. (Exhibit 22, PVA 4463-4481) |
| | • Email dated December 2, 2014 at 9:03 a.m. Mr. Urquhart (PVA) indicated to Mr. Matupang there would be 2 demos including a coating with **Arathane 2 part mix and spray and dispensing using a 650 or Delta 6 with board head**, JDX (underfill), SVX (past), and FC100 (solder mask). (Exhibit 22) |
| | • On November 17, 2014, Mr. Urquhart (PVA) asked is Space X wanted to mix on the fly with **5750**? (Exhibit 22) |
| | • On January 9, 2013 at |

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

| **MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS** | **RESPONSE TO OPPOSITION** |
|---|---|
| | 10:38 a.m. David Gomez (PVA) emailed Brian Ignaut (Space X) **doing follow up on the "two part material application project you were working on and kindly presented us with**." There was inquiry as to whether there were any developments in the first few months of 2013. (Exhibit 22) |
| | • On December 3, 2012 at 12:01 PM David Gomez (PVA) wrote Scott Abarta asking for the **two part material brand and part # as well as any MSDS and data sheets**. Also, there was a request for a shot size and cycle time per part if possible. (Exhibit 22) |
| | • On **September 10, 2013**, Mr. Gomez (PVA) indicated "they only want a 20 oz cartridge retainer & cap with spray & needle valve for the pre-mix material and 6oz cartridge retainer & cap **for the solvent, so it can flush the premixed material out right after doing a batch of boards**." Mr. Gomez indicated he was **familiar with the "fluid delivery line" because he had done it "several times."** He also indicated they were "**not there yet**" for the two part coating spraying. (Exhibit 22) |
| | • On September 9, 2013, Richard Bievenue (PVA) wrote Jonathan Connelly (ccing David Filbert, David Gomez, and Michael R. Leonard) indicating that **he spoke with Duc Phan** |

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

**STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT (Central District)**

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | **(Space X) about the 350 machine and how Space X was switching to utilizing a 2 part material including Arathane 5750.  There was discussion about premising the solvents and flushing the solvent valves**.  Also, there was interest regarding a 2 component meter mix system. (Exhibit 22)
 • On September 18, 2013 at 12:41 p.m., **Mr. Gomez (PVA) indicated that this is not the first time they have done a two part coating system and he thought they were putting to many resources into this. The email specifically references Arathane** 5750. (Exhibit 22)
 • On September 13, 2013, from Duc Phan (Space X) to Jonathan Connelly, Michael R. Leonard (ccing Richard Bievenue and David Filbert) explained the process with pictures. **Specifically, he indicated that Space X removed the hoses from the spray dispensing head and connected the hoses from the Arathane material and solvent to it.  He further explained when the Arathane material was not in use they vaped the solvent hose and connect the Arathane material hose to the other head just for a place holder.  He also explained that Arathane 5750 part A and B is mixed together and poured in the first reservoir and the** |

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | **second reservoir is the solvent use to thin out the mixed Arathane for spray requirement**.  (Exhibit 22)<br><br>•    On September 13, 2013 at 6:07 a.m. Jonathan Connelly wrote Duc Phan (Space X). Michael R. Leonard and ccing Richard Bievenue and David Filbert inquiring about the process, requesting a picture, **and asking if the Arathane and the solvent was being run out of the cartridges mounted on the side of the machine**. (Exhibit 22)<br><br>•    On September 10, 2013, Duc Phan (Space X)wrote Michael R. Leonard and Jonathan Connelly, **and there was a clear indication that Space X was using Arathane 5750 material with a 2 hour cure time, and they were concerned the operator would forget to purge and rinse the material when the job is done. They were looking to automate the process after coating**.  (Exhibit 22)<br><br>o    The sales order dated September 25, 2013 indicated PVA job number SPCX2115 W3267 indicated **PVA was there to provide onsite support for Mechanical Electrical Programming Fluid Delivery.**  (Exhibit 22)<br><br>o    The sales quotation dated September 19, 2013, stated that PVA was to "**rework the** |

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | **dispense system on machine serial number W3267 to connect one cartridge to (1) one gallon tank for automatic solvent flush of Arathane 5705**.  This was to include 1) all hoses and fittings needed to complete the integration, 2) pneumatic ball valve for automatic solvent flush, 3) hardware and software needed for integration, and one tank.  Further, PVA was to travel to Space X to install the new auto solvent flush system. (Exhibit 22) <br><br> o      The purchase order dated September 24, 2013 issued to PVA and shipping to Space X on a Space X purchase order identified a supplier part number B72-01433 and **there is a full description of the work to be done including reworking the dispense system for an automatic flush of Arathane 5750** and in similar detail as stated above.  There is a separate purchase order for the travel expenditures. (Exhibit 22) <br><br> •      On July 21, 2014 at 6:48 p.m. Duc Phan (Space X) emailed Rex indicating the **current machine uses both Humiseal and Arathane and there are separate spray valves for both material**.  They need the pendant purge button to work for both materials. (Exhibit 22) <br><br> •      PVA Inc. circulated diagram clearly states |

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | **Arathane**.  Additionally, there is a quote work sheet for the 3 way assembly, pressure tank, hoses, fittings, valves as well as programming and engineering. (Ex 22, PVA 340-347) **PVA INC. INSTALLED THE PVA 350 AND CONTINUED TO MODIFIED PROGRAM THROUGHOUT THE PVA 350'S LIFETIME** • On 6-23-2009 to 6-24-2009, PVA Inc. installed and serviced the W3267 machine at Space X.  The work was performed by Andrew Haraburde.  He trained Juan Sotelo and Marsha Thompson in installation and training.  The installation check list specifically indicated various items were working, but there is an X versus a check mark on the pump and SEMEA boxes. The description of the work/changes including "**modified main program (mo2)."**  (Exhibit 36 PVA 4449-4452) There are a series of work orders regarding modifications and sales showing PVA Inc. continued to service and support the use and modification of the PVA 350. (Exhibit 25, PVA 7-9, 17-29, 222-234, 250-251, 4449-4452) |
| 55.    Humiseal thinner 521 is also the only thinner plaintiffs allege Juarez used in the PVA 350 in this case. FAC. (Catalona Dec., 60:23-26.) | 55.Disputed to the extent that this fact infers Mr. Juarez was not exposed to additional chemicals. Space X former employee Francisco provided a list of chemicals Mr. Juarez was exposed to while working at |

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

| **MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS** | **RESPONSE TO OPPOSITION** |
|---|---|
| | Space X.  Also, Space X started using additional chemicals such as Arathane with the assistance of PVA Inc. Further, disputed to the extent that Mr. Juarez was aware of the all the chemicals he utilized with the PVA 350 as he has no formal or informal chemistry training. |

- (Ex 1, Depo. Ruben Juarez Volume I, p. 49:22-50:8, 51:17, 52:8-16, 53:15-21, 54:11-55:15, 55:21-56:8, 56:14-18 , 57:16-23-58:18, 59: 4-5, 59: 22-24,60:17-61:20, 62:1-15)
- (Ex. 2 Depo. Ruben Juarez Volume 2 p. 77:5-78:3)
- (Ex 3 Depo. Ruben Juarez Volume 1, 49:25-50:3)
- (Ex 3 Depo. Juarez Volume 1: 66:19-22, 116:1-14)
- (Ex 3 Depo. Juarez Volume 1: 108:20-109:12)
- (Ex 4 Depo. Juarez Volume II, 332:7-337:14)
- (Ex 4 Depo. Juarez Volume II, 249:22-250:12)
- (Ex 4 Depo. Juarez Volume II, 262:21-263: 13)
- (Ex 4 Depo. Juarez Volume II, 262:21-263:13)
- (Ex 4 Depo. Juarez Volume II, 287:6-288:3, 288:24-289:6)
- (Ex 4 Depo. Juarez Volume II, 235:1-238: 5, 238: 19-22)
- (Ex 4 Depo. Juarez Volume

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

**STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT (Central District)**

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | II, 241:4-15) |
| | • (Ex 3 Depo. Juarez Volume 1: 55:21-56:5) |
| | • (Ex 3 Depo. Juarez Volume I: 113 :1-3) |
| | • (Ex 4 Depo. Juarez Volume II: 224:14-17) |
| | • (See Exhibit 22, PVA 4463-4481) |
| | • (Exhibit 22) |
| | • (Exhibit 22, PVA 4463-4481) |
| | • (Exhibit 36 PVA 4449-4452) |
| | • (Exhibit 36) |
| | • (Exhibit 26, PVA 1727) |
| | • (Exhibit 36, PVA 1728-1731) |
| | • (Exhibit 25, PVA 7-9, 17-29, 222-234, 250-251, 4449-4452) |
| | ***Specific factual allegations are set forth below for the court's convenience regarding PVA Inc.'s awareness of chemicals utilized by Space X and Mr. Juarez' lack thereof.*** |
| | At Mr. Juarez' deposition on March 30, 2015, (within the two year filing period) he implicated a number of reasons he could have been injured as he was not yet clear on the specific cause of his injuries, whether wrongdoing had occurred, or whether any wrongdoing specifically caused his injuries. Specifically, Mr. Juarez indicated he was exposed to Humiseal 527 thinner while soaking parts to be cleaned (cleaning bath), doing maintenance work, flushing |

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | equipment, verifying fluids were flushed, bleeding the lines, and doing detailed cleaning of the machines so the operators could try new chemicals to better protect the electronic devices.  Further, Mr. Juarez also discussed his exposure to a product called solder wire as a potential cause of injuries when he would replace the fume extractor filters while cleaning re-workstations that were similar to a fountain also called a cleaning bath where Mr. Juarez would remove soldering tools and reassembling them, which took a couple of hours. Mr. Juarez also discussed his exposure to Humiseal 1A33 for conformal coating by programming the machines and tooling and doing dry/wet runs while programming the machines. |
| | (Ex 1, Depo. Ruben Juarez Volume I, p. 49:22-50:8, 51:17, 52:8-16, 53:15-21, 54:11-55:15, 55:21-56:8, 56:14-18 , 57:16-23-58:18, 59: 4-5, 59: 22-24,60:17-61:20, 62:1-15) |
| | On May 20, 2015, Mr. Juarez indicated at the second session of his deposition (within the two year filing period), the wash station for printed circuit board assemblies was right next to his station.  (Ex. 2 Depo. Ruben Juarez Volume 2 p. 77:5-78:3) |
| | The equipment in the rooms where Mr. Juarez was working was constantly changing.  (Ex 3 |

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

| **MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS** | **RESPONSE TO OPPOSITION** |
|---|---|
| | Depo. Ruben Juarez Volume 1, 49:25-50:3) |
| | Initially, Mr. Juarez did not know what chemicals were in the chemical baths, and he found out, but the chemical baths did not have anything to do with the PVA 350, and when he filed the worker's compensation claim his claim was derived from the chemical washes.  (Ex 3 Depo. Juarez Volume 1: 66:19-22, 116:1-14) |
| | Mr. Juarez called a co-worker to get a list of the chemicals utilized in the wash area at Space X, and he may have offered to give the names of the rest of the chemicals used in the conformal coating area.  (Ex 3 Depo. Juarez Volume 1: 108:20-109:12) |
| | Mr Juarez tried to get a list of chemicals from Space X, which did not work out.  Afterwhich, Mr. Juarez called Francisco to get a list of chemicals he had worked with.  After Francisco provided the list of chemicals, Mr. Juarez emailed Space X requested the MSDS sheets for the chemicals that Francisco listed.  (Ex 4 Depo. Juarez Volume II, 332:7-337:14) |
| | Mr. Juarez took a spray for medical problems to clear his airways, but nobody every pinpointed a cause for him to take the medicine.  (Ex 4 Depo. Juarez Volume II, 249:22- |

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | 250:12) |
| | Mr. Juarez filed his worker's compensation claim based on his belief the chemical baths were making him sick as well as a solder wire until he learned only alcohol was used in the baths and only lead free solder wire were used in the filters. (Ex 4 Depo. Juarez Volume II, 262:21-263: 13) |
| | Mr. Juarez had no reason to suspect any wrongdoing on behalf of PVA and Space X, and he did not know the reason he was getting sick when he filed the worker's compensation claim.  (Ex 4 Depo. Juarez Volume II, 262:21-263:13) |
| | Mr. Juarez first suspected he was working in a toxic work environment when he received the MSDS sheets from Space X after requesting the MSDS sheets via email after March 3, 2015.  (Ex 4 Depo. Juarez Volume II, 287:6-288:3, 288:24-289:6) |
| | Mr. Juarez called Francisco and received a list of the chemicals that Mr. Juarez was exposed to, and he thus requested the MSDS sheets from Space X to forward to his attorney so that could figure out what was going on and what was making him sick.  (Ex 4 Depo. Juarez Volume II, 235:1-238: 5, 238: 19-22) |
| | Initially, Mr. Juarez thought his |

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
|  | problems were caused by alcohol chemical baths and solder wire, but later he found out that lead-free solder wire was used.  Upon this discovery, Mr. Juarez reached out to Francisco and then to Space X to get the MSDS sheets.  (Ex 4 Depo. Juarez Volume II, 241:4-15) |
|  | Mr. Juarez indicated he does not have a chemistry background at his deposition on March 8, 2018.  (Ex 3 Depo. Juarez Volume 1: 55:21-56:5) |
|  | Mr. Juarez utilized HumiSeal and Arathane with the PVA 350.  (Ex 3 Depo. Juarez Volume I: 113 :1-3) |
|  | Mr. Juarez was exposed to Arathane products at Space X while programming the machine.  (Ex 4 Depo. Juarez Volume II: 224:14-17) |
|  | II: 224:14-17) |
|  | ***PVA HAD KNOWLEDGE OF THE CHEMICALS BEING UTILIZED BY SPACE X AND WAS INVOLVED IN SUBSEQUENT MODIFICATIONS TO THE MACHINE INVOLVING VARIOUS CHEMICALS*** |
|  | • PVA Inc was aware of the chemicals being utilized with the PVA 350. including the **transition to Arathane**.  (See Exhibit 22, PVA 4463-4481) |
|  | • The April 11, 2012 conformal coating video with Space X boards utilized the **same chemicals as used at Space X at PVA Inc**. (See |

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | Exhibit 9 and Exhibit 22) |
| | • On September 19, 2013, PVA Inc. made further modifications to the subject machine including reworking the dispense system on the machine to connect one cartridge to the one gallon tank for "**automatic solvent flush of Arathane 5705**." (Exhibit 22, PVA 23 and 24) |
| | • On July 30, 2009, PVA/Andrew Haraburda serviced the W3267 (subject PVA 350 machine) and this description of the work/changes included: adding solvent flush option (6 oz cartridge, 3 way ball valve, O-ISPSI Precision Regulator, which shows **PVA Inc. was continuing to modify and upgrade the machine. Then PVA Inc. specifically recommended Space X alter the solvent to a different solvent stating "Space X may need to use a different solvent (i.e. Xylene)."** (Exhibit 22 PVA 4449-4452) |
| | • Pursuant to email chain dated March 13, 2012 Jonathan Urquhart **(PVA) was aware of Space X's use of Arathane 5750** The email specifically states, "I think David has spoken to you **about our customer Space X**. They build full blown rocket ships. **They plan on pre-mixing this material part A part B and a 3rd part, thinner in small batches apply to board and** |

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | **the purge system** because of shelf life once mixed.  **Sounds screwy to me.**"  They were looking for a demo on the 27th of March.  (Exhibit 22, PVA 4463-4481)<br><br>•      Pursuant to email dated March 15, 2012 to Jonathan Urquhart, PVA was preparing a demo on the PVA 650 and **PVA were working with the same chemical materials Space X was utilizing, but PVA did not want Space X to know and PVA indicated they were going to convey to Space X that the materials were similar, but not the exact same**. .  (Exhibit 22, PVA 4463-4481)<br><br>•      Pursuant to email dated March 30, 2012, the test at PVA Inc. was rescheduled to **4-11-12 to view the** 3 part mixing process. (Exhibit 22, PVA 4463-4481)<br><br>•      Pursuant to email from David Gomez to Johnathan (PVA) Urquhart dated May 11, 2012 at 2:11 p.m., Space X talked about retrofitting the PVA 350, and then subsequently there was confirmation from Jon indicating **Space X wanted to duplicate what was done during the visit.**  (Exhibit 22, PVA 4463-4481)<br><br>•      Jon Urquart performed **the demo for Space X on 4-11-12.** (Exhibit 22, PVA 4463- |

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
|  | 4481) |
|  | • Email dated December 2, 2014 at 9:03 a.m. Mr. Urquhart (PVA) indicated to Mr. Matupang there would be 2 demos including a coating with **Arathane 2 part mix and spray and dispensing using a 650 or Delta 6 with board head**, JDX (underfill), SVX (past), and FC100 (solder mask). (Exhibit 22) |
|  | • On November 17, 2014, Mr. Urquhart (PVA) asked is Space X wanted to mix on the fly with **5750**?  (Exhibit 22) |
|  | • On January 9, 2013 at 10:38 a.m. David Gomez (PVA) emailed Brian Ignaut (Space X) **doing follow up on the "two part material application project you were working on and kindly presented us with**." There was inquiry as to whether there were any developments in the first few months of 2013. (Exhibit 22) |
|  | • On December 3, 2012 at 12:01 PM David Gomez (PVA) wrote Scott Abarta asking for the **two part material brand and part # as well as any MSDS and data sheets**.  Also, there was a request for a shot size and cycle time per part if possible. (Exhibit 22) |
|  | • On **September 10, 2013**, Mr. Gomez (PVA) indicated "they only want a 20 oz cartridge retainer & cap with |

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
|  | spray & needle valve for the pre-mix material and 6oz cartridge retainer & cap **for the solvent, so it can flush the premixed material out right after doing a batch of boards**." Mr. Gomez indicated he was **familiar with the "fluid delivery line"** because he had done it **"several times."** He also indicated they were "**not there yet" for the two part coating spraying**.  (Exhibit 22) |
|  | •       On September 9, 2013, Richard Bievenue (PVA) wrote Jonathan Connelly (ccing David Filbert, David Gomez, and Michael R. Leonard) indicating that **he spoke with Duc Phan (Space X) about the 350 machine and how Space X was switching to utilizing a 2 part material including Arathane 5750.  There was discussion about premising the solvents and flushing the solvent valves**.  Also, there was interest regarding a 2 component meter mix system. (Exhibit 22) |
|  | •       On September 18, 2013 at 12:41 p.m., **Mr. Gomez (PVA) indicated that this is not the first time they have done a two part coating system and he thought they were putting to many resources into this. The email specifically references Arathane** 5750. (Exhibit 22) |
|  | •       On September 13, 2013, from Duc Phan (Space X) to |

251

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | Jonathan Connelly, Michael R. Leonard (ccing Richard Bievenue and David Filbert) explained the process with pictures. **Specifically, he indicated that Space X removed the hoses from the spray dispensing head and connected the hoses from the Arathane material and solvent to it.  He further explained when the Arathane material was not in use they vaped the solvent hose and connect the Arathane material hose to the other head just for a place holder.  He also explained that Arathane 5750 part A and B is mixed together and poured in the first reservoir and the second reservoir is the solvent use to thin out the mixed Arathane for spray requirement**.  (Exhibit 22)

•      On September 13, 2013 at 6:07 a.m. Jonathan Connelly wrote Duc Phan (Space X). Michael R. Leonard and ccing Richard Bievenue and David Filbert inquiring about the process, requesting a picture, **and asking if the Arathane and the solvent was being run out of the cartridges mounted on the side of the machine**. (Exhibit 22)

•      On September 10, 2013, Duc Phan (Space X)wrote Michael R. Leonard and Jonathan Connelly, **and there was a clear indication that Space X was using Arathane 5750 material with a 2 hour** |

**STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**
**(Central District)**

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | **cure time, and they were concerned the operator would forget to purge and rinse the material when the job is done. They were looking to automate the process after coating**. (Exhibit 22)<br><br>o      The sales order dated September 25, 2013 indicated PVA job number SPCX2115 W3267 indicated **PVA was there to provide onsite support for Mechanical Electrical Programming Fluid Delivery.** (Exhibit 22)<br><br>o      The sales quotation dated September 19, 2013, stated that PVA was to "**rework the dispense system on machine serial number W3267 to connect one cartridge to (1) one gallon tank for automatic solvent flush of Arathane 5705**. This was to include 1) all hoses and fittings needed to complete the integration, 2) pneumatic ball valve for automatic solvent flush, 3) hardware and software needed for integration, and one tank. Further, PVA was to travel to Space X to install the new auto solvent flush system. (Exhibit 22)<br><br>o      The purchase order dated September 24, 2013 issued to PVA and shipping to Space X on a Space X purchase order identified a supplier part number B72-01433 and **there is a full description of the work to be done including** |

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

| **MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS** | **RESPONSE TO OPPOSITION** |
|---|---|
|  | **reworking the dispense system for an automatic flush of Arathane 5750** and in similar detail as stated above.  There is a separate purchase order for the travel expenditures. (Exhibit 22)  •      On July 21, 2014 at 6:48 p.m. Duc Phan (Space X) emailed Rex indicating the **current machine uses both Humiseal and Arathane and there are separate spray valves for both material**.  They need the pendant purge button to work for both materials. (Exhibit 22)  •      PVA Inc. circulated diagram clearly states **Arathane**.  Additionally, there is a quote work sheet for the 3 way assembly, pressure tank, hoses, fittings, valves as well as programming and engineering. (Ex 22, PVA 340-347)  **PVA INC. INSTALLED THE PVA 350 AND CONTINUED TO MODIFIED PROGRAM THROUGHOUT THE PVA 350'S LIFETIME**  •      On 6-23-2009 to 6-24-2009, PVA Inc. installed and serviced the W3267 machine at Space X.  The work was performed by Andrew Haraburde.  He trained Juan Sotelo and Marsha Thompson in installation and training.  The installation check list specifically indicated various items were working, but there is an X versus a check mark on the pump and SEMEA boxes. The description of the |

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | work/changes including "**modified main program (mo2).**" (Exhibit 36 PVA 4449-4452) |
| | There are a series of work orders regarding modifications and sales showing PVA Inc. continued to service and support the use and modification of the PVA 350. (Exhibit 25, PVA 7-9, 17-29, 222-234, 250-251, 4449-4452) |
| 56.     In his February 3, 2015 report, Dr. Regev recommended Juarez should be "seen by a toxicologist with the MSDS and working environment analysis."<br><br>Juarez Depo.; Regev Report.<br><br>(Catalona Dec., 337:20, 338:17-19, 370.) | 56. Undisputed that this is what Dr. Regev said.<br><br>Disputed to the extent the fact infers that Mr. Juarez did not act diligently after seeing Mr. Regev to uncover the cause of his injuries as Mr. Juarez asked for the MSDS sheets and then obtained them from Space X and then brought these to a toxicologist.  At the time of this appointment the cause of Mr. Juarez' injuries and headaches was still unknown (with possible lead exposure/cleaning baths as a possibility), which is why Mr. Regev requested that Mr. Juarez follow up to obtain the MSDS and a toxicologist so the cause of the injuries could be determined.  Further, this fact only cites a part of Mr. Juarez' deposition testimony, which is misleading and additional citations are listed below.  Further, Mr. Regev did not indicate at this appointment that Mr. Juarez should avoid any particular chemical or |

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | that any chemical was dangerous as the exact chemicals being utilized at the work place were unknown. <ul><li>(Exhibit 46)</li><li>(Exhibit 48, Isaac Regev M.D. 2-3-15)</li><li>(Ex 3 Depo. Juarez Volume 1: 108:20-109:12)</li><li>.(Ex 4 Depo. Juarez Volume II, 332:7-337:14)</li><li>(Ex 4 Depo. Juarez Volume II, 249:22-250:12)</li><li>(Ex 4 Depo. Juarez Volume II, 262:21-263: 13)</li><li>(Ex 4 Depo. Juarez Volume II, 262:21-263:13)</li><li>.(Ex 4 Depo. Juarez Volume II, 287:6-288:3, 288:24-289:6)</li><li>(Ex 4 Depo. Juarez Volume II, 235:1-238: 5, 238: 19-22)</li><li>(Ex 4 Depo. Juarez Volume II, 241:4-15)</li></ul> ***Specific factual references with citations are set forth below for the court's convenience regarding Mr. Juarez' claim and when he first had a reasonable suspicion.*** Mr. Juarez called a co-worker to get a list of the chemicals utilized in the wash area at Space X, and he may have offered to give the names of the rest of the chemicals used in the conformal coating area.  (Ex 3 Depo. Juarez Volume 1: 108:20-109:12) Mr Juarez tried to get a list of chemicals from Space X, which did not work out.  Afterwhich, Mr. Juarez called Francisco to get a list of |

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

| **MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS** | **RESPONSE TO OPPOSITION** |
|---|---|
| | chemicals he had worked with.  After Francisco provided the list of chemicals, Mr. Juarez emailed Space X requested the MSDS sheets for the chemicals that Francisco listed.  (Ex 4 Depo. Juarez Volume II, 332:7-337:14) |
| | Mr. Juarez took a spray for medical problems to clear his airways, but nobody every pinpointed a cause for him to take the medicine.  (Ex 4 Depo. Juarez Volume II, 249:22-250:12) |
| | Mr. Juarez filed his worker's compensation claim based on his belief the chemical baths were making him sick as well as a solder wire until he learned only alcohol was used in the baths and only lead free solder wire were used in the filters. (Ex 4 Depo. Juarez Volume II, 262:21-263:13) |
| | Mr. Juarez had no reason to suspect any wrongdoing on behalf of PVA and Space X, and he did not know the reason he was getting sick when he filed the worker's compensation claim.  (Ex 4 Depo. Juarez Volume II, 262:21-263:13) |
| | Mr. Juarez first suspected he was working in a toxic work environment when he received the MSDS sheets from Space X after requesting the MSDS sheets via email after March 3, 2015.  (Ex 4 Depo. Juarez Volume II, 287:6-288:3, 288:24-289:6) |
| | Mr. Juarez called Francisco and received a list of the chemicals that Mr. Juarez was exposed to, and he thus requested the MSDS sheets from Space X to forward to his attorney so that could figure out what was going on and what was making him sick. (Ex 4 Depo. Juarez Volume II, 235:1-238: 5, 238: 19-22) |
| | Initially, Mr. Juarez thought his problems were caused by alcohol |

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | chemical baths and solder wire, but later he found out that lead-free solder wire was used.  Upon this discovery, Mr. Juarez reached out to Francisco and then to Space X to get the MSDS sheets.  (Ex 4 Depo. Juarez Volume II, 241:4-15) |
| 57.    On March 3, 2015, Juarez emailed Jane Malubag in SpaceX's human resources department to get copies of the MSDS sheets for "1.  Arathane two part mix.  2.  Thinner 521.  3.  63/67 Eutectic solder wire. 4.  Humiseal 1A33 conformal coating. 5.  Isopropyl alcohol (IPA)."<br><br>March 3, 2015 Email.<br><br>(Catalona Dec., 485-486.) | 57. Undisputed to the extent this is what Mr. Juarez indicate din his email on March 3, 2015.<br><br>Disputed to the extent that this email infers Mr. Juarez was aware of all the chemicals he worked with on his own.  Mr. Juarez called a fellow employee and requested a list of all the chemicals he worked with.  After the call, Mr. Juarez contacted Space X to get copies of the MSDS sheets.  Also, Ms. Malubag's response indicated that the MSDS sheets would be sent to Mr. Juarez' attorney and insurance company.<br>• (Exhibit 46 Emails regarding the MSDS sheets)<br>• (Ex 3 Depo. Juarez Volume 1: 108:20-109:12)<br>• (Ex 4 Depo. Juarez Volume II, 332:7-337:14)<br>• (Ex 4 Depo. Juarez Volume II, 249:22-250:12)<br>• (Ex 4 Depo. Juarez Volume II, 262:21-263: 13)<br>• (Ex 4 Depo. Juarez Volume II, 262:21-263:13)<br>• (Ex 4 Depo. Juarez Volume |

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | II, 287:6-288:3, 288:24-289:6) |
| | - (Ex 4 Depo. Juarez Volume II, 235:1-238: 5, 238: 19-22) |
| | - (Ex 4 Depo. Juarez Volume II, 241:4-15) |
| | ***Specific factual references with citations are set forth below for the court's convenience regarding Mr. Juarez' discovery of the list of chemicals and the MSDS sheets***. |
| | Mr. Juarez called a co-worker to get a list of the chemicals utilized in the wash area at Space X, and he may have offered to give the names of the rest of the chemicals used in the conformal coating area.  (Ex 3 Depo. Juarez Volume 1: 108:20-109:12) |
| | Mr Juarez tried to get a list of chemicals from Space X, which did not work out.  Afterwhich, Mr. Juarez called Francisco to get a list of chemicals he had worked with.  After Francisco provided the list of chemicals, Mr. Juarez emailed Space X requested the MSDS sheets for the chemicals that Francisco listed.  (Ex 4 Depo. Juarez Volume II, 332:7-337:14) |
| | Mr. Juarez filed his worker's compensation claim based on his belief the chemical baths were making him sick as well as a solder wire until he learned only alcohol was used in the baths and only lead free solder wire were used in the filters. (Ex 4 Depo. Juarez Volume II, 262:21-263:13) |
| | Mr. Juarez had no reason to suspect any wrongdoing on behalf of PVA and Space X, and he did not know the reason he was getting sick when he filed the worker's compensation |

**STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**
**(Central District)**

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

| **MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS** | **RESPONSE TO OPPOSITION** |
|---|---|
| | claim.  (Ex 4 Depo. Juarez Volume II, 262:21-263:13)<br><br>Mr. Juarez first suspected he was working in a toxic work environment when he received the MSDS sheets from Space X after requesting the MSDS sheets via email after March 3, 2015.  (Ex 4 Depo. Juarez Volume II, 287:6-288:3, 288:24-289:6)<br><br>Mr. Juarez called Francisco and received a list of the chemicals that Mr. Juarez was exposed to, and he thus requested the MSDS sheets from Space X to forward to his attorney so that could figure out what was going on and what was making him sick.  (Ex 4 Depo. Juarez Volume II, 235:1-238: 5, 238: 19-22)<br><br>Initially, Mr. Juarez thought his problems were caused by alcohol chemical baths and solder wire, but later he found out that lead-free solder wire was used.  Upon this discovery, Mr. Juarez reached out to Francisco and then to Space X to get the MSDS sheets.  (Ex 4 Depo. Juarez Volume II, 241:4-15) |
| 58.      These MSDS sheets were then provided to Ruben Juarez's workers' compensation attorneys.<br><br>Catalona Dec.; FAC; Responses to Interrogatories 13-14 and Document Requests 13-14; Juarez Workers' Comp. Depo.; MSDS Sheets.<br><br>(Catalona Dec., 7:24-9:5, 63:1-4, 132:23-133:13, 186:12-26, 448:12-21, 618-683.) | 58. Objection vague as to time.  Disputed.  Mr. Juarez obtained the MSDS sheets in March 2015 less than 2 years before he filed the complaint.<br>• (Ex 3 Depo. Juarez Volume 1: 66:19-22, 116:1-14)<br>• (Ex 3 Depo. Juarez Volume 1: 108:20-109:12)<br>• (Ex 4 Depo. Juarez Volume II, 332:7-337:14)<br>• (Ex 4 Depo. Juarez Volume II, 249:22-250:12)<br>• (Ex 4 Depo. Juarez Volume II, 262:21-263: 13) |

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | • (Ex 4 Depo. Juarez Volume II, 287:6-288:3, 288:24-289:6)<br>• (Ex 4 Depo. Juarez Volume II, 235:1-238: 5, 238: 19-22)<br>• (Ex 4 Depo. Juarez Volume II, 241:4-15)<br>• (FAC) |
| 59.    Copies of the MSDS sheets plaintiff received are attached to this motion as Exhibits 48 through 55.<br><br>Catalona Dec.; FAC; Responses to Interrogatories 13-14 and Document Requests 13-14; MSDS sheets.<br><br>(Catalona Dec., 7:24-9:5, 63:1-4, 132:23-133:13, 186:12-26, 618-683.) | 59. Undisputed. |
| 60.    Plaintiffs allege that it was not until then that Juarez "first suspected that the PVA 350 might have caused his injuries."<br><br>FAC.<br><br>(Catalona Dec., 63:1-4.) | 60. Objection vague and ambiguous as to time including "it" and "then."<br><br>Disputed. This record shows that Mr. Juarez' ongoing thought that his headaches were due to his medical condition of having an aneurysm or due to Mr. Juarez' unique sensitivities. Then, after his aneurysm, Mr. Juarez realized his headaches had not gone away and he guessed that his headaches were caused by exposure to the nearby chemical bath and those lead wires in nearby filters.  It was not until Mr. Juarez received the MSDS sheets in |

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

261

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
|  | March of 2015, that Mr. Juarez felt his headaches were associated from chemical exposure from something other than the chemical bath or lead wiring.  This report was prepared in 2015.

The First Amended Complaint alleges as follows: "Up until May of 2015, Plaintiff RUBEN JUAREZ thought that his injury was caused by lead solder wire and cleaning solution to clean electronic parts operated by other Space X employees near Plaintiff's work station.  The solder wire and the cleaning solution had nothing to do with the PVA 350—they were not even housed in the same location as the PVA 350.     It was not until May of 2015, when Plaintiff Juarez saw the MSDS sheets from Space X that he first saw that the solder wire was actually lead-free and the detergent was only alcohol and that he first suspected that the PVA 350 might have caused his injuries. Therefore, despite diligent investigation of the circumstances of the injury, Plaintiff RUBEN JUAREZ could not have reasonably discovered facts supporting the cause of action against PVA within the application statute of limitations period. (Exhibit 38, FAC 7:24-8:7)
• (Ex 3 Depo. Juarez Volume 1: 66:19-22, 116:1-14)
• (Ex 3 Depo. Juarez Volume 1: 108:20-109:12)
• (Ex 4 Depo. Juarez Volume |

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | II, 332:7-337:14)<br>• (Ex 4 Depo. Juarez Volume II, 249:22-250:12)<br>• (Ex 4 Depo. Juarez Volume II, 262:21-263: 13)<br>• (Ex 4 Depo. Juarez Volume II, 287:6-288:3, 288:24-289:6)<br>• (Ex 4 Depo. Juarez Volume II, 235:1-238: 5, 238: 19-22)<br>• (Ex 4 Depo. Juarez Volume II, 241:4-15) |
| 61.    In their original complaint filed in the state court action, plaintiffs alleged that "[p]laintiff RUBEN JUAREZ did not suspect that *the chemicals* may have caused his injuries until March of 2015 when he, for the first time, received the MSDS *of the chemicals*."<br><br>Complaint.<br><br>(Catalona Dec., 15:14-15 (emphasis added).) | 61. Undisputed at to what the Complaint states.<br><br>Disputed to the extent that the fact infers chemicals are the cause of the Mr. Juarez's injuries and not the defects in the PVA 350 that lead to the chemical exposure.   This fact is misleading as the original complaint filed by Plaintiffs alleged a multitude of facts alleging defects in the PVA 350 that caused Plaintiffs' injuries including the following statements: Plaintiff RUBEN JUAREZ also noticed that chemicals often leak out of the PVA 350 from the bottom<br>• (Exhibit 45 Complaint, 4:6-7, 7:8-8:42)<br>• (Ex 1, Depo. Ruben Juarez Volume I, p. 49:22-50:8, 51:17, 52:8-16, 53:15-21, 54:11-55:15,   55:21-56:8, |

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | 56:14-18   ,   57:16-23-58:18, 59: 4-5, 59: 22-24,60:17-61:20, 62:1-15)<br>• (Ex. 2 Depo. Ruben Juarez Volume 2 p. 77:5-78:3)<br>• (Ex 3 Depo. Ruben Juarez Volume 1, 49:25-50:3)<br>• (Ex 3 Depo. Juarez Volume 1: 66:19-22, 116:1-14)<br>• (Ex 3 Depo. Juarez Volume 1: 108:20-109:12)<br>• (Ex 4 Depo. Juarez Volume II, 332:7-337:14)<br>• (Ex 4 Depo. Juarez Volume II, 249:22-250:12)<br>• (Ex 4 Depo. Juarez Volume II, 262:21-263: 13)<br>• (Ex 4 Depo. Juarez Volume II, 262:21-263:13)<br>• (Ex 4 Depo. Juarez Volume II,  287:6-288:3,  288:24-289:6)<br>• (Ex 4 Depo. Juarez Volume II, 235:1-238: 5, 238: 19-22)<br>• (Ex 4 Depo. Juarez Volume II, 241:4-15) |
| 62.    The MSDS sheets for all chemicals used in the conformal coating rooms, including Humiseal and Arathane, were accessible on the computer Juarez used at his workstation and in a three-ring binder kept 3-4 feet from the PVA 350.<br><br>Maxwell Dec.; Phan Dec.; Hwang Dec.<br><br>(Maxwell Dec., 1:27-2:19, 3:16-21; Phan | 62.Objection to the extent the declarants do not have personal knowledge of the alleged facts stated in the declarations.<br><br>Disputed to the extent the MSDS sheets for all chemicals used in the conformal coating rooms, including Humiseal and Arathane were not |

BALABAN & SPIELBERGER LLP<br>11999 SAN VICENTE BOULEVARD, SUITE 345<br>LOS ANGELES, CALIFORNIA 90049

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| Dec., 2:1-5; Hwang Dec., 1:27-2:4.) | accessible on the computer, at Mr. Juarez' workstation, and not in a 3 ring binder close to the PVA.<br><br>Disputed.  This partial power point that periodically lists the term MSDS and photographs of MSDS is in any way sufficient training regarding the use, location, and/or training as to the contents of the MSDS. Further, it is disputed.  Mr. Juarez was never given MSDS sheets, he did not have access to the MSDS sheets, and he had no chemical training either formal or informal to understand the MSDS sheets.<br>• (Dec.         Christopher Mendoza)<br>• (Dec. Manuel Gutierrez)<br>• (Defendant's Exhibit 91)<br>• (Ex 3 Depo. Juarez Volume 1:     121:     22-     122:20, 122:22-123:1)<br>• (Ex 3 Depo. Juarez Volume I: 123:19-124:12)<br>• (Ex. 1 Depo. Ruben Juarez Volume 1 p. 60:6-25)<br>• (Dec. Ruben Juarez)<br>• (Ex 3 Depo. Juarez Volume I: 139:17-20)<br>• (Ex 3 Depo. Juarez Volume 1 144:12-16)<br>• (Ex 1, Depo. Ruben Juarez Volume I, p. 49:22-50:8, 51:17, 52:8-16, 53:15-21, |

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

| **MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS** | **RESPONSE TO OPPOSITION** |
|---|---|
| | 54:11-55:15, 55:21-56:8, 56:14-18 , 57:16-23-58:18, 59: 4-5, 59: 22-24,60:17-61:20, 62:1-15)<br>• (Ex. 2 Depo. Ruben Juarez Volume 2 p. 77:5-78:3)<br>• (Ex 3 Depo. Ruben Juarez Volume 1, 49:25-50:3)<br>• (Ex 3 Depo. Juarez Volume 1: 66:19-22, 116:1-14)<br>• (Ex 3 Depo. Juarez Volume 1: 108:20-109:12)<br>• .(Ex 4 Depo. Juarez Volume II, 332:7-337:14)<br>• (Ex 4 Depo. Juarez Volume II, 249:22-250:12)<br>• (Ex 4 Depo. Juarez Volume II, 262:21-263: 13)<br>• (Ex 4 Depo. Juarez Volume II, 262:21-263:13)<br>• (Ex 4 Depo. Juarez Volume II, 287:6-288:3, 288:24-289:6)<br>• (Ex 4 Depo. Juarez Volume II, 235:1-238: 5, 238: 19-22)<br>• (Ex 4 Depo. Juarez Volume II, 241:4-15)<br><br>***Specific factual references with citations are set forth below for the court's convenience disputing the alleged facts that Mr. Juarez reviewed the MSDS sheets and allegedly mixed the Arathane and Humiseal*.** |

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | Mr. Mendoza never saw Ruben mixing chemicals at Space X. Further, while being an employee at Space X. Mr. Mendoza was never was never trained regarding how to read, interpret, and locate MSDS sheets. Further, Mr. Mendoza indicated Space X was using Humiseal since 2010, and he was never provided any Standard Operating Procedures.  (Dec. Christopher Mendoza) |
| | Mr. Gutierrez indicated he never saw a binder of MSDS sheets nor did he ever see any MSDS sheets in the conformal coating area. Further, he never saw any Standard of Practice while working with Space X.  Moreover, Mr. Gutierrez never saw Ruben mix chemicals, but he saw Francisco mix chemicals.  (Dec. Manuel Gutierrez) |
| | Initially, Mr. Juarez did not know what chemicals were in the chemical baths, and he found out, but the chemical baths did not have anything to do with the PVA 350, and when he filed the worker's compensation claim his claim was derived from the chemical washes.  (Ex 3 Depo. Juarez Volume 1: 66:19-22, 116:1-14) |
| | Mr. Juarez called a co-worker to get a list of the chemicals utilized in the wash area at Space X, and he may have offered to give the names of the rest of the chemicals used in the |

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

**STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**
**(Central District)**

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | conformal coating area.  (Ex 3 Depo. Juarez Volume 1: 108:20-109:12) |
| | Mr Juarez tried to get a list of chemicals from Space X, which did not work out.  Afterwhich, Mr. Juarez called Francisco to get a list of chemicals he had worked with.  After Francisco provided the list of chemicals, Mr. Juarez emailed Space X requested the MSDS sheets for the chemicals that Francisco listed.  (Ex 4 Depo. Juarez Volume II, 332:7-337:14) |
| | Mr. Juarez filed his worker's compensation claim based on his belief the chemical baths were making him sick as well as a solder wire until he learned only alcohol was used in the baths and only lead free solder wire were used in the filters. (Ex 4 Depo. Juarez Volume II, 262:21-263:13) |
| | Mr. Juarez had no reason to suspect any wrongdoing on behalf of PVA and Space X, and he did not know the reason he was getting sick when he filed the worker's compensation claim.  (Ex 4 Depo. Juarez Volume II, 262:21-263:13) |
| | Mr. Juarez first suspected he was working in a toxic work environment when he received the MSDS sheets from Space X after requesting the MSDS sheets via email after March 3, |

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | 2015.  (Ex 4 Depo. Juarez Volume II, 287:6-288:3, 288:24-289:6)

Mr. Juarez called Francisco and received a list of the chemicals that Mr. Juarez was exposed to, and he thus requested the MSDS sheets from Space X to forward to his attorney so that could figure out what was going on and what was making him sick. (Ex 4 Depo. Juarez Volume II, 235:1-238: 5, 238: 19-22)

Initially, Mr. Juarez thought his problems were caused by alcohol chemical baths and solder wire, but later he found out that lead-free solder wire was used.  Upon this discovery, Mr. Juarez reached out to Francisco and then to Space X to get the MSDS sheets.  (Ex 4 Depo. Juarez Volume II, 241:4-15) |
| 63.    SpaceX complied with its own internal rules which required MSDS sheets to "be readily accessible to employees in their work area during all work shifts."

Maxwell Dec.; Phan Dec.; Hwang Dec.; SpaceX Hazard Communication Training Course.

(Maxwell Dec., 1:27-2:19, 3:16-21, 58-59; Phan Dec., 2:1-5; Hwang Dec., 1:27-2:4; Dhillon Dec., 61-62.) | 63. Objection to the extent the declarants do not have personal knowledge of the alleged facts stated in the declarations.

Disputed that Space X complied with its own internal rules which require MSDS sheets to "be readily accessible to employees in their work area during all work shifts."

Disputed to the extent this partial power point that periodically |

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT (Central District)

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

| **MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS** | **RESPONSE TO OPPOSITION** |
|---|---|
| | lists the term MSDS and photographs of MSDS is in any way sufficient training regarding the use, location, and/or training as to the contents of the MSDS. |
| | Disputed.  Mr. Juarez was never given MSDS sheets, he did not have access to the MSDS sheets, and he had no chemical training either formal or informal to understand the MSDS sheets. |
| | • (Dec. Christopher Mendoza) |
| | • (Dec. Manuel Gutierrez) |
| | • Defendant's Exhibit 91 |
| | • (Ex 3 Depo. Juarez Volume 1: 55:21-56:5) |
| | • (Ex. 4 Depo. Juarez Volume II: 172:17-25) |
| | • (Ex 4 Depo. Juarez Volume II: 182:1-5) |
| | • (Ex 4 Depo. Juarez Volume II: 220:5-11) |
| | • (Ex 1, Depo. Ruben Juarez Volume I, p. 49:22-50:8, 51:17, 52:8-16, 53:15-21, 54:11-55:15, 55:21-56:8, 56:14-18 , 57:16-23-58:18, 59: 4-5, 59: 22-24,60:17-61:20, 62:1-15) |
| | • (Ex. 2 Depo. Ruben Juarez Volume 2 p. 77:5-78:3) |
| | • (Ex 3 Depo. Ruben Juarez Volume 1, 49:25-50:3) |
| | • (Ex 3 Depo. Juarez Volume 1: 66:19-22, 116:1-14) |
| | • (Ex 3 Depo. Juarez Volume 1: 108:20-109:12) |
| | • (Ex 4 Depo. Juarez Volume II, |

**STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**
**(Central District)**

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | 332:7-337:14) |
| | • (Ex 4 Depo. Juarez Volume II, 249:22-250:12) |
| | • . (Ex 4 Depo. Juarez Volume II, 262:21-263: 13) |
| | • (Ex 4 Depo. Juarez Volume II, 262:21-263:13) |
| | • (Ex 4 Depo. Juarez Volume II, 287:6-288:3, 288:24-289:6) |
| | • (Ex 4 Depo. Juarez Volume II, 235:1-238: 5, 238: 19-22) |
| | • (Ex 4 Depo. Juarez Volume II, 241:4-15) |
| | ***Specific factual references with citations are set forth below for the court's convenience disputing the alleged facts that Mr. Juarez reviewed the MSDS sheets and allegedly mixed the Arathane and Humiseal.*** |
| | Mr. Mendoza never saw Ruben mixing chemicals at Space X. Further, while being an employee at Space X. Mr. Mendoza was never was never trained regarding how to read, interpret, and locate MSDS sheets. Further, Mr. Mendoza indicated Space X was using Humiseal since 2010, and he was never provided any Standard Operating Procedures.  (Dec. Christopher Mendoza) |
| | Mr. Gutierrez indicated he never saw a binder of MSDS sheets nor did he ever see any MSDS sheets in the conformal coating area. Further, he never saw |

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | any Standard of Practice while working with Space X. Moreover, Mr. Gutierrez never saw Ruben mix chemicals, but he saw Francisco mix chemicals. (Dec. Manuel Gutierrez) |
| | Mr. Juarez indicated he does not have a chemistry background at his deposition on March 8, 2018. (Ex 3 Depo. Juarez Volume 1: 55:21-56:5) |
| | Mr. Juarez was not given any Standard Operating Procedures that pertained to how he was to perform his job. (Ex. 4 Depo. Juarez Volume II: 172:17-25) |
| | Initially, when Mr. Juarez was hired, he was hired as an SMT and thus the SOP cited by defense was not applicable. (Ex 4 Depo. Juarez Volume II: 182:1-5) |
| | Mr. Juarez was never given any written instructions with the incoming Humiseal products that were delivered to Space X. (Ex 4 Depo. Juarez Volume II: 220:5-11) |
| | On May 20, 2015, Mr. Juarez indicated at the second session of his deposition (within the two year filing period), the wash station for printed circuit board assemblies was right next to his station. (Ex. 2 Depo. Ruben Juarez Volume 2 p. 77:5-78:3) |
| | The equipment in the rooms where Mr. Juarez was working was constantly changing. (Ex 3 Depo. Ruben Juarez Volume 1, 49:25-50:3) |
| | Initially, Mr. Juarez did not know what chemicals were in the chemical baths, and he found out, but the chemical baths did not have anything to do with the PVA 350, and when he filed the worker's compensation claim his claim was derived from the chemical washes. (Ex 3 Depo. Juarez Volume 1: 66:19-22, 116:1-14) |

**STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**
**(Central District)**

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | Mr. Juarez called a co-worker to get a list of the chemicals utilized in the wash area at Space X, and he may have offered to give the names of the rest of the chemicals used in the conformal coating area.  (Ex 3 Depo. Juarez Volume 1: 108:20-109:12) |
| | Mr Juarez tried to get a list of chemicals from Space X, which did not work out.  Afterwhich, Mr. Juarez called Francisco to get a list of chemicals he had worked with.  After Francisco provided the list of chemicals, Mr. Juarez emailed Space X requested the MSDS sheets for the chemicals that Francisco listed.  (Ex 4 Depo. Juarez Volume II, 332:7-337:14) |
| | Mr. Juarez took a spray for medical problems to clear his airways, but nobody every pinpointed a cause for him to take the medicine.  (Ex 4 Depo. Juarez Volume II, 249:22-250:12) |
| | Mr. Juarez filed his worker's compensation claim based on his belief the chemical baths were making him sick as well as a solder wire until he learned only alcohol was used in the baths and only lead free solder wire were used in the filters. (Ex 4 Depo. Juarez Volume II, 262:21-263:13) |
| | Mr. Juarez had no reason to suspect any wrongdoing on behalf of PVA and Space X, and he did not know the reason he was getting sick when he filed the worker's compensation claim.  (Ex 4 Depo. Juarez Volume II, 262:21-263:13) |
| | Mr. Juarez first suspected he was working in a toxic work environment when he received the MSDS sheets from Space X after requesting the MSDS sheets via email after March 3, 2015.  (Ex 4 Depo. Juarez Volume II, 287:6-288:3, 288:24-289:6) |

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | Mr. Juarez called Francisco and received a list of the chemicals that Mr. Juarez was exposed to, and he thus requested the MSDS sheets from Space X to forward to his attorney so that could figure out what was going on and what was making him sick. (Ex 4 Depo. Juarez Volume II, 235:1-238: 5, 238: 19-22)

Initially, Mr. Juarez thought his problems were caused by alcohol chemical baths and solder wire, but later he found out that lead-free solder wire was used.  Upon this discovery, Mr. Juarez reached out to Francisco and then to Space X to get the MSDS sheets.  (Ex 4 Depo. Juarez Volume II, 241:4-15) |
| 64.    The MSDS sheets were also accessible on at least 14 to 18 different computers located inside and outside the conformal coating rooms where Mr. Juarez worked.

Maxwell Dec.

(Maxwell Dec., 2:4-8.) | 64. Objection.  Mr. Maxwell was not Mr. Juarez' direct supervisor and thus has no personal knowledge of what Mr. Juarez had access to or his level of knowledge or Mr. Juarez' ability/background to read and interpret a MSDS sheet.

Disputed.  Mr. Juarez was never given MSDS sheets, he did not have access to the MSDS sheets, and he had no chemical training either formal or informal to understand the MSDS sheets.

Mr. Juarez did not hand mix Humiseal with Arathane.  (Dec. Ruben Juarez, paragraph 9)

- (Ex 1, Depo. Ruben Juarez Volume I, p. 49:22-50:8, 51:17, 52:8-16, 53:15-21, 54:11-55:15, 55:21-56:8, 56:14-18 , 57:16-23- |

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | 58:18, 59: 4-5, 59: 22-24,60:17-61:20, 62:1-15)<br>• (Ex. 2 Depo. Ruben Juarez Volume 2 p. 77:5-78:3)<br>• (Ex 3 Depo. Ruben Juarez Volume 1, 49:25-50:3)<br>• (Ex 3 Depo. Juarez Volume 1: 66:19-22, 116:1-14)<br>• (Ex 3 Depo. Juarez Volume 1: 108:20-109:12)<br>• (Ex 4 Depo. Juarez Volume II, 332:7-337:14)<br>• (Ex 4 Depo. Juarez Volume II, 249:22-250:12)<br>• (Ex 4 Depo. Juarez Volume II, 262:21-263: 13)<br>• (Ex 4 Depo. Juarez Volume II, 262:21-263:13)<br>• (Ex 4 Depo. Juarez Volume II, 287:6-288:3, 288:24-289:6)<br>• (Ex 4 Depo. Juarez Volume II, 235:1-238: 5, 238: 19-22)<br>• (Ex 4 Depo. Juarez Volume II, 241:4-15)<br>• (Ex 3 Depo. Juarez Volume 1: 121: 22- 122:20, 122:22-123:1)<br>• (Ex 3 Depo. Juarez Volume I: 123:19-124:12)<br>• (Ex 3 Depo. Juarez Volume 1: 55:21-56:5)<br>• (Exhibit 31, PVA 51)<br>• (Exhibit 31, PVA30-32)<br>• (Exhibit 31, PVA 40-41)<br>• (Exhibit 15, PVA 69)<br>• (Exhibit 16, PVA 0272)<br>• (Exhibit 31, PVA 30-32, 51)<br>• (Dec. Christopher Mendoza) |

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

**STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT (Central District)**

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | • (Dec. Manuel Gutierrez) |
| | ***Specific factual references with citations are set forth below for the court's convenience disputing the alleged facts that Mr. Juarez reviewed the MSDS sheets and allegedly mixed the Arathane and Humiseal.*** |
| | Mr. Mendoza never saw Ruben mixing chemicals at Space X. Further, while being an employee at Space X. Mr. Mendoza was never was never trained regarding how to read, interpret, and locate MSDS sheets. Further, Mr. Mendoza indicated Space X was using Humiseal since 2010, and he was never provided any Standard Operating Procedures.  (Dec. Christopher Mendoza) |
| | Mr. Gutierrez indicated he never saw a binder of MSDS sheets nor did he ever see any MSDS sheets in the conformal coating area. Further, he never saw any Standard of Practice while working with Space X.  Moreover, Mr. Gutierrez never saw Ruben mix chemicals, but he saw Francisco mix chemicals.  (Dec. Manuel Gutierrez) |
| | The equipment in the rooms where Mr. Juarez was working was constantly changing.  (Ex 3 Depo. Ruben Juarez Volume 1, 49:25-50:3) |
| | Initially, Mr. Juarez did not know what chemicals were in the chemical baths, and he found out, but the |

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

**STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**
**(Central District)**

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
|  | chemical baths did not have anything to do with the PVA 350, and when he filed the worker's compensation claim his claim was derived from the chemical washes.  (Ex 3 Depo. Juarez Volume 1: 66:19-22, 116:1-14)

Mr. Juarez called a co-worker to get a list of the chemicals utilized in the wash area at Space X, and he may have offered to give the names of the rest of the chemicals used in the conformal coating area.  (Ex 3 Depo. Juarez Volume 1: 108:20-109:12)

Mr Juarez tried to get a list of chemicals from Space X, which did not work out.  Afterwhich, Mr. Juarez called Francisco to get a list of chemicals he had worked with.  After Francisco provided the list of chemicals, Mr. Juarez emailed Space X requested the MSDS sheets for the chemicals that Francisco listed.  (Ex 4 Depo. Juarez Volume II, 332:7-337:14)

Mr. Juarez took a spray for medical problems to clear his airways, but nobody every pinpointed a cause for him to take the medicine.  (Ex 4 Depo. Juarez Volume II, 249:22-250:12)

Mr. Juarez filed his worker's compensation claim based on his belief the chemical baths were making him sick as well as a solder wire until he learned only alcohol was used in |

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | the baths and only lead free solder wire were used in the filters. (Ex 4 Depo. Juarez Volume II, 262:21-263: 13) |
| | Mr. Juarez had no reason to suspect any wrongdoing on behalf of PVA and Space X, and he did not know the reason he was getting sick when he filed the worker's compensation claim.  (Ex 4 Depo. Juarez Volume II, 262:21-263:13) |
| | Mr. Juarez first suspected he was working in a toxic work environment when he received the MSDS sheets from Space X after requesting the MSDS sheets via email after March 3, 2015.  (Ex 4 Depo. Juarez Volume II, 287:6-288:3, 288:24-289:6) |
| | Mr. Juarez called Francisco and received a list of the chemicals that Mr. Juarez was exposed to, and he thus requested the MSDS sheets from Space X to forward to his attorney so that could figure out what was going on and what was making him sick. (Ex 4 Depo. Juarez Volume II, 235:1-238: 5, 238: 19-22) |
| | Initially, Mr. Juarez thought his problems were caused by alcohol chemical baths and solder wire, but later he found out that lead-free solder wire was used.  Upon this discovery, Mr. Juarez reached out to Francisco and then to Space X to get the MSDS |

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**
**(Central District)**

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | sheets.  (Ex 4 Depo. Juarez Volume II, 241:4-15)

Mr. Juarez was trained by PVA Inc. to open the door of the machine to perform programming job duties.  (Ex 3 Depo. Juarez Volume 1: 121: 22-122:20, 122:22-123:1)  Mr. Juarez believe it was unsafe for the operators to open the machine door and operate the PVA 350 because they could get their hand stuck in the machine, but he did not have a chemistry background so he did not know whether the chemicals were harmful or not, and he relied on the training provided by PVA Inc. that he could put is head safely in the machine while programming the machine. (Ex 3 Depo. Juarez Volume I: 123:19-124:12)

Mr. Juarez indicated he does not have a chemistry background at his deposition on March 8, 2018.  (Ex 3 Depo. Juarez Volume 1: 55:21-56:5) |
| 65.    Juarez consulted the MSDS sheets for Humiseal and Arathane to create experimental and test batches of these materials when SpaceX created the formula it started using in PVA's machine in 2012.

Maxwell Dec.; Urquhart Dec.; Hwang Dec., PVA Business Records; NVOC Specification; March, 2012 emails.

(Maxwell Dec., 2:23-28; Urquhart Dec., 2:15-17, 28, 63, 230; Hwang Dec., 2:5-12, 35-41.) | 65. Objection to the extent the declarants do not have personal knowledge of the alleged facts stated in the declarations.

Disputed.  Mr. Juarez did not consult MSDS sheets for Humiseal and Arathane to create experimental and test batches of these materials.

Disputed. Mr. Juarez was never given MSDS sheets, he did not |

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | have knowledge sufficient to gain access to the MSDS sheets, and he had no chemical training either formal or informal to understand the MSDS sheets. Mr. Juarez never created experimental test batches of Humiseal and Arathane when working with Space X. The only person mixing the chemicals was David Hwang and Francisco would load and mix the machines.

Mr. Juarez did not hand mix Humiseal with Arathane. (Dec. Ruben Juarez, paragraph 9)

- (Dec. Christopher Mendoza)
- (Dec. Manuel Gutierrez)
- (Defense Exhibit 91)
- (Dec. Ruben Juarez)
- (Ex 1, Depo. Ruben Juarez Volume I, p. 49:22-50:8, 51:17, 52:8-16, 53:15-21, 54:11-55:15, 55:21-56:8, 56:14-18 , 57:16-23-58:18, 59: 4-5, 59: 22-24,60:17-61:20, 62:1-15)
- (Ex. 2 Depo. Ruben Juarez Volume 2 p. 77:5-78:3)
- (Ex 3 Depo. Ruben Juarez Volume 1, 49:25-50:3)
- (Ex 3 Depo. Juarez Volume 1: 66:19-22, 116:1-14) |

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | • (Ex 3 Depo. Juarez Volume 1: 108:20-109:12)<br>• (Ex 4 Depo. Juarez Volume II, 332:7-337:14)<br>• (Ex 4 Depo. Juarez Volume II, 249:22-250:12)<br>• (Ex 4 Depo. Juarez Volume II, 262:21-263: 13)<br>• (Ex 4 Depo. Juarez Volume II, 262:21-263:13)<br>• (Ex 4 Depo. Juarez Volume II,  287:6-288:3,  288:24-289:6)<br>• (Ex 4 Depo. Juarez Volume II, 235:1-238: 5, 238: 19-22)<br>• (Ex 4 Depo. Juarez Volume II, 241:4-15)<br>• (Ex 3 Depo. Juarez Volume I: 123:19-124:12)<br>• (Ex 3 Depo. Juarez Volume 1: 55:21-56:5)<br>• (Ex. 1 Depo. Ruben Juarez Volume 1 p. 60:6-25)<br>• (Dec. Ruben Juarez)<br>• (Ex 3 Depo. Juarez Volume I: 139:17-20)<br>• (Ex 3 Depo. Juarez Volume 1 144:12-16)<br>• (See Exhibit 22, PVA 4463-4481)<br>• (Exhibit 22, PVA 23 and 24)<br>• (Exhibit 22 PVA 4449-4452)<br>• (Exhibit 22 PVA 4463-4481) |

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | • (Exhibit 36 PVA 4449-4452)
• (Exhibit 36)
• (Exhibit 36, PVA 1728-1731)
• (Exhibit 25, PVA 7-9, 17-29, 222-234, 250-251, 4449-4452)
• (Exhibit 31, PVA 51)
• (Exhibit 31, PVA30-32)
• (Exhibit 31, PVA 40-41)
• (Exhibit 15, PVA 69)
• (Exhibit 16, PVA 0272)
• (Exhibit 31, PVA 30-32, 51)

***Specific factual references with citations are set forth below for the court's convenience disputing the alleged facts that Mr. Juarez reviewed the MSDS sheets and allegedly mixed the Arathane and Humiseal***.

Mr. Mendoza never saw Ruben mixing chemicals at Space X. Further, while being an employee at Space X. Mr. Mendoza was never was never trained regarding how to read, interpret, and locate MSDS sheets. Further, Mr. Mendoza indicated Space X was using Humiseal since 2010, and he was never provided any Standard Operating Procedures.  (Dec. Christopher Mendoza)

Mr. Gutierrez indicated he never saw a binder of MSDS sheets nor did he ever see any MSDS sheets in the conformal |

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

**STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**
**(Central District)**

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | coating area. Further, he never saw any Standard of Practice while working with Space X. Moreover, Mr. Gutierrez never saw Ruben mix chemicals, but he saw Francisco mix chemicals. (Dec. Manuel Gutierrez)<br><br>Initially, Mr. Juarez did not know what chemicals were in the chemical baths, and he found out, but the chemical baths did not have anything to do with the PVA 350, and when he filed the worker's compensation claim his claim was derived from the chemical washes. (Ex 3 Depo. Juarez Volume 1: 66:19-22, 116:1-14)<br><br>Mr. Juarez called a co-worker to get a list of the chemicals utilized in the wash area at Space X, and he may have offered to give the names of the rest of the chemicals used in the conformal coating area. (Ex 3 Depo. Juarez Volume 1: 108:20-109:12)<br><br>Mr Juarez tried to get a list of chemicals from Space X, which did not work out. Afterwhich, Mr. Juarez called Francisco to get a list of chemicals he had worked with. After Francisco provided the list of chemicals, Mr. Juarez emailed Space X requested the MSDS sheets for the chemicals that Francisco listed. (Ex 4 Depo. Juarez Volume II, 332:7-337:14)<br><br>Mr. Juarez filed his worker's compensation claim based on his |

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

**STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**
**(Central District)**

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | belief the chemical baths were making him sick as well as a solder wire until he learned only alcohol was used in the baths and only lead free solder wire were used in the filters. (Ex 4 Depo. Juarez Volume II, 262:21-263: 13)

Mr. Juarez had no reason to suspect any wrongdoing on behalf of PVA and Space X, and he did not know the reason he was getting sick when he filed the worker's compensation claim.  (Ex 4 Depo. Juarez Volume II, 262:21-263:13)

Mr. Juarez first suspected he was working in a toxic work environment when he received the MSDS sheets from Space X after requesting the MSDS sheets via email after March 3, 2015.  (Ex 4 Depo. Juarez Volume II, 287:6-288:3, 288:24-289:6)

Mr. Juarez called Francisco and received a list of the chemicals that Mr. Juarez was exposed to, and he thus requested the MSDS sheets from Space X to forward to his attorney so that could figure out what was going on and what was making him sick. (Ex 4 Depo. Juarez Volume II, 235:1-238: 5, 238: 19-22)

Initially, Mr. Juarez thought his problems were caused by alcohol chemical baths and solder wire, but later he found out that lead-free solder |

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | wire was used.  Upon this discovery, Mr. Juarez reached out to Francisco and then to Space X to get the MSDS sheets.  (Ex 4 Depo. Juarez Volume II, 241:4-15)

Mr. Juarez was trained by PVA Inc. to open the door of the machine to perform programming job duties.  (Ex 3 Depo. Juarez Volume 1: 121: 22-122:20, 122:22-123:1)  Mr. Juarez believe it was unsafe for the operators to open the machine door and operate the PVA 350 because they could get their hand stuck in the machine, but he did not have a chemistry background so he did not know whether the chemicals were harmful or not, and he relied on the training provided by PVA Inc. that he could put is head safely in the machine while programming the machine. (Ex 3 Depo. Juarez Volume I: 123:19-124:12)

Mr. Juarez indicated he does not have a chemistry background at his deposition on March 8, 2018.  (Ex 3 Depo. Juarez Volume 1: 55:21-56:5)

***PVA HAD KNOWLEDGE OF THE CHEMICALS BEING UTILIZED BY SPACE X AND WAS INVOLVED IN SUBSEQUENT MODIFICATIONS TO THE MACHINE INVOLVING VARIOUS CHEMICALS***

•      PVA Inc was aware of the chemicals being utilized with the PVA 350. including the **transition to Arathane**. (See |

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | Exhibit 22, PVA 4463-4481) |
| | • The April 11, 2012 conformal coating video with Space X boards utilized the **same chemicals as used at Space X at PVA Inc**. (See Exhibit 9 and Exhibit 22) |
| | • On September 19, 2013, PVA Inc. made further modifications to the subject machine including reworking the dispense system on the machine to connect one cartridge to the one gallon tank for "**automatic solvent flush of Arathane 5705**."  (Exhibit 22, PVA 23 and 24) |
| | • On July 30, 2009, PVA/Andrew Haraburda serviced the W3267 (subject PVA 350 machine) and this description of the work/changes included:  adding solvent flush option (6 oz cartridge, 3 way ball valve, O-ISPSI Precision Regulator, which shows **PVA Inc. was continuing to modify and upgrade the machine. Then PVA Inc. specifically recommended Space X alter the solvent to a different solvent stating "Space X may need to use a different solvent (i.e. Xylene)."** (Exhibit 22 PVA 4449-4452) |
| | • Pursuant to email chain dated March 13, 2012 Jonathan Urquhart **(PVA) was aware of Space X's use of Arathane 5750**  The email specifically states, "I think David has |

**STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**
**(Central District)**

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

| **MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS** | **RESPONSE TO OPPOSITION** |
|---|---|
| | spoken to you **about our customer Space** X.  They build full blown rocket ships.  **They plan on pre-mixing this material part A part B and a 3rd part, thinner in small batches apply to board and the purge system** because of shelf life once mixed.  **Sounds screwy to me.**"  They were looking for a demo on the 27th of March.  (Exhibit 22, PVA 4463-4481)<br><br>•    Pursuant to email dated March 15, 2012 to Jonathan Urquhart, PVA was preparing a demo on the PVA 650 and **PVA were working with the same chemical materials Space X was utilizing, but PVA did not want Space X to know and PVA indicated they were going to convey to Space X that the materials were similar, but not the exact same**. .  (Exhibit 22, PVA 4463-4481)<br><br>•    Pursuant to email dated March 30, 2012, the test at PVA Inc. was rescheduled to **4-11-12 to view the** 3 part mixing process. (Exhibit 22, PVA 4463-4481)<br><br>•    Pursuant to email from David Gomez to Johnathan (PVA) Urquhart dated May 11, 2012 at 2:11 p.m., Space X talked about retrofitting the PVA 350, and then subsequently there was confirmation from Jon indicating **Space X wanted to** |

**STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT (Central District)**

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | **duplicate what was done during the visit.** (Exhibit 22, PVA 4463-4481) |
| | • Jon Urquart performed **the demo for Space X on 4-11-12**. (Exhibit 22, PVA 4463-4481) |
| | • Email dated December 2, 2014 at 9:03 a.m. Mr. Urquhart (PVA) indicated to Mr. Matupang there would be 2 demos including a coating with **Arathane 2 part mix and spray and dispensing using a 650 or Delta 6 with board head**, JDX (underfill), SVX (past), and FC100 (solder mask). (Exhibit 22) |
| | • On November 17, 2014, Mr. Urquhart (PVA) asked is Space X wanted to mix on the fly with **5750**? (Exhibit 22) |
| | • On January 9, 2013 at 10:38 a.m. David Gomez (PVA) emailed Brian Ignaut (Space X) **doing follow up on the "two part material application project you were working on and kindly presented us with**." There was inquiry as to whether there were any developments in the first few months of 2013. (Exhibit 22) |
| | • On December 3, 2012 at 12:01 PM David Gomez (PVA) wrote Scott Abarta asking for the **two part material brand and part # as well as any MSDS and data sheets**. Also, there was a request for a shot |

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

| **MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS** | **RESPONSE TO OPPOSITION** |
|---|---|
| | size and cycle time per part if possible. (Exhibit 22)

• On **September 10, 2013**, Mr. Gomez (PVA) indicated "they only want a 20 oz cartridge retainer & cap with spray & needle valve for the pre-mix material and 6oz cartridge retainer & cap **for the solvent, so it can flush the premixed material out right after doing a batch of boards**." Mr. Gomez indicated he was **familiar with the "fluid delivery line" because he had done it "several times."** He also indicated they were "**not there yet" for the two part coating spraying**.  (Exhibit 22)

• On September 9, 2013, Richard Bievenue (PVA) wrote Jonathan Connelly (ccing David Filbert, David Gomez, and Michael R. Leonard) indicating that **he spoke with Duc Phan (Space X) about the 350 machine and how Space X was switching to utilizing a 2 part material including Arathane 5750.  There was discussion about premising the solvents and flushing the solvent valves**.  Also, there was interest regarding a 2 component meter mix system. (Exhibit 22)

• On September 18, 2013 at 12:41 p.m., **Mr. Gomez (PVA) indicated that this is not the first time they have done a two part coating system and he thought they were putting** |

**STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**
(Central District)

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | **to many resources into this. The email specifically references Arathane** 5750. (Exhibit 22) |
| | • On September 13, 2013, from Duc Phan (Space X) to Jonathan Connelly, Michael R. Leonard (ccing Richard Bievenue and David Filbert) explained the process with pictures. **Specifically, he indicated that Space X removed the hoses from the spray dispensing head and connected the hoses from the Arathane material and solvent to it.   He further explained when the Arathane material was not in use they vaped the solvent hose and connect the Arathane material hose to the other head just for a place holder.  He also explained that Arathane 5750 part A and B is mixed together and poured in the first reservoir and the second reservoir is the solvent use to thin out the mixed Arathane for spray requirement**.  (Exhibit 22) |
| | • On September 13, 2013 at 6:07 a.m. Jonathan Connelly wrote Duc Phan (Space X). Michael R. Leonard and ccing Richard Bievenue and David Filbert inquiring about the process, requesting a picture, **and asking if the Arathane and the solvent was being run out of the cartridges mounted on the side of the machine**. (Exhibit 22) |

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

| **MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS** | **RESPONSE TO OPPOSITION** |
|---|---|
| | • On September 10, 2013, Duc Phan (Space X)wrote Michael R. Leonard and Jonathan Connelly, **and there was a clear indication that Space X was using Arathane 5750 material with a 2 hour cure time, and they were concerned the operator would forget to purge and rinse the material when the job is done. They were looking to automate the process after coating**. (Exhibit 22) |
| | o The sales order dated September 25, 2013 indicated PVA job number SPCX2115 W3267 indicated **PVA was there to provide onsite support for Mechanical Electrical Programming Fluid Delivery.** (Exhibit 22) |
| | o The sales quotation dated September 19, 2013, stated that PVA was to "**rework the dispense system on machine serial number W3267 to connect one cartridge to (1) one gallon tank for automatic solvent flush of Arathane 5705**. This was to include 1) all hoses and fittings needed to complete the integration, 2) pneumatic ball valve for automatic solvent flush, 3) hardware and software needed for integration, and one tank. Further, PVA was to travel to Space X to install the new auto solvent flush system. (Exhibit 22) |
| | o The purchase order dated |

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | September 24, 2013 issued to PVA and shipping to Space X on a Space X purchase order identified a supplier part number B72-01433 and **there is a full description of the work to be done including reworking the dispense system for an automatic flush of Arathane 5750** and in similar detail as stated above.  There is a separate purchase order for the travel expenditures. (Exhibit 22)
| | •      On July 21, 2014 at 6:48 p.m. Duc Phan (Space X) emailed Rex indicating the **current machine uses both Humiseal and Arathane and there are separate spray valves for both material**.  They need the pendant purge button to work for both materials. (Exhibit 22)
| | •      PVA Inc. circulated diagram clearly states **Arathane**.  Additionally, there is a quote work sheet for the 3 way assembly, pressure tank, hoses, fittings, valves as well as programming and engineering. (Ex 22, PVA 340-347)
| | **BELOW ARE FACTUAL ALLEGATIONS REGARDING THE MANUAL NOT BEING PRODUCED AND PVA MANUAL BEING INEFFECTIVE AND INSUFFICIENT**
| | •      PVA specifically indicated the manual was for production and |

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
|  | **operators not technical personnel, but it might be "useful for introduction or training**." (Exhibit 31, PVA 51)<br><br>• The manual was **only produced electronically**.  (No hardcopy.) (Exhibit 31, PVA30-32)<br><br>• The Operations and Maintenance manual **does not warn to wear a face mask or protection** from any inhalants.  (Exhibit 31, PVA 40-41)<br><br>• The manual indicates the PVA machines require that end users must **visually inspect the position of the needle with response to a calibration point and physically reposition the needle.**  (Exhibit 15, PVA 69)<br><br>• The Final Shipment Sign-Off does not indicate the operating manual was sent to Space X only machine photos were taken.  Also, there is an issue of facts as to whether the **exhaust switch was included.** (Exhibit 16, PVA 0272)<br><br>• The PVA manual was not **physically produced and there was no requirement to review it**. (Exhibit 31, PVA 30-32, 51)<br><br>Mr. Mendoza a former employee of Space X indicated that Space X was using Humiseal in 2010.<br><br>• (Dec.  Christopher  Mendoza, paragraph 2) |
| 66.    On January 20th, 2012, Juarez | 66.Objection to the extent the |

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| successfully completed SpaceX's training course entitled "Hazard Communication" during which he was taught that SpaceX's MSDS sheets were "readily accessible to employees in their work area during all work shifts" and were also "always available in our online archive as well as in the big blue MSDS books in the kitchen area." SpaceX Hazard Communication Training Course. (Dhillon Dec., 3:1-5, 61-62; Maxwell Dec., 58-59, Phan Dec., 47-48.) | declarants do not have personal knowledge of the alleged facts stated in the declarations. Disputed.  Mr. Juarez did not have access to the MSDS sheets at the time of discovery of injury so his alleged ability to access the MSDS sheets while working at Space X is irrelevant.  Further, it is disputed because Mr. Juarez was never given MSDS sheets, he did not have access to the MSDS sheets, and he had no chemical training either formal or informal to understand the MSDS sheets. This alleged fact is also disputed to the extent that all of the declarations submitted in support of this fact lack personal knowledge that Ruben Juarez had access to the MSDS sheet,  knowledge of the MSDS sheets, and had knowledge about how to interpret toxicity information on a MSDS sheets. • (Dec. Ruben Juarez) • (Dec.         Christopher Mendoza) • (Dec. Manual Gutierrez) • (Defendant Exhibit 91) • (Ex 3 Depo. Juarez Volume 1: 55:21-56:5) • (Ex 3 Depo. Juarez Volume 1:  121:  22-  122:20, 122:22-123:1) |

**STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT (Central District)**

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | • (Ex 3 Depo. Juarez Volume I: 123:19-124:12)
• (Ex 1, Depo. Ruben Juarez Volume I, p. 49:22-50:8, 51:17, 52:8-16, 53:15-21, 54:11-55:15,  55:21-56:8, 56:14-18    ,    57:16-23-58:18, 59: 4-5, 59: 22-24,60:17-61:20, 62:1-15)
• (Ex. 2 Depo. Ruben Juarez Volume 2 p. 77:5-78:3)
• (Ex 3 Depo. Ruben Juarez Volume 1, 49:25-50:3)
• (Ex 3 Depo. Juarez Volume 1: 66:19-22, 116:1-14)
• (Ex 3 Depo. Juarez Volume 1: 108:20-109:12)
• .    (Ex 4 Depo. Juarez Volume II, 332:7-337:14)
• (Ex 4 Depo. Juarez Volume II, 249:22-250:12)
• (Ex 4 Depo. Juarez Volume II, 262:21-263: 13)
• (Ex 4 Depo. Juarez Volume II, 262:21-263:13)
• (Ex 4 Depo. Juarez Volume II,  287:6-288:3,  288:24-289:6)
• (Ex 4 Depo. Juarez Volume II, 235:1-238: 5, 238: 19-22)
• (Ex 4 Depo. Juarez Volume II, 241:4-15)

***Specific factual references with citations are set forth below for the court's convenience disputing the alleged facts that Mr. Juarez*** |

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

**STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**
**(Central District)**

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | ***reviewed the MSDS sheets and allegedly mixed the Arathane and Humiseal***.<br><br>Mr. Mendoza never saw Ruben mixing chemicals at Space X. Further, while being an employee at Space X. Mr. Mendoza was never was never trained regarding how to read, interpret, and locate MSDS sheets. Further, Mr. Mendoza indicated Space X was using Humiseal since 2010, and he was never provided any Standard Operating Procedures.  (Dec. Christopher Mendoza)<br><br>Mr. Gutierrez indicated he never saw a binder of MSDS sheets nor did he ever see any MSDS sheets in the conformal coating area. Further, he never saw any Standard of Practice while working with Space X.  Moreover, Mr. Gutierrez never saw Ruben mix chemicals, but he saw Francisco mix chemicals.  (Dec. Manuel Gutierrez)<br><br>Mr. Juarez indicated he does not have a chemistry background at his deposition on March 8, 2018.  (Ex 3 Depo. Juarez Volume 1: 55:21-56:5)<br><br>Mr. Juarez was trained by PVA Inc. to open the door of the machine to perform programming job duties.  (Ex 3 Depo. Juarez Volume 1: 121: 22-122:20, 122:22-123:1)  Mr. Juarez believe it was unsafe for the operators to open the machine door and operate the PVA 350 because they could get their hand stuck in the machine, but he did not have a chemistry background so he did not know whether the chemicals were harmful or not, and he relied on the training provided by |

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | PVA Inc. that he could put is head safely in the machine while programming the machine.  (Ex 3 Depo. Juarez Volume I: 123:19-124:12) |
| | The equipment in the rooms where Mr. Juarez was working was constantly changing.  (Ex 3 Depo. Ruben Juarez Volume 1, 49:25-50:3) |
| | Mr Juarez tried to get a list of chemicals from Space X, which did not work out.  Afterwhich, Mr. Juarez called Francisco to get a list of chemicals he had worked with.  After Francisco provided the list of chemicals, Mr. Juarez emailed Space X requested the MSDS sheets for the chemicals that Francisco listed.  (Ex 4 Depo. Juarez Volume II, 332:7-337:14) |
| | Mr. Juarez filed his worker's compensation claim based on his belief the chemical baths were making him sick as well as a solder wire until he learned only alcohol was used in the baths and only lead free solder wire were used in the filters. (Ex 4 Depo. Juarez Volume II, 262:21-263:13) |
| | Mr. Juarez had no reason to suspect any wrongdoing on behalf of PVA and Space X, and he did not know the reason he was getting sick when he filed the worker's compensation claim.  (Ex 4 Depo. Juarez Volume II, 262:21-263:13) |
| | Mr. Juarez first suspected he was working in a toxic work environment when he received the MSDS sheets from Space X after requesting the MSDS sheets via email after March 3, 2015.  (Ex 4 Depo. Juarez Volume II, 287:6-288:3, 288:24-289:6) |

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | Mr. Juarez called Francisco and received a list of the chemicals that Mr. Juarez was exposed to, and he thus requested the MSDS sheets from Space X to forward to his attorney so that could figure out what was going on and what was making him sick. (Ex 4 Depo. Juarez Volume II, 235:1-238: 5, 238: 19-22)

Initially, Mr. Juarez thought his problems were caused by alcohol chemical baths and solder wire, but later he found out that lead-free solder wire was used. Upon this discovery, Mr. Juarez reached out to Francisco and then to Space X to get the MSDS sheets.  (Ex 4 Depo. Juarez Volume II, 241:4-15) |
| 67.    Throughout this time period up until the complaint was filed, MSDS sheets, including for Arathane and Humiseal products, could be downloaded from multiple websites online.

Catalona Dec.; Webpages.

(Catalona Dec., 6:27-7:23 490, 492, 493, 495, 498, 500, 503, 505, 565, 571, 584, 603-610, 612-617.) | 67.Disputed.  During his employment at Space, Mr. Juarez was never given MSDS sheets, he did not have access to the MSDS sheets, and he had no chemical training either formal or informal to understand the MSDS sheets.
- (Dec. Ruben Juarez)
- (Dec.Christopher Mendoza)
- (Dec. Manuel Gutierrez)
- (Ex 3 Depo. Juarez Volume 1: 55:21-56:5)
- (Ex 3 Depo. Juarez Volume 1: 121: 22- 122:20, 122:22-123:1)
- (Ex 3 Depo. Juarez Volume I: 123:19-124:12)
- (Ex 1, Depo. Ruben Juarez Volume I, p. 49:22-50:8, |

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

298

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | 51:17, 52:8-16, 53:15-21, 54:11-55:15,  55:21-56:8, 56:14-18   ,   57:16-23-58:18, 59: 4-5, 59: 22-24,60:17-61:20, 62:1-15) |

- (Ex. 2 Depo. Ruben Juarez Volume 2 p. 77:5-78:3)
- (Ex 3 Depo. Ruben Juarez Volume 1, 49:25-50:3)
- (Ex 3 Depo. Juarez Volume 1: 66:19-22, 116:1-14)
- (Ex 3 Depo. Juarez Volume 1: 108:20-109:12)
- .(Ex 4 Depo. Juarez Volume II, 332:7-337:14)
- (Ex 4 Depo. Juarez Volume II, 249:22-250:12)
- (Ex 4 Depo. Juarez Volume II, 262:21-263: 13)
- (Ex 4 Depo. Juarez Volume II, 262:21-263:13)
- (Ex 4 Depo. Juarez Volume II,  287:6-288:3,  288:24-289:6)
- (Ex 4 Depo. Juarez Volume II, 235:1-238: 5, 238: 19-22)
- (Ex 4 Depo. Juarez Volume II, 241:4-15)
- (Exhibit 31, PVA 51)
- (Exhibit 31, PVA30-32)
- (Exhibit 31, PVA 40-41)
- (Exhibit 15, PVA 69)
- (Exhibit 16, PVA 0272)
- (Exhibit 31, PVA 30-32, 51)

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
|  | ***Specific factual allegations are set forth below in detail for the court's convenience showing even people working at Space X did not have or understand how to get MSDS sheets for the particular chemicals utilized at Space X.*** |
|  | Mr. Juarez indicated he does not have a chemistry background at his deposition on March 8, 2018.   (Ex 3 Depo. Juarez Volume 1: 55:21-56:5) |
|  | Initially, Mr. Juarez did not know what chemicals were in the chemical baths, and he found out, but the chemical baths did not have anything to do with the PVA 350, and when he filed the worker's compensation claim his claim was derived from the chemical washes.  (Ex 3 Depo. Juarez Volume 1: 66:19-22, 116:1-14) |
|  | Mr. Juarez called a co-worker to get a list of the chemicals utilized in the wash area at Space X, and he may have offered to give the names of the rest of the chemicals used in the conformal coating area.  (Ex 3 Depo. Juarez Volume 1: 108:20-109:12) |
|  | Mr Juarez tried to get a list of chemicals from Space X, which did not work out.  Afterwhich, Mr. Juarez called Francisco to get a list of chemicals he had worked with.  After Francisco provided the list of chemicals, Mr. Juarez emailed Space X requested the MSDS sheets for the chemicals that Francisco listed.  (Ex 4 Depo. Juarez Volume II, 332:7-337:14) |
|  | Mr. Juarez filed his worker's compensation claim based on his |

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

**STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**
**(Central District)**

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | belief the chemical baths were making him sick as well as a solder wire until he learned only alcohol was used in the baths and only lead free solder wire were used in the filters. (Ex 4 Depo. Juarez Volume II, 262:21-263:13) |
| | Mr. Juarez had no reason to suspect any wrongdoing on behalf of PVA and Space X, and he did not know the reason he was getting sick when he filed the worker's compensation claim.  (Ex 4 Depo. Juarez Volume II, 262:21-263:13) |
| | Mr. Juarez called Francisco and received a list of the chemicals that Mr. Juarez was exposed to, and he thus requested the MSDS sheets from Space X to forward to his attorney so that could figure out what was going on and what was making him sick. (Ex 4 Depo. Juarez Volume II, 235:1-238: 5, 238: 19-22) |
| | Initially, Mr. Juarez thought his problems were caused by alcohol chemical baths and solder wire, but later he found out that lead-free solder wire was used.  Upon this discovery, Mr. Juarez reached out to Francisco and then to Space X to get the MSDS sheets.  (Ex 4 Depo. Juarez Volume II, 241:4-15) |
| 68.    In spite of all this, Juarez testified that he could not remember ever seeing the MSDS sheets, or asking to see the MSDS sheets, when he worked at SpaceX.<br><br>Juarez Depo.<br><br>(Catalona Dec., 288:22-23, 289:13-18, 290:5-7.) | 68. Disputed to the extent that these alleged facts mischaracterize Mr. Juarez's testimony as cited below.  Mr. Juarez was never given MSDS sheets, he did not have access to the MSDS sheets, and he had no chemical training either formal or informal to understand the MSDS sheets.<br><br>• (Dec.        Christopher |

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | Mendoza) |
| | • (Dec. Manuel Gutierrez) |
| | • (Dec. Ruben Juarez) |
| | • (Ex 3 Depo. Juarez Volume 1: 55:21-56:5) |
| | • (Ex 3 Depo. Juarez Volume 1: 121: 22- 122:20, 122:22-123:1) |
| | • (Ex 3 Depo. Juarez Volume I: 123:19-124:12) |
| | • (Ex 1, Depo. Ruben Juarez Volume I, p. 49:22-50:8, 51:17, 52:8-16, 53:15-21, 54:11-55:15, 55:21-56:8, 56:14-18 , 57:16-23-58:18, 59: 4-5, 59: 22-24,60:17-61:20, 62:1-15 |
| | • (Ex. 2 Depo. Ruben Juarez Volume 2 p. 77:5-78:3) |
| | • (Ex 3 Depo. Ruben Juarez Volume 1, 49:25-50:3) |
| | • (Ex 3 Depo. Juarez Volume 1: 66:19-22, 116:1-14) |
| | • (Ex 3 Depo. Juarez Volume 1: 108:20-109:12) |
| | • .(Ex 4 Depo. Juarez Volume II, 332:7-337:14) |
| | • (Ex 4 Depo. Juarez Volume II, 249:22-250:12) |
| | • (Ex 4 Depo. Juarez Volume II, 262:21-263: 13) |
| | • (Ex 4 Depo. Juarez Volume II, 262:21-263:13) |
| | • (Ex 4 Depo. Juarez Volume II, 287:6-288:3, 288:24-289:6) |
| | • (Ex 4 Depo. Juarez Volume |

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | II, 235:1-238: 5, 238: 19-22) |
| | • (Ex 4 Depo. Juarez Volume II, 241:4-15) |
| | • (Exhibit 31) |
| | • (Exhibit 31, PVA 51) |
| | • (Exhibit 31, PVA30-32) |
| | • (Exhibit 31, PVA 40-41) |
| | • (Exhibit 15, PVA 69) |
| | • (Exhibit 16, PVA 0272) |
| | • (Exhibit 31, PVA 30-32, 51) |

***Specific factual references with citations are set forth below for the court's convenience disputing the alleged facts that Mr. Juarez reviewed the MSDS sheets and allegedly mixed the Arathane and Humiseal***.

Mr. Mendoza never saw Ruben mixing chemicals at Space X. Further, while being an employee at Space X. Mr. Mendoza was never was never trained regarding how to read, interpret, and locate MSDS sheets. Further, Mr. Mendoza indicated Space X was using Humiseal since 2010, and he was never provided any Standard Operating Procedures.  (Dec. Christopher Mendoza)

Mr. Gutierrez indicated he never saw a binder of MSDS sheets nor did he ever see any MSDS sheets in the conformal coating area. Further, he never saw any Standard of Practice while working with Space X.  Moreover,

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | Mr. Gutierrez never saw Ruben mix chemicals, but he saw Francisco mix chemicals.  (Dec. Manuel Gutierrez) |
| | Mr. Juarez indicated he does not have a chemistry background at his deposition on March 8, 2018.   (Ex 3 Depo. Juarez Volume 1: 55:21-56:5) |
| | Mr. Juarez was trained by PVA Inc. to open the door of the machine to perform programming job duties.  (Ex 3 Depo. Juarez Volume 1: 121: 22-122:20, 122:22-123:1) |
| | Mr. Juarez believe it was unsafe for the operators to open the machine door and operate the PVA 350 because they could get their hand stuck in the machine, but he did not have a chemistry background so he did not know whether the chemicals were harmful or not, and he relied on the training provided by PVA Inc. that he could put is head safely in the machine while programming the machine.  (Ex 3 Depo. Juarez Volume I: 123:19-124:12) |
| | Mr Juarez tried to get a list of chemicals from Space X, which did not work out.  Afterwhich, Mr. Juarez called Francisco to get a list of chemicals he had worked with.  After Francisco provided the list of chemicals, Mr. Juarez emailed Space X requested the MSDS sheets for the chemicals that Francisco listed.  (Ex 4 Depo. Juarez Volume II, 332:7-337:14) |
| | Mr. Juarez had no reason to suspect any wrongdoing on behalf of PVA and Space X, and he did not know the reason he was getting sick when he filed the worker's compensation claim.  (Ex 4 Depo. Juarez Volume II, 262:21-263:13) |

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | Mr. Juarez first suspected he was working in a toxic work environment when he received the MSDS sheets from Space X after requesting the MSDS sheets via email after March 3, 2015.  (Ex 4 Depo. Juarez Volume II, 287:6-288:3, 288:24-289:6)

Mr. Juarez called Francisco and received a list of the chemicals that Mr. Juarez was exposed to, and he thus requested the MSDS sheets from Space X to forward to his attorney so that could figure out what was going on and what was making him sick.  (Ex 4 Depo. Juarez Volume II, 235:1-238: 5, 238: 19-22)

Initially, Mr. Juarez thought his problems were caused by alcohol chemical baths and solder wire, but later he found out that lead-free solder wire was used.  Upon this discovery, Mr. Juarez reached out to Francisco and then to Space X to get the MSDS sheets.  (Ex 4 Depo. Juarez Volume II, 241:4-15) |
| 69.    In interrogatories, PVA asked plaintiffs to "DESCRIBE in detail everything YOU did to determine what caused [plaintiffs'] injuries which are alleged in the COMPLAINT . . . including but not limited to any investigation, research, internet research, questions, and communications."

Interrogatory No. 13 to plaintiff Juarez; Interrogatory No. 5 to plaintiff Hernandez.

(Catalona Dec., 123:5-9, 141:5-9.) | 69. Disputed to the extent this is not an exact quote, undisputed to the extent the content is properly summarized. |
| 70.    As used in the interrogatory, the term "YOU" was defined as plaintiffs Ruben Juarez and Isela Hernandez, and "anyone acting on [their] behalf, including, but not limited to, attorneys, investigators, insurers, | 70. Disputed to the extent this is not an exact quote, undisputed to the extent the content is properly summarized. |

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| and any other agents."<br><br>Definition of "YOU" used in interrogatories to plaintiff Juarez and plaintiff Hernandez.<br><br>(Catalona Dec., 121:9-11, 140:8-10.) | |
| 71.    In response to these interrogatories, plaintiffs admitted that the only investigation they did was: "going to see his doctors."<br><br>Response to Interrogatory No. 13 by plaintiff Juarez; Response to Interrogatory No. 5 by plaintiff Hernandez.<br><br>(Catalona Dec., 133:1, 148:11-14.) | 71. Disputed to the extent this is not the whole and complete response, which is set forth below.<br><br>Ruben Juarez' response to PVA Inc.'s Request for Interrogatories, Set One, Number 13 states, **"[t]he interrogatory seeks information that is protected by the attorney-client privilege and work product doctrine**. Without waiving the objections and subject thereto, Plaintiff responds: Plaintiff has been going to see his doctors. **But only until Plaintiff received the MSDS sheet of the chemicals did Plaintiff suspect his injuries may have been caused by PVA's design/manufacturing defects**."<br><br>(Exhibit 40 Juarez Response to PVA Inc. Special Interrogatories, Set One)<br><br>Disputed to the extent these responses were not updated in disclosures citing documents, additional witness, and additional information.<br><br>(Exhibit 39, Plaintiffs' Collective Disclosures) |

BALABAN & SPIELBERGER LLP<br>11999 SAN VICENTE BOULEVARD, SUITE 345<br>LOS ANGELES, CALIFORNIA 90049

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | After being seen by Dr. Regev, Mr. Juarez requested a list of chemicals in the chemical baths and in the filters from Space X and initially, they did not provide any information so Mr. Juarez received a list of chemicals from Francisco, who unilaterally provided a list of all the chemicals Francisco worked with.  After receipt of the list, Mr. Juarez requested the MSDS sheets from Space X, and Space X forwarded the MSDS sheets to Space X.<br><br>(Depo. Ruben Juarez Volume II, 332:7-335:18) |
| 72.   PVA also asked plaintiff Isela Hernandez to identify the injuries she suffered which are the basis for her loss of consortium claim including "the date(s) the injury took place."<br><br>Interrogatory No. 4 to plaintiff Hernandez.<br><br>(Catalona Dec., 140:25-141:3.) | 72. Disputed.  The exact language of the Special Interrogatory, Number 4 is set forth below for the court's convenience.<br><br>"Describe in detail all INJURIES which YOU allege were caused, or were in any way contributed to, by Defendant's wrongful conduct, acts and/or omissions, as alleged in YOUR complaint. (As used in this interrogatory, 'DESCRIBE' means to describe in as much detail as possible including but limited to listing what the injury was, what body part(s) were affected, if any, the date(s) the injury took place, how it progressed, its current status, and the date it ended, if any.)"<br><br>(Exhibit 42, PVA Inc. Special |

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | Interrogatories, Set One, to Isela Hernandez)<br><br>Disputed to the extent these responses were not updated in disclosures citing documents, additional witness, and additional information.<br><br>(Exhibit 39, Plaintiffs' Collective Disclosures) |
| 73.    In response, plaintiff Hernandez stated that her "loss of love, care [and] companionship" was "derivative" of her husband's claim; she could not otherwise say when her particular injuries took place.<br><br>Response to Interrogatory No. 4 by plaintiff Hernandez.<br><br>(Catalona Dec., 147:26-148:6.) | 73. Disputed to the extent this is not the whole and complete response, which is set forth below.<br><br>Isela Hernandez' response to PVA Inc.'s Request for Interrogatories, Set One, Number 4 states, "Plaintiff Isela Hernandez's loss of consortium claim is derivative of Plaintiff Ruben Juarez's personal injury claim.  **As a result of Defendant Precision Valve & Automation ("PVA") design/manufacturing defects in PVA 350, Plaintiff Ruben Juarez, a previously healthy man, who rarely went to see doctors, suffers from neurological deficits and psychological depression from the chronic exposure to the chemicals sprayed by the PVA 350.  Plaintiff Isela Hernandez lost love, care companionship, comfort, assistance, protection, society, moral support form Plaintiff Ruben Juarez due to his illness**." |

BALABAN & SPIELBERGER LLP<br>11999 SAN VICENTE BOULEVARD, SUITE 345<br>LOS ANGELES, CALIFORNIA 90049

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | (Exhibit 41 Hernandez' Response to PVA Inc. Special Interrogatories, Set One)<br><br>Disputed to the extent these responses were not updated in disclosures citing documents, additional witness, and additional information.<br><br>(Exhibit 39, Plaintiffs' Collective Disclosures) |
| 74.    PVA also asked plaintiffs to list all "EVIDENCE" which "establishes or in any way relates to whether plaintiffs' lawsuit is barred by the two-year statute of limitations."<br><br>Interrogatory Nos. 14, 16 to plaintiff Juarez; Interrogatory Nos. 6-7 to plaintiff Hernandez.<br><br>(Catalona Dec., 123:11-13, 141:11-13, 155:3-5, 165:3-5.) | 74. Disputed to the extent this is not an exact quote, Undisputed to the extent the content is properly summarized. |
| 75.    "EVIDENCE" was defined as "any facts, witnesses (including contact information), statements, video, pictures, photos, recordings, documents, writings, depositions, transcripts, interviews, data, compilations, reports, productions and any other evidence of any kind whatsoever."<br><br>Definition of "EVIDENCE" used in interrogatories to plaintiff Juarez and plaintiff Hernandez.<br><br>(Catalona Dec., 121:1-4, 140:1-4, 154:24-28, 164:24-28.) | 75. Undisputed.  Disputed to the extent this request is overly broad, burdensome, and sought to invade the attorney work product privilege/attorney client privilege.<br><br>Disputed to the extent these responses were not updated in disclosures citing documents, additional witness, and additional information.<br><br>(Exhibit 39, Plaintiffs' Collective Disclosures) |
| 76.    In response, plaintiffs identified only | 76. Disputed to the extent this fact |

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT (Central District)

BALABAN & SPIELBERGER LLP 11999 SAN VICENTE BOULEVARD, SUITE 345 LOS ANGELES, CALIFORNIA 90049

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| "[p]laintiff's medical records, the MSDS of the pertinent chemicals, and the email from Plaintiff to his HR, asking for a disclosure of the MSDS" as well Mr. Juarez's two days of deposition testimony with exhibits in this case, and PVA's document production. | is not a full and complete quote and thus an inaccurate portrayal. The full responses are set forth below for the court's convenience: |
| Plaintiff Juarez's Responses to Interrogatory Nos. 14 and 16; Plaintiff Hernandez's Responses to Interrogatory Nos. 6-7. | Mr. Juarez' response to Special Interrogatory Number 14 states as follows: "**The interrogatory is overly broad, unduly burdensome, and oppressive. It also seeks information that is protected by the attorney-client privilege and work product doctrine**. Without waiving the objections and subject thereto, Plaintiff responds: **Plaintiff's medical records, the MSDS of the pertinent chemicals, and the email and Plaintiff to his HR. asking for a disclosure of the MSDS**." |
| (Catalona Dec., 133:9-13, 148:20-149:1, 160:11-17, 170:11-17.) | |
| | (Exhibit 40, Juarez' Response to PVA Inc. Special Interrogatories, Set One, Number 14) |
| | Isela Hernandez' Response to Defendant's Special Interrogatories, Set One, Number 6 states as follows: "The interrogatory is overly broad, unduly burdensome, and oppressive. It also seeks information that is protected by the attorney-client privilege and work product doctrine. Without waiving the objections and subject thereto, Plaintiff responds: **Mr. Juarez's medical records, the MSDS of the pertinent chemicals, and the email from Mr. Juarez to** |

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

310

**STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**
(Central District)

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | **his HR. asking for a disclosure of the MSDS. Witnesses: everyone disclosed in Plaintiffs' initial disclosure**." |
| | (Exhibit 41, Hernandez' Response to PVA Inc. Special Interrogatories, Set One, Number 6) |
| | Mr. Juarez' Response to Defendant PVA Inc.'s Request for Interrogatories, Set Two, Number 16 states as follows: "The interrogatory may seek information that is protected by attorney client privilege or work product doctrine.  Without waiving the objections and subject thereto, plaintiff responds: **all the deposition transcripts of Plaintiff Ruben Juarez, all of the medical records of plaintiff Ruben Juarez produced in discovery or obtained via subpoenas; all the exhibits attached to Plaintiff Ruben Juarez's deposition; all the documents produced by PVA so far; and all the documents produced by PVA so far**." |
| | (Exhibit 43, Juarez' Response to Defendant PVA Inc.'s Response to Request for Interrogatories, Set Two, Number 16) |
| | Plaintiff Herndandez' Response to Defendant's Request for Interrogatories, Set Two, Number 2 states as follows: "The interrogatory may seek information that is protected by |

**STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**
(Central District)

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | attorney client privilege or work product doctrine.  Without waiving the objections and subject thereto, plaintiff responds: **all the deposition transcripts of Plaintiff Ruben Juarez, all of the medical records of plaintiff Ruben Juarez produced in discovery or obtained via subpoenas; all the exhibits attached to Plaintiff Rueben Juarez's deposition; all the documents produced by PVA so far; and all the documents produced by PVA so far.**"<br><br>(Exhibit 44, Hernandez' Response to Defendant PVA Inc.'s Response to Request for Interrogatories, Set Two, Number 7 (mismarked as Number 1))<br><br>Disputed to the extent ample evidence of Mr. Juarez's compliance with the statute of limitations as well as his wife's is not readily apparent in the documents listed as well as the First Amended Complaint.<br><br>(Exhibit 28, FAC 7:24-8:7)<br><br>Disputed to the extent these responses were not updated in disclosures citing documents, additional witness, and additional information.<br><br>(Exhibit 39, Plaintiffs' Collective Disclosures)<br><br>• (Ex 1, Depo. Ruben Juarez Volume I, p. 49:22-50:8, 51:17, |

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | 52:8-16, 53:15-21, 54:11-55:15, 55:21-56:8, 56:14-18 , 57:16-23-58:18, 59: 4-5, 59: 22-24,60:17-61:20, 62:1-15)<br>• (Ex. 2 Depo. Ruben Juarez Volume 2 p. 77:5-78:3)<br>• (Ex 3 Depo. Ruben Juarez Volume 1, 49:25-50:3)<br>• (Ex 3 Depo. Juarez Volume 1: 66:19-22, 116:1-14)<br>• (Ex 3 Depo. Juarez Volume 1: 108:20-109:12)<br>• (Ex 4 Depo. Juarez Volume II, 332:7-337:14)<br>• (Ex 4 Depo. Juarez Volume II, 249:22-250:12)<br>• (Ex 4 Depo. Juarez Volume II, 262:21-263: 13)<br>• (Ex 4 Depo. Juarez Volume II, 287:6-288:3, 288:24-289:6)<br>• (Ex 4 Depo. Juarez Volume II, 235:1-238: 5, 238: 19-22)<br>• (Ex 4 Depo. Juarez Volume II, 241:4-15) |
| 77.    Plaintiff Juarez asserted legal objections to the above interrogatories based on the attorney-client privilege and work product doctrine, but the only evidence withheld on this or any other ground was plaintiffs' attorney's personal "notes from speaking with the clients and witnesses."<br><br>Plaintiffs' responses to PVA's Interrogatories; Plaintiffs' Privilege Log; June 24, 2018 email from Teresa Li.<br><br>(Catalona Dec., 132:27-28, 133:9-10, | 77.Objection as to relevance and call for the attorney client privilege.<br><br>Disputed to the extent the statement infers the responses were not updated in disclosures citing documents, additional witness, and additional information.<br><br>(Exhibit 39, Plaintiffs' |

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| 148:20-22, 160:11-12, 170:11-12, 233, 235-237.) | Collective Disclosures) Disputed to the extent the prior discovery requests and responses were mischaracterized and not fully cited. Disputed to the extent that none of the other objections were withdrawn. Disputed to the extent that there is non-tangible evidence that is protected by the objections and not subject to disclosure. |
| 78.    On February 28, 2017, plaintiffs filed their state court action that PVA removed to this Court. Complaint. (Catalona Dec., 12:2-8.) | 78. Undisputed. |
| 79.    In the operative complaint, plaintiffs allege that the PVA 350 caused Juarez to be exposed to Arathane and Humiseal because it did not "sound an alarm" or provide a warning "when the ventilation/exhaust is not in operation," and that defendant PVA "trained" Juarez "to stick his head into the spraying chamber of the conformal coating machine." FAC. (Catalona Dec., 58:22-25, 59:9-12.) | 79.Undisputed as to the allegations listed.  Disputed that these are the only allegations listed in the complaint against PVA Inc. <br><br>• (Exhibit 38, FAC, 2:16-18) <br>• (Exhibit 38, FAC, 3:22-25) <br>• (Exhibit 38, FAC, 3:26-27) <br>• (Exhibit 38, FAC, 4:9-18) <br>• (Exhibit 38, FAC, 4:24-27) <br>• (Exhibit 38, FAC, 5:1-3) <br>• (Exhibit 38, FAC, 6:19-23) <br>• (Exhibit 38, FAC, 8:13-14) <br>• (Exhibit 38, FAC, 8:15-25) <br>• (Exhibit 38, FAC, 8:26-9:2) <br>• (Exhibit 38, FAC, 9:15-27) |

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | • (Ex 3 Depo. Juarez Volume 1: 61:21-63:14)<br>• (Ex 3 Depo. Juarez Volume I: 145:25-147:2)<br>• (Ex 3 Depo. Ruben Juarez Volume 1: 30 :16-18, 30 :24-31 :5, 72:9-14)<br>• (Ex 3 Depo. Juarez Volume 1: 89:14-18, 90:8-11)<br>• (Ex 3 Depo. Juarez Volume 1: 121:16-19)<br>• (Ex 3 Depo. Juarez Volume 1: 121: 22- 122:20, 122:22-123:1)<br>• (Ex 3 Depo. Juarez Volume I: 123:19-124:12)<br>• .(Ex 4 Depo. Juarez Volume II: 226:12-227:6)<br>• (Ex. 4 Depo. Juarez Volume II232:1-7, 232: 23-25)<br><br>**_Specific factual references with citations are set forth below for the court's convenience regarding the allegations in the First Amended Complaint_**.<br><br>Before the sale of the PVA 350, PVA had samples of the chemicals to be sprayed by the PVA 350.  As a result, PVA knew or should have known the toxicity of the chemicals to be used by the PVA 350.  (FAC, Exhibit 38, 2:16-18)<br><br>PVA 350 does not have an automatic shutoff and does not sound an alarm when the ventilation / exhaust is not in operation.  In other words, PVA 350 is designed to continue to spray |

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | chemicals even when the ventilation / exhaust is not in operation. Furthermore, there is no warning anywhere about this. (Exhibit 38, FAC, 3:22-25)<br><br>[T]o add the automatic shutoff, PVA only needs to include an airflow sensor or something similar. (Exhibit 38, FAC, 3:26-27)<br><br>PVA trained Plaintiff RUBNE JUAREZ that in order to verify whether the equipment correctly sprayed the chemicals, Plaintiff RUBNE JUAREZ had to stick his head into the spraying chamber of the conformal coating machine to verify. He had to do this because the spray is usually transparent and is very fine with tiny thickness and therefore, a naked eye cannot identify whether or not certain part of the circuit board has been sprayed or the thickness of the spray.  The only way to verify this is to use a black light and poke his head inside the PVA 350 to check.  He could not take the circuit board out of the PVA 350 to verify this because it is wet and thus, any handling of the board would destroy the accuracy of the spray.  . (Exhibit 38, FAC, 4:9-18)<br><br>When the exhaust fan was not in operation, Plaintiff RUBEN JUAREZ unknowingly breathed in the chemicals during the verification process because his head was directly emerged inside the PVA 350 with the toxic chemicals floating inside it. |

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

**STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**
**(Central District)**

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | (Exhibit 38, FAC, 4:24-27)

In addition, when the exhaust fan was not in operation, the chemicals leaked out of the PVA 350.  Plaintiff RUBEN JUAREZ on average spent about 60% of his days standing right next to the PVA 350.  (Exhibit 38, FAC, 5:1-3)

On information and belief, before a benchtop dispensing system is designed and manufactured by PVA, Space X sends samples of its toxic chemicals to PVA for customization. So, PVA knew or should have known the exact type of chemicals used by its PVA 350 and the dangerous health consequences from exposure to these chemicals if the exhaust/ventilation is not in operation.  (Exhibit 38, FAC, 6:19-23)

Defendants designed, manufactured, supplied, installed, inspected, and repaired the PVA 350.  (Exhibit 38, FAC, 8:13-14)

First, Defendants were negligent in designing, manufacturing, supplying, installing, inspecting, and repairing the PVA 350. In particular, Defendants failed to use the amount of care in designing, manufacturing, inspecting, installing, and repairing the PVA 350 that a reasonably careful designer, manufacturer, supplier, installer, repairer would use in similar circumstances to avoid exposing Plaintiff RUBEN JUAREZ, a programmer of the PVA 350, to a foreseeable risk of harm. Furthermore, Defendants' design violated Cal-OSHA, which requires that "When spray is automatically applied without an attendant constantly on duty, the |

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | operating control of spray apparatus shall be so arranged that spray cannot be applied unless exhaust fans are in operation." (Title 8 of Cal. Code of Regulations, § 5153.) . (Exhibit 38, FAC, 8:15-25) |
| | Second, Defendants knew or reasonably should have known that the PVA 350 was dangerous or was likely to be dangerous when used or misused in a reasonably foreseeable manner. Defendants failed to adequately warn of the danger.  (Exhibit 38, FAC, 8:26-9:2) |
| | The PVA 350 contains a design defect that it does not stop spraying toxic chemicals or sound any alarm when the ventilation / exhaust is not in operation.  It continues to spray toxic chemicals even when the ventilation / exhaust is not in operation without sounding any alarm about it.  It also requires the operator to put his head into the machine to check the spray. The PVA 350 also did not have warning of the potential safety hazard when the ventilation / exhaust is not in operation. The PVA 350 did not perform as safely as an ordinary consumer would have expected it to perform when used or misused in an intended or reasonably foreseeable way. Plaintiffs were harmed. The PVA's failure to perform safely was a substantial factor in causing Plaintiffs' harm.  (Exhibit 38, FAC, 9:15-27) |
| 80.    Other than undisclosed communications with his attorneys, Juarez testified at his deposition that he had no information to explain why he waited until February 27, 2017 to file his lawsuit in this | 80. Objection to the extent this called for a legal conclusion and was vague and ambiguous. Further, Plaintiffs object to the term "undisclosed" as vague |

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

| **MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS** | **RESPONSE TO OPPOSITION** |
|---|---|
| case.<br><br>Juarez Depo.<br><br>(Catalona Dec., 301:8-13.) | and ambiguous as Juarez has an attorney client privilege not to disclose comments with his attorney.<br><br>Disputed. As discussed at Mr. Juarez' depositions, Mr. Juarez was not aware of the defects in the PVA 350 and his unrelated physical health problems created confusion as to the cause of his injuries.<br><br>The First Amended Complaint alleges as follows: "Up until May of 2015, Plaintiff RUBEN JUAREZ thought that his injury was caused by lead solder wire and cleaning solution to clean electronic parts operated by other Space X employees near Plaintiff's work station.  The solder wire and the cleaning solution had nothing to do with the PVA 350—they were not even housed in the same location as the PVA 350.     It was not until May of 2015, when Plaintiff Juarez saw the MSDS sheets from Space X that he first saw that the solder wire was actually lead-free and the detergent was only alcohol and that he first suspected that the PVA 350 might have caused his injuries. Therefore, despite diligent investigation of the circumstances of the injury, Plaintiff RUBEN JUAREZ could not have reasonably discovered facts supporting the cause of action against PVA within the application statute of limitations period. (Exhibit 38, FAC 7:24-8:7) |

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

**STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**
**(Central District)**

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | • (Ex 3 Depo. Ruben Juarez Volume 1 : 30 :16-18, 30 :24-31 :5, 72:9-14)<br>• (Ex 3 Depo. Juarez Volume 1: 89:14-18, 90:8-11)<br>  • (Ex 3 Depo. Juarez Volume 1: 121:16-19)<br>  • (Ex 3 Depo. Juarez Volume 1: 121: 22- 122:20, 122:22-123:1)<br>  • (Ex 3 Depo. Juarez Volume I: 123:19-124:12)<br>  • (Ex 4 Depo. Juarez Volume II: 226:12-227:6)<br>  • (Ex. 4 Depo. Juarez Volume II232:1-7, 232: 23-25)<br>  • (Ex 3 Depo. Juarez Volume 1: 91:3-93:24, 96:10-19, 98:20-21, 100:4-9)<br>  • (Ex 1, Depo. Ruben Juarez Volume I, p. 49:22-50:8, 51:17, 52:8-16, 53:15-21, 54:11-55:15, 55:21-56:8, 56:14-18 , 57:16-23-58:18, 59: 4-5, 59: 22-24,60:17-61:20, 62:1-15)<br>  • (Ex. 2 Depo. Ruben Juarez Volume 2 p. 77:5-78:3)<br>  • (Ex 3 Depo. Ruben Juarez Volume 1, 49:25-50:3)<br>  • (Ex 3 Depo. Juarez Volume 1: 66:19-22, 116:1-14)<br>  • (Ex 3 Depo. Juarez Volume 1: 108:20-109:12)<br>  • .(Ex 4 Depo. Juarez Volume II, 332:7-337:14)<br>  • (Ex 4 Depo. Juarez Volume |

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | II, 262:21-263: 13)<br>• (Ex 4 Depo. Juarez Volume II, 262:21-263:13)<br>• (Ex 4 Depo. Juarez Volume II, 287:6-288:3, 288:24-289:6)<br>• (Ex 4 Depo. Juarez Volume II, 235:1-238: 5, 238: 19-22)<br>• (Ex 4 Depo. Juarez Volume II, 241:4-15) |
| 81.    There is no evidence that Juarez's doctors assured him chemical exposure *was not* the cause of his injuries which would have been impossible because, as he admitted, none of his doctors were ever informed he was "working with chemicals."<br><br>FAC; Responses To Interrogatories.<br><br>(Catalona Dec., 62:20-23, 133:5-13, 148:16-149:1, 160:7-17, 170:7-17.) | 81. Undisputed that none of Mr. Juarez' doctors ever told Mr. Juarez prior to March 2015 that his injury might be caused by working with chemicals even though Mr. Juarez was examined by multiple doctors prior to March 2015.<br><br>• (Dec. Ruben Juarez)<br>• (Ex 1, Depo. Ruben Juarez Volume I, p. 49:22-50:8, 51:17, 52:8-16, 53:15-21, 54:11-55:15, 55:21-56:8, 56:14-18 , 57:16-23-58:18, 59: 4-5, 59: 22-24,60:17-61:20, 62:1-15)<br>• (Ex. 2 Depo. Ruben Juarez Volume 2 p. 77:5-78:3)<br>• (Ex 3 Depo. Ruben Juarez Volume 1, 49:25-50:3)<br>• (Ex 3 Depo. Juarez Volume 1: 66:19-22, 116:1-14)<br>• (Ex 3 Depo. Juarez Volume 1: 108:20-109:12) |

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
|  | • (Ex 4 Depo. Juarez Volume II, 332:7-337:14) |
|  | • (Ex 4 Depo. Juarez Volume II, 249:22-250:12) |
|  | • (Ex 4 Depo. Juarez Volume II, 262:21-263: 13) |
|  | • (Ex 4 Depo. Juarez Volume II, 262:21-263:13) |
|  | • (Ex 4 Depo. Juarez Volume II, 287:6-288:3, 288:24-289:6 |
|  | • (Ex 4 Depo. Juarez Volume II, 235:1-238: 5, 238: 19-22) |
|  | • (Ex 4 Depo. Juarez Volume II, 241:4-15) |

## II. STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO DEFENDANT'S PARTIAL MOTION FOR SUMMARY JUDGMENT (Central District) BASED ON PLAINTIFFS' FAILURE TO WARN CLAIMS

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| 1.      Plaintiffs reside in Granada Hills, California, in the County of Los Angeles.<br><br>Complaint, Notice of Removal and First Amended Complaint.<br><br>(Declaration of Alex P. Catalona ("Catalona Dec."), 12:22-23, 23:11-12, 57:2-4.) | 1.  Undisputed. |
| 2.      PVA is headquartered and incorporated in the State of New York.<br><br>Notice of Removal and Declaration of Jonathan Urquhart<br><br>(Catalona Dec., 23:13-15, 24:17-19; Declaration of Jonathan Urquhart ("Urquhart | 2.      Undisputed. |

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT (Central District)

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| Dec."), 1:4-7.) | |
| 3. The PVA 350 is a conformal coating machine manufactured by PVA which is known in the industry as a "workcell." Urquhart Dec. and PVA manual. (Urquhart Dec., 2:4-5, 77.) | 3. Undisputed as to the PVA 350 being a conformal coating machine manufactured by PVA. However, disputed to the extent the fact infers the PVA 350 is not a selective conformal coating machine. This selective conformal coating machine required Mr. Juarez to place his head in the machine to verify the spray was only sprayed on the selected areas versus a conformal coating machine that would not have required that step.<br><br>• (Dec. of Ruben Juarez)<br><br>Disputed to the extent the PVA350 is a work cell. The PVA 350 is a **standalone device**, which is a mechanism or system that can perform its function without the need of another device, computer, or connection. In contrast, a work cell is a term used in the manufacturing industry for an arrangement of resources in manufacturing to improve quality, speed, and the costs of the processes.<br><br>• (Dec. Ruben Juarez)<br><br>• Mr. Juarez never called the machine a work cell. (Ex 4 Depo. Juarez Volume II: 204 :4-5) |
| 4. PVA sold a single PVA 350 to SpaceX in 2009. Urquhart Dec. and March, 2018 Deposition of Ruben Juarez ("Juarez Depo."), and | 4. Undisputed to the extent PVA sold a PVA 350 to Space X in 2009. |

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| exhibits.<br><br>(Urquhart Dec., 1:11-18, 1:25-27, 5-6, 8, 12-14, 23; Catalona Dec., 265:21-24, 266:13-18, 267:19-24, 359-61.). | Disputed to the extent PVA Inc. attempts to infer that PVA Inc. only sold a single PVA 350 to Space X in 2009 and disappeared and never interacted with Space X again. In fact, PVA Inc. sold additional equipment, parts, and machines to Space X and had ongoing communications with Space X after 2009 and continued to service and modify the PVA 350 without ever warning the user of the dangers of the product.  (Exhibit 25, Sales Documents, Order, and Quotations)<br><br>• (Exhibit 25, PVA 222-234)<br>• (Exhibit 25, PVA 226)<br>• (Exhibit 25, PVA 228)<br>• (Exhibit 25, PVA 230-232)<br>• (Exhibit 32)<br>• (Exhibit 33)<br>• (Exhibit 34, PVA 420-421, 422, 423, 1183-1304)<br>• (Exhibit 34, PVA 423)<br><br>***The evidence below demonstrates the ongoing relationship between PVA and Space X regarding the additional parts, machines, and services provided by Space X.  Specific factual references with citations are set forth below for the court's convenience***.<br><br>PVA Invoices and Sales Docs to Spacex are attached hereto. (Exhibit 25, PVA 222-234) |

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | On 5-29-12, PVA purchase order included the FC100-MC (front closing dispenser), metal cartridge retainer, mounting brackets, fitting package to connect one cartridge retainer to one valve, 6oz plastic cartridge, one gallon pressure tank for flushing solvent, hoses and fittings. (Exhibit 25)<br><br>Invoice dated 5/23/13 shows the purchase of a rework kit (B72-1242) and a side levan window number 114-3546. (Exhibit 25, PVA 226)<br><br>Purchase order dated 5/7/13 shows a purchase for a B72-1242 for a wire two black LED strips with one off switch and lexon windows. (Exhibit 25, PVA 228)<br><br>Invoice dated 10/11/13 shows a solvent flush machine for W3267 B72-01433 as well as the purchase orders. (Exhibit 25, PVA 230-232)<br><br>**PVA INC. HAD AN ONGOING RELATIONSHIP WITH SPACEX AND SOLD MORE MACHINES THAN PVA 350**<br><br>On December 7, 2012, Mr. Ignaut from SpaceX sent an email to David Gomez and Scott Abarta (PVA) inquiring as to how many dispense head (PC200) they can install on a single "PVA3000?" (Exhibit 33)<br><br>On December 7, 2012 at 8:59 A.M. there is an email from David Gomez (PVA) to Brian Ignaut (Space X) and Scott Abarta asking Space X to review the budget proposal for the MX3000 and PVA 3000 robot indicating if there is a 1 to 1 mix proportion, low viscosity, and no fillers or corrosive |

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | chemicals in it, the equipment configuration will do just fine. (Exhibit 33)<br><br>On December 3, 2012 Scott Abarta emailed David Gomez (PVA) with what appears to be a cc to Brian Ignaut with Space X, but the email is indicating it is from Brian Ignaut (Responsible Engineer with Solar Arrays) requesting the need for a quote for the following PVA equipment: Mx 3000 MMD machine, PVA 200 dispense valve, and PVA 3000 dispense robot. (Exhibit 33)<br><br>**BILLS OF MATERIALS SHOW ONGOING RELATIONSHIP BETWEEN PVA INC. AND SPACE X**<br><br>There are PVA Materials being ordered by Space X in 5/6/03, 4/3/06, 5/8/09, 6/14/12, 10/14/13, 10/8/13, and 12/30/10.   (Exhibit 34, PVA 420-421, 422, 423, 1183-1304) Specifically, PVA Bill of Material dated 6/14/12 showed a purchase of PVA Inc products including the following gallons, fittings, hose, ball valve, cap, cartridge, fitting, fitting, tubing, regulator, air pressure gauge, felon tube, FCS300-ES extended spray, and FC100 MS dispense valve. (Exhibit 34, PVA 423) |
| 5.      This machine coats printed circuit boards with a thin polymeric film that "conforms" to the board's contours to protect against moisture, dust, chemicals and temperature extremes.<br><br>Urquhart Dec.<br><br>(Urquhart Dec., 1:14-17.). | 5. Undisputed. |
| 6      When it was manufactured, SpaceX | 6. Disputed to the extent this |

326

**STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**
**(Central District)**

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| specified that the machine would spray Electrolube "NVOC," a 100% solids content material that did not contain solvent material (such as Humiseal or Arathane.)<br><br>Urquhart Dec., and exhibits.<br><br>(Urquhart Dec., 28, 30, 63-64.) | statement attempts to infer that PVA Inc. was unaware how the PVA 350 was utilized by Space X with chemicals (such as Arathane and Humiseal) as set forth in numerous emails and even on plans produced by PVA Inc.<br><ul><li>(Exhibit 22)</li><li>(See Exhibit 22, PVA 4463-4481)</li><li>(See Exhibit 9 and Exhibit 22)</li><li>(Exhibit 22, PVA 23 and 24)</li><li>(Exhibit 22 PVA 4449-4452)</li><li>(Exhibit 22 PVA 4463-4481)</li></ul>On July 30, 2009, PVA Inc. employee Andrew Haraburda serviced the W3267 and recommended that Space X **utilize a different solvent because the "needle is still clogging in the solvent cup" and he recommended Xylene**. The MSDS sheet for **Xylene** shows extensive toxic effects on individuals. PVA Inc. was aware the selective conformal coating machines were often utilized with toxic chemicals.<br><ul><li>(Exhibit 22, PVA 4449-4452)</li><li>(Exhibit 28, Exemplar MSDS sheet for Xylene)</li></ul>***Specific factual references with citations are set forth below for*** |

BALABAN & SPIELBERGER LLP<br>11999 SAN VICENTE BOULEVARD, SUITE 345<br>LOS ANGELES, CALIFORNIA 90049

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | *the court's convenience*. |
| | ***PVA HAD KNOWLEDGE OF THE CHEMICALS BEING UTILIZED BY SPACE X AND WAS INVOLVED IN SUBSEQUENT MODIFICATIONS TO THE MACHINE INVOLVING VARIOUS CHEMICALS*** |
| | • PVA Inc was aware of the chemicals being utilized with the PVA 350. including the transition to Arathane. (See Exhibit 22, PVA 4463-4481) |
| | • The April 11, 2012 conformal coating video with Space X boards utilized the same chemicals as used at Space X at PVA Inc. (See Exhibit 9 and Exhibit 22) |
| | • On September 19, 2013, PVA Inc. made further modifications to the subject machine including reworking the dispense system on the machine to connect one cartridge to the one gallon tank for "automatic solvent flush of Arathane 5705." (Exhibit 22, PVA 23 and 24) |
| | • On July 30, 2009, PVA/Andrew Haraburda serviced the W3267 (subject PVA 350 machine) and this description of the work/changes included:  adding solvent flush option (6 oz cartridge, 3 way ball valve, O-ISPSI Precision Regulator, **which shows PVA Inc. was continuing to modify** |

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
|  | **and upgrade the machine. Then PVA Inc. specifically recommended Space X alter the solvent to a different solvent stating "Space X may need to use a different solvent** (i.e. Xylene)." (Exhibit 22 PVA 4449-4452)<br><br>• Pursuant to email chain dated March 13, 2012 Jonathan Urquhart **(PVA) was aware of Space X's use of Arathane 5750**  The email specifically states, "I think David has spoken to you **about our customer Space X**.  They build full blown rocket ships.  **They plan on pre-mixing this material part A part B and a 3rd part, thinner in small batches apply to board and the purge system** because of shelf life once mixed.  **Sounds screwy to me."**  They were looking for a demo on the 27th of March.  (Exhibit 22, PVA 4463-4481)<br><br>• Pursuant to email dated March 15, 2012 to Jonathan Urquhart, PVA was preparing a demo on the PVA 650 and **PVA were working with the same chemical materials Space X was utilizing, but PVA did not want Space X to know and PVA indicated they were going to convey to Space X that the materials were similar, but not the exact same**. .  (Exhibit 22, PVA 4463-4481)<br><br>• Pursuant to email dated |

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | March 30, 2012, the test at PVA Inc. was rescheduled to 4-11-12 to view the 3 part mixing process. (Exhibit 22, PVA 4463-4481)<br><br>•     Pursuant to email from David Gomez to Johnathan (PVA) Urquhart dated May 11, 2012 at 2:11 p.m., Space X talked about retrofitting the PVA 350, and then subsequently there was confirmation from Jon indicating **Space X wanted to duplicate what was done during the visit.** (Exhibit 22, PVA 4463-4481)<br><br>•     Jon Urquart performed the demo for Space X on 4-11-12. (Exhibit 22, PVA 4463-4481)<br><br>•     Email dated December 2, 2014 at 9:03 a.m. Mr. Urquhart (PVA) indicated to Mr. Matupang there would be 2 demos including a coating with **Arathane 2 part mix and spray and dispensing using a 650 or Delta 6 with board head**, JDX (underfill), SVX (past), and FC100 (solder mask). (Exhibit 22)<br><br>•     On November 17, 2014, Mr. Urquhart (PVA) asked is Space X wanted to mix on the fly with **5750**? (Exhibit 22)<br><br>•     On January 9, 2013 at 10:38 a.m. David Gomez (PVA) emailed Brian Ignaut (Space X) doing follow up on the "two |

BALABAN & SPIELBERGER LLP<br>11999 SAN VICENTE BOULEVARD, SUITE 345<br>LOS ANGELES, CALIFORNIA 90049

**STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**
**(Central District)**

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | **part material application project you were working on and kindly presented us with**." There was inquiry as to whether there were any developments in the first few months of 2013. (Exhibit 22)

• On December 3, 2012 at 12:01 PM David Gomez (PVA) wrote Scott Abarta asking for the **two part material brand and part # as well as any MSDS and data sheets**. Also, there was a request for a shot size and cycle time per part if possible. (Exhibit 22)

• On **September 10, 2013**, Mr. Gomez (PVA) indicated "they only want a 20 oz cartridge retainer & cap with spray & needle valve for the pre-mix material and 6oz cartridge retainer & cap **for the solvent, so it can flush the premixed material out right after doing a batch of boards**." Mr. Gomez indicated he was **familiar with the "fluid delivery line" because he had done it "several times."** He also indicated they were "**not there yet**" for the two part coating spraying. (Exhibit 22)

• On September 9, 2013, Richard Bievenue (PVA) wrote Jonathan Connelly (ccing David Filbert, David Gomez, and Michael R. Leonard) indicating that **he spoke with Duc Phan (Space X) about the 350 machine and how Space X was switching to utilizing a 2** |

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

| **MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS** | **RESPONSE TO OPPOSITION** |
|---|---|
| | **part material including Arathane 5750.  There was discussion about premising the solvents and flushing the solvent valves**.  Also, there was interest regarding a 2 component meter mix system. (Exhibit 22) |
| | •      On September 18, 2013 at 12:41 p.m., **Mr. Gomez (PVA) indicated that this is not the first time they have done a two part coating system and he thought they were putting to many resources into this.  The email specifically references Arathane** 5750. (Exhibit 22) |
| | •      On September 13, 2013, from Duc Phan (Space X) to Jonathan Connelly, Michael R. Leonard (ccing Richard Bievenue and David Filbert) explained the process with pictures. **Specifically, he indicated that Space X removed the hoses from the spray dispensing head and connected the hoses from the Arathane material and solvent to it.   He further explained when the Arathane material was not in use they vaped the solvent hose and connect the Arathane material hose to the other head just for a place holder.  He also explained that Arathane 5750 part A and B is mixed together and poured in the first reservoir and the second reservoir is the solvent use to thin out the mixed Arathane for spray** |

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | **requirement**.  (Exhibit 22)<br><br>• On September 13, 2013 at 6:07 a.m. Jonathan Connelly wrote Duc Phan (Space X). Michael R. Leonard and ccing Richard Bievenue and David Filbert inquiring about the process, requesting a picture, **and asking if the Arathane and the solvent was being run out of the cartridges mounted on the side of the machine**. (Exhibit 22)<br><br>• On September 10, 2013, Duc Phan (Space X)wrote Michael R. Leonard and Jonathan Connelly, **and there was a clear indication that Space X was using Arathane 5750 material with a 2 hour cure time, and they were concerned the operator would forget to purge and rinse the material when the job is done. They were looking to automate the process after coating**.  (Exhibit 22)<br><br>o    The sales order dated September 25, 2013 indicated PVA job number SPCX2115 W3267 indicated **PVA was there to provide onsite support for Mechanical Electrical Programming Fluid Delivery.**  (Exhibit 22)<br><br>o    The sales quotation dated September 19, 2013, stated that PVA was to "**rework the dispense system on machine serial number W3267 to connect one cartridge to (1)** |

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

| **MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS** | **RESPONSE TO OPPOSITION** |
|---|---|
| | **one gallon tank for automatic solvent flush of Arathane 5705**.  This was to include 1) all hoses and fittings needed to complete the integration, 2) pneumatic ball valve for automatic solvent flush, 3) hardware and software needed for integration, and one tank.  Further, PVA was to travel to Space X to install the new auto solvent flush system. (Exhibit 22) |
| | o       The purchase order dated September 24, 2013 issued to PVA and shipping to Space X on a Space X purchase order identified a supplier part number B72-01433 and **there is a full description of the work to be done including reworking the dispense system for an automatic flush of Arathane 5750** and in similar detail as stated above.  There is a separate purchase order for the travel expenditures. (Exhibit 22) |
| | •       On July 21, 2014 at 6:48 p.m. Duc Phan (Space X) emailed Rex indicating the **current machine uses both Humiseal and Arathane and there are separate spray valves for both material**.  They need the pendant purge button to work for both materials. (Exhibit 22) |
| | •       PVA Inc. circulated diagram clearly states **Arathane**.  Additionally, there is a quote work sheet for the 3 way assembly, pressure tank, |

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | hoses, fittings, valves as well as programming and engineering. (Ex 22, PVA 340-347) |
| 7.      In any event, the PVA 350 was built with safety features to prevent users from breathing materials used inside the machine. First, the machine monitored its exhaust flow and turned off if the exhaust system was not operating.<br><br>Urquhart Dec., PVA Manual.<br><br>(Urquhart Dec., 2:24-26, 98-99.) | 7.  Disputed.  A number of safety items are not included automatically included with the PVA 350 machines such as the following: conveyor type, passive programming camera, XY fiducial camera, exhaust blower, onboard computer, and flow monitoring. Further, disputed to the extent PVA Inc. trained end users to put their heads inside the machines to program the PVA machine, and the PVA 350 had design defects that caused users to put their heads inside the machines while the machines were spraying to properly program the machine.<br>• (Exhibit 17, PVA 220)<br>• (Exhibit 36, PVA 449-4452)<br>• (Declaration of Glen Stevick)<br>• (Declaration of Ruben Juarez)<br>• (Exhibit 11 and 29 PVA 279-280)<br>• (Exhibit 10, PVA 304)<br>• (Ex 3 Depo. Juarez Volume 1: 77:21-78:2)<br>• (Ex 3 Depo. Juarez Volume I, 79:25-80:4)<br>• (Ex 3 Depo. Juarez Volume |

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | I: 87:22-88:1) |
| | • (Ex 3 Depo. Juarez Volume 1: 158:3-9) |
| | • (Ex 3 Depo. Juarez Volume 1: 61:21-63:14, 58:4-6, 58:12-59:4) |
| | • (Exhibit 29, PVA 63, 64, 69, 220, 4537, 4538, 4539, 4540, 4542) |
| | • (Exhibit 9 and 22) |
| | • (Exhibit 5, Video of the PVA 350 shows the machine is far too small for someone to use while wearing a ventilator.) |
| | • (Video Exhibit 11 shows the conformal coating process in a PVA machine in 2010.) |
| | • (Video Exhibit 8 shows all the different types of coating and also shows various designs that were not defective so it is great for comparison and explanation.) |
| | • .(Exhibit 15, PVA 69) |
| | • (Exhibit 20) |
| | • (Exhibit 21, PVA 4537, 4538, 4540) |
| | • (Exhibit 29) |
| | • (Exhibit 11) |
| | • (Exhibit 23, PVA 1181 (Wet Film Thickness Gauge)) |
| | • (Exhibit 23, PVA 1181 (Wet Film Thickness Gauge)) |

336

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
|  | ***The following evidence demonstrates various safety features were not built into the PVA 350 or were insufficient as provided to Space X.  Specific factual allegations are set forth below for the court's convenience.***

Disputed to the extent the fact infers the PVA 350 was not defectively designed by not being large enough to allow users to utilize a ventilation mask when the PVA 350 was being utilized.

(Dec. Glen Stevick)

Disputed to the extent the fact infers the PVA 350 was designed without a conveyer belt to ensure employees of Space X did not have to put their head inside the machine and be exposed to toxic chemicals.

(Dec. Glen Stevick)

PVA Inc. trained Mr. Juarez to put his head inside the machine to check various chemical levels without the ventilation system being operational.

(Dec. Glen Stevick)

The PVA 350 ventilation indicated there was "no PVA blower."

(Exhibit 29, PVA 279-280)

***Specific factual references with citations are set forth below for the court's convenience***.

**THE MSDS SHEET ESTABLISHES PVA (AS ENGINEERS/ MANUFACTURES)** |

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | **OF THE PVA 350 HAD A DUTY TO ENSURE ADEQUATE VENTILATION**<br><br>PVA Inc. failed to ensure users were safe as PVA Inc. failed to comply with their engineering duty as set forth in the MSDS Arathane sheet. Engineering Measures: Use only adequate ventilation.  **Use process enclosures, local exhaust ventilation or other engineering controls to keep worker exposure to airborne contaminants below any recommended or statutory limits**. (Exhibit 10, 304)<br><br>**PLAINTIFF TESTIFIED ABOUT A NUMBER OF DEFECTS IN THE PVA 350 AND INADEQUATE SAFETY FEATURES IN HIS DEPOSITIONS, WHICH ALL TOOK PLACE WITHIN THE STATUTORY TIME FRAM FOR FILING A COMPLAINT**<br><br>The PVA 350 was built so a programmer had to bypass the safety mechanisms to program the machine. (Ex 3 Depo. Juarez Volume I: 87:22-88:1)<br><br>The PVA 350 was defectively designed because a programmer would have to **put their head inside the machine to look where the machine was spraying**.  (Ex 3 Depo. Juarez Volume I: 158:3-9)<br><br>Mr. Juarez would program the PVA 350, set up a circuit board in the machine, make sure the pattern is correct, do a dry run, do a wet run, put his head inside the PVA 350 to check the thickness of the layer, clean it up, rerun it again until they got the desired thickness and width.  To facilitate the |

**STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**
**(Central District)**

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

| **MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS** | **RESPONSE TO OPPOSITION** |
|---|---|
| | fine tuning process, the machine has to switch to a bypass door so a programmer can put **their head inside the machine to make sure the spraying head is parallel to the door. Then the programmer checks the thickness of the layer. The layer has to be about 1.5 thousandths of an inch.** (Ex 3 Depo. Juarez Volume 1: 61:21-63:14, 58:4-6, 58:12-59:4) |

**BELOW PLAINTIFFS ASSERT SPECIFIC DISPUTES OF FACT REGARDING THE PVA 350'S MACHINE DEFECTS, INADEQUATE SAFETY MEASURES, AND THE VENTILATION SYSTEM.**

• The alleged PVA safety guide states: "Some machines are equipped with an exhaust fan. The exhaust fan is provided to exhaust fumes from the work area. The exhaust flange should be connected to an appropriate ducting system that is capable of receiving 150 CFM. Insufficient airflow through the exhaust system generates an error." However, **this manual was not provided in a hardcopy form to Space X based on the pictures PVA provided**. (Exhibit 29, PVA 63)

• The Exhaust Verification Process shows **some machines** have an auto shut down. (Exhibit 29, PVA 64)

• **A user has to visually inspect the position of a needle with respect to a calibration point and the user may have to physically reposition the needle**. (Exhibit 29, PVA 69)

• The PVA Product Overview indicated a number of safety items are

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT (Central District)

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | not included on the PVA 350 automatically such as: conveyor type, passive programming camera, XY fiducial camera, exhaust blower, onboard computer, and flow monitoring. (Exhibit 29, PVA 220)<br><br>•     There is a picture of the module, and there appears to be an insufficient exhaust system in the back of the machine. (Exhibit 29, PVA 4537, 4538, 4539, 4540, and 4542).<br><br>•     The April 11, 2012 conformal coating video with Space X boards utilized the same chemicals as used at Space X at PVA Inc. (See Exhibit 9 and Exhibit 22)<br><br>•     Exhibit 5, Video of the PVA 350 shows the machine is far too small for someone to use while wearing a ventilator.<br><br>•     Video Exhibit 11 shows the conformal coating process in a PVA machine in 2010.<br><br>•     Video Exhibit 8 shows all the different types of coating and also shows various designs that were not defective so it is great for comparison and explanation.<br><br>•     The comparison PVA 350 shows there is a **low exhaust and no conveyer** belt option on the PVA 350. (Exhibit 20)<br><br>**THE PVA DID NOT COME WITH VARIOUS SAFETY MEASURES INCLUDING A PVA BLOWER**<br><br>•     On April 24, 2009, Alex Duggan wrote Nicholas Wong (Space |

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

| **MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS** | **RESPONSE TO OPPOSITION** |
|---|---|
| | X) regarding Frank Hart (Space X)'s order for a PVA 350 forwarding preliminary machine specifications. (Exhibit 29)

o      The attachment to this email is a Workcell Specification dated 4-24-09. Essentially, the machine was a 350 with no custom requirements.  The needle was not "calibrated." The ventilation was listed at a Minimum CFM of 300 without a "PVA blower" with an exhaust switch.  The coating material and solvents are listed as "unknown." There are 2 solvent cups listed and 2 purge pans listed as well. (Exhibit 29)

•      Attached to an email dated October 14, 2013, there is an excel sheet for the parts, which is relevant as there is a **low exhaust** flow listed. (Exhibit 29)

•      The breakdown showing the **PVA 350 was sold with no PVA blower and less than 10 CFM** is referenced as Exhibit 11.

**END USERS MUST PUT THEIR HEAD INTO THE PVA 350 MACHINE TO CHECK THE THICKNESS OF THE CHEMICAL COATING AND TO SPRAY THE PROPER AREAS OF THE CIRCUIT BOARD**

•      The Wet Film Thickness Gauge shows how Mr. Juarez **had to measure the level of the fluid on the boards and is relevant to show he had to stick his head in the machine**. (Exhibit 23, PVA 1181 (Wet Film Thickness Gauge)) |

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

| **MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS** | **RESPONSE TO OPPOSITION** |
|---|---|
| | • Pursuant to email dated December 15, 2014 on 11:47 a.m. Bievenue emailed to Matupang indicating the **only way to know for sure the mix ratio is coming out of a spray valve is with flow monitors and if you don't have flow monitors you are "spraying blind."** (Exhibit 30) |
| 8. As stated in the manual provided to SpaceX in 2009, it "must exhaust at a rate of no less than 150 cubic feet per minute, otherwise a critical fault will occur shutting the motors down." <br><br> Urquhart Dec., PVA Manual and exhibits. <br><br> (Urquhart Dec., 2:23-26, 21, 98-99.) | 8. Disputed to the extent this infers that Mr. Juarez saw the manual or the manual was provided to Mr. Juarez. Also, disputed because a number of safety items are not included with the PVA 350 machine such as the following: conveyor type, passive programming camera, XY fiducial camera, exhaust blower, onboard computer, and flow monitoring. <br><br> (Exhibit 29, PVA 220) <br><br> The work order on 7-28-2009 to 7-30-09 did not clarify the ventilation system was operational even after PVA Inc. added a **solvent flush** option flushed the material, and rebuilt the FCM100 valve. <br><br> (Exhibit 22 and 36 PVA 4449-4452) <br><br> Disputed to the extent the fact infers the PVA 350 was not defectively designed by not being large enough to allow users to utilize a ventilation mask when the PVA 350 was being utilized. |

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | (Dec. Glen Stevick)<br><br>The PVA 350 was designed without a conveyer belt to ensure employees of Space X did not have to put their head inside the machine and be exposed to toxic chemicals.<br><br>(Dec. Glen Stevick)<br><br>PVA Inc. trained Mr. Juarez to put his head inside the machine to check various chemical levels without the ventilation system being operations.<br><br><ul><li>(Dec. Ruben Juarez)</li><li>(Ex 3 Depo. Juarez Volume 1: 91:3-93:24, 96:10-19, 98:20-21, 100:4-9)</li><li>(Ex 3 Depo. Juarez Volume 1: 77:21-78:2)</li><li>(Ex 3 Depo. Juarez Volume I, 79:25-80:4)</li><li>(Ex 3 Depo. Juarez Volume I: 87:22-88:1)</li><li>(Exhibit 31, PVA 51)</li><li>(Exhibit 31, PVA30-32)</li><li>(Exhibit 31, PVA 40-41)</li><li>(Exhibit 15, PVA 69)</li><li>(Exhibit 16, PVA 0272)</li><li>(Exhibit 31, PVA 30-32, 51)</li><li>(Exhibit 29, PVA 63, 64, 69, 220)</li><li>(PVA 4537, 4538, 4539, 4540, and 4542).</li><li>(See Exhibit 9 and Exhibit 22)</li><li>Exhibit 5, Video of the PVA 350 shows the machine is far too small for someone to use while wearing a ventilator.</li></ul> |

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | • Video Exhibit 11 shows the conformal coating process in a PVA machine in 2010. |
| | • Video Exhibit 8 shows all the different types of coating and also shows various designs that were not defective so it is great for comparison and explanation. |
| | • (Exhibit 15, PVA 69) |
| | • (Exhibit 20) |
| | • (Exhibit 21, PVA 4537, 4538, 4540) |
| | ***Specific factual references with citations are set forth below for the court's convenience that address safety concerns, defects in the PVA 350, and concerns regarding the manual.*** |
| | Mr. Juarez never read the manual for the PVA 350 because it was not available to him, but he was trained by PVA Inc. on how to use the PVA machines, and at these trainings PVA Inc. never told Mr. Juarez to review any manual.  (Ex 3 Depo. Juarez Volume 1: 91:3-93:24, 96:10-19, 98:20-21, 100:4-9) |
| | In the first room, the ventilation for the PVA 350 was a manual switch. (Ex 3 Depo. Juarez Volume 1: 77:21-78:2) |
| | The PVA 350 was built so a programmer had to bypass the safety mechanisms to program the machine. (Ex 3 Depo. Juarez Volume I: 87:22-88:1) |
| | **THE PVA INC. MANUAL WAS NOT PROVIDED TO MR. JUAREZ AND THE MANUAL** |

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

| **MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS** | **RESPONSE TO OPPOSITION** |
|---|---|
| | **WAS INSUFFICIENT** |
| | •      PVA Inc. specifically indicated the **manual was for production and operators not technical personnel, but it might be "useful for introduction or training."** (Exhibit 31, PVA 51) |
| | •      The **manual was only produced electronically**.  (No hardcopy.) (Exhibit 31, PVA30-32) |
| | •      The Operations and Maintenance manual **does not warn to wear a face mask** or a ventilator. (Exhibit 31, PVA 40-41) |
| | •      The manual indicated the PVA machines required that end users must visually inspect the position of the needle with response to a calibration point and physically reposition the needle.  (Exhibit 15, PVA 69) |
| | •      The Final Shipment Sign-Off does not indicate the operating manual was even sent to Space X only machine photos were taken.  Also, there is an issue of fact as to whether the exhaust switch was included. (Exhibit 16, PVA 0272) |
| | •      The PVA manual **was not physically produced** and **there was no requirement to review it**. (Exhibit 31, PVA 30-32, 51) |
| | **BELOW PLAINTIFFS ASSERT SPECIFIC DISPUTES OF FACT REGARDING THE PVA 350'S MACHINE DEFECTS, INADEQUATE SAFETY MEASURES, AND THE** |

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | **VENTILATION SYSTEM.**<br><br>• The alleged PVA safety guide states: "Some machines are equipped with an exhaust fan.  The exhaust fan is provided to exhaust fumes from the work area.  The exhaust flange should be connected to an appropriate ducting system that is capable of receiving 150 CFM.  Insufficient airflow through the exhaust system generates an error." However, **this manual was not provided in a hardcopy form to Space X based on the pictures PVA provided**.  (Exhibit 29, PVA 63)<br><br>• The Exhaust Verification Process shows **some machines** have an auto shut down.  (Exhibit 29, PVA 64)<br><br>• **A user has to visually inspect the position of a needle with respect to a calibration point and the user may have to physically reposition the needle**.  (Exhibit 29, PVA 69)<br><br>• The PVA Product Overview indicated a number of safety items are not included on the PVA 350 automatically such as: conveyor type, passive programming camera, XY fiducial camera, exhaust blower, onboard computer, and flow monitoring. (Exhibit 29, PVA 220)<br><br>• There is a picture of the module, and there appears to be an insufficient exhaust system in the back of the machine. (Exhibit 29, PVA 4537, 4538, 4539, 4540, and 4542).<br><br>• The April 11, 2012 conformal coating video with Space X boards utilized the same chemicals as used at |

BALABAN & SPIELBERGER LLP<br>11999 SAN VICENTE BOULEVARD, SUITE 345<br>LOS ANGELES, CALIFORNIA 90049

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | Space X at PVA Inc. (See Exhibit 9 and Exhibit 22)<br><br>•　　Exhibit 5, Video of the PVA 350 shows the machine is far too small for someone to use while wearing a ventilator.<br><br>•　　Video Exhibit 11 shows the conformal coating process in a PVA machine in 2010.<br><br>•　　Video Exhibit 8 shows all the different types of coating and also shows various designs that were not defective so it is great for comparison and explanation.<br><br>•　　The comparison PVA 350 shows there is a **low exhaust and no conveyer** belt option on the PVA 350. (Exhibit 20) |
| 9.　　Second, the machine is a closed system with a door and negative air pressure to prevent chemicals from escaping.<br><br>Urquhart Dec.<br><br>(Urquhart Dec., 2:27-28.) | 9.　Disputed.  The PVA 350 is not equipped with a positive or negative air pressure system.<br><br>(Dec. Ruben Juarez)<br><br>Further, the PVA 350 had a defective Lexon door that permitted chemicals to escape and even had to be replaced at least once.<br><br>(Exhibit 13) PVA 277<br><br>The PVA 350 ventilation indicated there was "**no PVA blower**."<br><br>(Exhibit 17, PVA 279-280<br><br>PVA Inc specifically trained users to utilize the PVA 350 with the door |

**STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**
**(Central District)**

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | open and with their heads inside without providing a warning to utilize a ventilation mask because the machine was too small to permit a user to utilize a ventilation mask.<br><br>(Dec. Ruben Juarez)<br><br>(Dec. Glen Stevick)<br><br>The second room at a positive pressure ventilation system, but that was not connected to the PVA 350.  (Ex 3 Depo. Juarez Volume I: 84:6-13) |
| 10.    If the door of the machine is opened, the spraying of materials will stop.<br><br>Urquhart Dec., PVA Manual and exhibits.<br><br>(Urquhart Dec., 2:28-3:1, 21, 96-97.) | 10. Disputed to the extent that PVA Inc. attempts to infer that the PVA 350 is not defective as PVA Inc. trained users to open the door, put their heads inside the machine while it was spraying, and utilize the bypass system to ensure the circuit boards were uniformly coated without the use of a ventilation mask. PVA Inc. specifically provided a bypass system with the machine and trained Space X employees to utilize it without providing adequate safety controls to the bypass system.<br><br>• (Dec. Glen Stevick)<br>• (Dec. Ruben Juarez)<br>• (Ex 3 Depo. Juarez Volume I: 87:22-88:1)<br>• (Ex 3 Depo. Juarez Volume 1: 89:14-18, 90:8-11)<br>• (Ex 3 Depo. Juarez Volume 1: 121:16-19)<br>• (Ex 3 Depo. Juarez Volume 1: 121: 22- 122:20, 122:22-123:1) |

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

| **MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS** | **RESPONSE TO OPPOSITION** |
|---|---|
| | • (Ex 3 Depo. Juarez Volume I: 123:19-124:12) |
| | • (Ex 4 Depo. Juarez Volume II: 226:12-227:6) |
| | • (Ex. 4 Depo. Juarez Volume II232:1-7, 232: 23-25) |
| | • (Ex 3 Depo. Juarez Volume 1: 61:21-63:14) |
| | • (Exhibit 13, PVA 277) |
| | • .(Exhibit 17, PVA 63, 64, 219-220, 277, 279-280) |
| | • (Exhibit 29, PVA 63) |
| | • (Exhibit 29, PVA 64, 69, 220, ) |
| | • (PVA 4537, 4538, 4539, 4540, and 4542). |
| | • (See Exhibit 9 and Exhibit 22) |
| | • Exhibit 5, Video of the PVA 350 shows the machine is far too small for someone to use while wearing a ventilator. |
| | • Video Exhibit 11 shows the conformal coating process in a PVA machine in 2010. |
| | • Video Exhibit 8 shows all the different types of coating and also shows various designs that were not defective so it is great for comparison and explanation. |
| | • .(Exhibit 15, PVA 69) |
| | • (Exhibit 20) |
| | • (Exhibit 21, PVA 4537, 4538, 4540) |
| | • (Exhibit 24, 4458-4462) |
| | • (Exhibit 24) |
| | • (Exhibit 23, PVA 1181 (Wet Film Thickness Gauge)) |
| | • (Exhibit 30) |

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | ***Specific factual references with citations are set forth below for the court's convenience***. |
| | **DEPOSITION TESTIMONY PORTRAYING THE DEFECTIVE DESIGN OF THE PVA 350 AND HOW END USERS WERE TRAINED TO USE THE MACHINE WITH THE DOOR OPEN** |
| | The PVA 350 was built so a programmer had to bypass the safety mechanisms to program the machine. (Ex 3 Depo. Juarez Volume I: 87:22-88:1) |
| | PVA Inc. trained Mr. Juarez to put his head in the PVA 350 machine and bypass the machine. (Ex 3 Depo. Juarez Volume 1: 89:14-18, 90:8-11) |
| | Part of Mr. Juarez' training by PVA Inc. was to bypass the safety switch to do the programming of the PVA 350 machine. (Ex 3 Depo. Juarez Volume 1: 121:16-19) |
| | Mr. Juarez was trained by PVA Inc. to open the door of the machine to perform programming job duties. (Ex 3 Depo. Juarez Volume 1: 121: 22-122:20, 122:22-123:1) |
| | Mr. Juarez believe it was unsafe for the operators to open the machine door and operate the PVA 350 because they could get their hand stuck in the machine, but he did not have a chemistry background so he did not know whether the chemicals were harmful or not, ***and he relied on the training provided by PVA Inc. that he could put is head safely in the machine while programming the machine***. (Ex 3 Depo. Juarez Volume I: 123:19-124:12) |

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

**STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT (Central District)**

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | Mr. Juarez had to place his head into the machine to see what portions of the circuit boards were covered because he would not be able to see into the machine and view the fine spray pattern by just looking through the window.  (Ex 4 Depo. Juarez Volume II: 226:12-227:6)<br><br>Mr. Juarez was trained in 2011 by PVA Inc. through a hands on approach on how to use the PVA machine without any hazardous chemical training.  (Ex. 4 Depo. Juarez Volume II:232:1-7, 232: 23-25)<br><br>Mr. Juarez would program the PVA 350, set up a circuit board in the machine, make sure the pattern is correct, do a dry run, do a wet run, make sure his head was inside to check the thickness of the layer, clean it up, rerun it again until they got the desired thickness and width.  The programmer has to fine tune the thickness of the conformal coating layer.  To facilitate the fine tuning process, the machine has to switch to a bypass door so a programmer can put their head inside the machine to make sure the spraying head is parallel to the door.  Then a programmer does a dry run, a wet run, and checks the thickness of the layer.  The layer has to be about 1.5 thousandths of an inch.  (Ex 3 Depo. Juarez Volume 1: 61:21-63:14)<br><br>**ADDITIONAL SAFETY MEASURES WERE INACTIVE, BYPASSED PURSUANT TO TRAINING BY PVA, AND NOT INCLUDED WITH EACH PVA 350**<br><br>•      The system debug dated 5-1-09 indicates the machine needed the material lines, fixed or replaced the **Lexon side**, valve/2 micrometer needs to be, and they needed **to add a camera cable in the back of the machine**.  Further, PVA Inc. presents no evidence the Lexon glass door was |

BALABAN & SPIELBERGER LLP<br>11999 SAN VICENTE BOULEVARD, SUITE 345<br>LOS ANGELES, CALIFORNIA 90049

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

| **MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS** | **RESPONSE TO OPPOSITION** |
|---|---|
| | timely replaced or the camera cord was ever installed. (Exhibit 13, PVA 277) |

• **Not all PVA 350s have the alleged safety features including an exhaust fan/conveyer belt/an auto shut down/exhaust blower/flow monitoring, and cameras**.  Further, pursuant to training provided by PVA Inc., there are **bypass systems that must be utilized so programmers can complete their jobs**.  (Exhibit 17, PVA 63, 64, 219-220, 277, 279-280)

**BELOW PLAINTIFFS ASSERT SPECIFIC DISPUTES OF FACT REGARDING THE PVA 350'S MACHINE DEFECTS, INADEQUATE SAFETY MEASURES, AND THE VENTILATION SYSTEM.**

• The alleged PVA safety guide states: "Some machines are equipped with an exhaust fan.  The exhaust fan is provided to exhaust fumes from the work area.  The exhaust flange should be connected to an appropriate ducting system that is capable of receiving 150 CFM.  Insufficient airflow through the exhaust system generates an error."  However, **this manual was not provided in a hardcopy form to Space X based on the pictures PVA provided**.  (Exhibit 29, PVA 63)

• The Exhaust Verification Process shows **some machines** have an auto shut down.  (Exhibit 29, PVA 64)

• **A user has to visually inspect the position of a needle with respect to a calibration point and the user may have to physically reposition**

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | **the needle**.  (Exhibit 29, PVA 69)

• The PVA Product Overview indicated a number of safety items are not included on the PVA 350 automatically such as: conveyor type, passive programming camera, XY fiducial camera, exhaust blower, onboard computer, and flow monitoring. (Exhibit 29, PVA 220)

• There is a picture of the module, and there appears to be an insufficient exhaust system in the back of the machine. (Exhibit 29, PVA 4537, 4538, 4539, 4540, and 4542).

• The April 11, 2012 conformal coating video with Space X boards utilized the same chemicals as used at Space X at PVA Inc. (See Exhibit 9 and Exhibit 22)

• Exhibit 5, Video of the PVA 350 shows the machine is far too small for someone to use while wearing a ventilator.

• Video Exhibit 11 shows the conformal coating process in a PVA machine in 2010.

• Video Exhibit 8 shows all the different types of coating and also shows various designs that were not defective so it is great for comparison and explanation.

• The comparison PVA 350 shows there is a **low exhaust and no conveyer** belt option on the PVA 350. (Exhibit 20)

**PVA INC. PROVIDED TRAINING AND TRAINED MR. JUAREZ TO** |

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | **PUT HIS HEAD INSIDE THE PVA MACHINE WITHOUT ANY PROTECTIVE GEAR**

Ruben Juarez attended training at PVA Inc., and PVA trained him to put his head inside the machine while spraying without any protective gear. He attended these trainings while working for EMI and Space X. (See Exhibit 24, 4458-4462)

**END USERS MUST PUT THEIR HEAD INTO THE PVA 350 MACHINE TO CHECK THE THICKNESS OF THE CHEMICAL COATING AND TO SPRAY THE PROPER AREAS OF THE CIRCUIT BOARD**

•      The Wet Film Thickness Gauge shows how Mr. Juarez **had to measure the level of the fluid on the boards and is relevant to show he had to stick his head in the machine**. (Exhibit 23, PVA 1181 (Wet Film Thickness Gauge))

•      Pursuant to email dated December 15, 2014 on 11:47 a.m. Bievenue emailed to Matupang indicating the **only way to know for sure the mix ratio is coming out of a spray valve is with flow monitors and if you don't have flow monitors you are "spraying blind."** (Exhibit 30) |
| 11.    "When the door is opened power to the motors and pneumatics is disconnected."

Urquhart Dec., PVA Manual and exhibits. | 11. Disputed to the extent the statement alleges inaccurate factual inferences.  PVA Inc. trained users to open the door, |

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| (Urquhart Dec., 2:28-3:1, 21, 96-97.) | put their heads inside the machine, and utilize the bypass system to ensure the circuit boards were uniformly coated without the use of a ventilation mask. PVA Inc. specifically provided a bypass system with the machine and trained Space X employees to utilize the PVA machine without providing adequate safety controls to the bypass system. |

- (Dec. Glen Stevick)
- (Dec. Ruben Juarez)
- (Ex 3 Depo. Juarez Volume I: 87:22-88:1)
- (Ex 3 Depo. Juarez Volume 1: 89:14-18, 90:8-11)
- (Ex 3 Depo. Juarez Volume 1: 121: 22- 122:20, 122:22-123:1)
- (Ex 3 Depo. Juarez Volume I: 123:19-124:12)
- (Ex 4 Depo. Juarez Volume II: 226:12-227:6)
- (Ex. 4 Depo. Juarez Volume II232:1-7, 232: 23-25)
- (Ex 3 Depo. Juarez Volume 1: 61:21-63:14)
- (Exhibit 13, PVA 277)
- (Exhibit 17, PVA 63, 64, 219-220, 277, 279-280)
- (Exhibit 29, PVA 63, 69, 220)
- (PVA 4537, 4538, 4539, 4540, and 4542).
- (See Exhibit 9 and Exhibit 22)
- Exhibit 5, Video of the PVA 350 shows the machine is far too

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | small for someone to use while wearing a ventilator. |
| | • Video Exhibit 11 shows the conformal coating process in a PVA machine in 2010. |
| | • Video Exhibit 8 shows all the different types of coating and also shows various designs that were not defective so it is great for comparison and explanation. |
| | • (Exhibit 15, PVA 69) |
| | • (Exhibit 20) |
| | • (Exhibit 21, PVA 4537, 4538, 4540) |
| | • (Exhibit 24, 4458-4462) |
| | • (Exhibit 24) |
| | • (Exhibit 23, PVA 1181 (Wet Film Thickness Gauge)) |
| | • (Exhibit 30) |
| | ***Specific factual references with citations are set forth below for the court's convenience that portray PVA 350 operated when the door was open as PVA Inc. trained Mr. Juarez.*** |
| | **DEPOSITION TESTIMONY PORTRAYING THE DEFECTIVE DESIGN OF THE PVA 350 AND HOW END USERS WERE TRAINED TO USE THE MACHINE WITH THE DOOR OPEN BY PVA INC.** |
| | The PVA 350 was built so a programmer had to bypass the safety mechanisms to program the machine. (Ex 3 Depo. Juarez Volume I: 87:22-88:1) |

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | PVA Inc. trained Mr. Juarez to put his head in the PVA 350 machine and bypass the machine.  (Ex 3 Depo. Juarez Volume 1: 89:14-18, 90:8-11) |
| | Part of Mr. Juarez' training by PVA Inc. was to bypass the safety switch to do the programming of the PVA 350 machine.  (Ex 3 Depo. Juarez Volume 1: 121:16-19) |
| | Mr. Juarez was trained by PVA Inc. to open the door of the machine to perform programming job duties.  (Ex 3 Depo. Juarez Volume 1: 121: 22-122:20, 122:22-123:1) |
| | Mr. Juarez believe it was unsafe for the operators to open the machine door and operate the PVA 350 because they could get their hand stuck in the machine, but he did not have a chemistry background so he did not know whether the chemicals were harmful or not, ***and he relied on the training provided by PVA Inc. that he could put is head safely in the machine while programming the machine***.  (Ex 3 Depo. Juarez Volume I: 123:19-124:12) |
| | **Mr. Juarez had to place his head into the machine to see what portions of the circuit boards were covered because he would not be able to see into the machine and view the fine spray pattern by just looking through the window**.  (Ex 4 Depo. Juarez Volume II: 226:12-227:6) |
| | Mr. Juarez was trained in 2011 by PVA Inc. through a **hands on approach on how to use the PVA machine without any hazardous chemical training**.  (Ex. 4 Depo. Juarez Volume II232:1-7, 232: 23-25) |
| | Mr. Juarez would program the PVA 350, set up a circuit board in the machine, make sure the pattern is correct, do a dry run, do a wet run, |

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | make sure his head was inside to check the thickness of the layer, clean it up, rerun it again until they got the desired thickness and width.  The programmer has to fine tune the thickness of the conformal coating layer.  **To facilitate the fine tuning process, the machine has to switch to a bypass door so a programmer can put their head inside the machine to make sure the spraying head is parallel to the door**.  Then a programmer does a dry run, a wet run, and checks the thickness of the layer.  The layer has to be about 1.5 thousandths of an inch.  (Ex 3 Depo. Juarez Volume 1: 61:21-63:14)<br><br>**ADDITIONAL SAFETY MEASURES WERE INACTIVE, BYPASSED PURSUANT TO TRAINING BY PVA, AND NOT INCLUDED WITH EACH PVA 350**<br><br>•      The system debug dated 5-1-09 indicates the machine needed the material lines, fixed or replaced the **Lexon side**, valve/2 micrometer needs to be, and they needed **to add a camera cable in the back of the machine**.  Further, PVA Inc. presents no evidence the Lexon glass door was timely replaced or the camera cord was ever installed. (Exhibit 13, PVA 277)<br><br>•      **Not all PVA 350s have the alleged safety features including an exhaust fan/conveyer belt/an auto shut down/exhaust blower/flow monitoring, and cameras**.  Further, pursuant to training provided by PVA Inc., there are **bypass systems that must be utilized so programmers can complete their jobs**.  (Exhibit 17, PVA 63, 64, 219-220, 277, 279-280)<br><br><br>**BELOW PLAINTIFFS ASSERT SPECIFIC DISPUTES OF FACT REGARDING THE PVA 350'S** |

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | **MACHINE DEFECTS, INADEQUATE SAFETY MEASURES, AND THE VENTILATION SYSTEM.**<br><br>• The alleged PVA safety guide states: "Some machines are equipped with an exhaust fan. The exhaust fan is provided to exhaust fumes from the work area. The exhaust flange should be connected to an appropriate ducting system that is capable of receiving 150 CFM. Insufficient airflow through the exhaust system generates an error." However, **this manual was not provided in a hardcopy form to Space X based on the pictures PVA provided**. (Exhibit 29, PVA 63)<br><br>• The Exhaust Verification Process shows **some machines** have an auto shut down. (Exhibit 29, PVA 64)<br><br>• **A user has to visually inspect the position of a needle with respect to a calibration point and the user may have to physically reposition the needle**. (Exhibit 29, PVA 69)<br><br>• The PVA Product Overview indicated a number of safety items are not included on the PVA 350 automatically such as: conveyor type, passive programming camera, XY fiducial camera, exhaust blower, onboard computer, and flow monitoring. (Exhibit 29, PVA 220)<br><br>• There is a picture of the module, and there appears to be an insufficient exhaust system in the back of the machine. (Exhibit 29, PVA 4537, 4538, 4539, 4540, and 4542). |

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | • The April 11, 2012 conformal coating video with Space X boards utilized the same chemicals as used at Space X at PVA Inc. (See Exhibit 9 and Exhibit 22) |
| | • Exhibit 5, Video of the PVA 350 shows the machine is far too small for someone to use while wearing a ventilator. |
| | • Video Exhibit 11 shows the conformal coating process in a PVA machine in 2010. |
| | • Video Exhibit 8 shows all the different types of coating and also shows various designs that were not defective so it is great for comparison and explanation. |
| | • The comparison PVA 350 shows there is a **low exhaust and no conveyer** belt option on the PVA 350. (Exhibit 20) |
| | **PVA INC. PROVIDED TRAINING AND TRAINED MR. JUAREZ TO PUT HIS HEAD INSIDE THE PVA MACHINE WITHOUT ANY PROTECTIVE GEAR** |
| | Ruben Juarez attended training at PVA Inc., and PVA trained him to put his head inside the machine while spraying without any protective gear. He attended these trainings while working for EMI and Space X. (Exhibit 24, 4458-4462) |
| | **END USERS MUST PUT THEIR HEAD INTO THE PVA 350 MACHINE TO CHECK THE THICKNESS OF THE CHEMICAL COATING AND TO** |

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | **SPRAY THE PROPER AREAS OF THE CIRCUIT BOARD**<br><br>• The Wet Film Thickness Gauge shows how Mr. Juarez **had to measure the level of the fluid on the boards and is relevant to show he had to stick his head in the machine**. (Exhibit 23, PVA 1181 (Wet Film Thickness Gauge))<br><br>• Pursuant to email dated December 15, 2014 on 11:47 a.m. Bievenue emailed to Matupang indicating the **only way to know for sure the mix ratio is coming out of a spray valve is with flow monitors and if you don't have flow monitors you are "spraying blind."** (Exhibit 30) |
| 12.     Third, the machine cannot be operated until a machine safety check is performed which ensures that all safety features are working properly:  "The machine safety check ensures the workcell safety devices (emergency stop, door interlocks, light curtain, etc.) are operating properly.  During startup, the operator must enter the safety check and complete it successfully. Otherwise the machine halts all operations."<br><br>Urquhart Dec., PVA Manual and exhibits.<br><br>(Urquhart Dec., 3:2-6, 21, 96-99.) | 12. Disputed. The PVA 350 does a quick check at the start up or a "0" check.  However, PVA Inc. trained users to bypass this system with the bypass key. Further, a number of safety features are options that are not included with the PVA 350, inadequate, or were not operational.<br><br>• (Dec. Ruben Juarez)<br>• (Ex 3 Depo. Juarez Volume I: 87:22-88:1)<br>• (Ex 3 Depo. Juarez Volume 1: 89:14-18, 90:8-11)<br>• (Ex 3 Depo. Juarez Volume 1: 121:16-19)<br>• (Ex 3 Depo. Juarez Volume 1:    121:    22-    122:20, |

**STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**
**(Central District)**

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | 122:22-123:1)<br>• (Ex 3 Depo. Juarez Volume I: 123:19-124:12)<br>• (Ex 4 Depo. Juarez Volume II: 226:12-227:6)<br>• (Ex. 4 Depo. Juarez Volume II232:1-7, 232: 23-25)<br>• (Ex 3 Depo. Juarez Volume 1: 61:21-63:14)<br>• (Ex 3 Depo. Juarez Volume 1: 74:22-75:7)<br>• (Exhibit 13, PVA 277)<br>• (Exhibit 17, PVA 63, 64, 219-220, 277, 279-280)<br>• (Exhibit 29, PVA 63, 64, 69, 220)<br>• (PVA 4537, 4538, 4539, 4540, and 4542).<br>• Exhibit 5, Video of the PVA 350 shows the machine is far too small for someone to use while wearing a ventilator.<br>• • Video Exhibit 11 shows the conformal coating process in a PVA machine in 2010.<br>• • Video Exhibit 8 shows all the different types of coating and also shows various designs that were not defective so it is great for comparison and explanation.<br>• .(Exhibit 15, PVA 69)<br>• (Exhibit 20) |

362

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | • (Exhibit 21, PVA 4537, 4538, 4540) |
| | • (Exhibit 24, 4458-4462) |
| | • (Exhibit 23, PVA 1181 (Wet Film Thickness Gauge)) |
| | • (Exhibit 30) |
| | ***Specific factual references with citations are set forth below for the court's convenience***. |
| | **DEPOSITION TESTIMONY PORTRAYING THE DEFECTIVE DESIGN OF THE PVA 350 AND HOW END USERS WERE TRAINED TO USE THE MACHINE WITH THE DOOR OPEN BY PVA INC.** |
| | The PVA 350 was built so a programmer had to bypass the safety mechanisms to program the machine. (Ex 3 Depo. Juarez Volume I: 87:22-88:1) |
| | PVA Inc. trained Mr. Juarez to put his head in the PVA 350 machine and bypass the machine. (Ex 3 Depo. Juarez Volume 1: 89:14-18, 90:8-11) |
| | Part of Mr. Juarez' training by PVA Inc. was to bypass the safety switch to do the programming of the PVA 350 machine. (Ex 3 Depo. Juarez Volume 1: 121:16-19) |
| | Mr. Juarez was trained by PVA Inc. to open the door of the machine to perform programming job duties. (Ex 3 Depo. Juarez Volume 1: 121: 22-122:20, 122:22-123:1) |
| | Mr. Juarez believe it was unsafe for the operators to open the machine door and operate the PVA 350 because they could get their hand stuck in the machine, but he did not have a |

363

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | chemistry background so he did not know whether the chemicals were harmful or not, **and he relied on the training provided by PVA Inc. that he could put is head safely in the machine while programming the machine**.  (Ex 3 Depo. Juarez Volume I: 123:19-124:12)<br><br>Mr. Juarez had to place his head into the machine to see what portions of the circuit boards were covered because he would not be able to see into the machine and view the fine spray pattern by just looking through the window.  (Ex 4 Depo. Juarez Volume II: 226:12-227:6)<br><br>Mr. Juarez was trained in 2011 by PVA Inc. through a hands on approach on how to use the PVA machine without any hazardous chemical training.  (Ex. 4 Depo. Juarez Volume II232:1-7, 232: 23-25)<br><br>Mr. Juarez would program the PVA 350, set up a circuit board in the machine, make sure the pattern is correct, do a dry run, do a wet run, make sure his head was inside to check the thickness of the layer, clean it up, rerun it again until they got the desired thickness and width.  The programmer has to fine tune the thickness of the conformal coating layer.  To facilitate the fine tuning process, the machine has to switch to a bypass door so a programmer can put their head inside the machine to make sure the spraying head is parallel to the door.  Then a programmer does a dry run, a wet run, and checks the thickness of the layer.  The layer has to be about 1.5 thousandths of an inch. (Ex 3 Depo. Juarez Volume 1: 61:21-63:14)<br><br>The PVA 350 was programmed by a handheld controller, and it was a rudimentary interface.  (Ex 3 Depo. Juarez Volume 1: 74:22-75:7) |

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | **ADDITIONAL SAFETY MEASURES WERE INACTIVE, BYPASSED PURSUANT TO TRAINING BY PVA, AND NOT INCLUDED WITH EACH PVA 350**<br><br>• The system debug dated 5-1-09 indicates the machine needed the material lines, fixed or replaced the **Lexon side**, valve/2 micrometer needs to be, and they needed **to add a camera cable in the back of the machine**. Further, PVA Inc. presents no evidence the Lexon glass door was timely replaced or the camera cord was ever installed. (Exhibit 13, PVA 277)<br><br>• **Not all PVA 350s have the alleged safety features including an exhaust fan/conveyer belt/an auto shut down/exhaust blower/flow monitoring, and cameras**. Further, pursuant to training provided by PVA Inc., there are **bypass systems that must be utilized so programmers can complete their jobs**. (Exhibit 17, PVA 63, 64, 219-220, 277, 279-280)<br><br>**BELOW PLAINTIFFS ASSERT SPECIFIC DISPUTES OF FACT REGARDING THE PVA 350'S MACHINE DEFECTS, INADEQUATE SAFETY MEASURES, AND THE VENTILATION SYSTEM.**<br><br>• The alleged PVA safety guide states: "Some machines are equipped with an exhaust fan. The exhaust fan is provided to exhaust fumes from the work area. The exhaust flange should be connected to an appropriate ducting system that is capable of receiving 150 CFM. Insufficient airflow through the exhaust system generates an error." However, **this manual was not provided in a hardcopy form to** |

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | **Space X based on the pictures PVA provided**.  (Exhibit 29, PVA 63)

•      The Exhaust Verification Process shows **some machines** have an auto shut down.  (Exhibit 29, PVA 64)

•      **A user has to visually inspect the position of a needle with respect to a calibration point and the user may have to physically reposition the needle**.  (Exhibit 29, PVA 69)

•      The PVA Product Overview indicated a number of safety items are not included on the PVA 350 automatically such as: conveyor type, passive programming camera, XY fiducial camera, exhaust blower, onboard computer, and flow monitoring. (Exhibit 29, PVA 220)

•      There is a picture of the module, and there appears to be an insufficient exhaust system in the back of the machine. (Exhibit 29, PVA 4537, 4538, 4539, 4540, and 4542).

•      The April 11, 2012 conformal coating video with Space X boards utilized the same chemicals as used at Space X at PVA Inc. (See Exhibit 9 and Exhibit 22)

•      Exhibit 5, Video of the PVA 350 shows the machine is far too small for someone to use while wearing a ventilator.

•      Video Exhibit 11 shows the conformal coating process in a PVA machine in 2010.

•      Video Exhibit 8 shows all the |

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | different types of coating and also shows various designs that were not defective so it is great for comparison and explanation.<br><br>•      The comparison PVA 350 shows there is a **low exhaust and no conveyer** belt option on the PVA 350. (Exhibit 20)<br><br>**PVA INC. PROVIDED TRAINING AND TRAINED MR. JUAREZ TO PUT HIS HEAD INSIDE THE PVA MACHINE WITHOUT ANY PROTECTIVE GEAR**<br><br>Ruben Juarez attended training at PVA Inc., and PVA trained him to put his head inside the machine while spraying without any protective gear. He attended these trainings while working for EMI and Space X. (Exhibit 24, 4458-4462)<br><br>**END USERS MUST PUT THEIR HEAD INTO THE PVA 350 MACHINE TO CHECK THE THICKNESS OF THE CHEMICAL COATING AND TO SPRAY THE PROPER AREAS OF THE CIRCUIT BOARD**<br><br>•      The Wet Film Thickness Gauge shows how Mr. Juarez **had to measure the level of the fluid on the boards and is relevant to show he had to stick his head in the machine**. (Exhibit 23, PVA 1181 (Wet Film Thickness Gauge))<br><br>•      Pursuant to email dated December 15, 2014 on 11:47 a.m. Bievenue emailed to Matupang indicating the **only way to know for sure the mix ratio is coming out of a** |

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
|  | **spray valve is with flow monitors and if you don't have flow monitors you are "spraying blind."** (Exhibit 30) |
| 13.    The machine's manual lists all of these features and explicitly warn users not to "disable the safety features of the machine."<br><br>PVA Manual.<br><br>(Urquhart Dec., 96.) | 13. Disputed to the extent defendant infers that Mr. Juarez saw the manual as Mr. Juarez was never provided the manual. Further, the manual was not available in the computer connected to the PVA 350 because the PVA 350 is a standalone machine, the manual was not uploaded to the company network.<br><br>(Dec. Ruben Juarez)<br><br>Also, PVA provided photographs of the PVA 350 machine when it shipped and there is no hardcopy of the manual included in the delivery. Further, PVA Inc. specifically trained Mr. Juarez to bypass the safety systems so the machine could be utilized as it was designed defectively and could not be utilized otherwise.<br>• (Dec. Ruben Juarez)<br>• (Dec. Glen Stevick)<br>• (Ex 3 Depo. Juarez Volume 1:  91:3-93:24,  96:10-19, 98:20-21, 100<br>• (Ex 3 Depo. Juarez Volume I: 87:22-88:1)<br>• (Ex 3 Depo. Juarez Volume 1: 121:16-19)<br>• (Ex 3 Depo. Juarez Volume |

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | 1: 121: 22- 122:20, 122:22-123:1) |
| | • (Ex 3 Depo. Juarez Volume I: 123:19-124:12) |
| | • (Ex 4 Depo. Juarez Volume II: 226:12-227:6) |
| | • (Ex 3 Depo. Juarez Volume 1: 61:21-63:14) |
| | • (Exhibit 31, PVA 51) |
| | • (Exhibit 31, PVA30-32) |
| | • (Exhibit 31, PVA 40-41) |
| | • (Exhibit 15, PVA 69) |
| | • (Exhibit 16, PVA 0272) |
| | • (Exhibit 31, PVA 30-32, 51) |
| | • (Exhibit 29, PVA 63, 64, 69, 220) |
| | • (See Exhibit 9 and Exhibit 22) |
| | • Exhibit 5, Video of the PVA 350 shows the machine is far too small for someone to use while wearing a ventilator. |
| | • Video Exhibit 11 shows the conformal coating process in a PVA machine in 2010. |
| | • Video Exhibit 8 shows all the different types of coating and also shows various designs that were not defective so it is great for comparison and explanation. |
| | • . (Exhibit 15, PVA 69) |
| | • (Exhibit 20) |

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
|  | • (Exhibit 21, PVA 4537, 4538, 4540) |
|  | • (Exhibit 18, PVA 40) |
|  | • (Exhibit 35) |
|  | • (Exhibit 24, 4458-4462) |
|  | • (Exhibit 24) |
|  | • (Exhibit 23, PVA 1181 (Wet Film Thickness Gauge)) |
|  | • (Exhibit 30) |
|  | ***Specific factual references with citations are set forth below for the court's convenience***. |
|  | **DEPOSITION TESTIMONY SHOWING THERE IS DISPUTE AS TO THE CONTENTS OF THE PVA MANUAL, THE SAFETY OF THE PVA 350, THE DEFECTS OF THE PVA 350, AND PVA INC.'S TRAINING** |
|  | Mr. Juarez never read the manual for the PVA 350 because it was not available to him, but he was trained by PVA Inc. on how to use the PVA machines, and at these trainings PVA Inc. never told Mr. Juarez to review any manual. (Ex 3 Depo. Juarez Volume 1: 91:3-93:24, 96:10-19, 98:20-21, 100) |
|  | The PVA 350 was built so a programmer had to bypass the safety mechanisms to program the machine. (Ex 3 Depo. Juarez Volume I: 87:22-88:1) |
|  | PVA Inc. trained Mr. Juarez to put his head in the PVA 350 machine and bypass the machine. (Ex 3 Depo. Juarez Volume 1: 89:14-18, 90:8-11) |

**STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT (Central District)**

| **MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS** | **RESPONSE TO OPPOSITION** |
|---|---|
| | Part of Mr. Juarez' training by PVA Inc. was to bypass the safety switch to do the programming of the PVA 350 machine.  (Ex 3 Depo. Juarez Volume 1: 121:16-19) |
| | Mr. Juarez was trained by PVA Inc. to open the door of the machine to perform programming job duties.  (Ex 3 Depo. Juarez Volume 1: 121: 22-122:20, 122:22-123:1) |
| | Mr. Juarez believe it was unsafe for the operators to open the machine door and operate the PVA 350 because they could get their hand stuck in the machine, but he did not have a chemistry background so he did not know whether the chemicals were harmful or not, ***and he relied on the training provided by PVA Inc. that he could put is head safely in the machine while programming the machine***.  (Ex 3 Depo. Juarez Volume I: 123:19-124:12) |
| | Mr. Juarez had to place his head into the machine to see what portions of the circuit boards were covered because he would not be able to see into the machine and view the fine spray pattern by just looking through the window.  (Ex 4 Depo. Juarez Volume II: 226:12-227:6) |
| | Mr. Juarez was trained in 2011 by PVA Inc. through a hands on approach on how to use the PVA machine without any hazardous chemical training.  (Ex. 4 Depo. Juarez Volume II232:1-7, 232: 23-25) |
| | Mr. Juarez would program the PVA 350, set up a circuit board in the machine, make sure the pattern is correct, do a dry run, do a wet run, make sure his head was inside to check the thickness of the layer, clean it up, rerun it again until they got the desired thickness and width.  The programmer has to fine tune the thickness of the conformal coating |

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | layer.  To facilitate the fine tuning process, the machine has to switch to a bypass door so a programmer can put their head inside the machine to make sure the spraying head is parallel to the door.  Then a programmer does a dry run, a wet run, and checks the thickness of the layer.  The layer has to be about 1.5 thousandths of an inch. (Ex 3 Depo. Juarez Volume 1: 61:21-63:14)

The PVA 350 was programmed by a handheld controller, and it was a rudimentary interface.  (Ex 3 Depo. Juarez Volume 1: 74:22-75:7)


**BELOW ARE FACTUAL ALLEGATIONS REGARDING THE MANUAL NOT BEING PRODUCED AND PVA MANUAL BEING INEFFECTIVE AND INSUFFICIENT**

•      PVA specifically indicated the manual was for production and **operators not technical personnel, but it might be "useful for introduction or training**." (Exhibit 31, PVA 51)

•      The manual was **only produced electronically**.  (No hardcopy.) (Exhibit 31, PVA30-32)

•      The Operations and Maintenance manual **does not warn to wear a face mask or protection** from any inhalants.  (Exhibit 31, PVA 40-41)

•      The manual indicates the PVA machines require that end users must **visually inspect the position of the needle with response to a calibration point and physically reposition the** |

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | **needle.** (Exhibit 15, PVA 69)<br><br>• The Final Shipment Sign-Off does not indicate the operating manual was sent to Space X only machine photos were taken. Also, there is an issue of facts as to whether the **exhaust switch was included.** (Exhibit 16, PVA 0272)<br><br>• The PVA manual was not **physically produced and there was no requirement to review it**. (Exhibit 31, PVA 30-32, 51)<br><br>**BELOW PLAINTIFFS ASSERT SPECIFIC DISPUTES OF FACT REGARDING THE PVA 350'S MACHINE DEFECTS, INADEQUATE SAFETY MEASURES, AND THE VENTILATION SYSTEM.**<br><br>• The alleged PVA safety guide states: "Some machines are equipped with an exhaust fan. The exhaust fan is provided to exhaust fumes from the work area. The exhaust flange should be connected to an appropriate ducting system that is capable of receiving 150 CFM. Insufficient airflow through the exhaust system generates an error." However, **this manual was not provided in a hardcopy form to Space X based on the pictures PVA provided**. (Exhibit 29, PVA 63)<br><br>• The Exhaust Verification Process shows **some machines** have an auto shut down. (Exhibit 29, PVA 64)<br><br>• **A user has to visually inspect the position of a needle with respect to a calibration point and the user** |

BALABAN & SPIELBERGER LLP<br>11999 SAN VICENTE BOULEVARD, SUITE 345<br>LOS ANGELES, CALIFORNIA 90049

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | **may have to physically reposition the needle**.  (Exhibit 29, PVA 69)

•      The PVA Product Overview indicated a number of safety items are not included on the PVA 350 automatically such as: conveyor type, passive programming camera, XY fiducial camera, exhaust blower, onboard computer, and flow monitoring. (Exhibit 29, PVA 220)

•      There is a picture of the module, and there appears to be an insufficient exhaust system in the back of the machine. (Exhibit 29, PVA 4537, 4538, 4539, 4540, and 4542).

•      The April 11, 2012 conformal coating video with Space X boards utilized the same chemicals as used at Space X at PVA Inc. (See Exhibit 9 and Exhibit 22)

•      Exhibit 5, Video of the PVA 350 shows the machine is far too small for someone to use while wearing a ventilator.

•      Video Exhibit 11 shows the conformal coating process in a PVA machine in 2010.

•      Video Exhibit 8 shows all the different types of coating and also shows various designs that were not defective so it is great for comparison and explanation.

•      The comparison PVA 350 shows there is a **low exhaust and no conveyer** belt option on the PVA 350. (Exhibit 20)

**PVA INC. PROVIDED TRAINING** |

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | **AND TRAINED MR. JUAREZ TO PUT HIS HEAD INSIDE THE PVA MACHINE WITHOUT ANY PROTECTIVE GEAR**<br><br>Ruben Juarez attended training at PVA Inc., and PVA trained him to put his head inside the machine while spraying without any protective gear. He attended these trainings while working for EMI and Space X. (Exhibit 24, 4458-4462)<br><br>**END USERS MUST PUT THEIR HEAD INTO THE PVA 350 MACHINE TO CHECK THE THICKNESS OF THE CHEMICAL COATING AND TO SPRAY THE PROPER AREAS OF THE CIRCUIT BOARD**<br><br>•    The Wet Film Thickness Gauge shows how Mr. Juarez __had to measure the level of the fluid on the boards and is relevant to show he had to stick his head in the machine__. (Exhibit 23, PVA 1181 (Wet Film Thickness Gauge))<br><br>•    Pursuant to email dated December 15, 2014 on 11:47 a.m. Bievenue emailed to Matupang indicating the __only way to know for sure the mix ratio is coming out of a spray valve is with flow monitors and if you don't have flow monitors you are "spraying blind."__ (Exhibit 30) |
| 14.    It also states: "NOTE: The safety features should NEVER be bypassed, disabled or tampered with.  Precision Valve & Automation, Inc. is not responsible for any | 14. Disputed to the extent defendant infers that Mr. Juarez saw the manual as Mr. Juarez was never provided the manual. Further, |

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| damages incurred, mechanical or human, because of alteration or destruction of any safety features." <br><br> PVA Manual. <br><br> (Urquhart Dec., 74, 96.) | the manual was not available in the computer connected to the PVA 350 because the PVA 350 is a standalone machine, the manual was not uploaded to the company network. <br><br> (Dec. Ruben Juarez) <br><br> Mr. Juarez never read the manual for the PVA 350 because it was not available to him, but he was trained by PVA Inc. on how to use the PVA machines, and at these trainings PVA Inc. never told Mr. Juarez to review any manual.  (Ex 3 Depo. Juarez Volume 1: 91:3-93:24, 96:10-19, 98:20-21, 100 <br><br> Also, PVA provided photographs of the PVA 350 machine when it shipped and there is no hardcopy of the manual included in the delivery. Further, PVA Inc. specifically trained Mr. Juarez to bypass the safety systems so the machine could be utilized as it was designed defectively and could not be utilized otherwise. <br> • (Dec. Glen Stevick) <br> • (Dec. Ruben Juarez) <br> • (Ex 3 Depo. Juarez Volume 1: 91:3-93:24, 96:10-19, 98:20-21, 100) <br> • (Ex 3 Depo. Juarez Volume I: 87:22-88:1) <br> • (Ex 3 Depo. Juarez Volume 1: 89:14-18, 90:8-11) <br> • (Ex 3 Depo. Juarez Volume 1: 121:16-19) |

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

**STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**
(Central District)

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | • (Ex 3 Depo. Juarez Volume 1: 121: 22- 122:20, 122:22-123:1) |
| | • (Ex 3 Depo. Juarez Volume I: 123:19-124:12) |
| | • (Ex 4 Depo. Juarez Volume II: 226:12-227:6) |
| | • (Ex. 4 Depo. Juarez Volume II232:1-7, 232: 23-25) |
| | • (Ex 3 Depo. Juarez Volume 1: 61:21-63:14) |
| | • (Exhibit 31, PVA 51) |
| | • (Exhibit 31, PVA30-32) |
| | • (Exhibit 31, PVA 40-41) |
| | • (Exhibit 15, PVA 69) |
| | • (Exhibit 16, PVA 0272) |
| | • (Exhibit 31, PVA 30-32, 51) |
| | • (Exhibit 29, PVA 63, 64, 69, 220) |
| | • (See Exhibit 9 and Exhibit 22) |
| | • Exhibit 5, Video of the PVA 350 shows the machine is far too small for someone to use while wearing a ventilator. |
| | • Video Exhibit 11 shows the conformal coating process in a PVA machine in 2010. |
| | • Video Exhibit 8 shows all the different types of coating and also shows various designs that were not defective so it is great for comparison and explanation. |
| | • (Exhibit 15, PVA 69) |
| | • (Exhibit 20) |
| | • (Exhibit 21, PVA 4537, 4538, 4540) |
| | • (Exhibit 18, PVA 40) |
| | • (Exhibit 35) |

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**
**(Central District)**

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | • (Exhibit 24, 4458-4462)<br>• (Exhibit 24)<br>• (Exhibit 23, PVA 1181 (Wet Film Thickness Gauge))<br>• (Exhibit 30)<br>***Specific factual references with citations are set forth below for the court's convenience.***<br><br>**PORTRAYING THE DEFECTIVE DESIGN OF THE PVA 350 AND HOW END USERS WERE TRAINED TO USE THE MACHINE WITH THE DOOR OPEN BY PVA INC.**<br><br>Mr. Juarez never read the manual for the PVA 350 because it was not available to him, but he was trained by PVA Inc. on how to use the PVA machines, and at these trainings PVA Inc. never told Mr. Juarez to review any manual.  (Ex 3 Depo. Juarez Volume 1: 91:3-93:24, 96:10-19, 98:20-21, 100)<br><br>The PVA 350 was built so a programmer had to bypass the safety mechanisms to program the machine. (Ex 3 Depo. Juarez Volume I: 87:22-88:1)<br><br>PVA Inc. trained Mr. Juarez to put his head in the PVA 350 machine and bypass the machine.  (Ex 3 Depo. Juarez Volume 1: 89:14-18, 90:8-11)<br><br>Part of Mr. Juarez' training by PVA Inc. was to bypass the safety switch to do the programming of the PVA 350 machine.  (Ex 3 Depo. Juarez Volume 1: 121:16-19) |

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

**STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT (Central District)**

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | Mr. Juarez was trained by PVA Inc. to open the door of the machine to perform programming job duties.  (Ex 3 Depo. Juarez Volume 1: 121: 22-122:20, 122:22-123:1)

Mr. Juarez believe it was unsafe for the operators to open the machine door and operate the PVA 350 because they could get their hand stuck in the machine, but he did not have a chemistry background so he did not know whether the chemicals were harmful or not, ***and he relied on the training provided by PVA Inc. that he could put is head safely in the machine while programming the machine***.  (Ex 3 Depo. Juarez Volume I: 123:19-124:12)

Mr. Juarez had to place his head into the machine to see what portions of the circuit boards were covered because he would not be able to see into the machine and view the fine spray pattern by just looking through the window.  (Ex 4 Depo. Juarez Volume II: 226:12-227:6)

Mr. Juarez was trained in 2011 by PVA Inc. through a hands on approach on how to use the PVA machine without any hazardous chemical training.  (Ex. 4 Depo. Juarez Volume II232:1-7, 232: 23-25)

Mr. Juarez would program the PVA 350, set up a circuit board in the machine, make sure the pattern is correct, do a dry run, do a wet run, make sure his head was inside to check the thickness of the layer, clean it up, rerun it again until they got the desired thickness and width.  The programmer has to fine tune the thickness of the conformal coating layer.  To facilitate the fine tuning process, the machine has to switch to a bypass door so a programmer can put their head inside the machine to make sure the spraying head is parallel to the door.  Then a programmer does a |

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

379

**STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**
**(Central District)**

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | dry run, a wet run, and checks the thickness of the layer.  The layer has to be about 1.5 thousandths of an inch. (Ex 3 Depo. Juarez Volume 1: 61:21-63:14)

The PVA 350 was programmed by a handheld controller, and it was a rudimentary interface.  (Ex 3 Depo. Juarez Volume 1: 74:22-75:7)

**BELOW ARE FACTUAL ALLEGATIONS REGARDING THE MANUAL NOT BEING PRODUCED AND PVA MANUAL BEING INEFFECTIVE AND INSUFFICIENT**

•     PVA specifically indicated the manual was for production and **operators not technical personnel, but it might be "useful for introduction or training**." (Exhibit 31, PVA 51)

•     The manual was **only produced electronically**.  (No hardcopy.) (Exhibit 31, PVA30-32)

•     The Operations and Maintenance manual **does not warn to wear a face mask or protection** from any inhalants.  (Exhibit 31, PVA 40-41)

•     The manual indicates the PVA machines require that end users must **visually inspect the position of the needle with response to a calibration point and physically reposition the needle.**  (Exhibit 15, PVA 69)

•     The Final Shipment Sign-Off does not indicate the operating manual was sent to Space X only machine photos were taken.  Also, there is an |

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

**STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**
**(Central District)**

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | issue of facts as to whether the **exhaust switch was included.** (Exhibit 16, PVA 0272) |

• The PVA manual was not **physically produced and there was no requirement to review it**. (Exhibit 31, PVA 30-32, 51)

**BELOW PLAINTIFFS ASSERT SPECIFIC DISPUTES OF FACT REGARDING THE PVA 350'S MACHINE DEFECTS, INADEQUATE SAFETY MEASURES, AND THE VENTILATION SYSTEM.**

• The alleged PVA safety guide states: "Some machines are equipped with an exhaust fan.  The exhaust fan is provided to exhaust fumes from the work area.  The exhaust flange should be connected to an appropriate ducting system that is capable of receiving 150 CFM.  Insufficient airflow through the exhaust system generates an error." However, **this manual was not provided in a hardcopy form to Space X based on the pictures PVA provided**.  (Exhibit 29, PVA 63)

• The Exhaust Verification Process shows **some machines** have an auto shut down.  (Exhibit 29, PVA 64)

• **A user has to visually inspect the position of a needle with respect to a calibration point and the user may have to physically reposition the needle**.  (Exhibit 29, PVA 69)

• The PVA Product Overview indicated a number of safety items are not included on the PVA 350

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | automatically such as: conveyor type, passive programming camera, XY fiducial camera, exhaust blower, onboard computer, and flow monitoring. (Exhibit 29, PVA 220)<br><br>• There is a picture of the module, and there appears to be an insufficient exhaust system in the back of the machine. (Exhibit 29, PVA 4537, 4538, 4539, 4540, and 4542).<br><br>• The April 11, 2012 conformal coating video with Space X boards utilized the same chemicals as used at Space X at PVA Inc. (See Exhibit 9 and Exhibit 22)<br><br>• Exhibit 5, Video of the PVA 350 shows the machine is far too small for someone to use while wearing a ventilator.<br><br>• Video Exhibit 11 shows the conformal coating process in a PVA machine in 2010.<br><br>• Video Exhibit 8 shows all the different types of coating and also shows various designs that were not defective so it is great for comparison and explanation.<br><br>• The comparison PVA 350 shows there is a **low exhaust and no conveyer** belt option on the PVA 350. (Exhibit 20)<br><br>**PVA INC. PROVIDED TRAINING AND TRAINED MR. JUAREZ TO PUT HIS HEAD INSIDE THE PVA MACHINE WITHOUT ANY PROTECTIVE GEAR**<br><br>Ruben Juarez attended training at |

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

**STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**
**(Central District)**

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | PVA Inc., and PVA trained him to put his head inside the machine while spraying without any protective gear. He attended these trainings while working for EMI and Space X. (Exhibit 24, 4458-4462)<br><br>**END USERS MUST PUT THEIR HEAD INTO THE PVA 350 MACHINE TO CHECK THE THICKNESS OF THE CHEMICAL COATING AND TO SPRAY THE PROPER AREAS OF THE CIRCUIT BOARD**<br><br>• The Wet Film Thickness Gauge shows how Mr. Juarez **had to measure the level of the fluid on the boards and is relevant to show he had to stick his head in the machine**. (Exhibit 23, PVA 1181 (Wet Film Thickness Gauge))<br><br>• Pursuant to email dated December 15, 2014 on 11:47 a.m. Bievenue emailed to Matupang indicating the **only way to know for sure the mix ratio is coming out of a spray valve is with flow monitors and if you don't have flow monitors you are "spraying blind."** (Exhibit 30) |
| 15. "Operation of your workcell involves, air pressure, electrical power and mechanical devices *and the use of Hazardous materials*.... There are no dangerous materials or chemicals used in the operation of the machine *except for the required application material*. The application material *should include a Material Safety Data Sheet (MSDS)*, which specifies known dangers and toxicity."<br><br>PVA Manual. | 15. Disputed to the extent defendant infers that Mr. Juarez saw the manual as Mr. Juarez was never provided the manual. Further, the manual was not available in the computer connected to the PVA 350 because the PVA 350 is a standalone machine, the manual was not uploaded to the company network. |

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

| **MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS** | **RESPONSE TO OPPOSITION** |
|---|---|
| (Urquhart Dec., 86-87 (emphasis added).). | (Dec. Ruben Juarez) Also, PVA provided photographs of the PVA 350 machine when it shipped and there is no hardcopy of the manual included in the delivery. Further, PVA Inc. specifically trained Mr. Juarez to bypass the safety systems so the machine could be utilized as it was designed defectively and could not be utilized otherwise. <ul><li>(Dec. Glen Stevick)</li><li>(Dec. Ruben Juarez)</li><li>(Ex 3 Depo. Juarez Volume 1: 91:3-93:24, 96:10-19, 98:20-21, 100)</li><li>(Ex 3 Depo. Juarez Volume I: 87:22-88:1)</li><li>(Ex 3 Depo. Juarez Volume 1: 89:14-18, 90:8-11)</li><li>(Ex 3 Depo. Juarez Volume 1: 121:16-19)</li><li>(Ex 3 Depo. Juarez Volume 1: 121: 22- 122:20, 122:22-123:1)</li><li>(Ex 3 Depo. Juarez Volume I: 123:19-124:12)</li><li>(Ex 4 Depo. Juarez Volume II: 226:12-227:6)</li><li>(Ex. 4 Depo. Juarez Volume II232:1-7, 232: 23-25)</li><li>(Ex 3 Depo. Juarez Volume 1: 61:21-63:14)</li><li>(Exhibit 31, PVA 51)</li><li>(Exhibit 31, PVA30-32)</li><li>(Exhibit 31, PVA 40-41)</li><li>(Exhibit 15, PVA 69)</li></ul> |

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | • (Exhibit 16, PVA 0272) |
| | • (Exhibit 31, PVA 30-32, 51) |
| | • (Exhibit 29, PVA 63, 64, 69, 220) |
| | • (See Exhibit 9 and Exhibit 22) |
| | • Exhibit 5, Video of the PVA 350 shows the machine is far too small for someone to use while wearing a ventilator. |
| | • Video Exhibit 11 shows the conformal coating process in a PVA machine in 2010. |
| | • Video Exhibit 8 shows all the different types of coating and also shows various designs that were not defective so it is great for comparison and explanation. |
| | • (Exhibit 15, PVA 69) |
| | • (Exhibit 20) |
| | • (Exhibit 21, PVA 4537, 4538, 4540) |
| | • (Exhibit 18, PVA 40) |
| | • (Exhibit 35) |
| | • (Exhibit 24, 4458-4462) |
| | • (Exhibit 24) |
| | • (Exhibit 23, PVA 1181 (Wet Film Thickness Gauge)) |
| | • (Exhibit 30) |
| | • (See Exhibit 22, PVA 4463-4481) |

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | • (See Exhibit 9 and Exhibit 22) |
| | • (Exhibit 22, PVA 23 and 24) |
| | • (Exhibit 22 PVA 4449-4452) |
| | • (Exhibit 22 PVA 4463-4481) |
| | • (Exhibit 22) |

*__Specific factual references with citations are set forth below for the court's convenience__*.

**FAILURE TO WARN/WARNING ON MACHINE IS REGARDING HAZARD OF VOLTAGE NOT CHEMICALS**

•      The PVA Manual does not warn users to use a face mask or ventilator. (Exhibit 18, PVA 40)

•      The warning on the sides states, "WARNING, Hazardous voltage. Power shall be disconnected before enclosure is opened.  Enclosure shall be closed before power is restored." (Exhibit 35)

**DEPOSITION TESTIMONY REGARDING TRAINING RECEIVED BY MR. JUAREZ AND INADEQUATE WARNINGS.**

Mr. Juarez never read the manual for the PVA 350 because it was not available to him, but he was trained by PVA Inc. on how to use the PVA machines, and at these trainings PVA Inc. never told Mr. Juarez to review

**STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT (Central District)**

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | any manual.  (Ex 3 Depo. Juarez Volume 1: 91:3-93:24, 96:10-19, 98:20-21, 100:4-9) |
| | Mr. Juarez never called the machine a work cell.  (Ex 4 Depo. Juarez Volume II: 204 :4-5) |
| | Mr. Juarez was never given any written instructions with the incoming Humiseal products that were delivered to Space X.  (Ex 4 Depo. Juarez Volume II: 220:5-11) |
| | Mr. Juarez indicated he does not have a chemistry background at his deposition on March 8, 2018.   (Ex 3 Depo. Juarez Volume 1: 55:21-56:5) |
| | Mr. Juarez was trained by PVA Inc. to open the door of the machine to perform programming job duties.  (Ex 3 Depo. Juarez Volume 1: 121: 22-122:20, 122:22-123:1) |
| | Mr. Juarez believed it was unsafe for the operators to open the machine door and operate the PVA 350 because they could get their hand stuck in the machine, Additionally, he did not have a chemistry background so he did not know whether the chemicals were harmful or not, and he relied on the training provided by PVA Inc. that he could put is head safely in the machine while programming the machine.  (Ex 3 Depo. Juarez Volume I: 123:19-124:12) |
| | **BELOW ARE FACTUAL ALLEGATIONS REGARDING THE MANUAL NOT BEING PRODUCED AND PVA MANUAL BEING INEFFECTIVE AND INSUFFICIENT** |
| | • PVA specifically indicated the manual was for production and **operators not technical personnel,** |

387

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | but it might be "useful for introduction or training." (Exhibit 31, PVA 51)

• The manual was **only produced electronically**.  (No hardcopy.) (Exhibit 31, PVA30-32)

• The Operations and Maintenance manual **does not warn to wear a face mask or protection** from any inhalants.  (Exhibit 31, PVA 40-41)

• The manual indicates the PVA machines require that end users must **visually inspect the position of the needle with response to a calibration point and physically reposition the needle.**  (Exhibit 15, PVA 69)

• The Final Shipment Sign-Off does not indicate the operating manual was sent to Space X only machine photos were taken.  Also, there is an issue of facts as to whether the **exhaust switch was included.** (Exhibit 16, PVA 0272)

• The PVA manual was not **physically produced and there was no requirement to review it**. (Exhibit 31, PVA 30-32, 51)

**BELOW PLAINTIFFS ASSERT SPECIFIC DISPUTES OF FACT REGARDING THE PVA 350'S MACHINE DEFECTS, INADEQUATE SAFETY MEASURES, AND THE VENTILATION SYSTEM.**

• The alleged PVA safety guide states: "Some machines are equipped with an exhaust fan.  The exhaust fan |

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | is provided to exhaust fumes from the work area. The exhaust flange should be connected to an appropriate ducting system that is capable of receiving 150 CFM. Insufficient airflow through the exhaust system generates an error." However, **this manual was not provided in a hardcopy form to Space X based on the pictures PVA provided**. (Exhibit 29, PVA 63)<br><br>• The Exhaust Verification Process shows **some machines** have an auto shut down. (Exhibit 29, PVA 64)<br><br>• **A user has to visually inspect the position of a needle with respect to a calibration point and the user may have to physically reposition the needle**. (Exhibit 29, PVA 69)<br><br>• The PVA Product Overview indicated a number of safety items are not included on the PVA 350 automatically such as: conveyor type, passive programming camera, XY fiducial camera, exhaust blower, onboard computer, and flow monitoring. (Exhibit 29, PVA 220)<br><br>• There is a picture of the module, and there appears to be an insufficient exhaust system in the back of the machine. (Exhibit 29, PVA 4537, 4538, 4539, 4540, and 4542).<br><br>• The April 11, 2012 conformal coating video with Space X boards utilized the same chemicals as used at Space X at PVA Inc. (See Exhibit 9 and Exhibit 22)<br><br>• Exhibit 5, Video of the PVA 350 shows the machine is far too small |

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

| **MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS** | **RESPONSE TO OPPOSITION** |
|---|---|
| | for someone to use while wearing a ventilator. |
| | • Video Exhibit 11 shows the conformal coating process in a PVA machine in 2010. |
| | • Video Exhibit 8 shows all the different types of coating and also shows various designs that were not defective so it is great for comparison and explanation. |
| | • The comparison PVA 350 shows there is a **low exhaust and no conveyer** belt option on the PVA 350. (Exhibit 20) |
| | **PVA INC. PROVIDED TRAINING AND TRAINED MR. JUAREZ TO PUT HIS HEAD INSIDE THE PVA MACHINE WITHOUT ANY PROTECTIVE GEAR** |
| | Ruben Juarez attended training at PVA Inc., and PVA trained him to put his head inside the machine while spraying without any protective gear. He attended these trainings while working for EMI and Space X. (Exhibit 24, 4458-4462) |
| | **END USERS MUST PUT THEIR HEAD INTO THE PVA 350 MACHINE TO CHECK THE THICKNESS OF THE CHEMICAL COATING AND TO SPRAY THE PROPER AREAS OF THE CIRCUIT BOARD** |
| | • The Wet Film Thickness Gauge shows how Mr. Juarez **had to measure the level of the fluid on the boards and is relevant to show he had to stick his head in the machine**. |

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | (Exhibit 23, PVA 1181 (Wet Film Thickness Gauge))

•  Pursuant to email dated December 15, 2014 on 11:47 a.m. Bievenue emailed to Matupang indicating the **only way to know for sure the mix ratio is coming out of a spray valve is with flow monitors and if you don't have flow monitors you are "spraying blind."** (Exhibit 30)

***PVA HAD KNOWLEDGE OF THE CHEMICALS BEING UTILIZED BY SPACE X AND WAS INVOLVED IN SUBSEQUENT MODIFICATIONS TO THE MACHINE INVOLVING VARIOUS CHEMICALS***

•  PVA Inc was aware of the chemicals being utilized with the PVA 350. including the **transition to Arathane**. (See Exhibit 22, PVA 4463-4481)

•  The April 11, 2012 conformal coating video with Space X boards utilized the **same chemicals as used at Space X at PVA Inc**. (See Exhibit 9 and Exhibit 22)

•  On September 19, 2013, PVA Inc. made further modifications to the subject machine including reworking the dispense system on the machine to connect one cartridge to the one gallon tank for "**automatic solvent flush of Arathane 5705**." (Exhibit 22, PVA 23 and 24) |

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT (Central District)

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | • On July 30, 2009, PVA/Andrew Haraburda serviced the W3267 (subject PVA 350 machine) and this description of the work/changes included:  adding solvent flush option (6 oz cartridge, 3 way ball valve, O-ISPSI Precision Regulator, which shows **PVA Inc. was continuing to modify and upgrade the machine. Then PVA Inc. specifically recommended Space X alter the solvent to a different solvent stating "Space X may need to use a different solvent (i.e. Xylene)."** (Exhibit 22 PVA 4449-4452)

• Pursuant to email chain dated March 13, 2012 Jonathan Urquhart **(PVA) was aware of Space X's use of Arathane 5750**   The email specifically states, "I think David has spoken to you **about our customer Space** X.  They build full blown rocket ships.  **They plan on pre-mixing this material part A part B and a 3rd part, thinner in small batches apply to board and the purge system** because of shelf life once mixed.  **Sounds screwy to me.**"  They were looking for a demo on the 27th of March.  (Exhibit 22, PVA 4463-4481)

• Pursuant to email dated March 15, 2012 to Jonathan Urquhart, PVA was preparing a demo on the PVA 650 and **PVA were working with the same chemical materials Space X** |

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

392

**STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**
(Central District)

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | **was utilizing, but PVA did not want Space X to know and PVA indicated they were going to convey to Space X that the materials were similar, but not the exact same**.  .  (Exhibit 22, PVA 4463-4481)

•      Pursuant to email dated March 30, 2012, the test at PVA Inc. was rescheduled to **4-11-12 to view the** 3 part mixing process. (Exhibit 22, PVA 4463-4481)

•      Pursuant to email from David Gomez to Johnathan (PVA) Urquhart dated May 11, 2012 at 2:11 p.m., Space X talked about retrofitting the PVA 350, and then subsequently there was confirmation from Jon indicating **Space X wanted to duplicate what was done during the visit.**  (Exhibit 22, PVA 4463-4481)

•      Jon Urquart performed **the demo for Space X on 4-11-12**. (Exhibit 22, PVA 4463-4481)

•      Email dated December 2, 2014 at 9:03 a.m. Mr. Urquhart (PVA) indicated to Mr. Matupang there would be 2 demos including a coating with **Arathane 2 part mix and spray and dispensing using a 650 or Delta 6 with board head**, JDX (underfill), SVX (past), and FC100 (solder |

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

393

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | mask). (Exhibit 22)<br><br>• On November 17, 2014, Mr. Urquhart (PVA) asked is Space X wanted to mix on the fly with **5750**?  (Exhibit 22)<br><br>• On January 9, 2013 at 10:38 a.m. David Gomez (PVA) emailed Brian Ignaut (Space X) **doing follow up on the "two part material application project you were working on and kindly presented us with**." There was inquiry as to whether there were any developments in the first few months of 2013. (Exhibit 22)<br><br>• On December 3, 2012 at 12:01 PM David Gomez (PVA) wrote Scott Abarta asking for the **two part material brand and part # as well as any MSDS and data sheets**.  Also, there was a request for a shot size and cycle time per part if possible. (Exhibit 22)<br><br>• On **September 10, 2013**, Mr. Gomez (PVA) indicated "they only want a 20 oz cartridge retainer & cap with spray & needle valve for the pre-mix material and 6oz cartridge retainer & cap **for the solvent, so it can flush the premixed material out right after doing a batch of boards**." Mr. Gomez indicated he was **familiar with the "fluid delivery line" because he had done it "several times."** He also indicated they were "**not there yet**" for the two part |

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | **coating spraying**.  (Exhibit 22) |
| | •       On September 9, 2013, Richard Bievenue (PVA) wrote Jonathan Connelly (ccing David Filbert, David Gomez, and Michael R. Leonard) indicating that **he spoke with Duc Phan (Space X) about the 350 machine and how Space X was switching to utilizing a 2 part material including Arathane 5750.  There was discussion about premising the solvents and flushing the solvent valves**.  Also, there was interest regarding a 2 component meter mix system. (Exhibit 22) |
| | •       On September 18, 2013 at 12:41 p.m., **Mr. Gomez (PVA) indicated that this is not the first time they have done a two part coating system and he thought they were putting to many resources into this. The email specifically references Arathane** 5750. (Exhibit 22) |
| | •       On September 13, 2013, from Duc Phan (Space X) to Jonathan Connelly, Michael R. Leonard (ccing Richard Bievenue and David Filbert) explained the process with pictures. **Specifically, he indicated that Space X removed the hoses from the spray dispensing head and connected the hoses from the Arathane material and solvent to it.   He further explained when the Arathane material** |

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

| **MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS** | **RESPONSE TO OPPOSITION** |
|---|---|
| | **was not in use they vaped the solvent hose and connect the Arathane material hose to the other head just for a place holder.  He also explained that Arathane 5750 part A and B is mixed together and poured in the first reservoir and the second reservoir is the solvent use to thin out the mixed Arathane for spray requirement**.  (Exhibit 22) |
| | •      On September 13, 2013 at 6:07 a.m. Jonathan Connelly wrote Duc Phan (Space X). Michael R. Leonard and ccing Richard Bievenue and David Filbert inquiring about the process, requesting a picture, **and asking if the Arathane and the solvent was being run out of the cartridges mounted on the side of the machine**. (Exhibit 22) |
| | •      On September 10, 2013, Duc Phan (Space X)wrote Michael R. Leonard and Jonathan Connelly, **and there was a clear indication that Space X was using Arathane 5750 material with a 2 hour cure time, and they were concerned the operator would forget to purge and rinse the material when the job is done. They were looking to automate the process after coating**.  (Exhibit 22) |
| | o      The sales order dated September 25, 2013 indicated PVA job number SPCX2115 W3267 indicated **PVA was** |

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | **there to provide onsite support for Mechanical Electrical Programming Fluid Delivery.** (Exhibit 22)
| | o     The sales quotation dated September 19, 2013, stated that PVA was to "**rework the dispense system on machine serial number W3267 to connect one cartridge to (1) one gallon tank for automatic solvent flush of Arathane 5705**.  This was to include 1) all hoses and fittings needed to complete the integration, 2) pneumatic ball valve for automatic solvent flush, 3) hardware and software needed for integration, and one tank. Further, PVA was to travel to Space X to install the new auto solvent flush system. (Exhibit 22)
| | o     The purchase order dated September 24, 2013 issued to PVA and shipping to Space X on a Space X purchase order identified a supplier part number B72-01433 and **there is a full description of the work to be done including reworking the dispense system for an automatic flush of Arathane 5750** and in similar detail as stated above.  There is a separate purchase order for the travel expenditures. (Exhibit 22)
| | •     On July 21, 2014 at 6:48 p.m. Duc Phan (Space X) emailed Rex indicating the **current machine uses both Humiseal and Arathane and**

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | **there are separate spray valves for both material**.  They need the pendant purge button to work for both materials. (Exhibit 22)<br><br>•      PVA Inc. circulated diagram clearly states **Arathane**.  Additionally, there is a quote work sheet for the 3 way assembly, pressure tank, hoses, fittings, valves as well as programming and engineering. (Ex 22, PVA 340-347) |
| 16.      Juarez testified that when he worked at SpaceX he never looked at this manual or asked to look at this manual for the PVA 350.<br><br>Deposition of Ruben Juarez ("Juarez Depo.).<br><br>(Catalona Dec., 279:16, 291:17-18, 293:4-17.) | 16. Disputed to the extent defendant infers that Mr. Juarez saw the manual as Mr. Juarez was never provided the manual. Further, the manual was not available in the computer connected to the PVA 350 because the PVA 350 is a standalone machine, the manual was not uploaded to the company network.<br><br>(Dec. Ruben Juarez)<br><br>Also, PVA provided photographs of the PVA 350 machine when it shipped and there is no hardcopy of the manual included in the delivery. Further, PVA Inc. specifically trained Mr. Juarez to bypass the safety systems so the machine could be utilized as it was designed defectively and could not be utilized otherwise.<br>•  (Dec. Glen Stevick)<br>•  (Dec. Ruben Juarez)<br>•  (Ex 3 Depo. Juarez Volume |

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | 1:  91:3-93:24,  96:10-19, 98:20-21, 100:4-9)
• (Exhibit 31, PVA 51)
• (Exhibit 31, PVA30-32)
• (Exhibit 31, PVA 40-41)
• (Exhibit 15, PVA 69)
• (Exhibit 16, PVA 0272)
• (Exhibit  31,  PVA  30-32, 51)
***Specific factual references with citations are set forth below for the court's convenience regarding PVA Inc. inadequate training of Mr. Juarez and PVA Inc. failure to provide a hardcopy of the manual and sufficient warnings***.

**DEPOSITION TESTIMONY REGARDING PVA INC. NOT PROVIDING THE MANUAL AND PROVIDING INADEQUATE TRAINING**

Mr. Juarez never read the manual for the PVA 350 because it was not available to him, but he was trained by PVA Inc. on how to use the PVA machines, and at these trainings PVA Inc. never told Mr. Juarez to review any manual.  (Ex 3 Depo. Juarez Volume 1: 91:3-93:24, 96:10-19, 98:20-21, 100:4-9)

**BELOW ARE FACTUAL ALLEGATIONS REGARDING THE MANUAL NOT BEING PRODUCED AND PVA MANUAL BEING INEFFECTIVE AND INSUFFICIENT**

•      PVA specifically indicated the manual was for production and |

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | **operators not technical personnel, but it might be "useful for introduction or training**." (Exhibit 31, PVA 51)

•      The manual was **only produced electronically**.  (No hardcopy.) (Exhibit 31, PVA30-32)

•      The Operations and Maintenance manual **does not warn to wear a face mask or protection** from any inhalants.  (Exhibit 31, PVA 40-41)

•      The manual indicates the PVA machines require that end users must **visually inspect the position of the needle with response to a calibration point and physically reposition the needle.**  (Exhibit 15, PVA 69)

•      The Final Shipment Sign-Off does not indicate the operating manual was sent to Space X only machine photos were taken.  Also, there is an issue of facts as to whether the **exhaust switch was included.** (Exhibit 16, PVA 0272)

•      The PVA manual was not **physically produced and there was no requirement to review it**. (Exhibit 31, PVA 30-32, 51) |
| 17.      SpaceX is a designer and manufacturer of advanced rockets and spacecraft.

Declaration of Gregory Maxwell.

(Declaration of Gregory Maxwell ("Maxwell Dec."), 1:5-6.) | 17.  Undisputed. |

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| 18.   After purchasing the PVA 350 in 2009, SpaceX did not begin to use Humiseal and Arathane materials, which were not originally specified for the machine, until 2012 at the earliest.<br><br>Urquhart Dec., and exhibits; Declaration of David Hwang ("Hwang Dec.") and exhibits.<br><br>(Urquhart Dec., 3:15-17, 28, 63, 230; Hwang Dec., 2:6-12, 35-41.) | 18. Disputed.  Humiseal was being utilized before Mr. Juarez started working with Space X in 2010.<br><br>• (Dec. Christopher Mendoza, paragraph 2)<br>• (Exhibit 46)<br>• (Ex 3 Depo. Juarez Volume I: 113 :1-3)<br>• (Ex 4 Depo. Juarez Volume II: 224:14-17)<br>• (See Exhibit 22, PVA 4463-4481)<br>• (See Exhibit 9 and Exhibit 22)<br>• (Exhibit 22, PVA 23 and 24)<br>• (Exhibit 22 PVA 4449-4452)<br>• (Exhibit 22 PVA 4463-4481)<br>• (Exhibit 22)<br>• (Exhibit 36 PVA 4449-4452)<br>• (Exhibit 36)<br>• (Exhibit 36, PVA 1727-1731)<br>• (Exhibit 25, PVA 7-9, 17-29, 222-234, 250-251, 4449-4452)<br><br>***Specific factual references with citations are set forth below for the court's convenience***.<br><br>Mr. Mendoza a **former employee of Space X indicated that Space X was using Humiseal in 2010**.<br><br>• (Dec. Christopher Mendoza, paragraph 2)<br><br>**DEPOSITION TESTIMONY REGARDING MR. JUAREZ' UNDERSTANDING IN 2015 OF THE DIFFERENT CHEMICALS HE WAS EXPOSED TO WHILE WORKING WITH PVA INC.** |

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | Mr. Juarez utilized HumiSeal and Arathane with the PVA 350.  (Ex 3 Depo. Juarez Volume I: 113 :1-3)

Mr. Juarez was exposed to Arathane products at Space X while programming the machine.  (Ex 4 Depo. Juarez Volume II: 224:14-17)

***PVA HAD KNOWLEDGE OF THE CHEMICALS BEING UTILIZED BY SPACE X AND WAS INVOLVED IN SUBSEQUENT MODIFICATIONS TO THE MACHINE INVOLVING VARIOUS CHEMICALS***

•    PVA Inc was aware of the chemicals being utilized with the PVA 350. including the **transition to Arathane**.  (See Exhibit 22, PVA 4463-4481)

•    The April 11, 2012 conformal coating video with Space X boards utilized the **same chemicals as used at Space X at PVA Inc**. (See Exhibit 9 and Exhibit 22)

•    On September 19, 2013, PVA Inc. made further modifications to the subject machine including reworking the dispense system on the machine to connect one cartridge to the one gallon tank for "**automatic solvent flush of Arathane 5705**."  (Exhibit 22, PVA 23 and 24)

•    On July 30, 2009, PVA/Andrew Haraburda serviced the W3267 (subject PVA 350 machine) and this description of the work/changes |

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | included:  adding solvent flush option (6 oz cartridge, 3 way ball valve, O-ISPSI Precision Regulator, which shows **PVA Inc. was continuing to modify and upgrade the machine. Then PVA Inc. specifically recommended Space X alter the solvent to a different solvent stating "Space X may need to use a different solvent (i.e. Xylene)."** (Exhibit 22 PVA 4449-4452)<br><br>•    Pursuant to email chain dated March 13, 2012 Jonathan Urquhart **(PVA) was aware of Space X's use of Arathane 5750**  The email specifically states, "I think David has spoken to you **about our customer Space X**.  They build full blown rocket ships.  **They plan on pre-mixing this material part A part B and a 3rd part, thinner in small batches apply to board and the purge system** because of shelf life once mixed.  **Sounds screwy to me.**"  They were looking for a demo on the 27th of March.  (Exhibit 22, PVA 4463-4481)<br><br>•    Pursuant to email dated March 15, 2012 to Jonathan Urquhart, PVA was preparing a demo on the PVA 650 and **PVA were working with the same chemical materials Space X was utilizing, but PVA did not want Space X to know and PVA indicated they were going to convey to Space X that the materials were** |

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | **similar, but not the exact same**. . (Exhibit 22, PVA 4463-4481) |

• Pursuant to email dated March 30, 2012, the test at PVA Inc. was rescheduled to **4-11-12 to view the** 3 part mixing process. (Exhibit 22, PVA 4463-4481)

• Pursuant to email from David Gomez to Johnathan (PVA) Urquhart dated May 11, 2012 at 2:11 p.m., Space X talked about retrofitting the PVA 350, and then subsequently there was confirmation from Jon indicating **Space X wanted to duplicate what was done during the visit.** (Exhibit 22, PVA 4463-4481)

• Jon Urquart performed **the demo for Space X on 4-11-12**. (Exhibit 22, PVA 4463-4481)

• Email dated December 2, 2014 at 9:03 a.m. Mr. Urquhart (PVA) indicated to Mr. Matupang there would be 2 demos including a coating with **Arathane 2 part mix and spray and dispensing using a 650 or Delta 6 with board head**, JDX (underfill), SVX (past), and FC100 (solder mask). (Exhibit 22)

• On November 17, 2014, Mr. Urquhart (PVA) asked is Space X wanted to mix on the

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

| **MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS** | **RESPONSE TO OPPOSITION** |
|---|---|
| | fly with **5750**?  (Exhibit 22) |

•      On January 9, 2013 at 10:38 a.m. David Gomez (PVA) emailed Brian Ignaut (Space X) **doing follow up on the "two part material application project you were working on and kindly presented us with**." There was inquiry as to whether there were any developments in the first few months of 2013. (Exhibit 22)

•      On December 3, 2012 at 12:01 PM David Gomez (PVA) wrote Scott Abarta asking for the **two part material brand and part # as well as any MSDS and data sheets**.  Also, there was a request for a shot size and cycle time per part if possible. (Exhibit 22)

•      On **September 10, 2013**, Mr. Gomez (PVA) indicated "they only want a 20 oz cartridge retainer & cap with spray & needle valve for the pre-mix material and 6oz cartridge retainer & cap **for the solvent, so it can flush the premixed material out right after doing a batch of boards**." Mr. Gomez indicated he was **familiar with the "fluid delivery line" because he had done it "several times."** He also indicated they were "**not there yet**" for the two part **coating spraying**.  (Exhibit 22)

•      On September 9, 2013, Richard Bievenue (PVA) wrote Jonathan Connelly (ccing David

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | Filbert, David Gomez, and Michael R. Leonard) indicating that **he spoke with Duc Phan (Space X) about the 350 machine and how Space X was switching to utilizing a 2 part material including Arathane 5750.  There was discussion about premising the solvents and flushing the solvent valves**.  Also, there was interest regarding a 2 component meter mix system. (Exhibit 22)

•        On September 18, 2013 at 12:41 p.m., **Mr. Gomez (PVA) indicated that this is not the first time they have done a two part coating system and he thought they were putting to many resources into this. The email specifically references Arathane** 5750. (Exhibit 22)

•        On September 13, 2013, from Duc Phan (Space X) to Jonathan Connelly, Michael R. Leonard (ccing Richard Bievenue and David Filbert) explained the process with pictures. **Specifically, he indicated that Space X removed the hoses from the spray dispensing head and connected the hoses from the Arathane material and solvent to it.   He further explained when the Arathane material was not in use they vaped the solvent hose and connect the Arathane material hose to the other head just for a place holder.  He also explained that** |

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
|  | **Arathane 5750 part A and B is mixed together and poured in the first reservoir and the second reservoir is the solvent use to thin out the mixed Arathane for spray requirement**.  (Exhibit 22)<br><br>•      On September 13, 2013 at 6:07 a.m. Jonathan Connelly wrote Duc Phan (Space X). Michael R. Leonard and ccing Richard Bievenue and David Filbert inquiring about the process, requesting a picture, **and asking if the Arathane and the solvent was being run out of the cartridges mounted on the side of the machine**. (Exhibit 22)<br><br>•      On September 10, 2013, Duc Phan (Space X)wrote Michael R. Leonard and Jonathan Connelly, **and there was a clear indication that Space X was using Arathane 5750 material with a 2 hour cure time, and they were concerned the operator would forget to purge and rinse the material when the job is done. They were looking to automate the process after coating**.  (Exhibit 22)<br><br>o      The sales order dated September 25, 2013 indicated PVA job number SPCX2115 W3267 indicated **PVA was there to provide onsite support for Mechanical Electrical Programming Fluid Delivery.**  (Exhibit 22) |

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | o      The sales quotation dated September 19, 2013, stated that PVA was to "**rework the dispense system on machine serial number W3267 to connect one cartridge to (1) one gallon tank for automatic solvent flush of Arathane 5705**. This was to include 1) all hoses and fittings needed to complete the integration, 2) pneumatic ball valve for automatic solvent flush, 3) hardware and software needed for integration, and one tank. Further, PVA was to travel to Space X to install the new auto solvent flush system. (Exhibit 22)

o      The purchase order dated September 24, 2013 issued to PVA and shipping to Space X on a Space X purchase order identified a supplier part number B72-01433 and **there is a full description of the work to be done including reworking the dispense system for an automatic flush of Arathane 5750** and in similar detail as stated above. There is a separate purchase order for the travel expenditures. (Exhibit 22)

•      On July 21, 2014 at 6:48 p.m. Duc Phan (Space X) emailed Rex indicating the **current machine uses both Humiseal and Arathane and there are separate spray valves for both material**. They need the pendant purge button to work for both materials. |

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | (Exhibit 22)<br><br>• PVA Inc. circulated diagram clearly states **Arathane**.  Additionally, there is a quote work sheet for the 3 way assembly, pressure tank, hoses, fittings, valves as well as programming and engineering. (Ex 22, PVA 340-347)<br><br>**PVA INC. INSTALLED THE PVA 350 AND CONTINUED TO MODIFIED PROGRAM THROUGHOUT THE PVA 350'S LIFETIME**<br><br>• On 6-23-2009 to 6-24-2009, PVA Inc. installed and serviced the W3267 machine at Space X.  The work was performed by Andrew Haraburde.  He trained Juan Sotelo and Marsha Thompson in installation and training.  The installation check list specifically indicated various items were working, but there is an X versus a check mark on the pump and SEMEA boxes. The description of the work/changes including "**modified main program (mo2).**"  (Exhibit 36 PVA 4449-4452)<br><br>There are a series of work orders regarding modifications and sales showing PVA Inc. continued to service and support the use and modification of the PVA 350. (Exhibit 25, PVA 7-9, 17-29, 222-234, 250-251, 4449-4452) |
| 19.    When SpaceX originally began using these chemicals, numerous employees from the Avionics department were brought together to determine the appropriate formulation of Arathane and Humiseal | 19. Disputed.  Mr. Juarez was not brought in to determine the appropriate formulation of Arathane and Humiseal materials for Space X's |

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

| **MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS** | **RESPONSE TO OPPOSITION** |
|---|---|
| materials for SpaceX's conformal coating applications.<br><br>Maxwell Dec.<br><br>(Maxwell Dec., 2:19-28.) | conformal coating.  Space X originally began using the chemicals Humiseal, which was set up by Space X with the assistance of PVA Inc. in 2010. Further, PVA Inc. assisted Space X with the transition to the use of Arathane.<br><br>(Dec. Ruben Juarez)<br><br>Arathane was introduced by David Hwang to replace Humiseal.  PVA Inc. was aware of this transition, and David Hwang indicated he purchased parts to the PVA 350 can spray Arathane<br>• (Dec. Ruben Juarez)<br>• (Ex 3 Depo. Juarez Volume 1: 55:21-56:5)<br>• (Ex. 1 Depo. Ruben Juarez Volume 1 p. 60:6-25; Dec. Ruben Juarez)<br>• (Ex 3 Depo. Juarez Volume I: 139:17-20)<br>• (Ex 3 Depo. Juarez Volume 1 144:12-16)<br>• (See  Exhibit  22,  PVA 4463-4481)<br>• (See Exhibit 9 and Exhibit 22)<br>• (Exhibit 22, PVA 23 and 24)<br>• (Exhibit  22  PVA  4449-4452)<br>• (Exhibit  22  PVA  4463-4481)<br>• (Exhibit 22) |

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | • (Ex 22, PVA 340-347)<br>• (Exhibit 36 PVA 4449-4452)<br>• (Exhibit 36, PVA 1728-1731)<br>• (Exhibit 25, PVA 7-9, 17-29, 222-234, 250-251, 4449-4452)<br>• (Exhibit 36)<br><br>***Specific factual references with citations are set forth below for the court's convenience to show there is a factual dispute regarding PVA Inc. having no knowledge and or involvement in Space X's use of Arathane and Humiseal and the inference that Mr. Juarez was involved.***<br><br>Mr. Juarez indicated he does not have a chemistry background at his deposition on March 8, 2018.  (Ex 3 Depo. Juarez Volume 1: 55:21-56:5)<br><br>***PVA HAD KNOWLEDGE OF THE CHEMICALS BEING UTILIZED BY SPACE X AND WAS INVOLVED IN SUBSEQUENT MODIFICATIONS TO THE MACHINE INVOLVING VARIOUS CHEMICALS***<br><br>•    PVA Inc was aware of the chemicals being utilized with the PVA 350. including the **transition to Arathane**.  (See Exhibit 22, PVA 4463-4481)<br><br>•    The April 11, 2012 conformal coating video with Space X boards utilized the |

BALABAN & SPIELBERGER LLP<br>11999 SAN VICENTE BOULEVARD, SUITE 345<br>LOS ANGELES, CALIFORNIA 90049

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | **same chemicals as used at Space X at PVA Inc**. (See Exhibit 9 and Exhibit 22) |
| | • On September 19, 2013, PVA Inc. made further modifications to the subject machine including reworking the dispense system on the machine to connect one cartridge to the one gallon tank for "**automatic solvent flush of Arathane 5705**." (Exhibit 22, PVA 23 and 24) |
| | • On July 30, 2009, PVA/Andrew Haraburda serviced the W3267 (subject PVA 350 machine) and this description of the work/changes included: adding solvent flush option (6 oz cartridge, 3 way ball valve, O-ISPSI Precision Regulator, which shows **PVA Inc. was continuing to modify and upgrade the machine. Then PVA Inc. specifically recommended Space X alter the solvent to a different solvent stating "Space X may need to use a different solvent (i.e. Xylene)."** (Exhibit 22 PVA 4449-4452) |
| | • Pursuant to email chain dated March 13, 2012 Jonathan Urquhart (**PVA) was aware of Space X's use of Arathane 5750** The email specifically states, "I think David has spoken to you **about our customer Space** X. They build full blown rocket ships. **They plan on pre-mixing this material part A part B and a** |

**STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**
**(Central District)**

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | **3rd part, thinner in small batches apply to board and the purge system** because of shelf life once mixed.  **Sounds screwy to me.**"  They were looking for a demo on the 27th of March.  (Exhibit 22, PVA 4463-4481) |
| | •       Pursuant to email dated March 15, 2012 to Jonathan Urquhart, PVA was preparing a demo on the PVA 650 and **PVA were working with the same chemical materials Space X was utilizing, but PVA did not want Space X to know and PVA indicated they were going to convey to Space X that the materials were similar, but not the exact same**.  .  (Exhibit 22, PVA 4463-4481) |
| | •       Pursuant to email dated March 30, 2012, the test at PVA Inc. was rescheduled to **4-11-12 to view the** 3 part mixing process. (Exhibit 22, PVA 4463-4481) |
| | •       Pursuant to email from David Gomez to Johnathan (PVA) Urquhart dated May 11, 2012 at 2:11 p.m., Space X talked about retrofitting the PVA 350, and then subsequently there was confirmation from Jon indicating **Space X wanted to duplicate what was done during the visit.**  (Exhibit 22, PVA 4463-4481) |
| | •       Jon Urquart performed |

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

413

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

| **MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS** | **RESPONSE TO OPPOSITION** |
|---|---|
| | **the demo for Space X on 4-11-12**. (Exhibit 22, PVA 4463-4481) |
| | • Email dated December 2, 2014 at 9:03 a.m. Mr. Urquhart (PVA) indicated to Mr. Matupang there would be 2 demos including a coating with **Arathane 2 part mix and spray and dispensing using a 650 or Delta 6 with board head**, JDX (underfill), SVX (past), and FC100 (solder mask). (Exhibit 22) |
| | • On November 17, 2014, Mr. Urquhart (PVA) asked is Space X wanted to mix on the fly with **5750**?  (Exhibit 22) |
| | • On January 9, 2013 at 10:38 a.m. David Gomez (PVA) emailed Brian Ignaut (Space X) **doing follow up on the "two part material application project you were working on and kindly presented us with**." There was inquiry as to whether there were any developments in the first few months of 2013. (Exhibit 22) |
| | • On December 3, 2012 at 12:01 PM David Gomez (PVA) wrote Scott Abarta asking for the **two part material brand and part # as well as any MSDS and data sheets**.  Also, there was a request for a shot size and cycle time per part if possible. (Exhibit 22) |
| | • On **September 10, 2013**, Mr. Gomez (PVA) indicated |

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

**STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**
**(Central District)**

| **MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS** | **RESPONSE TO OPPOSITION** |
|---|---|
| | "they only want a 20 oz cartridge retainer & cap with spray & needle valve for the pre-mix material and 6oz cartridge retainer & cap **for the solvent, so it can flush the premixed material out right after doing a batch of boards**." Mr. Gomez indicated he was **familiar with the "fluid delivery line" because he had done it "several times."** He also indicated they were "**not there yet"** for the two part coating spraying. (Exhibit 22)<br><br>•      On September 9, 2013, Richard Bievenue (PVA) wrote Jonathan Connelly (ccing David Filbert, David Gomez, and Michael R. Leonard) indicating that **he spoke with Duc Phan (Space X) about the 350 machine and how Space X was switching to utilizing a 2 part material including Arathane 5750.  There was discussion about premising the solvents and flushing the solvent valves**.  Also, there was interest regarding a 2 component meter mix system. (Exhibit 22)<br><br>•      On September 18, 2013 at 12:41 p.m., **Mr. Gomez (PVA) indicated that this is not the first time they have done a two part coating system and he thought they were putting to many resources into this. The email specifically references Arathane** 5750. (Exhibit 22) |

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | • On September 13, 2013, from Duc Phan (Space X) to Jonathan Connelly, Michael R. Leonard (ccing Richard Bievenue and David Filbert) explained the process with pictures. **Specifically, he indicated that Space X removed the hoses from the spray dispensing head and connected the hoses from the Arathane material and solvent to it.  He further explained when the Arathane material was not in use they vaped the solvent hose and connect the Arathane material hose to the other head just for a place holder.  He also explained that Arathane 5750 part A and B is mixed together and poured in the first reservoir and the second reservoir is the solvent use to thin out the mixed Arathane for spray requirement**.  (Exhibit 22)

• On September 13, 2013 at 6:07 a.m. Jonathan Connelly wrote Duc Phan (Space X). Michael R. Leonard and ccing Richard Bievenue and David Filbert inquiring about the process, requesting a picture, **and asking if the Arathane and the solvent was being run out of the cartridges mounted on the side of the machine**. (Exhibit 22)

• On September 10, 2013, Duc Phan (Space X)wrote Michael R. Leonard and Jonathan Connelly, **and there was a clear indication that** |

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | **Space X was using Arathane 5750 material with a 2 hour cure time, and they were concerned the operator would forget to purge and rinse the material when the job is done. They were looking to automate the process after coating**.  (Exhibit 22)

o      The sales order dated September 25, 2013 indicated PVA job number SPCX2115 W3267 indicated **PVA was there to provide onsite support for Mechanical Electrical Programming Fluid Delivery.**  (Exhibit 22)

o      The sales quotation dated September 19, 2013, stated that PVA was to "**rework the dispense system on machine serial number W3267 to connect one cartridge to (1) one gallon tank for automatic solvent flush of Arathane 5705**.  This was to include 1) all hoses and fittings needed to complete the integration, 2) pneumatic ball valve for automatic solvent flush, 3) hardware and software needed for integration, and one tank. Further, PVA was to travel to Space X to install the new auto solvent flush system. (Exhibit 22)

o      The purchase order dated September 24, 2013 issued to PVA and shipping to Space X on a Space X purchase order identified a supplier part number B72-01433 and **there is** |

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
|  | **a full description of the work to be done including reworking the dispense system for an automatic flush of Arathane 5750** and in similar detail as stated above.  There is a separate purchase order for the travel expenditures. (Exhibit 22)<br><br>•  On July 21, 2014 at 6:48 p.m. Duc Phan (Space X) emailed Rex indicating the **current machine uses both Humiseal and Arathane and there are separate spray valves for both material**.  They need the pendant purge button to work for both materials. (Exhibit 22)<br><br>•  PVA Inc. circulated diagram clearly states **Arathane**.  Additionally, there is a quote work sheet for the 3 way assembly, pressure tank, hoses, fittings, valves as well as programming and engineering. (Ex 22, PVA 340-347)<br><br>**PVA INC. INSTALLED THE PVA 350 AND CONTINUED TO MODIFIED PROGRAM THROUGHOUT THE PVA 350'S LIFETIME**<br><br>•  On 6-23-2009 to 6-24-2009, PVA Inc. installed and serviced the W3267 machine at Space X.  The work was performed by Andrew Haraburde.  He trained Juan Sotelo and Marsha Thompson in installation and training.  The installation check list specifically indicated various items were working, but there is an X versus a check mark on the pump and |

418

**STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT (Central District)**

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | SEMEA boxes. The description of the work/changes including "**modified main program (mo2).**" (Exhibit 36 PVA 4449-4452)<br><br>There are a series of work orders regarding modifications and sales showing PVA Inc. continued to service and support the use and modification of the PVA 350. (Exhibit 25, PVA 7-9, 17-29, 222-234, 250-251, 4449-4452) |
| 20.     These employees included Ruben Juarez who Avionics Department supervisor Gregory Maxwell testified hand-mixed experimental and test batches of Arathane and Humiseal to make different formulations.<br><br>Maxwell Dec.; Juarez Depo.<br><br>(Maxwell Dec., 2:21-23; Catalona Dec., 246:10-12, 247:18-22, 322:1-2, 322:9-15, 329:17-330:4, 686-88.) | 20. Disputed.  Mr. Juarez was not part of the team hand mixing batches of Arathane.  Francisco was the operator of the PVA 350.  Mixing the chemicals was part of Francisco's job duties.  The only person that tested the chemical interaction was David Hwang since he was the main person to substitute Humiseal to Arathane.<br>• (Dec. Jose Vasequez)<br>• (Dec. Christopher Mendoza)<br>• (Dec. Ruben Juarez)<br>• (Ex 3 Depo. Juarez Volume 1: 55:21-56:5)<br>• (Ex. 1 Depo. Ruben Juarez Volume 1 p. 60:6-25; Dec. Ruben Juarez)<br>• (Ex 3 Depo. Juarez Volume I: 139:17-20)<br>• (Ex 3 Depo. Juarez Volume 1 144:12-16)<br>• (Ex 4 Depo. Juarez Volume II, 235:1-238: 5, 238: 19-22) |

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | • (See Exhibit 22, PVA 4463-4481)<br>• (See Exhibit 9 and Exhibit 22)<br>• (Exhibit 22, PVA 23 and 24)<br>• (Exhibit 22 PVA 4449-4452)<br>• (Exhibit 22 PVA 4463-4481)<br>• (Exhibit 22)<br>• (Ex 22, PVA 340-347)<br><br>***Specific factual references with citations are set forth below for the court's convenience***.<br><br>Mr. Juarez indicated he does not have a chemistry background at his deposition on March 8, 2018. (Ex 3 Depo. Juarez Volume 1: 55:21-56:5)<br><br>Mr. Juarez called Francisco and received a list of the chemicals that Mr. Juarez was exposed to, and he thus requested the MSDS sheets from Space X to forward to his attorney so that could figure out what was going on and what was making him sick. (Ex 4 Depo. Juarez Volume II, 235:1-238: 5, 238: 19-22)<br><br>***PVA HAD KNOWLEDGE OF THE CHEMICALS BEING UTILIZED BY SPACE X AND WAS INVOLVED IN SUBSEQUENT MODIFICATIONS TO THE MACHINE INVOLVING VARIOUS CHEMICALS***<br><br>• PVA Inc was aware of the chemicals being utilized |

BALABAN & SPIELBERGER LLP<br>11999 SAN VICENTE BOULEVARD, SUITE 345<br>LOS ANGELES, CALIFORNIA 90049

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
|  | with the PVA 350. including the **transition to Arathane**.  (See Exhibit 22, PVA 4463-4481)<br><br>•      The April 11, 2012 conformal coating video with Space X boards utilized the **same chemicals as used at Space X at PVA Inc**. (See Exhibit 9 and Exhibit 22)<br><br>•      On September 19, 2013, PVA Inc. made further modifications to the subject machine including reworking the dispense system on the machine to connect one cartridge to the one gallon tank for "**automatic solvent flush of Arathane 5705**."  (Exhibit 22, PVA 23 and 24)<br><br>•      On July 30, 2009, PVA/Andrew Haraburda serviced the W3267 (subject PVA 350 machine) and this description of the work/changes included:  adding solvent flush option (6 oz cartridge, 3 way ball valve, O-ISPSI Precision Regulator, which shows **PVA Inc. was continuing to modify and upgrade the machine. Then PVA Inc. specifically recommended Space X alter the solvent to a different solvent stating "Space X may need to use a different solvent (i.e. Xylene)."** (Exhibit 22 PVA 4449-4452)<br><br>•      Pursuant to email chain dated March 13, 2012 Jonathan Urquhart **(PVA) was aware of Space X's use of Arathane** |

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | **5750**   The email specifically states, "I think David has spoken to you **about our customer Spac**e X.  They build full blown rocket ships.  **They plan on pre-mixing this material part A part B and a 3rd part, thinner in small batches apply to board and the purge system** because of shelf life once mixed.  **Sounds screwy to me.**"  They were looking for a demo on the 27th of March.  (Exhibit 22, PVA 4463-4481)

•     Pursuant to email dated March 15, 2012 to Jonathan Urquhart, PVA was preparing a demo on the PVA 650 and **PVA were working with the same chemical materials Space X was utilizing, but PVA did not want Space X to know and PVA indicated they were going to convey to Space X that the materials were similar, but not the exact same**. .  (Exhibit 22, PVA 4463-4481)

•     Pursuant to email dated March 30, 2012, the test at PVA Inc. was rescheduled to **4-11-12 to view the** 3 part mixing process. (Exhibit 22, PVA 4463-4481)

•     Pursuant to email from David Gomez to Johnathan (PVA) Urquhart dated May 11, 2012 at 2:11 p.m., Space X talked about retrofitting the PVA 350, and then subsequently there was |

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
|  | confirmation from Jon indicating **Space X wanted to duplicate what was done during the visit.**  (Exhibit 22, PVA 4463-4481)

•    Jon Urquart performed **the demo for Space X on 4-11-12**. (Exhibit 22, PVA 4463-4481)

•     Email dated December 2, 2014 at 9:03 a.m. Mr. Urquhart (PVA) indicated to Mr. Matupang there would be 2 demos including a coating with **Arathane 2 part mix and spray and dispensing using a 650 or Delta 6 with board head**, JDX (underfill), SVX (past), and FC100 (solder mask). (Exhibit 22)

•     On November 17, 2014, Mr. Urquhart (PVA) asked is Space X wanted to mix on the fly with **5750**?  (Exhibit 22)

•     On January 9, 2013 at 10:38 a.m. David Gomez (PVA) emailed Brian Ignaut (Space X) **doing follow up on the "two part material application project you were working on and kindly presented us with**." There was inquiry as to whether there were any developments in the first few months of 2013. (Exhibit 22)

•     On December 3, 2012 at 12:01 PM David Gomez (PVA) wrote Scott Abarta asking for the **two part material brand and part # as well as any** |

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

**STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**
**(Central District)**

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | **MSDS and data sheets**.  Also, there was a request for a shot size and cycle time per part if possible. (Exhibit 22)

•       On **September 10, 2013**, Mr. Gomez (PVA) indicated "they only want a 20 oz cartridge retainer & cap with spray & needle valve for the pre-mix material and 6oz cartridge retainer & cap **for the solvent, so it can flush the premixed material out right after doing a batch of boards**." Mr. Gomez indicated he was **familiar with the "fluid delivery line" because he had done it "several times."** He also indicated they were "**not there yet**" for the two part coating spraying.  (Exhibit 22)

•       On September 9, 2013, Richard Bievenue (PVA) wrote Jonathan Connelly (ccing David Filbert, David Gomez, and Michael R. Leonard) indicating that **he spoke with Duc Phan (Space X) about the 350 machine and how Space X was switching to utilizing a 2 part material including Arathane 5750.  There was discussion about premising the solvents and flushing the solvent valves**.  Also, there was interest regarding a 2 component meter mix system. (Exhibit 22)

•       On September 18, 2013 at 12:41 p.m., **Mr. Gomez (PVA) indicated that this is not the first time they have done a** |

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | **two part coating system and he thought they were putting to many resources into this. The email specifically references Arathane** 5750. (Exhibit 22) |
| | • On September 13, 2013, from Duc Phan (Space X) to Jonathan Connelly, Michael R. Leonard (ccing Richard Bievenue and David Filbert) explained the process with pictures. **Specifically, he indicated that Space X removed the hoses from the spray dispensing head and connected the hoses from the Arathane material and solvent to it.  He further explained when the Arathane material was not in use they vaped the solvent hose and connect the Arathane material hose to the other head just for a place holder.  He also explained that Arathane 5750 part A and B is mixed together and poured in the first reservoir and the second reservoir is the solvent use to thin out the mixed Arathane for spray requirement**.  (Exhibit 22) |
| | • On September 13, 2013 at 6:07 a.m. Jonathan Connelly wrote Duc Phan (Space X). Michael R. Leonard and ccing Richard Bievenue and David Filbert inquiring about the process, requesting a picture, **and asking if the Arathane and the solvent was being run out of the cartridges mounted on the side of the machine**. |

425

**STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT (Central District)**

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | (Exhibit 22)

• On September 10, 2013, Duc Phan (Space X)wrote Michael R. Leonard and Jonathan Connelly, **and there was a clear indication that Space X was using Arathane 5750 material with a 2 hour cure time, and they were concerned the operator would forget to purge and rinse the material when the job is done. They were looking to automate the process after coating**.  (Exhibit 22)

o     The sales order dated September 25, 2013 indicated PVA job number SPCX2115 W3267 indicated **PVA was there to provide onsite support for Mechanical Electrical Programming Fluid Delivery.**  (Exhibit 22)

o     The sales quotation dated September 19, 2013, stated that PVA was to "**rework the dispense system on machine serial number W3267 to connect one cartridge to (1) one gallon tank for automatic solvent flush of Arathane 5705**.  This was to include 1) all hoses and fittings needed to complete the integration, 2) pneumatic ball valve for automatic solvent flush, 3) hardware and software needed for integration, and one tank. Further, PVA was to travel to Space X to install the new auto solvent flush system. (Exhibit |

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

| **MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS** | **RESPONSE TO OPPOSITION** |
|---|---|
| | 22) |
| | o    The purchase order dated September 24, 2013 issued to PVA and shipping to Space X on a Space X purchase order identified a supplier part number B72-01433 and **there is a full description of the work to be done including reworking the dispense system for an automatic flush of Arathane 5750** and in similar detail as stated above.  There is a separate purchase order for the travel expenditures. (Exhibit 22) |
| | •    On July 21, 2014 at 6:48 p.m. Duc Phan (Space X) emailed Rex indicating the **current machine uses both Humiseal and Arathane and there are separate spray valves for both material**.  They need the pendant purge button to work for both materials. (Exhibit 22) |
| | •    PVA Inc. circulated diagram clearly states **Arathane**.  Additionally, there is a quote work sheet for the 3 way assembly, pressure tank, hoses, fittings, valves as well as programming and engineering. (Ex 22, PVA 340-347) |
| | **PVA INC. INSTALLED THE PVA 350 AND CONTINUED TO MODIFIED PROGRAM THROUGHOUT THE PVA 350'S LIFETIME** |

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | •    On 6-23-2009 to 6-24-2009, PVA Inc. installed and serviced the W3267 machine at Space X.  The work was performed by Andrew Haraburde.  He trained Juan Sotelo and Marsha Thompson in installation and training.  The installation check list specifically indicated various items were working, but there is an X versus a check mark on the pump and SEMEA boxes. The description of the work/changes including "**modified main program (mo2)."**  (Exhibit 36 PVA 4449-4452)<br><br>There are a series of work orders regarding modifications and sales showing PVA Inc. continued to service and support the use and modification of the PVA 350. (Exhibit 25, PVA 7-9, 17-29, 222-234, 250-251, 4449-4452) |
| 21.    Before hand-mixing these materials, Juarez reviewed the MSDS sheets for Arathane and Humiseal to ensure they cured and "set up" properly so SpaceX's desired result was achieved.<br><br>Maxwell Dec.<br><br>(Maxwell Dec., 2:25-28.) | 21. Disputed.  Mr. Juarez was not the process engineer or materials engineer that would have mixed the chemicals.  Per David Hwang's instructions and with the support of PVA Inc, Mr. Juarez only installed the separate dispensing canisters and materials lines, but not the chemicals.<br><br>   • (Dec. Chris Mendoza)<br>   • (Dec. Manuel Guiterrez)<br>   • (Dec. of Juarez Ruben)<br>   • (Ex 3 Depo. Juarez Volume 1: 55:21-56:5)<br>   • (Ex. 1 Depo. Ruben Juarez Volume 1 p. 60:6-25; Dec. Ruben Juarez)<br>   • (Ex 3 Depo. Juarez Volume |

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | I: 139:17-20) |
| | • (Ex 3 Depo. Juarez Volume 1 144:12-16) |
| | • (Ex 4 Depo. Juarez Volume II, 235:1-238: 5, 238: 19-22) |
| | • (Ex 3 Depo. Juarez Volume 1: 54:11-13) |
| | • (Ex 3 Depo. Juarez Volume 1: 103:18-104:10, 104:25-105:7, 107:5-24, 108:5-13) |
| | • (See Exhibit 22, PVA 4463-4481) |
| | • (See Exhibit 9 and Exhibit 22) |
| | • (Exhibit 22, PVA 23 and 24) |
| | • (Exhibit 22 PVA 4449-4452) |
| | • (Exhibit 22 PVA 4463-4481) |
| | • (Exhibit 22) |
| | • (Ex 22, PVA 340-347) |
| | • (Exhibit 36 PVA 4449-4452) |
| | • (Exhibit 36) |
| | • (Exhibit 36, PVA 1728-1731) |
| | • (Exhibit 25, PVA 7-9, 17-29, 222-234, 250-251, 4449-4452) |
| | ***Specific factual references with citations are set forth below for the court's convenience disputing the alleged facts that Mr. Juarez reviewed the MSDS sheets and allegedly mixed the Arathane and*** |

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | ***Humiseal***.<br><br>Mr. Mendoza never saw Ruben mixing chemicals at Space X. Further, while being an employee at Space X. Mr. Mendoza was never was never trained regarding how to read, interpret, and locate MSDS sheets. Further, Mr. Mendoza indicated Space X was using Humiseal since 2010, and he was never provided any Standard Operating Procedures.  (Dec. Christopher Mendoza)<br><br>Mr. Gutierrez indicated he never saw a binder of MSDS sheets nor did he ever see any MSDS sheets in the conformal coating area. Further, he never saw any Standard of Practice while working with Space X.  Moreover, Mr. Gutierrez never saw Ruben mix chemicals, but he saw Franciso mix chemicals.  (Dec. Manuel Gutierrez)<br><br>Mr. Juarez indicated he does not have a chemistry background at his deposition on March 8, 2018.   (Ex 3 Depo. Juarez Volume 1: 55:21-56:5)<br><br>Mr. Juarez called Francisco and received a list of the chemicals that Mr. Juarez was exposed to, and he thus requested the MSDS sheets from Space X to forward to his attorney so that could figure out what was going on and what was making him sick. (Ex 4 Depo. Juarez Volume II, 235:1-238: 5, 238: 19-22)<br><br>Mr. Juarez testified at his deposition on March 8, 2018 that Space X did |

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

**STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**
**(Central District)**

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | modify the machine to be able to spray other new products and new coating materials. (Ex 3 Depo. Juarez Volume 1: 54:11-13)<br><br>PVA 350 was modified when Mr. Juarez worked at Space X so it would spray a different coating material with PVA Inc.'s support over the telephone by installing hardware. (Ex 3 Depo. Juarez Volume 1: 103:18-104:10, 104:25-105:7, 107:5-24, 108:5-13) |
| 22.    The Avionics Department also required workers who used the PVA 350, including Juarez, to follow SpaceX's "standard operating procedures" entitled "Avionics Standard Operating Procedure: Polymeric Application of Electronic Assemblies."<br><br>Hwang Dec.; Maxwell Dec., Declaration of Duc Q. Phan ("Phan Dec."); SpaceX Standard Operating Procedures.<br><br>(Hwang Dec., 1:15-26, 4, 14, 24; Maxwell Dec., 1:23-2:2, 5, 15, 25, Phan Dec., 1:14-20, 4, 14; Dec. of SpaceX records custodian, Lynette Dhillon ("Dhillon Dec."), 1:16-17, 3:11-17, 5, 15, 25.) | 22. Disputed.  Mr. Juarez was never provided with an Standard Operating Procedure ("SOP") for programmers for any assembly area in Space X. Upon asking the lead person, Mr. Juan Soltelo about the SOP, Mr. Soltelo laughed at him.<br><br>• (Dec. Ruben Juarez)<br><br>• (Ex 4 Depo. Juarez Volume II: 182:1-5)<br><br>• (Ex 4 Depo. Juarez Volume II: 220:5-11)<br><br>***Specific factual references with citations are set forth below for the court's convenience disputing the alleged facts that Mr. Juarez reviewed the MSDS sheets and allegedly mixed the Arathane and Humiseal***.<br><br>Mr. Mendoza never saw Ruben mixing chemicals at Space X. Further, while being an employee at Space X. Mr. Mendoza was never was never |

431

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | trained regarding how to read, interpret, and locate MSDS sheets. Further, Mr. Mendoza indicated Space X was using Humiseal since 2010, and he was never provided any Standard Operating Procedures.  (Dec. Christopher Mendoza)

Mr. Gutierrez indicated he never saw a binder of MSDS sheets nor did he ever see any MSDS sheets in the conformal coating area. Further, he never saw any Standard of Practice while working with Space X.  Moreover, Mr. Gutierrez never saw Ruben mix chemicals, but he saw Francisco mix chemicals.  (Dec. Manuel Gutierrez

Mr. Juarez was not given any Standard Operating Procedures that pertained to how he was to perform his job.  (Ex. 4 Depo. Juarez Volume II: 172:17-25) Initially, when Mr. Juarez was hired, he was hired as an SMT and thus the SOP cited by defense was not applicable.  (Ex 4 Depo. Juarez Volume II: 182:1-5) |
| 23.    These Standard Operating Procedures ("SOPs") instructed SpaceX employees to use a facemask and operate the machine in a well-ventilated area, pursuant to instructions in MSDS sheets for the specific coating materials that were used in the machine.

Hwang Dec.; SpaceX Standard Operating Procedures.

(Hwang Dec., 1:25-26, 5, 6, 15, 16, 25, 26.) | 23. Disputed.  Mr. Juarez was never provided with an Standard Operating Procedure ("SOP") for programmers for any assembly area in Space X. Upon asking the lead person, Mr. Juan Soltelo about the SOP, Mr. Soltelo laughed at him.

• (Dec. Ruben Juarez)

As a result of the defective design of the PVA 350, it would be impossible to utilize the machine with a ventilation mask because the machine |

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

**STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**
**(Central District)**

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | is too small. |

- (Dec. Glen Stevick)
- (Ex. 4 Depo. Juarez Volume II: 172:17-25)
- (Ex 4 Depo. Juarez Volume II: 182:1-5)
- (Ex 4 Depo. Juarez Volume II: 220:5-11)
- (Exhibit 31, PVA 51)
- (Exhibit 31, PVA30-32)
- (Exhibit 31, PVA 40-41)
- (Exhibit 15, PVA 69)
- (Exhibit 16, PVA 0272)
- (Exhibit 31, PVA 30-32, 51)
- (Exhibit 18, PVA 40)
- (Exhibit 35)

***Specific factual references with citations are set forth below for the court's convenience disputing the alleged facts that Mr. Juarez reviewed the MSDS sheets and allegedly mixed the Arathane and Humiseal***.

Mr. Mendoza never saw Ruben mixing chemicals at Space X. Further, while being an employee at Space X. Mr. Mendoza was never was never trained regarding how to read, interpret, and locate MSDS sheets. Further, Mr. Mendoza indicated Space X was using Humiseal since 2010, and he was never provided any Standard Operating Procedures.  (Dec. Christopher Mendoza)

Mr. Gutierrez indicated he never saw a binder of MSDS sheets nor did he ever

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | see any MSDS sheets in the conformal coating area. Further, he never saw any Standard of Practice while working with Space X.  Moreover, Mr. Gutierrez never saw Ruben mix chemicals, but he saw Francisco mix chemicals.  (Dec. Manuel Gutierrez<br><br>Mr. Juarez was not given any Standard Operating Procedures that pertained to how he was to perform his job.  (Ex. 4 Depo. Juarez Volume II: 172:17-25)<br><br>Initially, when Mr. Juarez was hired, he was hired as an SMT and thus the SOP cited by defense was not applicable.  (Ex 4 Depo. Juarez Volume II: 182:1-5) |
| 24.    These SOPs also specified that the machine's coating materials included Humiseal 1A33 conformal coating and Humiseal 521 thinner.<br><br>Hwang Dec.; SpaceX Standard Operating Procedures.<br><br>(Hwang Dec., 1:15-26, 6, 16, 26.) | 24. Disputed.  Mr. Juarez was never provided with an Standard Operating Procedure ("SOP") for programmers for any assembly area in Space X. Upon asking the lead person, Mr. Juan Soltelo about the SOP, Mr. Soltelo laughed at him.<br><br>• (Dec. Ruben Juarez)<br><br>*__Specific factual references with citations are set forth below for the court's convenience disputing the alleged facts that Mr. Juarez reviewed the MSDS sheets and allegedly mixed the Arathane and Humiseal__*.<br><br>Mr. Mendoza never saw Ruben mixing chemicals at Space X. Further, while being an employee at Space X. Mr. Mendoza was never was never |

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | trained regarding how to read, interpret, and locate MSDS sheets. Further, Mr. Mendoza indicated Space X was using Humiseal since 2010, and he was never provided any Standard Operating Procedures.  (Dec. Christopher Mendoza)<br><br>Mr. Gutierrez indicated he never saw a binder of MSDS sheets nor did he ever see any MSDS sheets in the conformal coating area. Further, he never saw any Standard of Practice while working with Space X.  Moreover, Mr. Gutierrez never saw Ruben mix chemicals, but he saw Francisco mix chemicals.  (Dec. Manuel Gutierrez)<br><br>As a result of the defective design of the PVA 350, it would be impossible to utilize the machine with a ventilation mask because the machine is too small.<br><br>• (Dec. Ruben Juarez)<br><br>The SOPs did not indicate the chemicals utilized with the machine were dangerous and potentially toxic.<br><br>• Defendant Hwang Dec.; SpaceX Standard Operating Procedures; (Hwang Dec., 1:15-26, 6, 16, 26.)<br>• (Ex. 4 Depo. Juarez Volume II: 172:17-25)<br>• (Ex 4 Depo. Juarez Volume II: 182:1-5)<br>• (Ex 4 Depo. Juarez Volume II: 220:5-11)<br>• (Exhibit 31, PVA 51) |

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | • (Exhibit 31, PVA30-32)<br>• (Exhibit 31, PVA 40-41)<br>• (Exhibit 15, PVA 69)<br>• (Exhibit 16, PVA 0272)<br>• (Exhibit 31, PVA 30-32, 51)<br>• (Exhibit 18, PVA 40)<br>• (Exhibit 35)<br><br>***Specific factual references with citations are set forth below for the court's convenience supporting the factual dispute that the SOPs were not provided to Mr. Juarez.***<br><br>Mr. Juarez was not given any Standard Operating Procedures that pertained to how he was to perform his job.  (Ex. 4 Depo. Juarez Volume II: 172:17-25)<br><br>Initially, when Mr. Juarez was hired, he was hired as an SMT and thus the SOP cited by defense was not applicable.  (Ex 4 Depo. Juarez Volume II: 182:1-5) |
| 25.    These SOPs also instructed SpaceX employees to "[p]rogram the machine per operating instructions in the PVA Manual."<br><br>Hwang Dec.; SpaceX Standard Operating Procedures.<br><br>(Hwang Dec., 1:15-26, 9, 11, 19, 21, 29, 32.) | 25.Disputed. The PVA Manual and SOPs were not provided to Mr. Juarez.  Further, the manual was not available in the computer connected to the PVA 350.  Since the PVA 350 is a standalone machine, the manual was not uploaded to the company network.<br><br>(Dec. Ruben Juarez)<br><br>***Specific factual references with citations are set forth below for the court's convenience disputing the alleged facts that Mr. Juarez reviewed the MSDS sheets and allegedly mixed the Arathane and Humiseal.*** |

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | Mr. Mendoza never saw Ruben mixing chemicals at Space X. Further, while being an employee at Space X. Mr. Mendoza was never was never trained regarding how to read, interpret, and locate MSDS sheets. Further, Mr. Mendoza indicated Space X was using Humiseal since 2010, and he was never provided any Standard Operating Procedures.  (Dec. Christopher Mendoza)

Mr. Gutierrez indicated he never saw a binder of MSDS sheets nor did he ever see any MSDS sheets in the conformal coating area. Further, he never saw any Standard of Practice while working with Space X.  Moreover, Mr. Gutierrez never saw Ruben mix chemicals, but he saw Francisco mix chemicals.  (Dec. Manuel Gutierrez)

Also, PVA provided photographs of the PVA 350 machine when it shipped and there is no hardcopy of the manual included in the delivery. Further, PVA Inc. specifically trained Mr. Juarez to bypass the safety systems so the machine could be utilized as it was designed defectively and could not be utilized otherwise.
- (Dec. Glen Stevick)
- (Dec. Ruben Juarez)
- (Ex. 4 Depo. Juarez Volume II: 172:17-25)
- (Ex 4 Depo. Juarez Volume II: 182:1-5)
- (Ex 4 Depo. Juarez Volume |

**STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**
**(Central District)**

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | II: 220:5-11) |
| | • (Exhibit 31, PVA 51) |
| | • (Exhibit 31, PVA30-32) |
| | • (Exhibit 31, PVA 40-41) |
| | • (Exhibit 16, PVA 0272) |
| | • (Exhibit 31, PVA 30-32, 51) |
| | • (Exhibit 18, PVA 40) |
| | • (Exhibit 35) |
| | |
| | Mr. Juarez was not given any Standard Operating Procedures that pertained to how he was to perform his job.  (Ex. 4 Depo. Juarez Volume II: 172:17-25) |
| | Initially, when Mr. Juarez was hired, he was hired as an SMT and thus the SOP cited by defense was not applicable.  (Ex 4 Depo. Juarez Volume II: 182:1-5) |
| | **BELOW ARE FACTUAL ALLEGATIONS REGARDING THE MANUAL NOT BEING PRODUCED AND PVA MANUAL BEING INEFFECTIVE AND INSUFFICIENT** |
| | •      PVA specifically indicated the manual was for production and **operators not technical personnel, but it might be "useful for introduction or training**." (Exhibit 31, PVA 51) |
| | •      The manual was **only produced electronically**.  (No hardcopy.) (Exhibit 31, PVA30-32) |
| | •      The Operations and Maintenance manual **does not warn to wear a face mask or protection** |

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT (Central District)

BALABAN & SPIELBERGER LLP 11999 SAN VICENTE BOULEVARD, SUITE 345 LOS ANGELES, CALIFORNIA 90049

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | from any inhalants.  (Exhibit 31, PVA 40-41)<br><br>•      The manual indicates the PVA machines require that end users must **visually inspect the position of the needle with response to a calibration point and physically reposition the needle.**  (Exhibit 15, PVA 69)<br><br>•      The Final Shipment Sign-Off does not indicate the operating manual was sent to Space X only machine photos were taken.  Also, there is an issue of facts as to whether the **exhaust switch was included.** (Exhibit 16, PVA 0272)<br><br>•      The PVA manual was not **physically produced and there was no requirement to review it**. (Exhibit 31, PVA 30-32, 51)<br><br>Mr. Mendoza a former employee of Space X indicated that Space X was using Humiseal in 2010.<br><br>•      (Dec.  Christopher  Mendoza, paragraph 2) |
| 26.    SpaceX maintained copies of all manufacturer operating instructions and specifications for its purchased equipment including the PVA 350.<br><br>Hwang Dec.<br><br>(Hwang Dec., 1:15-17.) | 26. Disputed to the extent it infers that Mr. Juarez saw copies of the manufacturer operating instructions.  The equipment manual was not provided to Mr. Juarez.  Further, the manual was not available in the computer connected to the PVA 350.  Since the PVA 350 is a standalone machine, the manual was not uploaded to the |

**STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**
**(Central District)**

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | company network. |
| | (Dec. Ruben Juarez) |
| | Also, PVA provided photographs of the PVA 350 machine when it shipped and there is no hardcopy of the manual included in the delivery. Further, PVA Inc. specifically trained Mr. Juarez to bypass the safety systems so the machine could be utilized as it was designed defectively and could not be utilized otherwise. |
| | <ul><li>-(Dec. Ruben Juarez)</li><li>(Dec. Glen Stevick)</li><li>(Ex 3 Depo. Juarez Volume 1: 91:3-93:24, 96:10-19, 98:20-21, 100:4-9)</li><li>(Exhibit 31, PVA 51)</li><li>(Exhibit 31, PVA30-32)</li><li>(Exhibit 31, PVA 40-41)</li><li>(Exhibit 15, PVA 69)</li><li>(Exhibit 16, PVA 0272)</li><li>(Exhibit 31, PVA 30-32, 51)</li><li>(Exhibit 18, PVA 40)</li><li>(Exhibit 35)</li></ul> |
| | *__Specific factual references with citations are set forth below for the court's convenience regarding disputes of fact regarding the PVA Manual and the SOPs__.* |
| | *__Specific factual references with citations are set forth below for the court's convenience disputing the alleged facts that Mr. Juarez__* |

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

440

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | ***reviewed the MSDS sheets and allegedly mixed the Arathane and Humiseal***.<br><br>Mr. Mendoza never saw Ruben mixing chemicals at Space X. Further, while being an employee at Space X. Mr. Mendoza was never was never trained regarding how to read, interpret, and locate MSDS sheets. Further, Mr. Mendoza indicated Space X was using Humiseal since 2010, and he was never provided any Standard Operating Procedures.  (Dec. Christopher Mendoza)<br><br>Mr. Gutierrez indicated he never saw a binder of MSDS sheets nor did he ever see any MSDS sheets in the conformal coating area. Further, he never saw any Standard of Practice while working with Space X.  Moreover, Mr. Gutierrez never saw Ruben mix chemicals, but he saw Francisco mix chemicals.  (Dec. Manuel Gutierrez)<br><br>Mr. Juarez never read the manual for the PVA 350 because it was not available to him, but he was trained by PVA Inc. on how to use the PVA machines, and at these trainings PVA Inc. never told Mr. Juarez to review any manual.  (Ex 3 Depo. Juarez Volume 1: 91:3-93:24, 96:10-19, 98:20-21, 100:4-9)<br><br>**BELOW ARE FACTUAL ALLEGATIONS REGARDING THE MANUAL NOT BEING PRODUCED AND PVA MANUAL BEING INEFFECTIVE AND INSUFFICIENT** |

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
|  | • PVA specifically indicated the manual was for production and **operators not technical personnel, but it might be "useful for introduction or training**." (Exhibit 31, PVA 51)<br><br>• The manual was **only produced electronically**.  (No hardcopy.) (Exhibit 31, PVA30-32)<br><br>• The Operations and Maintenance manual **does not warn to wear a face mask or protection** from any inhalants.  (Exhibit 31, PVA 40-41)<br><br>• The manual indicates the PVA machines require that end users must **visually inspect the position of the needle with response to a calibration point and physically reposition the needle.**  (Exhibit 15, PVA 69)<br><br>• The Final Shipment Sign-Off does not indicate the operating manual was sent to Space X only machine photos were taken.  Also, there is an issue of facts as to whether the **exhaust switch was included.** (Exhibit 16, PVA 0272)<br><br>• The PVA manual was not **physically produced and there was no requirement to review it**. (Exhibit 31, PVA 30-32, 51)<br><br>Mr. Mendoza a former employee of Space X indicated that Space X was using Humiseal in 2010.<br><br>• (Dec.   Christopher   Mendoza, paragraph 2)<br><br>**FAILURE TO WARN/HAZARD COMMENTS** |

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | • The PVA Manual does not warn users to use a face mask or ventilator. (Exhibit 18, PVA 40)<br>• The warning on the sides states, "WARNING, Hazardous voltage. Power shall be disconnected before enclosure is opened.  Enclosure shall be closed before power is restored." (Exhibit 35) |
| 27.    Ruben Juarez worked as a programmer at SpaceX from January, 2012 to the end of March, 2014.<br><br>Juarez Depo.; job offer letter with acceptance; Workers' Compensation ("Comp.") Claim.<br><br>(Catalona Dec., 261:21-24, 301:17-22, 303:25-304:8, 307:14-19, 317:7-9, 355, 357.) | 27. Undisputed. |
| 28.    During this entire period, his job duties never changed.<br><br>Juarez Depo.; Deposition of Ruben Juarez in Workers' Compensation Action ("Juarez Workers' Comp. Depo.").<br><br>(Catalona Dec., 256:23-24, 443:22-444:9.) | 28. Disputed.  Mr. Juarez's job duties were changed to include AOI programming and SMT programming.<br>  • (Dec. Ruben Juarez)<br>  • (Ex 4 Depo. Juarez Volume II: 182:1-5)<br>  • (Ex. 2 Depo. Ruben Juarez Volume 2 p. 78:15-79:12, 81:10-15)<br>  • (Ex 3 Depo. Juarez Volume 1: 61:21-63:14)<br>  • (Ex 3 Depo. Juarez Volume 1: 152:11-15)<br><br>Initially, when Mr. Juarez was hired, he was hired as an SMT and thus the SOP cited by defense was not applicable.  (Ex 4 Depo. Juarez Volume II: 182:1-5) |

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | |
| 29.    Juarez testified that his job was to program the PVA 350, for which he was its "main support."<br><br>Juarez Depo.<br><br>(Catalona Dec., 257:25-258:6, 263:1-5.) | 29. Undisputed to the extent that Mr. Juarez worked with the PVA 350, but disputed to the extent that there is an inference that PVA Inc. was not responsible for the service and maintenance of the PVA 350 machine. As stated at Mr. Juarez' deposition on March 30, 2015 (within the two year filing period) Mr. Juarez did not operate the equipment; he was a programmer.<br><ul><li>(Ex. 2 Depo. Ruben Juarez Volume 2 p. 78:15-79:12, 81:10-15)</li><li>(Ex 3 Depo. Juarez Volume 1: 58:4-6, 58:12-59:4)</li><li>(Ex 3 Depo. Juarez Volume 1: 61:21-63:14)</li><li>(Ex 3 Depo. Juarez Volume I: 145:25-147:2)</li><li>(Ex 3 Depo. Juarez Volume 1: 152:11-15)</li><li>(See Exhibit 22, PVA 4463-4481)</li><li>(See Exhibit 9 and Exhibit 22)</li><li>(Exhibit 22, PVA 23 and 24)</li><li>(Exhibit 22 PVA 4449-4452)</li><li>(Exhibit 22 PVA 4463-4481)</li><li>(Exhibit 22)</li><li>(Ex 22, PVA 340-347)</li><li>(Exhibit 36 PVA 4449-4452)</li><li>(Exhibit 36)</li><li>(Exhibit 36, PVA 1728-1731)</li><li>(Exhibit 25, PVA 7-9, 17-29, 222-234, 250-251, 4449-4452)</li></ul><br>***Specific factual references with citations are set forth below for the*** |

BALABAN & SPIELBERGER LLP<br>11999 SAN VICENTE BOULEVARD, SUITE 345<br>LOS ANGELES, CALIFORNIA 90049

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | ***court's convenience regarding Mr. Juarez' job duties***.

Mr. Juarez was a programmer and did mostly machinery, programming, troubleshooting, ordering equipment, Automatic Optical Inspection work, equipment repair, and other manufacturing engineering work. (Ex. 2 Depo. Ruben Juarez Volume 2 p. 78:15-79:12, 81:10-15

Mr. Juarez' job was to program the machine not to operate the machine, and he would spend 8 to 10 hours developing a program and working inside the machine itself. (Ex 3 Depo. Juarez Volume 1: 58:4-6, 58:12-59:4)

Mr. Juarez would program the PVA 350, set up a circuit board in the machine, make sure the pattern is correct, do a dry run, do a wet run, make sure his head was inside to check the thickness of the layer, clean it up, rerun it again until they got the desired thickness and width. The programmer has to fine tune the thickness of the conformal coating. To facilitate the fine tuning process, the machine has to switch to a bypass door so a programmer can put their head inside the machine to make sure the spraying head is parallel to the door. Then a programmer does a dry run, a wet run, and checks the thickness of the layer. The layer has to be about 1.5 thousandths of an inch. (Ex 3 Depo. Juarez Volume 1: 61:21-63:14) |

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | Mr. Juarez would program the machine, check the thickness of the PVA 350 spray, ensure the tanks had enough materials, make sure the materials were consistent, and deal with the fixtures involved in the process. (Ex 3 Depo. Juarez Volume I: 145:25-147:2)

Mr. Juarez would leave the operators after the PVA 350 was programmed sometimes because he was called back for a new product and to work on a variety of assemblies and subassemblies. (Ex 3 Depo. Juarez Volume 1: 152:11-15)

***PVA HAD KNOWLEDGE OF THE CHEMICALS BEING UTILIZED BY SPACE X AND WAS INVOLVED IN SUBSEQUENT MODIFICATIONS TO THE MACHINE INVOLVING VARIOUS CHEMICALS***

• PVA Inc was aware of the chemicals being utilized with the PVA 350. including the **transition to Arathane**. (See Exhibit 22, PVA 4463-4481)

• The April 11, 2012 conformal coating video with Space X boards utilized the **same chemicals as used at Space X at PVA Inc**. (See Exhibit 9 and Exhibit 22)

• On September 19, 2013, PVA Inc. made further modifications to the subject machine including reworking the dispense system on the |

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

**STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**
**(Central District)**

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | machine to connect one cartridge to the one gallon tank for "**automatic solvent flush of Arathane 5705**." (Exhibit 22, PVA 23 and 24)<br><br>•     On July 30, 2009, PVA/Andrew Haraburda serviced the W3267 (subject PVA 350 machine) and this description of the work/changes included:  adding solvent flush option (6 oz cartridge, 3 way ball valve, O-ISPSI Precision Regulator, which shows **PVA Inc. was continuing to modify and upgrade the machine. Then PVA Inc. specifically recommended Space X alter the solvent to a different solvent stating "Space X may need to use a different solvent (i.e. Xylene)."** (Exhibit 22 PVA 4449-4452)<br><br>•     Pursuant to email chain dated March 13, 2012 Jonathan Urquhart **(PVA) was aware of Space X's use of Arathane 5750**  The email specifically states, "I think David has spoken to you **about our customer Space X**. They build full blown rocket ships. **They plan on pre-mixing this material part A part B and a 3rd part, thinner in small batches apply to board and the purge system** because of shelf life once mixed. **Sounds screwy to me.**" They were looking for a demo on the 27th of March. (Exhibit 22, PVA 4463-4481) |

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | • Pursuant to email dated March 15, 2012 to Jonathan Urquhart, PVA was preparing a demo on the PVA 650 and **PVA were working with the same chemical materials Space X was utilizing, but PVA did not want Space X to know and PVA indicated they were going to convey to Space X that the materials were similar, but not the exact same**. . (Exhibit 22, PVA 4463-4481)<br><br>• Pursuant to email dated March 30, 2012, the test at PVA Inc. was rescheduled to **4-11-12 to view the** 3 part mixing process. (Exhibit 22, PVA 4463-4481)<br><br>• Pursuant to email from David Gomez to Johnathan (PVA) Urquhart dated May 11, 2012 at 2:11 p.m., Space X talked about retrofitting the PVA 350, and then subsequently there was confirmation from Jon indicating **Space X wanted to duplicate what was done during the visit.** (Exhibit 22, PVA 4463-4481)<br><br>• Jon Urquart performed **the demo for Space X on 4-11-12**. (Exhibit 22, PVA 4463-4481)<br><br>• Email dated December 2, 2014 at 9:03 a.m. Mr. Urquhart (PVA) indicated to Mr. Matupang there would be 2 demos including a coating with |

**STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**
**(Central District)**

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | **Arathane 2 part mix and spray and dispensing using a 650 or Delta 6 with board head**, JDX (underfill), SVX (past), and FC100 (solder mask). (Exhibit 22)<br><br>• On November 17, 2014, Mr. Urquhart (PVA) asked is Space X wanted to mix on the fly with **5750**?  (Exhibit 22)<br><br>• On January 9, 2013 at 10:38 a.m. David Gomez (PVA) emailed Brian Ignaut (Space X) **doing follow up on the "two part material application project you were working on and kindly presented us with**." There was inquiry as to whether there were any developments in the first few months of 2013. (Exhibit 22)<br><br>• On December 3, 2012 at 12:01 PM David Gomez (PVA) wrote Scott Abarta asking for the **two part material brand and part # as well as any MSDS and data sheets**.  Also, there was a request for a shot size and cycle time per part if possible. (Exhibit 22)<br><br>• On **September 10, 2013**, Mr. Gomez (PVA) indicated "they only want a 20 oz cartridge retainer & cap with spray & needle valve for the pre-mix material and 6oz cartridge retainer & cap **for the solvent, so it can flush the premixed material out right after doing a batch of boards**." Mr. Gomez indicated |

BALABAN & SPIELBERGER LLP<br>11999 SAN VICENTE BOULEVARD, SUITE 345<br>LOS ANGELES, CALIFORNIA 90049

| **MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS** | **RESPONSE TO OPPOSITION** |
|---|---|
| | he was **familiar with the "fluid delivery line" because he had done it "several times."** He also indicated they were "**not there yet**" for the two part coating spraying. (Exhibit 22)<br><br>• On September 9, 2013, Richard Bievenue (PVA) wrote Jonathan Connelly (ccing David Filbert, David Gomez, and Michael R. Leonard) indicating that **he spoke with Duc Phan (Space X) about the 350 machine and how Space X was switching to utilizing a 2 part material including Arathane 5750. There was discussion about premising the solvents and flushing the solvent valves**. Also, there was interest regarding a 2 component meter mix system. (Exhibit 22)<br><br>• On September 18, 2013 at 12:41 p.m., **Mr. Gomez (PVA) indicated that this is not the first time they have done a two part coating system and he thought they were putting to many resources into this. The email specifically references Arathane** 5750. (Exhibit 22)<br><br>• On September 13, 2013, from Duc Phan (Space X) to Jonathan Connelly, Michael R. Leonard (ccing Richard Bievenue and David Filbert) explained the process with pictures. **Specifically, he indicated that Space X removed the hoses from the** |

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | **spray dispensing head and connected the hoses from the Arathane material and solvent to it.   He further explained when the Arathane material was not in use they vaped the solvent hose and connect the Arathane material hose to the other head just for a place holder.  He also explained that Arathane 5750 part A and B is mixed together and poured in the first reservoir and the second reservoir is the solvent use to thin out the mixed Arathane for spray requirement**.  (Exhibit 22)<br><br>•      On September 13, 2013 at 6:07 a.m. Jonathan Connelly wrote Duc Phan (Space X). Michael R. Leonard and ccing Richard Bievenue and David Filbert inquiring about the process, requesting a picture, **and asking if the Arathane and the solvent was being run out of the cartridges mounted on the side of the machine**. (Exhibit 22)<br><br>•      On September 10, 2013, Duc Phan (Space X)wrote Michael R. Leonard and Jonathan Connelly, **and there was a clear indication that Space X was using Arathane 5750 material with a 2 hour cure time, and they were concerned the operator would forget to purge and rinse the material when the job is done. They were looking to automate the process after** |

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | **coating**.  (Exhibit 22)

o       The sales order dated September 25, 2013 indicated PVA job number SPCX2115 W3267 indicated **PVA was there to provide onsite support for Mechanical Electrical Programming Fluid Delivery.**  (Exhibit 22)

o       The sales quotation dated September 19, 2013, stated that PVA was to "**rework the dispense system on machine serial number W3267 to connect one cartridge to (1) one gallon tank for automatic solvent flush of Arathane 5705**.  This was to include 1) all hoses and fittings needed to complete the integration, 2) pneumatic ball valve for automatic solvent flush, 3) hardware and software needed for integration, and one tank. Further, PVA was to travel to Space X to install the new auto solvent flush system. (Exhibit 22)

o       The purchase order dated September 24, 2013 issued to PVA and shipping to Space X on a Space X purchase order identified a supplier part number B72-01433 and **there is a full description of the work to be done including reworking the dispense system for an automatic flush of Arathane 5750** and in similar detail as stated above.  There is a separate purchase order for the |

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

452

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

| **MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS** | **RESPONSE TO OPPOSITION** |
|---|---|
| | travel expenditures. (Exhibit 22) |
| | • On July 21, 2014 at 6:48 p.m. Duc Phan (Space X) emailed Rex indicating the **current machine uses both Humiseal and Arathane and there are separate spray valves for both material**.  They need the pendant purge button to work for both materials. (Exhibit 22) |
| | • PVA Inc. circulated diagram clearly states **Arathane**.  Additionally, there is a quote work sheet for the 3 way assembly, pressure tank, hoses, fittings, valves as well as programming and engineering. (Ex 22, PVA 340-347) |
| | **PVA INC. INSTALLED THE PVA 350 AND CONTINUED TO MODIFIED PROGRAM THROUGHOUT THE PVA 350'S LIFETIME** |
| | • On 6-23-2009 to 6-24-2009, PVA Inc. installed and serviced the W3267 machine at Space X.  The work was performed by Andrew Haraburde.  He trained Juan Sotelo and Marsha Thompson in installation and training.  The installation check list specifically indicated various items were working, but there is an X versus a check mark on the pump and SEMEA boxes. The description of the work/changes including "**modified main program (mo2).**"  (Exhibit 36 PVA 4449-4452) |

**STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**
**(Central District)**

| **MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS** | **RESPONSE TO OPPOSITION** |
|---|---|
| | There are a series of work orders regarding modifications and sales showing PVA Inc. continued to service and support the use and modification of the PVA 350. (Exhibit 25, PVA 7-9, 17-29, 222-234, 250-251, 4449-4452) |
| 30.    Plaintiffs also admitted in their complaint that "[d]uring Plaintiff Ruben Juarez's time at Space X, Plaintiff Ruben Juarez was *in charge of* programming the PVA 350 to spray Arathane 5750A, Arathane 5750B, Arathane 5750 A/B, and Humiseal thinner."  First Amended Complaint ("FAC.")  (Catalona Dec, 59:5-8 (emphasis added).) | 30.Disputed to the extent the fact infers Mr. Juarez knew he was spraying Arathane prior to obtaining the MSDS sheets for said products in March of 2015. infers Mr. Juarez was aware of the danger of the chemicals being loaded in the PVA 350. Further, Mr. Juarez traveled to PVA Inc. with John Pena to see it the PVA machines could spray various chemicals.  Mr. Pena and Mr. Juarez were at PVA Inc. for 2 days, and during this time, PVA Inc. employees did not wear any safety gear and they programmed the machines the same way Mr. Juarez had been programming the machines.  <br>• (Dec. Ruben Juarez)<br>• (Ex 3 Depo. Juarez Volume 1: 55:21-56:5)<br>• (See Exhibit 22, PVA 4463-4481)<br>• (See Exhibit 9 and Exhibit 22)<br>• (Exhibit 22, PVA 23 and 24)<br>• (Exhibit 22 PVA 4449-4452)<br>• (Exhibit 22 PVA 4463-4481) |

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | • (Exhibit 22)<br>• (Ex 22, PVA 340-347)<br><br>***Specific factual references with citations are set forth below for the court's convenience regarding PVA Inc.'s knowledge of the chemicals used with the PVA 350 and the role of Mr. Juarez at Space X.***<br><br>Mr. Juarez indicated he does not have a chemistry background at his deposition on March 8, 2018.   (Ex 3 Depo. Juarez Volume 1: 55:21-56:5)<br><br>***PVA HAD KNOWLEDGE OF THE CHEMICALS BEING UTILIZED BY SPACE X AND WAS INVOLVED IN SUBSEQUENT MODIFICATIONS TO THE MACHINE INVOLVING VARIOUS CHEMICALS***<br><br>•      PVA Inc was aware of the chemicals being utilized with the PVA 350. including the **transition to Arathane**.  (See Exhibit 22, PVA 4463-4481)<br><br>•      The April 11, 2012 conformal coating video with Space X boards utilized the **same chemicals as used at Space X at PVA Inc**. (See Exhibit 9 and Exhibit 22)<br><br>•      On September 19, 2013, PVA Inc. made further modifications to the subject machine including reworking the dispense system on the machine to connect one |

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

**STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**
**(Central District)**

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | cartridge to the one gallon tank for "**automatic solvent flush of Arathane 5705**." (Exhibit 22, PVA 23 and 24)<br><br>• On July 30, 2009, PVA/Andrew Haraburda serviced the W3267 (subject PVA 350 machine) and this description of the work/changes included: adding solvent flush option (6 oz cartridge, 3 way ball valve, O-ISPSI Precision Regulator, which shows **PVA Inc. was continuing to modify and upgrade the machine. Then PVA Inc. specifically recommended Space X alter the solvent to a different solvent stating "Space X may need to use a different solvent (i.e. Xylene)."** (Exhibit 22 PVA 4449-4452)<br><br>• Pursuant to email chain dated March 13, 2012 Jonathan Urquhart **(PVA) was aware of Space X's use of Arathane 5750** The email specifically states, "I think David has spoken to you **about our customer Space X**. They build full blown rocket ships. **They plan on pre-mixing this material part A part B and a 3rd part, thinner in small batches apply to board and the purge system** because of shelf life once mixed. **Sounds screwy to me.**" They were looking for a demo on the 27th of March. (Exhibit 22, PVA 4463-4481)<br><br>• Pursuant to email dated |

BALABAN & SPIELBERGER LLP<br>11999 SAN VICENTE BOULEVARD, SUITE 345<br>LOS ANGELES, CALIFORNIA 90049

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | March 15, 2012 to Jonathan Urquhart, PVA was preparing a demo on the PVA 650 and **PVA were working with the same chemical materials Space X was utilizing, but PVA did not want Space X to know and PVA indicated they were going to convey to Space X that the materials were similar, but not the exact same**. . (Exhibit 22, PVA 4463-4481)

• Pursuant to email dated March 30, 2012, the test at PVA Inc. was rescheduled to **4-11-12 to view the** 3 part mixing process. (Exhibit 22, PVA 4463-4481)

• Pursuant to email from David Gomez to Johnathan (PVA) Urquhart dated May 11, 2012 at 2:11 p.m., Space X talked about retrofitting the PVA 350, and then subsequently there was confirmation from Jon indicating **Space X wanted to duplicate what was done during the visit.** (Exhibit 22, PVA 4463-4481)

• Jon Urquart performed **the demo for Space X on 4-11-12**. (Exhibit 22, PVA 4463-4481)

• Email dated December 2, 2014 at 9:03 a.m. Mr. Urquhart (PVA) indicated to Mr. Matupang there would be 2 demos including a coating with **Arathane 2 part mix and** |

**STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**
(Central District)

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

| **MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS** | **RESPONSE TO OPPOSITION** |
|---|---|
| | **spray and dispensing using a 650 or Delta 6 with board head**, JDX (underfill), SVX (past), and FC100 (solder mask). (Exhibit 22) |
| | • On November 17, 2014, Mr. Urquhart (PVA) asked is Space X wanted to mix on the fly with **5750**?  (Exhibit 22) |
| | • On January 9, 2013 at 10:38 a.m. David Gomez (PVA) emailed Brian Ignaut (Space X) **doing follow up on the "two part material application project you were working on and kindly presented us with**." There was inquiry as to whether there were any developments in the first few months of 2013. (Exhibit 22) |
| | • On December 3, 2012 at 12:01 PM David Gomez (PVA) wrote Scott Abarta asking for the **two part material brand and part # as well as any MSDS and data sheets**.  Also, there was a request for a shot size and cycle time per part if possible. (Exhibit 22) |
| | • On **September 10, 2013**, Mr. Gomez (PVA) indicated "they only want a 20 oz cartridge retainer & cap with spray & needle valve for the pre-mix material and 6oz cartridge retainer & cap **for the solvent, so it can flush the premixed material out right after doing a batch of boards**." Mr. Gomez indicated he was **familiar with the "fluid** |

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | delivery line" because he had done it "**several times.**" He also indicated they were "**not there yet**" for the two part coating spraying.  (Exhibit 22)<br><br>•      On September 9, 2013, Richard Bievenue (PVA) wrote Jonathan Connelly (ccing David Filbert, David Gomez, and Michael R. Leonard) indicating that **he spoke with Duc Phan (Space X) about the 350 machine and how Space X was switching to utilizing a 2 part material including Arathane 5750.  There was discussion about premising the solvents and flushing the solvent valves**.  Also, there was interest regarding a 2 component meter mix system. (Exhibit 22)<br><br>•      On September 18, 2013 at 12:41 p.m., **Mr. Gomez (PVA) indicated that this is not the first time they have done a two part coating system and he thought they were putting to many resources into this. The email specifically references Arathane** 5750. (Exhibit 22)<br><br>•      On September 13, 2013, from Duc Phan (Space X) to Jonathan Connelly, Michael R. Leonard (ccing Richard Bievenue and David Filbert) explained the process with pictures. **Specifically, he indicated that Space X removed the hoses from the spray dispensing head and** |

BALABAN & SPIELBERGER LLP<br>11999 SAN VICENTE BOULEVARD, SUITE 345<br>LOS ANGELES, CALIFORNIA 90049

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | **connected the hoses from the Arathane material and solvent to it.  He further explained when the Arathane material was not in use they vaped the solvent hose and connect the Arathane material hose to the other head just for a place holder.  He also explained that Arathane 5750 part A and B is mixed together and poured in the first reservoir and the second reservoir is the solvent use to thin out the mixed Arathane for spray requirement**.  (Exhibit 22)<br><br>•      On September 13, 2013 at 6:07 a.m. Jonathan Connelly wrote Duc Phan (Space X). Michael R. Leonard and ccing Richard Bievenue and David Filbert inquiring about the process, requesting a picture, **and asking if the Arathane and the solvent was being run out of the cartridges mounted on the side of the machine**. (Exhibit 22)<br><br>•      On September 10, 2013, Duc Phan (Space X)wrote Michael R. Leonard and Jonathan Connelly, **and there was a clear indication that Space X was using Arathane 5750 material with a 2 hour cure time, and they were concerned the operator would forget to purge and rinse the material when the job is done. They were looking to automate the process after coating**.  (Exhibit 22) |

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | o     The sales order dated September 25, 2013 indicated PVA job number SPCX2115 W3267 indicated **PVA was there to provide onsite support for Mechanical Electrical Programming Fluid Delivery.** (Exhibit 22)

o     The sales quotation dated September 19, 2013, stated that PVA was to "**rework the dispense system on machine serial number W3267 to connect one cartridge to (1) one gallon tank for automatic solvent flush of Arathane 5705**. This was to include 1) all hoses and fittings needed to complete the integration, 2) pneumatic ball valve for automatic solvent flush, 3) hardware and software needed for integration, and one tank. Further, PVA was to travel to Space X to install the new auto solvent flush system. (Exhibit 22)

o     The purchase order dated September 24, 2013 issued to PVA and shipping to Space X on a Space X purchase order identified a supplier part number B72-01433 and **there is a full description of the work to be done including reworking the dispense system for an automatic flush of Arathane 5750** and in similar detail as stated above. There is a separate purchase order for the travel expenditures. (Exhibit 22)

•     On July 21, 2014 at 6:48 |

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT (Central District)

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | p.m. Duc Phan (Space X) emailed Rex indicating the **current machine uses both Humiseal and Arathane and there are separate spray valves for both material**.  They need the pendant purge button to work for both materials. (Exhibit 22)<br><br>•      PVA Inc. circulated diagram clearly states **Arathane**.  Additionally, there is a quote work sheet for the 3 way assembly, pressure tank, hoses, fittings, valves as well as programming and engineering. (Ex 22, PVA 340-347) |
| 62.     The MSDS sheets for all chemicals used in the conformal coating rooms, including Humiseal and Arathane, were accessible on the computer Juarez used at his workstation and in a three-ring binder kept 3-4 feet from the PVA 350.<br><br>Maxwell Dec.; Phan Dec.; Hwang Dec.<br><br>(Maxwell Dec., 1:27-2:19, 3:16-21; Phan Dec., 2:1-5; Hwang Dec., 1:27-2:4.) | 62.Objection to the extent the declarants do not have personal knowledge of the alleged facts stated in the declarations.<br><br>Disputed to the extent the MSDS sheets for all chemicals used in the conformal coating rooms, including Humiseal and Arathane were not accessible on the computer, at Mr. Juarez' workstation, and not in a 3 ring binder close to the PVA.<br><br><br>Disputed.  This partial power point that periodically lists the term |

462

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

MSDS and photographs of MSDS is in any way sufficient training regarding the use, location, and/or training as to the contents of the MSDS. Further, it is disputed.  Mr. Juarez was never given MSDS sheets, he did not have access to the MSDS sheets, and he had no chemical training either formal or informal to understand the MSDS sheets.

(Dec. Christopher Mendoza)
- (Dec. Manuel Gutierrez)
- (Defendant's Exhibit 91)
- (Ex 3 Depo. Juarez Volume 1: 121: 22- 122:20, 122:22-123:1)
- (Ex 3 Depo. Juarez Volume I: 123:19-124:12)
- (Ex. 1 Depo. Ruben Juarez Volume 1 p. 60:6-25)
- (Dec. Ruben Juarez)
- (Ex 3 Depo. Juarez Volume I: 139:17-20)
- (Ex 3 Depo. Juarez Volume 1 144:12-16)
- (Ex 1, Depo. Ruben Juarez Volume I, p. 49:22-50:8, 51:17, 52:8-16, 53:15-21, 54:11-55:15,  55:21-56:8, 56:14-18  ,  57:16-23- 58:18, 59: 4-5, 59: 22- 24,60:17-61:20, 62:1-15)
- (Ex. 2 Depo. Ruben Juarez Volume 2 p. 77:5-78:3)
- (Ex 3 Depo. Ruben Juarez Volume 1, 49:25-50:3)
- (Ex 3 Depo. Juarez Volume

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

1: 66:19-22, 116:1-14)

- (Ex 3 Depo. Juarez Volume 1: 108:20-109:12)
- .(Ex 4 Depo. Juarez Volume II, 332:7-337:14)
- (Ex 4 Depo. Juarez Volume II, 249:22-250:12)
- (Ex 4 Depo. Juarez Volume II, 262:21-263: 13)
- (Ex 4 Depo. Juarez Volume II, 262:21-263:13)
- (Ex 4 Depo. Juarez Volume II, 287:6-288:3, 288:24-289:6)
- (Ex 4 Depo. Juarez Volume II, 235:1-238: 5, 238: 19-22)
- (Ex 4 Depo. Juarez Volume II, 241:4-15)

***Specific factual references with citations are set forth below for the court's convenience showing the MSDS sheets were not available***.

***Specific factual references with citations are set forth below for the court's convenience disputing the alleged facts that Mr. Juarez reviewed the MSDS sheets and allegedly mixed the Arathane and Humiseal***.

Mr. Mendoza never saw Ruben mixing chemicals at Space X. Further, while being an employee at Space X. Mr. Mendoza was never was never trained regarding how to read, interpret, and locate MSDS sheets. Further, Mr. Mendoza indicated Space X was using Humiseal since 2010, and he was never provided any Standard

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

Operating Procedures.  (Dec. Christopher Mendoza)

Mr. Gutierrez indicated he never saw a binder of MSDS sheets nor did he ever see any MSDS sheets in the conformal coating area. Further, he never saw any Standard of Practice while working with Space X.  Moreover, Mr. Gutierrez never saw Ruben mix chemicals, but he saw Francisco mix chemicals.  (Dec. Manuel Gutierrez)

Initially, Mr. Juarez did not know what chemicals were in the chemical baths, and he found out, but the chemical baths did not have anything to do with the PVA 350, and when he filed the worker's compensation claim his claim was derived from the chemical washes.  (Ex 3 Depo. Juarez Volume 1: 66:19-22, 116:1-14)

Mr. Juarez called a co-worker to get a list of the chemicals utilized in the wash area at Space X, and he may have offered to give the names of the rest of the chemicals used in the conformal coating area.  (Ex 3 Depo. Juarez Volume 1: 108:20-109:12)

Mr Juarez tried to get a list of chemicals from Space X, which did not work out.  Afterwhich, Mr. Juarez called Francisco to get a list of chemicals he had worked with.  After Francisco provided the list of chemicals, Mr. Juarez emailed Space X requested the MSDS sheets for the chemicals that Francisco listed.  (Ex 4

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

Depo. Juarez Volume II, 332:7-337:14)

Mr. Juarez filed his worker's compensation claim based on his belief the chemical baths were making him sick as well as a solder wire until he learned only alcohol was used in the baths and only lead free solder wire were used in the filters. (Ex 4 Depo. Juarez Volume II, 262:21-263:13)

Mr. Juarez had no reason to suspect any wrongdoing on behalf of PVA and Space X, and he did not know the reason he was getting sick when he filed the worker's compensation claim. (Ex 4 Depo. Juarez Volume II, 262:21-263:13)

Mr. Juarez first suspected he was working in a toxic work environment when he received the MSDS sheets from Space X after requesting the MSDS sheets via email after March 3, 2015. (Ex 4 Depo. Juarez Volume II, 287:6-288:3, 288:24-289:6)

Mr. Juarez called Francisco and received a list of the chemicals that Mr. Juarez was exposed to, and he thus requested the MSDS sheets from Space X to forward to his attorney so that could figure out what was going on and what was making him sick. (Ex 4 Depo. Juarez Volume II, 235:1-238: 5, 238: 19-22)

**STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT (Central District)**

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

| | |
|---|---|
| | Initially, Mr. Juarez thought his problems were caused by alcohol chemical baths and solder wire, but later he found out that lead-free solder wire was used. Upon this discovery, Mr. Juarez reached out to Francisco and then to Space X to get the MSDS sheets. (Ex 4 Depo. Juarez Volume II, 241:4-15) |
| 63.      SpaceX complied with its own internal rules which required MSDS sheets to "be readily accessible to employees in their work area during all work shifts."<br><br>Maxwell Dec.; Phan Dec.; Hwang Dec.; SpaceX Hazard Communication Training Course.<br><br>(Maxwell Dec., 1:27-2:19, 3:16-21, 58-59; Phan Dec., 2:1-5; Hwang Dec., 1:27-2:4; Dhillon Dec., 61-62.) | 63. Objection to the extent the declarants do not have personal knowledge of the alleged facts stated in the declarations.<br><br>Disputed that Space X complied with its own internal rules which require MSDS sheets to "be readily accessible to employees in their work area during all work shifts."<br><br>Disputed to the extent this partial power point that periodically lists the term MSDS and photographs of MSDS is in any way sufficient training regarding the use, location, and/or training as to the contents of the MSDS.<br><br>Disputed. Mr. Juarez was never given MSDS sheets, he did not have access to the MSDS sheets, and he had no chemical training either formal or informal to understand the MSDS sheets.<br><br>(Dec. Christopher Mendoza)<br><br>• (Dec. Manuel Gutierrez)<br>• Defendant's Exhibit 91 |

**STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**
**(Central District)**

- (Ex 3 Depo. Juarez Volume 1: 55:21-56:5)
- (Ex. 4 Depo. Juarez Volume II: 172:17-25)
- (Ex 4 Depo. Juarez Volume II: 182:1-5)
- (Ex 4 Depo. Juarez Volume II: 220:5-11)
- (Ex 1, Depo. Ruben Juarez Volume I, p. 49:22-50:8, 51:17, 52:8-16, 53:15-21, 54:11-55:15, 55:21-56:8, 56:14-18 , 57:16-23-58:18, 59: 4-5, 59: 22-24,60:17-61:20, 62:1-15)
- (Ex. 2 Depo. Ruben Juarez Volume 2 p. 77:5-78:3)
- (Ex 3 Depo. Ruben Juarez Volume 1, 49:25-50:3)
- (Ex 3 Depo. Juarez Volume 1: 66:19-22, 116:1-14)
- (Ex 3 Depo. Juarez Volume 1: 108:20-109:12)
- (Ex 4 Depo. Juarez Volume II, 332:7-337:14)
- (Ex 4 Depo. Juarez Volume II, 249:22-250:12)
- . (Ex 4 Depo. Juarez Volume II, 262:21-263: 13)
- (Ex 4 Depo. Juarez Volume II, 262:21-263:13)
- (Ex 4 Depo. Juarez Volume II, 287:6-288:3, 288:24-289:6)
- (Ex 4 Depo. Juarez Volume II, 235:1-238: 5, 238: 19-22)
- (Ex 4 Depo. Juarez Volume II, 241:4-15)

***Specific factual references with citations are set forth below for the***

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

***court's convenience disputing the alleged facts that Mr. Juarez reviewed the MSDS sheets and allegedly mixed the Arathane and Humiseal***.

Mr. Mendoza never saw Ruben mixing chemicals at Space X. Further, while being an employee at Space X. Mr. Mendoza was never was never trained regarding how to read, interpret, and locate MSDS sheets. Further, Mr. Mendoza indicated Space X was using Humiseal since 2010, and he was never provided any Standard Operating Procedures.  (Dec. Christopher Mendoza)

Mr. Gutierrez indicated he never saw a binder of MSDS sheets nor did he ever see any MSDS sheets in the conformal coating area. Further, he never saw any Standard of Practice while working with Space X.  Moreover, Mr. Gutierrez never saw Ruben mix chemicals, but he saw Francisco mix chemicals.  (Dec. Manuel Gutierrez)

Mr. Juarez indicated he does not have a chemistry background at his deposition on March 8, 2018.   (Ex 3 Depo. Juarez Volume 1: 55:21-56:5)

Mr. Juarez was not given any Standard Operating Procedures that pertained to how he was to perform his job.  (Ex. 4 Depo. Juarez Volume II: 172:17-25)

Initially, when Mr. Juarez was hired, he was hired as an SMT and thus the SOP cited by defense was not applicable.  (Ex 4 Depo. Juarez Volume II: 182:1-5)

Mr. Juarez was never given any written instructions with the incoming Humiseal products that were delivered

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

**STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**
**(Central District)**

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

1    to Space X. (Ex 4 Depo. Juarez Volume II: 220:5-11)

2

3    On May 20, 2015, Mr. Juarez indicated at the second session of his deposition (within the two year filing period), the wash station for printed circuit board assemblies was right next to his station. (Ex. 2 Depo. Ruben Juarez Volume 2 p. 77:5-78:3)

4

5

6

7    The equipment in the rooms where Mr. Juarez was working was constantly changing. (Ex 3 Depo. Ruben Juarez Volume 1, 49:25-50:3)

8

9    Initially, Mr. Juarez did not know what chemicals were in the chemical baths, and he found out, but the chemical baths did not have anything to do with the PVA 350, and when he filed the worker's compensation claim his claim was derived from the chemical washes. (Ex 3 Depo. Juarez Volume 1: 66:19-22, 116:1-14)

10

11

12

13

14    Mr. Juarez called a co-worker to get a list of the chemicals utilized in the wash area at Space X, and he may have offered to give the names of the rest of the chemicals used in the conformal coating area. (Ex 3 Depo. Juarez Volume 1: 108:20-109:12)

15

16

17

18    Mr Juarez tried to get a list of chemicals from Space X, which did not work out. Afterwhich, Mr. Juarez called Francisco to get a list of chemicals he had worked with. After Francisco provided the list of chemicals, Mr. Juarez emailed Space X requested the MSDS sheets for the chemicals that Francisco listed. (Ex 4 Depo. Juarez Volume II, 332:7-337:14)

19

20

21

22

23

24    Mr. Juarez took a spray for medical problems to clear his airways, but nobody every pinpointed a cause for him to take the medicine. (Ex 4 Depo. Juarez Volume II, 249:22-250:12)

25

26

27    Mr. Juarez filed his worker's compensation claim based on his belief the chemical baths were making

28

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

him sick as well as a solder wire until he learned only alcohol was used in the baths and only lead free solder wire were used in the filters. (Ex 4 Depo. Juarez Volume II, 262:21-263:13)

Mr. Juarez had no reason to suspect any wrongdoing on behalf of PVA and Space X, and he did not know the reason he was getting sick when he filed the worker's compensation claim.  (Ex 4 Depo. Juarez Volume II, 262:21-263:13)

Mr. Juarez first suspected he was working in a toxic work environment when he received the MSDS sheets from Space X after requesting the MSDS sheets via email after March 3, 2015.  (Ex 4 Depo. Juarez Volume II, 287:6-288:3, 288:24-289:6)

Mr. Juarez called Francisco and received a list of the chemicals that Mr. Juarez was exposed to, and he thus requested the MSDS sheets from Space X to forward to his attorney so that could figure out what was going on and what was making him sick. (Ex 4 Depo. Juarez Volume II, 235:1-238: 5, 238: 19-22)

Initially, Mr. Juarez thought his problems were caused by alcohol chemical baths and solder wire, but later he found out that lead-free solder wire was used.  Upon this discovery, Mr. Juarez reached out to Francisco and then to Space X to get the MSDS sheets.  (Ex 4 Depo. Juarez Volume II, 241:4-15)

| | |
|---|---|
| 64.    The MSDS sheets were also accessible on at least 14 to 18 different computers located inside and outside the conformal coating rooms where Mr. Juarez worked.<br><br>Maxwell Dec. | 64.Objection to the extent the declarants do not have personal knowledge of the alleged facts stated in the declarations.<br><br>Disputed.  Mr. Juarez did not consult MSDS sheets for Humiseal and Arathane to create experimental and |

| | |
|---|---|
| (Maxwell Dec., 2:4-8.) | test batches of these materials. |
| | Disputed. Mr. Juarez was never given MSDS sheets, he did not have knowledge sufficient to gain access to the MSDS sheets, and he had no chemical training either formal or informal to understand the MSDS sheets. Mr. Juarez never created experimental test batches of Humiseal and Arathane when working with Space X. The only person mixing the chemicals was David Hwang and Francisco would load and mix the machines. |
| | Mr. Juarez did not hand mix Humiseal with Arathane.  (Dec. Ruben Juarez, paragraph 9) |
| | (Ex 1, Depo. Ruben Juarez Volume I, p. 49:22-50:8, 51:17, 52:8-16, 53:15-21, 54:11-55:15, 55:21-56:8, 56:14-18 , 57:16-23-58:18, 59: 4-5, 59: 22-24,60:17-61:20, 62:1-15) |
| | • (Ex. 2 Depo. Ruben Juarez Volume 2 p. 77:5-78:3) |
| | • (Ex 3 Depo. Ruben Juarez Volume 1, 49:25-50:3) |
| | • (Ex 3 Depo. Juarez Volume 1: 66:19-22, 116:1-14) |
| | • (Ex 3 Depo. Juarez Volume 1: 108:20-109:12) |
| | • (Ex 4 Depo. Juarez Volume II, 332:7-337:14) |
| | • (Ex 4 Depo. Juarez Volume II, 249:22-250:12) |
| | • (Ex 4 Depo. Juarez Volume II, 262:21-263: 13) |
| | • (Ex 4 Depo. Juarez Volume II, 262:21-263:13) |

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

**STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**
**(Central District)**

- (Ex 4 Depo. Juarez Volume II, 287:6-288:3, 288:24-289:6)
- (Ex 4 Depo. Juarez Volume II, 235:1-238: 5, 238: 19-22)
- (Ex 4 Depo. Juarez Volume II, 241:4-15)
- (Ex 3 Depo. Juarez Volume 1: 121: 22- 122:20, 122:22-123:1)
- (Ex 3 Depo. Juarez Volume I: 123:19-124:12)
- (Ex 3 Depo. Juarez Volume 1: 55:21-56:5)
- (Exhibit 31, PVA 51)
- (Exhibit 31, PVA30-32)
- (Exhibit 31, PVA 40-41)
- (Exhibit 15, PVA 69)
- (Exhibit 16, PVA 0272)
- (Exhibit 31, PVA 30-32, 51)
- (Dec. Christopher Mendoza)
- (Dec. Manuel Gutierrez)

***Specific factual references with citations are set forth below for the court's convenience disputing the alleged facts that Mr. Juarez reviewed the MSDS sheets and allegedly mixed the Arathane and Humiseal***.

Mr. Mendoza never saw Ruben mixing chemicals at Space X. Further, while being an employee at Space X. Mr. Mendoza was never was never trained regarding how to read, interpret, and locate MSDS sheets. Further, Mr. Mendoza indicated Space X was using Humiseal since 2010, and he was never provided any Standard Operating Procedures.  (Dec. Christopher Mendoza)

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

**STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**
**(Central District)**

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

Mr. Gutierrez indicated he never saw a binder of MSDS sheets nor did he ever see any MSDS sheets in the conformal coating area. Further, he never saw any Standard of Practice while working with Space X.  Moreover, Mr. Gutierrez never saw Ruben mix chemicals, but he saw Francisco mix chemicals.  (Dec. Manuel Gutierrez)

The equipment in the rooms where Mr. Juarez was working was constantly changing.  (Ex 3 Depo. Ruben Juarez Volume 1, 49:25-50:3)

Initially, Mr. Juarez did not know what chemicals were in the chemical baths, and he found out, but the chemical baths did not have anything to do with the PVA 350, and when he filed the worker's compensation claim his claim was derived from the chemical washes.  (Ex 3 Depo. Juarez Volume 1: 66:19-22, 116:1-14)

Mr. Juarez called a co-worker to get a list of the chemicals utilized in the wash area at Space X, and he may have offered to give the names of the rest of the chemicals used in the conformal coating area.  (Ex 3 Depo. Juarez Volume 1: 108:20-109:12)

Mr Juarez tried to get a list of chemicals from Space X, which did not work out.  Afterwhich, Mr. Juarez called Francisco to get a list of chemicals he had worked with.  After Francisco provided the list of chemicals, Mr. Juarez emailed Space

**STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT (Central District)**

X requested the MSDS sheets for the chemicals that Francisco listed.  (Ex 4 Depo. Juarez Volume II, 332:7-337:14)

Mr. Juarez took a spray for medical problems to clear his airways, but nobody every pinpointed a cause for him to take the medicine.  (Ex 4 Depo. Juarez Volume II, 249:22-250:12)

Mr. Juarez filed his worker's compensation claim based on his belief the chemical baths were making him sick as well as a solder wire until he learned only alcohol was used in the baths and only lead free solder wire were used in the filters. (Ex 4 Depo. Juarez Volume II, 262:21-263:13)

Mr. Juarez had no reason to suspect any wrongdoing on behalf of PVA and Space X, and he did not know the reason he was getting sick when he filed the worker's compensation claim.  (Ex 4 Depo. Juarez Volume II, 262:21-263:13)

Mr. Juarez first suspected he was working in a toxic work environment when he received the MSDS sheets from Space X after requesting the MSDS sheets via email after March 3, 2015.  (Ex 4 Depo. Juarez Volume II, 287:6-288:3, 288:24-289:6)

Mr. Juarez called Francisco and received a list of the chemicals that Mr. Juarez was exposed to, and he

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

thus requested the MSDS sheets from Space X to forward to his attorney so that could figure out what was going on and what was making him sick. (Ex 4 Depo. Juarez Volume II, 235:1-238: 5, 238: 19-22)

Initially, Mr. Juarez thought his problems were caused by alcohol chemical baths and solder wire, but later he found out that lead-free solder wire was used. Upon this discovery, Mr. Juarez reached out to Francisco and then to Space X to get the MSDS sheets. (Ex 4 Depo. Juarez Volume II, 241:4-15)

Mr. Juarez was trained by PVA Inc. to open the door of the machine to perform programming job duties. (Ex 3 Depo. Juarez Volume 1: 121: 22-122:20, 122:22-123:1) Mr. Juarez believe it was unsafe for the operators to open the machine door and operate the PVA 350 because they could get their hand stuck in the machine, but he did not have a chemistry background so he did not know whether the chemicals were harmful or not, and he relied on the training provided by PVA Inc. that he could put is head safely in the machine while programming the machine. (Ex 3 Depo. Juarez Volume I: 123:19-124:12)

Mr. Juarez indicated he does not have a chemistry background at his deposition on March 8, 2018. (Ex 3 Depo. Juarez Volume 1: 55:21-56:5)

| | |
|---|---|
| 65.   Juarez consulted the MSDS sheets for | 65. Objection to the extent the |

Humiseal and Arathane to create experimental and test batches of these materials when SpaceX created the formula it started using in PVA's machine in 2012.

Maxwell Dec.; Urquhart Dec.; Hwang Dec., PVA Business Records; NVOC Specification; March, 2012 emails.

(Maxwell Dec., 2:23-28; Urquhart Dec., 2:15-17, 28, 63, 230; Hwang Dec., 2:5-12, 35-41.)

declarants do not have personal knowledge of the alleged facts stated in the declarations. Further, objection as to relevance because Mr. Juarez was not aware of the cause of his injuries being the defects in the PVA 350 until he was no longer working with Space X as a regular employee.

Disputed. Mr. Juarez was never given MSDS sheets, he did not have knowledge sufficient to gain access to the MSDS sheets, and he had no chemical training either formal or informal to understand the MSDS sheets. Mr. Juarez never created experimental test batches of Humiseal and Arathane when working with Space X. The only person mixing the chemicals was David Hwang and Francisco would load and mix the machines.

Pursuant to Mr. Juarez' declaration, he never mixed any chemical compounds.

- (Dec. Ruben Juarez, paragraph 9)
- (Dec. Christopher Mendoza)
- (Dec. Manuel Gutierrez)
- (Defense Exhibit 91)
- (Dec. Ruben Juarez)
- (Ex 1, Depo. Ruben Juarez Volume I, p. 49:22-50:8,

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

51:17, 52:8-16, 53:15-21, 54:11-55:15, 55:21-56:8, 56:14-18 , 57:16-23-58:18, 59: 4-5, 59: 22-24,60:17-61:20, 62:1-15)

- (Ex. 2 Depo. Ruben Juarez Volume 2 p. 77:5-78:3)
- (Ex 3 Depo. Ruben Juarez Volume 1, 49:25-50:3)
- (Ex 3 Depo. Juarez Volume 1: 66:19-22, 116:1-14)
- (Ex 3 Depo. Juarez Volume 1: 108:20-109:12)
- (Ex 4 Depo. Juarez Volume II, 332:7-337:14)
- (Ex 4 Depo. Juarez Volume II, 249:22-250:12)
- (Ex 4 Depo. Juarez Volume II, 262:21-263: 13)
- (Ex 4 Depo. Juarez Volume II, 262:21-263:13)
- (Ex 4 Depo. Juarez Volume II, 287:6-288:3, 288:24-289:6)
- (Ex 4 Depo. Juarez Volume II, 235:1-238: 5, 238: 19-22)
- (Ex 4 Depo. Juarez Volume II, 241:4-15)
- (Ex 3 Depo. Juarez Volume I: 123:19-124:12)
- (Ex 3 Depo. Juarez Volume 1: 55:21-56:5)
- (Ex. 1 Depo. Ruben Juarez Volume 1 p. 60:6-25)
- (Dec. Ruben Juarez)
- (Ex 3 Depo. Juarez Volume I: 139:17-20)
- (Ex 3 Depo. Juarez Volume

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

**STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT (Central District)**

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

1 144:12-16)

- (See Exhibit 22, PVA 4463-4481)
- (Exhibit 22, PVA 23 and 24)
- (Exhibit 22 PVA 4449-4452)
- (Exhibit 22 PVA 4463-4481)
- (Exhibit 36 PVA 4449-4452)
- (Exhibit 36)
- (Exhibit 36, PVA 1728-1731)
- (Exhibit 25, PVA 7-9, 17-29, 222-234, 250-251, 4449-4452)
- (Exhibit 31, PVA 51)
- (Exhibit 31, PVA30-32)
- (Exhibit 31, PVA 40-41)
- (Exhibit 15, PVA 69)
- (Exhibit 16, PVA 0272)
- (Exhibit 31, PVA 30-32, 51)

***Specific factual references with citations are set forth below for the court's convenience disputing the alleged facts that Mr. Juarez reviewed the MSDS sheets and allegedly mixed the Arathane and Humiseal***.

Mr. Mendoza never saw Ruben mixing chemicals at Space X. Further, while being an employee at Space X. Mr. Mendoza was never was never trained regarding how to read, interpret, and locate MSDS sheets. Further, Mr. Mendoza indicated Space X was using Humiseal since 2010, and

479

1  he was never provided any Standard
2  Operating Procedures.  (Dec.
3  Christopher Mendoza)

4  Mr. Gutierrez indicated he never saw a
   binder of MSDS sheets nor did he ever
5  see any MSDS sheets in the conformal
   coating area. Further, he never saw
6  any Standard of Practice while
   working with Space X.  Moreover,
7  Mr. Gutierrez never saw Ruben mix
   chemicals, but he saw Francisco mix
8  chemicals.  (Dec. Manuel Gutierrez)

9

10  Initially, Mr. Juarez did not know
11  what chemicals were in the chemical
   baths, and he found out, but the
12  chemical baths did not have anything
   to do with the PVA 350, and when he
13  filed the worker's compensation claim
14  his claim was derived from the
   chemical washes.  (Ex 3 Depo. Juarez
15  Volume 1: 66:19-22, 116:1-14)

16
17  Mr. Juarez called a co-worker to get a
   list of the chemicals utilized in the
18  wash area at Space X, and he may
19  have offered to give the names of the
   rest of the chemicals used in the
20  conformal coating area.  (Ex 3 Depo.
21  Juarez Volume 1: 108:20-109:12)

22  Mr Juarez tried to get a list of
23  chemicals from Space X, which did
   not work out.  Afterwhich, Mr. Juarez
24  called Francisco to get a list of
25  chemicals he had worked with.  After
   Francisco provided the list of
26  chemicals, Mr. Juarez emailed Space
27  X requested the MSDS sheets for the
28  chemicals that Francisco listed.  (Ex 4

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

Depo. Juarez Volume II, 332:7-
337:14)

Mr. Juarez filed his worker's
compensation claim based on his
belief the chemical baths were making
him sick as well as a solder wire until
he learned only alcohol was used in
the baths and only lead free solder
wire were used in the filters. (Ex 4
Depo. Juarez Volume II, 262:21-263:
13)

Mr. Juarez had no reason to suspect
any wrongdoing on behalf of PVA and
Space X, and he did not know the
reason he was getting sick when he
filed the worker's compensation
claim.  (Ex 4 Depo. Juarez Volume II,
262:21-263:13)

Mr. Juarez first suspected he was
working in a toxic work environment
when he received the MSDS sheets
from Space X after requesting the
MSDS sheets via email after March 3,
2015.  (Ex 4 Depo. Juarez Volume II,
287:6-288:3, 288:24-289:6)

Mr. Juarez called Francisco and
received a list of the chemicals that
Mr. Juarez was exposed to, and he
thus requested the MSDS sheets from
Space X to forward to his attorney so
that could figure out what was going
on and what was making him sick.
(Ex 4 Depo. Juarez Volume II, 235:1-
238: 5, 238: 19-22)

**STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)**

Initially, Mr. Juarez thought his problems were caused by alcohol chemical baths and solder wire, but later he found out that lead-free solder wire was used.  Upon this discovery, Mr. Juarez reached out to Francisco and then to Space X to get the MSDS sheets.  (Ex 4 Depo. Juarez Volume II, 241:4-15)

Mr. Juarez was trained by PVA Inc. to open the door of the machine to perform programming job duties.  (Ex 3 Depo. Juarez Volume 1: 121: 22-122:20, 122:22-123:1)  Mr. Juarez believe it was unsafe for the operators to open the machine door and operate the PVA 350 because they could get their hand stuck in the machine, but he did not have a chemistry background so he did not know whether the chemicals were harmful or not, and he relied on the training provided by PVA Inc. that he could put is head safely in the machine while programming the machine.  (Ex 3 Depo. Juarez Volume I: 123:19-124:12)

Mr. Juarez indicated he does not have a chemistry background at his deposition on March 8, 2018.   (Ex 3 Depo. Juarez Volume 1: 55:21-56:5)

***PVA HAD KNOWLEDGE OF THE CHEMICALS BEING UTILIZED BY SPACE X AND WAS INVOLVED IN SUBSEQUENT MODIFICATIONS TO THE MACHINE INVOLVING VARIOUS CHEMICALS***

• PVA Inc was aware of the chemicals being utilized

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

with the PVA 350. including the **transition to Arathane**.  (See Exhibit 22, PVA 4463-4481)

•       The April 11, 2012 conformal coating video with Space X boards utilized the **same chemicals as used at Space X at PVA Inc**. (See Exhibit 9 and Exhibit 22)

•       On September 19, 2013, PVA Inc. made further modifications to the subject machine including reworking the dispense system on the machine to connect one cartridge to the one gallon tank for "**automatic solvent flush of Arathane 5705**."  (Exhibit 22, PVA 23 and 24)

•       On July 30, 2009, PVA/Andrew Haraburda serviced the W3267 (subject PVA 350 machine) and this description of the work/changes included:  adding solvent flush option (6 oz cartridge, 3 way ball valve, O-ISPSI Precision Regulator, which shows **PVA Inc. was continuing to modify and upgrade the machine. Then PVA Inc. specifically recommended Space X alter the solvent to a different solvent stating "Space X may need to use a different solvent (i.e. Xylene)."** (Exhibit 22 PVA 4449-4452)

•       Pursuant to email chain dated March 13, 2012 Jonathan Urquhart **(PVA) was aware of Space X's use of Arathane 5750**  The email specifically states, "I think David has

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

spoken to you **about our customer Space X**. They build full blown rocket ships. **They plan on pre-mixing this material part A part B and a 3rd part, thinner in small batches apply to board and the purge system** because of shelf life once mixed. **Sounds screwy to me.**" They were looking for a demo on the 27th of March. (Exhibit 22, PVA 4463-4481)

• Pursuant to email dated March 15, 2012 to Jonathan Urquhart, PVA was preparing a demo on the PVA 650 and **PVA were working with the same chemical materials Space X was utilizing, but PVA did not want Space X to know and PVA indicated they were going to convey to Space X that the materials were similar, but not the exact same**. . (Exhibit 22, PVA 4463-4481)

• Pursuant to email dated March 30, 2012, the test at PVA Inc. was rescheduled to **4-11-12 to view the** 3 part mixing process. (Exhibit 22, PVA 4463-4481)

• Pursuant to email from David Gomez to Johnathan (PVA) Urquhart dated May 11, 2012 at 2:11 p.m., Space X talked about retrofitting the PVA 350, and then subsequently there was confirmation from Jon indicating **Space X wanted to duplicate what was done during the visit.** (Exhibit 22,

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

PVA 4463-4481)

•      Jon Urquart performed **the demo for Space X on 4-11-12**. (Exhibit 22, PVA 4463-4481)

•      Email dated December 2, 2014 at 9:03 a.m. Mr. Urquhart (PVA) indicated to Mr. Matupang there would be 2 demos including a coating with **Arathane 2 part mix and spray and dispensing using a 650 or Delta 6 with board head**, JDX (underfill), SVX (past), and FC100 (solder mask). (Exhibit 22)

•      On November 17, 2014, Mr. Urquhart (PVA) asked is Space X wanted to mix on the fly with **5750**?  (Exhibit 22)

•      On January 9, 2013 at 10:38 a.m. David Gomez (PVA) emailed Brian Ignaut (Space X) **doing follow up on the "two part material application project you were working on and kindly presented us with**." There was inquiry as to whether there were any developments in the first few months of 2013. (Exhibit 22)

•      On December 3, 2012 at 12:01 PM David Gomez (PVA) wrote Scott Abarta asking for the **two part material brand and part # as well as any MSDS and data sheets**.  Also, there was a request for a shot size and cycle time per part if possible. (Exhibit 22)

•      On **September 10, 2013**, Mr. Gomez (PVA) indicated

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

"they only want a 20 oz cartridge retainer & cap with spray & needle valve for the pre-mix material and 6oz cartridge retainer & cap **for the solvent, so it can flush the premixed material out right after doing a batch of boards**." Mr. Gomez indicated he was **familiar with the "fluid delivery line" because he had done it "several times."** He also indicated they were "**not there yet" for the two part coating spraying**.  (Exhibit 22)

• On September 9, 2013, Richard Bievenue (PVA) wrote Jonathan Connelly (ccing David Filbert, David Gomez, and Michael R. Leonard) indicating that **he spoke with Duc Phan (Space X) about the 350 machine and how Space X was switching to utilizing a 2 part material including Arathane 5750.  There was discussion about premising the solvents and flushing the solvent valves**.  Also, there was interest regarding a 2 component meter mix system. (Exhibit 22)

• On September 18, 2013 at 12:41 p.m., **Mr. Gomez (PVA) indicated that this is not the first time they have done a two part coating system and he thought they were putting to many resources into this. The email specifically references Arathane** 5750. (Exhibit 22)

• On September 13, 2013, from Duc Phan (Space X) to

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

Jonathan Connelly, Michael R. Leonard (ccing Richard Bievenue and David Filbert) explained the process with pictures. **Specifically, he indicated that Space X removed the hoses from the spray dispensing head and connected the hoses from the Arathane material and solvent to it.   He further explained when the Arathane material was not in use they vaped the solvent hose and connect the Arathane material hose to the other head just for a place holder.  He also explained that Arathane 5750 part A and B is mixed together and poured in the first reservoir and the second reservoir is the solvent use to thin out the mixed Arathane for spray requirement**.  (Exhibit 22)

•      On September 13, 2013 at 6:07 a.m. Jonathan Connelly wrote Duc Phan (Space X). Michael R. Leonard and ccing Richard Bievenue and David Filbert inquiring about the process, requesting a picture, **and asking if the Arathane and the solvent was being run out of the cartridges mounted on the side of the machine**. (Exhibit 22)

•      On September 10, 2013, Duc Phan (Space X)wrote Michael R. Leonard and Jonathan Connelly, **and there was a clear indication that Space X was using Arathane 5750 material with a 2 hour cure time, and they were concerned the operator would**

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

**forget to purge and rinse the material when the job is done. They were looking to automate the process after coating**.  (Exhibit 22)

o	The sales order dated September 25, 2013 indicated PVA job number SPCX2115 W3267 indicated **PVA was there to provide onsite support for Mechanical Electrical Programming Fluid Delivery.**  (Exhibit 22)

o	The sales quotation dated September 19, 2013, stated that PVA was to "**rework the dispense system on machine serial number W3267 to connect one cartridge to (1) one gallon tank for automatic solvent flush of Arathane 5705**.  This was to include 1) all hoses and fittings needed to complete the integration, 2) pneumatic ball valve for automatic solvent flush, 3) hardware and software needed for integration, and one tank. Further, PVA was to travel to Space X to install the new auto solvent flush system. (Exhibit 22)

o	The purchase order dated September 24, 2013 issued to PVA and shipping to Space X on a Space X purchase order identified a supplier part number B72-01433 and **there is a full description of the work to be done including reworking the dispense system for an automatic flush of Arathane 5750** and in similar detail as stated above.  There is

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

a separate purchase order for the travel expenditures. (Exhibit 22)

• On July 21, 2014 at 6:48 p.m. Duc Phan (Space X) emailed Rex indicating the **current machine uses both Humiseal and Arathane and there are separate spray valves for both material**. They need the pendant purge button to work for both materials. (Exhibit 22)

• PVA Inc. circulated diagram clearly states **Arathane**. Additionally, there is a quote work sheet for the 3 way assembly, pressure tank, hoses, fittings, valves as well as programming and engineering. (Ex 22, PVA 340-347)

**BELOW ARE FACTUAL ALLEGATIONS REGARDING THE MANUAL NOT BEING PRODUCED AND PVA MANUAL BEING INEFFECTIVE AND INSUFFICIENT**

• PVA specifically indicated the manual was for production and **operators not technical personnel, but it might be "useful for introduction or training**." (Exhibit 31, PVA 51)

• The manual was **only produced electronically**. (No hardcopy.) (Exhibit 31, PVA30-32)

• The Operations and Maintenance manual **does not warn to wear a face mask or protection** from any inhalants. (Exhibit 31, PVA

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

40-41)

• The manual indicates the PVA machines require that end users must **visually inspect the position of the needle with response to a calibration point and physically reposition the needle.** (Exhibit 15, PVA 69)

• The Final Shipment Sign-Off does not indicate the operating manual was sent to Space X only machine photos were taken. Also, there is an issue of facts as to whether the **exhaust switch was included.** (Exhibit 16, PVA 0272)

• The PVA manual was not **physically produced and there was no requirement to review it**. (Exhibit 31, PVA 30-32, 51)

Mr. Mendoza a former employee of Space X indicated that Space X was using Humiseal in 2010.

• (Dec. Christopher Mendoza, paragraph 2)

| 66. On January 20th, 2012, Juarez successfully completed SpaceX's training course entitled "Hazard Communication" during which he was taught that SpaceX's MSDS sheets were "readily accessible to employees in their work area during all work shifts" and were also "always available in our online archive as well as in the big blue MSDS books in the kitchen area." <br><br> SpaceX Hazard Communication Training Course. <br><br> (Dhillon Dec., 3:1-5, 61-62; Maxwell Dec., 58-59, Phan Dec., 47-48.) | 66. Objection to the extent the declarants do not have personal knowledge of the alleged facts stated in the declarations. Further, objection as to relevance because Mr. Juarez was not aware of the cause of his injuries being the defects in the PVA 350 until he was no longer working with Space X as a regular employee at the Space X location. <br><br> Disputed. Mr. Juarez did not have access to the MSDS sheets at the time |

490

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

of discovery of injury so his alleged ability to access the MSDS sheets while working at Space X is irrelevant.  Further, it is disputed because Mr. Juarez was never given MSDS sheets, he did not have access to the MSDS sheets, and he had no chemical training either formal or informal to understand the MSDS sheets. This alleged fact is also disputed to the extent that all of the declarations submitted in support of this fact lack personal knowledge that Ruben Juarez had access to the MSDS sheet,  knowledge of the MSDS sheets, and had knowledge about how to interpret toxicity information on a MSDS sheets.

- (Dec. Ruben Juarez)
- (Dec.           Christopher Mendoza)
- (Dec. Manual Gutierrez)
- (Defendant Exhibit 91)
- (Ex 3 Depo. Juarez Volume 1: 55:21-56:5)
- (Ex 3 Depo. Juarez Volume 1:   121:   22-   122:20, 122:22-123:1)
- (Ex 3 Depo. Juarez Volume I: 123:19-124:12)
- (Ex 1, Depo. Ruben Juarez Volume I, p. 49:22-50:8, 51:17, 52:8-16, 53:15-21, 54:11-55:15,  55:21-56:8, 56:14-18   ,   57:16-23-58:18, 59: 4-5, 59: 22-24,60:17-61:20, 62:1-15)
- (Ex. 2 Depo. Ruben Juarez Volume 2 p. 77:5-78:3)

**STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT (Central District)**

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

- (Ex 3 Depo. Ruben Juarez Volume 1, 49:25-50:3)
- (Ex 3 Depo. Juarez Volume 1: 66:19-22, 116:1-14)
- (Ex 3 Depo. Juarez Volume 1: 108:20-109:12)
- .   (Ex 4 Depo. Juarez Volume II, 332:7-337:14)
- (Ex 4 Depo. Juarez Volume II, 249:22-250:12)
- (Ex 4 Depo. Juarez Volume II, 262:21-263: 13)
- (Ex 4 Depo. Juarez Volume II, 262:21-263:13)
- (Ex 4 Depo. Juarez Volume II, 287:6-288:3, 288:24-289:6)
- (Ex 4 Depo. Juarez Volume II, 235:1-238: 5, 238: 19-22)
- (Ex 4 Depo. Juarez Volume II, 241:4-15)

***<u>Specific factual references with citations are set forth below for the court's convenience disputing the alleged facts that Mr. Juarez reviewed the MSDS sheets and allegedly mixed the Arathane and Humiseal</u>***.

Mr. Mendoza never saw Ruben mixing chemicals at Space X. Further, while being an employee at Space X. Mr. Mendoza was never was never trained regarding how to read, interpret, and locate MSDS sheets. Further, Mr. Mendoza indicated Space X was using Humiseal since 2010, and he was never provided any Standard

**STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**
**(Central District)**

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

Operating Procedures.  (Dec. Christopher Mendoza)

Mr. Gutierrez indicated he never saw a binder of MSDS sheets nor did he ever see any MSDS sheets in the conformal coating area. Further, he never saw any Standard of Practice while working with Space X.  Moreover, Mr. Gutierrez never saw Ruben mix chemicals, but he saw Francisco mix chemicals.  (Dec. Manuel Gutierrez)

Mr. Juarez indicated he does not have a chemistry background at his deposition on March 8, 2018.  (Ex 3 Depo. Juarez Volume 1: 55:21-56:5)

Mr. Juarez was trained by PVA Inc. to open the door of the machine to perform programming job duties.  (Ex 3 Depo. Juarez Volume 1: 121: 22-122:20, 122:22-123:1)  Mr. Juarez believe it was unsafe for the operators to open the machine door and operate the PVA 350 because they could get their hand stuck in the machine, but he did not have a chemistry background so he did not know whether the chemicals were harmful or not, and he relied on the training provided by PVA Inc. that he could put is head safely in the machine while programming the machine. (Ex 3 Depo. Juarez Volume I: 123:19-124:12)

The equipment in the rooms where Mr. Juarez was working was constantly changing.  (Ex 3 Depo. Ruben Juarez Volume 1, 49:25-50:3)

Mr Juarez tried to get a list of chemicals from Space X, which did not work out.  Afterwhich, Mr. Juarez called Francisco to get a list of chemicals he had worked with.  After Francisco provided the list of chemicals, Mr. Juarez emailed Space X requested the MSDS sheets for the

**STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**
**(Central District)**

chemicals that Francisco listed.  (Ex 4 Depo. Juarez Volume II, 332:7-337:14)

Mr. Juarez filed his worker's compensation claim based on his belief the chemical baths were making him sick as well as a solder wire until he learned only alcohol was used in the baths and only lead free solder wire were used in the filters. (Ex 4 Depo. Juarez Volume II, 262:21-263:13)

Mr. Juarez had no reason to suspect any wrongdoing on behalf of PVA and Space X, and he did not know the reason he was getting sick when he filed the worker's compensation claim.  (Ex 4 Depo. Juarez Volume II, 262:21-263:13)

Mr. Juarez first suspected he was working in a toxic work environment when he received the MSDS sheets from Space X after requesting the MSDS sheets via email after March 3, 2015.  (Ex 4 Depo. Juarez Volume II, 287:6-288:3, 288:24-289:6)

Mr. Juarez called Francisco and received a list of the chemicals that Mr. Juarez was exposed to, and he thus requested the MSDS sheets from Space X to forward to his attorney so that could figure out what was going on and what was making him sick. (Ex 4 Depo. Juarez Volume II, 235:1-238: 5, 238: 19-22)

Initially, Mr. Juarez thought his problems
were caused by alcohol chemical baths and solder wire, but later he found out that lead-free solder wire was used. Upon this discovery, Mr. Juarez reached out to Francisco and then to Space X to get the MSDS sheets.  (Ex 4 Depo. Juarez Volume II, 241:4-15)

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

67. Throughout this time period up until the complaint was filed, MSDS sheets, including for Arathane and Humiseal products, could be downloaded from multiple websites online.

Catalona Dec.; Webpages.

(Catalona Dec., 6:27-7:23 490, 492, 493, 495, 498, 500, 503, 505, 565, 571, 584, 603-610, 612-617.)

67. Disputed. During his employment at Space, Mr. Juarez was never given MSDS sheets, he did not have access to the MSDS sheets, and he had no chemical training either formal or informal to understand the MSDS sheets.

- (Dec. Ruben Juarez)
- (Dec.Christopher Mendoza)
- (Dec. Manuel Gutierrez)
- (Ex 3 Depo. Juarez Volume 1: 55:21-56:5)
- (Ex 3 Depo. Juarez Volume 1: 121: 22- 122:20, 122:22-123:1)
- (Ex 3 Depo. Juarez Volume I: 123:19-124:12)
- (Ex 1, Depo. Ruben Juarez Volume I, p. 49:22-50:8, 51:17, 52:8-16, 53:15-21, 54:11-55:15, 55:21-56:8, 56:14-18 , 57:16-23-58:18, 59: 4-5, 59: 22-24,60:17-61:20, 62:1-15)
- (Ex. 2 Depo. Ruben Juarez Volume 2 p. 77:5-78:3)
- (Ex 3 Depo. Ruben Juarez Volume 1, 49:25-50:3)
- (Ex 3 Depo. Juarez Volume 1: 66:19-22, 116:1-14)
- (Ex 3 Depo. Juarez Volume 1: 108:20-109:12)
- .(Ex 4 Depo. Juarez Volume II, 332:7-337:14)
- (Ex 4 Depo. Juarez Volume II, 249:22-250:12)
- (Ex 4 Depo. Juarez Volume II, 262:21-263: 13)

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

- (Ex 4 Depo. Juarez Volume II, 262:21-263:13)
- (Ex 4 Depo. Juarez Volume II, 287:6-288:3, 288:24-289:6)
- (Ex 4 Depo. Juarez Volume II, 235:1-238: 5, 238: 19-22)
- (Ex 4 Depo. Juarez Volume II, 241:4-15)
- (Exhibit 31, PVA 51)
- (Exhibit 31, PVA30-32)
- (Exhibit 31, PVA 40-41)
- (Exhibit 15, PVA 69)
- (Exhibit 16, PVA 0272)
- (Exhibit 31, PVA 30-32, 51)

***Specific factual allegations are set forth below in detail for the court's convenience showing even people working at Space X did not have or understand how to get MSDS sheets for the particular chemicals utilized at Space X.***

Mr. Juarez indicated he does not have a chemistry background at his deposition on March 8, 2018.  (Ex 3 Depo. Juarez Volume 1: 55:21-56:5)

Initially, Mr. Juarez did not know what chemicals were in the chemical baths, and he found out, but the chemical baths did not have anything to do with the PVA 350, and when he filed the worker's compensation claim his claim was derived from the chemical washes.  (Ex 3 Depo. Juarez Volume 1: 66:19-22, 116:1-14)

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

**STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**
**(Central District)**

Mr. Juarez called a co-worker to get a list of the chemicals utilized in the wash area at Space X, and he may have offered to give the names of the rest of the chemicals used in the conformal coating area. (Ex 3 Depo. Juarez Volume 1: 108:20-109:12)

Mr Juarez tried to get a list of chemicals from Space X, which did not work out. Afterwhich, Mr. Juarez called Francisco to get a list of chemicals he had worked with. After Francisco provided the list of chemicals, Mr. Juarez emailed Space X requested the MSDS sheets for the chemicals that Francisco listed. (Ex 4 Depo. Juarez Volume II, 332:7-337:14)

Mr. Juarez filed his worker's compensation claim based on his belief the chemical baths were making him sick as well as a solder wire until he learned only alcohol was used in the baths and only lead free solder wire were used in the filters. (Ex 4 Depo. Juarez Volume II, 262:21-263:13)

Mr. Juarez had no reason to suspect any wrongdoing on behalf of PVA and Space X, and he did not know the reason he was getting sick when he filed the worker's compensation claim. (Ex 4 Depo. Juarez Volume II, 262:21-263:13)

Mr. Juarez called Francisco and received a list of the chemicals that Mr. Juarez was exposed to, and he thus requested the MSDS sheets from Space X to forward to his attorney so that could figure out what was going on and what was making him sick. (Ex 4 Depo. Juarez Volume II, 235:1-238: 5, 238: 19-22)

Initially, Mr. Juarez thought his problems were caused by alcohol chemical baths and solder wire, but later he found out that lead-free solder wire was used. Upon this discovery,

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

| | |
|---|---|
| | Mr. Juarez reached out to Francisco and then to Space X to get the MSDS sheets.  (Ex 4 Depo. Juarez Volume II, 241:4-15) |
| 68.    In spite of all this, Juarez testified that he could not remember ever seeing the MSDS sheets, or asking to see the MSDS sheets, when he worked at SpaceX.<br><br>Juarez Depo.<br><br>(Catalona Dec., 288:22-23, 289:13-18, 290:5-7.) | 68. Disputed to the extent that these alleged facts mischaracterize Mr. Juarez's testimony as cited below.  Mr. Juarez was never given MSDS sheets, he did not have access to the MSDS sheets, and he had no chemical training either formal or informal to understand the MSDS sheets.<br><br>• (Dec.          Christopher Mendoza)<br>• (Dec. Manuel Gutierrez)<br>• (Dec. Ruben Juarez)<br>• (Ex 3 Depo. Juarez Volume 1: 55:21-56:5)<br>• (Ex 3 Depo. Juarez Volume 1:   121:   22-   122:20, 122:22-123:1)<br>• (Ex 3 Depo. Juarez Volume I: 123:19-124:12)<br>• (Ex 1, Depo. Ruben Juarez Volume I, p. 49:22-50:8, 51:17, 52:8-16, 53:15-21, 54:11-55:15,   55:21-56:8, 56:14-18    ,    57:16-23- 58:18, 59: 4-5, 59: 22- 24,60:17-61:20, 62:1-15<br>• (Ex. 2 Depo. Ruben Juarez Volume 2 p. 77:5-78:3)<br>• (Ex 3 Depo. Ruben Juarez Volume 1, 49:25-50:3)<br>• (Ex 3 Depo. Juarez Volume 1: 66:19-22, 116:1-14)<br>• (Ex 3 Depo. Juarez Volume 1: 108:20-109:12)<br>• .(Ex    4    Depo.    Juarez |

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

**STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**
**(Central District)**

Volume II, 332:7-337:14)

- (Ex 4 Depo. Juarez Volume II, 249:22-250:12)
- (Ex 4 Depo. Juarez Volume II, 262:21-263: 13)
- (Ex 4 Depo. Juarez Volume II, 262:21-263:13)
- (Ex 4 Depo. Juarez Volume II,  287:6-288:3,  288:24-289:6)
- (Ex 4 Depo. Juarez Volume II, 235:1-238: 5, 238: 19-22)
- (Ex 4 Depo. Juarez Volume II, 241:4-15)
- (Exhibit 31)
- (Exhibit 31, PVA 51)
- (Exhibit 31, PVA30-32)
- (Exhibit 31, PVA 40-41)
- (Exhibit 15, PVA 69)
- (Exhibit 16, PVA 0272)
- (Exhibit  31,  PVA  30-32, 51)

***<u>Specific factual references with citations are set forth below for the court's convenience disputing the alleged facts that Mr. Juarez reviewed the MSDS sheets and allegedly mixed the Arathane and Humiseal</u>***.

Mr. Mendoza never saw Ruben mixing chemicals at Space X. Further, while being an employee at Space X. Mr. Mendoza was never was never trained regarding how to read, interpret, and locate MSDS sheets. Further, Mr. Mendoza indicated Space X was using Humiseal since 2010, and

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

he was never provided any Standard Operating Procedures.  (Dec. Christopher Mendoza)

Mr. Gutierrez indicated he never saw a binder of MSDS sheets nor did he ever see any MSDS sheets in the conformal coating area. Further, he never saw any Standard of Practice while working with Space X.  Moreover, Mr. Gutierrez never saw Ruben mix chemicals, but he saw Francisco mix chemicals.  (Dec. Manuel Gutierrez)

Mr. Juarez indicated he does not have a chemistry background at his deposition on March 8, 2018.   (Ex 3 Depo. Juarez Volume 1: 55:21-56:5)

Mr. Juarez was trained by PVA Inc. to open the door of the machine to perform programming job duties.  (Ex 3 Depo. Juarez Volume 1: 121: 22-122:20, 122:22-123:1)

Mr. Juarez believe it was unsafe for the operators to open the machine door and operate the PVA 350 because they could get their hand stuck in the machine, but he did not have a chemistry background so he did not know whether the chemicals were harmful or not, and he relied on the training provided by PVA Inc. that he could put is head safely in the machine while programming the machine.  (Ex 3 Depo. Juarez Volume I: 123:19-124:12)

Mr Juarez tried to get a list of chemicals from Space X, which did not work out.  Afterwhich, Mr. Juarez called Francisco to get a list of chemicals he had worked with.  After Francisco provided the list of chemicals, Mr. Juarez emailed Space X requested the MSDS sheets for the chemicals that Francisco listed.  (Ex 4 Depo. Juarez Volume II, 332:7-337:14)

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

Mr. Juarez had no reason to suspect any wrongdoing on behalf of PVA and Space X, and he did not know the reason he was getting sick when he filed the worker's compensation claim.  (Ex 4 Depo. Juarez Volume II, 262:21-263:13)

Mr. Juarez first suspected he was working in a toxic work environment when he received the MSDS sheets from Space X after requesting the MSDS sheets via email after March 3, 2015.  (Ex 4 Depo. Juarez Volume II, 287:6-288:3, 288:24-289:6)

Mr. Juarez called Francisco and received a list of the chemicals that Mr. Juarez was exposed to, and he thus requested the MSDS sheets from Space X to forward to his attorney so that could figure out what was going on and what was making him sick.  (Ex 4 Depo. Juarez Volume II, 235:1-238: 5, 238: 19-22)

Initially, Mr. Juarez thought his problems were caused by alcohol chemical baths and solder wire, but later he found out that lead-free solder wire was used.  Upon this discovery, Mr. Juarez reached out to Francisco and then to Space X to get the MSDS sheets.  (Ex 4 Depo. Juarez Volume II, 241:4-15)

| | |
|---|---|
| 79.    In the operative complaint, plaintiffs allege that the PVA 350 caused Juarez to be exposed to Arathane and Humiseal because it did not "sound an alarm" or provide a warning "when the ventilation/exhaust is not in operation," and that defendant PVA "trained" Juarez "to stick his head into the spraying chamber of the conformal coating machine."<br><br>FAC. | 79. Undisputed as to the allegations listed.  Disputed that these are the only allegations listed in the complaint against PVA Inc.<br><br>• (Exhibit 38, FAC, 2:16-18)<br>• (Exhibit 38, FAC, 3:22-25)<br>• (Exhibit 38, FAC, 3:26-27)<br>• (Exhibit 38, FAC, 4:9-18)<br>• (Exhibit 38, FAC, 4:24-27)<br>• (Exhibit 38, FAC, 5:1-3) |

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

| | |
|---|---|
| (Catalona Dec., 58:22-25, 59:9-12.) | • (Exhibit 38, FAC, 6:19-23)<br>• (Exhibit 38, FAC, 8:13-14)<br>• (Exhibit 38, FAC, 8:15-25)<br>• (Exhibit 38, FAC, 8:26-9:2)<br>• (Exhibit 38, FAC, 9:15-27)<br>• (Ex 3 Depo. Juarez Volume 1: 61:21-63:14)<br>• (Ex 3 Depo. Juarez Volume I: 145:25-147:2)<br>• (Ex 3 Depo. Ruben Juarez Volume 1 : 30 :16-18, 30 :24-31 :5, 72:9-14)<br>• (Ex 3 Depo. Juarez Volume 1: 89:14-18, 90:8-11)<br>• (Ex 3 Depo. Juarez Volume 1: 121:16-19)<br>• (Ex 3 Depo. Juarez Volume 1: 121: 22- 122:20, 122:22-123:1)<br>• (Ex 3 Depo. Juarez Volume I: 123:19-124:12)<br>• .(Ex 4 Depo. Juarez Volume II: 226:12-227:6)<br>• (Ex. 4 Depo. Juarez Volume II232:1-7, 232: 23-25)<br><br>***Specific factual references with citations are set forth below for the court's convenience regarding the allegations in the First Amended Complaint***.<br><br>Before the sale of the PVA 350, PVA had samples of the chemicals to be sprayed by the PVA 350.  As a result, PVA knew or should have known the toxicity of the chemicals to be used by the PVA 350.  (FAC, Exhibit 38, 2:16-18)<br><br>PVA 350 does not have an automatic |

shutoff and does not sound an alarm when the ventilation / exhaust is not in operation.  In other words, PVA 350 is designed to continue to spray chemicals even when the ventilation / exhaust is not in operation. Furthermore, there is no warning anywhere about this. (Exhibit 38, FAC, 3:22-25)

[T]o add the automatic shutoff, PVA only needs to include an airflow sensor or something similar. (Exhibit 38, FAC, 3:26-27)

PVA trained Plaintiff RUBNE JUAREZ that in order to verify whether the equipment correctly sprayed the chemicals, Plaintiff RUBNE JUAREZ had to stick his head into the spraying chamber of the conformal coating machine to verify. He had to do this because the spray is usually transparent and is very fine with tiny thickness and therefore, a naked eye cannot identify whether or not certain part of the circuit board has been sprayed or the thickness of the spray.  The only way to verify this is to use a black light and poke his head inside the PVA 350 to check.  He could not take the circuit board out of the PVA 350 to verify this because it is wet and thus, any handling of the board would destroy the accuracy of the spray.  . (Exhibit 38, FAC, 4:9-18)

When the exhaust fan was not in operation, Plaintiff RUBEN JUAREZ unknowingly breathed in the chemicals during the verification process because his head was directly emerged inside the PVA 350 with the toxic chemicals floating inside it.  (Exhibit 38, FAC,

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

4:24-27)

In addition, when the exhaust fan was not in operation, the chemicals leaked out of the PVA 350. Plaintiff RUBEN JUAREZ on average spent about 60% of his days standing right next to the PVA 350. (Exhibit 38, FAC, 5:1-3)

On information and belief, before a benchtop dispensing system is designed and manufactured by PVA, Space X sends samples of its toxic chemicals to PVA for customization. So, PVA knew or should have known the exact type of chemicals used by its PVA 350 and the dangerous health consequences from exposure to these chemicals if the exhaust/ventilation is not in operation. (Exhibit 38, FAC, 6:19-23)

Defendants designed, manufactured, supplied, installed, inspected, and repaired the PVA 350. (Exhibit 38, FAC, 8:13-14)

First, Defendants were negligent in designing, manufacturing, supplying, installing, inspecting, and repairing the PVA 350. In particular, Defendants failed to use the amount of care in designing, manufacturing, inspecting, installing, and repairing the PVA 350 that a reasonably careful designer, manufacturer, supplier, installer, repairer would use in similar circumstances to avoid exposing Plaintiff RUBEN JUAREZ, a programmer of the PVA 350, to a foreseeable risk of harm. Furthermore, Defendants' design violated Cal-OSHA, which requires that "When spray is automatically applied without an attendant constantly on duty, the operating control of spray apparatus shall be so arranged that spray cannot

**STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**
**(Central District)**

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

be applied unless exhaust fans are in operation." (Title 8 of Cal. Code of Regulations, § 5153.)  .  (Exhibit 38, FAC, 8:15-25)

Second, Defendants knew or reasonably should have known that the PVA 350 was dangerous or was likely to be dangerous when used or misused in a reasonably foreseeable manner. Defendants failed to adequately warn of the danger.  (Exhibit 38, FAC, 8:26-9:2)

The PVA 350 contains a design defect that it does not stop spraying toxic chemicals or sound any alarm when the ventilation / exhaust is not in operation. It continues to spray toxic chemicals even when the ventilation / exhaust is not in operation without sounding any alarm about it.  It also requires the operator to put his head into the machine to check the spray. The PVA 350 also did not have warning of the potential safety hazard when the ventilation / exhaust is not in operation. The PVA 350 did not perform as safely as an ordinary consumer would have expected it to perform when used or misused in an intended or reasonably foreseeable way. Plaintiffs were harmed. The PVA's failure to perform safely was a substantial factor in causing Plaintiffs' harm.  (Exhibit 38, FAC, 9:15-27)

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| 82.    Plaintiffs allege the PVA 350 contained "no warning anywhere" about the | 82. Undisputed that Plaintiff makes this allegations. Disputed to the |

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| fact that the machine was "designed to continue to spray chemicals even when the ventilation/exhaust is not in operation." FAC. (Catalona Dec., 58:22-25, 63:15-25, 64:1-2, 64:15-21.) | extent that these are the only allegations against PVA Inc.<br><br>• (Ex 3 Depo. Ruben Juarez Volume 1 : 30 :16-18, 30 :24-31 :5, 72:9-14)<br>• (Ex 3 Depo. Juarez Volume 1: 89:14-18, 90:8-11)<br>• (Ex 3 Depo. Juarez Volume 1: 121:16-19)<br>• (Ex 3 Depo. Juarez Volume 1: 121: 22-122:20, 122:22-123:1)<br>• (Ex 3 Depo. Juarez Volume I: 123:19-124:12)<br>• (Ex 4 Depo. Juarez Volume II: 226:12-227:6)<br>• (Ex. 4 Depo. Juarez Volume II 232:1-7, 232: 23-25)<br>• (Ex 3 Depo. Juarez Volume 1: 54:11-13)<br>• (Ex 3 Depo. Juarez Volume 1: 103:18-104:10, 104:25-105:7, 107:5-24, 108:5-13)<br>• (Ex 3 Depo. Juarez Volume I: 132:16-23)<br>• (Ex 3 Depo. Juarez Volume I: 70:20-22)<br>• (Ex 3 Depo. Juarez Volume 1: 74:22-75:7)<br>• (Ex 3 Depo. Juarez |

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | Volume 1: 77:21-78:2) |
| | • (Ex 3 Depo. Juarez Volume I, 79:25-80:4) |
| | • (Ex 3 Depo. Juarez Volume I: 87:22-88:1) |
| | • (Ex 3 Depo. Juarez Volume 1: 156:15-157:2) |
| | • (Ex 3 Depo. Juarez Volume 1: 158:3-9) |
| | • (Ex 3 Depo. Juarez Volume 1: 58:4-6, 58:12-59:4) |
| | • (Ex 3 Depo. Juarez Volume 1: 61:21-63:14) |
| | • (Ex 3 Depo. Juarez Volume I: 145:25-147:2) |
| | • (See Exhibit 22, PVA 4463-4481) |
| | • (See Exhibit 9 and Exhibit 22) |
| | • (Exhibit 22, PVA 23 and 24) |
| | • (Exhibit 22 PVA 4449-4452) |
| | • (Exhibit 22 PVA 4463-4481) |
| | • (Exhibit 22, PVA 4463-4481) |
| | • (Exhibit 22, PVA 4463-4481) |
| | • (Exhibit 22, PVA 4463-4481) |
| | • (Exhibit 22, PVA 4463-4481) |
| | • (Exhibit 22, PVA 4463-4481) |

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | <ul><li>(Exhibit 22, PVA 4463-4481)</li><li>(Exhibit 22, PVA 4463-4481)</li><li>(Exhibit 22, PVA 4463-4481)</li><li>(Exhibit 22)</li><li>(Ex 22, PVA 340-347)</li><li>(Exhibit 36 PVA 4449-4452)</li><li>(Exhibit 36)</li><li>Exhibit 25, PVA 7-9, 17-29, 222-234, 250-251, 4449-4452)</li><li>(Exhibit 31, PVA30-32)</li><li>(Exhibit 15, PVA 69)</li><li>(Exhibit 16, PVA 0272)</li><li>(Exhibit 31, PVA 30-32, 51)</li><li>(Exhibit 29, PVA 63)</li><li>(Exhibit 29, PVA 64)</li><li>(Exhibit 29, PVA 220)</li><li>(See Exhibit 9 and Exhibit 22)</li><li>Exhibit 5, Video of the PVA 350 shows the machine is far too small for someone to use while wearing a ventilator.</li><li>Video Exhibit 11 shows the conformal coating process in a PVA machine in 2010.</li><li>Video Exhibit 8 shows all the different types of coating and also shows</li></ul> |

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
|  | various designs that were not defective so it is great for comparison and explanation.<br>• (Exhibit 15, PVA 69)<br>• (Exhibit 20)<br>• (Exhibit 21, PVA 4537, 4538, 4540)<br>• (Exhibit 18, PVA 40)<br>• (Exhibit 35)<br>• (Exhibit 17, PVA 63, 64, 219-220, 277, 279-280)<br>• (Exhibit 24, 4458-4462)<br>• (Exhibit 24)<br>• (Exhibit 23, PVA 1181 (Wet Film Thickness Gauge))<br>• (Exhibit 30)<br><br>***Specific factual references with citations are set forth below for the court's convenience supporting the dispute of fact regarding PVA Inc.'s failure to warn and design of a defective product***.<br><br>Mr. Juarez was trained on the PVA 650 machine. (Ex 3 Depo. Ruben Juarez Volume 1 : 30 :16-18, 30 :24-31 :5, 72:9-14)<br><br>PVA Inc. trained Mr. Juarez to put his head in the PVA 350 machine and bypass the machine. (Ex 3 Depo. Juarez Volume 1: 89:14-18, 90:8-11)<br><br>Part of Mr. Juarez would bypass the safety switch to do the programming of the PVA 350 machine. (Ex 3 Depo. Juarez Volume 1: 121:16-19) |

BALABAN & SPIELBERGER LLP<br>11999 SAN VICENTE BOULEVARD, SUITE 345<br>LOS ANGELES, CALIFORNIA 90049

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | Mr. Juarez was trained by PVA Inc. to open the door of the machine to perform programming job duties.  (Ex 3 Depo. Juarez Volume 1: 121: 22-122:20, 122:22-123:1) |
| | Mr. Juarez believe it was unsafe for the operators to open the machine door and operate the PVA 350 because they could get their hand stuck in the machine, but he did not have a chemistry background so he did not know whether the chemicals were harmful or not, and he relied on the training provided by PVA Inc. that he could put is head safely in the machine while programming the machine.  (Ex 3 Depo. Juarez Volume I: 123:19-124:12) |
| | Mr. Juarez had to place his head into the machine to see what portions were covered because he would not be able to see into the machine by just looking through the window.  (Ex 4 Depo. Juarez Volume II: 226:12-227:6) |
| | Mr. Juarez was trained in 2011 by PVA Inc. through a hands on approach on how to use the PVA 650 machine, but there was no hazardous chemical training.  (Ex. 4 Depo. Juarez Volume II232:1-7, 232: 23-25) |
| | Mr. Juarez testified at his deposition on March 8, 2018 that Space X did modify the machine to be able to spray other new products and new coating materials.  (Ex 3 Depo. Juarez Volume 1: 54:11-13) |
| | PVA 350 was modified when Mr. Juarez worked at Space X so it would spray a different coating material with PVA Inc.'s support over the telephone by installing hardware.  (Ex 3 Depo. Juarez Volume 1: 103:18-104:10, 104:25-105:7, 107:5-24, 108:5-13) |

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | At times Mr. Juarez would pass by the PVA 350 Inc. and the bypass key would be left in the machine.  (Ex 3 Depo. Juarez Volume I: 132:16-23) |
| | There were no lights inside the PVA 350 machine.  (Ex 3 Depo. Juarez Volume I: 70:20-22) |
| | The PVA 350 was programmed by a handheld controller, and it was a rudimentary interface.  (Ex 3 Depo. Juarez Volume 1: 74:22-75:7) |
| | In the first room, the ventilation for the PVA 350 was a manual switch. (Ex 3 Depo. Juarez Volume 1: 77:21-78:2) |
| | The PVA 350 was built so a programmer had to bypass the safety mechanisms to program the machine. (Ex 3 Depo. Juarez Volume I: 87:22-88:1) |
| | Mr. Juarez indicated the PVA 350 is a bad design because the boards alter in size so the programmer has to put their head inside the machine to make sure the valve is aligned.  (Ex 3 Depo. Juarez Volume 1: 156:15-157:2) |
| | The PVA 350 was defectively designed because a programmer would have to put their head inside the machine to look where the machine was spraying.  (Ex 3 Depo. Juarez Volume 1: 158:3-9) |
| | ***PVA HAD KNOWLEDGE OF THE CHEMICALS BEING UTILIZED BY SPACE X AND WAS INVOLVED IN SUBSEQUENT MODIFICATIONS TO THE MACHINE INVOLVING VARIOUS CHEMICALS*** |

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | • PVA Inc was aware of the chemicals being utilized with the PVA 350. including the **transition to Arathane**. (See Exhibit 22, PVA 4463-4481)<br><br>• The April 11, 2012 conformal coating video with Space X boards utilized the **same chemicals as used at Space X at PVA Inc**. (See Exhibit 9 and Exhibit 22)<br><br>• On September 19, 2013, PVA Inc. made further modifications to the subject machine including reworking the dispense system on the machine to connect one cartridge to the one gallon tank for "**automatic solvent flush of Arathane 5705**." (Exhibit 22, PVA 23 and 24)<br><br>• On July 30, 2009, PVA/Andrew Haraburda serviced the W3267 (subject PVA 350 machine) and this description of the work/changes included: adding solvent flush option (6 oz cartridge, 3 way ball valve, O-ISPSI Precision Regulator, which shows **PVA Inc. was continuing to modify and upgrade the machine. Then PVA Inc. specifically recommended Space X alter the solvent to a different solvent stating "Space X may need to use a different solvent (i.e. Xylene)."** (Exhibit 22 PVA 4449-4452)<br><br>• Pursuant to email chain |

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
|  | dated March 13, 2012 Jonathan Urquhart **(PVA) was aware of Space X's use of Arathane 5750**  The email specifically states, "I think David has spoken to you **about our customer Space X**.  They build full blown rocket ships.  **They plan on pre-mixing this material part A part B and a 3rd part, thinner in small batches apply to board and the purge system** because of shelf life once mixed.  **Sounds screwy to me."**  They were looking for a demo on the 27th of March.  (Exhibit 22, PVA 4463-4481)<br><br>•      Pursuant to email dated March 15, 2012 to Jonathan Urquhart, PVA was preparing a demo on the PVA 650 and **PVA were working with the same chemical materials Space X was utilizing, but PVA did not want Space X to know and PVA indicated they were going to convey to Space X that the materials were similar, but not the exact same**. .  (Exhibit 22, PVA 4463-4481)<br><br>•      Pursuant to email dated March 30, 2012, the test at PVA Inc. was rescheduled to **4-11-12 to view the** 3 part mixing process. (Exhibit 22, PVA 4463-4481)<br><br>•      Pursuant to email from David Gomez to Johnathan (PVA) Urquhart dated May 11, |

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | 2012 at 2:11 p.m., Space X talked about retrofitting the PVA 350, and then subsequently there was confirmation from Jon indicating **Space X wanted to duplicate what was done during the visit.** (Exhibit 22, PVA 4463-4481)<br><br>• Jon Urquart performed **the demo for Space X on 4-11-12**. (Exhibit 22, PVA 4463-4481)<br><br>• Email dated December 2, 2014 at 9:03 a.m. Mr. Urquhart (PVA) indicated to Mr. Matupang there would be 2 demos including a coating with **Arathane 2 part mix and spray and dispensing using a 650 or Delta 6 with board head**, JDX (underfill), SVX (past), and FC100 (solder mask). (Exhibit 22)<br><br>• On November 17, 2014, Mr. Urquhart (PVA) asked is Space X wanted to mix on the fly with **5750**? (Exhibit 22)<br><br>• On January 9, 2013 at 10:38 a.m. David Gomez (PVA) emailed Brian Ignaut (Space X) **doing follow up on the "two part material application project you were working on and kindly presented us with**." There was inquiry as to whether there were any developments in the first few months of 2013. (Exhibit 22) |

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | • On December 3, 2012 at 12:01 PM David Gomez (PVA) wrote Scott Abarta asking for the **two part material brand and part # as well as any MSDS and data sheets**.  Also, there was a request for a shot size and cycle time per part if possible. (Exhibit 22) |
| | • On **September 10, 2013**, Mr. Gomez (PVA) indicated "they only want a 20 oz cartridge retainer & cap with spray & needle valve for the pre-mix material and 6oz cartridge retainer & cap **for the solvent, so it can flush the premixed material out right after doing a batch of boards**." Mr. Gomez indicated he was **familiar with the "fluid delivery line" because he had done it "several times."** He also indicated they were "**not there yet**" for the two part coating spraying.  (Exhibit 22) |
| | • On September 9, 2013, Richard Bievenue (PVA) wrote Jonathan Connelly (ccing David Filbert, David Gomez, and Michael R. Leonard) indicating that **he spoke with Duc Phan (Space X) about the 350 machine and how Space X was switching to utilizing a 2 part material including Arathane 5750.  There was discussion about premising the solvents and flushing the solvent valves**.  Also, there was interest regarding a 2 component meter mix system. |

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT (Central District)

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | (Exhibit 22) |
| | •     On September 18, 2013 at 12:41 p.m., **Mr. Gomez (PVA) indicated that this is not the first time they have done a two part coating system and he thought they were putting to many resources into this. The email specifically references Arathane** 5750. (Exhibit 22) |
| | •     On September 13, 2013, from Duc Phan (Space X) to Jonathan Connelly, Michael R. Leonard (ccing Richard Bievenue and David Filbert) explained the process with pictures. **Specifically, he indicated that Space X removed the hoses from the spray dispensing head and connected the hoses from the Arathane material and solvent to it.   He further explained when the Arathane material was not in use they vaped the solvent hose and connect the Arathane material hose to the other head just for a place holder.  He also explained that Arathane 5750 part A and B is mixed together and poured in the first reservoir and the second reservoir is the solvent use to thin out the mixed Arathane for spray requirement**.  (Exhibit 22) |
| | •     On September 13, 2013 at 6:07 a.m. Jonathan Connelly wrote Duc Phan (Space X). Michael R. Leonard and ccing |

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | Richard Bievenue and David Filbert inquiring about the process, requesting a picture, **and asking if the Arathane and the solvent was being run out of the cartridges mounted on the side of the machine**. (Exhibit 22)<br><br>•       On September 10, 2013, Duc Phan (Space X)wrote Michael R. Leonard and Jonathan Connelly, **and there was a clear indication that Space X was using Arathane 5750 material with a 2 hour cure time, and they were concerned the operator would forget to purge and rinse the material when the job is done. They were looking to automate the process after coating**.  (Exhibit 22)<br><br>o       The sales order dated September 25, 2013 indicated PVA job number SPCX2115 W3267 indicated **PVA was there to provide onsite support for Mechanical Electrical Programming Fluid Delivery.**  (Exhibit 22)<br><br>o       The sales quotation dated September 19, 2013, stated that PVA was to "**rework the dispense system on machine serial number W3267 to connect one cartridge to (1) one gallon tank for automatic solvent flush of Arathane 5705**.  This was to include 1) all hoses and fittings needed to complete the integration, 2) |

**STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**
**(Central District)**

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | pneumatic ball valve for automatic solvent flush, 3) hardware and software needed for integration, and one tank. Further, PVA was to travel to Space X to install the new auto solvent flush system. (Exhibit 22)<br><br>o      The purchase order dated September 24, 2013 issued to PVA and shipping to Space X on a Space X purchase order identified a supplier part number B72-01433 and **there is a full description of the work to be done including reworking the dispense system for an automatic flush of Arathane 5750** and in similar detail as stated above.  There is a separate purchase order for the travel expenditures. (Exhibit 22)<br><br>•      On July 21, 2014 at 6:48 p.m. Duc Phan (Space X) emailed Rex indicating the **current machine uses both Humiseal and Arathane and there are separate spray valves for both material**.  They need the pendant purge button to work for both materials. (Exhibit 22)<br><br>•      PVA Inc. circulated diagram clearly states **Arathane**.  Additionally, there is a quote work sheet for the 3 way assembly, pressure tank, hoses, fittings, valves as well as programming and engineering. (Ex 22, PVA 340-347) |

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | **PVA INC. INSTALLED THE PVA 350 AND CONTINUED TO MODIFIED PROGRAM THROUGHOUT THE PVA 350'S LIFETIME**<br><br>• On 6-23-2009 to 6-24-2009, PVA Inc. installed and serviced the W3267 machine at Space X.  The work was performed by Andrew Haraburde.  He trained Juan Sotelo and Marsha Thompson in installation and training.  The installation check list specifically indicated various items were working, but there is an X versus a check mark on the pump and SEMEA boxes. The description of the work/changes including "**modified main program (mo2)."**  (Exhibit 36 PVA 4449-4452)<br><br>There are a series of work orders regarding modifications and sales showing PVA Inc. continued to service and support the use and modification of the PVA 350. (Exhibit 25, PVA 7-9, 17-29, 222-234, 250-251, 4449-4452)<br><br><br>**BELOW PLAINTIFFS ASSERT SPECIFIC DISPUTES OF FACT REGARDING THE PVA 350'S MACHINE DEFECTS, INADEQUATE SAFETY MEASURES, AND THE VENTILATION SYSTEM.**<br><br>• The alleged PVA safety guide states: "Some machines are equipped with an exhaust fan.  The exhaust fan is provided to exhaust fumes from the work area.  The exhaust flange should |

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | be connected to an appropriate ducting system that is capable of receiving 150 CFM.  Insufficient airflow through the exhaust system generates an error." However, **this manual was not provided in a hardcopy form to Space X based on the pictures PVA provided**.  (Exhibit 29, PVA 63)

• The Exhaust Verification Process shows **some machines** have an auto shut down.  (Exhibit 29, PVA 64)

• **A user has to visually inspect the position of a needle with respect to a calibration point and the user may have to physically reposition the needle**.  (Exhibit 29, PVA 69)

• The PVA Product Overview indicated a number of safety items are not included on the PVA 350 automatically such as: conveyor type, passive programming camera, XY fiducial camera, exhaust blower, onboard computer, and flow monitoring. (Exhibit 29, PVA 220)

• There is a picture of the module, and there appears to be an insufficient exhaust system in the back of the machine. (Exhibit 29, PVA 4537, 4538, 4539, 4540, and 4542).

• The April 11, 2012 conformal coating video with Space X boards utilized the same chemicals as used at Space X at PVA Inc. (See Exhibit 9 and Exhibit 22)

• Exhibit 5, Video of the PVA 350 shows the machine is far too small for someone to use while wearing a |

**STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT (Central District)**

BALABAN & SPIELBERGER LLP 11999 SAN VICENTE BOULEVARD, SUITE 345 LOS ANGELES, CALIFORNIA 90049

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | ventilator. |
| | • Video Exhibit 11 shows the conformal coating process in a PVA machine in 2010. |
| | • Video Exhibit 8 shows all the different types of coating and also shows various designs that were not defective so it is great for comparison and explanation. |
| | • The comparison PVA 350 shows there is a **low exhaust and no conveyer** belt option on the PVA 350. (Exhibit 20) |
| | **THE MANUAL AND PVA INC. PROVIDED AN INADEQUATE WARNING** |
| | The PVA Manual does not warn users to use a face mask or ventilator. (Exhibit 18, PVA 40) |
| | • The warning on the sides states, "WARNING, Hazardous voltage. Power shall be disconnected before enclosure is opened.  Enclosure shall be closed before power is restored." (Exhibit 35) |
| | • • **Not all PVA 350s have the alleged safety features including an exhaust fan/conveyer belt/an auto shut down/exhaust blower/flow monitoring, and cameras**.  Further, pursuant to training provided by PVA Inc., there are **bypass systems that must be utilized so programmers can complete their jobs**.  (Exhibit 17, PVA 63, 64, 219-220, 277, 279-280) |

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | **PVA INC. PROVIDED TRAINING AND TRAINED MR. JUAREZ TO PUT HIS HEAD INSIDE THE PVA MACHINE WITHOUT ANY PROTECTIVE GEAR**<br><br>Ruben Juarez attended training at PVA Inc., and PVA trained him to put his head inside the machine while spraying without any protective gear. He attended these trainings while working for EMI and Space X. (Exhibit 24, 4458-4462)<br><br>**END USERS MUST PUT THEIR HEAD INTO THE PVA 350 MACHINE TO CHECK THE THICKNESS OF THE CHEMICAL COATING AND TO SPRAY THE PROPER AREAS OF THE CIRCUIT BOARD**<br><br>•     The Wet Film Thickness Gauge shows how Mr. Juarez **had to measure the level of the fluid on the boards and is relevant to show he had to stick his head in the machine**. (Exhibit 23, PVA 1181 (Wet Film Thickness Gauge))<br><br>•     Pursuant to email dated December 15, 2014 on 11:47 a.m. Bievenue emailed to Matupang indicating the **only way to know for sure the mix ratio is coming out of a spray valve is with flow monitors and if you don't have flow monitors you are "spraying blind."** (Exhibit 30)<br><br>***Specific citations are listed below for the court's convenience from the First Amended Complaint.*** |

BALABAN & SPIELBERGER LLP<br>11999 SAN VICENTE BOULEVARD, SUITE 345<br>LOS ANGELES, CALIFORNIA 90049

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | Before the sale of the PVA 350, PVA had samples of the chemicals to be sprayed by the PVA 350.  As a result, PVA knew or should have known the toxicity of the chemicals to be used by the PVA 350.  (FAC, Exhibit 38, 2:16-18) |
| | PVA 350 does not have an automatic shutoff and does not sound an alarm when the ventilation / exhaust is not in operation.  In other words, PVA 350 is designed to continue to spray chemicals even when the ventilation / exhaust is not in operation.  Furthermore, there is no warning anywhere about this. (Exhibit 38, FAC, 3:22-25) |
| | [T]o add the automatic shutoff, PVA only needs to include an airflow sensor or something similar. (Exhibit 38, FAC, 3:26-27) |
| | PVA trained Plaintiff RUBEN JUAREZ that in order to verify whether the equipment correctly sprayed the chemicals, Plaintiff RUBEN JUAREZ had to stick his head into the spraying chamber of the conformal coating machine to verify. He had to do this because the spray is usually transparent and is very fine with tiny thickness and therefore, a naked eye cannot identify whether or not certain part of the circuit board has been sprayed or the thickness of the spray.  The only way to verify this is to use a black light and poke his head inside the PVA 350 to check.  He |

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | could not take the circuit board out of the PVA 350 to verify this because it is wet and thus, any handling of the board would destroy the accuracy of the spray.  . (Exhibit 38, FAC, 4:9-18)<br><br>When the exhaust fan was not in operation, Plaintiff RUBEN JUAREZ unknowingly breathed in the chemicals during the verification process because his head was directly emerged inside the PVA 350 with the toxic chemicals floating inside it. (Exhibit 38, FAC, 4:24-27)<br><br>In addition, when the exhaust fan was not in operation, the chemicals leaked out of the PVA 350.  Plaintiff RUBEN JUAREZ on average spent about 60% of his days standing right next to the PVA 350.  (Exhibit 38, FAC, 5:1-3)<br><br>On information and belief, before a benchtop dispensing system is designed and manufactured by PVA, Space X sends samples of its toxic chemicals to PVA for customization. So, PVA knew or should have known the exact type of chemicals used by its PVA 350 and the dangerous health consequences from exposure to these chemicals if the exhaust/ventilation is not in operation.  (Exhibit 38, FAC, 6:19-23)<br><br>Defendants designed, manufactured, supplied, installed, inspected, and repaired the PVA 350.  (Exhibit 38, FAC, 8:13-14)<br><br>First, Defendants were negligent in designing, manufacturing, supplying, |

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | installing, inspecting, and repairing the PVA 350. In particular, Defendants failed to use the amount of care in designing, manufacturing, inspecting, installing, and repairing the PVA 350 that a reasonably careful designer, manufacturer, supplier, installer, repairer would use in similar circumstances to avoid exposing Plaintiff RUBEN JUAREZ, a programmer of the PVA 350, to a foreseeable risk of harm. Furthermore, Defendants' design violated Cal-OSHA, which requires that "When spray is automatically applied without an attendant constantly on duty, the operating control of spray apparatus shall be so arranged that spray cannot be applied unless exhaust fans are in operation." (Title 8 of Cal. Code of Regulations, § 5153.) . (Exhibit 38, FAC, 8:15-25)<br><br>Second, Defendants knew or reasonably should have known that the PVA 350 was dangerous or was likely to be dangerous when used or misused in a reasonably foreseeable manner. Defendants failed to adequately warn of the danger. (Exhibit 38, FAC, 8:26-9:2)<br>The PVA 350 contains a design defect that it does not stop spraying toxic chemicals or sound any alarm when the ventilation / exhaust is not in operation. It continues to spray toxic chemicals even when the ventilation / exhaust is not in operation without sounding any alarm about it. It also requires the operator to put his head into the machine to check the spray. The PVA 350 also did not have |

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

**STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT (Central District)**

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | warning of the potential safety hazard when the ventilation / exhaust is not in operation. The PVA 350 did not perform as safely as an ordinary consumer would have expected it to perform when used or misused in an intended or reasonably foreseeable way. Plaintiffs were harmed. The PVA's failure to perform safely was a substantial factor in causing Plaintiffs' harm.  (Exhibit 38, FAC, 9:15-27) |

## III. STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO DEFENDANT'S PARTIAL MOTION FOR SUMMARY JUDGMENT (Central District) BASED ON PLAINTIFFS' STRICT PRODUCT LIABILITY CAUSE OF ACTION

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| 1.      Plaintiffs reside in Granada Hills, California, in the County of Los Angeles.<br><br>Complaint, Notice of Removal and First Amended Complaint.<br><br>(Declaration of Alex P. Catalona ("Catalona Dec."), 12:22-23, 23:11-12, 57:2-4.) | 1.  Undisputed. |
| 2.      PVA is headquartered and incorporated in the State of New York.<br><br>Notice of Removal and Declaration of Jonathan Urquhart.<br><br>(Catalona Dec., 23:13-15, 24:17-19; Declaration of Jonathan Urquhart ("Urquhart Dec."), 1:4-7.) | 2.      Undisputed. |

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT (Central District)

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

| | |
|---|---|
| 3.     The PVA 350 is a conformal coating machine manufactured by PVA which is known in the industry as a "workcell."<br><br>Urquhart Dec. and PVA manual.<br><br>(Urquhart Dec., 2:4-5, 77.) | 3.     Undisputed as to the PVA 350 being a conformal coating machine manufactured by PVA. However, disputed to the extent the fact infers the PVA 350 is not a selective conformal coating machine.  This selective conformal coating machine required Mr. Juarez to place his head in the machine to verify the spray was only sprayed on the selected areas versus a conformal coating machine that would not have required that step.<br><br>• (Dec. of Ruben Juarez)<br><br>Disputed to the extent the PVA350 is a work cell.  The PVA 350 is a **standalone device**, which is a mechanism or system that can perform its function without the need of another device, computer, or connection.  In contrast, a work cell is a term used in the manufacturing industry for an arrangement of resources in manufacturing to improve quality, speed, and the costs of the processes.<br><br>• (Dec. Ruben Juarez)<br><br>• Mr. Juarez never called the machine a work cell.  (Ex 4 Depo. Juarez Volume II: 204 :4-5) |
| 4.     PVA sold a single PVA 350 to SpaceX in 2009.<br><br>Urquhart Dec. and March, 2018 Deposition of Ruben Juarez ("Juarez Depo."), and exhibits.<br><br>(Urquhart Dec., 1:11-18, 1:25-27, 5-6, 8, 12- | 4.  Undisputed to the extent PVA sold a PVA 350 to Space X in 2009.<br><br>Disputed to the extent PVA Inc. attempts to infer that PVA Inc. only sold a single PVA |

| | |
|---|---|
| 14, 23; Catalona Dec., 265:21-24, 266:13-18, 267:19-24, 359-61.). | 350 to Space X in 2009 and disappeared and never interacted with Space X again. In fact, PVA Inc. sold additional equipment, parts, and machines to Space X and had ongoing communications with Space X after 2009 and continued to service and modify the PVA 350 without ever warning the user of the dangers of the product. (Exhibit 25, Sales Documents, Order, and Quotations)<br><br>• (Exhibit 25, PVA 222-234)<br>• (Exhibit 25, PVA 226)<br>• (Exhibit 25, PVA 228)<br>• (Exhibit 25, PVA 230-232)<br>• (Exhibit 32)<br>• (Exhibit 33)<br>• (Exhibit 34, PVA 420-421, 422, 423, 1183-1304)<br>• (Exhibit 34, PVA 423)<br><br>***The evidence below demonstrates the ongoing relationship between PVA and Space X regarding the additional parts, machines, and services provided by Space X. Specific factual references with citations are set forth below for the court's convenience***.<br><br>PVA Invoices and Sales Docs to Spacex are attached hereto. (Exhibit 25, PVA 222-234)<br><br>On 5-29-12, PVA purchase order included the FC100-MC (front |

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

closing dispenser), metal cartridge retainer, mounting brackets, fitting package to connect one cartridge retainer to one valve, 6oz plastic cartridge, one gallon pressure tank for flushing solvent, hoses and fittings. (Exhibit 25)

Invoice dated 5/23/13 shows the purchase of a rework kit (B72-1242) and a side levan window number 114-3546. (Exhibit 25, PVA 226)

Purchase order dated 5/7/13 shows a purchase for a B72-1242 for a wire two black LED strips with one off switch and lexon windows. (Exhibit 25, PVA 228)

Invoice dated 10/11/13 shows a solvent flush machine for W3267 B72-01433 as well as the purchase orders. (Exhibit 25, PVA 230-232)

**PVA INC. HAD AN ONGOING RELATIONSHIP WITH SPACEX AND SOLD MORE MACHINES THAN PVA 350**

On December 7, 2012, Mr. Ignaut from SpaceX sent an email to David Gomez and Scott Abarta (PVA) inquiring as to how many dispense head (PC200) they can install on a single "PVA3000?" (Exhibit 33)

On December 7, 2012 at 8:59 A.M. there is an email from David Gomez (PVA) to Brian Ignaut (Space X) and Scott Abarta asking Space X to review the budget proposal for the MX3000 and PVA 3000 robot indicating if there is a 1 to 1 mix proportion, low viscosity, and no fillers or corrosive chemicals in it, the equipment configuration will do just fine. (Exhibit 33)

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

| | |
|---|---|
| | On December 3, 2012 Scott Abarta emailed David Gomez (PVA) with what appears to be a cc to Brian Ignaut with Space X, but the email is indicating it is from Brian Ignaut (Responsible Engineer with Solar Arrays) requesting the need for a quote for the following PVA equipment: Mx 3000 MMD machine, PVA 200 dispense valve, and PVA 3000 dispense robot. (Exhibit 33) **BILLS OF MATERIALS SHOW ONGOING RELATIONSHIP BETWEEN PVA INC. AND SPACE X** There are PVA Materials being ordered by Space X in 5/6/03, 4/3/06, 5/8/09, 6/14/12, 10/14/13, 10/8/13, and 12/30/10.   (Exhibit 34, PVA 420-421, 422, 423, 1183-1304) Specifically, PVA Bill of Material dated 6/14/12 showed a purchase of PVA Inc products including the following gallons, fittings, hose, ball valve, cap, cartridge, fitting, fitting, tubing, regulator, air pressure gauge, felon tube, FCS300-ES extended spray, and FC100 MS dispense valve. (Exhibit 34, PVA 423) |
| 5.      This machine coats printed circuit boards with a thin polymeric film that "conforms" to the board's contours to protect against moisture, dust, chemicals and temperature extremes. Urquhart Dec. (Urquhart Dec., 1:14-17.). | 5. Undisputed. |
| 6.      When it was manufactured, SpaceX specified that the machine would spray Electrolube "NVOC," a 100% solids content material that did not contain solvent material (such as Humiseal or Arathane.) Urquhart Dec., and exhibits. | 6. Disputed to the extent this statement attempts to infer that PVA Inc. was unaware how the PVA 350 was utilized by Space X with chemicals (such as Arathane and Humiseal) as set forth in |

**STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**
(Central District)

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

| (Urquhart Dec., 28, 30, 63-64.) | numerous emails and even on plans produced by PVA Inc. |
|---|---|
| | • (Exhibit 22) |
| | • (See Exhibit 22, PVA 4463-4481) |
| | • (See Exhibit 9 and Exhibit 22) |
| | • (Exhibit 22, PVA 23 and 24) |
| | • (Exhibit 22 PVA 4449-4452) |
| | • (Exhibit 22 PVA 4463-4481) |

On July 30, 2009, PVA Inc. employee Andrew Haraburda serviced the W3267 and recommended that Space X **utilize a different solvent because the "needle is still clogging in the solvent cup" and he recommended Xylene**. The MSDS sheet for **Xylene** shows extensive toxic effects on individuals.  PVA Inc. was aware the selective conformal coating machines were often utilized with toxic chemicals.

• (Exhibit 22, PVA 4449-4452)

• (Exhibit 28, Exemplar MSDS sheet for Xylene)

***Specific factual references with citations are set forth below for the court's convenience.***

***PVA HAD KNOWLEDGE OF THE CHEMICALS BEING UTILIZED BY SPACE X AND WAS INVOLVED IN SUBSEQUENT MODIFICATIONS TO THE***

**STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**
**(Central District)**

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

### *MACHINE INVOLVING VARIOUS CHEMICALS*

• PVA Inc was aware of the chemicals being utilized with the PVA 350. including the transition to Arathane. (See Exhibit 22, PVA 4463-4481)

• The April 11, 2012 conformal coating video with Space X boards utilized the same chemicals as used at Space X at PVA Inc. (See Exhibit 9 and Exhibit 22)

• On September 19, 2013, PVA Inc. made further modifications to the subject machine including reworking the dispense system on the machine to connect one cartridge to the one gallon tank for "automatic solvent flush of Arathane 5705." (Exhibit 22, PVA 23 and 24)

• On July 30, 2009, PVA/Andrew Haraburda serviced the W3267 (subject PVA 350 machine) and this description of the work/changes included: adding solvent flush option (6 oz cartridge, 3 way ball valve, O-ISPSI Precision Regulator, **which shows PVA Inc. was continuing to modify and upgrade the machine. Then PVA Inc. specifically recommended Space X alter the solvent to a different solvent stating "Space X may need to use a different solvent** (i.e. Xylene)." (Exhibit 22 PVA 4449-4452)

**STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT (Central District)**

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

•      Pursuant to email chain dated March 13, 2012 Jonathan Urquhart **(PVA) was aware of Space X's use of Arathane 5750**   The email specifically states, "I think David has spoken to you **about our customer Space X**.  They build full blown rocket ships. **They plan on pre-mixing this material part A part B and a 3rd part, thinner in small batches apply to board and the purge system** because of shelf life once mixed.  **Sounds screwy to me.**"  They were looking for a demo on the 27th of March.  (Exhibit 22, PVA 4463-4481)

•      Pursuant to email dated March 15, 2012 to Jonathan Urquhart, PVA was preparing a demo on the PVA 650 and **PVA were working with the same chemical materials Space X was utilizing, but PVA did not want Space X to know and PVA indicated they were going to convey to Space X that the materials were similar, but not the exact same**.  .  (Exhibit 22, PVA 4463-4481)

•      Pursuant to email dated March 30, 2012, the test at PVA Inc. was rescheduled to 4-11-12 to view the 3 part mixing process. (Exhibit 22, PVA 4463-4481)

•      Pursuant to email from David Gomez to Johnathan (PVA) Urquhart dated May 11, 2012 at 2:11 p.m., Space X talked about retrofitting the

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

PVA 350, and then subsequently there was confirmation from Jon indicating **Space X wanted to duplicate what was done during the visit.** (Exhibit 22, PVA 4463-4481)

• Jon Urquart performed the demo for Space X on 4-11-12. (Exhibit 22, PVA 4463-4481)

• Email dated December 2, 2014 at 9:03 a.m. Mr. Urquhart (PVA) indicated to Mr. Matupang there would be 2 demos including a coating with **Arathane 2 part mix and spray and dispensing using a 650 or Delta 6 with board head**, JDX (underfill), SVX (past), and FC100 (solder mask). (Exhibit 22)

• On November 17, 2014, Mr. Urquhart (PVA) asked is Space X wanted to mix on the fly with **5750**? (Exhibit 22)

• On January 9, 2013 at 10:38 a.m. David Gomez (PVA) emailed Brian Ignaut (Space X) **doing follow up on the "two part material application project you were working on and kindly presented us with**." There was inquiry as to whether there were any developments in the first few months of 2013. (Exhibit 22)

• On December 3, 2012 at 12:01 PM David Gomez (PVA) wrote Scott Abarta asking for the **two part material brand and part # as**

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

**well as any MSDS and data sheets**.  Also, there was a request for a shot size and cycle time per part if possible.  (Exhibit 22)

• On **September 10, 2013**, Mr. Gomez (PVA) indicated "they only want a 20 oz cartridge retainer & cap with spray & needle valve for the pre-mix material and 6oz cartridge retainer & cap **for the solvent, so it can flush the premixed material out right after doing a batch of boards**." Mr. Gomez indicated he was **familiar with the "fluid delivery line" because he had done it "several times."** He also indicated they were "**not there yet" for the two part coating spraying**. (Exhibit 22)

• On September 9, 2013, Richard Bievenue (PVA) wrote Jonathan Connelly (ccing David Filbert, David Gomez, and Michael R. Leonard) indicating that **he spoke with Duc Phan (Space X) about the 350 machine and how Space X was switching to utilizing a 2 part material including Arathane 5750. There was discussion about premising the solvents and flushing the solvent valves**. Also, there was interest regarding a 2 component meter mix system.  (Exhibit 22)

• On September 18, 2013 at 12:41 p.m., **Mr. Gomez (PVA) indicated that this is not the first time they have**

**STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**
**(Central District)**

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

**done a two part coating system and he thought they were putting to many resources into this.  The email specifically references Arathane** 5750.  (Exhibit 22)

•       On September 13, 2013, from Duc Phan (Space X) to Jonathan Connelly, Michael R. Leonard (ccing Richard Bievenue and David Filbert) explained the process with pictures. **Specifically, he indicated that Space X removed the hoses from the spray dispensing head and connected the hoses from the Arathane material and solvent to it.  He further explained when the Arathane material was not in use they vaped the solvent hose and connect the Arathane material hose to the other head just for a place holder. He also explained that Arathane 5750 part A and B is mixed together and poured in the first reservoir and the second reservoir is the solvent use to thin out the mixed Arathane for spray requirement**.  (Exhibit 22)

•       On September 13, 2013 at 6:07 a.m. Jonathan Connelly wrote Duc Phan (Space X). Michael R. Leonard and ccing Richard Bievenue and David Filbert inquiring about the process, requesting a picture, **and asking if the Arathane and the solvent was being run out of the cartridges mounted on the side of the**

536

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

**machine**.  (Exhibit 22)

•      On September 10, 2013, Duc Phan (Space X)wrote Michael R. Leonard and Jonathan Connelly, **and there was a clear indication that Space X was using Arathane 5750 material with a 2 hour cure time, and they were concerned the operator would forget to purge and rinse the material when the job is done.  They were looking to automate the process after coating**. (Exhibit 22)

o      The sales order dated September 25, 2013 indicated PVA job number SPCX2115 W3267 indicated **PVA was there to provide onsite support for Mechanical Electrical Programming Fluid Delivery.**  (Exhibit 22)

o      The sales quotation dated September 19, 2013, stated that PVA was to "**rework the dispense system on machine serial number W3267 to connect one cartridge to (1) one gallon tank for automatic solvent flush of Arathane 5705**.  This was to include 1) all hoses and fittings needed to complete the integration, 2) pneumatic ball valve for automatic solvent flush, 3) hardware and software needed for integration, and one tank. Further, PVA was to travel to Space X to install the new auto solvent flush system. (Exhibit

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

|  |  |
|---|---|
|  | 22) |
|  | o      The purchase order dated September 24, 2013 issued to PVA and shipping to Space X on a Space X purchase order identified a supplier part number B72-01433 and **there is a full description of the work to be done including reworking the dispense system for an automatic flush of Arathane 5750** and in similar detail as stated above.  There is a separate purchase order for the travel expenditures. (Exhibit 22) |
|  | •      On July 21, 2014 at 6:48 p.m. Duc Phan (Space X) emailed Rex indicating the **current machine uses both Humiseal and Arathane and there are separate spray valves for both material**. They need the pendant purge button to work for both materials. (Exhibit 22) |
|  | •      PVA Inc. circulated diagram clearly states **Arathane**.  Additionally, there is a quote work sheet for the 3 way assembly, pressure tank, hoses, fittings, valves as well as programming and engineering.  (Ex 22, PVA 340-347) |
| 17.    SpaceX is a designer and manufacturer of advanced rockets and spacecraft.<br><br>Declaration of Gregory Maxwell. | 18. Undisputed. |

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

| | |
|---|---|
| (Declaration of Gregory Maxwell ("Maxwell Dec."), 1:5-6.) | |
| 18.     After purchasing the PVA 350 in 2009, SpaceX did not begin to use Humiseal and Arathane materials, which were not originally specified for the machine, until 2012 at the earliest.<br><br>Urquhart Dec., and exhibits; Declaration of David Hwang ("Hwang Dec.") and exhibits.<br><br>(Urquhart Dec., 3:15-17, 28, 63, 230; Hwang Dec., 2:6-12, 35-41.) | 18. Disputed.  Humiseal was being utilized before Mr. Juarez started working with Space X in 2010.<br><br>• (Dec. Christopher Mendoza, paragraph 2)<br>• (Exhibit 46)<br>• (Ex 3 Depo. Juarez Volume I: 113 :1-3)<br>• (Ex 4 Depo. Juarez Volume II: 224:14-17)<br>• (See Exhibit 22, PVA 4463-4481)<br>• (See Exhibit 9 and Exhibit 22)<br>• (Exhibit 22, PVA 23 and 24)<br>• (Exhibit 22 PVA 4449-4452)<br>• (Exhibit 22 PVA 4463-4481)<br>• (Exhibit 22)<br>• (Exhibit 36 PVA 4449-4452)<br>• (Exhibit 36)<br>• (Exhibit 36, PVA 1727-1731)<br>• (Exhibit 25, PVA 7-9, 17-29, 222-234, 250-251, 4449-4452)<br><br>***Specific factual references with citations are set forth below for the court's convenience***.<br><br>Mr. Mendoza a **former employee of Space X indicated that Space X was using Humiseal in 2010**.<br><br>• (Dec. Christopher Mendoza, paragraph 2)<br><br>**DEPOSITION TESTIMONY REGARDING MR. JUAREZ' UNDERSTANDING IN 2015 OF THE DIFFERENT CHEMICALS HE WAS EXPOSED TO WHILE WORKING WITH PVA INC.** |

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

Mr. Juarez utilized HumiSeal and Arathane with the PVA 350.  (Ex 3 Depo. Juarez Volume I: 113 :1-3)

Mr. Juarez was exposed to Arathane products at Space X while programming the machine.  (Ex 4 Depo. Juarez Volume II: 224:14-17)

***PVA HAD KNOWLEDGE OF THE CHEMICALS BEING UTILIZED BY SPACE X AND WAS INVOLVED IN SUBSEQUENT MODIFICATIONS TO THE MACHINE INVOLVING VARIOUS CHEMICALS***

•    PVA Inc was aware of the chemicals being utilized with the PVA 350. including the **transition to Arathane**. (See Exhibit 22, PVA 4463-4481)

•    The April 11, 2012 conformal coating video with Space X boards utilized the **same chemicals as used at Space X at PVA Inc**. (See Exhibit 9 and Exhibit 22)

•    On September 19, 2013, PVA Inc. made further modifications to the subject machine including reworking the dispense system on the machine to connect one cartridge to the one gallon tank for "**automatic solvent flush of Arathane 5705**."  (Exhibit 22, PVA 23 and 24)

•    On July 30, 2009, PVA/Andrew Haraburda serviced the W3267 (subject PVA 350 machine) and this description of the work/changes included: adding solvent flush option (6

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

oz cartridge, 3 way ball valve, O-ISPSI Precision Regulator, which shows **PVA Inc. was continuing to modify and upgrade the machine. Then PVA Inc. specifically recommended Space X alter the solvent to a different solvent stating "Space X may need to use a different solvent (i.e. Xylene)."** (Exhibit 22 PVA 4449-4452)

• Pursuant to email chain dated March 13, 2012 Jonathan Urquhart **(PVA) was aware of Space X's use of Arathane 5750**  The email specifically states, "I think David has spoken to you **about our customer Spac**e X.  They build full blown rocket ships. **They plan on pre-mixing this material part A part B and a 3rd part, thinner in small batches apply to board and the purge system** because of shelf life once mixed.  **Sounds screwy to me.**"  They were looking for a demo on the 27th of March.  (Exhibit 22, PVA 4463-4481)

• Pursuant to email dated March 15, 2012 to Jonathan Urquhart, PVA was preparing a demo on the PVA 650 and **PVA were working with the same chemical materials Space X was utilizing, but PVA did not want Space X to know and PVA indicated they were going to convey to Space X that the materials were similar, but not the exact same**.  .  (Exhibit 22,

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

PVA 4463-4481)

•     Pursuant to email dated March 30, 2012, the test at PVA Inc. was rescheduled to **4-11-12 to view the** 3 part mixing process. (Exhibit 22, PVA 4463-4481)

•     Pursuant to email from David Gomez to Johnathan (PVA) Urquhart dated May 11, 2012 at 2:11 p.m., Space X talked about retrofitting the PVA 350, and then subsequently there was confirmation from Jon indicating **Space X wanted to duplicate what was done during the visit.** (Exhibit 22, PVA 4463-4481)

•     Jon Urquart performed **the demo for Space X on 4-11-12**. (Exhibit 22, PVA 4463-4481)

•     Email dated December 2, 2014 at 9:03 a.m. Mr. Urquhart (PVA) indicated to Mr. Matupang there would be 2 demos including a coating with **Arathane 2 part mix and spray and dispensing using a 650 or Delta 6 with board head**, JDX (underfill), SVX (past), and FC100 (solder mask). (Exhibit 22)

•     On November 17, 2014, Mr. Urquhart (PVA) asked is Space X wanted to mix on the fly with **5750**?  (Exhibit 22)

•     On January 9, 2013 at 10:38 a.m. David Gomez (PVA) emailed Brian Ignaut (Space X) **doing follow up on**

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

the **"two part material application project you were working on and kindly presented us with**." There was inquiry as to whether there were any developments in the first few months of 2013. (Exhibit 22)

• On December 3, 2012 at 12:01 PM David Gomez (PVA) wrote Scott Abarta asking for the **two part material brand and part # as well as any MSDS and data sheets**. Also, there was a request for a shot size and cycle time per part if possible. (Exhibit 22)

• On **September 10, 2013**, Mr. Gomez (PVA) indicated "they only want a 20 oz cartridge retainer & cap with spray & needle valve for the pre-mix material and 6oz cartridge retainer & cap **for the solvent, so it can flush the premixed material out right after doing a batch of boards**." Mr. Gomez indicated he was **familiar with the "fluid delivery line" because he had done it "several times."** He also indicated they were "**not there yet" for the two part coating spraying**. (Exhibit 22)

• On September 9, 2013, Richard Bievenue (PVA) wrote Jonathan Connelly (ccing David Filbert, David Gomez, and Michael R. Leonard) indicating that **he spoke with Duc Phan (Space X) about the 350 machine and how**

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

**Space X was switching to utilizing a 2 part material including Arathane 5750. There was discussion about premising the solvents and flushing the solvent valves**. Also, there was interest regarding a 2 component meter mix system.  (Exhibit 22)

•       On September 18, 2013 at 12:41 p.m., **Mr. Gomez (PVA) indicated that this is not the first time they have done a two part coating system and he thought they were putting to many resources into this.  The email specifically references Arathane** 5750.  (Exhibit 22)

•       On September 13, 2013, from Duc Phan (Space X) to Jonathan Connelly, Michael R. Leonard (ccing Richard Bievenue and David Filbert) explained the process with pictures. **Specifically, he indicated that Space X removed the hoses from the spray dispensing head and connected the hoses from the Arathane material and solvent to it.   He further explained when the Arathane material was not in use they vaped the solvent hose and connect the Arathane material hose to the other head just for a place holder. He also explained that Arathane 5750 part A and B is mixed together and poured in the first reservoir and the second reservoir is the solvent use to thin out the mixed Arathane for spray**

544

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

**requirement**.  (Exhibit 22)

• On September 13, 2013 at 6:07 a.m. Jonathan Connelly wrote Duc Phan (Space X). Michael R. Leonard and ccing Richard Bievenue and David Filbert inquiring about the process, requesting a picture, **and asking if the Arathane and the solvent was being run out of the cartridges mounted on the side of the machine**.  (Exhibit 22)

• On September 10, 2013, Duc Phan (Space X)wrote Michael R. Leonard and Jonathan Connelly, **and there was a clear indication that Space X was using Arathane 5750 material with a 2 hour cure time, and they were concerned the operator would forget to purge and rinse the material when the job is done.  They were looking to automate the process after coating**. (Exhibit 22)

o The sales order dated September 25, 2013 indicated PVA job number SPCX2115 W3267 indicated **PVA was there to provide onsite support for Mechanical Electrical Programming Fluid Delivery.**  (Exhibit 22)

o The sales quotation dated September 19, 2013, stated that PVA was to "**rework the dispense system on machine serial number W3267 to connect one cartridge to (1) one gallon**

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

**tank for automatic solvent flush of Arathane 5705**. This was to include 1) all hoses and fittings needed to complete the integration, 2) pneumatic ball valve for automatic solvent flush, 3) hardware and software needed for integration, and one tank. Further, PVA was to travel to Space X to install the new auto solvent flush system. (Exhibit 22)

o       The purchase order dated September 24, 2013 issued to PVA and shipping to Space X on a Space X purchase order identified a supplier part number B72-01433 and **there is a full description of the work to be done including reworking the dispense system for an automatic flush of Arathane 5750** and in similar detail as stated above.  There is a separate purchase order for the travel expenditures. (Exhibit 22)

•        On July 21, 2014 at 6:48 p.m. Duc Phan (Space X) emailed Rex indicating the **current machine uses both Humiseal and Arathane and there are separate spray valves for both material**. They need the pendant purge button to work for both materials. (Exhibit 22)

•        PVA Inc. circulated diagram clearly states **Arathane**.  Additionally, there is a quote work sheet for the 3 way assembly, pressure tank,

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049



|  | hoses, fittings, valves as well as programming and engineering. (Ex 22, PVA 340-347)<br><br>**PVA INC. INSTALLED THE PVA 350 AND CONTINUED TO MODIFIED PROGRAM THROUGHOUT THE PVA 350'S LIFETIME**<br><br>• On 6-23-2009 to 6-24-2009, PVA Inc. installed and serviced the W3267 machine at Space X. The work was performed by Andrew Haraburde. He trained Juan Sotelo and Marsha Thompson in installation and training. The installation check list specifically indicated various items were working, but there is an X versus a check mark on the pump and SEMEA boxes. The description of the work/changes including "**modified main program (mo2).**" (Exhibit 36 PVA 4449-4452)<br><br>There are a series of work orders regarding modifications and sales showing PVA Inc. continued to service and support the use and modification of the PVA 350. (Exhibit 25, PVA 7-9, 17-29, 222-234, 250-251, 4449-4452) |

| **MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS** | **RESPONSE TO OPPOSITION** |
|---|---|
| 83.    The MSDS sheets for Arathane and Humiseal materials referenced and incorporated into plaintiffs' allegations in the complaint show that these chemicals were manufactured and supplied by third parties.<br><br>FAC; | 83. Disputed to the extent this fact infers Plaintiffs' claims are derived from the chemicals. It is the negligence of PVA Inc. as well as the defects in the PVA 350 that created dangerous conditions for end |

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| (Catalona Dec., 60:4-26; 628, 644, 646, 659, 666, 668, 673.) | users. <br><br> • (Ex 3 Depo. Ruben Juarez Volume 1: 30:16-18, 30:24-31:5, 72:9-14) <br> • (Ex 3 Depo. Juarez Volume 1: 89:14-18, 90:8-11) <br> • (Ex 3 Depo. Juarez Volume 1: 121:16-19) <br> • (Ex 3 Depo. Juarez Volume 1: 121:22-122:20, 122:22-123:1) <br> • (Ex 3 Depo. Juarez Volume I: 123:19-124:12) <br> • (Ex 4 Depo. Juarez Volume II: 226:12-227:6) <br> • (Ex. 4 Depo. Juarez Volume II232:1-7, 232:23-25) <br> • (Ex 3 Depo. Juarez Volume 1: 54:11-13) <br> • (Ex 3 Depo. Juarez Volume 1: 103:18-104:10, 104:25-105:7, 107:5-24, 108:5-13) <br> • (Ex 3 Depo. Juarez Volume I: 132:16-23) <br> • (Ex 3 Depo. Juarez Volume I: 70:20-22) <br> • (Ex 3 Depo. Juarez Volume 1: 74:22-75:7) <br> • (Ex 3 Depo. Juarez Volume 1: 77:21-78:2) <br> • (Ex 3 Depo. Juarez Volume I, 79:25-80:4) <br> • (Ex 3 Depo. Juarez |

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | Volume I: 87:22-88:1) |
| | • (Ex 3 Depo. Juarez Volume 1: 156:15-157:2) |
| | • (Ex 3 Depo. Juarez Volume 1: 158:3-9) |
| | • (Ex 3 Depo. Juarez Volume 1: 58:4-6, 58:12-59:4) |
| | • (Ex 3 Depo. Juarez Volume 1: 61:21-63:14) |
| | • (Ex 3 Depo. Juarez Volume I: 145:25-147:2) |
| | • (See Exhibit 22, PVA 4463-4481) |
| | • (See Exhibit 9 and Exhibit 22) |
| | • (Exhibit 22, PVA 23 and 24) |
| | • (Exhibit 22 PVA 4449-4452) |
| | • (Exhibit 22 PVA 4463-4481) |
| | • (Exhibit 22, PVA 4463-4481) |
| | • (Exhibit 22, PVA 4463-4481) |
| | • (Exhibit 22, PVA 4463-4481) |
| | • (Exhibit 22, PVA 4463-4481) |
| | • (Exhibit 22, PVA 4463-4481) |
| | • (Exhibit 22, PVA 4463-4481) |
| | • (Exhibit 22, PVA 4463- |

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | 4481) |
| | • (Exhibit 22) |
| | • (Ex 22, PVA 340-347) |
| | • (Exhibit 36 PVA 4449-4452) |
| | • (Exhibit 36) |
| | • Exhibit 25, PVA 7-9, 17-29, 222-234, 250-251, 4449-4452) |
| | • (Exhibit 31, PVA30-32) |
| | • (Exhibit 15, PVA 69) |
| | • (Exhibit 16, PVA 0272) |
| | • (Exhibit 31, PVA 30-32, 51) |
| | • (Exhibit 29, PVA 63) |
| | • (Exhibit 29, PVA 64) |
| | • (Exhibit 29, PVA 220) |
| | • (See Exhibit 9 and Exhibit 22) |
| | • Exhibit 5, Video of the PVA 350 shows the machine is far too small for someone to use while wearing a ventilator. |
| | • Video Exhibit 11 shows the conformal coating process in a PVA machine in 2010. |
| | • Video Exhibit 8 shows all the different types of coating and also shows various designs that were not defective so it is great for comparison and explanation. |
| | • (Exhibit 15, PVA 69) |
| | • (Exhibit 20) |

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | • (Exhibit 21, PVA 4537, 4538, 4540)<br>• (Exhibit 18, PVA 40)<br>• (Exhibit 35)<br>• (Exhibit 17, PVA 63, 64, 219-220, 277, 279-280)<br>• (Exhibit 24, 4458-4462)<br>• (Exhibit 24)<br>• (Exhibit 23, PVA 1181 (Wet Film Thickness Gauge))<br>• (Exhibit 30)<br><br>***Specific factual references with citations are set forth below for the court's convenience regarding PVA Inc.'s negligence and liability based on its actions and knowledge of the use of the PVA Inc. with the dangerous chemicals with design defects, inadequate warnings, and inadequate product training.*** .<br><br>Mr. Juarez was trained on the PVA 650 machine.  (Ex 3 Depo. Ruben Juarez Volume 1 : 30 :16-18, 30 :24-31 :5, 72:9-14)<br><br>PVA Inc. trained Mr. Juarez to put his head in the PVA 350 machine and bypass the machine.  (Ex 3 Depo. Juarez Volume 1: 89:14-18, 90:8-11)<br><br>Part of Mr. Juarez would bypass the safety switch to do the programming of the PVA 350 machine.  (Ex 3 Depo. Juarez Volume 1: 121:16-19)<br><br>Mr. Juarez was trained by PVA Inc. to open the door of the machine to perform programming job duties.  (Ex 3 Depo. Juarez Volume 1: 121: 22-122:20, 122:22-123:1) |

BALABAN & SPIELBERGER LLP<br>11999 SAN VICENTE BOULEVARD, SUITE 345<br>LOS ANGELES, CALIFORNIA 90049

**STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**
**(Central District)**

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | Mr. Juarez believe it was unsafe for the operators to open the machine door and operate the PVA 350 because they could get their hand stuck in the machine, but he did not have a chemistry background so he did not know whether the chemicals were harmful or not, and he relied on the training provided by PVA Inc. that he could put is head safely in the machine while programming the machine. (Ex 3 Depo. Juarez Volume I: 123:19-124:12)

Mr. Juarez had to place his head into the machine to see what portions were covered because he would not be able to see into the machine by just looking through the window. (Ex 4 Depo. Juarez Volume II: 226:12-227:6)

Mr. Juarez was trained in 2011 by PVA Inc. through a hands on approach on how to use the PVA 650 machine, but there was no hazardous chemical training. (Ex. 4 Depo. Juarez Volume II232:1-7, 232: 23-25)

Mr. Juarez testified at his deposition on March 8, 2018 that Space X did modify the machine to be able to spray other new products and new coating materials. (Ex 3 Depo. Juarez Volume 1: 54:11-13)

PVA 350 was modified when Mr. Juarez worked at Space X so it would spray a different coating material with PVA Inc.'s support over the telephone by installing hardware. (Ex 3 Depo. Juarez Volume 1: 103:18-104:10, 104:25-105:7, 107:5-24, 108:5-13)

At times Mr. Juarez would pass by the PVA 350 Inc. and the bypass key would be left in the machine. (Ex 3 Depo. Juarez Volume I: 132:16-23)

There were no lights inside the PVA 350 machine. (Ex 3 Depo. Juarez Volume I: 70:20-22) |

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | The PVA 350 was programmed by a handheld controller, and it was a rudimentary interface. (Ex 3 Depo. Juarez Volume 1: 74:22-75:7) |
| | In the first room, the ventilation for the PVA 350 was a manual switch. (Ex 3 Depo. Juarez Volume 1: 77:21-78:2) |
| | In the second room, there was an automated ventilation system that was on all the time. (Ex 3 Depo. Juarez Volume I, 79:25-80:4) |
| | The PVA 350 was built so a programmer had to bypass the safety mechanisms to program the machine. (Ex 3 Depo. Juarez Volume I: 87:22-88:1) |
| | Mr. Juarez indicated the PVA 350 is a bad design because the boards alter in size so the programmer has to put their head inside the machine to make sure the valve is aligned. (Ex 3 Depo. Juarez Volume 1: 156:15-157:2) |
| | The PVA 350 was defectively designed because a programmer would have to put their head inside the machine to look where the machine was spraying. (Ex 3 Depo. Juarez Volume 1: 158:3-9) |
| | Mr. Juarez' job was to program the machine not to operate the machine, and he would spend 8 to 10 hours developing a program and working inside the machine itself. (Ex 3 Depo. Juarez Volume 1: 58:4-6, 58:12-59:4) |
| | Mr. Juarez would program the PVA 350, set up a circuit board in the machine, make sure the pattern is correct, do a dry run, do a wet run, make sure his head was inside to check the thickness of the layer, clean it up, rerun it again until they got the desired thickness and width. The programmer has to fine tune the thickness of the conformal coating. To facilitate the fine tuning process, the machine has to |

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
|  | switch to a bypass door so a programmer can put their head inside the machine to make sure the spraying head is parallel to the door.  Then a programmer does a dry run, a wet run, and checks the thickness of the layer. The layer has to be about 1.5 thousandths of an inch.  (Ex 3 Depo. Juarez Volume 1: 61:21-63:14)<br><br>Mr. Juarez would program the machine, check the thickness of the PVA 350 spray, ensure the tanks had enough materials, make sure the materials were consistent, and deal with the fixtures involved in the process. (Ex 3 Depo. Juarez Volume I: 145:25-147:2)<br><br>***PVA HAD KNOWLEDGE OF THE CHEMICALS BEING UTILIZED BY SPACE X AND WAS INVOLVED IN SUBSEQUENT MODIFICATIONS TO THE MACHINE INVOLVING VARIOUS CHEMICALS***<br><br>•     PVA Inc was aware of the chemicals being utilized with the PVA 350. including the **transition to Arathane**.  (See Exhibit 22, PVA 4463-4481)<br><br>•     The April 11, 2012 conformal coating video with Space X boards utilized the **same chemicals as used at Space X at PVA Inc**. (See Exhibit 9 and Exhibit 22)<br><br>•     On September 19, 2013, PVA Inc. made further modifications to the subject machine including reworking the dispense system on the machine |

**STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**
(Central District)

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
|  | to connect one cartridge to the one gallon tank for "**automatic solvent flush of Arathane 5705**." (Exhibit 22, PVA 23 and 24)<br><br>• On July 30, 2009, PVA/Andrew Haraburda serviced the W3267 (subject PVA 350 machine) and this description of the work/changes included:  adding solvent flush option (6 oz cartridge, 3 way ball valve, O-ISPSI Precision Regulator, which shows **PVA Inc. was continuing to modify and upgrade the machine. Then PVA Inc. specifically recommended Space X alter the solvent to a different solvent stating "Space X may need to use a different solvent (i.e. Xylene)."** (Exhibit 22 PVA 4449-4452)<br><br>• Pursuant to email chain dated March 13, 2012 Jonathan Urquhart **(PVA) was aware of Space X's use of Arathane 5750**  The email specifically states, "I think David has spoken to you **about our customer Space X**.  They build full blown rocket ships.  **They plan on pre-mixing this material part A part B and a 3rd part, thinner in small batches apply to board and the purge system** because of shelf life once mixed.  **Sounds screwy to me.**"  They were looking for a demo on the 27th of March.  (Exhibit 22, PVA 4463-4481)<br><br>• Pursuant to email dated |

<div align="center">555</div>

**STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**
**(Central District)**

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
|  | March 15, 2012 to Jonathan Urquhart, PVA was preparing a demo on the PVA 650 and **PVA were working with the same chemical materials Space X was utilizing, but PVA did not want Space X to know and PVA indicated they were going to convey to Space X that the materials were similar, but not the exact same**.  . (Exhibit 22, PVA 4463-4481)

• Pursuant to email dated March 30, 2012, the test at PVA Inc. was rescheduled to **4-11-12 to view the** 3 part mixing process. (Exhibit 22, PVA 4463-4481)

• Pursuant to email from David Gomez to Johnathan (PVA) Urquhart dated May 11, 2012 at 2:11 p.m., Space X talked about retrofitting the PVA 350, and then subsequently there was confirmation from Jon indicating **Space X wanted to duplicate what was done during the visit.** (Exhibit 22, PVA 4463-4481)

• Jon Urquart performed **the demo for Space X on 4-11-12**. (Exhibit 22, PVA 4463-4481)

• Email dated December 2, 2014 at 9:03 a.m. Mr. Urquhart (PVA) indicated to Mr. Matupang there would be 2 demos including a coating with **Arathane 2 part mix and spray and dispensing using a 650 or Delta 6 with board head**, JDX (underfill), SVX (past), and |

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | FC100 (solder mask). (Exhibit 22)<br><br>• On November 17, 2014, Mr. Urquhart (PVA) asked is Space X wanted to mix on the fly with **5750**?  (Exhibit 22)<br><br>• On January 9, 2013 at 10:38 a.m. David Gomez (PVA) emailed Brian Ignaut (Space X) **doing follow up on the "two part material application project you were working on and kindly presented us with**." There was inquiry as to whether there were any developments in the first few months of 2013. (Exhibit 22)<br><br>• On December 3, 2012 at 12:01 PM David Gomez (PVA) wrote Scott Abarta asking for the **two part material brand and part # as well as any MSDS and data sheets**.  Also, there was a request for a shot size and cycle time per part if possible. (Exhibit 22)<br><br>• On **September 10, 2013**, Mr. Gomez (PVA) indicated "they only want a 20 oz cartridge retainer & cap with spray & needle valve for the pre-mix material and 6oz cartridge retainer & cap **for the solvent, so it can flush the premixed material out right after doing a batch of boards**." Mr. Gomez indicated he was **familiar with the "fluid delivery line" because he had done it "several times."** He also indicated they were "**not there yet**" for the |

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | **two part coating spraying**. (Exhibit 22) |
| | •      On September 9, 2013, Richard Bievenue (PVA) wrote Jonathan Connelly (ccing David Filbert, David Gomez, and Michael R. Leonard) indicating that **he spoke with Duc Phan (Space X) about the 350 machine and how Space X was switching to utilizing a 2 part material including Arathane 5750.  There was discussion about premising the solvents and flushing the solvent valves**. Also, there was interest regarding a 2 component meter mix system.  (Exhibit 22) |
| | •      On September 18, 2013 at 12:41 p.m., **Mr. Gomez (PVA) indicated that this is not the first time they have done a two part coating system and he thought they were putting to many resources into this.  The email specifically references Arathane** 5750.  (Exhibit 22) |
| | •      On September 13, 2013, from Duc Phan (Space X) to Jonathan Connelly, Michael R. Leonard (ccing Richard Bievenue and David Filbert) explained the process with pictures. **Specifically, he indicated that Space X removed the hoses from the spray dispensing head and connected the hoses from the Arathane material and solvent to it.   He further explained when the Arathane material was not in use they vaped the** |

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | **solvent hose and connect the Arathane material hose to the other head just for a place holder.  He also explained that Arathane 5750 part A and B is mixed together and poured in the first reservoir and the second reservoir is the solvent use to thin out the mixed Arathane for spray requirement**.  (Exhibit 22)<br><br>•  On September 13, 2013 at 6:07 a.m. Jonathan Connelly wrote Duc Phan (Space X). Michael R. Leonard and ccing Richard Bievenue and David Filbert inquiring about the process, requesting a picture, **and asking if the Arathane and the solvent was being run out of the cartridges mounted on the side of the machine**. (Exhibit 22)<br><br>•  On September 10, 2013, Duc Phan (Space X)wrote Michael R. Leonard and Jonathan Connelly, **and there was a clear indication that Space X was using Arathane 5750 material with a 2 hour cure time, and they were concerned the operator would forget to purge and rinse the material when the job is done. They were looking to automate the process after coating**. (Exhibit 22)<br><br>o  The sales order dated September 25, 2013 indicated PVA job number SPCX2115 W3267 indicated **PVA was there to provide onsite support** |

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | **for Mechanical Electrical Programming Fluid Delivery.** (Exhibit 22) |
| | o      The sales quotation dated September 19, 2013, stated that PVA was to "**rework the dispense system on machine serial number W3267 to connect one cartridge to (1) one gallon tank for automatic solvent flush of Arathane 5705**. This was to include 1) all hoses and fittings needed to complete the integration, 2) pneumatic ball valve for automatic solvent flush, 3) hardware and software needed for integration, and one tank.  Further, PVA was to travel to Space X to install the new auto solvent flush system. (Exhibit 22) |
| | o      The purchase order dated September 24, 2013 issued to PVA and shipping to Space X on a Space X purchase order identified a supplier part number B72-01433 and **there is a full description of the work to be done including reworking the dispense system for an automatic flush of Arathane 5750** and in similar detail as stated above.  There is a separate purchase order for the travel expenditures. (Exhibit 22) |
| | •      On July 21, 2014 at 6:48 p.m. Duc Phan (Space X) emailed Rex indicating the **current machine uses both Humiseal and Arathane and there are separate spray valves for both material**.  They need |

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | the pendant purge button to work for both materials. (Exhibit 22)<br><br>• PVA Inc. circulated diagram clearly states **Arathane**. Additionally, there is a quote work sheet for the 3 way assembly, pressure tank, hoses, fittings, valves as well as programming and engineering. (Ex 22, PVA 340-347)<br><br>**PVA INC. INSTALLED THE PVA 350 AND CONTINUED TO MODIFIED PROGRAM THROUGHOUT THE PVA 350'S LIFETIME**<br><br>• On 6-23-2009 to 6-24-2009, PVA Inc. installed and serviced the W3267 machine at Space X. The work was performed by Andrew Haraburde. He trained Juan Sotelo and Marsha Thompson in installation and training. The installation check list specifically indicated various items were working, but there is an X versus a check mark on the pump and SEMEA boxes. The description of the work/changes including "**modified main program (mo2)."** (Exhibit 36 PVA 4449-4452)<br><br>There are a series of work orders regarding modifications and sales showing PVA Inc. continued to service and support the use and modification of the PVA 350. (Exhibit 25, PVA 7-9, 17-29, 222-234, 250-251, 4449-4452)<br><br>**BELOW ARE FACTUAL ALLEGATIONS REGARDING THE MANUAL NOT BEING PRODUCED AND PVA MANUAL** |

BALABAN & SPIELBERGER LLP<br>11999 SAN VICENTE BOULEVARD, SUITE 345<br>LOS ANGELES, CALIFORNIA 90049

561

**STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**
**(Central District)**

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | **BEING INEFFECTIVE AND INSUFFICIENT**<br><br>• PVA specifically indicated the manual was for production and **operators not technical personnel, but it might be "useful for introduction or training**." (Exhibit 31, PVA 51)<br><br>• The manual was **only produced electronically**.  (No hardcopy.) (Exhibit 31, PVA30-32)<br><br>• The Operations and Maintenance manual **does not warn to wear a face mask or protection** from any inhalants.  (Exhibit 31, PVA 40-41)<br><br>• The manual indicates the PVA machines require that end users must **visually inspect the position of the needle with response to a calibration point and physically reposition the needle.**  (Exhibit 15, PVA 69)<br><br>• The Final Shipment Sign-Off does not indicate the operating manual was sent to Space X only machine photos were taken.  Also, there is an issue of facts as to whether the **exhaust switch was included.**  (Exhibit 16, PVA 0272)<br><br>• The PVA manual was not **physically produced and there was no requirement to review it**.  (Exhibit 31, PVA 30-32, 51)<br><br>Mr. Mendoza a former employee of Space X indicated that Space X was using Humiseal in 2010.<br><br>• (Dec. Christopher Mendoza, paragraph 2) |

BALABAN & SPIELBERGER LLP<br>11999 SAN VICENTE BOULEVARD, SUITE 345<br>LOS ANGELES, CALIFORNIA 90049

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | **BELOW PLAINTIFFS ASSERT SPECIFIC DISPUTES OF FACT REGARDING THE PVA 350'S MACHINE DEFECTS, INADEQUATE SAFETY MEASURES, AND THE VENTILATION SYSTEM.**<br><br>•    The alleged PVA safety guide states: "Some machines are equipped with an exhaust fan.  The exhaust fan is provided to exhaust fumes from the work area.  The exhaust flange should be connected to an appropriate ducting system that is capable of receiving 150 CFM.  Insufficient airflow through the exhaust system generates an error." However, **this manual was not provided in a hardcopy form to Space X based on the pictures PVA provided**.  (Exhibit 29, PVA 63)<br><br>•    The Exhaust Verification Process shows **some machines** have an auto shut down.  (Exhibit 29, PVA 64)<br><br>•    **A user has to visually inspect the position of a needle with respect to a calibration point and the user may have to physically reposition the needle**.  (Exhibit 29, PVA 69)<br><br>•    The PVA Product Overview indicated a number of safety items are not included on the PVA 350 automatically such as: conveyor type, passive programming camera, XY fiducial camera, exhaust blower, onboard computer, and flow monitoring. (Exhibit 29, PVA 220)<br><br>•    There is a picture of the module, and there appears to be an insufficient exhaust system in the back of the machine. (Exhibit 29, PVA 4537, 4538, |

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

| **MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS** | **RESPONSE TO OPPOSITION** |
|---|---|
| | 4539, 4540, and 4542). |
| | • The April 11, 2012 conformal coating video with Space X boards utilized the same chemicals as used at Space X at PVA Inc. (See Exhibit 9 and Exhibit 22) |
| | • Exhibit 5, Video of the PVA 350 shows the machine is far too small for someone to use while wearing a ventilator. |
| | • Video Exhibit 11 shows the conformal coating process in a PVA machine in 2010. |
| | • Video Exhibit 8 shows all the different types of coating and also shows various designs that were not defective so it is great for comparison and explanation. |
| | • The comparison PVA 350 shows there is a **low exhaust and no conveyer** belt option on the PVA 350. (Exhibit 20) |
| | **FAILURE TO WARN/HAZARD COMMENTS** |
| | • The PVA Manual does not warn users to use a face mask or ventilator. (Exhibit 18, PVA 40) |
| | • The warning on the sides states, "WARNING, Hazardous voltage. Power shall be disconnected before enclosure is opened.  Enclosure shall be closed before power is restored." (Exhibit 35) |
| | • **Not all PVA 350s have the alleged safety features including an exhaust fan/conveyer belt/an auto shut down/exhaust blower/flow** |

564

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
| | **monitoring, and cameras**.  Further, pursuant to training provided by PVA Inc., there are **bypass systems that must be utilized so programmers can complete their jobs**.  (Exhibit 17, PVA 63, 64, 219-220, 277, 279-280)<br><br>**PVA INC. PROVIDED TRAINING AND TRAINED MR. JUAREZ TO PUT HIS HEAD INSIDE THE PVA MACHINE WITHOUT ANY PROTECTIVE GEAR**<br><br>Ruben Juarez attended training at PVA Inc., and PVA trained him to put his head inside the machine while spraying without any protective gear.  He attended these trainings while working for EMI and Space X. (Exhibit 24, 4458-4462)<br><br>**END USERS MUST PUT THEIR HEAD INTO THE PVA 350 MACHINE TO CHECK THE THICKNESS OF THE CHEMICAL COATING AND TO SPRAY THE PROPER AREAS OF THE CIRCUIT BOARD**<br><br>•      The Wet Film Thickness Gauge shows how Mr. Juarez **had to measure the level of the fluid on the boards and is relevant to show he had to stick his head in the machine**. (Exhibit 23, PVA 1181 (Wet Film Thickness Gauge))<br><br>•      Pursuant to email dated December 15, 2014 on 11:47 a.m. Bievenue emailed to Matupang indicating the **only way to know for sure the mix ratio is coming out of a spray valve is with flow monitors and if you don't have flow monitors you are "spraying blind."** (Exhibit |

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

| MOVING PARTY'S ALLEGED UNCONTROVERTED FACTS | RESPONSE TO OPPOSITION |
|---|---|
|  | 30) |

## IV. PLAINTIFFS' AMENDED TO STATEMENT OF UNCONVERTED FACTS

Opposing party also contends that the following other material facts are in dispute: *[set forth issue and evidence]*

| Uncontroverted Facts | Supporting Evidence |
|---|---|
| 84. PVA Inc. manufactured, designed, and sold the PVA 350 to Space X in 2009. | (Exhibit 36, PVA 4449-4452) (Exhibit 22) (Exhibit 34) (Exhibit 31) (Dec. Glen Stevick) |
| 85. After selling the PVA 350 to Space X in 2009, PVA Inc. continued to service the PVA 350, modify the PVA 350, provide support services to Space X, maintain the PVA 350, and train end users of the PVA 350. | (Exhibit 22) (Exhibit 36) (Exhibit 25) (Exhibit 13) (Exhibit 34) |
| 86. Before working for Space X, Ruben Juarez attended a PVA Inc. training while working with his former employer EMI where he was trained to use the PVA 350 by placing his head | (Exhibit 24) |

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

**STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**
**(Central District)**

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

| Uncontroverted Facts | Supporting Evidence |
|---|---|
| inside the machine without any protective gear. | |
| 87. On October 2011, Mr. Juarez traveled to PVA Inc., while working with EMI to undergo a 4 day training to program the PVA Inc. machine. | (Dec. Ruben Juarez, paragraph 4)<br><br>(Exhibit 24)<br><br>(Ex 3 Depo. Ruben Juarez Volume 1 : 30 :16-18, 30 :24-31 :5, 72:9-14) |
| 88. Mr. Juarez was trained by PVA Inc. to put his head inside the PVA machine with the door open to check various spraying parameters on the circuit boards, operate and fine tune the fixtures inside the PVA machine, and check the chemical levels without the ventilation system being operational. | (Dec. Ruben Juarez, paragraph 4)<br><br>(Exhibit 24) |
| 89. Ruben Juarez worked at Space X from January 2012 to May or June 2014 as a programmer. | (Dec. Ruben Juarez, paragraph 2) |
| 90. While working with Space X, Ruben Juarez' job duties were changed to include both AOI programming and SMT programming | (Dec. Ruben Juarez, paragraph 2) |
| 91. While employed at Space X, Ruben Juarez was never given MSDS sheets, he did not have access to the MSDS sheets, and he had no chemical training either formal or informal to understand the MSDS sheets. | (Dec. Ruben Juarez, paragraph 2)<br><br>(Dec. Ruben Juarez, paragraph 3)<br><br>(Dec. Manuel Gutierrez, paragraph 4) |
| 92. There were no Standards of Practice documents available in the conformal coating area.  Further, there were no | (Dec. Manuel Gutierrez, paragraph 4) |

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT (Central District)

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

| Uncontroverted Facts | Supporting Evidence |
|---|---|
| MSDS sheets in the conformal coating area or an MSDS binder. | |
| 93. While working at Space X, Ruben Juarez started to experience various health problems including headaches. | (Dec. Ruben Juarez, paragraph 3) |
| 94. A physician initially suspected Mr. Juarez had vertigo and later suspected his aneurysm was the cause of his condition. | (Dec. Ruben Juarez, paragraph 3) |
| 95. Only after a successful surgery in 2013 and subsequent checkups did Mr. Juarez realize that he had recovered from the aneurysm | (Dec. Ruben Juarez, paragraph 3) (Ex 4 Depo. Juarez Volume II, 246:12-18) |
| 96. But because Mr. Juarez' symptoms persisted, he realized the aneurysm was not causing his symptoms. | (Dec. Ruben Juarez, paragraph 3) |
| 97. Mr. Juarez thought his symptoms were caused by his aneurysm or because he was just unusually sensitive to the chemicals in the chemical baths. | (Dec. Ruben Juarez, paragraph 8) (Ex 4 Depo. Juarez Volume II, 235:1-238: 5, 238: 19-22) (Ex 4 Depo. Juarez Volume II, 241:4-15) |
| 98. The Workers Compensation Claim was filed due to "repetitive and continuous exposure to electronics parts cleaning (the chemical bath down the hall) & Lead SO (the filters with the lead wiring). | (Exhibit 49) |
| 99. At this time, Mr. Juarez guessed that the cause of his injuries was lead solder wires and unknown chemicals used in the chemical cleaning baths at the Space X facility unconnected to the | (Dec. Ruben Juarez, paragraph 3) (Ex 4 Depo. Juarez Volume II, 287:6-288:3, 288:24-289:6) |

**STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**
**(Central District)**

| Uncontroverted Facts | Supporting Evidence |
|---|---|
| PVA 350. | |
| 100. At the time Mr. Juarez filed his Workers Compensation Claim, there were no physicians who suggested Plaintiff examine all the chemicals utilized at Space X—there were no physicians telling Plaintiff to avoid anything or any place at work—there was no one informing Plaintiff that the PVA 350 was not working properly or that it was dangerous to program the PVA 350—Plaintiff did NOT see any MSDS sheets or Manual associated with the PVA 350—nor did Plaintiff see any Standard Operating Procedures issued by his employer regarding the use of MSDS sheets and/or the use of the PVA 350. | (Exhibit 49)<br><br>(Dec. Ruben Juarez, paragraph 2)<br><br>(Dec. Ruben Juarez, paragraph 3)<br><br>(Dec. Manuel Gutierrez, paragraph 4)<br><br>(Ex 4 Depo. Juarez Volume II, 262:21-263:13) |
| 101. During the work up of Mr. Juarez' claim, he was sent to see Dr. Regev. | (Dec. Ruben Juarez, paragraph 3)<br><br>(Exhibit 48) |
| 102. Dr. Regev requested that Mr. Juarez obtain the MSDS sheets for the lead solder wire and chemical cleaning baths. | (Dec. Ruben Juarez, paragraph 3)<br><br>(Exhibit 48) |
| 103. No doctor before Dr. Regev ever requested that Mr. Juarez obtain any MSDS sheets or suspected his illness was related to chemical exposure. | (Dec. Ruben Juarez, paragraph 3)<br><br>(Exhibit 48) |
| 104. During this appointment, Dr. Regev never indicated Mr. Juarez thought any of the chemicals he was working with were dangerous, and Dr. Regev did not tell Mr. Juarez to stay away from any chemicals. | (Dec. Ruben Juarez, paragraph 3)<br><br>(Exhibit 48) |

**STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**
**(Central District)**

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

| Uncontroverted Facts | Supporting Evidence |
|---|---|
| 105.    In the "DISCUSSION" portion of the Regev Medical Records, Dr. Regev confirms Plaintiffs History by noting that: "The patient relates of frequent headaches at work and he believed they were associated with chemicals to clean electrical parts [the chemical baths down the hall]. He also believes he was exposed to lead [the filters with the lead wiring in the building]. Dr. Regev then advised that Plaintiff see a toxicologist and obtain the MSDS sheets from Space X so a toxicologist could review said sheets and advised Plaintiff "I suggest the patient be seen by a toxicologist with the MSDS and working environment analysis." | (Exhibit 48) |
| 106.    Pursuant to Dr. Regev's request, Plaintiff requested the MSDS sheets and made an appointment with a toxicologist. | (Dec. Ruben Juarez, paragraph 3)<br><br>(Exhibit 48) |
| 107.    Pursuant to Dr. Regev, Mr. Juarez called Space X and requested a list of chemicals in the chemical baths and the lead wires attached the filters, but they did not provide Mr. Juarez with a list so Mr. Juarez called Francisco (a co-worker at Space X) in early March of 2015 and during the conversation, he did not remember who suggested this, but Francisco ended up giving Mr. Juarez not only the list of chemicals involved in the cleaning baths and lead wire, but also the names of the chemicals that Mr. Juarez worked with when programming PVA 350. | (Dec. Ruben Juarez, paragraph 3)<br><br>(Exhibit 48)<br><br>(Exhibit 46)<br><br>(Ex 4 Depo. Juarez Volume II, 332:7-337:14)<br><br>(Ex 3 Depo. Ruben Juarez Volume 1, 43:12-46:19) |

**STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**
**(Central District)**

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

| __Uncontroverted Facts__ | __Supporting Evidence__ |
|---|---|
| 108.    Mr. Juarez emailed Space X on March 3, 2015 asking for the MSDS sheets that Francisco indicated that Mr. Juarez worked with, and on March 3, 2015, Jane Malubag with Space X did not send Mr. Juarez the MSDS sheets but indicated Space X's insurance would send them to Mr. Juarez' workers' compensation attorneys, and on March 12, 2015 she indicated that the MSDS sheets were forwarded to Mr. Juarez' attorney and insurance company. | (Dec. Ruben Juarez, paragraph 3)<br><br>(Exhibit 46) |
| 109.    After receipt of the MSDS sheets, Mr. Juarez saw a toxicologist on March 25, 2015, Mr. Zlotolow M.D., and provided the MSDS sheets for review. | (Dec. Ruben Juarez, paragraph 3)<br><br>(Exhibit 47) |
| 110.    It was at the appointments with the toxicologist, starting March 2015 Plaintiff was first told his reactive airways disease and rhinitis were probably caused by industrial exposure on the job | (Exhibit 47)<br><br>(Ex 4 Depo. Juarez Volume II, 249:22-250:12) |
| 111.    Nobody else at Space X was getting sick so Mr. Juarez did not think anyone had done anything wrong. | (Dec. Ruben Juarez, paragraph 3) |
| 112.    Only after Mr. Juarez reviewed the MSDS sheets did Mr. Juarez realize that the solder wire was actually lead-free and the chemical used in the chemical baths is only isopropyl alcohol. | (Dec. Ruben Juarez, paragraph 3)<br><br>(Exhibit 28) |
| 113.    Plaintiff was deposed on three occasions during the Workers Compensation Action—on March 30, | (Exhibit 1)<br><br>(Exhibit 2) |

571

**STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**
**(Central District)**

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

| **Uncontroverted Facts** | **Supporting Evidence** |
|---|---|
| 2015 and May 20, 2015 and October 21, 2015. | (Exhibit 53) |
| 114.    During these depositions, counsel for Space X continued to ask questions to Plaintiff about the PVA 350—the manner in which Plaintiff operated the PVA 350—the training Plaintiff received about the PVA 350 and about any warnings associated with the PVA 350.  It was this series of questions which led Plaintiff to investigate the safety of the PVA 350 and which triggered Plaintiffs actual suspicion that his injury was might have been caused by defects associated with the PVA 350. | (Exhibit 1, 51:17-24, 53:1-24, 59:20-24, 60:17-25, 61:12-25, 62:1-12)<br><br>(Exhibit 2)<br><br>(Exhibit 3) |
| 115.    In April 2012, Mr. Juarez traveled to PVA Inc. as a Space X employee with John Pena to see if the PVA machines could spray various chemicals. | (Dec. Ruben Juarez, paragraph 4)<br><br>(Exhibit 24) |
| 116.    Mr. Pena and Mr. Juarez were at PVA Inc. for 2 days, and during this time, PVA Inc. employees did not wear any safety gear. | (Dec. Ruben Juarez, paragraph 4)<br><br>(Exhibit 24) |
| 117.    Mr. Juarez always followed PVA Inc.'s exact training protocols while programming the PVA 350 including their instructions to bypass systems to ensure Mr. Juarez could open the door and examine the circuit boards and fixtures. | (Dec. Ruben Juarez, paragraph 4)<br><br>(Ex. 4 Depo. Juarez Volume II 232:1-7, 232: 23-25) |
| 118.    Nobody at Space X ever told Mr. Juarez the way he worked with the PVA 350 was dangerous. | (Dec. Ruben Juarez, paragraph 4) |

**STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**
**(Central District)**

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

| Uncontroverted Facts | Supporting Evidence |
|---|---|
| 119.    No other co-workers at Space X ever appeared to get sick while Mr. Juarez was working there. | (Dec. Ruben Juarez, paragraph 4) |
| 120.    The doctors never told Mr. Juarez that the chemicals from the PVA 350 were making him sick. | (Dec. Ruben Juarez, paragraph 4)<br><br>(Exhibit 48) |
| 121.    Mr. Juarez worked about 60 hours a week while working at Space X. | (Dec. Ruben Juarez, paragraph 5) |
| 122.    As part of Mr. Juarez' job duties, Mr. Juarez would work in the conformal coating room programming the PVA 350 machine, at his work station next to the chemical baths, and Mr. Juarez would clean the work station filters. | (Dec. Ruben Juarez, paragraph 5)<br><br>(Ex. 2 Depo. Ruben Juarez Volume 2 p. 77:5-78:3) |
| 123.    Mr. Juarez had additional duties such as ordering parts, and maintaining other equipment, and cleaning various parts. | (Dec. Ruben Juarez, paragraph 5)<br><br>(Ex 1, Depo. Ruben Juarez Volume I, p. 49:22-50:8, 51:17, 52:8-16, 53:15-21, 54:11-55:15, 55:21-56:8, 56:14-18 , 57:16-23-58:18, 59: 4-5, 59: 22-24,60:17-61:20, 62:1-15) |
| 124.    The PVA 350 is a selective conformal coating machine. PVA 350 is not a "work cell." | (Dec. Ruben Juarez, paragraph 6) |
| 125.    The PVA 350 is a standalone device, which is a mechanism or system that can perform its function without the need of another device, computer, or connection.  In contrast, a work cell is a term used in the manufacturing industry for an arrangement of resources in manufacturing to improve quality, | (Dec. Ruben Juarez, paragraph 6) |

**STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**
**(Central District)**

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

| Uncontroverted Facts | Supporting Evidence |
|---|---|
| speed, and the costs of the processes. | |
| 126.  There were a lot of standalone devices at Space X other than the PVA 350. | (Dec. Ruben Juarez, paragraph 6) |
| 127.  The PVA 350 is known as a selective conformal coating machine, which means a user can program the equipment to skip or avoid designated areas. | (Dec. Ruben Juarez, paragraph 6) |
| 128.  Further, the PVA 350 machine dispenses, sprays, and applies different chemicals on circuit boards. | (Dec. Ruben Juarez, paragraph 6) |
| 129.  The PVA 350 is not equipped with a positive or negative air pressure. | (Dec. Ruben Juarez, paragraph 6) |
| 130.  Mr. Juarez was never provided the equipment manual and the manual was not available in the computer connected to the PVA 350. | (Dec. Ruben Juarez, paragraph 7) (Dec. Christopher Mendoza) (Dec. Manuel Gutierrez) (Exhibit 31) |
| 131.  The PVA 350 is a standalone machine, the manual was not uploaded to the company network so he could not read the manual and it was not in the computer. | (Dec. Ruben Juarez, paragraph 7) (Exhibit 31) (Ex 3 Depo. Juarez Volume 1: 91:3-93:24, 96:10-19, 98:20-21, 100:4-9) |
| 132.  PVA Inc. specifically trained Mr. Juarez to bypass the safety systems so the machine could be utilized as it was designed defectively and could not be utilized otherwise. | (Dec. Ruben Juarez, paragraph 7) (Exhibit 13) (Exhibit 17) |
| 133.  The PVA 350 does a quick check at the start up or a "0" check. However, | (Dec. Ruben Juarez, paragraph 7) |

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

| Uncontroverted Facts | Supporting Evidence |
|---|---|
| PVA Inc. trained users to bypass this system with the bypass key easily. | (Exhibit 13)<br><br>(Exhibit 17) |
| 134.     For years, Mr. Juarez worked with the PVA 350 without any suspicion that Space X or PVA Inc. were doing anything wrong. | (Dec. Ruben Juarez, paragraph 8) |
| 135.     Mr. Juarez had no formal or informal chemical training, and he did not know about the toxicity of the chemicals he was working with. | (Dec. Ruben Juarez, paragraph 8) |
| 136.     Also, Mr. Juarez did not know the PVA 350 was defective. | (Dec. Ruben Juarez, paragraph 8) |
| 137.     Now, Mr. Juarez believes Space X originally began using the chemicals Humiseal before he worked there as the machine was purchased before Mr. Juarez' time and the chemical containers only changed once, which was set up by Space X with the assistance of PVA Inc. in the end of 2011/2012. | (Dec. Ruben Juarez, paragraph 9)<br><br>(Dec. Christopher Mendoza) |
| 138.     Space X began using Humiseal in 2010. | (Dec. Christopher Mendoza, paragraph 2) |
| 139.     A new chemical, which Mr. Juarez later found out was Arathane was introduced at Space X with the assistance of PVA Inc. and  David Hwang replaced the original chemical, which Mr. Juarez later found out was Humiseal. | (Dec. Ruben Juarez, paragraph 9)<br><br>(Exhibit 22) |
| 140.     PVA Inc. was aware of this transition, and David Hwang indicated he purchased parts to the PVA 350 to spray Arathane. | (Dec. Ruben Juarez, paragraph 9)<br><br>(Exhibit 22) |
| 141.     PVA Inc. had knowledge of the chemicals being utilized by Space X and was involved in subsequent modifications to the machine involving | (Exhibit 36)<br><br>(Exhibit 25) |

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

| Uncontroverted Facts | Supporting Evidence |
|---|---|
| various chemicals. | (Exhibit 22) |
| 142.    PVA Inc. recommended that Space X utilized a toxic chemicals such Xylene instead of a NVOC. | (Exhibit 22, 4449-4452)<br><br>(Exhibit 28) |
| 143.    PVA Inc. was involved in the modifications to the PVA 350 and the use of Arathane. | (Exhibit 22)<br><br>(Exhibit 26) |
| 144.    Mr. Juarez had no formal or informal chemistry training so he was not allowed to mix these chemical compounds. | (Dec. Ruben Juarez, paragraph 9)<br><br>(Dec. Christopher Mendoza)<br><br>(Dec. Manuel Gutierrez)<br><br>(Ex 3 Depo. Juarez Volume 1: 55:21-56:5) |
| 145.    Although Mr. Juarez would sometimes stir a single container with chemicals to get the proper viscosity to be placed in a machine to flush the lines and make sure the machines were spraying the correct amount of material, Mr. Juarez would not mix multiple chemicals and definitely would not have been involved in creating new compounds. | (Dec. Ruben Juarez, paragraph 9)<br><br>(Dec. Christopher Mendoza)<br><br>(Dec. Manuel Gutierrez)<br><br>(Exhibit 22) |
| 146.    Francisco was the operator of the PVA 350. | (Dec. Ruben Juarez, paragraph 9)<br><br>(Dec. Manuel Gutierrez, paragraph 5) |
| 147.    Mixing the chemicals was part of Francisco's job duties. | (Dec. Ruben Juarez, paragraph 9)<br><br>(Dec. Manuel Gutierrez, paragraph 5) |
| 148.    David Hwang also mixed the chemicals since he was the main person to substitute Humiseal to Arathane. | (Dec. Ruben Juarez, paragraph 9)<br><br>(Exhibit 22) |

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

576

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

| Uncontroverted Facts | Supporting Evidence |
|---|---|
| 149.    Mr. Juarez is not the process engineer or materials engineer, and those were the individuals that would have mixed the chemicals. | (Dec. Ruben Juarez, paragraph 9)<br><br>(Dec. Christopher Mendoza, paragraph 4)<br><br>(Exhibit 22) |
| 150.    Per David Hwang's instructions and with the support of PVA Inc, Mr. Juarez only installed the separate dispensing canisters and materials lines, and he did not mix any chemical compounds. | (Dec. Ruben Juarez, paragraph 9)<br><br>(Dec. Manual Gutierrez, paragraph 5)<br><br>(Exhibit 22) |
| 151.    Mr. Juarez was never provided with a Standard Operating Procedure ("SOP") for programmers for any assembly area in Space X. | (Dec. Ruben Juarez, paragraph 10)<br><br>(Dec. Christopher Mendoza, paragraph 5)<br><br>(Dec. Manuel Gutierrez)<br><br>(Ex. 4 Depo. Juarez Volume II: 172:17-25) |
| 152.    The subject machine, a PVA 350, was manufactured, designed, and sold by PVA Inc. | (Dec. Glen Stevick, paragraph 7)<br><br>(Exhibit 22)<br><br>(Exhibit 35)<br><br>(Exhibit 34) |
| 153.    The purpose of the subject machine was to safely coat circuit boards with a layer of coating material after which the circuit boards were to be placed inside rockets. | (Dec. Glen Stevick, paragraph 7) |
| 154.    PVA Inc. also manufactures a number of other PVA models for larger operations and plant conformal coating operations as well as small hand-held machines. | (Dec. Glen Stevick, paragraph 8) |
| 155.    Each PVA model machine is different, and the PVA 350 machine does not contain vital safety features | (Dec. Glen Stevick, paragraph 8) |

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

| Uncontroverted Facts | Supporting Evidence |
|---|---|
| for its intended purposes as on other models including a conveyor belt, a heighted above-board clearance inside the machine, an exhaust blower (also known as a PVA Blower), flow monitoring, additional chemical supply heads, and an external on board computer and each safety measure was readily available at the time the PVA 350 was manufactured. | (Exhibit 12)<br><br>(Exhibit 29)<br><br>(Exhibit 11) |
| 156.  Following the sale of the PVA 350 machine, the purchasers and their designated employees undergo training to learn how to operate the PVA machines. | (Dec. Glen Stevick, paragraph 9)<br><br>(Exhibit 24)<br><br>(Exhibit 31) |
| 157.  Based on the statements of Ruben Juarez, he was trained by PVA Inc. to put his head inside the PVA 350 machine without a ventilation mask. | (Dec. Glen Stevick, paragraph 9)<br><br>(Exhibit 24)<br><br>(Exhibit 31) |
| 158.  The PVA manual does not warn individuals working the PVA machines to wear facemasks with ventilators. | (Dec. Glen Stevick, paragraph 9)<br><br>(Exhibit 31)<br><br>(Exhibit 16)<br><br>(Exhibit 15) |
| 159.  Further, based on the dimensions of the machine, the use of the PVA 350 machine with a ventilation face mask is not feasible. | (Dec. Glen Stevick, paragraph 9)<br><br>(Exhibit 15)<br><br>(Exhibit 18)<br><br>(Exhibit 16)<br><br>(Exhibit 31) |
| 160.  However, other PVA models are taller and thus users are able to utilize a ventilation face mask inside those machines. | (Dec. Glen Stevick, paragraph 9)<br><br>(Exhibit 31) |

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

| Uncontroverted Facts | Supporting Evidence |
|---|---|
| | (Exhibit 18) |
| 161.    After installing the machine, PVA Inc. continued to service the machine, make modifications to the machine, and assist Space X to make modifications to the machine. | (Dec. Glen Stevick, paragraph 10) (Exhibit 36) (Exhibit 25) (Exhibit 34) (Exhibit 22) |
| 162.    PVA Inc. did not ensure the safety of end users. | (Dec. Glen Stevick, paragraph 10) |
| 163.    Indeed, PVA Inc. through its continued support and maintenance of the machine knew of Space X's use of toxic sealants in the conformal coating process. | (Dec. Glen Stevick, paragraph 10) (Exhibit 36) (Exhibit 25) (Exhibit 34) (Exhibit 22 |
| 164.    It is the custom and practice for manufactures to anticipate a reasonable degree of misuse and take this into account in designing their product. As such, PVA Inc. has a duty to protect end users from anticipatable misuse. | (Dec. Glen Stevick, paragraph 11) |
| 165.    The PVA 350 was defectively designed as the risk of the design outweighed any potential benefits and also a reasonable consumer would not expect to be harmed while using the PVA 350 as instructed. | (Dec. Glen Stevick, paragraph 12) |
| 166.    PVA Inc. failed to warn about the dangers of using the machine. | (Dec. Glen Stevick, paragraph 12) (Exhibit 18) (Exhibit 35) (Exhibit 31) |

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

| Uncontroverted Facts | Supporting Evidence |
|---|---|
| | (Exhibit 29)<br><br>(Exhibit 15) |
| 167.    PVA Inc. was aware how the machine was being utilized and did not take steps to ensure the safety of the end users. | (Dec. Glen Stevick, paragraph 12)<br><br>(Exhibit 22)<br><br>(Exhibit 15)<br><br>(Exhibit 23)<br><br>(Exhibit 31)<br><br>(Exhibit 30) |
| 168.    The PVA 350 is defective in design because PVA Inc. should have taken steps during the manufacturing and design process to mitigate the risk of harmful exposure by foreseeable use of the end users including the various available coating chemicals.    This could have been easily done by:<br>(i)     altering the design of the PVA 350 so that the interior can be monitored with cameras and/or mirrors so that the end user need not place their head within the confined space;<br>(ii)    equipping the PVA 350 with interlocks that prevent the operation of the PVA 350 unless the ventilation system is operating. Air flow sensors are commonly used to ensure ventilation systems are operating; | (Dec. Glen Stevick, paragraph 13)<br><br>(Exhibit 22)<br><br>(Exhibit 12)<br><br>(Exhibit 36)<br><br>(Exhibit 31)<br><br>(Exhibit 15)<br><br>(Exhibit 16)<br><br>(Exhibit 29)<br><br>(Exhibit 9)<br><br>(Exhibit 5)<br><br>(Exhibit 11)<br><br>(Exhibit 8)<br><br>(Exhibit 15)<br><br>(Exhibit 20) |

580

**STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**
**(Central District)**

| Uncontroverted Facts | Supporting Evidence |
|---|---|
| (iii) equipping the PVA 350 with interlocks that prevent opening the PVA 350 until the ventilation system has cleared the interior airspace of the PVA 350 of harmful vapors. This is commonly done with timers and/or chemical sensors; and,<br><br>(iv) eliminating possible overriding systems of bypass/interlocks at the PVA 350. | (Exhibit 21)<br><br>(Exhibit 18)<br><br>(Exhibit 35)<br><br>(Exhibit 25)<br><br>(Exhibit 13)<br><br>(Exhibit 17)<br><br>(Exhibit 10)<br><br>(Exhibit 34)<br><br>(Exhibit 24)<br><br>(Exhibit 23)<br><br>(Exhibit 30)<br><br>(Exhibit 11)<br><br>(Exhibit 33)<br><br>(Ex 3 Depo. Juarez Volume 1: 158:3-9)<br><br>(Ex 3 Depo. Juarez Volume 1: 121:16-19)<br><br>(Ex 3 Depo. Juarez Volume 1: 156:15-157:2)<br><br>(Ex 3 Depo. Juarez Volume 1: 127:1-129:4)<br><br>(Ex 3 Depo. Juarez Volume I: 70:20-22) |
| 169.   PVA Inc. likewise failed to provide proper warnings to its end users as to the use of toxic materials and proper ventilation/protection. | (Dec. Glen Stevick, paragraph 14)<br><br>(Exhibit 10)<br><br>(Exhibit 35) |

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
(Central District)

| Uncontroverted Facts | Supporting Evidence |
|---|---|
| | (Exhibit 18) |
| 170.    Specifically, the PVA 350 failed to have an adequate warning because PVA Inc. failed to take steps to warn its customers and end users that the PVA 350 machine could leak toxic chemicals or exposure could occur while using the PVA 350. | (Dec. Glen Stevick, paragraph 14) (Exhibit 35) (Exhibit 18) |
| 171.    PVA Inc. should have provided warnings and instruction that the PVA 350 should thus either not be utilized with dangerous chemicals -- and a more robust model would be more suitable for use with Space X; or the end user must use breathing protection during its operation. | (Dec. Glen Stevick, paragraph 14) (Exhibit 31) (Exhibit 15) (Exhibit 16) |
| 172.    PVA Inc. was negligent in the manufacture, design, testing, warnings, sale, and service of the PVA Inc. 350. | (Dec. Glen Stevick, paragraph 15) (Exhibit 31) (Exhibit 29) (Exhibit 22) (Exhibit 9) (Exhibit 5) (Exhibit 11) (Exhibit 8) Exhibit 15) (Exhibit 20) (Exhibit 21) (Exhibit 18) (Exhibit 13) (Exhibit 35) |

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

**STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**
**(Central District)**

| Uncontroverted Facts | Supporting Evidence |
|---|---|
| 173.    As PVA Inc. knew, the PVA 350 Inc. lacked various safety features, PVA Inc. failed to adequate train and warn end users of the danger in their operation manual, during training sessions, or on the machine itself. | (Dec. Glen Stevick, paragraph 15)<br><br>(Exhibit 31)<br><br>(Exhibit 15)<br><br>(Exhibit 16)<br><br>(Exhibit 29)<br><br>(Exhibit 22)<br><br>(Exhibit 9)<br><br>(Exhibit 11)<br><br>(Exhibit 8)<br><br>(Exhibit 15)<br><br>(Exhibit 20)<br><br>(Exhibit 21) |
| 174.    Further, PVA Inc. knew how Space X was utilizing the machine and the chemicals utilized during the conformal coating process, but PVA Inc. failed to provide sufficient safety features or warn of the danger and thus the PVA 350 caused dangerous and possibly life-threatening exposure and injures. | (Dec. Glen Stevick, paragraph 15)<br><br>(Exhibit 22)<br><br>(Exhibit 25)<br><br>(Exhibit 34)<br><br>(Exhibit 24)<br><br>(Exhibit 33) |
| 175.    PVA Inc. should have never sold this PVA 350 to Space X because it was involved in the avionics industry which often requires the use of dangerous chemicals in the coating process, but PVA Inc. sold and maintained this machine while in the service of Space X with the knowledge that the end users could easily be injured. | (Dec. Glen Stevick, paragraph 15)<br><br>(Exhibit 22)<br><br>(Exhibit 25)<br><br>(Exhibit 34)<br><br>(Exhibit 29)<br><br>(Exhibit 5) |

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

**STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**
**(Central District)**

| Uncontroverted Facts | Supporting Evidence |
|---|---|
| | (Exhibit 9)<br><br>(Exhibit 11) |
| 176.   The PVA 350 was defective because it lacked adequate warnings and the only warning on the device pertained to the voltage hazard. | (Dec. Glen Stevick, paragraph 16)<br><br>(Exhibit 35) |
| 177.   Specifically, there needed to be a warning of the risk of serious injury or death if an end user uses this machine in the avionics industry due to the use of the dangerous chemicals used in the conformal coating process. | (Dec. Glen Stevick, paragraph 16)<br><br>(Exhibit 22)<br><br>(Exhibit 29) |
| 178.   Further, PVA Inc. failed to adequately design and train its employees – and hence its end users -- how to safely utilize the bypass system. | (Dec. Glen Stevick, paragraph 16)<br><br>(Exhibit 13)<br><br>(Exhibit 17)<br><br>(Exhibit 22)<br><br>(Exhibit 29)<br><br>(Exhibit 9)<br><br>(Exhibit 5)<br><br>(Exhibit 11)<br><br>(Exhibit 8)<br><br>(Exhibit 15)<br><br>(Exhibit 20)<br><br>(Exhibit 21)<br><br>(Exhibit 18)<br><br>(Exhibit 24)<br><br>(Exhibit 23) |

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

**STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**
**(Central District)**

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

| Uncontroverted Facts | Supporting Evidence |
|---|---|
| | (Exhibit 30) |
| | (Exhibit 33) |
| 179.    Further, PVA Inc. failed to equip the PVA 350 with design protections, and failed to warn users how to safely operate the machine. | (Dec. Glen Stevick, paragraph 16) |
| | (Exhibit 22) |
| | (Exhibit 29) |
| | (Exhibit 9) |
| | (Exhibit 5) |
| | (Exhibit 11) |
| | (Exhibit 8) |
| | (Exhibit 15) |
| | (Exhibit 20) |
| | (Exhibit 21) |
| | (Exhibit 18) |
| | (Exhibit 24) |
| | (Exhibit 23) |
| | (Exhibit 30) |
| | (Exhibit 33) |
| 180.    It was clearly foreseeable that end users such as those in the Avionics industry would utilize the PVA 350 with dangerous chemicals utilized in the conformal coating process, and PVA Inc. was aware of the specific chemicals being utilized by Space X as stated in the emails/Declarations. | (Dec. Glen Stevick, paragraph 16) |
| | (Exhibit 22) |
| | (Exhibit 28) |
| 181.    There should have been a stamp on the PVA 350 as well as a hardcopy set of instructions in the box specifically warning customers not to | (Dec. Glen Stevick, paragraph 16) |
| | (Exhibit 35) |

585

| **Uncontroverted Facts** | **Supporting Evidence** |
|---|---|
| use the PVA 350 with dangerous chemicals commonly utilized in the avionics conformal coating process, or PVA should have provided sufficient safety measures to ensure its safe operating conditions under these circumstances. | |
| 182.     Thus, Plaintiff timely filed his Complaint on 2/28/17—less than two years after the product of his reasonable investigation occurred in March of 2015. | (Exhibit 38) |
| 183.     PVA Inc was aware of the chemicals being utilized with the PVA 350. including the transition to Arathane. | (See Exhibit 22, PVA 4463-4481) |
| 184.     The April 11, 2012 conformal coating video with Space X boards utilized the **same chemicals as used at Space X at PVA Inc**. | (See Exhibit 9 and Exhibit 22) |
| 185.     On September 19, 2013, PVA Inc. made further modifications to the subject machine including reworking the dispense system on the machine to connect one cartridge to the one gallon tank for "**automatic solvent flush of Arathane 5705**." | (Exhibit 22, PVA 23 and 24) |
| 186.     On July 30, 2009, PVA/Andrew Haraburda serviced the W3267 (subject PVA 350 machine) and this description of the work/changes included:  adding solvent flush option (6 oz cartridge, 3 way ball valve, O-ISPSI Precision Regulator, which shows PVA Inc. was continuing to modify and upgrade the machine. Then PVA Inc. specifically recommended Space X alter the solvent to a different | (Exhibit 22 PVA 4449-4452) |

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

**STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**
**(Central District)**

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

| Uncontroverted Facts | Supporting Evidence |
|---|---|
| solvent stating "Space X may need to use a different solvent (i.e. Xylene)." | |
| 187.   Pursuant to email chain dated March 13, 2012 Jonathan Urquhart (PVA) was aware of Space X's use of Arathane 5750  The email specifically states, "I think David has spoken to you about our customer Space X.   They build full blown rocket ships.   They plan on pre-mixing this material part A part B and a 3rd part, thinner in small batches apply to board and the purge system because of shelf life once mixed.  Sounds screwy to me."  They were looking for a demo on the 27th of March. | (Exhibit 22, PVA 4463-4481) |
| 188.   Pursuant to email dated March 15, 2012 to Jonathan Urquhart, PVA was preparing a demo on the PVA 650 and **PVA were working with the same chemical materials Space X was utilizing, but PVA did not want Space X to know and PVA indicated they were going to convey to Space X that the materials were similar, but not the exact same**. | (Exhibit 22, PVA 4463-4481) |
| 189.   Pursuant to email dated March 30, 2012, the test at PVA Inc. was rescheduled to 4-11-12 to view the 3 part mixing process. (Exhibit 22, PVA 4463-4481) | (Exhibit 22, PVA 4463-4481) |
| 190.   Pursuant to email from David Gomez to Johnathan (PVA) Urquhart dated May 11, 2012 at 2:11 p.m., Space X talked about retrofitting the PVA 350, and then subsequently there was confirmation from Jon indicating **Space X wanted to duplicate what was done during the visit.** | (Exhibit 22, PVA 4463-4481) |

**STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**
**(Central District)**

| Uncontroverted Facts | Supporting Evidence |
|---|---|
| 191.    Jon Urquart performed the demo for Space X on 4-11-12. | (Exhibit 22, PVA 4463-4481) |
| 192.    On December 3, 2012 at 12:01 PM David Gomez (PVA) wrote Scott Abarta asking for the **two part material brand and part # as well as any MSDS and data sheets**.   Also, there was a request for a shot size and cycle time per part if possible. | (Exhibit 22) |
| 193.    On September 18, 2013 at 12:41 p.m., **Mr. Gomez (PVA) indicated that this is not the first time they have done a two part coating system and he thought they were putting to many resources into this.  The email specifically references Arathane** 5750. | (Exhibit 22) |
| 194.    On September 13, 2013, from Duc Phan (Space X) to Jonathan Connelly, Michael R. Leonard (ccing Richard Bievenue and David Filbert) explained the process with pictures. **Specifically, he indicated that Space X removed the hoses from the spray dispensing head and connected the hoses from the Arathane material and solvent to it.   He further explained when the Arathane material was not in use they vaped the solvent hose and connect the Arathane material hose to the other head just for a place holder.   He also explained that Arathane 5750 part A and B is mixed together and poured in the first reservoir and the second reservoir is the solvent use to thin out the mixed Arathane for spray requirement**. | (Exhibit 22) |
| 195.    The sales order dated September 25, 2013 indicated PVA job number | (Exhibit 22) |

**STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**
**(Central District)**

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

| Uncontroverted Facts | Supporting Evidence |
|---|---|
| SPCX2115 W3267 indicated **PVA was there to provide onsite support for Mechanical Electrical Programming Fluid Delivery.** | |
| 196.     PVA Inc. circulated diagram clearly states **Arathane**. Additionally, there is a quote work sheet for the 3 way assembly, pressure tank, hoses, fittings, valves as well as programming and engineering. | (Ex 22, PVA 340-347) |
| 197.     The Exhaust Verification Process shows **some machines** have an auto shut down. | .  (Exhibit 29, PVA 64) |
| 198.     A user has to visually inspect the position of a needle with respect to a calibration point and the user may have to physically reposition the needle. | (Exhibit 29, PVA 69) |
| 199.     The PVA Product Overview indicated a number of safety items are not included on the PVA 350 automatically such as: conveyor type, passive programming camera, XY fiducial camera, exhaust blower, onboard computer, and flow monitoring. | (Exhibit 29, PVA 220) |
| 200.     Exhibit 5, Video of the PVA 350 shows the machine is far too small for someone to use while wearing a ventilator. | (Exhibit 5) |
| 201.     Pursuant to email dated December 15, 2014 on 11:47 a.m. Bievenue emailed to Matupang indicating the only way to know for sure the mix ratio is coming out of a spray valve is with flow monitors and if you don't have flow monitors you are "spraying blind." | (Exhibit 30) |
| 202.     The system debug dated 5-1-09 indicates the machine needed the | (Exhibit 13, PVA 277) |

**STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**
**(Central District)**

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

| Uncontroverted Facts | Supporting Evidence |
|---|---|
| material lines, fixed or replaced the **Lexon side**, valve/2 micrometer needs to be, and they needed **to add a camera cable in the back of the machine**. Further, PVA Inc. presents no evidence the Lexon glass door was timely replaced or the camera cord was ever installed. | |
| 203.    Not all PVA 350s have the alleged safety features including an exhaust fan/conveyer belt/an auto shut down/exhaust blower/flow monitoring, and cameras.    Further, pursuant to training provided by PVA Inc., there are bypass systems that must be utilized so programmers can complete their jobs. | (Exhibit 17, PVA 63, 64, 219-220, 277, 279-280)<br><br>(Ex 3 Depo. Juarez Volume I: 145:25-147:2) |
| 204.    The manual was **only produced electronically**.  (No hardcopy.) | (Exhibit 31, PVA30-32) |
| 205.    On 6-23-2009 to 6-24-2009, PVA Inc. installed and serviced the W3267 machine at Space X.  The work was performed by Andrew Haraburde.  He trained Juan Sotelo and Marsha Thompson in installation and training. The installation check list specifically indicated various items were working, but there is an X versus a check mark on the pump and SEMEA boxes. The description of the work/changes including "modified main program (mo2)." | (Exhibit 36 PVA 4449-4452) |
| 206.    The PVA Manual does not warn users to use a face mask or ventilator. | (Exhibit 18, PVA 40) |
| 207.    The warning on the sides states, "WARNING, Hazardous voltage. Power shall be disconnected before enclosure is opened.  Enclosure shall be closed before power is restored." | (Exhibit 35) |

**STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**
**(Central District)**

| Uncontroverted Facts | Supporting Evidence |
|---|---|
| 208.   The Final Shipment Sign-Off does not indicate the operating manual was sent to Space X only machine photos were taken.  Also, there is an issue of facts as to whether the **exhaust switch was included.** | (Exhibit 16, PVA 0272) |
| 209.   Mr. Juarez had to place his head into the machine to see what portions were covered because he would not be able to see into the machine by just looking through the window. | (Ex 4 Depo. Juarez Volume II: 226:12-227:6) |
| 210.   Mr. Juarez purchased the filtration system when the PVA 350 moved to the larger room with additional equipment. | (Ex 3 Depo. Juarez Volume 1: 77:21-78:2)<br><br>(Ex 3 Depo. Juarez Volume I, 79:25-80:4)<br><br>(Ex 3 Depo. Juarez Volume 1: 60:21-61:4) |
| 211.   The equipment in the rooms where Mr. Juarez was working was constantly changing. | (Ex 3 Depo. Ruben Juarez Volume 1, 49:25-50:3) |
| 212.   Mr. Juarez would work with John Pena, but only knew Gregory Maxwell was some kind of supervisor, but he did not work for him.  Occasionally, Mr. Juarez would informally let Mr. Maxwell know what he was working on. | (Ex 3 Depo. Ruben Juarez Volume 1, 35:1-36:6) |

DATED: SEPTEMBER  10, 2018       **BALABAN & SPIELBERGER, LLP**

/s/ Vanessa L. Loftus-Brewer
Daniel K. Balaban, Esq.
Andrew J. Spielberger, Esq.
Vanessa L. Loftus-Brewer
Attorneys for Plaintiff

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

591