# EXHIBIT 47

EXHIBIT 47 708

Attn: (818) 386-0467

# Ronald Zlotolow, M.D.

**Board Qualified, Internal Medicine**

| Internal Medicine | Toxicology |
|---|---|
| Treating & Consultations | Impairment Evaluation |
| Pension Disability Evaluation | Disability Evaluation |

## THIS REPORT IS CONFIDENTIAL AND IS FOR THE USE OF THE PARTY/PARTIES AUTHORIZED BY THE PATIENT, ONLY, AND NOT TO BE USED FOR ANY OTHER PURPOSE.

November 10, 2015

Isaac Regev, M.D.            Graiwer & Kaplan
6404 Wilshire Blvd, Suite 1121    3600 Wilshire Blvd., Suite 2100
Los Angeles, CA 90048           Los Angeles, CA 90010

RE: Ruben Juarez
SS #: 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
EMP: Space Exploration Technologies
INS: Chubb Group of Insurance Companies
CLAIM #: 6914050057
WCAB #: ADJ9801824
DOI: 3/27/2013 – 3/27/2014
DOE: 3/25/2015, 5/5/2015, 6/9/2015, 7/16/2015

### TREATING PHYSICIAN IN INTERNAL MEDICINE/TOXICOLOGY
### PERMANENT AND STATIONARY MEDICAL-LEGAL REPORT, ML-102

THIS IS A CONSULTING REPORT. THIS REPORT WILL BE INCORPORATED IN YOUR PERMANENT AND STATIONARY REPORT, AND SUCH WILL BE RELIED UPON AND WILL BE PART OF YOUR MEDICAL-LEGAL OPINION. USE OF THE CONTENTS OF THIS REPORT AND ITS OPINIONS AND CONCLUSIONS ARE FOR PROVING OR DISPROVING A CONTESTED CLAIM. This report is for the purpose of a worker's compensation evaluation and reporting. This report adheres to the causation requirements of the Worker's Compensation Appeals Board in California. This report is not to be used without my authorization in writing for purposes of proving or disproving causation in other matters, such as State Courts or Federal Courts, since the causation standard requirements for State and Federal Court is different from the one required by the Worker's Compensation Appeals Board. THIS REPORT RECOUNTS, RECAPTURES AND DETAILS ALL PREVIOUS HISTORY, REVIEW OF RECORDS AND TREATMENT GIVEN BY ME.

Dear Gentlepersons:

Ruben Juarez was seen in my Los Angeles office on 3/25/2015, 5/5/2015, 6/9/2015 and 7/16/2015 in my capacity as treating physician in internal medicine. I have personally taken the patient's history and performed the physical examination. It required 30 minutes of review of

---

**Nachman Brautbar, M.D., Inc.**
6200 Wilshire Boulevard, Suite 1000 • Los Angeles, CA 90048
Tel: (323) 634-6500 • Fax: (323) 634-6501 • E-Mail: brautbar@aol.com
http://www.environmentaldiseases.com

EXHIBIT 47      709

Account Number: 31033
Regarding: Juarez, Ruben
Page: 2

records, 30 minutes of report composition, for a total of 1 hour, and addresses medical causation and medical apportionment.

## JOB DESCRIPTION:

The patient is a 45-year-old male who worked for Space Exploration Technologies for two years as an equipment specialist. He worked 8-10 years a day, six days a week. His last day on the job was in 2014 when he was put on disability. He has not worked since then.

## HISTORY OF INJURY ON THE JOB:

The patient said he was working with chemicals and worked in conformed coat, which is a polish used to protect the electronics and rockets. The patient said the chemicals were mixed with a formula. The chemicals were in liquid form. When he were mixed together, strong fumes were produced, which he inhaled. He did this approximately four hours a day. ==The patient states that next to his work area was a washer for electronic devices, which was cleaned with isopropyl alcohol.== He was there four hours a day. Due to his exposure on the job, he developed shortness of breath, nasal congestion, headaches and dizziness. He did not report it and did not see a company doctor. ==He saw a private doctor, who diagnosed him with vertigo.== When he took time off or got fresh air, he felt better. Once he returned to work, the symptoms reappeared. He worked inside a factory with poor ventilation from air extractors that were not always on. Eight months after he started to work there, he was moved to another room with a better air extractor. Despite the ventilation, he was still exposed to strong fumes. The first room was approximately 15 x 8 and the second was 25 x 15. He could smell strong fumes while working and was not given proper ventilation or respiratory protection.

The patient states he started going to the emergency room due to headaches and dizziness. He ==eventually had an MRI and was found to have an aneurysm.== The patient had a coil placed. After treatment, he started to have headaches. His doctor does not believe the aneurysm was the cause. He denies any head trauma and denies any IV drug use. He started to get two types of headaches. One came from the neck and the other around his sinuses, which is pressure like. He is now treating with Dr. Regev for the headaches.

EXHIBIT 47　　　　710

Account Number: 31033
Regarding: Juarez, Ruben
Page: 3

The patient has the following problems with his ADLs -- moderate problems writing, typing, standing, sitting, reclining, walking, climbing stairs, driving, sexual dysfunction; severe problems sleeping. His Epworth Sleepiness Scale score is 24/24 and did have a sleep study through his private insurance.

### PRESENT SYMPTOMS:

1. Exposure to chemicals.
2. Headaches, constant moderate.
3. Dizziness, constant moderate.
4. Nasal congestion, constant moderate.
5. Shortness of breath, occasional moderate.

### CURRENT MEDICAL HISTORY:

The patient currently sees Dr. Regev, Dr. Andaman and Dr. Hascall, and is on disability.

### PAST MEDICAL HISTORY:

The patient denies any previous injuries to any parts of the body involved in this claim. He did have a previous injury to his elbow. He was hospitalized for migraines. He denies any operations or car accidents in the last 10 years. He was diagnosed with migraines and an aneurysm.

### ALLERGIES:

The patient denies allergies to food, medication or environmental agents.

### MEDICATION:

The patient currently takes Topamax, Depakote, Wellbutrin, Pamelor, Xanax, aspirin, Percocet.

### SOCIAL HISTORY:

The patient denies smoking, drinking or illicit drug use.

EXHIBIT 47                                                               711

Account Number:    31033
Regarding:         Juarez, Ruben
Page:              4

**FAMILY HISTORY:**

Non-contributory.

**PAST OCCUPATIONAL HISTORY:**

Non-contributory.

**PHYSICAL EXAMINATION:**

Height: 5'6". Weight: 216 pounds. Blood pressure: 122/88. Pulse: 86. Temperature: 98.4. Skin: Within normal limits. HEENT: Within normal limits. Heart: Within normal limits. Chest: Within normal limits. Abdomen: Within normal limits. Extremities: Within normal limits. Neurologic Exam: Within normal limits.

**DIAGNOSTIC STUDIES & TESTS:**

EKG is sinus rhythm. Urinalysis within normal limits. Hematology panel showed red blood cell count 5.4, neutrophils 43, lymphocytes 43. Chemistry panel showed glucose 69, cholesterol 203, triglycerides 295, HDL 27. Chest x-ray was unremarkable. The patient had a spirometry done. His FEV1 started at 67 and went to 89 post bronchodilator. This is diagnosed for reactive airway disease, Exhibit A. The patient had a CAT scan of the sinuses, which showed pseudo defects versus true defects of the nasal bones, a 6 mm bullet or bow like fragment, bidirectional deviation of the nasal septum, prominence of the right and left inferior nasal turbinates associated with bilateral nasal airway obstruction, sinusitis.

**REVIEW OF AVAILABLE RECORDS:**

The patient gave me some material safety data sheets (MSDSs), which were reviewed.

Solder 63/67 rosin core low melt – contains tin, lead, rosin, activator. Vapors or fumes of the material at a temperature above 100° C may cause local irritation of the respiratory system. Isopropyl alcohol – can cause skin irritation.

EXHIBIT 47                                                                                          712

Account Number:   31033
Regarding:        Juarez, Ruben
Page:             5

Humiseal – contains xylene, ethyl benzene, toluene, MEK. May irritate the nose, throat and respiratory tract.

Humiseal thinner 521 – contains xylene. Irritating to the eyes, respiratory system and skin.

**DISCUSSION/CAUSATION:**
The patient is a 45-year-old male who worked for Space Exploration Technologies for two years as an equipment specialist. He was sent by Dr. Regev for an AOE/COE evaluation in internal medicine. There are several issues to discuss.

Reactive Airway Disease.

The patient denies any respiratory, sinus or allergy problems before working for the above company. He states he worked with various chemicals while working for the above company without proper ventilation or respiratory protection. Due to the exposure, he developed problems with shortness of breath. I ordered a spirometry, which came back positive for reactive airway disease, Exhibit A. The patient states he only gets his breathing problems a couple of times a week. Therefore, I gave him ProAir, which helped. His chest x-ray came back negative and rules out any signs of underlying lung disease as the cause of the development of his shortness of breath. I have been provided with various MSDSs, which showed that he was exposed to chemicals, including solder with 63/67 rosin core and Humiseal, and can cause respiratory tract irritation. There is a temporal relationship between the patient's exposure to various chemicals that can cause respiratory tract irritation on the job for years without proper ventilation or respiratory protection and the development of his breathing problems. The patient denies a pre-existing history or smoking history. Therefore at this point in time, I can state with reasonable medical probability that the patient's exposure on the job played a substantial factor in the development of his reactive airway disease on an industrial basis.

Rhinitis.

The patient also complained of nasal congestion. I ordered a CAT scan of the sinuses, which came back positive for rhinitis. He was given Flonase, which controlled his symptoms. As

EXHIBIT 47                                                                             713

Account Number: 31033
Regarding: Juarez, Ruben
Page: 6

stated earlier, the patient was exposed to chemicals such as solder with 63/67 rosin and Humiseal, which can cause respiratory tract irritation. There is a temporal relationship between the patient's exposure to chemicals that can cause respiratory tract irritation and the development of his nasal congestion. Therefore at this point in time, I can state with reasonable medical probability that the patient's rhinitis is industrially related.

### IMPAIRMENT & WORK RESTRICTIONS:

The patient has reached MMI and requires the following work restrictions. I am also going to discuss causation of disability.

1. Reactive airway disease. Turn to page 104, Table 5.9. The patient gets a total score of 1, as he uses ProAir a couple of times a week. Look at Table 5.10. A total score of 1 puts the patient in Class II, 10% to 25% impairment of the whole person. He uses an inhaler a couple of times a week. The patient has various problems with his ADLs. Therefore, he qualifies for 10%.
2. Rhinitis. Turn to page 260, Table 11.6. The patient falls in Class I, 0% to 10% impairment of the whole person, as his rhinitis is under control with Flonase. The patient has various problems with his ADLs. Therefore, he qualifies for 5%.

If you combine 10% and 5%, it is 15% impairment of the whole person on an industrial basis.

The patient requires the following work restriction of no exposure to irritant chemicals and dust (reactive airway disease, rhinitis).

### SUBJECTIVE FACTORS OF DISABILITY:

Moderate problems writing, typing, standing, sitting, reclining, walking, climbing stairs, driving, sexual dysfunction; severe problems sleeping.

### OBJECTIVE FACTORS OF DISABILITY:

Spirometry positive for reactive airway disease, Exhibit A; CAT scan of the sinuses positive for rhinitis.

EXHIBIT 47                                                                      714

Account Number:   31033
Regarding:        Juarez, Ruben
Page:             7

## TOTAL TEMPORARY DISABILITY:

As per Dr. Regev.

## PROGNOSIS & FUTURE MEDICAL CARE:

The patient's prognosis is good. The patient should be provided pharmacologic therapy and future doctor visits for his reactive airway disease and rhinitis on an industrial basis. He should see a doctor every three months to monitor these conditions on an industrial basis. He should be given the flu shot on a yearly, industrial basis. He should have a yearly spirometry to monitor his reactive airway disease on an industrial basis.

## VOCATIONAL REHABILITATION:

If work accommodation cannot be provided, then vocational rehabilitation is indicated from an internal medicine point of view.

## APPORTIONMENT:

I am to apportion to causation of disability, but did not find substantial medical evidence supporting apportionment to any pre-existing, non-industrial conditions. Therefore, I find the patient's reactive airway disease and rhinitis to be 100% work-related. I have examined apportionment after the Benson case and did not find substantial medical evidence supporting apportionment in this case.

IN SUMMARY, ANY REPORT NECESSARY FOR THE BILLING COMPANY TO FULFILL ITS BUSINESS OBLIGATION TO THE INSURANCE COMPANY SHOULD BE SECURED FROM THE INSURANCE COMPANY.

*Labor Code 5402(b) requires the employer to authorize all appropriate medical care up to $10,000 until the liability for the claimed injury is accepted or rejected. As of 6/1/04, Labor Code 5814 mandates a 25% penalty on the amount of payment unreasonably delayed (10% if self-imposed). Accordingly, it would be requested that the defendant please provide immediate payment.*

The evaluation of the patient occurred at 6200 Wilshire Boulevard, Suite 1000, Los Angeles, CA 90048. The evaluation was actually performed by the physician or physicians signing the report.
The evaluation performed, and the time spent performing the evaluation, is in compliance with the guidelines established by the administrative director pursuant to paragraph (5) of subdivision (j) of Section 139.2 or Section 5307.6 in effect on the date of the evaluation.
Names and qualifications of each person who performed any services in connection with the report, other than its clerical preparation are:

EXHIBIT 47                                    715

Account Number: 31033
Regarding: Juarez, Ruben
Page: 8

A. For medical-legal reports signed by Nachman Brautbar, M.D., the examination and reporting were done solely by Dr. Brautbar. Patient medical history was obtained and/or summarized by Dr. Brautbar after discussing it with the patient. Review of excerpt of records was done by Ronald Zlotolow M.D., and reviewed by Dr. Brautbar.
B. For medical-legal reports signed by Ronald Zlotolow, M.D., the examination and reporting were done solely by Dr. Zlotolow. Patient medical history was obtained and/or summarized by Dr. Zlotolow after discussing it with the patient. Review of excerpt of records was done by Dr. Zlotolow.
C. From time to time, Dr. Zlotolow, Dr. Brautbar's associate and board qualified in Internal Medicine, may see Dr. Brautbar's patients for follow-up evaluation and treatment. Patient records, provided and reviewed herein, diagnostic studies, material safety data sheets and depositions were summarized by Dr. Zlotolow and reviewed by Dr. Brautbar. Initial report outline was provided by Dr. Zlotolow and reviewed in detail by Dr. Brautbar. When applicable, follow-up evaluation and treatment reports are coauthored, reviewed and signed by Drs. Zlotolow and Brautbar.

Other participants in medical legal report:
D. All cardio-function and/or pulmonary treadmill studies are performed under the supervision of Nachman Brautbar, M.D. and/or Ronald Zlotolow, M.D.
E. Technical assistance in cardio-function and/or pulmonary treadmill provided by Rodney Jones, trained technician.
F. Final Interpretation of pulmonary function tests and cardiovascular studies are done by Nachman Brautbar, M.D. or Ronald Zlotolow, M.D.
G. Vital signs such as blood pressure, weight, EKG, Blood drawing, urine testing, allergy skin testing, are done by Martha Vasquez, trained medical assistant, certified phlebotomist.
H. If performed, neuroselective current perception threshold measures to assess the peripheral nerves was done by Martha Vasquez, trained medical assistant and interpreted by Nachman Brautbar, M.D. and/or Ronald Zlotolow, M.D.
I. If performed, abdominal aorta aneurysm screening (AortaScan) was done by Martha Vasquez, trained medical assistant, or Rodney Jones, trained technician, and interpreted by Nachman Brautbar, M.D. and/or Ronald Zlotolow, M.D.
J. Laboratory blood and urine testing if done, at my request, by Mission Community Hospital.
K. 2D Echocardiogram is performed by Hovik Ogares Sachmanyan certified echo cardiographer. Interpretation of the 2D echocardiograms is done by California Imaging Network.

Please be advised that the fees charged exceed the medical fee schedule in this matter, as per Labor Code 5307 (B). Such fees above the schedule are in accordance with Labor Code 5307 (B). The explanation for the increased fees would be as follows: 1) I have consistently been providing workers compensation evaluations and treatment and have treated numerous patients for individual injuries; 2) The fee charged do not exceed W.W.M.G. usual and customary charges; 3) The fees are within the range of those charged by medical doctors within and around the local community; 4) The economic aspects of a medical practice within a workers compensation practice involve overhead expenses which include but are not limited to the need for qualified personnel who conduct collections and make appearances before the board. There is also overhead involved in the average amount of time between incurring costs and receipt of payment. The fees must be above the official medical fee schedule in order to maintain the medical practice.

I declare under penalty of perjury that the information contained in this report and its attachments, if any, is true and correct to the best of my knowledge and belief, except as to information that I have indicated I received from others. As to that information, I declare under penalty of perjury that the information accurately describes the information provided to me and, except as noted herein, that I believe it to be true.

I, Ronald Zlotolow, M.D., declare, under penalty of perjury that I have not violated Labor Code §139.3 and that I have not offered, delivered, received or accepted any rebate, refund, commission, preference, patronage, dividend, discount or other consideration, whether in the form of money or otherwise, as compensation or inducement for any referral, examination or evaluation.

Yours sincerely,

Ronald D. Zlotolow, M.D.
Board Qualified in Internal Medicine
Clinical Assistant Professor of Medicine,
   USC Keck School of Medicine,
   University of Southern California
RDZ/ola/mw

By: Ronald Zlotolow, M.D.          Date: 11/10/2015          County: Los Angeles

EXHIBIT 47                                716

*Exhibit A*

NACHMAN BRAUTBAR, M.D.
6200 WILSHIRE BLVD., SUITE 1000
LOS ANGELES, CA 90048

05/05/2015

PT: RUBEN JUAREZ
PT#: 31038

SEX: M     HT: 66.0 in
AGE: 45    WT: 216.0 lb
           OCC:

DATE:
TIME: 50:03:54

SMK HX:
DIAGNOSIS:
PHYSICIAN:

HAZARD:
TECH: R.JONES

PRED-COLLINS!
BP: 750 TEMP: 22.0

| Spirometry | | Pre | %Pre | Predicted | Post | %Post | %Chg |
|---|---|---|---|---|---|---|---|
| FVC | (L) | 2.67 | 60 | 4.41 | 3.45 | 78 | 29 |
| FEV.5 | (L) | 1.46 | 56 | 2.61 | 2.22 | 85 | 52 |
| FEV1 | (L) | 2.26 | 67 | 3.37 | 3.02 | 89 | 33 |
| FEV1/FVC | (%) | 85 | 110 |  .76 |  .88 | 114 | 3 |
| FEV3 | (L) | 2.65 | 62 | 4.28 | 3.45 | 80 | 30 |
| FEF25-75% | (L/S) | 2.59 | 72 | 3.59 | 3.49 | 97 | 34 |
| MET | (SEC) | 0.51 | | | 0.49 | | |
| PEFmax | (L/S) | 5.95 | 94 | 8.64 | 5.75 | 66 | -4 |
| PEF25% | (L/S) | 4.20 | 58 | 7.79 | 5.27 | 67 | 25 |
| PEF50% | (L/S) | 3.40 | 49 | 6.94 | 3.76 | 69 | -13 |
| PEF75% | (L/S) | 1.50 | 60 | 2.49 | 3.05 | 81 | 30 |
| FIVC | (L) | | %Pre | Predicted | | | |
| Spirometry | | | | 4.41 | | | |
| SVC | (L) | 2.91 | 65 | 2.82 | | | |
| IC | (L) | 2.30 | 95 | | | | |
| ERV | (L) | 0.60 | 24 | 1.58 | | | |
| T. Length | (SEC) | 28.20 | | | | | |
| MVV rometry | (L/MIN) | 48.0 | %Pre | Predicted | | | |
| Test Length | (SEC) | 12.00 | 36 | 125.28 | | | |
| Diffusion | | | %Pre | Predicted | | | |
| Dsb ml/min/mmHg | | 025.15 | 99 | 25.45 | | | |
| Dsb(adj) ml/min/mmHg | | 025.15 | 99 | 29.43 | | | |
| VA(sb) (L) | | 0.00 | | | | | |
| VA(sb) (L) | | 5.76 | | | | | |
| D/V | | | | | | | |

(last edit: 60:05:34)

DAILY CALIBRATION 05/05/15
PT. UNABLE TO PERFORM FRC, SIC PERFORMED.
GOOD EFFORT GIVEN BY PT.
PULSE OX-98%

EXHIBIT 47                                                              717

PROOF OF SERVICE BY MAIL

STATE OF CALIFORNIA- COUNTY OF LOS ANGELES
I, the undersigned am employed in the county of LOS ANGELES
and the state of California. I am over eighteen years of age
and not a party to the within action. My business address is:
6200 WILSHIRE BLVD, STE 1000
LOS ANGELES , CA 90048

On Mon Nov 15   I served a Medical/Legal Lien and report on
JUAREZ, RUBEN           ,Account  31033    , by placing a true copy thereof
enclosed in a sealed envelope with postage thereon fully prepaid,
in the United States mail at LOS ANGELES  CA addressed as follows:

1) Insurance Carrier : CHUBB GROUP OF INS. CO.
                       P.O. BOX 42065
                       PHOENIX       , AZ 85080

2) Employer          : SPACE EXPLORATION TECHNOLOGYS
                       1 ROCKET RD
                       HAWTHORNE   , CA 90250

3) Applicant Attorney: GRAIWER, & KAPLAN
                       3600 WILSHIRE BLVD.,#2100
                       LOS ANGELES , CA 90010-2631

4) Defense Attorney  :

5) Referral Party    : ISAAC REGEV
                       6404 WILSHIRE BLVD. #1121
                       LOS ANGELES , CA 90048-5544

"I have not violated Labor Code section 139.3 and the contents of the report
and bill are true and correct to the best of my knowledge. This statement
is made under penalty of prejury."

DATE OF REPORT:
Dated this _____ day of _NOV_ 20_15_
at LOS ANGELES , California

SIGNED _____

EXHIBIT 47                                          718

# Ronald Zlotolow, M.D.
### Board Qualified, Internal Medicine

| | |
|---|---|
| **Internal Medicine** | **Toxicology** |
| **Treating & Consultations** | **Impairment Evaluation** |
| **Pension Disability Evaluation** | **Disability Evaluation** |

### THIS REPORT IS CONFIDENTIAL AND IS FOR THE USE OF THE PARTY/PARTIES AUTHORIZED BY THE PATIENT, ONLY, AND NOT TO BE USED FOR ANY OTHER PURPOSE.

November 21, 2016

Isaac Regev, M.D.                           Graiwer & Kaplan
6404 Wilshire Blvd, Suite 1121              3600 Wilshire Blvd., Suite 2100
Los Angeles, CA 90048                       Los Angeles, CA 90010

| | |
|---|---|
| RE: | Ruben Juarez |
| SS #: | 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 |
| EMP: | Space Exploration Technologies |
| INS: | Chubb Group of Insurance Companies |
| CLAIM #: | 076914050057 |
| WCAB #: | ADJ9801824 (LAO) |
| DOI: | 3/27/2013 – 3/27/2014 |

**To Prove or Disprove Contested Body Part(s)**

### SECONDARY TREATING PHYSICIAN IN INTERNAL MEDICINE/TOXICOLOGY
### SUPPLEMENTAL REPORT, ML-106
### (TOTAL TIME: 1 HOUR)

This report required review of records for 30 minutes, report composition for 30 minutes, for a total of 1 hour. This report is for the purpose of a worker's compensation evaluation and reporting. This report adheres to the causation requirements of the Worker's Compensation Appeals Board in California. This report is not to be used without my authorization in writing for purposes of proving or disproving causation in other matters, such as State Courts or Federal Courts, since the causation standard requirements for State and Federal Court is different from the one required by the Worker's Compensation Appeals Board. FOR THE PURPOSES OF THIS MEDICOLEGAL REPORT TO PROVE OR DISPROVE A CONTESTED CLAIM I HAVE RELIED AN ALL REPORTS AVAILABLE TO ME AT THIS POINT IN TIME, ALL DIAGNOSTIC STUDIES PERFORMED BY ME AT MY REQUEST, AND ALL CONSULTATIONS PERFORMED AT MY REQUEST.

Dear Gentlepersons:

==At your request is a supplemental report.== ==I received various material safety data sheets (MSDSs), which were reviewed.==

---

### Nachman Brautbar, M.D., Inc.
6200 Wilshire Boulevard, Suite 1000 * Los Angeles, CA 90048
Tel: (323) 634-6500 * Fax: (323) 634-6501 * E-Mail: brautbar@aol.com
http://www.environmentaldiseases.com

---

EXHIBIT 47                                                                      719

Account Number:   31033
Regarding:        Juarez, Ruben
Page:             2

### REVIEW OF AVAILABLE RECORDS:

285 lead free flux cord solder – may cause allergy or asthma symptoms, breathing difficulties if inhaled.

Arathane 5750 – vapor causes respiratory tract, eye and skin irritation. May cause allergic respiratory and skin reaction.

Arathane 5750B – vapors cause eye burns, causes respiratory tract and skin irritation, causes allergic skin reaction.

Humiseal 1833 aerosol – inhalation cause irritation to the nasal passages and throat, causes stupor. Significant exposure to these chemicals may adversely affect people with chronic disease of the respiratory system, skin, central nervous system and/or eyes.

Humiseal thinner 521EU – causes irritation of the nasal passages and throat, causes stupor. Significant exposure to these chemicals may adversely affect people with chronic disease of the respiratory system, skin, central nervous system and/or eyes.

Isopropyl alcohol – irritation to the skin and/or upper respiratory tract as noted above.

### DISCUSSION/CAUSATION:

Thank you very much for sending me these MSDSs. The MSDSs clearly demonstrate that the patient was exposed to various chemicals that could cause respiratory and sinus problems, including 285 lead file flux cord solder, Arathane 5750 & 5750B, Humiseal 1833 aerosol, Humiseal 52E1U and isopropyl alcohol. The patient described a history of exposure to these chemicals without proper ventilation or respiratory protection for two years. After reviewing these records, it clearly support my previous opinion that the patient's exposure on the job to these various chemicals did play a substantial factor in the development of his reactive airway disease and rhinitis. Therefore at this point in time and after reviewing the medical records, it further supports my previous opinions.

EXHIBIT 47                                                                                   720

Account Number:    31033
Regarding:         Juarez, Ruben
Page:              3

IN SUMMARY, ANY REPORT NECESSARY FOR THE BILLING COMPANY TO FULFILL ITS BUSINESS OBLIGATION TO THE INSURANCE COMPANY SHOULD BE SECURED FROM THE INSURANCE COMPANY.

*Labor Code 5402(b) requires the employer to authorize all appropriate medical care up to $10,000 until the liability for the claimed injury is accepted or rejected. As of 6/1/04, Labor Code 5814 mandates a 25% penalty on the amount of payment unreasonably delayed (10% if self-imposed). Accordingly, it would be requested that the defendant please provide immediate payment.*

The evaluation of the patient occurred at 6200 Wilshire Boulevard, Suite 1000, Los Angeles, CA 90048. The evaluation was actually performed by the physician or physicians signing the report.
The evaluation performed, and the time spent performing the evaluation, is in compliance with the guidelines established by the administrative director pursuant to paragraph (5) of subdivision (j) of Section 139.2 or Section 5307.6 in effect on the date of the evaluation.
Names and qualifications of each person who performed any services in connection with the report, other than its clerical preparation are:
   A. For medical-legal reports signed by Nachman Brautbar, M.D., the examination and reporting were done solely by Dr. Brautbar. Patient medical history was obtained and/or summarized by Dr. Brautbar after discussing it with the patient. Review of excerpt of records was done by Ronald Zlotolow M.D., and reviewed by Dr. Brautbar.
   B. For medical-legal reports signed by Ronald Zlotolow, M.D., the examination and reporting were done solely by Dr. Zlotolow. Patient medical history was obtained and/or summarized by Dr. Zlotolow after discussing it with the patient. Review of excerpt of records was done by Dr. Zlotolow.
   C. From time to time, Dr. Zlotolow, Dr. Brautbar's associate and board qualified in Internal Medicine, may see Dr. Brautbar's patients for follow-up evaluation and treatment. Patient records, provided and reviewed herein, diagnostic studies, material safety data sheets and depositions were summarized by Dr. Zlotolow and reviewed by Dr. Brautbar. Initial report outline was provided by Dr. Zlotolow and reviewed in detail by Dr. Brautbar. When applicable, follow-up evaluation and treatment reports are coauthored, reviewed and signed by Drs. Zlotolow and Brautbar.

Other participants in medical legal report:
   D. All cardio-function and/or pulmonary treadmill studies are performed under the supervision of Nachman Brautbar, M.D. and/or Ronald Zlotolow, M.D.
   E. Technical assistance in cardio-function and/or pulmonary treadmill provided by Rodney Jones, trained technician.
   F. Final Interpretation of pulmonary function tests and cardiovascular studies are done by Nachman Brautbar, M.D. or Ronald Zlotolow, M.D.
   G. Vital signs such as blood pressure, weight, EKG, Blood drawing, urine testing, allergy skin testing, are done by Martha Vasquez, trained medical assistant, certified phlebotomist.
   H. If performed, neuroselective current perception threshold measures to assess the peripheral nerves was done by Martha Vasquez, trained medical assistant and interpreted by Nachman Brautbar, M.D. and/or Ronald Zlotolow, M.D.
   I. If performed, abdominal aorta aneurysm screening (AortaScan) was done by Martha Vasquez, trained medical assistant, or Rodney Jones, trained technician, and interpreted by Nachman Brautbar, M.D. and/or Ronald Zlotolow, M.D.
   J. Laboratory blood and urine testing if done, at my request, by Mission Community Hospital (before 2/1/2016), Laboratory Medicine Consultants, Inc. (2/1/2016 – 4/18/2016) and Quest Diagnostics (after 4/19/2016).
   K. If performed, 2D echocardiogram was done and interpreted by California Imaging Network.

Please be advised that the fees charged exceed the medical fee schedule in this matter, as per Labor Code 5307 (B). Such fees above the schedule are in accordance with Labor Code 5307 (B). The explanation for the increased fees would be as follows: 1) I have consistently been providing workers compensation evaluations and treatment and have treated numerous patients for individual injuries; 2) The fee charged do not exceed W.W.M.G. usual and customary charges; 3) The fees are within the range of those charged by medical doctors within and around the local community; 4) The economic aspects of a medical practice within a workers compensation practice involve overhead expenses which include but are not limited to the need for qualified personnel who conduct collections and make appearances before the board. There is also overhead involved in the average amount of time between incurring costs and receipt of payment. The fees must be above the official medical fee schedule in order to maintain the medical practice. In *Warren Brower vs. David Jones Construction; State Compensation Insurance Fund* (Workers' Compensation Appeals Board, State of California. Case No. ADJ802221

EXHIBIT 47                                                                          721

Account Number:    31033
Regarding:         Juarez, Ruben
Page:              4

(SJO 0258870). Opinion and Decision After Reconsideration (en Banc). Dated and Filed at San Francisco on 5/21/2014), the applicant obtained a medical-legal report from a treating physician. The award indicated the applicant is entitled to the medical-legal expenses for the treating physician medical-legal report. 8 CCR § 9793. Definitions: (c) "Comprehensive medical-legal evaluation" means an evaluation of an employee which (A) results in the preparation of a narrative medical report prepared and attested to in accordance with Section 4628 of the Labor Code, any applicable procedures promulgated under Section 139.2 of the Labor Code, and the requirements of Section 10606 and (B) is either: (1) performed by a Qualified Medical Evaluator pursuant to subdivision (h) of Section 139.2 of the Labor Code, or (2) performed by a Qualified Medical Evaluator, Agreed Medical Evaluator, or the primary treating physician for the purpose of proving or disproving a contested claim, and which meets the requirements of paragraphs (1) through (5), inclusive, of subdivision (h). (h) "Medical-legal expense" means any costs or expenses incurred by or on behalf of any party or parties, the administrative director, or the appeals board for X-rays, laboratory fees, other diagnostic tests, medical reports, medical records, medical testimony, and as needed, interpreter's fees, for the purpose of proving or disproving a contested claim. The cost of medical evaluations, diagnostic tests, and interpreters is not a medical-legal expense unless it is incidental to the production of a comprehensive medical-legal evaluation report, follow-up medical-legal evaluation report, or a supplemental medical-legal evaluation report and all of the following conditions exist: (1) The report is prepared by a physician, as defined in Section 3209.3 of the Labor Code. (2) The report is obtained at the request of a party or parties, the administrative director, or the appeals board for the purpose of proving or disproving a contested claim and addresses the disputed medical fact or facts specified by the party, or parties or other person who requested the comprehensive medical-legal evaluation report. Nothing in this paragraph shall be construed to prohibit a physician from addressing additional related medical issues. (3) The report is capable of proving or disproving a disputed medical fact essential to the resolution of a contested claim, considering the substance as well as the form of the report, as required by applicable statutes, regulations, and case law. (4) The medical-legal examination is performed prior to receipt of notice by the physician, the employee, or the employee's attorney, that the disputed medical fact or facts for which the report was requested have been resolved. (5) In the event the comprehensive medical-legal evaluation is served on the claims administrator after the disputed medical fact or facts for which the report was requested have been resolved, the report is served within the time frame specified in Section 139.2(j)(1) of the Labor Code.

I declare under penalty of perjury that the information contained in this report and its attachments, if any, is true and correct to the best of my knowledge and belief, except as to information that I have indicated I received from others. As to that information, I declare under penalty of perjury that the information accurately describes the information provided to me and, except as noted herein, that I believe it to be true. I verified under penalty of perjury the total time spent in each of the activities described above.

I, Ronald Zlotolow, M.D., declare, under penalty of perjury that I have not violated Labor Code §139.3 and that I have not offered, delivered, received or accepted any rebate, refund, commission, preference, patronage, dividend, discount or other consideration, whether in the form of money or otherwise, as compensation or inducement for any referral, examination or evaluation.

**Yours sincerely,**

**Ronald D. Zlotolow, M.D.**
Board Qualified in Internal Medicine
Clinical Assistant Professor of Medicine,
   USC Keck School of Medicine,
   University of Southern California
RDZ/ola/mw

By: Ronald Zlotolow, M.D.        Date: 11/21/2016        County: Los Angeles

EXHIBIT 47                            722

Account Number:   31033
Regarding:        Juarez, Ruben
Page:             4

(SJO 0258870). Opinion and Decision After Reconsideration (en Banc). Dated and Filed at San Francisco on 5/21/2014), the applicant obtained a medical-legal report from a treating physician. The award indicated the applicant is entitled to the medical-legal expenses for the treating physician medical-legal report. 8 CCR § 9793. Definitions: (c) "Comprehensive medical-legal evaluation" means an evaluation of an employee which (A) results in the preparation of a narrative medical report prepared and attested to in accordance with Section 4628 of the Labor Code, any applicable procedures promulgated under Section 139.2 of the Labor Code, and the requirements of Section 10606 and (B) is either: (1) performed by a Qualified Medical Evaluator pursuant to subdivision (h) of Section 139.2 of the Labor Code, or (2) performed by a Qualified Medical Evaluator, Agreed Medical Evaluator, or the primary treating physician for the purpose of proving or disproving a contested claim, and which meets the requirements of paragraphs (1) through (5), inclusive, of subdivision (h). (h) "Medical-legal expense" means any costs or expenses incurred by or on behalf of any party or parties, the administrative director, or the appeals board for X-rays, laboratory fees, other diagnostic tests, medical reports, medical records, medical testimony, and as needed, interpreter's fees, for the purpose of proving or disproving a contested claim. The cost of medical evaluations, diagnostic tests, and interpreters is not a medical-legal expense unless it is incidental to the production of a comprehensive medical-legal evaluation report, follow-up medical-legal evaluation report, or a supplemental medical-legal evaluation report and all of the following conditions exist: (1) The report is prepared by a physician, as defined in Section 3209.3 of the Labor Code. (2) The report is obtained at the request of a party or parties, the administrative director, or the appeals board for the purpose of proving or disproving a contested claim and addresses the disputed medical fact or facts specified by the party, or parties or other person who requested the comprehensive medical-legal evaluation report. Nothing in this paragraph shall be construed to prohibit a physician from addressing additional related medical issues. (3) The report is capable of proving or disproving a disputed medical fact essential to the resolution of a contested claim, considering the substance as well as the form of the report, as required by applicable statutes, regulations, and case law. (4) The medical-legal examination is performed prior to receipt of notice by the physician, the employee, or the employee's attorney, that the disputed medical fact or facts for which the report was requested have been resolved. (5) In the event the comprehensive medical-legal evaluation is served on the claims administrator after the disputed medical fact or facts for which the report was requested have been resolved, the report is served within the time frame specified in Section 139.2(j)(1) of the Labor Code.

I declare under penalty of perjury that the information contained in this report and its attachments, if any, is true and correct to the best of my knowledge and belief, except as to information that I have indicated I received from others. As to that information, I declare under penalty of perjury that the information accurately describes the information provided to me and, except as noted herein, that I believe it to be true. I verified under penalty of perjury the total time spent in each of the activities described above.

I, Ronald Zlotolow, M.D., declare, under penalty of perjury that I have not violated Labor Code §139.3 and that I have not offered, delivered, received or accepted any rebate, refund, commission, preference, patronage, dividend, discount or other consideration, whether in the form of money or otherwise, as compensation or inducement for any referral, examination or evaluation.

**Yours sincerely,**

**Ronald D. Zlotolow, M.D.**
Board Qualified in Internal Medicine
Clinical Assistant Professor of Medicine,
   USC Keck School of Medicine,
   University of Southern California
RDZ/ola/mw

By: <u>Ronald Zlotolow, M.D.</u>      Date: <u>11/21/2016</u>      County: <u>Los Angeles</u>

EXHIBIT 47                                               723