# EXHIBIT 51

EXHIBIT 51 753

# HAMLIN PSYCHE CENTER

**Thomas A. Curtis, M.D.**
Medical Director

**William W. Kaiser, Ph.D.**
Director of Clinical Services

Lorna Punzalan, Office Manager, ext. 218
Italo Vilogron, Treatment Coordinator, ext. 220

| | | |
|---|---|---|
| 14531 Hamlin Street<br>Van Nuys, CA 91411 | www.hamlinpsychecenter.com<br>Van Nuys: (818) 780-4409<br>Long Beach: (562) 513-3684<br>Fax (818) 780-4472 | 4300 Long Beach Blvd., #240<br>Long Beach, CA 90807 |

Chubb Group of Insurance Companies
P.O. BOX 42065
Phoenix, AZ 85080

Gary Kaplan, Esq.
3600 Wilshire Blvd., Ste. 2100
Los Angeles, CA 90010

Isaac Regev, M.D.
6404 Wilshire Blvd., Ste. 1121
Los Angeles, CA 90048

Re: Ruben Juarez
WCAB #: ADJ9801824
Claim #: 076914050057
Employer: Space Exploration Technology/Spacex
SSN: ███ 0743
DOB: ███ 1970
DOI: CT 3/27/2013-3/27/2014
DOE: 3/31/16

<u>REQUEST FOR AUTHORIZATION</u>

## <u>TREATING PSYCHOLOGIST'S INITIAL REPORT WITH PSYCHOLOGICAL TEST RESULTS</u>

Gentlepersons:

Mr. Ruben Juarez, a 46-year-old equipment specialist for Space Exploration Technology/Spacex, completed psychological evaluation and testing on 3/31/16 at the Van Nuys Hamlin Street office.

EXHIBIT 51
000245
754

# INTRODUCTION

On 9/24/14, Mr. Juarez submitted an Employee's Claim for Workers' Compensation Benefits citing a cumulative trauma date of injury from 3/27/13 to 3/27/14 involving his head/headaches and brain/aneurysm due to repetitive and continuous exposure to lead, electronic parts and cleaning substances.

There was a letter dated 11/27/15 from Ariet Agazaryan, a UR triage supervisor from Chubb Group of Insurance Companies indicating to Mr. Juarez that, "We are disputing the liability for the above treatment requested because the injury is being disputed or the liability for the claimed body parts are being disputed: Entirety of the claim."

There was a letter dated 9/26/15 submitted by the primary treating physician, Dr. Isaac Regev, designating Dr. Thomas Curtis as treating physician in this case.

Dr. Curtis designated Gayle K. Windman, Ph.D., as the evaluating psychologist for this report.

This report would comprise the applicant's initial comprehensive psychological evaluation.

It should be kept in mind that this initial treating psychological evaluation could not attest to what should be a more inclusive and detailed history of injury within the investigative reports, records, depositions and other materials of discovery, and afforded by and compensated for within the comparatively unlimited time frames of the medical-legal evaluations of PQME or AME psyche physicians.

It would be requested that the adjuster either promptly authorize the requested psychological treatment plan or submit this request to Utilization Review.

As well, since this office can now provide only limited psychological treatment on a lien basis, it would be requested that the parties seek panel QME or AME psychological/psychiatric consultation as soon as possible so that we can proceed promptly within the parameters of the recommended psychological treatment.

Would the defendant please provide copies of all reports, records, witness statements, depositions and all other discovery documents in this matter. This request would be ongoing for new documents.

Case 2:17-cv-03342-ODW-GJS Document 66-51 Filed 09/10/18 Page 4 of 19 Page ID #:4275

Case 2:17-cv-03342-ODW-GJS Document 52-3 Filed 08/27/18 Page 3 of 168 Page ID #:2025

Ruben Juarez vs. Space Exploration Technology/Spacex
Page 3

## IDENTIFYING DATA

Mr. Juarez achieved an Associate's degree. He is married. He lives in Granada Hills with his wife, Isela (age 45), and his daughter, Marisol (age 12).

## HISTORY OF THE WORK INJURY

Mr. Juarez began his employment at Space Exploration Technology/Spacex in about 1/12. His last day of work there was in about 3/14.

Mr. Juarez was placed on disability on 3/28/14 by Dr. Ronald Andiman.

As an equipment specialist, Mr. Juarez's job duties included programming and maintaining equipment, designing tools and fixtures, and being responsible for production prototypes and production support.

Mr. Juarez received above average written work performance evaluations. There were other indications of positive work performance including being recognized as the top performer. He was promoted in 2013. He worked there for about two years.

A few months after he began working at Spacex, Mr. Juarez developed symptoms of migraine headaches, dizziness, difficulty walking and sinus symptoms due to exposure to electronic materials such as tin and lead; chemical coatings such as Arathane and HumiSeal; and cleaning substances such as thinners and isopropyl alcohol. He reported this issue to his supervisor to no avail.

Mr. Juarez consulted with several doctors until he was sent to get a CT scan, which revealed he had a brain aneurysm. He underwent emergency brain surgery in Cedars-Sinai. He was discharged after three days.

A few days later, Mr. Juarez had a stroke with worsened migraine headaches. Due to his worsening condition, Mr. Juarez had anxiety attacks. He was hopeless and felt like damaged equipment that could not be used.

Mr. Juarez tried to return to work; however, his supervisor said that he could not return to work due to his illness. Mr. Juarez contacted HR and submitted ADA forms. Mr. Juarez was told he would be called back, but he never received a call from them.

In 2014, Mr. Juarez consulted with a neurologist, Ronald Andiman, who diagnosed migraine headache. He also consulted with a psychiatrist, Dr. Steven Schenkel, who prescribed psychotropic medications including Wellbutrin, Xanax, Valium, Zoloft and Ambien.

Case 2:17-cv-03342-ODW-GJS Document 66-51 Filed 09/10/18 Page 5 of 19 Page ID #:4276

Ruben Juarez vs. Space Exploration Technology/Spacex
Page 4

In 2015, Mr. Juarez came under the care of the primary treating neurologist, Dr. Isaac Regev.

Mr. Juarez remained symptomatic. His emotional condition will be further described in other sections of this report to follow.

## APPLICANT'S REPORT OF EMOTIONAL SYMPTOMS

As a result of the events of injury at work, Mr. Juarez developed symptoms of mental disorder including depression, anxiety, irritability and insomnia.

There have been significant alterations in Mr. Juarez's previously active lifestyle such that the quality of his life became deteriorated. He developed difficulty engaging in his usual activities like before such as basic self-care and housekeeping.

Mr. Juarez reported persisting symptoms of depression including changes in appetite and weight, sleep disturbance, decreased energy, difficulty thinking, and feelings of emptiness and inadequacy.

Mr. Juarez has experienced recurring periods of anxiety with symptoms including recurrent panic attacks, excessive worry, difficulty controlling his worry, feelings of restlessness, feeling "keyed up" and on edge, difficulty concentrating, irritability, muscle tension, abdominal distress and feeling pressured.

There have also been unprovoked crying episodes that have occurred multiple times weekly.

Mr. Juarez has experienced stress-intensified medical symptoms with worsened headache, neck/shoulder/back muscle tension/pain, nausea, vomiting, shortness of breath, chest pain, palpitations, peptic acid reaction, abdominal pain/cramping, alternating constipation/diarrhea and possible stress-aggravated high blood pressure.

Due to his mental disorder, Mr. Juarez has experienced impairment in his daily activities including bodily functions, personal hygiene, eating properly, sleeping and functioning sexually. Because of his nervousness, there has been increased urinary frequency. There have been problems with stress-related constipation and diarrhea.

Due to stress-related overeating and depressive inactivity, Mr. Juarez has developed a gain of weight of about 20 to 25 pounds.

Mr. Juarez has also experienced a depressively decreased interest in his basic self-care activities including brushing his teeth, bathing regularly and dressing appropriately without prompting from others. In addition, there has been decreased motivation and

Case 2:17-cv-03342-ODW-GJS Document 66-51 Filed 09/10/18 Page 6 of 19 Page ID #:4277

Case 2:17-cv-03342-ODW-GJS Document 52-3 Filed 08/24/18 Page 5 of 168 Page ID #:2028

Ruben Juarez vs. Space Exploration Technology/Spacex
Page 5

ability to perform normal housekeeping activities including making the bed, cooking a meal and vacuuming the house.

Mr. Juarez has developed decreased sexual interest due to depression, anxiety, emotional withdrawal, irritability and anger.

Mr. Juarez has developed difficulty staying asleep and falling asleep due to depression, anxiety, worry and nightmares. Mr. Juarez uses Ambien, Valium and Sonata to fall asleep. Because of his insomnia, Mr. Juarez has experienced excessive daytime sleepiness, morning headaches, trouble concentrating and a change in his personality. Mr. Juarez's insomnia has persisted.

Due to his emotional distress, Mr. Juarez has had difficulty interacting appropriately with others including family members, friends and neighbors. Mr. Juarez has become emotionally withdrawn.

Due to his mental disorder, Mr. Juarez has developed attitudes that have impaired his ability to socialize including defensiveness, mistrustfulness and fearfulness. Mr. Juarez has become irritable and impatient with people. There have been problems with becoming short-tempered and being prone to inappropriate angry outbursts.

Mr. Juarez has experienced difficulty tolerating prolonged contact with people because of his depression, anxiety, irritability and quickness to anger. There has been insufficient emotional control such that Mr. Juarez yells at others.

Because of Mr. Juarez's emotional disturbances, there has been difficulty paying attention, concentrating and remembering things. Mr. Juarez has experienced problems with distractibility, slowed thinking, mental blocking and loss of his train of thought.

Because of his cognitive impairment, Mr. Juarez has had difficulty communicating his thoughts. Mr. Juarez's cognitive functioning has become impaired such that there has been difficulty in his ability to read a magazine or book and follow the plot of a movie or TV show. Mr. Juarez also has problems remembering telephone numbers, appointments, birthdays, directions, what people tell him and where he left things around the house.

Due to Mr. Juarez's depression and anxiety, there has been psychological fatigue and energy depletion.

## PERSONAL AND FAMILY HISTORY

Mr. Juarez was the youngest of six children. He was born and raised in Mexico City. He moved to Southern California in about 1986.

Case 2:17-cv-03342-ODW-GJS Document 66-51 Filed 09/10/18 Page 7 of 19 Page ID #:4278

Ruben Juarez vs. Space Exploration Technology/Spacex
Page 6

Mr. Juarez described the relationship he had with his parents, Juan and Aurora, as mostly positive. There appeared to be no problems with the relationship he had with his parents that would be related to his current emotional distress. Mr. Juarez could not recall the years his parents died. In any event, each death was followed by a normal grief reaction that became resolved.

Mr. Juarez described his childhood as happy and normal. He reported no significant childhood problems with peer relations, school behavior, school performance or adolescent turmoil.

Mr. Juarez has been married to Isela since about 1996. In the aftermath of Mr. Juarez's recent work-related problems, the relationship has deteriorated to the point of separation. The problems in Mr. Juarez's relationship appeared to have arisen primarily from his current work-related disability situation. There have been problems in the relationship related to his physical pain and disability, depression, irritability, diminished sexual desire and fatigue. Mr. Juarez indicated that, were it not for the troubles originating from work, he would not have undergone the relationship problems in his personal life.

## WORK HISTORY

Mr. Juarez was employed by Space Exploration Technology/Spacex as an equipment specialist for approximately two years, from about 1/12 to about 3/14.

Prior to that, Mr. Juarez worked for Express Manufacturing from 2010 to 2012. The reason given for leaving this job was to get a new job. Mr. Juarez's work performance was rated above average.

Before that, Mr. Juarez worked for Moore Industries from 2007 to 2009, when he was laid off due to a work injury there. Mr. Juarez's work performance was rated above average.

Prior to that, Mr. Juarez worked for Magnatek from 2004 to 2007. The reason given for leaving this job was to get a new job. Mr. Juarez's work performance was rated above average.

## PRIOR WORK INJURIES

In 2008, Mr. Juarez injured his elbow while working for Moore Industries. There was psychological component to the injury. He consulted with a mental health specialist. He recovered.

Case 2:17-cv-03342-ODW-GJS Document 66-51 Filed 09/10/18 Page 8 of 19 Page ID #:4279

Ruben Juarez vs. Space Exploration Technology/Spacex
Page 7

# PSYCHOLOGICAL HISTORY

In regard to his mental health history, Mr. Juarez reported no previous episodes of comparable emotional upset or confusion. He has never undergone psychiatric hospitalization. There have been no suicide attempts. He has never previously been prescribed any psychotropic medication.

# PERSONAL HABITS

In regard to his personal habits, Mr. Juarez stated that he is a non-smoker. He no longer drinks. There was a history of conviction for alcohol-related charges including a DUI in 2004. He paid a fine and performed community service. Mr. Juarez denied the use of any illegal drugs or the abuse of any legal ones.

# MEDICAL HISTORY

Relevant to serious medical illnesses, surgeries or hospitalizations, Mr. Juarez was diagnosed with CVA or stroke in 2013 and migraine headaches in 2014.

In regard to medication usage, Mr. Juarez has recently taken Depakote, Topamax, Pamelor, Aspirin, Bactrim, Pantoprazole, Carafet, Valium, Xanax, Wellbutrin, Prozac and Ritalin.

# INJURY AND LEGAL HISTORY

In the early 2000s, Mr. Juarez injured his shoulders and back in a vehicular accident. He received settlement of approximately $2,000. As well, in 2015, Mr. Juarez injured his back in another vehicular accident. He recovered from both accidents. There was no psychological component to these injuries.

Additionally, there have been no past convictions of any felonies.

# MENTAL STATUS EXAMINATION

Mr. Juarez presented in interview as a 46-year-old male who was casually dressed.

Mr. Juarez initially presented as defensive and guarded due to his natural personality temperament and due to and depression and anxiety. This was particularly evident when he described how he developed migraine headaches and memory impairment and feels like a burden to his family. Once rapport had been established, Mr. Juarez became more open.

Case 2:17-cv-03342-ODW-GJS Document 66-51 Filed 09/10/18 Page 9 of 19 Page ID #:4280

Ruben Juarez vs. Space Exploration Technology/Spacex
Page 8

Mr. Juarez's manner of communication was depressed, particularly when revealing how he cannot do things he used to enjoy like playing with his daughter and watching his daughter's basketball games.

Mr. Juarez's thought processes were noted to be anxious when describing how he cannot tolerate loud noises and prefers to be alone in a quiet place.

Mr. Juarez was preoccupied with worries about his career future and his economic future. He has fears of continued intractable pain and permanent work impairment.

There did not appear to be a loss of contact with reality in the form of visual or auditory hallucinations. There was no evidence of frank paranoia or delusions of persecution. There appeared to be an absence of frank schizophrenia or other psychosis.

Mr. Juarez was not able to retain the recollection of three simple items. Mr. Juarez was oriented to the day of the week and date. Mr. Juarez's recall of past serial U.S. presidents was adequate. His ability to perform simple calculation -- the subtraction of serial sevens from 100 -- appeared to be unimpaired.

Mr. Juarez demonstrated diminished cognitive functioning in the clinical interview situation. He was noted to be revealing of defects in concentration, attention and memory. He developed memory impairment due to stroke. He forgets telephone numbers, appointments, birthdays, directions, what people tell him and where he left things around the house. He cannot focus on watching television or reading. It appeared most likely that Mr. Juarez's cognitive deficits were caused by emotionally reactive confusion, overwhelmed psychological coping mechanisms and brain dysfunction.

Mr. Juarez's motivation to recover appeared impaired by aspects of depression including hopelessness. There were not any discernible indications of malingering for secondary gain. Mr. Juarez did not reveal fiscal incentives. Overall, Mr. Juarez and his account of his injuries were deemed to be of average credibility.

Relevant to his need for treatment, Mr. Juarez's capacity for psychological insight and good psychological judgment was observed to be essentially unimpaired. He was interested in receiving psychotherapy.

## PSYCHOLOGICAL TEST RESULTS

Overall, Mr. Juarez's psychological test results were massively abnormal.

The Beck Depression Inventory score of 47 placed Mr. Juarez in the severe range of subjective depression, according to Beck scoring criteria.

Case 2:17-cv-03342-ODW-GJS   Document 66-51   Filed 09/10/18   Page 10 of 19   Page ID #:4281

Ruben Juarez vs. Space Exploration Technology/Spacex
Page 9

There was the administration of the Beck Anxiety Inventory (BAI). This test consists of descriptive statements of anxiety which are endorsed on a 4-point scale. The BAI measures the severity of self-reported anxiety in adult outpatients over the age of 17 years. In this case, the total score of 39 indicated a severe level of anxiety according to Beck scoring criteria.

The Beck Scale for Suicidal Ideation (BSS) not only serves as a screening device to detect suicidal ideation, it also measures the severity of suicidal potential and risk. The ratings for 19 items are calculated such that the total BSS score can range from 0 to 38, from normal to maximal risk. Within this range, the score generated by Mr. Juarez was 7. This indicates a need for emotional treatment to reduce or remove suicidal ideation.

There was the administration of the Insomnia Severity Index (ISI) which measures the severity of self-reported insomnia. This test consists of rating descriptive statements of the patient's current sleep patterns which are endorsed on a 5-point scale. In this case, the total score of 27 indicated severe insomnia according to ISI scoring criteria.

The NSQ (Neuroticism Scale Questionnaire) scores revealed abnormal anxiety and depression. There was also an indication of a need for emotional treatment.

The score of 10 Sten on the Total Scale of the NSQ revealed a definite need for psychotherapy. This score placed him at approximately the 98th percentile for "total neuroticism," according to NSQ scoring criteria.

The Anxiety Scale score of 10 Sten placed Mr. Juarez at approximately the 98th percentile for anxiety in our population. This means that according to NSQ scoring criteria, about 2% or fewer of all people's score fall within the same range of anxiety as did Mr. Juarez.

The score on the Depression Scale, at 9 Sten, placed Mr. Juarez at approximately the 95th percentile for depression in our population. According to NSQ scoring criteria, about 5% of all people's score fall in this range or worse.

The NSQ indicated further abnormalities. The E scale was abnormally elevated to a Sten of 10. This test result reflected excessive gentleness, submissiveness and vulnerability to mental distress and disorder. This score indicated a greater sensitivity than average to the development of mental distress and disorder.

The MMPI-2 (Minnesota Multiphasic Personality Inventory-2) revealed indications of overwhelmed emotional coping mechanisms and mental dysfunction.

The L, F, K scores on the MMPI-2 (8, 24, 12 raw; 70, 110, 43 T) indicated a technically invalid profile. The F-K Index of 12 was beyond the acceptable score of 11. The F Scale was elevated at or above 90 T.

Case 2:17-cv-03342-ODW-GJS Document 66-51 Filed 09/10/18 Page 11 of 19 Page ID #:4282

Ruben Juarez vs. Space Exploration Technology/Spacex
Page 10

It should be noted that T scores on the MMPI-2 at or above 65 on the clinical scales are generally considered significant and abnormal.

The exact T scores for clinical scales 1 through 0 were as follows: 108, 104, 104, 77, 60, 75, 102, 118, 49 and 82.

Such MMPI-2 validity scores could reflect intense confusion, a random answering pattern due to factors including cognitive/perceptual dysfunctioning, an overwhelming of psychological coping mechanisms, a lack of cooperation, and/or an exaggeration of symptoms as a cry for help and/or as a purposeful manipulation for secondary gain (malingering). In this particular case, the most likely cause for invalidity would be a combination of factors of actual intense emotional symptomatology, overwhelmed coping mechanisms, impaired motivation and the inhibitory effects of depression, frustration, irritability, anger, fatigue and, most importantly, of personal or cultural variations of high symptom reporting tendencies. There may also be high symptom reporting due to inflation caused by anger and litigation contentiousness. At any rate, the MMPI-2 was invalid and beyond the scope of the standard principles of profile interpretation.

It should also be kept in mind relevant to the concept of invalidity that the MMPI-2 validity measurements do not indicate whether the patient does or does not have a mental disorder. Since a patient with mental disorder could underreport or overreport psychopathology, the measurements of defensiveness/denial and increased frequency of symptom reporting should be applied only to the issue of whether the statistical standards of interpretation can be applied to the clinical scale score and profile. Thus, measurements of the extent of symptom reporting and/or consistency apply only to the reliability of standard interpretation. This must be clarified because it should not be interpreted that the patient or his mental disorder is invalid, only that the standard interpretation should be considered invalid.

In summary, the psychological test results revealed an overwhelming of Mr. Juarez's coping mechanisms and mental dysfunction. In this particular case, the most likely cause for invalidity would be a combination of factors of actual intense emotional symptomatology, overwhelmed coping mechanisms, impaired motivation and the inhibitory effects of depression, frustration, irritability, anger and fatigue.

## DIAGNOSES AS PER DSM-5

According to DSM-5 criteria, to qualify for a diagnosis of Major Depressive Disorder, there must be symptoms including depression that has lasted for more than two weeks plus five (5) or more of the following criteria: (1) changes in weight and appetite, (2) decreased interest and motivation, (3) insomnia, (4) decreased energy, (5) difficulty thinking, (6) feelings of inadequacy, and (7) recurrent thoughts of death. In this case,

Case 2:17-cv-03342-ODW-GJS Document 66-51 Filed 09/10/18 Page 12 of 19 Page ID #:4283

Ruben Juarez vs. Space Exploration Technology/Spacex
Page 11

Mr. Juarez has developed depression that has lasted for more than two weeks with changes in weight and appetite, decreased interest and motivation, insomnia, decreased energy, difficulty thinking and feelings of inadequacy that have impaired his social and occupational functioning. Furthermore, Mr. Juarez's depressive symptoms are not attributable to the effects of a substance or any other medical condition. Therefore, Mr. Juarez qualifies for Major Depressive Disorder.

According to DSM-5 criteria, Mr. Juarez qualified for a diagnosis of Psychological Factors Affecting Medical Condition because there was the presence of the following medical symptoms—headache, neck/shoulder/back muscle tension/pain, nausea, vomiting, shortness of breath, chest pain, palpitations, peptic acid reaction, abdominal pain/cramping, alternating constipation/diarrhea and high blood pressure—and because these medical symptoms have been exacerbated by his mental disorder. As well, these symptoms are not better accounted for by another mental disorder.

Therefore, on a psychodiagnostic basis, the most appropriate categories of mental disorder as applied to Mr. Juarez would be as follows:

| | |
|---|---|
| F32.9 | Major Depressive Disorder, Single Episode, Unspecified |
| F54 | Psychological Factors Affecting Medical Condition (stress-intensified headache, neck/shoulder/back muscle tension/pain, nausea, vomiting, shortness of breath, chest pain, palpitations, peptic acid reaction, abdominal pain/cramping, alternating constipation/diarrhea and possible stress-aggravated high blood pressure) |

## SUMMARY

Upon examination, Mr. Juarez exhibited abnormal behavior with emotional withdrawal, depressive facial expressions and tearfulness when describing the chemical exposure related medical symptoms he developed during the course of his employment at Spacex.

A few months after working at Spacex, Mr. Juarez developed symptoms of migraine headaches, dizziness, difficulty walking and sinus symptoms due to exposures to electronic materials, chemical coatings and cleaning substances there. He reported this issue to his supervisor to no avail. Mr. Juarez underwent a CT scan, which revealed he had a brain aneurysm. He underwent emergency brain surgery in Cedars-Sinai. He was discharged after three days. A few days later, Mr. Juarez had a stroke with worsened migraine headaches. Due to his worsening condition, Mr. Juarez had anxiety attacks. He was hopeless and felt like damaged equipment that could not be used.

Case 2:17-cv-03342-ODW-GJS Document 66-51 Filed 09/10/18 Page 13 of 19 Page ID #:4284

Ruben Juarez vs. Space Exploration Technology/Spacex
Page 12

Mr. Juarez tried to return to work; however, his supervisor said that he could not return to work due to his illness. Mr. Juarez contacted HR and submitted ADA forms. Mr. Juarez was told he would be called back, but he never received a call from them.

Mr. Juarez was provided with treatment including medication management for his brain condition under the care of the primary treating physician, Dr. Isaac Regev. For the continuing emotional complications, Mr. Juarez was referred to this office.

Upon examination, Mr. Juarez was found to be too beset by stress-aggravated medical symptoms and too depressed, anxious and overwhelmed to work. Mr. Juarez needed to work through the emotional symptoms in the further passage of time and supportive psychotherapy prior to attempting to return to any job.

<u>Mr. Juarez was found to be temporarily totally disabled on a combined physical and psychological basis.</u>

Mr. Juarez was observed to become emotionally unstable and disturbed at the contemplation of an immediate return to work. If he attempted to return to work, his emotional condition would deteriorate into worsened emotional dysfunction.

The events of injury arising from work were predominantly causative of injury to the psyche. It would be estimated that about 85% would be industrially-caused by the events described above with about 15% caused by the past and personal life events and other factors described below.

There would be past and personal life events and other factors to address in a comprehensive psychological evaluation. For instance, there have been legal matters to consider. In 2004, Mr. Juarez was charged with DUI. He paid a fine and performed community service. There have been no further problems with alcohol or the law. He felt he has had learned his lesson. There has been a prior work injury to consider. In 2008, Mr. Juarez injured his elbow while working for Moore Industries. There was psychological component to the injury. He consulted with a mental health specialist. He recovered. There have also been non-industrial accidents to consider. In the early 2000s, Mr. Juarez injured his shoulders and back in a vehicular accident. He received settlement of approximately $2,000. As well, in 2015, Mr. Juarez injured his back in another vehicular accident. He recovered from both injuries without emotional residuals. There have also been medical conditions to consider. In 2013, Mr. Juarez was diagnosed with CVA or stroke; in 2014, migraine headaches. These medical conditions may become considered in part as work injury stress-aggravated compensable consequences. In any event, there have been indications of emotional complications of these medical conditions in and of themselves, but not to the point of mental disorder or emotional impairment. Such factors will all be addressed in more detail relevant to the issue of apportionment to be considered when Mr. Juarez's psychological condition becomes permanent and stationary. All of the records should

Case 2:17-cv-03342-ODW-GJS Document 66-51 Filed 09/10/18 Page 14 of 19 Page ID #:4285

Ruben Juarez vs. Space Exploration Technology/Spacex
Page 13

be reviewed prior to a final opinion in this area. However, at present, there would appear to be a basis for 15% causation to the prior work injury and the non-industrial components of his medical conditions.

At present, it would not be possible to estimate, on a psychological basis, a return-to-work date for regular or modified work. As well, it cannot yet be determined, on a psychological basis, whether Mr. Juarez will eventually be emotionally able to engage in the occupation he performed at the time of the injury.

In addition, it would not yet be possible to estimate the residuals of permanent emotional impairment, if any.

These estimations will be provided as soon as possible, presumably when Mr. Juarez's psychological condition becomes closer to reaching permanent and stationary status.

<u>Mr. Juarez was found to be in need of emotional treatment.</u>

It should be noted that the California Medical Treatment Utilization Schedule Chronic Pain Treatment Guidelines Page 23 on Behavioral Interventions (CA MTUS Reg. 9792.24.2) indicates that Cognitive Behavioral Therapy (CBT) is "Recommended. The identification and reinforcement of coping skills is often more useful in the treatment of pain than ongoing medication or therapy, which could lead to psychological or physical dependence."

According to the Chronic Pain Guidelines, the following would be recommended:

- *Initial trial of 3-4 psychotherapy visits over 2 weeks.*
- *With evidence of objective functional improvement, a total of up to 6-10 visits over 5-6 weeks (individual sessions).*

<u>According to the guidelines, therefore, there would be a request for authorization of four (4) cognitive behavior psychotherapy (CBT) sessions in the next few weeks.</u>

The medical necessity and clinical rationale for such treatment would be set forth as follows: Without such treatment, the depression, anxiety, sleep problems, stress-intensified medical symptoms and the related functional impairment could worsen rather than improve as expected.

Overall, an attempt will be made to provide only the amount of emotional treatment essential to improving and maintaining emotional and cognitive functioning.

There will be the provision of CBT to help offset Mr. Juarez's symptoms of anxiety, panic, emotional withdrawal, isolation and depression.

Case 2:17-cv-03342-ODW-GJS   Document 66-51   Filed 09/10/18   Page 15 of 19   Page ID #:4286

Ruben Juarez vs. Space Exploration Technology/Spacex
Page 14

There will also be the provision of psychotropic medication evaluation and management. Prescriptions will be provided as needed through the medical staff at this office.

Adjustments in medication will be provided according to the individual patient's needs. The frequency of medication management contacts should usually be no more than once every three weeks at the beginning, and when optimal, no more than every three to four months after that.

It should also be recalled that, according to the ODG that there is a risk of weaning patients off of psychotropic medications and that medications "should not be stopped abruptly if used for psychiatric conditions…[weaning] may take as long as 3 to 6 months."

*It has been concluded that the combination of psychotropic medication and psychotherapy, particularly in the form of integrated treatment provided within a single setting, was more efficacious in leading to a better quality of life and potential increased productivity in the workplace (Langlieb AM, Kahn JP. How much does quality mental health care profit employers? J Occup Env Med. 2005; 47(11):1099-1109.)*

*Cognitive behavioral therapy for depression is recommended based on meta-analyses that compare its use with pharmaceuticals. Cognitive behavioral therapy fared as well as antidepressant medication with severely depressed outpatients in four major comparisons. Effects may be longer lasting (80% relapse rate with antidepressants versus 25% with psychotherapy) (Paykel, 2006) (Bockting, 2006) (DeRubeis, 1999) (Goldapple, 2004). It also fared well in a meta-analysis comparing 78 clinical trials from 1977 – 1996 (Gloaguen, 1998). In another study, it was found that combined therapy (antidepressants plus psychotherapy) was found to be more effective than psychotherapy alone (Thase, 1997). A recent high quality study concluded that a substantial number of adequately treated patients did not respond to antidepressant therapy (Corey-Lisle, 2004). A recent meta-analysis concluded that psychological treatment combined with antidepressant therapy is associated with a higher improvement rate that drug treatment alone. In longer therapies, the addition of psychotherapy helps to keep patients in treatment (Pampallona, 2003). For panic disorder, cognitive behavioral therapy is more effective and more cost-effective than medication (Royal Australian, 2003). The gold standard for the evidence-based treatment of MDD is a combination of medication (antidepressants) and psychotherapy. The primary forms of psychotherapy that have been most studied through research are: Cognitive Behavioral Therapy and Interpersonal Therapy (Warren, 2005).*

*In the interim, it should be kept in mind that Evidence-Based Mental Health concluded that in patients with depression, group psychotherapy is effective for relieving symptoms and that nine (9) studies showed that group psychotherapy and individual psychotherapy did not differ in effectiveness. (Evid. Based Mental Health 2001; 4:82 doi: 10.1136/ebmh.4.3.82…"Review: group psychotherapy is effective for depression (2001) Clinical Psychological: Science and Practice 8, 98. McDermut W, Miller IW, Brown RA., The efficacy of group psychotherapy for depression: a meta-analysis and review of the empirical research..Spring;..—116 [CrossRef] [Web of Science])*

*As well, there is an abundance of evidence in the literature documenting the effectiveness of individual and group psychotherapy in chronic pain patients. Therefore, Mr. Juarez will be provided with CBT also to help in addressing his pain problems.*

*The effectiveness of individual and group psychotherapy in chronic pain patients has been firmly established (Gamsa A, Braha RE, Catchlove RF. The use of structured group therapy sessions in the treatment of chronic pain patients. Pain. 1985; 22(1):91-6.; Spence SH. Cognitive-behaviour therapy in the treatment of chronic, occupational pain of the upper limbs: a 2 yr follow-up. Behav Res Ther. 1991; 29(5):503-9.; Basler HD. Group treatment for pain and discomfort. Patient Educ Couns. 1993; 20(2-3):167-75.; Li EJ, Li-Tsuny CW, Lam CS, Hui KY, Chan CC. The effect of a "training on work readiness" program for workers with musculoskeletal injuries: a randomized control trial (RCT) study. J Occup Rehabil. 2006; 16(4):529-41.; Thorn BE, Kuhajda MC. Group cognitive therapy for chronic pain. J Clin Psychol. 2006; 62(11):1355-66.)*

Case 2:17-cv-03342-ODW-GJS   Document 66-51   Filed 09/10/18   Page 16 of 19   Page ID #:4287

Ruben Juarez vs. Space Exploration Technology/Spacex
Page 15

*The appropriateness and importance of the use of individual and group psychotherapy in chronic pain patients has also been firmly established in further research. (See Gamsa A, Braha RE, Catchlove RE. The use of structured group therapy sessions in the treatment of chronic pain patients. Pain. 1985; 22(1):91-6.; Spence SH. Cognitive-behaviour therapy in the treatment of chronic, occupational pain of the upper limbs: a 2 yr follow-up. Behav Res Ther. 1991; 29(5):503-9.; Basler HD. Group treatment for pain and discomfort. Patient Educ Couns. 1993; 20(2-3):167-75.; Li EJ, Li-Tsang CW, Lam CS, Hui KY, Chan CC. The effect of a "training on work readiness" program for workers with musculoskeletal injuries: a randomized control trial (RCT) study. J Occup Rehabil. 2006; 16(4):529-41.; Thorn BE, Kuhajda MC. Group cognitive therapy for chronic pain. J Clin Psychol. 2006; 62(11):1355-66.)*

*Cognitive behavioral rehabilitation programs have been demonstrated to be an effective means of reducing psychological distress, of changing cognition, and of improving the function of patients with chronic low back pain (Rose MJ, Reilly JP, Pennie B, Bowen-Jones K, Stanley IM, Slade PD. Chronic low back pain rehabilitation programs: a study of the optimum duration of treatment and a comparison of group and individual therapy. Spine. 1997; 22(19):2246-51; discussion 2252-3.) It has also been shown that psychological interventions in combination with physiotherapy can be effective in treating fibromyalgia patients, especially if applied early (Keel PJ, Bodoky C, Gerhard U, Müller W. Comparison of integrated group therapy and group relaxation training for fibromyalgia. Clin J Pain. 1998; 14(3):232-8.)*

*Experimental subjects suffering from chronic pain and treated in a multi-modality based setting including the provision of psychotherapy reported less pain, better control over pain, more pleasurable activities and feelings, less avoidance and less catastrophizing. In addition, disability was reduced in terms of social roles, physical functions and mental performance. (Basler HD, Jäkle C, Kröner-Herwig B. Incorporation of cognitive-behavioral treatment into the medical care of chronic low back patients: a controlled randomized study in German pain treatment centers. Patient Educ Couns. 1997; 31(2):113-24.) In the rehabilitation setting, the provision of psychotherapy stable anxiety levels despite increased patient effort implied improved pain tolerance. (Singh G, Willen SN, Boswell MV, Janata JW, Chelimsky TC. The value of interdisciplinary pain management in complex regional pain syndrome type I: a prospective outcome study. Pain Physician. 2004; 7(2):203-9.) Treatment with psychotherapy has also shown to cause a decrease in the degree to which pain interferes with activity, increasing the ability to cope with pain, and allowing a decreased use of some medications and other physical treatments (Puder RS. Age analysis of cognitive-behavioral group therapy for chronic pain outpatients. Psychol Aging. 1988; 3(2):204-7.)*

Would the claims administrator please fax to this office a letter of authorization for the aforementioned psychological treatment to be initiated as soon as possible.

It would be hereby requested that the defendant authorize the aforementioned course of emotional treatment at my office.

It should be noted further that Labor Code 5402(b) immediately went into effect with the passage of the Workers' Compensation reform bill on 4/19/04. Labor Code 5402(c) requires the employer to authorize all appropriate medical care up to $10,000 until the liability for the claimed injury is accepted or rejected. As of 6/1/04, Labor Code 5814 mandates a 25% penalty on the amount of payment unreasonably delayed (10% if self-imposed). Accordingly, it would be requested that the defendant please provide immediate payment.

Would the claims adjuster please provide copies of all medical records, personnel records, investigative reports or any other relevant discovery materials. These data are essential to evaluating complex matters of causation and apportionment. It would also be appreciated if the claims adjuster would provide notification of any scheduled psyche Agreed Medical Examinations, defense QME examinations or panel QME examinations,

Case 2:17-cv-03342-ODW-GJS Document 66-51 Filed 09/10/18 Page 17 of 19 Page ID #:4288

Ruben Juarez vs. Space Exploration Technology/Spacex
Page 16

and/or any reluctance to make reimbursement for a comprehensive permanent and stationary evaluation from this office. Would the adjuster please advise this office if the applicant is not an employee, was the initial aggressor, did not timely report the injury, filed a fraudulent claim or was otherwise not legally eligible for benefits. Would the adjuster please also submit any information relevant to any important upcoming court dates, in particular any expedited hearings or Mandatory Settlement Conferences; and please provide notification of any psyche physician's depositions.

If there are any valid objections such that there would not be the authorization for the requested treatment at this office, could the adjuster please report the basis for such denial within seven days.

For further information on treatment details, please request a brief narrative report. Otherwise, there will be further reports to follow as necessary.

Thank you for your consideration in this matter.

## AFFIDAVIT OF COMPLIANCE

I declare under penalty of perjury that the information contained in this report and its attachments, if any, is true and correct to the best of my knowledge and belief, except as to information that I have indicated I received from others. As to that information, I declare under penalty of perjury that the information accurately describes the information provided to me and, except as noted herein, I believe it to be true.

In the preparation of this report, I was assisted by Thomas A. Curtis, M.D., who edited the first draft and provided the psychological test interpretations.

It should be noted that, aside from the clerical preparation of this report, any reviews deemed necessary and appropriate to identify and determine the relevant psychological issues in this matter and to determine the diagnoses, conclusions and recommendations contained in this report, have been performed by me.

I declare under penalty of perjury that I have not violated the provisions of California Labor Code Section 139.3.

I also declare under penalty of perjury that the attached billing for services is true and correct to the best of my knowledge.

The opportunity to provide this evaluation has been appreciated.

If there are any questions, please feel free to contact me.

Ruben Juarez vs. Space Exploration Technology/SpaceX
Page 17

Signed on _____4/13/16_____ in Los Angeles County, California.

Signature: _____
Gayle K. Windman, Ph.D. (PSY 19944)

# COMPEX LEGAL SERVICES
## CERTIFICATION
(Pursuant to F.R.E. 803(6), 902(11), AND 28 U.S.C. § 1746)

I hereby certify and declare under penalty of perjury under the laws of the United States of America that the following statements are true and correct to the best of my knowledge and belief. I am over the age of 18 and the duly authorized custodian of records for

**HAMLIN PSYCHE CENTER**
**14531 HAMLIN STREET, VAN NUYS, CA 91411.**

I have the authority to certify that the records made available to COMPEX LEGAL SERVICES for reproducing are all of the records under my custody and control which are all of the records under the custody and control of HAMLIN PSYCHE CENTER, described and called for in the SUBPOENA/Authorization served with this declaration in the matter related to said individual or thing pertaining to:

RECORDS OF: JUAREZ, RUBEN
  AKA: RUBEN, HERNANDEZ JUAREZ
  DATE OF BIRTH ███/1970
  SOCIAL SECURITY # ███0743

| HOW ORIGINAL RECORDS WERE PREPARED | |
|---|---|
| [X] HANDWRITTEN NOTES | [X] TYPED/DATA ENTERED |
| [ ] TRANSCRIBED | [ ] OTHER _____ |

| TYPE OF RECORDS PRODUCED | | | |
|---|---|---|---|
| [X] MEDICAL | [X] BILLING | [ ] FILMS | [ ] INSURANCE |
| [ ] EMPLOYMENT | [ ] PAYROLL | | [ ] SCHOLASTIC |
| [ ] OTHER _____ | | | |

Said records were made at or near the time of the statements, acts, events, conditions, opinions, diagnoses, etc., that are reported in those records, by a person with knowledge of and a business duty to record those matters. Said records were kept in the course of a regularly conducted activity of the business, and made as a regular practice and custom of the business. I have delivered all of the records requested with the following exceptions:

_____
_____

Yuliana Rios
CUSTODIAN OF RECORDS NAME (PLEASE PRINT)

S.S.D Disability / Medical Records Dept.
DEPARTMENT

[signature]
SIGNATURE OF CUSTODIAN OF RECORDS

6-25-18 Van Nuys, CA
DATE, AND CITY AND STATE

I AM THE ATTORNEY'S REPRESENTATIVE AND I STATE THAT I MADE TRUE AND CORRECT COPIES OF ALL THE ORIGINAL RECORDS DELIVERED TO ME BY THE CUSTODIAN OF RECORDS OF THE ABOVE LOCATION.
I DECLARE UNDER PENALTY OF PERJURY & UNDER THE LAWS OF THE UNITED STATES OF AMERICA THAT THE FOREGOING IS TRUE AND CORRECT.

6/25/18 VanNuys, CA
DATE, AND CITY AND STATE

[signature]
SIGNATURE

Anthony Hernandez
PRINT NAME

PURSUANT TO CAL. BUS. AND PROF. CODE § 22462, I WILL MAINTAIN THE INTEGRITY AND CONFIDENTIALITY OF ANY AND ALL INFORMATION OBTAINED, AND DISTRIBUTE THE RECORDS COPIED BY COMPEX LEGAL SERVICES TO THE AUTHORIZED PERSON OR ENTITIES.

EXHIBIT 51        771