Shahrad Milanfar (SBN 201126)
smilanfar@bkscal.com
Alex P. Catalona (SBN 200901)
acatalona@bkscal.com
BECHERER KANNETT & SCHWEITZER
1255 Powell Street
Emeryville, CA 94608
Telephone: (510) 658-3600
Facsimile: (510) 658-1151

Attorneys for Defendant
PRECISION VALVE & AUTOMATION, INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RUBEN JUAREZ, an individual and ISELA HERNANDEZ, an individual,<br><br>Plaintiffs,<br><br>PRECISION VALVE & AUTOMATION, INC., a corporation and DOES 1-20,<br><br>Defendants. | CASE NO. CV17-03342-ODW (GJSX) [L.A.S.C. Case No. BC650229]<br><br>**DEFENDANT PRECISION VALVE & AUTOMATION, INC.'S <u>REPLY BRIEF</u> IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**<br><br>Date:       October 1, 2018<br>Time:      1:30 p.m.<br>Ctrm:     5D, 5th Floor<br>Judge:     Hon. Otis D. Wright II |

Becherer
Kannett &
Schweitzer
—————
1255
Powell St.
Emeryville, CA
94608
510-658-3600

1

**TABLE OF CONTENTS**

I.    INTRODUCTION…………………………….....…………………….....1

II.   ARGUMENT……………………………………………………………….2

   A. Summary Judgment Should Be Granted Based On California's
      Two-Year Statute Of Limitations………..………………………………2

   B. Plaintiffs' Failure To Warn Claims Are Barred As A Matter
      Of A Law……………………………………………………………...18

   C. Plaintiffs' Strict Product Liability Claim Is Barred As A
      Matter of Law...……………………………………………………20

   D. Plaintiffs' Evidentiary Objections Should Be
      Overruled……………………………………………….………...21

III.  CONCLUSION…………………………………………………24

2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Becherer
Kannett &
Schweitzer**

———

1255
Powell St.
Emeryville, CA
94608
510-658-3600

i

# TABLE OF AUTHORITIES

**FEDERAL CASES**

*Bank of California v. Opie,*
    663 F.2d 977, 979 (9th Cir.1981)……………………………………………….2

*Benjamin v. B&H Education, Inc.,*
    877 F.3d 1139, 1150 (9th Cir. 2017……………………………………………..2

*Cambridge Elec. Corp. v. MGA Elec., Inc.,*
    227 F.R.D. 313, 324…………………………………………………………….2

*Celotex v. Catrett*
    477 U.S. 317 (1986)……………………………...…………………………….1

*Clark v. Prud. Ins. Co.*
    940 F.Supp.2d 186 (D. N.J. 2013)……………………………………………..15

*Hoffman v. Construction Protective Services, Inc.,*
    541 F.3d 1175, 1180 (9th Cir. 2008……………………………………………..3

*In re Lewis*
    97 F.3d 1182 (9th Cir. 1996)……………………...…………………………...1, 4

*Kennedy v. Allied Mut. Ins. Co.,*
    952 F.2d 262, 266 (9th Cir. 1991………………………………...………..6

*Matsushita Elec. Industrial Co., Ltd., v. Zenith Radio Corp.,*
    475 U.S. 242, 252 (1986)……………………………………………4, 6

*Medina v. Multaler, Inc.,*
    547 F.Supp. 1099, 1106, fn. 8 (C.D. Cal. 2007………………………...……..2, 3

*Motus v. Pfizer Inc.*
    358 F.3d 659 (9th Cir. (Cal.) 2004………………………………………….2, 19

*Navajo Nation v. U.S. Forest Serv.*
    535 F.3d 1058, 1080 (9th Cir. 2008)……………………………………….20

Becherer
Kannett &
Schweitzer

1255
Powell St.,
Emeryville, CA
94608
510-658-3600

*Nutrasweet Co. v. X-L Engineering Co.*,

    227 F.3d 776, 785-786 (7th Cir. 2000………………..……………………….3

*Platt Elec. Supply, Inc. v. EOFF Elec. Inc.*,

    522 F.3d 1049, 1056 (2008……………………………...………...15, 16

*R&R Sails, Inc. v. Ins. Co. of Penn.*,

    673 F.3d 1240, 1246 (9th Cir. 2012)……………………………………….2

*Rojas v. Roman Catholic Dioceses of Rochester*,

    660 F.3d 98, 105 (2nd Cir. 2011……………………….…………..7

*Santangelo v. Bridgestone/Firestone, Inc.*,

    499 Fed.Appx. 727, 729 (9th Cir. (Cal.) 2012………………...……...16, 24

*School Dist. No. 1J, Multnomah County v. ACandS, Inc.*

    5 F.3d 1255, 1264 (9th Cir. 1993……………………………………….6

*Scott v. Harris*

    550 U.S. 372, 380 (2007)……………………………………....…….1, 24

*Yeager v. Bowlin*,

    693 F.3d 1076, 1981 (9th Cir. 2012.) ……………………………….6, 7

*Yeti By Molly v. Deckers Outdoor*

    259 F.3d at 1101 (9th Cir. 2001) ……………………………………….3


**CALIFORNIA CASES**

*Contois v. Aluminum Precision Products, Inc.*,

    2008 WL 5065108, *4 (Cal. Ct. App. 2008) ………………………………18

*Fox v. Ethicon Endo-Surgery, Inc.*

    35 Cal. 4th 797, 809-809 (2005)…………………………………13, 14, 15

*Hart v. Robert Bosch Tool Corp.*,

    2010 WL 3566715, *5 (Cal. Ct. App. 2010)..…………...…………….18, 19

Becherer
Kannett &
Schweitzer

1255
Powell St.
Emeryville, CA
94608
510-658-3600

1

*Heimuli v. Lilja*

2      2012 WL 2520907 (Cal. Ct. App. 2012)…..……………………………..14

3  *Jolly v. Eli Lilly & Co.*

4      44 Cal.3d 1103 (1988)……………………..…………………2, 10, 14, 15, 17

5  *Nelson v. Indevus Pharmaceuticals, Inc.*

6      142 Cal.App.4th 1202 (2006)…………………………………………..16

7  *Nguyen v. Western Digital Corporation*

8      229 Cal.App.4th 1522 (2014)…………………………………………..17

9  *Norgart v. Upjohn Co.*

10      21 Cal.4th 383 (1999)…………………………………………1, 2, 14, 15, 17

11  *O'Neil v. Crane Co.*

12      53 Cal.4th 335 (2012)……………………….………………………20

13  *Ramirez v. Plough, Inc.*

14      6 Cal.4th 539 (1993)……………………………………………………18

15  *Rivas v. Safety Kleen Corp.*

16      98 Cal.App.4th 218 (2002)…………………………………...1, 14, 17

17  *Rosas v. BASF Corporation*

18      236 Cal.App.4th 1378 (2015)………………………………………17, 18

19  *Temple v. Velcro USA, Inc.*

20      148 Cal.App.3d 1090 (1983)…………………………………………..19

21  *Treatt USA v. Superior Court*

22      2015 WL 5895495 (Cal. Ct. App. 2015)…..…………..1, 10, 11, 14, 16, 18

23  *Ultimax Cement Mfg. Corp. v. Quikrete Companies, Inc.*

24      2009 WL 4307082 (Cal. Ct. App. 2009)…………………………14

25  *Viramontes v. Pfizer, Inc.*

26      2015 9319497 (Cal. Ct. App. 2015)………...…………………..…..14

27

28

**Becherer
Kannett &
Schweitzer**

———

1255
Powell St.
Emeryville, CA
94608
510-658-3600

**FEDERAL RULES**

Federal Rule of Civil Procedure 37(c)(1)…………………………………………..2

Federal Rule of Evidence ("FRE") 801……………………………………12, 21, 22

FRE 803…………………………………………………………………21, 22, 23

**Becherer**
**Kannett &**
**Schweitzer**
—————
1255
Powell St.
Emeryville, CA
94608
510-658-3600

## I.   INTRODUCTION

It is an undisputed fact that Mr. Juarez filed his workers' compensation claim for severe brain injuries in September of 2014, based on industrial exposures which started in 2012.  Such evidence constitutes "definitive proof" that started the running of the statute of limitations under California law.  *Rivas v. Safety Kleen Corp.,* 98 Cal.App.4th 218, 228-229 (2002); *Treatt USA v. Superior Court* 2015 WL 5895495 at *9 fn. 10 (Cal. App. 2015.)

But plaintiffs argue PVA must still prove they knew "there was something wrong with the PVA 350." (Opp. 15, 9-10.)  On the contrary.  Because they are relying on California's discovery rule, it is plaintiffs' "burden to establish 'facts showing that he was not negligent in failing to make the discovery sooner and that he had no actual or presumptive knowledge of facts sufficient to put him on inquiry." *April Enterprises, Inc. v. KTTV,* 147 Cal.App.3d 805, 833 (1983); *Norgart v. Upjohn Co.*, 21 Cal.4th 383, 397 (1999).

This burden has not been met because no reasonable jury would accept the logical leaps plaintiffs suggest may be made based on their submitted evidence, the majority of which is either inadmissible or immaterial:  "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Scott v. Harris*, 550 U.S. 372, 380 (2007).  Simply put, nothing stated in plaintiffs' submitted declarations constitutes "significant probative evidence" to defeat summary judgment.  *In re Lewis*, 97 F.3d 1182, 1187 (9th Cir. 1996).

Plaintiffs mistakenly rely on the "strict scrutiny" standard applicable to summary judgment motions under California law.  (Opp., 7:21-28.)  Such scrutiny does not exist under Federal law which "*mandates* the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex*

Becherer
Kannett &
Schweitzer

———

1255
Powell St.
Emeryville, CA
94608
510-658-3600

*v. Catrett*, 477 U.S. 317, 322-323 (1986) (emphasis added)[1]

Based on the record as a whole, it remains undisputed that plaintiffs had the necessary "suspicion of wrongdoing" by October 2012 or September 2014 at the latest, and admittedly also had information that would "put a reasonable person on inquiry" about PVA's machine. *Norgart, supra,* at 397-398; *Jolly, supra,* at 1110-1111. Therefore, even if this Court accepts plaintiffs' opposition at face value, it will not change the fact that they were required to file suit by September of 2016 at the absolute latest. Because they did not, their lawsuit is flatly barred by the statute of limitations. The Court should grant summary judgment in PVA's favor as required by California law.

## II.   ARGUMENT

### A. Summary Judgment Should Be Granted Based on California's Two-Year Statute Of Limitations.

#### a. Federal Rule of Civil Procedure 37(c)(1) Prohibits Consideration Of The Declarations Of Undisclosed Witnesses Mendoza and Gutierrez.

Under Federal Rule of Civil Procedure ("FRCP") 37(c)(1), "[i]f a party fails to provide information or *identify a witness* as required by Rule 26(a) or (e), the party *is not allowed* to use that information *or witness to supply evidence on a motion*, at a hearing or at trial, unless the failure was substantially justified or harmless." FRCP 37(c)(1) (emphasis added); *Benjamin v. B&H Education, Inc.*, 877 F.3d 1139, 1150 (9th Cir. 2017) (affirming trial court's exclusion of undisclosed witnesses on summary judgment).[2]

Becherer
Kannett &
Schweitzer

1255
Powell St.
Emeryville, CA
94608
510-658-3600

---

[1] *See also, e.g., Motus v. Pfizer Inc.*, 358 F.3d 659, 660 (9th Cir. (Cal.) 2004) quoting *Bank of California v. Opie*, 663 F.2d 977, 979 (9th Cir.1981) ("[In] a diversity case, federal law alone governs whether evidence is sufficient to raise a question for the trier-of-fact.")

[2] *Medina v. Multaler, Inc.*, 547 F.Supp. 1099, 1106, fn. 8 (C.D. Cal. 2007) (accord); *Cambridge Elec. Corp. v. MGA Elec., Inc.*, 227 F.R.D. 313, 324 (C.D. Cal. 2004)(accord.) It is the burden of the party offering an undisclosed witness to prove that its nondisclosure was harmless or substantially justified, *R&R Sails, Inc. v. Ins. Co. of Penn.*, 673 F.3d 1240, 1246 (9th Cir. 2012),

Here, plaintiffs never disclosed witnesses Mendoza or Gutierrez in their initial or supplemental disclosures made pursuant to Rule 26.  (Declaration of Alex P. Catalona ("Catalona Dec."), 79-86, 103-115.)  They also did not disclose them in response to any of PVA's written discovery, including interrogatories which explicitly asked plaintiffs to identify all witnesses that establish or "in any way relates to whether plaintiffs' lawsuit is barred by the two-year statute of limitations."  (UF 74; Catalona Dec., 121:1-4, 133:5-13, 140:1-4, 148:16-149:1, 154:24-28, 160:7-17, 164:24-28, 170:7-17.)  At no point during his deposition, did Ruben Juarez identify either of these witnesses including when he was asked directly to identify every person he worked with at SpaceX.  (Catalona Dec., 33:1-34:21.)  Plaintiffs' nondisclosure is not harmless because PVA was deprived of its opportunity to (1) interview or depose these witnesses before filing its motion for summary judgment and (2) obtain evidence from SpaceX that these alleged co-workers took the same "Hazard Communication" course plaintiff took which would have eliminated any factual dispute arguably created by their testimony.

> In fact, Medina's failure to disclose Hannaway as a likely witness before defendants' summary judgment motion was filed prejudiced defendants by depriving them of an opportunity to depose him.  Consequently, applying the standard set forth in Rule 37(c)(1) and *Yeti by Molly, supra,* the court concludes that Hannaway's declaration must be excluded.

*Medina, supra,* 547 F.Supp. at 1106, fn. 8.

---

and proof of willfulness or bad faith on the part of the nondisclosing party is not required. *Hoffman v. Construction Protective Services, Inc.*, 541 F.3d 1175, 1180 (9th Cir. 2008).  If the offering party does not meet this burden, exclusion of the undisclosed witness is mandatory.  *Yeti By Molly v. Deckers* 259 F.3d at 1106 [(9th Cir.) 2001] (affirming exclusion of witness pursuant to Rule 37's "'self-executing,' 'automatic' sanction to 'provide[] a strong inducement for disclosure of material….'"); *Nutrasweet Co. v. X-L Engineering Co.*, 227 F.3d 776, 785-786 (7th Cir. 2000) (accord). FEDERAL CIVIL PROCEDURE BEFORE TRIAL, Schwarzer, et al., [11:341] (Rutter Group, 2018) ("Absent excuse, sanction mandatory: Unless the nondisclosure is 'harmless' or excused by 'substantial justification, the court must impose this evidence preclusion sanction.")

Becherer
Kannett &
Schweitzer

1255
Powell St,
Emeryville, CA
94608
510-658-3600

Plaintiffs have made no effort to explain, or provide any justification for, their failure to disclose either of these witnesses.  And even though a showing of willfulness or bad faith is not required, there is nothing before this Court which indicates plaintiffs' nondisclosure was not in bad faith.  The only apparent source for this information is Mr. Juarez who would have learned of these alleged co-workers when he worked at SpaceX in 2012-2014, and yet he did not disclose them when asked to identify all of his coworkers at his deposition.

In any case, plaintiffs have not met their burden pursuant to Rule 37 and the exclusion of the untimely declarations from these witnesses is mandatory.

### b. Plaintiffs Have Not Provided "Significant Probative Evidence" That Raises A Genuine Issue Of Material Fact

#### 1. The Declarations Of Christopher Mendoza and Manuel Gutierrez

Even if this Court were to consider the declarations of Mendoza and Gutierrez which it should not do, neither declaration constitutes "significant probative evidence" to meet plaintiffs' burden on summary judgment.  *In re Lewis*, 97 F.3d 1182, 1187 (9th Cir. 1996).  "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"  *Matsushita Elec. Industrial Co., Ltd., v. Zenith Radio Corp.*, 475 U.S. 242, 252 (1986).

Critically, there is nothing in either declaration which negates PVA's undisputed evidence that the MSDS sheets were kept on Juarez's computer that he used on a daily basis as testified to by Gregory Maxwell, the head of the Avionics department, who had a direct line of site to this computer.  (UF 62; Maxwell Dec., 2:9.)

Evidently plaintiffs' attorney did not ask these witnesses about SpaceX's intranet site which contained (1) all MSDS sheets, including for Arathane and

Becherer
Kannett &
Schweitzer
_____
1255
Powell St.
Emeryville, CA
94608
510-658-3600

Humiseal materials, and (2) the most up-to-date version of the "Avionics Standard Operating Procedure: Polymeric Application of Electronic Assemblies." (Maxwell Dec., 2:2-4; 2:17-19; Hwang Dec., 1:20-24, 1:27-2:2, Phan Dec., 1:14-18, 2:1-5.) Plaintiffs' attorney also did not show either witness the materials from the Hazard Communication course that SpaceX employees were required to take.  Plaintiffs' counsel also incorrectly asked Mr. Gutierrez about "Standards of Practice" documents which is a term SpaceX employees did not use to refer to the Avionics SOPs.  (Gutierrez Dec., 2:9-10.)

Also irrelevant is the fact that these witnesses "never saw Ruben Juarez mix chemicals" which does not change Gregory Maxwell's undisputed testimony that Juarez did in fact hand-mix Arathane and Humiseal materials and consulted the MSDS sheets for these materials to ensure they "cured and 'set up' properly so our desired result was achieved." (UF 21; Maxwell Dec., 2:23-28.)  Mendoza and Gutierrez have no foundation to testify about this process because they were not part of the team that designed SpaceX's conformal coating formula in 2012.  (UF 19-20; Maxwell Dec., 2:21-23.)  According to Mr. Maxwell's unrebutted testimony, that team consisted of programmer Ruben Juarez, department supervisor John Pena and engineers Doug Kuhn, Matt Bugby, David Hwang.  (Maxwell Dec., 2:21-23.)

Mr. Juarez also did not remember working with either Mr. Mendoza or Mr. Gutierrez, and their declarations provide nothing to establish that either worked with him for any significant amount of time, or that they were even assigned on a permanent or regular basis to the Avionics department.

Mr. Mendoza is unable to state that he worked with Ruben Juarez *at any time* or that he ever saw him perform work.  Mendoza's declaration in particular lacks probative value because without ever seeing Mr. Juarez on the job, there is no way he could have spent a significant amount of time in the conformal coating room

Becherer
Kannett &
Schweitzer

1255
Powell St.
Emeryville, CA
94608
510-658-3600

1   where Juarez worked for 60 percent of his 60-hour weeks at SpaceX.  There is also

2   nothing in either declaration to indicate how a low level "technician" would have

3   access to Juarez's computer or why they would have used any of the computers in

4   the Avionics department.  It is also important to note that in Mendoza's carefully

5   worded declaration, he explicitly *does not deny* that binders of MSDS sheets

6   existed and were kept in the conformal coating room.  On the other hand, while Mr.

7   Gutierrez states that he does not recall seeing these binders, there is nothing which

8   suggests that he was employed at SpaceX for more than a brief period in 2012 and

9   cannot testify about what it was like at SpaceX at any other time.  Importantly,

10  neither witness has denied that SpaceX kept "the big blue MSDS books in the

11  kitchen area" which remains undisputed.  (*See* UM 66; Pl. Sep. Stmt., no. 66,

12  293:27-298:13, 490:18-494:28.)

13      In short, when considered in the context of the "record taken as a whole,"

14  neither declaration may create a "genuine issue" upon which "a rational trier of fact

15  [could] find for the nonmoving party."  *Matsushita Elec. Industrial Co., Ltd., v.*

16  *Zenith Radio Corp.*, 475 U.S. 242, 252 (1986).

                    2.  The Declaration Of Ruben Juarez

17      This Court should not consider any of the portions of Mr. Juarez's

18  declaration which squarely contradict his prior discovery responses, admissions or

19  deposition testimony.  *Kennedy v. Allied Mut. Ins. Co.*, 952 F.2d 262, 266 (9th Cir.

20  1991) ("The general rule in the Ninth Circuit is that a party cannot create an issue

21  of fact by an affidavit contradicting his prior deposition testimony."); *Yeager v.*

22  *Bowlin*, 693 F.3d 1076, 1981 (9th Cir. 2012.) ("The district court could reasonably

23  conclude that no juror would believe Yeager's weak explanation for his sudden

24  ability to remember the answers to important questions about the critical issues of

25  his lawsuit.")  *School Dist. No. 1J, Multnomah County v. ACandS, Inc.* 5 F.3d 1255,

26  1264 (9th Cir. 1993) (affirming summary judgment and holding that the "sham

27

28

Becherer
Kannett &
Schweitzer

1255
Powell St,
Emeryville, CA
94608
510-658-3600

affidavit" rule "applie[d] to conflicts between affidavits and interrogatory responses as well as deposition testimony.")

Courts may not consider declarations which contradict prior discovery responses or testimony because this "would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact." *Yeager, supra,* at 1980; *Gonzales v. City of* Martinez, 638 F.Supp.2d 1147, 1150, fn. 3, 1151, fn. 5, 1154, fn. 7, 1157, fn. 8 (N.D. Cal. 2009) (granting summary judgment and striking numerous unexplained contradictions in plaintiff's declaration); *Rojas v. Roman Catholic Dioceses of Rochester*, 660 F.3d 98, 105 (2nd Cir. 2011) (holding plaintiff's "new allegations [in a declaration which were] directly contradicted by her prior sworn statements and judicial admissions, were properly rejected by the District Court after a careful consideration of the record before it.")

Mr. Juarez falsely states in his declaration that he (1) "would not mix multiple chemicals," (2) "was not allowed to mix these chemical compounds," and (3) "I did not mix any chemical compounds," inexplicably because he lacked "chemistry training." (Juarez Dec., 6:2) These statements are unambiguously contradicted by his sworn deposition testimony that he mixed separate chemicals to create different compounds as part of his job, including Arathane and Humiseal materials. (Juarez Depo., March 30, 2015, Catalona Dec., 448:22-449:4, 458:14-459:8; Juarez Depo., March 8, 2018, Catalona Dec., 268:1-3, 268:15-17, 269:8-18 (*Please see* PVA's accompanying Objections to Evidence (pp. 6-7) which contains this testimony).) No reasonable jury could believe the explanation given for this contradiction which is that he only meant he had mixed a "single container" of chemicals. (Juarez Dec., 5:26.) This does not make sense because at his deposition he testified that he mixed the Humiseal conformal coating material with the Humiseal thinner that "we talked about before," and also that he had to mix Arathane Part A with Arathane part B which were "separate chemicals" that "would

Becherer
Kannett &
Schweitzer
_____
1255
Powell St.
Emeryville, CA
94608
510-658-3600

1    start to cure rather quickly" after they were mixed.  (Catalona Dec., 269:10-15,

2    459:5-8.)

3        He also falsely states for the first time that he did not have any "suspicion

4    that SpaceX or PVA Inc. were doing anything wrong."  (Juarez Dec., 5:12-13.)

5    This is flatly contradicted by his testimony that SpaceX had "bypass[ed] the safety

6    switch" which allowed the machine to run while the door was open "which is

7    *hazardous*, but that's the way they work," and that SpaceX also failed to make

8    essential safety "upgrades" to the machine which by 2012 was "obsolete" because

9    "it didn't have the alarm system to advise the operator that the suction system was

10    not working or pulling all of the fumes out of it."  (UF 40, 42; Catalona Dec.,

11    450:16-20, 473:2-6.)  He also (1) testified at his deposition that these complaints

12    "never went over" at SpaceX, and (2) admitted to his doctor that these complaints

13    — including that he was personally exposed to "chemicals coating such as

14    Arathane and Humiseal" — were "to no avail."  (UF 39; Catalona Dec., 402, 410,

15    450:17-24 (emphasis added).)  Again, no reasonable jury could believe that his

16    prior identification of hazards regarding PVA's machine was simply a mistake and

17    that the truth is he never suspected there was any hazard.  The fact that his

18    admissions came after his workers' compensation claim was filed in 2014, and after

19    his attorneys received the MSDS sheets in that proceeding, is irrelevant because he

20    admitted that the time he first believed exposure from the machine's chemicals was

21    "hazardous" was when he worked at SpaceX in 2012-2014.  He also makes no

22    effort to explain his statements to Dr. Windman, whose report is never addressed in

23    plaintiffs' brief.

24        Plaintiff also falsely states that the chemicals he used to clean electronic parts

25    at SpaceX were "unknown" and "unconnected to the PVA 350" which is

26    unambiguously contradicted by his testimony that he used Humiseal thinner on a

27    daily basis both as a "cleaning agent … to soak parts to be cleaned," and as a

28

Becherer
Kannett &
Schweitzer

————

1255
Powell St.
Emeryville, CA
94608
510-658-3600

conformal coating material in PVA's machine.  (*Compare* Juarez Dec., 2:23-25 *with* UF 45-46, Catalona Dec., 448:22-449:12.)

Finally, Juarez falsely states that he is now certain that he never had "access to the MSDS sheets."  (Juarez Dec., 2:12.)  At his deposition, he admitted that he could not remember whether the MSDS sheets "were or whether there [sic] weren't" there, and could not even remember asking for them.  "Q. Did you ever ask for the MSDS sheets at Space? Yes or no.  A. I don't remember."  (Catalona Dec., 289:13-16, 290:5-7.)  There is nothing in the record to explain how he could have been denied "access" to MSDS sheets that he never asked for.

Even beyond those contradictions, there is nothing in plaintiff's declaration which amounts to "significant probative evidence" necessary to defeat summary judgment.  For example, while Mr. Juarez states inexplicably that "to his knowledge" there was no MSDS "binder" at SpaceX, he does not deny that these same MSDS sheets were available on SpaceX's "network" which he admits was accessible on his computer.  (Juarez Dec., 5:4-7.)  Although he admits reading the declarations of his coworkers, Maxwell, Phan and Hwang, who each testified that the MSDS sheets were "easily accessible" on this network, this evidence is never questioned.  (Juarez Dec., 2:8-11; Phan Dec., 2:4, Maxwell Dec., 2:2-4, Hwang Dec., 2:2.)  The unsupported suggestion that a billion dollar company like SpaceX would not provide its employees with access to MSDS sheets, *which it was legally required to do* by Cal/OSHA's HazCom regulations, is absurd.  (Dhillon Dec., 43, 46-51; 29 CFR 1910.1200(b)(4)(ii)-(iii), 29 CFR 1910.1200(g)(10).)

Plaintiffs' argument also would mean that all of the Hazard Communication course materials before this Court, as well as the evidence that Juarez took and completed this course, are a complete fabrication.  (UF 66; Dhillon Dec., 2:6-12, 2:19-20, 3:1-10, 39-80; Maxwell Dec., 3:4-15, 36-77.)  But there is nothing which questions this undisputed evidence nor do plaintiffs dispute that he took and passed

Becherer
Kannett &
Schweitzer

_____

1255
Powell St.
Emeryville, CA
94608
510-658-3600

1   this course on January 23, 2012.  (Pl. Sep. Stmt., No. 66, 293:27-298:13, 490:18-
2   494:28; Dhillon Dec., 2:19-21.)  Plaintiff also does not deny, nor is there any
3   evidence which rebuts the fact that the MSDS sheets were at all times available to
4   Mr. Juarez and his attorneys on the internet.  (UF 67; Plaintiffs' Sep. Stmt., 298-
5   301.)  The information is therefore imputed to Mr. Juarez and his attorneys because
6   it has been on this "reasonable available source" since at least 2012.  *Jolly, supra,*
7   44 Cal.3d 1103, 1109; *Treatt USA, Inc., supra,* at *12.[3]

8       Plaintiff's declaration also states that he was not "provided with a Standard
9   Operating Procedure ("SOP") *for programmers* for any assembly area in SpaceX"
10  which carefully avoids answering whether he received the SOP for "Polymeric
11  Application on Electronic Assemblies" which is the only SOP relevant to this case.
12  (Juarez Dec., 6:10-11; Hwang Dec., 1:25-26.)  Both sides in this litigation have
13  conducted extensive discovery from SpaceX including subpoenaing all of Mr.
14  Juarez's work records and the SOP for "Polymeric Application on Electronic
15  Assemblies" is the only set of job instructions that was provided.  (Dhillon Dec.,
16  1:16-27, 3:11-17.)  When asked directly about this particular SOP at his deposition,
17  plaintiff testified that he had "no idea" what a "Standard Operating Procedure" or
18  "SOP" even was, and could not remember receiving any written instructions from
19

20  [3] Plaintiffs' Separate Statement violates this Court's requirements that (1) "if disputing only a
21  portion [of an Undisputed Fact, it] must clearly indicate what part is being disputed," (2) "[w]here
    opposing party is disputing the fact in whole or part, the opposing party must, in the right-hand
22  column, label and restate the moving party's evidence in support of the fact, followed by the
    opposing party's evidence controverting the fact," (3) "[w]here the opposing party is disputing
23  the fact on the basis of an evidentiary objection, the party must cite the evidence alleged to be
24  objectionable and state the ground of the objection and nothing more," (4) not "disputing a
    material fact without a reasonable basis for doing so," and (5) not "identifying additional facts in
25  opposition to the motion without any reasonable basis for believing that the additional facts will
    materially affect the outcome of the motion."  (Sch. And Case Mgmt Order, 07/05/17, [Doc. 14],
26  6:24-7:19.)  This is especially apparent in plaintiffs' response to Undisputed Facts 66 and 67.  (Pl.
27  Sep. Stmt., 293-301.)  Please also see PVA's accompanying Response To Plaintiffs' Additional
28  Disputed Facts.

Becherer
Kannett &
Schweitzer

1255
Powell St.
Emeryville, CA
94608
510-658-3600

SpaceX at any time.  (Catalona Dec., 282:17-25, 283:25-284:5.)  Critically, plaintiffs have put forward no evidence which disproves that this SOP required Juarez to "program the machine to spray the correct areas, *using the operating instructions in the PVA manual*" and "[u]se gloves, eye protection and a facemask, in a well-ventilated areas [sic] per the MSDS."  (UF 23, 25; Hwang Dec., 1:25-26, 5, 11.)  Plaintiffs' failure to remember this evidence does not create a genuine issue of material fact as a matter of law.  (UF 25; Hwang Dec., 1:25-26, 11.)  *See Treatt USA v. Superior Court,* 2015 WL 5895495, *12 (Cal. Ct. App. 2015) (holding plaintiff's "lack of recollection does not constitute affirmative evidence raising a triable issue *concerning Treatt's evidence* that he did receive and understand the communications.")

Plaintiff also states that the PVA manual was not available on his computer "so I could not read the manual … in the computer."  (Juarez Dec., 5:4-7.)  The fact that PVA's manual was not stored on plaintiff's computer is irrelevant because it was nonetheless maintained by SpaceX "at its Hawthorne campus" which is not disputed.  (UF 26; Hwang Dec., 1:15-17.)  To look at this manual, all plaintiff had to do was ask but he never did and there is no explanation why.  (UF 16; Pl. Sep. Stmt., 79:5-7.)[4]

There is also no admissible evidence of Juarez's supposed conversation with

---

[4] Notably, plaintiff cannot dispute that PVA's manual was available because he testified that he could not say if it was or was not available at his deposition:

Q. Do you know if it was available or not?

A. You're asking me to speculate.

Q. I don't what you to speculate.  If you don't know –

A. You're asking me –

Q. – just say "I don't know."

A. I did say I don't know.  You keep asking me the same question.  *Do you know if it was available.  I said I don't know.*

(Catalona Dec., 292:18-293:3.)

Becherer Kannett & Schweitzer

———

1255 Powell St. Emeryville, CA 94608 510-658-3600

a "Francisco" who allegedly first told him that he had been unknowingly using Arathane and Humiseal chemicals all along (despite being "in charge of programming the PVA 350 to spray" these chemicals.)  (Juarez Dec., 3:8-13; Catalona Dec., 59:4-8.)  The entire conversation is meaningless because in the same breath plaintiff admits that he can "not remember who suggested this."  (Juarez Dec., 3:11.)  In any event, this entire out of court conversation constitutes hearsay and may not be considered.  FRE 801(c); *see, e.g.,* Evid. Obj., No. 99, pp. 37-38.

The fact that no one at SpaceX "told" plaintiff that bypassing the "safety switch" was "hazardous" is irrelevant because he did not need to be told:  "And in normal conditions, it should have shut down, now allow you to work on the machine.  But someone will bypass the safety switch . . . which is hazardous." (Juarez Dec., 4:11-12; Catalona Dec., 450:14-20.)  Nor is there any relevance to the fact that Juarez's "doctors never told me that the chemicals from the PVA 350 were making me sick."  (Juarez Dec., 4:13-14.)  This would have been impossible because as he admitted, none were ever informed that he worked with chemicals. (Catalona Dec., 62:22.)

Juarez's declaration and the declaration of his expert, Glen Stevick, Ph.D., also state that the safety features of the PVA 350 were capable of being bypassed which ignores the undisputed evidence that this was not possible unless the machine had been tampered with:

> The machine has a *door bypass switch* which allows it to be accessed in manual or calibration modes but *even then it will not run if the door is opened or ventilation is shut off.  Unless it has been physically altered*, the machine is programmed to stop and will stop when the door is opened or ventilation is shut off, no matter what mode it is in."

(Urquhart Dec., 3:7-10.)  Therefore the "door bypass switch" to which plaintiff refers is not relevant because it did not shut off any safety features of the machine.

Becherer
Kannett &
Schweitzer

1255
Powell St.
Emeryville, CA
94608
510-658-3600

When it was sold, the PVA 350 was equipped with both door interlocks and air flow sensors. (UF 12; Urquhart Dec., 2:23-3:6, 21, 86, 99, 130.) PVA's 2009 sales records cited in Undisputed Fact 12 document a pre-sale "safety check" which confirmed that (1) "All interlocks tested and confirmed operational," and (2) "low level exhaust sensor tested and confirmed operational." (Urquhart Dec., 21.) Neither plaintiff nor Dr. Stevick have any idea how PVA configured its machine in 2009, and Stevick's testimony that the machine's "interlocks" and "air flow sensors" were allegedly not present can only prove that the machine, which he never inspected, was altered after it was sold, which is completely irrelevant to plaintiff's negligence and product liability claims against PVA. (Stevick Dec., 6:1-7.) Dr. Stevick bases his entire declaration on the deposition of Mr. Juarez who did not encounter the machine until 2012. In contrast, PVA's Director of Applications Engineering, Jonathan Urquhart, actually knows what the machine was like in 2009 and there is nothing which places his testimony in dispute.

### c. There Is No Evidence That Plaintiffs' Exercised Reasonable Diligence.

Perhaps most importantly, nothing has been put forward to show plaintiffs exercised any diligence in determining the cause of their injuries, even after Juarez complained to SpaceX about the PVA 350 in 2012 and filed his workers' compensation claim in 2014. (UF 38-39, 49, 69-71; *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal.4th 797, 808-809 (2005) (holding "a potential plaintiff who suspects that an injury has been wrongfully caused must conduct a reasonable investigation *of all potential causes* of that injury." (emphasis added).) Now plaintiffs even admit that "Mr. Juarez did order new equipment and *purchase stand alone filtration systems*" to protect SpaceX workers "because there was no alarm system to advise the operators that the suction system was not working." (Pl. Sep. Stmt., No. 42, 191:14-19.) Plaintiffs argue this is irrelevant because workers' compensation claimants may recover monetary damages without proving "fault" on the part of

Becherer
Kannett &
Schweitzer

————

1255
Powell St.,
Emeryville, CA
94608
510-658-3600

their employer, but this ignores the critical fact that Juarez *did* allege fault when he claimed SpaceX caused his headaches and aneurysm by "repetitive and continuous exposure" to toxic substances in the workplace.  (UF 49; Catalona Dec., 357.)  Such conduct is by definition wrongful and why his claim constitutes "definitive proof" that started the running of the statute of limitations under California law.  *Rivas v. Safety Kleen Corp.,* 98 Cal.App.4th 218, 228-229 (2002); *Treatt USA, Inc., supra,* at *9 fn. 10.

It should be emphasized that plaintiffs do not dispute the content of their discovery responses in which they admit that absolutely no investigation was conducted before March of 2015.  (UF 69-71.)[5]  Instead, they argue that they were entitled to wait until the evidence presented itself which would turn California law upside down:  "This duty to be diligent in discovering facts that would delay accrual of a cause of action ensures that plaintiffs who do 'wait for the facts' will be *unable to successfully avoid summary judgment against them on statute of limitations grounds*."  *Heimuli v. Lilja*, 2012 WL 2520907, *6 (Cal. Ct. App. 2012) (emphasis added).  "[Plaintiffs] must indeed seek to learn the facts necessary to bring the cause of action in the first place — he 'cannot wait for' them 'to find' him and 'sit on' his 'rights.'"  *Norgart v. Upjohn Co.*, 21 Cal.4th 383, 398 (1999) (quoting *Jolly v. Eli Lilly & Co*., 44 Cal.3d 1103, 1111 (1988); *Ultimax Cement Mfg. Corp. v. Quikrete Companies, Inc.*, 2009 WL 4307082, *4 (Cal. Ct. App. 2009) (quoting *Jolly v. Eli Lilly & Co.* 44 Cal.3d 1103, 1111 (1988).)

Citing *Fox, supra,* 35 Cal.4th at 813, plaintiffs incorrectly suggest that diligence was not required due to the fact that their claims against SpaceX were purportedly "wholly different" from their claims regarding the PVA 350.  (Opp., 11.)  In *Fox*, a patient sued her doctor after a botched operation.  *Fox, supra,* 802.

Becherer
Kannett &
Schweitzer

_____

1255
Powell St.
Emeryville, CA
94608
510-658-3600

[5] There is also no evidence or argument about plaintiff Isela Hernandez whose claims are similarly barred by the statute of limitations.  (UF 69-77.)  *See, e.g., Treatt USA, Inc., supra,* *8, fn. 9; *Viramontes v. Pfizer, Inc.*, 2015 WL 9319497, *11 (E.D. Cal. 2015.)

At the doctor's deposition, he cast blame on the surgical stapler he used during the surgery, which was the first time plaintiff could have suspected this product had anything to do with her injuries. *Id.*, 804. This authority does not apply because Juarez was *not* ignorant about the PVA 350 which he complained was "hazardous" because it did not warn users when "the suction system was not working or pulling all of the fumes out of it" (UF 42; Catalona Dec., 450:16-20, 473:2-6.) As held by the 9th Circuit, *Fox* is distinguishable on this ground:

> Platt's reliance on *Fox v. Ethicon Endo–Surgery, Inc.*, 35 Cal.4th 797, 27 Cal.Rptr.3d 661, 110 P.3d 914 (2005), is *misplaced* [because] Platt's claims *did not involve ignorance* of the heater's defects. Platt was aware of UL's identity and alleged wrongdoing in 1999. Based on the recall and subsequent class action, it should have been obvious to Platt that its injuries *potentially stemmed* from UL's misrepresentations of the heaters' safety, particularly given Platt's reliance on UL's endorsement. The district court, therefore, properly dismissed Platt's negligent misrepresentation claim, filed in 2003, as barred by the two-year statute of limitations. *See Jolly*, 44 Cal.3d at 1113–14, 245 Cal.Rptr. 658, 751 P.2d 923.

*Platt Elec. Supply, Inc. v. EOFF Elec. Inc.*, 522 F.3d 1049, 1056 (2008) (emphasis added); *see also Clark v. Prud. Ins. Co.*, 940 F.Supp.2d 186, 203-204 (D. N.J. 2013) (holding *Fox* was consistent with *Platt, Norgart* and *Jolly,* and that the portion of *Fox* upon which plaintiffs' rely was dicta, which "rings the final-knell on Plaintiffs' contentions here.")[6]

---

[6] Notably, what he complained about then is the exact same product defect claim he makes now, in this case. (UF 78.) Plaintiffs also misleadingly suggest that the workers' compensation claim only involved a "chemical bath down the hall" which is actually language inserted by plaintiffs' attorney. (*See* Evid. Obj., Nos. 98, 102, 105; Reply Separate Statement Nos. 98, 102, 105; Catalona Dec., 357, 370.) The actual claim form states plaintiff's headaches were caused by exposure to "electronic parts cleaning" which he explained at his deposition included Humiseal thinner, a chemical used both (1) as a cleaning agent to "soak parts to be cleaned" and (2) as a conformal coating material in PVA's machine. (UF 45-46, Catalona Dec., 448:22-449:12.) *Fox*

Becherer
Kannett &
Schweitzer

———

1255
Powell St,
Emeryville, CA
94608
510-658-3600

15

Plaintiffs also cite *Nelson v. Indevus Pharmaceuticals, Inc.*, 142 Cal.App.4[th] 1202, 126 to argue that a "suspicion necessary to trigger the statute of limitations may [not] be imputed to a plaintiff." (Opp., 8:19-23.) That case is however distinguishable because there it was undisputed that the publicity about defendant's diet drug never reached the plaintiff:

> The key difference between *Nelson* and this case, which the dissent ignores, is that the general public had no duty to keep Nelson informed of facts that would give a reasonable person a reason to suspect she might have a cause of action. The general suspicion that the drug might cause heart problems was unknown to her, and no one was under a duty to tell her. Thus, the public's general suspicion could not be imputed to her.
>
> *Here, however,* Santangelo's attorney did have a duty to keep his client informed of all relevant facts. He was acting as her agent. Thus, under *Lazzarevich*, we *must impute Santangelo's attorney's knowledge of the facts which demonstrate he had a reason to suspect the tire was defective to Santangelo*.

*Santangelo v. Bridgestone/Firestone, Inc.*, 499 Fed.Appx. 727, 729 (9th Cir. (Cal.) 2012) (emphasis added.)

### d.  None of PVA's Legal Authorities May Be Distinguished.

Plaintiff incorrectly asserts that *Treatt USA v. Superior Court* 2015 WL 5895495 (Cal. App. 2015) required plaintiffs to be "specifically diagnosed with a disease related to the chemicals." (Opp., 17:13)  In fact, this very argument was explicitly rejected:  "That Linares may not definitively have known before November 2010 that he suffered from a specific lung disease *is legally irrelevant*." *Id.*, *14.

*Treatt* also rejected the overarching legal theory that plaintiffs advance in this

---

does not apply regardless because Juarez was not similarly ignorant regarding the PVA 350. *Platt, supra,* 522 F.3d at 1056.

Becherer
Kannett &
Schweitzer

1255
Powell St.
Emeryville, CA
94608
510-658-3600

1   case, that although they were on notice of "chemicals" which caused their injuries,

2   the statute should not begin to run until they suspect the "particular chemical"

3   attributable to the defendant.  *Id.*, *4.  This argument was also squarely rejected by

4   the court in *Rivas v. Safety Kleen Corp.,* 98 Cal.App.4th 218 (2002) which held that

5   the plaintiff did not need to be "explicitly informed by his doctors that a *certain*

6   *substance or product* caused the medical disorder."  *Rivas, supra,* at 228.

7   Plaintiffs' argument was also rejected by the California Supreme Court in *Norgart*

8   *v. Upjohn Co.*, 21 Cal.4th 383 (1999) which held that plaintiffs did not need to

9   suspect the drug manufactured by the defendant so long as they suspected

10   "someone had done something wrong' to cause her death."  *Norgart, supra,* at 406;

11   *See also Jolly, supra,* 44 Cal.3d at 1108 (rejecting plaintiff's argument "that she had

12   no cause of action if she could not identify the particular manufacturer of the drug

13   her mother took during pregnancy.")

14       This argument should be rejected once again.[7]

15       ### e.  Plaintiff's Main Legal Authority Does Not Apply.

16       Plaintiffs' principal legal authority comes from *Rosas v. BASF Corp.*, 236

17   Cal.App.4th 1378 (2015) which states: (1) that California did not require a "sick

18   individual" to "share with his or her doctor any suspicion, whether well formed or

19   not," and (2) that the statute of limitations does not begin to run "when a reasonable

20   person would not necessarily suspect wrongdoing."  (Opp., 18:12-18.)  Neither of

21   these legal principles applies to this case however because (1) Mr. Juarez admitted

22   knowing he was exposed to hazardous chemicals without the assistance of any

23   doctor when he filed his workers' compensation claim, and (2) any reasonable

24   person in plaintiff's position would have suspected wrongdoing, *and Mr. Juarez did*

**Becherer
Kannett &
Schweitzer**

_____

1255
Powell St.
Emeryville, CA
94608
510-658-3600

25

26   [7] Plaintiffs also argue that *Nguyen v. Western Digital Corp.,* 229 Cal.App.4th 1522, 1529 (2014) is
     "inapplicable" because "the subsequent toxic exposure action was asserted against the
27   employers."  (Opp., 19:1-7.)  Not true.  The plaintiff in that case was not employed by the
     defendant who exposed her "in utero" to "hazardous and toxic chemicals" at the company.
28   *Nguyen, supra,* at 1527.

*in fact suspect wrongdoing* as evidenced by that claim.

*Rosas* is also distinguishable because the plaintiff in that case never suspected his disease was caused by "workplace exposure." *Treatt USA, Inc., supra,* at *11 (distinguishing *Rosas*); *See discussion in* PVA's Memo. of Points and Auth., p. 15, lines 19-28.

**B. Plaintiffs' Failure To Warn Claims Are Barred As A Matter Of Law.**

Plaintiffs admit Mr. Juarez never read PVA's manual. (Pl. Sep. Stmt., No. 16 at 77:10-12 and 78:17-18.) They also admit PVA supplied an "electronic version" of this manual to SpaceX who maintained it at the campus where plaintiff worked. (Pl. Sep. Stmt., No. 26 at 118:26-119:3 and 121:10-11.) Plaintiff also admitted during his deposition that he never asked to look at this manual, which was for the machine which he was in charge of programming for over two years. (UF 16, 30; Catalona Dec., 279:16, 291:17-18, 293:4-17.)

Because it is undisputed that PVA's warnings were never read, summary judgment must be granted on plaintiffs' failure to warn claims, as a matter of law: "There is no causation when the person to whom the warning is directed did not read the warning." *Contois v. Aluminum Precision Products, Inc.*, 2008 WL 5065108, *4 (Cal. Ct. App. 2008); *Ramirez v. Plough, Inc.*, 6 Cal.4th 539, 556 (1993) (unless the warnings are read, there can be "no conceivable causal connection between the representations or omissions that accompanied the product and plaintiff's injury"); *Hart v. Robert Bosch Tool Corp.*, 2010 WL 3566715, *5 (Cal. Ct. App. 2010) (accord).[8]

---

[8] In *Ramirez*, the court required Spanish speaking plaintiffs to read drug warnings written in English because they could have been translated by English-speaking friends or relatives. (*Ramirez, supra,* 6 Cal. 4th at 544, 556.) Plaintiffs' attempt to distinguish this authority on this ground does not make sense. The Court in *Ramirez* affirmed summary judgment *in spite* of the plaintiffs' inability to read the warnings *not because* of it. Here, Mr. Juarez reads and speaks English fluently and cannot even argue this justification for his failure to read PVA's warnings. (Catalona Dec., 6:24-26, 43.) Also, plaintiffs mistakenly state that *Hart* was based on the same issue. (Opp. 20:20-23.) In that case, the warnings were in English and the issue was whether the

Becherer
Kannett &
Schweitzer

1255
Powell St,
Emeryville, CA
94608
510-658-3600

1    Plaintiffs provide no meaningful distinction with any of PVA's authorities

2   and do not address the binding authority of *Motus v. Pfizer Inc.*, 358 F.3d 659 (9th

3   Cir. (Cal.) 2004) which holds that unless read, "the adequacy of [defendant's]

4   warnings is irrelevant."

5    Instead, plaintiffs argue the warnings were required to be "on the product"

6   which is contrary to California law.  *Temple v. Velcro USA, Inc.*, 148 Cal.App.3d

7   1090, 1094 (holding warning not needed "on the product" when disclaimer mailed

8   to purchasers of hot air balloons).  Plaintiffs also point to PVA's alleged "failure to

9   properly train" Mr. Juarez in 2011 but this was on a completely different machine, a

10   "PVA **650**," not the PVA 350 designed and manufactured for SpaceX in 2009.

11   (Opp., 1:22, 2:14; *See* PVA's Obj. to Evid., No. 87; Catalona Dec., 301:17-303:21;

12   Loftus Brewer Dec., 65:9-17, 79:12-24; Stevick Dec., 4:11.)  Accordingly, this

13   training is irrelevant to plaintiffs' failure to warn allegations which relate solely to

14   _____

15   font size was too small.  *Hart, supra,* at *3.  In either case, the result was the same.  The alleged
inadequacies in the warnings were irrelevant because they were never read.

16    The undisputed evidence also establishes that Mr. Juarez was actually *instructed* to program
PVA's machine according to the PVA manual.  Plaintiffs dispute this happened but offer no

17   evidence to create a dispute of material fact regarding the "Avionics Standard Operating

18   Procedure: Polymeric Application of Electronic Assemblies" that required him to use PVA's
manual and which unquestionably was accessible on the SpaceX intranet site on plaintiff's

19   computer.  (*See* PVA's Response to Additional Undisputed Facts, No. 151 and Obj. to Evid., No.

20   151.)  In any event, even if this evidence did not exist, PVA's warnings were available and
plaintiff just chose not to read them.  As a matter of law, plaintiffs' failure to warn claims must be

21   dismissed.

22    The MSDS sheets, provided by the third party suppliers of Arathane and Humiseal materials,

23   also negate plaintiffs' failure to warn claims because they contained admittedly adequate
warnings regarding the toxic nature of those substances (Catalona Dec., 60:12-26), and were at all

24   times reasonably accessible on the SpaceX intranet site on Mr. Juarez's computer.  Although
plaintiffs now dispute they were available, there is no competent evidence to support this claim.

25   (Evid Obj., No. 91.)  There is also no evidence that any "chemical training" or "chemistry

26   training" was needed to understand the MSDS sheets which contain warnings that are easy to read
and understand such as "Contains material which may cause damage to the following organs:

27   kidneys, the nervous system, liver, brain, central nervous system."  (Evid. Obj., 27:11-24;

28   Catalona Dec., 628, 637 (MSDS for Arathane 5750A).)

Becherer
Kannett &
Schweitzer

_____

1255
Powell St,
Emeryville, CA
94608
510-658-3600

the PVA 350 which plaintiffs allege injured Mr. Juarez. (Catalona Dec., 63-64.) *See also Navajo Nation v. U.S. Forest Serv.*, 535 F.3d 1058, 1080 (9th Cir. 2008) (prohibiting parties from opposing summary judgment based on factual theories not alleged in the complaint.)[9]

Plaintiffs' failure to warn claims must be dismissed.

## C. Plaintiffs' Strict Product Liability Claim Is Barred As A Matter Of Law.

Plaintiffs and their expert argue that PVA may be held strictly liable simply for knowing that SpaceX was using Arathane and Humiseal materials with the PVA 350. This is incorrect. Foreseeability is not the test because PVA neither manufactured, sold nor supplied those materials. *O'Neil v. Crane Co.*, 53 Cal.4th 335, 361 (2012). Unless those products must "necessarily" be used with the PVA 350, strict liability may not be imposed. *O'Neil v. Crane Co.*, 53 Cal.4th 335, 361 (2012). Plaintiffs do not address this binding authority from the California Supreme Court.

Plaintiffs' strict product liability cause of action must be dismissed.[10]

_____

[9] PVA disputes that it instructed Mr. Juarez to "put his head inside the PVA 350 machine without a ventilation mask" which is not supported by admissible evidence and does not make sense. (*See* Evid. Obj., No. 157.) But this is irrelevant because any such training (concerning a completely different machine, the PVA **650**) may only concern plaintiffs' general negligence claims, not their claims at issue in PVA's motion, for strict product liability and failure to warn. Plaintiffs also point to customer support PVA provided after the machine was sold but this too relates to plaintiffs' general negligence claims and is irrelevant.

[10] The opinions of plaintiffs' expert, Glen Stevick, Ph.D., are without foundation and contain impermissible legal conclusions and discussions of California law. (*See, e.g.,* Evid. Obj., No. 132.) Dr. Stevick also relies on numerous irrelevant documents that are attached to the declaration of plaintiffs' attorney without adequate foundation, and which are highly misleading. For example, he relies on emails between PVA employees about a product that was being designed in *December of 2014*, several months after Ruben Juarez stopped working at SpaceX. This machine, which had model number **MX4000-VR** was actually sold in 2015 and is a completely different product that used different technology from the PVA 350. (Loftus Brewer Dec., 462-463; Urquhart Dec., 34, 41.) Dr. Stevick also relies on a May 1, 2009 list of action items that plaintiffs' misleadingly suggest were not completed before the PVA 350 was shipped

Becherer
Kannett &
Schweitzer

_____

1255
Powell St.
Emeryville, CA
94608
510-658-3600

**D. Plaintiffs' Evidentiary Objections Should Be Overruled.**

⎬   **Objections Based On California law**:  All of plaintiffs' objections which cite inapplicable sections of the California Evidence Code should be overruled.

⎬   **Boilerplate Objections**:  All of plaintiffs' boilerplate "lack of personal knowledge" objections, to the declarations of David Hwang, Lynette Dhillon, Duc Q. Phan, Gregory E. Maxwell, and Jonathan Urquhart should be overruled for violating the Court's Case Management Order.  (Sch. And Case Mgmt Order, 07/05/17, [Doc. 14], 9:3-5.)  Plaintiffs have put forward nothing to establish that any of these witnesses lacks personal knowledge.

⎬   **Objections To Plaintiffs' Medical Records**:  Plaintiffs' objections to the medical records of Isaac Regev, M.D., should be overruled because they "were made at or near the time of the statements, acts, events, conditions, diagnoses, etc., that are reported in those records, by a person with knowledge of and a business duty to record those matters.  Said records were kept in the course of a regularly conducted activity of the business and made as a regular practice and custom of the business." (Catalona Dec., 373.)  They are therefore "self-authenticating" and admissible as a business record over plaintiffs' hearsay objection pursuant to Federal Rule of Evidence ("FRE") 803(6) and 902(11) because plaintiffs have offered no evidence to "show that the source of the information or the method or circumstances of preparation indicate a lack of trustworthiness."  FRE 803(6)(E). The statements of Mr. Juarez contained in those documents are "by a party" and thus also excluded from the definition of hearsay.  FRE 801(d)(2)(A).  Dr. Regev's entire report is a party admission because it was "made by the party's agent or employee on a matter within the scope of that relationship and while it existed." FRE 801(d)(2)(B) (emphasis added).

---

to SpaceX.  However, this document actually states that all of these action items were completed on May 14, 2009, before the machine was shipped to SpaceX on May 22, 2009.  Please see PVA's Objections to Evidence Nos. 201, 202, at 63:5-23.

Becherer
Kannett &
Schweitzer

1255
Powell St.
Emeryville, CA
94608
510-658-3600

Similarly, plaintiffs' objections to the medical records of Gayle K. Windman, Ph.D., should be overruled because they "were made at or near the time of the statements, acts, events, conditions, diagnoses, etc., that are reported in those records, by a person with knowledge of and a business duty to record those matters. Said records were kept in the course of a regularly conducted activity of the business and made as a regular practice and custom of the business." (Catalona Dec., 417.)  They are therefore "self-authenticating" and admissible as a business record over plaintiffs' hearsay objection pursuant to FRE 803(6) and 902(11) because plaintiffs have offered no evidence to "show that the source of the information or the method or circumstances of preparation indicate a lack of trustworthiness."  FRE 803(6)(E).  The statements of Mr. Juarez contained in those documents are "by a party" and therefore also excluded from the definition of hearsay.  FRE 801(d)(2)(A).  Dr. Windman's entire report is a party admission because it was "made by the party's agent or employee on a matter within the scope of that relationship and while it existed."  FRE 801(d)(2)(B) (emphasis added).

*J*   **Objections To SpaceX's Business Records**:  Plaintiffs' objections to the declaration of SpaceX's custodian of records, Lynette Dhillon, and attached records should be overruled.  (*See* Dhillon Dec., 4-81.)  Ms. Dhillon testified that the attached "records were made at or near the time of the statements, acts and events that are reported in those records, by a person with knowledge of and a business duty to record those matters.  Said records were kept in the course of a regularly conducted activity of the business and made as a regular practice and custom of the business." (Dhillon Dec., 1:23-27.)  They are therefore "self-authenticating" and admissible as a business record over plaintiffs' hearsay objection pursuant to FRE 803(6) and 902(11) because plaintiffs have offered no evidence to "show that the source of the information or the method or circumstances of preparation indicate a lack of trustworthiness."  FRE 803(6)(E).

The fact that Ms. Dhillon is not a doctor is irrelevant because the document shows on its face that plaintiff's time off was due to his "illness."  (Dhillon Dec.,

Becherer
Kannett &
Schweitzer

1255
Powell St.
Emeryville, CA
94608
510-658-3600

36-37.)  Other than these employment records, these records attached to Ms. Dhillon's declaration have also been authenticated by Mr. Maxwell, Mr. Hwang and Mr. Phan who personally remember taking the Hazard Communication Course and using the attached versions of SpaceX's SOP for "Polymeric Application on Electronic Assemblies."  Mr. Hwang also authored portions of this SOP.  (Hwang Dec., 1:17-20.)  Plaintiffs also object that Ms. Dhillon does not have personal knowledge that Juarez completed the Hazard Communication course.

ʃ      **Objections To PVA's Records**:  Plaintiffs' objections to the declaration of PVA's Director of Applications Engineering, Jonathan Urquhart and attached exhibits should be overruled.  (*See* Urquhart Dec., 1-233.)  Mr. Urquhart has been with PVA since 1993 and has sufficient foundation to support his declaration.  (Urquhart Dec., 1:4-18.)  He testified that the attached "records were made at or near the time of the statements, acts and events that are reported in those records, by a person with knowledge of and a business duty to record those matters.  Said records were kept in the course of a regularly conducted activity of the business and made as a regular practice and custom of the business."  (Urquhart Dec., 1:20-25.)  They are therefore "self-authenticating" and admissible as a business record over plaintiffs' hearsay objection pursuant to FRE 803(6) and 902(11) because plaintiffs have offered no evidence to "show that the source of the information or the method or circumstances of preparation indicate a lack of trustworthiness."  FRE 803(6)(E).

ʃ      **Objections To Plaintiffs' Testimony**:  Plaintiffs' objection to the consideration of Mr. Juarez's deposition testimony because some of the court reporter certificates were not attached should be overruled.  Plaintiffs provided these same certificates with their Opposition and PVA has re-filed all of the referenced certificates with its Reply.  (Loftus Brewer Dec., 18, 39, 109, 142, 778; Catalona Reply Dec., 4-8.)

Becherer
Kannett &
Schweitzer

1255
Powell St.
Emeryville, CA
94608
510-658-3600

### III.   CONCLUSION

To accept plaintiffs' version of events, this Court must assume that in 2014 when Mr. Juarez hired lawyers to investigate the cause of his severe brain injuries and permanent disability, no one thought there could possibly be a connection to the machine he used to spray chemical coatings for two years.  This is unbelievable and should not be adopted for purposes of ruling on PVA's motion for summary judgment.  *Scott v. Harris*, 550 U.S. 372, 380 (2007); *Santangelo*, *supra*, 499 Fed.Appx. 727, 729 (9th Cir. (Cal.) 2012) (imputing to client attorney's suspicion of product's defect.)  But even if this were accepted at face value, plaintiffs' workers' compensation claim constituted "definitive proof" that plaintiffs' cause of action had accrued and, by itself, proves plaintiffs' cannot meet their burden to invoke the discovery rule under California law.

Accordingly, based on longstanding and unquestioned legal authority from the California Supreme Court, plaintiffs' entire lawsuit is barred by the statute of limitations as a matter of law.  For the foregoing reasons, PVA's motion for summary judgment should be granted in all respects

DATED: September 17, 2018          BECHERER KANNETT & SCHWEITZER

By:    /s/     Alex P. Catalona
          Alex P. Catalona
          Attorneys for Defendant
          PRECISION VALVE & AUTOMATION,
          INC.

Becherer
Kannett &
Schweitzer
_____
1255
Powell St.
Emeryville, CA
94608
510-658-3600

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Becherer
Kannett &
Schweitzer**
————
1255
Powell St.
Emeryville, CA
94608
510-658-3600

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on September 17, 2018, a true and correct copy of **DEFENDANT PRECISION VALVE & AUTOMATION, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** has been served via ECF upon all counsel of record in the Court's electronic filing system.

By:    /s/ Jerry Dumlao