Shahrad Milanfar (SBN 201126)
smilanfar@bkscal.com
Alex P. Catalona (SBN 200901)
acatalona@bkscal.com
BECHERER KANNETT & SCHWEITZER
1255 Powell Street
Emeryville, CA 94608
Telephone: (510) 658-3600
Facsimile: (510) 658-1151

Attorneys for Defendant
PRECISION VALVE & AUTOMATION, INC.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RUBEN JUAREZ, an individual and ISELA HERNANDEZ, an individual,<br><br>Plaintiffs,<br><br>PRECISION VALVE & AUTOMATION, INC., a corporation and DOES 1-20,<br><br>Defendants. | CASE NO. CV17-03342-ODW (GJSX) [L.A.S.C. Case No. BC650229]<br><br>**DEFENDANT PRECISION VALVE & AUTOMATION, INC.'S <u>OBJECTIONS TO EVIDENCE</u> IN SUPPORT MOTION FOR SUMMARY JUDGMENT**<br><br>Date:        October 1, 2018<br>Time:       1:30 p.m.<br>Ctrm:       5D, 5th Floor<br>Judge:      Hon. Otis D. Wright II |

Pursuant to this Court's Scheduling and Case Management Order dated July 5, 2017 [Doc. 14], subsection 6(f)(iii)[1] defendant Precision Valve & Automation, Inc. ("PVA") respectfully submits the following Objections to Evidence in support of its Motion For Summary Judgment.

---

[1] PVA's evidentiary objections track the paragraph numbers of plaintiffs' Separate Statement in sequence as required by this Court's July 5, 2017 order.

Becherer
Kannett &
Schweitzer

1255 Powell St.
Emeryville, CA
94608
510-658-3600

**OBJECTIONS TO EVIDENCE**

**Separate Statement Paragraph 3**:  Objection to the Declaration of Ruben Juarez and deposition excerpt which lacks necessary foundation.  The machine is referred to as a "work cell" in PVA's manual and the conformal coating industry.  (UF 3.)  Plaintiff has no foundation to dispute this terminology because he never read the manual, and the fact that he used different terminology in the aerospace industry to refer to the machine is irrelevant.  Whether the machine is also a "stand alone machine" is irrelevant.  Fed. R. Evid. ("FRE") 401, 402, 602.

**Separate Statement Paragraph 7**:  Objection to evidence that "a number of safety items are not included *automatically*" in the PVA 350 which is irrelevant.  None of the listed evidence negates the fact that when it was sold, the PVA 350 would shut down if its exhaust did not run at a rate of 150 cubic feet per minute or greater.  The undisputed evidence shows that the PVA 350 at issue in this case included a camera, flow monitoring, door interlocks and other safety features when it was sold.  (UF 12; Urquhart Dec., 2:23-3:6, 21, 86, 99, 130.)  Dr. Stevick also has no foundation to state how the PVA 350 was configured when it was sold to SpaceX in 2009.  To the extent that any purported features mentioned were "safety features" were altered or removed after it was sold is irrelevant to plaintiff's negligence and product liability claims against PVA.

Dr. Stevick's opinions are also irrelevant because plaintiffs do not make these product defect claims in the complaint.  Their sole claim in the complaint, which was the basis for PVA's motion for summary judgment, was that the PVA 350 lacked a warning that the machine was "designed to continue to spray chemicals even when the ventilation/exhaust is not in operation." (Catalona Dec., 58:22-25.)  If they had alleged that other safety features could have avoided plaintiff's alleged injuries, PVA would have addressed them in its motion for summary judgment.  For example, Dr. Stevick states without basis that the PVA 350 did not have a camera.  When it was sold, the machine did have a camera had a "slim programming camera with crosshair

Becherer
Kannett &
Schweitzer

1255 Powell St.
Emeryville, CA
94608
510-658-3600

generator." (Urquhart Dec., 12, 16.)  Plaintiffs' new allegations which vary from the complaint are irrelevant and may not defeat summary judgment. *Navajo Nation v. U.S. Forest Serv.*, 535 F.3d 1058, 1080 (9th Cir. 2008) (prohibiting oppositions to summary judgment motions based on factual theories not alleged in the complaint.)  FRE 401, 402, 602.

**Separate Statement Paragraph 8**:  Objection that none of the listed evidence alters the fact that when it was sold, the PVA 350 would shut down if its exhaust did not run at a rate of 150 cubic feet per minute or greater.  Plaintiff has no foundation to testify how the PVA 350 was equipped in 2009.  This evidence and plaintiffs' characterization of this evidence is misleading, argumentative and irrelevant.  FRE 401, 402, 403, 602.

**Separate Statement Paragraph 9**:  Objection that none of the listed evidence alters the fact that when it was sold, the PVA 350 was a "closed door system with a door and negative air pressure to prevent chemicals from escaping."  Plaintiff has no foundation to testify how the PVA 350 was equipped in 2009.  This evidence and plaintiffs' characterization of this evidence is misleading, argumentative and irrelevant. FRE 401, 402, 403, 602.

**Separate Statement Paragraph 10**:  Objection that none of the listed evidence alters the fact that when it was sold, the spraying of chemicals would stop when the machine was opened and the "door bypass switch" or "bypass system" did not shut off any safety features or allow them to be "bypassed."  (UF 12; Urquhart Dec., 2:23-3:10, 21, 86, 99, 130.)  Plaintiff and Dr. Stevick have no foundation to testify how the PVA 350 was equipped in 2009.  Notably, Dr. Stevick has never examined or tested the machine at issue in this case, or any PVA 350 in any way.  (Stevick Dec., 3:15-17.) Plaintiffs' characterization of PVA's evidence is misleading, argumentative and irrelevant.  FRE 401, 402, 403, 602.

**Separate Statement Paragraph 11**:  Objection that none of the listed evidence alters the fact that when it was sold, the spraying of chemicals would stop when the

Becherer
Kannett &
Schweitzer

1255 Powell St.
Emeryville, CA
94608
510-658-3600

machine was opened and the "door bypass switch" or "bypass system" did not shut off any safety features or allow them to be "bypassed."  (UF 12; Urquhart Dec., 2:23-3:10, 21, 86, 99, 130.)  Plaintiff and Dr. Stevick have no foundation to testify how the PVA 350 was equipped in 2009.  Notably, Dr. Stevick has never examined or tested the machine at issue in this case, or any PVA 350 in any way.  (Stevick Dec., 3:15-17.)  Plaintiffs' characterization of PVA's evidence is misleading, argumentative and irrelevant.  Plaintiffs do not explain what being "equipped with a positive or negative air pressure system" which is not supported or explained.  FRE 401, 402, 403, 602.

**Separate Statement Paragraph 12**:  Objection that none of the listed evidence alters the fact that when it was sold, the spraying of chemicals would stop when the machine was opened and the "door bypass switch" or "bypass system" did not shut off any safety features or allow them to be "bypassed."  (UF 12; Urquhart Dec., 2:23-3:10, 21, 86, 99, 130.)  Plaintiff and Dr. Stevick have no foundation to testify how the PVA 350 was equipped in 2009.  Notably, Dr. Stevick has never examined or tested the machine at issue in this case, or any PVA 350 in any way.  (Stevick Dec., 3:15-17.)  Plaintiffs' characterization of PVA's evidence is misleading, argumentative and irrelevant.  The fact that PVA had several safety options is irrelevant; none of plaintiffs' evidence related to these options is relevant to the PVA 350 at issue in this case.  FRE 401, 402, 403, 602.

**Separate Statement Paragraph 13**:  Objection that none of plaintiffs' listed evidence is relevant to what is stated in the PVA manual.  It is also irrelevant that the manual was not uploaded to plaintiff's computer because it undisputed that it was maintained at SpaceX's "Hawthorne campus" and plaintiff only need to ask for it.  (UF 26; Hwang Dec., 1:15-17.)  He never asked for it and there is no explanation why.  (UF 16; Pl. Sep. Stmt., 79:5-7.)  FRE 401, 402.

**Separate Statement Paragraph 14**:  Objection that none of plaintiffs' listed evidence is relevant to what is stated in the PVA manual.  It is also irrelevant that the manual was not uploaded to plaintiff's computer because it undisputed that it was

Becherer
Kannett &
Schweitzer

1255 Powell St.
Emeryville, CA
94608
510-658-3600

maintained at SpaceX's "Hawthorne campus" and plaintiff only need to ask for it.  (UF 26; Hwang Dec., 1:15-17.)  He never asked for it and there is no explanation why.  (UF 16; Pl. Sep. Stmt., 79:5-7.)  FRE 401, 402.

**Separate Statement Paragraph 15**:  Objection that none of plaintiffs' listed evidence is relevant to what is stated in the PVA manual.  It is also irrelevant that the manual was not uploaded to plaintiff's computer because it undisputed that it was maintained at SpaceX's "Hawthorne campus" and plaintiff only need to ask for it.  (UF 26; Hwang Dec., 1:15-17.)  He never asked for it and there is no explanation why.  (UF 16; Pl. Sep. Stmt., 79:5-7.)  FRE 401, 402.

**Separate Statement Paragraph 16**:  Objection that none of plaintiffs' listed evidence is relevant to what plaintiff's deposition testimony which remains undisputed.  Notably, there is no dispute that PVA's manual was in fact available at SpaceX's campus because Mr. Juarez admitted he could not say if it was or was not available at his deposition:

> Q. Do you know if it was available or not?
>
> A. You're asking me to speculate.
>
> Q. I don't what you to speculate.  If you don't know –
>
> A. You're asking me –
>
> Q. – just say "I don't know."
>
> A. I did say I don't know.  You keep asking me the same question.  *Do you know if it was available.  I said I don't know.*

(Catalona Dec., 292:18-293:3 (emphasis added).)  It is also irrelevant that the manual was not uploaded to plaintiff's computer because it undisputed that it was maintained at SpaceX's "Hawthorne campus" and plaintiff only need to ask for it.  (UF 26; Hwang Dec., 1:15-17.)  He never asked for it and there is no explanation why.  (UF 16; Pl. Sep. Stmt., 79:5-7.)  FRE 401, 402.

**Separate Statement Paragraph 18**:  Objection to the Mendoza declaration

Becherer
Kannett &
Schweitzer

1255 Powell St.
Emeryville, CA
94608
510-658-3600

-5-

DEFENDANT PRECISION VALVE & AUTOMATION, INC.'S OBJECTIONS TO EVIDENCE IN SUPPORT MOTION FOR SUMMARY JUDGMENT

which lacks foundation and contain speculation.  Plaintiffs are "not allowed to use" Mr. Mendoza "to supply evidence on a motion" because he was not disclosed in plaintiffs' Rule 26 disclosures, in response to PVA's interrogatory or when plaintiff was asked to identify plaintiff's coworkers at his deposition and plaintiffs have not met their burden of establishing that this nondisclosure was substantially justified or harmless.  F.R.C.P. 37(c)(1); *Benjamin v. B&H Education, Inc.*, 877 F.3d 1139, 1150 (9th Cir. 2017); *Medina v. Multaler, Inc.*, 547 F.Supp. 1099, 1106, fn. 8 (C.D. Cal. 2007).

**Separate Statement Paragraph 19**:  Juarez in his declaration does not address or deny that this design team worked together to create the conformal coating material.  Objection to the unsupported suggestion that because he did not have "chemistry training" he "was not allowed to mix chemical compounds."  There is no evidence that mixing chemical compounds required chemistry training.  His statements are also contradicted by his sworn deposition testimony that he mixed separate chemicals to create different compounds as part of his job, including Arathane and Humiseal materials:

Q. On the list given, there I something called thinner 527.  Do you know what that is?

A. It's a – can be used as a cleaning agent, or it's also for coating purposes.

Q. Did you work with this chemical?

A. Yes.

Q. When?

A. Through my time with SpaceX.

* * * * *

Q.  The next item is described as Humiseal 1A33 conformal coating.  Is that coding or coating?

A. Coating.

* * * * *

Becherer
Kannett &
Schweitzer

1255 Powell St.
Emeryville, CA
94608
510-658-3600

DEFENDANT PRECISION VALVE & AUTOMATION, INC.'S OBJECTIONS TO EVIDENCE IN SUPPORT MOTION FOR SUMMARY JUDGMENT

1   Q.  Do you wear gloves when you use this product?

2   A. You have to.

3   Q. Gloves are always worn.  Okay.

4   Is it applied to the machine?

5   A. You have to fill up the canister, *mix the formula of thinner, the one we*

6   *talked about before and this.*  You have to adjust the thickness.

7   (Juarez Depo., March 30, 2015, Catalona Dec., 448:22-449:4, 458:14-459:8

8   (emphasis added).)

9   Q. Which of these chemicals on the MSDS sheets did you use in connection

10   with the PVA 350?

11   A. The Humiseal, Arathane, that's it.

12   * * * * *

13   Q. So the Arathane 5750B(LV) is part of the PVA 350?

14   A. 57 A/B.  Part A and part B.

15   * * * * *

16   Q. Oh, okay.  The only Arathane you used was A/B; correct?

17   A. As far as I remember, there was only one Arathane, A/B, part A and part

18   B.  That's it.

19   Q. And were there two parts to that, or was it one substance that was called

20   Arathane 5750 A/B?

21   A. No.  They were *separate chemicals that when you mixed, they would start*

22   *to cure rather quickly.*

23   Q. And the two chemicals *you mixed* were part A and part B.

24   A. *Correct.*

25   (Juarez Depo., March 8, 2018, Catalona Dec., 268:1-3, 268:15-17, 269:8-18 (emphasis

26   added).)  No reasonable jury could believe plaintiff's explanation for this contradiction

27   which is that his prior testimony only meant that he mixed a "single container" of

28   chemicals.  (Juarez Dec., 5:26.)  This does not make sense because he testified at his

Becherer
Kannett &
Schweitzer

1255 Powell St.
Emeryville, CA
94608
510-658-3600

DEFENDANT PRECISION VALVE & AUTOMATION, INC.'S OBJECTIONS TO EVIDENCE IN SUPPORT
MOTION FOR SUMMARY JUDGMENT

1  deposition that he mixed the Humiseal conformal coating material with the Humiseal

2  thinner that "we talked about before," and also that he had to mix Arathane Part A with

3  Arathane part B which were "separate chemicals" that "would start to cure rather

4  quickly" when mixed.  (Catalona Dec., 269:10-15, 459:5-8.)

5        Objection to the Mendoza and Gutierrez declarations which lack foundation and

6  contain speculation.  Plaintiffs are "not allowed to use" these witnesses "to supply

7  evidence on a motion" because he was not disclosed in plaintiffs' Rule 26 disclosures,

8  in response to PVA's interrogatory or when plaintiff was asked to identify plaintiff's

9  coworkers at his deposition and plaintiffs have not met their burden of establishing that

10 this nondisclosure was substantially justified or harmless.  F.R.C.P. 37(c)(1); *Benjamin*

11 *v. B&H Education, Inc.*, 877 F.3d 1139, 1150 (9th Cir. 2017); *Medina v. Multaler, Inc.*,

12 547 F.Supp. 1099, 1106, fn. 8 (C.D. Cal. 2007).

13 Also irrelevant is the fact that these witnesses "never saw Ruben Juarez mix

14 chemicals."  Mendoza and Gutierrez have no foundation to testify about plaintiff's

15 "hand mixing" of chemicals because they were not part of the team that designed

16 SpaceX's conformal coating formula in 2012.  (UF 19-20; Maxwell Dec., 2:21-23.)

17 FRE 401, 402, 403, 602.

18       **Separate Statement Paragraph 20**:  Juarez in his declaration does not address

19 or deny that this design team worked together to create the conformal coating material.

20 Objection to the unsupported suggestion that because he did not have "chemistry

21 training" he "was not allowed to mix chemical compounds."  There is no evidence that

22 mixing chemical compounds required chemistry training.  His statements are also

23 contradicted by his sworn deposition testimony that he mixed separate chemicals to

24 create different compounds as part of his job, including Arathane and Humiseal

25 materials.  (*See excerpts of testimony, infra,* Juarez Depo., March 30, 2015, Catalona

26 Dec., 448:22-449:4, 458:14-459:8; Juarez Depo., March 8, 2018, Catalona Dec.,

27 268:1-3, 268:15-17, 269:8-18.)  No reasonable jury could believe plaintiff's

28 explanation for this contradiction which is that his prior testimony only meant that he

Becherer
Kannett &
Schweitzer

1255 Powell St.
Emeryville, CA
94608
510-658-3600

DEFENDANT PRECISION VALVE & AUTOMATION, INC.'S OBJECTIONS TO EVIDENCE IN SUPPORT
MOTION FOR SUMMARY JUDGMENT

mixed a "single container" of chemicals.  (Juarez Dec., 5:26.)  This does not make sense because he testified at his deposition that he mixed the Humiseal conformal coating material with the Humiseal thinner that "we talked about before," and also that he had to mix Arathane Part A with Arathane part B which were "separate chemicals" that "would start to cure rather quickly" when mixed.  (Catalona Dec., 269:10-15, 459:5-8.)

Objection to the Mendoza and Gutierrez declarations which lack foundation and contain speculation.  Plaintiffs are "not allowed to use" these witnesses "to supply evidence on a motion" because he was not disclosed in plaintiffs' Rule 26 disclosures, in response to PVA's interrogatory or when plaintiff was asked to identify plaintiff's coworkers at his deposition and plaintiffs have not met their burden of establishing that this nondisclosure was substantially justified or harmless.  F.R.C.P. 37(c)(1); *Benjamin v. B&H Education, Inc.*, 877 F.3d 1139, 1150 (9th Cir. 2017); *Medina v. Multaler, Inc.*, 547 F.Supp. 1099, 1106, fn. 8 (C.D. Cal. 2007).

Also irrelevant is the fact that these witnesses "never saw Ruben Juarez mix chemicals."  Mendoza and Gutierrez have no foundation to testify about plaintiff's "hand mixing" of chemicals because they were not part of the team that designed SpaceX's conformal coating formula in 2012.  (UF 19-20; Maxwell Dec., 2:21-23.) FRE 401, 402, 403, 602.

**Separate Statement Paragraph 21**:  Juarez in his declaration does not address or deny that this design team worked together to create the conformal coating material. Objection to the unsupported suggestion that because he did not have "chemistry training" he "was not allowed to mix chemical compounds."  There is no evidence that mixing chemical compounds required chemistry training.  His statements are also contradicted by his sworn deposition testimony that he mixed separate chemicals to create different compounds as part of his job, including Arathane and Humiseal materials.  (*See excerpts of testimony, infra,* Juarez Depo., March 30, 2015, Catalona Dec., 448:22-449:4, 458:14-459:8; Juarez Depo., March 8, 2018, Catalona Dec.,

Becherer
Kannett &
Schweitzer

1255 Powell St.
Emeryville, CA
94608
510-658-3600

268:1-3, 268:15-17, 269:8-18.)  No reasonable jury could believe plaintiff's explanation for this contradiction which is that his prior testimony only meant that he mixed a "single container" of chemicals.  (Juarez Dec., 5:26.)  This does not make sense because he testified at his deposition that he mixed the Humiseal conformal coating material with the Humiseal thinner that "we talked about before," and also that he had to mix Arathane Part A with Arathane part B which were "separate chemicals" that "would start to cure rather quickly" when mixed.  (Catalona Dec., 269:10-15, 459:5-8.)

Objection to the Mendoza and Gutierrez declarations which lack foundation and contain speculation.  Plaintiffs are "not allowed to use" these witnesses "to supply evidence on a motion" because he was not disclosed in plaintiffs' Rule 26 disclosures, in response to PVA's interrogatory or when plaintiff was asked to identify plaintiff's coworkers at his deposition and plaintiffs have not met their burden of establishing that this nondisclosure was substantially justified or harmless.  F.R.C.P. 37(c)(1); *Benjamin v. B&H Education, Inc.*, 877 F.3d 1139, 1150 (9th Cir. 2017); *Medina v. Multaler, Inc.*, 547 F.Supp. 1099, 1106, fn. 8 (C.D. Cal. 2007).

Also irrelevant is the fact that these witnesses "never saw Ruben Juarez mix chemicals."  Mendoza and Gutierrez have no foundation to testify about plaintiff's "hand mixing" of chemicals because they were not part of the team that designed SpaceX's conformal coating formula in 2012.  (UF 19-20; Maxwell Dec., 2:21-23.) FRE 401, 402, 403, 602.

**Separate Statement Paragraph 22**:  Irrelevant and misleading.  Whether he was provided with an SOP specifically "for programmers" for "any assembly area" is irrelevant because SpaceX did not have any such SOPs.  The undisputed evidence shows he did receive the SOP that is relevant to this case, for "Polymeric Application on Electronic Assemblies."  This SOP which PVA submitted with its motion for summary judgment was used by the entire Avionics department and contained SpaceX's instructions for operating PVA's machine.  (Juarez Dec., 6:10-11; Hwang

Becherer
Kannett &
Schweitzer

1255 Powell St.
Emeryville, CA
94608
510-658-3600

DEFENDANT PRECISION VALVE & AUTOMATION, INC.'S OBJECTIONS TO EVIDENCE IN SUPPORT
MOTION FOR SUMMARY JUDGMENT

Dec., 1:25-26.)  When asked directly about this particular SOP at his deposition, plaintiff testified that he had "no idea" what a "Standard Operating Procedure" or "SOP" even was, and could not remember ever receiving *any* written instructions from SpaceX.  (Catalona Dec., 282:17-25, 283:25-284:5.)  Critically, plaintiffs have put forward no evidence that negates the relevant SOP that required Juarez to program the PVA 350 according to "the operating instructions in the PVA manual."  (UF 25; Hwang Dec., 11.)  Also irrelevant that Mr. Sotelo "laughed at him."

Objection to the Mendoza and Gutierrez declarations which lack foundation and contain speculation.  Plaintiffs are "not allowed to use" either witness "to supply evidence on a motion" because they were not disclosed in plaintiffs' Rule 26 disclosures, in response to PVA's interrogatory or when asked to identify plaintiff's coworkers at his deposition and plaintiffs have not met their burden of establishing that this nondisclosure was substantially justified or harmless.  (F.R.C.P. 37(c)(1); *Benjamin v. B&H Education, Inc.*, 877 F.3d 1139, 1150 (9th Cir. 2017); *Medina v. Multaler, Inc.*, 547 F.Supp. 1099, 1106, fn. 8 (C.D. Cal. 2007).  Mr. Gutierrez only overlapped with Mr. Juarez during an unidentified portion of 2012 and cannot say what SpaceX was like during the majority of Juarez's job history.  Mr. Mendoza is unable to testify that he worked with Ruben Juarez at any time or ever saw him perform work.  Thus, he could not have spent any significant amount of time in the conformal coating room where Juarez worked for 60 percent of his 60-hour weeks at SpaceX.  Plaintiff Juarez was unable to recall working with either Gutierrez or Mendoza.

Plaintiffs' counsel incorrectly used the term "Standards of Practice documents" in Gutierrez's declaration.  This term was never used by SpaceX employees and did not use to refer to the Avionics SOPs.  (Gutierrez Dec., 2:9-10.)  There is nothing in either declaration which negates PVA's undisputed evidence that the most up-to-date version of the Avionics department SOPs were kept on Juarez's computer that he used on a daily basis.  (UF 62; Maxwell Dec., 2:2-4; 2:17-19.)  FRE 401, 402, 403, 602.

Becherer
Kannett &
Schweitzer

1255 Powell St.
Emeryville, CA
94608
510-658-3600

-11-
DEFENDANT PRECISION VALVE & AUTOMATION, INC.'S OBJECTIONS TO EVIDENCE IN SUPPORT
MOTION FOR SUMMARY JUDGMENT

**Separate Statement Paragraph 23**:  Irrelevant and misleading.  Whether he was provided with an SOP specifically "for programmers" for "any assembly area" is irrelevant because SpaceX did not have any such SOPs.  The undisputed evidence shows he did receive the SOP that is relevant to this case, for "Polymeric Application on Electronic Assemblies."  This SOP which PVA submitted with its motion for summary judgment was used by the entire Avionics department and contained SpaceX's instructions for operating PVA's machine.  (Juarez Dec., 6:10-11; Hwang Dec., 1:25-26.)  When asked directly about this particular SOP at his deposition, plaintiff testified that he had "no idea" what a "Standard Operating Procedure" or "SOP" even was, and could not remember ever receiving *any* written instructions from SpaceX.  (Catalona Dec., 282:17-25, 283:25-284:5.)  Critically, plaintiffs have put forward no evidence that negates the relevant SOP that required Juarez to program the PVA 350 according to "the operating instructions in the PVA manual."  (UF 25; Hwang Dec., 11.)  Also irrelevant that Mr. Sotelo "laughed at him."

Objection to the Mendoza and Gutierrez declarations which lack foundation and contain speculation.  Plaintiffs are "not allowed to use" either witness "to supply evidence on a motion" because they were not disclosed in plaintiffs' Rule 26 disclosures, in response to PVA's interrogatory or when asked to identify plaintiff's coworkers at his deposition and plaintiffs have not met their burden of establishing that this nondisclosure was substantially justified or harmless.  (F.R.C.P. 37(c)(1); *Benjamin v. B&H Education, Inc.*, 877 F.3d 1139, 1150 (9th Cir. 2017); *Medina v. Multaler, Inc.*, 547 F.Supp. 1099, 1106, fn. 8 (C.D. Cal. 2007).  Mr. Gutierrez only overlapped with Mr. Juarez during an unidentified portion of 2012 and cannot say what SpaceX was like during the majority of Juarez's job history.  Mr. Mendoza is unable to testify that he worked with Ruben Juarez at any time or ever saw him perform work.  Thus, he could not have spent any significant amount of time in the conformal coating room where Juarez worked for 60 percent of his 60-hour weeks at SpaceX.  Plaintiff Juarez was unable to recall working with either Gutierrez or

Becherer
Kannett &
Schweitzer

1255 Powell St.
Emeryville, CA
94608
510-658-3600

Mendoza.

Plaintiffs' counsel incorrectly used the term "Standards of Practice documents" in Gutierrez's declaration.  This term was never used by SpaceX employees and did not use to refer to the Avionics SOPs.  (Gutierrez Dec., 2:9-10.)  There is nothing in either declaration which negates PVA's undisputed evidence that the most up-to-date version of the Avionics department SOPs were kept on Juarez's computer that he used on a daily basis.  (UF 62; Maxwell Dec., 2:2-4; 2:17-19.)  FRE 401, 402, 403, 602.

**<u>Separate Statement Paragraph 24</u>**: Irrelevant and misleading.  Whether he was provided with an SOP specifically "for programmers" for "any assembly area" is irrelevant because SpaceX did not have any such SOPs.  The undisputed evidence shows he did receive the SOP that is relevant to this case, for "Polymeric Application on Electronic Assemblies."  This SOP which PVA submitted with its motion for summary judgment was used by the entire Avionics department and contained SpaceX's instructions for operating PVA's machine.  (Juarez Dec., 6:10-11; Hwang Dec., 1:25-26.)  When asked directly about this particular SOP at his deposition, plaintiff testified that he had "no idea" what a "Standard Operating Procedure" or "SOP" even was, and could not remember ever receiving *any* written instructions from SpaceX.  (Catalona Dec., 282:17-25, 283:25-284:5.)  Critically, plaintiffs have put forward no evidence that negates the relevant SOP that required Juarez to program the PVA 350 according to "the operating instructions in the PVA manual."  (UF 25; Hwang Dec., 11.)  Also irrelevant that Mr. Sotelo "laughed at him."

Objection to the Mendoza and Gutierrez declarations which lack foundation and contain speculation.  Plaintiffs are "not allowed to use" either witness "to supply evidence on a motion" because they were not disclosed in plaintiffs' Rule 26 disclosures, in response to PVA's interrogatory or when asked to identify plaintiff's coworkers at his deposition and plaintiffs have not met their burden of establishing that this nondisclosure was substantially justified or harmless.  (F.R.C.P. 37(c)(1); *Benjamin v. B&H Education, Inc.*, 877 F.3d 1139, 1150 (9th Cir. 2017); *Medina v.*

Becherer
Kannett &
Schweitzer

1255 Powell St.
Emeryville, CA
94608
510-658-3600

DEFENDANT PRECISION VALVE & AUTOMATION, INC.'S OBJECTIONS TO EVIDENCE IN SUPPORT MOTION FOR SUMMARY JUDGMENT

*Multaler, Inc.*, 547 F.Supp. 1099, 1106, fn. 8 (C.D. Cal. 2007).  Mr. Gutierrez only overlapped with Mr. Juarez during an unidentified portion of 2012 and cannot say what SpaceX was like during the majority of Juarez's job history.  Mr. Mendoza is unable to testify that he worked with Ruben Juarez at any time or ever saw him perform work.  Thus, he could not have spent any significant amount of time in the conformal coating room where Juarez worked for 60 percent of his 60-hour weeks at SpaceX.  Plaintiff Juarez was unable to recall working with either Gutierrez or Mendoza.

Plaintiffs' counsel incorrectly used the term "Standards of Practice documents" in Gutierrez's declaration.  This term was never used by SpaceX employees and did not use to refer to the Avionics SOPs.  (Gutierrez Dec., 2:9-10.)  There is nothing in either declaration which negates PVA's undisputed evidence that the most up-to-date version of the Avionics department SOPs were kept on Juarez's computer that he used on a daily basis.  (UF 62; Maxwell Dec., 2:2-4; 2:17-19.)  FRE 401, 402, 403, 602.

**Separate Statement Paragraph 25**:  Irrelevant and misleading.  Nothing in plaintiff's declaration disputes the evidence which shows he did receive the SOP that is relevant to this case, for "Polymeric Application on Electronic Assemblies."  This SOP which PVA submitted with its motion for summary judgment was used by the entire Avionics department and contained SpaceX's instructions for operating PVA's machine.  (Juarez Dec., 6:10-11; Hwang Dec., 1:25-26.)  When asked directly about this particular SOP at his deposition, plaintiff testified that he had "no idea" what a "Standard Operating Procedure" or "SOP" even was, and could not remember ever receiving *any* written instructions from SpaceX.  (Catalona Dec., 282:17-25, 283:25-284:5.)  Critically, plaintiffs have put forward no evidence that negates the relevant SOP that required Juarez to program the PVA 350 according to "the operating instructions in the PVA manual."  (UF 25; Hwang Dec., 11.)  It is vague, ambiguous, irrelevant and immaterial whether the manual was purportedly not on his computer.  SpaceX maintained all manufacturer manuals and specifications for its purchased

Becherer
Kannett &
Schweitzer

1255 Powell St.
Emeryville, CA
94608
510-658-3600

-14-

DEFENDANT PRECISION VALVE & AUTOMATION, INC.'S OBJECTIONS TO EVIDENCE IN SUPPORT MOTION FOR SUMMARY JUDGMENT

equipment, including the PVA 350, "at its Hawthorne campus."  (UF 26; Hwang Dec., 1:15-17.)  This is never questioned in plaintiffs' opposition papers.  To read PVA's manual, which plaintiffs admit PVA did provide to SpaceX, all plaintiff had to do was ask but he never asked to see it and there is no explanation why.  (UF 16; Pl. Sep. Stmt., 79:5-7.)

Objection to the Mendoza and Gutierrez declarations which lack foundation and contain speculation.  Plaintiffs are "not allowed to use" either witness "to supply evidence on a motion" because they were not disclosed in plaintiffs' Rule 26 disclosures, in response to PVA's interrogatory or when asked to identify plaintiff's coworkers at his deposition and plaintiffs have not met their burden of establishing that this nondisclosure was substantially justified or harmless.  (F.R.C.P. 37(c)(1); *Benjamin v. B&H Education, Inc.*, 877 F.3d 1139, 1150 (9th Cir. 2017); *Medina v. Multaler, Inc.*, 547 F.Supp. 1099, 1106, fn. 8 (C.D. Cal. 2007).  Mr. Gutierrez only overlapped with Mr. Juarez during an unidentified portion of 2012 and cannot say what SpaceX was like during the majority of Juarez's job history.  Mr. Mendoza is unable to testify that he worked with Ruben Juarez at any time or ever saw him perform work.  Thus, he could not have spent any significant amount of time in the conformal coating room where Juarez worked for 60 percent of his 60-hour weeks at SpaceX.  Plaintiff Juarez was unable to recall working with either Gutierrez or Mendoza.

Plaintiffs' counsel incorrectly used the term "Standards of Practice documents" in Gutierrez's declaration.  This term was never used by SpaceX employees and did not use to refer to the Avionics SOPs.  (Gutierrez Dec., 2:9-10.)  There is nothing in either declaration which negates PVA's undisputed evidence that the most up-to-date version of the Avionics department SOPs were kept on Juarez's computer that he used on a daily basis.  (UF 62; Maxwell Dec., 2:2-4; 2:17-19.)  FRE 401, 402, 403, 602.

**Separate Statement Paragraph 26**:  Irrelevant and misleading.  It is vague, ambiguous, irrelevant and immaterial whether the PVA manual was purportedly not on

Becherer
Kannett &
Schweitzer

1255 Powell St.
Emeryville, CA
94608
510-658-3600

DEFENDANT PRECISION VALVE & AUTOMATION, INC.'S OBJECTIONS TO EVIDENCE IN SUPPORT MOTION FOR SUMMARY JUDGMENT

his computer.  SpaceX maintained all manufacturer manuals and specifications for its purchased equipment, including the PVA 350, "at its Hawthorne campus."  (UF 26; Hwang Dec., 1:15-17.)  This is never questioned in plaintiffs' opposition papers.  To read PVA's manual, which plaintiffs admit PVA did provide to SpaceX, all plaintiff had to do was ask but he never asked to see it and there is no explanation why.  (UF 16; Pl. Sep. Stmt., 79:5-7.)

Objection to the Mendoza and Gutierrez declarations which lack foundation and contain speculation.  Plaintiffs are "not allowed to use" either witness "to supply evidence on a motion" because they were not disclosed in plaintiffs' Rule 26 disclosures, in response to PVA's interrogatory or when asked to identify plaintiff's coworkers at his deposition and plaintiffs have not met their burden of establishing that this nondisclosure was substantially justified or harmless.  (F.R.C.P. 37(c)(1); *Benjamin v. B&H Education, Inc.*, 877 F.3d 1139, 1150 (9th Cir. 2017); *Medina v. Multaler, Inc.*, 547 F.Supp. 1099, 1106, fn. 8 (C.D. Cal. 2007).  Neither witness mentions the PVA manual so their declarations are irrelevant.  FRE 401, 402, 403, 602.


Separate Statement Paragraph 28:  All of the cited evidence is irrelevant because it does not contradict or call into question the referenced deposition testimony in which Mr. Juarez said his duties did not change.  FRE 401, 402.

Separate Statement Paragraph 29:  All of the cited evidence is irrelevant because it does not contradict or call into question the referenced deposition testimony in which Mr. Juarez said he was the "main support" for the PVA 350.  Plaintiffs' separate statement is also argumentative.  FRE 401, 402, 403.

Separate Statement Paragraph 30:  Plaintiff does not dispute that he made this admission in the complaint.  None of the cited evidence calls this admission into question.  Plaintiffs' counsel's attempt to characterize this evidence is argumentative and irrelevant.  FRE 401, 402, 403.

Becherer
Kannett &
Schweitzer

1255 Powell St.
Emeryville, CA
94608
510-658-3600

-16-

**Separate Statement Paragraph 31**:  All of the cited evidence is irrelevant because it does not contradict or call into question the referenced deposition testimony. Plaintiffs' separate statement is also argumentative.  FRE 401, 402, 403.

**Separate Statement Paragraph 32**:  All of the cited evidence is irrelevant because it does not contradict or call into question the referenced deposition testimony. Plaintiffs' separate statement is also argumentative.  FRE 401, 402, 403.

**Separate Statement Paragraph 33**:  All of the cited evidence is irrelevant because it does not contradict or call into question the referenced deposition testimony. Plaintiffs' separate statement is also argumentative.  FRE 401, 402, 403.

**Separate Statement Paragraph 34**:  All of the cited evidence is irrelevant because it does not contradict or call into question the referenced deposition testimony. Plaintiffs' separate statement is also argumentative.  The evidence cited does not support the suggestion that the Avionics department's SOP was "not applicable" which is an unreasonable inference made by plaintiffs' attorney.  FRE 401, 402, 403.

**Separate Statement Paragraph 35**:  All of the cited evidence is irrelevant because it does not contradict or call into question the referenced deposition testimony. Plaintiffs' separate statement is also argumentative.  FRE 401, 402, 403.

**Separate Statement Paragraph 36**:  All of the cited evidence is irrelevant because it does not contradict or call into question the referenced deposition testimony. Plaintiffs' separate statement is also argumentative.  FRE 401, 402, 403.

**Separate Statement Paragraph 37**:  Plaintiff does not dispute that he made this admission in the complaint.  None of the cited evidence calls this admission into question.  Plaintiffs' counsel's attempt to characterize this evidence is argumentative and irrelevant.  FRE 401, 402, 403.

**Separate Statement Paragraph 38**:  Plaintiff does not dispute that he made this admission to Dr. Regev.  None of the cited evidence calls this admission into question. Plaintiffs' counsel's attempt to characterize this evidence is argumentative and irrelevant.  Mr. Juarez's mischaracterization of this medical record is inadmissible

Becherer
Kannett &
Schweitzer

1255 Powell St.
Emeryville, CA
94608
510-658-3600

DEFENDANT PRECISION VALVE & AUTOMATION, INC.'S OBJECTIONS TO EVIDENCE IN SUPPORT
MOTION FOR SUMMARY JUDGMENT

hearsay.  At his deposition, he stated that he had never even heard of Dr. Regev:  "Q. This is a medical record from Isaac Regev, M.D.  Do you remember who that guy is?  A. No, sir."  (Catalona Dec., 337:22-24.)  In any event, the actual medical record speaks for itself and is undisputed.  Plaintiffs' counsel's attempt to characterize this evidence is argumentative and irrelevant.  FRE 401, 402, 403.

Separate Statement Paragraph 39:  Plaintiff does not dispute that he made these statements to Dr. Windman.  These statements refer back to the time he worked at SpaceX from 2012 to March, 2014 regardless of the fact that Dr. Windman wrote them down in 2016.  None of plaintiffs' cited evidence calls this admission into question.  Plaintiffs' counsel's attempt to characterize this evidence is argumentative and irrelevant.  He also makes no effort to explain his statements to Dr. Windman, whose report is never addressed in the opposition.  Plaintiffs' evidentiary objection that her report is hearsay must be overruled because it was offered as a business record pursuant to Federal Rule of Evidence ("FRE") 803(6) and 902(11), Catalona Dec., 417, is thus "self-authenticating" and presumptively admissible over plaintiffs' hearsay objection because plaintiffs have offered no evidence to "show that the source of the information or the method or circumstances of preparation indicate a lack of trustworthiness."  FRE 803(6)(E).  Plaintiff's statements to Dr. Windman survive plaintiffs' hearsay objection for the additional reason that they are "by a party" and thus excluded from the definition of hearsay.  FRE 801(d)(2)(A).  Dr. Windman's entire report is a party admission because it was "made *by the party's agent* or employee *on a matter within the scope of that relationship and while it existed.*"  FRE 801(d)(2)(B) (emphasis added).  FRE 401, 402, 403.

Separate Statement Paragraph 40:  All of the cited evidence is irrelevant because it does not contradict or call into question plaintiff's admissions in the referenced deposition testimony.  There is no suggestion in the referenced transcript that Mr. Juarez was talking about an electrical shock or hurting his hand.  He testified regarding SpaceX's bypassing the safety switch in the context of cleaning "the lines" of "coating

Becherer
Kannett &
Schweitzer

1255 Powell St.
Emeryville, CA
94608
510-658-3600

-18-

material" that he would do "most every day" for two minutes to "an hour or so.  The only problem with that is the equipment, they bypass the emergency switch.  So sometimes you have to open it.  And in normal conditions, it should have shut down, not allow you to work on the machine.  But someone will bypass the safety switch." He then testified that he made a request to acquire "new equipment for safety" to prevent his hazard which consisted of "an alarm system [for] whenever the *exhaust fan is not working*.  It will shut down or would not allow you to operate the machine." (Catalona Dec., 450:3-16.)  He also testified that the machine was "obsolete" because "it didn't have the alarm system to advise the operator *that the suction system was not working or pulling all of the fumes* out of it."  (UF 42; Catalona Dec., 450:16-20, 473:2-6.)  The testimony only speaks about his knowledge of the hazard of breathing the "coating material" and none of the evidence cited by the plaintiffs calls this testimony into question.  He also made the same statements to his toxicologist that his "employer bypass the safety switch" which caused exposure to coating materials.  (UF 41.)  Plaintiffs' counsel's attempt to characterize this evidence is misleading, argumentative and irrelevant.  FRE 401, 402, 403.

Separate Statement Paragraph 41:  Plaintiff does not dispute that he made this admission to his toxicologist.  These statements refer back to the time he worked at SpaceX from 2012 to March, 2014 regardless of the fact that he wrote them down in 2015 or 2016.  He did not learn his employer bypassed the safety switch in 2015 or 2016, he learned this when he worked at SpaceX in 2012-2014 and complained to SpaceX about it "to no avail."  None of plaintiffs' cited evidence calls this admission into question.  Plaintiffs' counsel's attempt to characterize this evidence is argumentative and irrelevant.  FRE 401, 402, 403.

Separate Statement Paragraph 42:  Plaintiff does not dispute that he made these admissions during his workers' compensation deposition.  These statements refer back to the time he worked at SpaceX from 2012 to March, 2014 regardless of the fact that he made them at a deposition in 2015.  He did not request safety upgrades to the

Becherer
Kannett &
Schweitzer

1255 Powell St.
Emeryville, CA
94608
510-658-3600

DEFENDANT PRECISION VALVE & AUTOMATION, INC.'S OBJECTIONS TO EVIDENCE IN SUPPORT MOTION FOR SUMMARY JUDGMENT

machine in 2015 but when he worked at SpaceX in 2012-2014 and complained to SpaceX "to no avail."  None of plaintiffs' cited evidence calls this testimony into question.  Plaintiffs' counsel's attempt to characterize this evidence is argumentative and irrelevant.  FRE 401, 402, 403.

Separate Statement Paragraph 43:  Plaintiff does not dispute that he made these admissions during his workers' compensation deposition.  None of plaintiff's cited evidence contradicts or calls into question the evidence that plaintiff's concerns expressed to SpaceX were regarding exposure to conformal coating material from PVA's machine.  (UF 42; Catalona Dec., 450:3-20, 473:2-6.)  None of plaintiffs' cited evidence calls this testimony into question.  Plaintiffs' counsel's attempt to characterize this evidence is argumentative and irrelevant.  FRE 401, 402, 403.

Separate Statement Paragraph 44:  Plaintiff does not dispute that he made these admissions during his workers' compensation deposition.  These statements refer back to the time he worked at SpaceX from 2012 to March, 2014 regardless of the fact that he made them at a deposition in 2015.  None of plaintiff's cited evidence contradicts or calls into question the evidence that plaintiff's concerns expressed to SpaceX were regarding exposure to conformal coating material from PVA's machine.  (UF 42; Catalona Dec., 450:3-20, 473:2-6.)  None of plaintiffs' cited evidence calls this testimony into question.  Plaintiffs' counsel's attempt to characterize this evidence is argumentative and irrelevant.  FRE 401, 402, 403.

Separate Statement Paragraph 45:  Plaintiff does not dispute that he made these admission during his workers' compensation deposition.  These statements refer back to the time he worked at SpaceX from 2012 to March, 2014 regardless of the fact that he made them at a deposition in 2015.  None of plaintiff's cited evidence contradicts or calls into question plaintiffs' admissions that Humiseal thinner was both a cleaning agent and a conformal coating material.  Plaintiff falsely states that the chemicals he used to clean electronic parts at SpaceX were "unknown" and "unconnected to the PVA 350" which is unambiguously contradicted by his prior testimony that he used

Becherer
Kannett &
Schweitzer

1255 Powell St.
Emeryville, CA
94608
510-658-3600

Humiseal thinner on a daily basis as both a "cleaning agent … to soak parts to be cleaned" and a conformal coating material in PVA's machine.  (*Compare* Juarez Dec., 2:23-25 *with* UF 45-46, Catalona Dec., 448:22-449:12.)  None of plaintiffs' cited evidence calls his referenced testimony into question.  Plaintiffs' counsel's attempt to characterize this evidence is argumentative and irrelevant.  FRE 401, 402, 403

<u>Separate Statement Paragraph 46</u>:  Plaintiff does not dispute that he made these admissions or a medical intake form in his workers' compensation action.  These statements refer back to the time he worked at SpaceX from 2012 to March, 2014 regardless of the fact that he wrote them down in 2015 or 2016.  Plaintiffs' counsel's attempt to characterize this evidence is argumentative and irrelevant.  FRE 401, 402, 403.

<u>Separate Statement Paragraph 48</u>:  Plaintiff does not dispute that he missed this amount of work and ultimately left SpaceX for good on March 26, 2014.  "36-37" are pages added to Ms. Dhillon's declaration pursuant to Local Rule 11-5.1, not exhibits.  These are SpaceX employment records for Mr. Juarez which show the amount of time he missed from work due to his illness due to the medical leave requested by Mr. Juarez.  They are offered as business records because they were "made at or near the time of the statements, acts and events that are reported or contained in the records by persons with knowledge of and a business duty to record those matters.  These records are kept in the course of SpaceX's regularly conducted business activities and made as a regular practice and custom of the business."  (Dhillon Dec., 1:23-27.)  They are thus are "self-authenticating" pursuant to FRE 803(6) and 902(11) and presumptively admissible because plaintiffs have offered no evidence to "show that the source of the information or the method or circumstances of preparation indicate a lack of trustworthiness."  FRE 803(6)(E).  Plaintiffs' counsel's attempt to characterize this evidence is argumentative and irrelevant.  FRE 401, 402, 403.

<u>Separate Statement Paragraph 49</u>:  Plaintiff does not dispute that he made these admissions in his workers' compensation claim form on September 24, 2014 in which

Becherer
Kannett &
Schweitzer

1255 Powell St.
Emeryville, CA
94608
510-658-3600

he claimed his headaches and aneurysm were caused by repetitive and continuous exposure to toxic substances.  None of plaintiffs' cited evidence calls this testimony into question.  Plaintiffs' counsel's attempt to characterize this evidence is argumentative and irrelevant.  FRE 401, 402, 403.

Separate Statement Paragraph 50:  Plaintiff does not dispute that he made this admission to Dr. Regev.  None of the cited evidence calls this admission into question. Plaintiffs' counsel's attempt to characterize this evidence is argumentative and irrelevant.  Mr. Juarez's mischaracterization of this medical record is inadmissible hearsay.  At his deposition, he stated that he had never even heard of Dr. Regev:  "Q. This is a medical record from Isaac Regev, M.D.  Do you remember who that guy is? A. No, sir."  (Catalona Dec., 337:22-24.)  In any event, the actual medical record speaks for itself and is undisputed.  Plaintiffs' counsel's blatant attempt to mischaracterize this evidence is argumentative and irrelevant.  FRE 401, 402, 403

Separate Statement Paragraph 51:  Plaintiff does not dispute that he made this admission at his deposition in this case.  This statement refers back to the time February, 2015 *before* his attorneys and workers' compensation doctors received the MSDS sheets during the workers' compensation action irrespective of the fact that he said this at his deposition in 2018.  This proves that he knew he had been exposed to "toxic" substances *before* this critical event happened and his entire argument about the MSDS sheets is an after-the-fact strategy solely to avoid application of the statute of limitations.  None of plaintiffs' cited evidence calls this admission into question. Plaintiffs' counsel's attempt to characterize this evidence is argumentative and irrelevant.  FRE 401, 402, 403.

Separate Statement Paragraph 52:  Plaintiff does not dispute that he made these admissions during his workers' compensation deposition.  None of plaintiffs' cited evidence calls this testimony into question.  Plaintiffs' counsel's attempt to characterize this evidence is argumentative and irrelevant.  FRE 401, 402, 403.

Separate Statement Paragraph 53:  Plaintiff does not dispute that he made these

Becherer
Kannett &
Schweitzer

1255 Powell St.
Emeryville, CA
94608
510-658-3600

DEFENDANT PRECISION VALVE & AUTOMATION, INC.'S OBJECTIONS TO EVIDENCE IN SUPPORT MOTION FOR SUMMARY JUDGMENT

admissions during his workers' compensation deposition.  None of plaintiffs' cited evidence calls this testimony into question.  Plaintiffs' counsel's attempt to characterize this evidence is argumentative and irrelevant.  FRE 401, 402, 403.

Separate Statement Paragraph 54:  Plaintiff does not dispute that he made these admissions during his workers' compensation deposition.  None of plaintiffs' cited evidence calls this testimony into question.  Plaintiffs' counsel's attempt to characterize this evidence is argumentative and irrelevant.  FRE 401, 402, 403.

Separate Statement Paragraph 55:  Plaintiff does not dispute that he made this admission in plaintiffs' First Amended Complaint.  None of plaintiffs' cited evidence calls this admission into question.  Plaintiffs' counsel's attempt to characterize this evidence is argumentative and irrelevant.  FRE 401, 402, 403.

Separate Statement Paragraph 56:  Plaintiff does not dispute that Dr. Regev made this statement.  Plaintiffs' counsel's attempt to characterize this evidence is argumentative and irrelevant.  FRE 401, 402, 403.

Separate Statement Paragraph 57:  Plaintiff does not dispute that this email was sent or its content.  Plaintiffs' counsel's attempt to characterize this evidence is argumentative and irrelevant.  FRE 401, 402, 403.

Separate Statement Paragraph 58:  Plaintiff does not dispute that the MSDS sheets were received at this time.  Plaintiffs' counsel's attempt to characterize this evidence is argumentative and irrelevant.  FRE 401, 402, 403.

Separate Statement Paragraph 60:  Plaintiff does not dispute that he made this allegation in plaintiffs' First Amended Complaint.  None of plaintiffs' cited evidence calls this into question.  Plaintiffs' counsel's attempt to characterize this evidence is argumentative and irrelevant.  FRE 401, 402, 403.

Separate Statement Paragraph 61:  Plaintiff does not dispute that he made this allegation in plaintiffs' original state court action.  None of plaintiffs' cited evidence calls this into question.  Plaintiffs' counsel's attempt to characterize this evidence is argumentative and irrelevant.  FRE 401, 402, 403.

Becherer
Kannett &
Schweitzer

1255 Powell St.
Emeryville, CA
94608
510-658-3600

-23-
DEFENDANT PRECISION VALVE & AUTOMATION, INC.'S OBJECTIONS TO EVIDENCE IN SUPPORT
MOTION FOR SUMMARY JUDGMENT

Separate Statement Paragraph 62:  Irrelevant, argumentative and misleading.  In his declaration, Juarez does not deny that the MSDS sheets were available on SpaceX's "network" which he admits was available on his computer, even after reading the declarations of coworkers Maxwell, Phan and Hwang, who each testified that the MSDS sheets were "easily accessible" on this site.  (Juarez Dec., 2:8-11, 5:4-7; Phan Dec., 2:4, Maxwell Dec., 2:2-4, Hwang Dec., 2:2.)  There is no evidentiary support for the suggestion that a billion dollar company like SpaceX would not provide its employees with access to MSDS sheets, which it was legally required to do by Cal/OSHA's HazCom regulations.   (Dhillon Dec., 43, 46-51; 29 CFR 1910.1200(b)(4)(ii)-(iii), 29 CFR 1910.1200(g)(10).)  This absurd suggestion would also mean that all of the SpaceX's Hazard Communication course materials before this Court, as well as the evidence that Juarez took and completed this course, are a complete fabrication.  (UF 66; Dhillon Dec., 2:6-12, 2:19-20, 3:1-10, 39-80; Maxwell Dec., 3:4-15, 36-77.)  But there is absolutely nothing in the record which calls this undisputed evidence into question.  (Pl. Sep. Stmt., 293:27-298:13.)

Objection to the Mendoza and Gutierrez declarations which lack foundation and contain speculation.  Plaintiffs are "not allowed to use" either witness "to supply evidence on a motion" because they were not disclosed in plaintiffs' Rule 26 disclosures, in response to PVA's interrogatory or when asked to identify plaintiff's coworkers at his deposition and plaintiffs have not met their burden of establishing that this nondisclosure was substantially justified or harmless.  (F.R.C.P. 37(c)(1); *Benjamin v. B&H Education, Inc.*, 877 F.3d 1139, 1150 (9th Cir. 2017); *Medina v. Multaler, Inc.*, 547 F.Supp. 1099, 1106, fn. 8 (C.D. Cal. 2007).  Mr. Gutierrez only overlapped with Mr. Juarez during an unidentified portion of 2012 and cannot say what SpaceX was like during the majority of Juarez's job history.  Mr. Mendoza is unable to testify that he worked with Ruben Juarez at any time or ever saw him perform work.  Thus, he could not have spent any significant amount of time in the conformal coating room where Juarez worked for 60 percent of his 60-hour weeks at

Becherer
Kannett &
Schweitzer

1255 Powell St.
Emeryville, CA
94608
510-658-3600

-24-

SpaceX.  Plaintiff Juarez was unable to recall working with either Gutierrez or Mendoza.  FRE 401, 402, 403.

Separate Statement Paragraph 63:  Argumentative and irrelevant.  There is no evidentiary support for the suggestion that SpaceX did not follow this rule or that the "Hazard Communication" course was not given.  This suggestion that a billion dollar company like SpaceX would not provide its employees with access to MSDS sheets, which it was legally required to do by Cal/OSHA's HazCom regulations, is absurd.  (Dhillon Dec., 43, 46-51; 29 CFR 1910.1200(b)(4)(ii)-(iii), 29 CFR 1910.1200(g)(10).)  Plaintiffs have put forward no evidence to suggest that the documentation of SpaceX's Hazard Communication course materials before this Court, as well as the evidence that Juarez took and completed this course, are a complete fabrication.  (UF 66; Dhillon Dec., 2:6-12, 2:19-20, 3:1-10, 39-80; Maxwell Dec., 3:4-15, 36-77.)  Neither Juarez, Mendoza or Gutierrez deny they took this course or the documentation PVA provided with its motion for summary judgment.

Objection to the Mendoza and Gutierrez declarations which lack foundation and contain speculation.  Plaintiffs are "not allowed to use" either witness "to supply evidence on a motion" because they were not disclosed in plaintiffs' Rule 26 disclosures, in response to PVA's interrogatory or when asked to identify plaintiff's coworkers at his deposition and plaintiffs have not met their burden of establishing that this nondisclosure was substantially justified or harmless.  (F.R.C.P. 37(c)(1); *Benjamin v. B&H Education, Inc.*, 877 F.3d 1139, 1150 (9th Cir. 2017); *Medina v. Multaler, Inc.*, 547 F.Supp. 1099, 1106, fn. 8 (C.D. Cal. 2007).  FRE 401, 402, 403.

Separate Statement Paragraph 64:  None of plaintiffs' cited evidence establishes that the MSDS sheets were not present on the 14 to 18 computers located where plaintiff worked.  The fact that Mr. Maxwell was the head of the entire Avionics department and not the direct supervisor of Mr. Juarez does not change the fact that he had a direct line of site to plaintiff's computer and knew what was available on all the computers in his department.  Plaintiff does not deny that the MSDS sheets were

Becherer
Kannett &
Schweitzer

1255 Powell St.
Emeryville, CA
94608
510-658-3600

DEFENDANT PRECISION VALVE & AUTOMATION, INC.'S OBJECTIONS TO EVIDENCE IN SUPPORT
MOTION FOR SUMMARY JUDGMENT

available on the SpaceX intranet site which remains undisputed.  Plaintiffs' counsel's attempt to characterize this evidence is argumentative and irrelevant.  FRE 401, 402, 403.

Objection to the Mendoza and Gutierrez declarations which lack foundation and contain speculation.  Plaintiffs are "not allowed to use" either witness "to supply evidence on a motion" because they were not disclosed in plaintiffs' Rule 26 disclosures, in response to PVA's interrogatory or when asked to identify plaintiff's coworkers at his deposition and plaintiffs have not met their burden of establishing that this nondisclosure was substantially justified or harmless.  (F.R.C.P. 37(c)(1); *Benjamin v. B&H Education, Inc.*, 877 F.3d 1139, 1150 (9th Cir. 2017); *Medina v. Multaler, Inc.*, 547 F.Supp. 1099, 1106, fn. 8 (C.D. Cal. 2007).  FRE 401, 402, 403

<u>Separate Statement Paragraph 65</u>:  Juarez in his declaration does not address or deny that this design team worked together to create the conformal coating material.  Objection to the unsupported suggestion that because he did not have "chemistry training" he "was not allowed to mix chemical compounds."  There is no evidence that mixing chemical compounds required chemistry training.  His statements are also contradicted by his sworn deposition testimony that he mixed separate chemicals to create different compounds as part of his job, including Arathane and Humiseal materials.  (*See excerpts of testimony, infra,* Juarez Depo., March 30, 2015, Catalona Dec., 448:22-449:4, 458:14-459:8; Juarez Depo., March 8, 2018, Catalona Dec., 268:1-3, 268:15-17, 269:8-18.)  No reasonable jury could believe plaintiff's explanation for this contradiction which is that his prior testimony only meant that he mixed a "single container" of chemicals.  (Juarez Dec., 5:26.)  This does not make sense because he testified at his deposition that he mixed the Humiseal conformal coating material with the Humiseal thinner that "we talked about before," and also that he had to mix Arathane Part A with Arathane part B which were "separate chemicals" that "would start to cure rather quickly" when mixed.  (Catalona Dec., 269:10-15, 459:5-8.)

Becherer
Kannett &
Schweitzer

1255 Powell St.
Emeryville, CA
94608
510-658-3600

DEFENDANT PRECISION VALVE & AUTOMATION, INC.'S OBJECTIONS TO EVIDENCE IN SUPPORT
MOTION FOR SUMMARY JUDGMENT

Juarez falsely states that he is now certain he never had "access to the MSDS sheets." (Juarez Dec., 2:12.)  At his deposition, he admitted that he could not remember the MSDS sheets "were or whether there [sic] weren't" there, and could not even remember asking for them.  "Q. Did you ever ask for the MSDS sheets at Space? Yes or no.  A. I don't remember." (Catalona Dec., 289:13-16, 290:5-7.)  There is absolutely nothing to explain how he possibly could have been denied "access" to the MSDS sheets when he never asked for them.  "The district court could reasonably conclude that no juror would believe Yeager's weak explanation for his sudden ability to remember the answers to important questions about the critical issues of his lawsuit." *Yeager v. Bowlin*, 693 F.3d 1076, 1981 (9th Cir. 2012.)

There is also no foundation that "chemical training" is necessary to "understand" MSDS sheets.  These documents stated, for example, "Emergency Overview:  WARNING!  FLAMMABLE LIQUID AND VAPOR.  CAUSES RESPIRATORY TRACT, EYE AND SKIN IRRITATION.  MAY CAUSE ALLERGIC RESPIRATORY AND SKIN REACTION.  CONTAINTS MATERIAL THAT CAN CAUSE TARGET ORGAN DAMAGE.  POSSIBLE DEVELOPMENTAL HAZARD – CONTAINS MATERIAL WHICH MAY CAUSE ADVERSE DEVELOPMENTAL EFFECTS, BASED ON ANIMAL DATA. …  Do not breath vapor or mist.  Do not get on skin or clothing.  Avoid contact with eyes. Avoid exposure during pregnancy.  Use only with adequate ventilation.  Keep container tightly closed and sealed until ready for use.  Wash thoroughly after handling. . . .  Contains material which may cause damage to the following organs: kidneys, the nervous system, liver, brain, central nervous system." (Catalona Dec., 628, 637 (MSDS for Arathane 5750A).

Plaintiff's claim that he was never "given" the MSDS sheets is immaterial and irrelevant.

Objection to the Mendoza and Gutierrez declarations which lack foundation and contain speculation.  Plaintiffs are "not allowed to use" these witnesses "to supply

Becherer
Kannett &
Schweitzer

1255 Powell St.
Emeryville, CA
94608
510-658-3600

evidence on a motion" because he was not disclosed in plaintiffs' Rule 26 disclosures, in response to PVA's interrogatory or when plaintiff was asked to identify plaintiff's coworkers at his deposition and plaintiffs have not met their burden of establishing that this nondisclosure was substantially justified or harmless.  F.R.C.P. 37(c)(1); *Benjamin v. B&H Education, Inc.*, 877 F.3d 1139, 1150 (9th Cir. 2017); *Medina v. Multaler, Inc.*, 547 F.Supp. 1099, 1106, fn. 8 (C.D. Cal. 2007).

Also irrelevant is the fact that these witnesses "never saw Ruben Juarez mix chemicals."  Mendoza and Gutierrez have no foundation to testify about plaintiff's "hand mixing" of chemicals because they were not part of the team that designed SpaceX's conformal coating formula in 2012.  (UF 19-20; Maxwell Dec., 2:21-23.) FRE 401, 402, 403, 602.

<u>Separate Statement Paragraph 66</u>:  Plaintiffs have put forward no evidence to suggest that the documentation of SpaceX's Hazard Communication course materials before this Court, as well as the evidence that Juarez took and completed this course, are a complete fabrication.  (UF 66; Dhillon Dec., 2:6-12, 2:19-20, 3:1-10, 39-80; Maxwell Dec., 3:4-15, 36-77.)  Neither Juarez, Mendoza or Gutierrez deny they took this course nor do they deny the validity of the course materials PVA provided with its motion that SpaceX authenticated as business records and which Mr. Maxwell personally verified that he and "all Avionics Department employees including Ruben Juarez" took.  (Dhillon Dec., 1:16-27, 3:1-17; Maxwell Dec., 3:4-15.)

Objection to the Mendoza and Gutierrez declarations which lack foundation and contain speculation.  Plaintiffs are "not allowed to use" either witness "to supply evidence on a motion" because they were not disclosed in plaintiffs' Rule 26 disclosures, in response to PVA's interrogatory or when asked to identify plaintiff's coworkers at his deposition and plaintiffs have not met their burden of establishing that this nondisclosure was substantially justified or harmless.  (F.R.C.P. 37(c)(1); *Benjamin v. B&H Education, Inc.*, 877 F.3d 1139, 1150 (9th Cir. 2017); *Medina v. Multaler, Inc.*, 547 F.Supp. 1099, 1106, fn. 8 (C.D. Cal. 2007).  FRE 401, 402, 403.

Becherer
Kannett &
Schweitzer

1255 Powell St.
Emeryville, CA
94608
510-658-3600

DEFENDANT PRECISION VALVE & AUTOMATION, INC.'S OBJECTIONS TO EVIDENCE IN SUPPORT
MOTION FOR SUMMARY JUDGMENT

Separate Statement Paragraph 67:  Objection.  None of the evidence cited is relevant to whether the MSDS sheets including for Arathane and Humiseal were available on the internet from 2012 to the present.  All of the evidence cited is irrelevant and immaterial.  FRE 401, 402, 403.

Separate Statement Paragraph 68:  Objection.  None of the evidence is contradicts or calls into question plaintiff's deposition testimony in which he admitted he never saw or asked to see the MSDS sheets while he worked at SpaceX.  All of the evidence cited is irrelevant and immaterial.  FRE 401, 402, 403.

Juarez falsely states that he is now certain he never had "access to the MSDS sheets."  (Juarez Dec., 2:12.)  At his deposition, he admitted that he could not remember whether the MSDS sheets "were or whether there [sic] weren't" there, and could not even remember asking for them.  "Q. Did you ever ask for the MSDS sheets at Space? Yes or no.  A. I don't remember."  (Catalona Dec., 289:13-16, 290:5-7.) There is absolutely nothing to explain how he possibly could have been denied "access" to the MSDS sheets when he never asked for them.  "The district court could reasonably conclude that no juror would believe Yeager's weak explanation for his sudden ability to remember the answers to important questions about the critical issues of his lawsuit."  *Yeager v. Bowlin*, 693 F.3d 1076, 1981 (9th Cir. 2012.)

Objection to the Mendoza and Gutierrez declarations which lack foundation and contain speculation.  Plaintiffs are "not allowed to use" either witness "to supply evidence on a motion" because they were not disclosed in plaintiffs' Rule 26 disclosures, in response to PVA's interrogatory or when asked to identify plaintiff's coworkers at his deposition and plaintiffs have not met their burden of establishing that this nondisclosure was substantially justified or harmless.  (F.R.C.P. 37(c)(1); *Benjamin v. B&H Education, Inc.*, 877 F.3d 1139, 1150 (9th Cir. 2017); *Medina v. Multaler, Inc.*, 547 F.Supp. 1099, 1106, fn. 8 (C.D. Cal. 2007).  FRE 401, 402, 403.

Separate Statement Paragraph 71:  Objection.  None of the evidence cited contradicts or calls into question the fact that plaintiffs admitted that the only

Becherer
Kannett &
Schweitzer

1255 Powell St.
Emeryville, CA
94608
510-658-3600

-29-

investigation either plaintiff did to determine the cause of their injuries was "going to see his doctors."  Plaintiffs' discovery responses were never amended and no documents were identified in plaintiffs' privilege log except for the handwritten notes of plaintiffs' attorney which are irrelevant and immaterial.  (UF 77.)  The evidence cited by plaintiffs and plaintiffs' characterization of this evidence is misleading, argumentative and irrelevant.  FRE 401, 402, 403.

Separate Statement Paragraph 72: Objection.  Argumentative.  Plaintiffs' characterization of this evidence is misleading, argumentative and irrelevant. Plaintiffs' discovery responses were never amended.  FRE 401, 402, 403.

Separate Statement Paragraph 73: Objection.  Argumentative.  Plaintiffs' characterization of this evidence is misleading, argumentative and irrelevant. Plaintiffs' discovery responses were never amended.  FRE 401, 402, 403.

Separate Statement Paragraph 75: Objection.  Argumentative.  Plaintiffs' characterization of this evidence is misleading, argumentative and irrelevant. Plaintiffs' discovery responses were never amended.  FRE 401, 402, 403.

Separate Statement Paragraph 76: Objection.  Argumentative.  Plaintiffs' characterization of this evidence is misleading, argumentative and irrelevant. Plaintiffs' discovery responses were never amended and no documents were identified in plaintiffs' privilege log except for the handwritten notes of plaintiffs' attorney which are irrelevant and immaterial.  (UF 77.)  FRE 401, 402, 403.

Separate Statement Paragraph 77: Objection.  Argumentative.  Plaintiffs' characterization of the privilege log is misleading, argumentative and irrelevant. Plaintiffs' discovery responses were never amended and no documents were identified in plaintiffs' privilege log except for the handwritten notes of plaintiffs' attorney which are irrelevant and immaterial.  (UF 77.)  FRE 401, 402, 403.

Separate Statement Paragraph 79: Objection.  Argumentative.  Plaintiffs' characterization of the admissions in the FAC are misleading, argumentative and irrelevant.  The document speaks for itself.  FRE 401, 402, 403.

Becherer
Kannett &
Schweitzer

1255 Powell St.
Emeryville, CA
94608
510-658-3600

DEFENDANT PRECISION VALVE & AUTOMATION, INC.'S OBJECTIONS TO EVIDENCE IN SUPPORT
MOTION FOR SUMMARY JUDGMENT

Separate Statement Paragraph 80:  Objection.  Argumentative.  Plaintiffs' characterization of plaintiff's admissions at his deposition are misleading, argumentative and irrelevant.  Plaintiffs' deposition testimony was never corrected and no documents were identified in plaintiffs' privilege log except for the handwritten notes of plaintiffs' attorney which are irrelevant and immaterial.  (UF 77.)  FRE 401, 402, 403.

Separate Statement Paragraph 81:  Objection.  Argumentative.  Plaintiffs' characterization of the admissions in the FAC is argumentative and irrelevant.  The document speaks for itself.  FRE 401, 402, 403.

Separate Statement Paragraph 82:  Objection.  Argumentative.  Plaintiffs' characterization of the allegations in the FAC is argumentative and irrelevant.  The document speaks for itself and these are the only allegations regarding a "failure to warn" in the complaint.  None of the evidence cited is relevant to or addresses this undisputed fact.  FRE 401, 402, 403.

Separate Statement Paragraph 83:  Objection.  Argumentative.  Plaintiffs' characterization of the MSDS sheets and the allegations in the FAC is argumentative and irrelevant.  These documents which are incorporated into the complaint speak for themselves and state explicitly on them that these materials were made by third parties.  None of the evidence cited is relevant to or addresses this undisputed fact.  FRE 401, 402, 403.

Separate Statement Paragraph 87:  Objection.  Argumentative, vague, misleading.  Plaintiffs' separate statement which states the training was on "the PVA Inc. machine" mischaracterizes the deposition testimony.  In October, 2011, Mr. Juarez was trained by SpaceX on a completely different machine, a "PVA **650**."  (Catalona Dec., 301:17-303:21; Loftus Brewer Dec., 65:9-17, 79:12-24.)  This training is irrelevant to plaintiffs' failure to warn claims and strict product liability cause of action about the PVA 350 designed and sold to SpaceX in 2009 which is at issue in PVA's motion for summary judgment.  FRE 401, 402, 403

Becherer
Kannett &
Schweitzer

1255 Powell St.
Emeryville, CA
94608
510-658-3600

DEFENDANT PRECISION VALVE & AUTOMATION, INC.'S OBJECTIONS TO EVIDENCE IN SUPPORT MOTION FOR SUMMARY JUDGMENT

<u>Separate Statement Paragraph 91</u>:  Objection.  Argumentative, conclusory and no foundation.  Juarez falsely states that he is now certain he never had "access to the MSDS sheets."  (Juarez Dec., 2:12.)  At his deposition, he admitted that he could not remember the MSDS sheets "were or whether there [sic] weren't" there, and could not even remember asking for them.  "Q. Did you ever ask for the MSDS sheets at Space? Yes or no.  A. I don't remember."  (Catalona Dec., 289:13-16, 290:5-7.)  There is absolutely nothing to explain how he possibly could have been denied "access" to the MSDS sheets when he never asked for them.  "The district court could reasonably conclude that no juror would believe Yeager's weak explanation for his sudden ability to remember the answers to important questions about the critical issues of his lawsuit."  *Yeager v. Bowlin*, 693 F.3d 1076, 1981 (9th Cir. 2012.) *School Dist. No. 1J, Multnomah County v. ACandS, Inc.* 5 F.3d 1255, 1264 (9th Cir. 1993) (affirming summary judgment and holding that the "sham affidavit" rule "applie[d] to conflicts between affidavits and interrogatory responses as well as deposition testimony.")  Considering declarations which contradict prior discovery responses or testimony "would greatly diminish the utility of summary judgment as a procedure for screening our sham issues of fact."  *Yeager, supra,* at 1980.  *Kennedy v. Allied Mut. Ins. Co.*, 952 F.2d 262, 266 (9th Cir. 1991) ("The general rule in the Ninth Circuit is that a party cannot create an issue of fact by an affidavit contradicting his prior deposition testimony."); *Gonzales v. City of* Martinez, 638 F.Supp.2d 1147, 1150, fn. 3, 1151, fn. 5, 1154, fn. 7, 1157, fn. 8 (N.D. Cal. 2009) (granting summary judgment and striking numerous unexplained contradictions in plaintiff's declaration); *Rojas v. Roman Catholic Dioceses of Rochester*, 660 F.3d 98, 105 (2nd Cir. 2011) (holding plaintiff's "new allegations [in a declaration which were] directly contradicted by her prior sworn statements and judicial admissions, were properly rejected by the District Court after a careful consideration of the record before it.")

There is also no foundation that "chemical training" is necessary to "understand" MSDS sheets.  These documents stated, for example, "Emergency

**Becherer Kannett & Schweitzer**

1255 Powell St. Emeryville, CA 94608 510-658-3600

-32-

Overview: WARNING!  FLAMMABLE LIQUID AND VAPOR.  CAUSES RESPIRATORY TRACT, EYE AND SKIN IRRITATION.  MAY CAUSE ALLERGIC RESPIRATORY AND SKIN REACTION.  CONTAINTS MATERIAL THAT CAN CAUSE TARGET ORGAN DAMAGE.  POSSIBLE DEVELOPMENTAL HAZARD – CONTAINS MATERIAL WHICH MAY CAUSE ADVERSE DEVELOPMENTAL EFFECTS, BASED ON ANIMAL DATA. …  Do not breathe vapor or mist.  Do not get on skin or clothing.  Avoid contact with eyes.  Avoid exposure during pregnancy.  Use only with adequate ventilation.  Keep container tightly closed and sealed until ready for use.  Wash thoroughly after handling.  . . .  Contains material which may cause damage to the following organs: kidneys, the nervous system, liver, brain, central nervous system."  (Catalona Dec., 628, 637 (MSDS for Arathane 5750A).)

Plaintiff's claim that he was never "given" the MSDS sheets is immaterial and irrelevant.

Objection to the Manuel Gutierrez declaration which lacks foundation and contains speculation.  Plaintiffs are "not allowed to use" Mr. Gutierrez's testimony "to supply evidence on a motion" because he was not disclosed in their Rule 26 disclosures, in response to PVA's interrogatory or when asked to identify plaintiff's coworkers at his deposition and plaintiffs have not met their burden of establishing that this nondisclosure was substantially justified or harmless.  (F.R.C.P. 37(c)(1); Benjamin v. B&H Education, Inc., 877 F.3d 1139, 1150 (9th Cir. 2017); Medina v. Multaler, Inc., 547 F.Supp. 1099, 1106, fn. 8 (C.D. Cal. 2007).  Mr. Gutierrez only overlapped with Mr. Juarez during an unidentified portion of 2012 and cannot say what SpaceX was like during the majority of Juarez's job history.  FRE 401, 402, 403, 602.

Separate Statement Paragraph 92:  Objection to the Manuel Gutierrez declaration which lacks foundation and contains speculation.  Plaintiffs are "not allowed to use" Mr. Gutierrez's testimony "to supply evidence on a motion" because

Becherer
Kannett &
Schweitzer

1255 Powell St.
Emeryville, CA
94608
510-658-3600

DEFENDANT PRECISION VALVE & AUTOMATION, INC.'S OBJECTIONS TO EVIDENCE IN SUPPORT
MOTION FOR SUMMARY JUDGMENT

he was not disclosed in their Rule 26 disclosures, in response to PVA's interrogatory or when asked to identify plaintiff's coworkers at his deposition and plaintiffs have not met their burden of establishing that this nondisclosure was substantially justified or harmless.  (F.R.C.P. 37(c)(1); *Benjamin v. B&H Education, Inc*., 877 F.3d 1139, 1150 (9th Cir. 2017); *Medina v. Multaler, Inc.*, 547 F.Supp. 1099, 1106, fn. 8 (C.D. Cal. 2007).  Mr. Gutierrez only overlapped with Mr. Juarez during an unidentified portion of 2012 and cannot say what SpaceX was like during the majority of Juarez's job history.

Plaintiffs' counsel incorrectly uses the term "Standards of Practice documents" which was never used by SpaceX employees and did not use to refer to the Avionics SOPs.  (Gutierrez Dec., 2:9-10.)

There is nothing in his declaration which negates PVA's undisputed evidence that the MSDS sheets were kept on Juarez's computer that he used on a daily basis.  (UF 62; Maxwell Dec., 2:9.)  There is nothing which calls into question SpaceX's intranet site which contained all MSDS sheets, including for Arathane and Humiseal materials.  (Maxwell Dec., 2:2-4; 2:17-19; Hwang Dec., 1:20-24, 1:27-2:2, Phan Dec., 1:14-18, 2:1-5.)  FRE 401, 402, 403, 602.

Separate Statement Paragraph 94:  Objection.  Inadmissible hearsay.  FRE 802.

Separate Statement Paragraph 98:  Objection.  The document speaks for itself.  Counsel's insertion of the text "the chemical bath down the hall" is misleading, argumentative and irrelevant.   The document does not state "the chemical bath down the hall."  The actual contents of the document is undisputed.  The document states:  "5. Address and description of where injury happened … COMPANY PREMISES; DUE TO REPETITIVE AND CONTINUOUS EXPOSURE TO ELECTRONIC PARTS CLEANING AND LEAD SO.  6. Describe the injury and part of body affected. . . . HEADACHES, ANEURYSM."  (Catalona Dec., 357.)  FRE 401, 402, 403, 602.

Separate Statement Paragraph 99:  Irrelevant.  Mr. Juarez's subjective (or

Becherer
Kannett &
Schweitzer

1255 Powell St.
Emeryville, CA
94608
510-658-3600

DEFENDANT PRECISION VALVE & AUTOMATION, INC.'S OBJECTIONS TO EVIDENCE IN SUPPORT
MOTION FOR SUMMARY JUDGMENT

purported) ignorance of his claims is irrelevant so long as "sufficient facts" are known which would "put a *reasonable person* on inquiry notice."  C.C.P. § 340.8; *McCoy v. Gustafson*, 180 Cal.App.4th 56, 108 (2009); *Treatt USA v. Superior Court*, 2015 WL 5895495, *8 (Cal. Ct. App. 2015); *Mangini v. Aerojet-General Corporation* 230 Cal.App.3d 1125, 1150 (1991); *Simpson v. Robert Bosch Tool Corp.*, 2014 WL 985067, *4 (Cal. Ct. App. 2014).  FRE 401, 402, 403, 602.

<u>Separate Statement Paragraph 100</u>:  Irrelevant that plaintiffs' doctors never suggested he could have been exposed to chemicals would have been impossible because they were never informed that he was working with any chemicals.  (UF 81.)

Irrelevant that no one informed him that the PVA 350 was not working properly because he admitted at his deposition that SpaceX had "bypass[ed] the safety switch" which allowed the machine to run while the door was open "which is *hazardous*, but that's the way they work," and that SpaceX also failed to make essential safety "upgrades" to the machine which was "obsolete" because "it didn't have the alarm system to advise the operator that the suction system was not working or pulling all of the fumes out of it."  (UF 40, 42; Catalona Dec., 450:16-20, 473:2-6.)  He also testified that his complaints about safety "never went over" and admitted to his workers' compensation doctor that he complained to SpaceX "to no avail" that he was personally exposed to "chemicals coating such as Arathane and Humiseal."  (UF 39; Catalona Dec., 402, 410, 450:17-24 (emphasis added).)

Objection to plaintiffs' characterization of plaintiff's deposition testimony regarding the SOPs.  At his deposition, he testified that he had "no idea" what a "Standard Operating Procedure" or an "SOP" even was and could not remember receiving *any* written instructions from SpaceX.  (Catalona Dec., 282:17-25, 283:25-284:5.)  Now he claims not to have been "provided with a Standard Operating Procedure ("SOP") *for programmers*" which carefully dodges whether he received the particular SOP that is relevant to this case, for "Polymeric Application on Electronic Assemblies."  This SOP was attached to PVA's motion and was used by the entire

Becherer
Kannett &
Schweitzer

1255 Powell St.
Emeryville, CA
94608
510-658-3600

Avionics department.  (Juarez Dec., 6:10-11; Hwang Dec., 1:25-26.)  Although Mr. Juarez could not recall this document at his deposition, this "does not constitute affirmative evidence raising a triable issue *concerning [PVA's undisputed] evidence* that he did receive and understand" this document.  *Treatt USA v. Superior Court,* 2015 WL 5895495, *12 (Cal. Ct. App. 2015)

Irrelevant that he never looked at PVA's manual because he never asked to see it and there is no explanation why.  (UF 16; Pl. Sep. Stmt., 79:5-7.)

Objection to the Manuel Gutierrez declaration which lacks foundation and contains speculation.  Plaintiffs are "not allowed to use" Mr. Gutierrez's testimony "to supply evidence on a motion" because he was not disclosed in their Rule 26 disclosures, in response to PVA's interrogatory or when asked to identify plaintiff's coworkers at his deposition and plaintiffs have not met their burden of establishing that this nondisclosure was substantially justified or harmless.  (F.R.C.P. 37(c)(1); *Benjamin v. B&H Education, Inc.*, 877 F.3d 1139, 1150 (9th Cir. 2017); *Medina v. Multaler, Inc.*, 547 F.Supp. 1099, 1106, fn. 8 (C.D. Cal. 2007).  Mr. Gutierrez only overlapped with Mr. Juarez during an unidentified portion of 2012 and cannot say what SpaceX was like during the majority of Juarez's job history.

Plaintiffs' counsel incorrectly used the term "Standards of Practice documents" in Gutierrez's declaration.  This term was never used by SpaceX employees and did not use to refer to the Avionics SOPs.  (Gutierrez Dec., 2:9-10.)

There is nothing in his declaration which negates PVA's undisputed evidence that the MSDS sheets were kept on Juarez's computer that he used on a daily basis.  (UF 62; Maxwell Dec., 2:9.)  There is nothing which calls into question SpaceX's intranet site which contained all MSDS sheets, including for Arathane and Humiseal materials, and contained the most up-to-date version of the Avionics department SOPs.  (Maxwell Dec., 2:2-4; 2:17-19; Hwang Dec., 1:20-24, 1:27-2:2, Phan Dec., 1:14-18, 2:1-5.)  FRE 401, 402, 403, 602.

<u>Separate Statement Paragraph 102</u>:  Objection.  Juarez's recollection of his

Becherer
Kannett &
Schweitzer

1255 Powell St.
Emeryville, CA
94608
510-658-3600

conversation with Dr. Regev is inadmissible hearsay.  FRE 802.  The business record of Dr. Regev speaks for itself.  Dr. Regev did not state "chemical cleaning baths" which is language added by plaintiffs' attorney.  FRE 401, 402, 403, 602, 802.

Separate Statement Paragraph 103:  Irrelevant that no evidence to establish that no doctors "suspected his illness was related to chemical exposure."  This would be impossible because plaintiff's doctors were never informed that he was working with any chemicals.  (UF 81.)  FRE 401, 402.

Separate Statement Paragraph 104:  Objection.  Mr. Juarez's mischaracterization of this medical record is inadmissible hearsay.  At his deposition, he stated that he had never even heard of Dr. Regev:  "Q. This is a medical record from Isaac Regev, M.D. Do you remember who that guy is?  A. No, sir." (Catalona Dec., 337:22-24.)  In any event, the actual medical record speaks for itself.  The actual medical record states: "[t]he patient believes his headaches were related to toxic exposure [and] believed they were associated with chemicals used to clean electrical parts."  (UF 38, 50-51; Catalona Dec., 370.)  At his deposition, Juarez stated that these chemicals included Humiseal thinner which was also used inside the PVA 350. (UF 45, 52-53.)  FRE 401, 402, 403, 602, 802.

Separate Statement Paragraph 105:  Objection.  The document speaks for itself and does not state "the chemical baths down the hall."  The actual contents of the document are undisputed.  The actual medical record states: "[t]he patient believes his headaches were related to toxic exposure [and] believed they were associated with chemicals used to clean electrical parts."  (UF 38, 50-51; Catalona Dec., 370.)  At his deposition, Juarez stated that these chemicals included Humiseal thinner which was also used inside the PVA 350. (UF 45, 52-53.)  FRE 401, 402, 403, 602.

Separate Statement Paragraph 107:  Objection.  These out of court statements consist of inadmissible hearsay.  The statements also lack relevance and are without foundation because Mr. Juarez "did not remember who suggested this."  FRE 401, 402, 403, 602, 802.

Becherer
Kannett &
Schweitzer

1255 Powell St.
Emeryville, CA
94608
510-658-3600

DEFENDANT PRECISION VALVE & AUTOMATION, INC.'S OBJECTIONS TO EVIDENCE IN SUPPORT
MOTION FOR SUMMARY JUDGMENT

Separate Statement Paragraph 108: Objection.  The out of court conversation with a "Francisco" is inadmissible hearsay.  PVA does not object to the contents of the emails which speak for themselves and are undisputed.  FRE 401, 402, 403, 602, 802.

Separate Statement Paragraph 110: Objection.  Inadmissible hearsay.  PVA does not object to the contents of the actual medical record which speaks for itself and is undisputed, but to plaintiff's one-sided characterization of that conversation which is inadmissible hearsay.  This purported fact is also not relevant or material because plaintiffs do not allege that Mr. Juarez's purported "reactive airways disease and rhinitis" were caused by PVA's negligence or the PVA 350 in the complaint. (Catalona Dec., 62:11-15.)  FRE 401, 402, 403, 602, 802.

Separate Statement Paragraph 111:  Irrelevant that no one at SpaceX got sick with the exception of plaintiffs' alleged injuries.  This does not mean that Juarez did not think anyone had done anything wrong.  He admitted at his deposition that SpaceX had "bypass[ed] the safety switch" which allowed the machine to run while the door was open "which is *hazardous*, but that's the way they work," and that SpaceX also failed to make essential safety "upgrades" to the machine which was "obsolete" because "it didn't have the alarm system to advise the operator that the suction system was not working or pulling all of the fumes out of it."  (UF 40, 42; Catalona Dec., 450:16-20, 473:2-6.)  He also testified that his complaints about safety "never went over" and admitted to his workers' compensation doctor that he complained to SpaceX "to no avail" that he was personally exposed to "chemicals coating such as Arathane and Humiseal."  (UF 39; Catalona Dec., 402, 410, 450:17-24 (emphasis added).)  FRE 401, 402, 403.

Separate Statement Paragraph 112:  Irrelevant Mr. Juarez's subjective (or purported) ignorance of his claims is irrelevant so long as "sufficient facts" are known which would "put a *reasonable person* on inquiry notice."  C.C.P. § 340.8; *McCoy v. Gustafson*, 180 Cal.App.4th 56, 108 (2009); *Treatt USA v. Superior Court*, 2015 WL 5895495, *8 (Cal. Ct. App. 2015); *Mangini v. Aerojet-General Corporation* 230

Becherer
Kannett &
Schweitzer

1255 Powell St.
Emeryville, CA
94608
510-658-3600

DEFENDANT PRECISION VALVE & AUTOMATION, INC.'S OBJECTIONS TO EVIDENCE IN SUPPORT
MOTION FOR SUMMARY JUDGMENT

Cal.App.3d 1125, 1150 (1991); *Simpson v. Robert Bosch Tool Corp.*, 2014 WL 985067, *4 (Cal. Ct. App. 2014.)  FRE 401, 402, 403.

Separate Statement Paragraph 114: Objection.  There is no evidence cited to support plaintiff's supposed "realization."  The Ruben Juarez declaration does not mention any such realization or discuss his deposition or discovery from the workers' compensation action.  Plaintiffs' characterization of this testimony is argument and not permitted in plaintiffs' Separate Statement.  PVA does not object to the actual contents of plaintiff's deposition testimony.  FRE 401, 402, 403.

Separate Statement Paragraph 117: Irrelevant, argumentative and no foundation.  The "door bypass switch" did not shut off any safety features of the machine.  When it was sold, the PVA 350 was equipped with both door interlocks and air flow sensors.  (UF 12; Urquhart Dec., 2:23-3:6, 21, 86, 99, 130.)  PVA's 2009 sales records cited in Undisputed Fact 12 document a pre-sale "safety check" which confirmed that (1) "All interlocks tested and confirmed operational," and (2) "low level exhaust sensor tested and confirmed operational."  (Urquhart Dec., 21.)  Neither plaintiff nor Dr. Stevick have any idea how PVA configured its machine in 2009 and Stevick's testimony that the machine's "interlocks" and "air flow sensors" were not present proves that it had been altered after it was sold which is completely irrelevant to plaintiff's negligence and product liability claims against PVA.  (Stevick Dec., 6:1-7.)  Notably, Dr. Stevick has never examined or tested the machine at issue in this case, or any PVA 350 in any way.  (Stevick Dec., 3:15-17.)  In contrast, PVA's Director of Applications Engineering, Jonathan Urquhart, actually does have personal knowledge about what the machine was like in 2009 and there is no competent evidence which challenges that testimony.  FRE 401, 402, 403, 602.

Separate Statement Paragraph 118: Irrelevant.  Plaintiff testified that he knew the way he used the PVA 350 was hazardous.  FRE 401, 402.

Separate Statement Paragraph 120: Irrelevant and argumentative.  This would be impossible because plaintiff's doctors were never informed that he was working

Becherer
Kannett &
Schweitzer

1255 Powell St.
Emeryville, CA
94608
510-658-3600

1   with any chemicals.  (UF 81.)  FRE 401, 402, 403.

2       Separate Statement Paragraph 120:  Objection.  Irrelevant and immaterial.  This

3   would be impossible because plaintiff's doctors were never informed that he was

4   working with any chemicals.  (UF 81.)  FRE 401, 402.

5       Separate Statement Paragraph 124:  Objection.  Irrelevant and lack of

6   foundation.  The machine is referred to as a "work cell" in PVA's manual and the

7   conformal coating industry.  (UF 3.)  Plaintiff has no foundation to dispute this

8   terminology because he never read the manual, and the fact that he used different

9   terminology in the aerospace industry to refer to the machine is irrelevant.  FRE 401,

10  402, 602.

11      Separate Statement Paragraph 125:  Objection.  Irrelevant and lack of

12  foundation.  The machine is referred to as a "work cell" in PVA's manual and the

13  conformal coating industry.  (UF 3.)  Plaintiff has no foundation to dispute this

14  terminology because he never read the manual, and the fact that he used different

15  terminology in the aerospace industry to refer to the machine is irrelevant.  FRE 401,

16  402, 602.

17      Separate Statement Paragraph 129:  Objection.  Vague, ambiguous, irrelevant

18  and immaterial.  Plaintiff has no foundation to testify how the PVA 350 was equipped

19  in 2009.  For the purposes of this motion, it is undisputed that this feature was not

20  present in 2012 when plaintiff started working at SpaceX.  FRE 401, 402, 403, 602.

21      Separate Statement Paragraph 130:  Objection.  Vague, ambiguous, irrelevant

22  and immaterial.  It is irrelevant whether SpaceX "provided" the manual to Juarez or

23  that it was purportedly not on his computer.  Whether the PVA manual was stored on

24  plaintiff's computer is not important because SpaceX maintained all manufacturer

25  manuals and specifications for its purchased equipment, including the PVA 350, "at its

26  Hawthorne campus."  (UF 26; Hwang Dec., 1:15-17.)  To read PVA's manual, which

27  plaintiffs admit PVA did provide to SpaceX, all plaintiff had to do was ask but he

28  never asked to see it and there is no explanation why.  (UF 16; Pl. Sep. Stmt., 79:5-7.)

Becherer
Kannett &
Schweitzer

1255 Powell St.
Emeryville, CA
94608
510-658-3600

DEFENDANT PRECISION VALVE & AUTOMATION, INC.'S OBJECTIONS TO EVIDENCE IN SUPPORT
MOTION FOR SUMMARY JUDGMENT

Objection to the Mendoza and Gutierrez declaration which lack foundation and contain speculation.  Plaintiffs are "not allowed to use" either witness "to supply evidence on a motion" because they were not disclosed in plaintiffs' Rule 26 disclosures, in response to PVA's interrogatory or when asked to identify plaintiff's coworkers at his deposition and plaintiffs have not met their burden of establishing that this nondisclosure was substantially justified or harmless.  (F.R.C.P. 37(c)(1); Benjamin v. B&H Education, Inc., 877 F.3d 1139, 1150 (9th Cir. 2017); Medina v. Multaler, Inc., 547 F.Supp. 1099, 1106, fn. 8 (C.D. Cal. 2007).

Mr. Gutierrez only overlapped with Mr. Juarez during an unidentified portion of 2012 and cannot say what SpaceX was like during the majority of Juarez's job history.

Mr. Mendoza is unable to testify that he worked with Ruben Juarez at any time or ever saw him perform work.  Thus, he could not have spent any significant amount of time in the conformal coating room where Juarez worked for 60 percent of his 60-hour weeks at SpaceX.  Plaintiff Juarez was unable to recall working with either Gutierrez or Mendoza.  FRE 401, 402, 403, 602.

Separate Statement Paragraph 131: Objection.  Vague, ambiguous, irrelevant and immaterial.  It is irrelevant whether the manual was purportedly not on his computer Whether the PVA manual was stored on plaintiff's computer is not important because SpaceX maintained all manufacturer manuals and specifications for its purchased equipment, including the PVA 350, "at its Hawthorne campus."  (UF 26; Hwang Dec., 1:15-17.)  To read PVA's manual, which plaintiffs admit PVA did provide to SpaceX, all plaintiff had to do was ask but he never asked to see it and there is no explanation why.  (UF 16; Pl. Sep. Stmt., 79:5-7.)  FRE 401, 402, 403, 602.

Separate Statement Paragraph 132: Objection.  Vague, ambiguous, irrelevant and immaterial.  The "door bypass switch" did not shut off any safety features of the machine.  When it was sold, the PVA 350 was equipped with both door interlocks and air flow sensors.  (UF 12; Urquhart Dec., 2:23-3:6, 21, 86, 99, 130.)  PVA's 2009 sales records cited in Undisputed Fact 12 document a pre-sale "safety check" which

Becherer
Kannett &
Schweitzer

1255 Powell St.
Emeryville, CA
94608
510-658-3600

confirmed that (1) "All interlocks tested and confirmed operational," and (2) "low level exhaust sensor tested and confirmed operational." (Urquhart Dec., 21.) Neither plaintiff nor Dr. Stevick have any idea, much less foundation to testify, how PVA configured its machine in 2009 and Stevick's testimony that the machine's "interlocks" and "air flow sensors" were not present proves that it had been altered after it was sold which is completely irrelevant to plaintiff's negligence and product liability claims against PVA. (Stevick Dec., 6:1-7.) Notably, Dr. Stevick has never examined or tested the machine at issue in this case, or any PVA 350 in any way. (Stevick Dec., 3:15-17.)   In contrast, PVA's Director of Applications Engineering, Jonathan Urquhart, actually does have personal knowledge about what the machine was like in 2009 and there is no competent evidence which challenges that testimony.

Plaintiffs' allegations regarding PVA's training are not material to PVA's motion because they concern plaintiffs' general negligence claim which is not challenged in PVA's motion and they do not change the fact that Juarez indisputably did not read PVA's manual, which bars his failure to warn claims regardless of any "training" PVA allegedly provided plaintiff regarding a different machine (the PVA **650**) in 2011 before he worked for SpaceX, and two years after PVA sold the PVA 350 to SpaceX. FRE 401, 402, 403, 602.

Separate Statement Paragraph 133: Irrelevant and immaterial. The "door bypass switch" did not shut off any safety features of the machine. When it was sold, the PVA 350 was equipped with both door interlocks and air flow sensors. (UF 12; Urquhart Dec., 2:23-3:6, 21, 86, 99, 130.) PVA's 2009 sales records cited in Undisputed Fact 12 document a pre-sale "safety check" which confirmed that (1) "All interlocks tested and confirmed operational," and (2) "low level exhaust sensor tested and confirmed operational." (Urquhart Dec., 21.) Neither plaintiff nor Dr. Stevick have foundation or any idea how PVA configured its machine in 2009. Notably, Dr. Stevick has never examined or tested the machine at issue in this case, or any PVA 350 in any way. (Stevick Dec., 3:15-17.) FRE 401, 402, 403, 602.

Becherer
Kannett &
Schweitzer

1255 Powell St.
Emeryville, CA
94608
510-658-3600

DEFENDANT PRECISION VALVE & AUTOMATION, INC.'S OBJECTIONS TO EVIDENCE IN SUPPORT
MOTION FOR SUMMARY JUDGMENT

Separate Statement Paragraph 134: Objection. Contradicts prior deposition testimony that SpaceX had "bypass[ed] the safety switch" which allowed the machine to run while the door was open "which is *hazardous*, but that's the way they work," and that SpaceX also failed to make essential safety "upgrades" to the machine which was "obsolete" because "it didn't have the alarm system to advise the operator that the suction system was not working or pulling all of the fumes out of it." (UF 40, 42; Catalona Dec., 450:16-20, 473:2-6.) He also testified that these complaints "never went over" at SpaceX and admitted to his workers' compensation doctor that he told SpaceX he was personally exposed to "chemicals coating such as Arathane and Humiseal … *to no avail*." (UF 39; Catalona Dec., 402, 410, 450:17-24 (emphasis added).)

No reasonable jury could believe that plaintiff's prior identification of hazards regarding the machine was simply a mistake and the truth is that he never suspected SpaceX (or PVA) had done anything wrong. The fact that his admissions came after he filed his workers' compensation claim in 2014 and after his attorneys received the MSDS sheets in that proceeding is irrelevant because he admitted that he first believed the machine and its chemicals were "hazardous" in 2012-2014 when reported his concerns to SpaceX. *Yeager, supra,* at 1980. *Kennedy v. Allied Mut. Ins. Co.*, 952 F.2d 262, 266 (9th Cir. 1991) ("The general rule in the Ninth Circuit is that a party cannot create an issue of fact by an affidavit contradicting his prior deposition testimony."); *Gonzales v. City of* Martinez, 638 F.Supp.2d 1147, 1150, fn. 3, 1151, fn. 5, 1154, fn. 7, 1157, fn. 8 (N.D. Cal. 2009) (granting summary judgment and striking numerous unexplained contradictions in plaintiff's declaration); *Rojas v. Roman Catholic Dioceses of Rochester*, 660 F.3d 98, 105 (2nd Cir. 2011) (holding plaintiff's "new allegations [in a declaration which were] directly contradicted by her prior sworn statements and judicial admissions, were properly rejected by the District Court after a careful consideration of the record before it.") FRE 401, 402, 403, 602.

Separate Statement Paragraph 135: Misleading and argumentative. Whether

Becherer
Kannett &
Schweitzer

1255 Powell St.
Emeryville, CA
94608
510-658-3600

1   Mr. Juarez had formal or informal "chemical training" which is not explained, is

2   irrelevant because there is no factual dispute that he took SpaceX's Hazard

3   Communication Course which is not mentioned in his declaration.  (Pl. Sep. Stmt.,

4   293:27-298:13.)

5          Objection that he "did not know about the toxicity of the chemicals he was

6   working with" which is unambiguously contradicted by his deposition testimony that

7   SpaceX had "bypass[ed] the safety switch" which allowed the machine to run while

8   the door was open "which is hazardous, but that's the way they work," and that

9   SpaceX also failed to make essential safety "upgrades" to the machine which was

10  "obsolete" because "it didn't have the alarm system to advise the operator that the

11  suction system was not working or pulling all of the fumes out of it."  (UF 40, 42;

12  Catalona Dec., 450:16-20, 473:2-6.)  He also testified that his complaints "never went

13  over" at SpaceX and admitted to his workers' compensation doctor that he complained

14  about being exposed to "chemicals coating such as Arathane and Humiseal … to no

15  avail."  (UF 39; Catalona Dec., 402, 410, 450:17-24 (emphasis added).)  Again, no

16  reasonable jury could believe that his prior identification of hazards regarding the

17  machine was simply a mistake and the truth is that he never suspected SpaceX (or

18  PVA) had done anything wrong.  The fact that his admissions came after he filed his

19  workers' compensation claim in 2014 and after his attorneys received the MSDS

20  sheets in that proceeding is irrelevant because he admitted that he first believed the

21  machine and its chemicals were "hazardous" in 2012-2014 when reported his concerns

22  to SpaceX.  *Yeager, supra,* at 1980.  *Kennedy v. Allied Mut. Ins. Co.*, 952 F.2d 262,

23  266 (9th Cir. 1991) ("The general rule in the Ninth Circuit is that a party cannot create

24  an issue of fact by an affidavit contradicting his prior deposition testimony.");

25  *Gonzales v. City of* Martinez, 638 F.Supp.2d 1147, 1150, fn. 3, 1151, fn. 5, 1154, fn. 7,

26  1157, fn. 8 (N.D. Cal. 2009) (granting summary judgment and striking numerous

27  unexplained contradictions in plaintiff's declaration); *Rojas v. Roman Catholic*

28  *Dioceses of Rochester*, 660 F.3d 98, 105 (2nd Cir. 2011) (holding plaintiff's "new

Becherer
Kannett &
Schweitzer

1255 Powell St.
Emeryville, CA
94608
510-658-3600

-44-

allegations [in a declaration which were] directly contradicted by her prior sworn statements and judicial admissions, were properly rejected by the District Court after a careful consideration of the record before it.")  FRE 401, 402, 403, 602.

Separate Statement Paragraph 136:  Irrelevant and immaterial that he did not "know" that the machine was defective.  *Treatt USA v. Superior Court*, 2015 WL 5895495, *8 (Cal. Ct. App. 2015) (holding cause of action accrues "even if the plaintiff himself is subjectively oblivious.")  "Subjective suspicion is not required.  If a person becomes aware of facts which would make a reasonably prudent person suspicious, he or she has a duty to investigate further and is charged with knowledge of matters which would have been revealed by such an investigation."  *McCoy v. Gustafson*, 180 Cal.App.4th 56, 108 (2009);  *Norgart v. Upjohn Co.*, 21 Cal.4th 383, 397-398 (1999) ("[H]e need not know the 'specific 'facts' necessary to establish' the cause of action; rather, he may seek to learn such facts through the *'process contemplated by pretrial discovery.'*")  FRE 401, 402, 403, 602.

Separate Statement Paragraph 137:  Irrelevant that this is now Mr. Juarez's current "belief."  Objection that this belief is supported by any evidence or adequate foundation because he was not working at SpaceX at that time and his belief is evidently supported only by inadmissible hearsay from Mr. Mendoza.  Objection that plaintiff's unsupported "belief" is relevant or material to PVA's motion.

Objection to reference to "chemical containers" allegedly changing "in the end of 2011/2012" which is vague and ambiguous and immaterial to PVA's motion.

Objection to the Mendoza declaration which lacks foundation and contains speculation.  Plaintiffs are "not allowed to use" Mr. Mendoza "to supply evidence on a motion" because he was not disclosed in plaintiffs' Rule 26 disclosures, in response to PVA's interrogatory or when plaintiff was asked to identify plaintiff's coworkers at his deposition and plaintiffs have not met their burden of establishing that this nondisclosure was substantially justified or harmless.  (F.R.C.P. 37(c)(1); *Benjamin v. B&H Education, Inc.*, 877 F.3d 1139, 1150 (9th Cir. 2017); *Medina v. Multaler, Inc.*,

**Becherer Kannett & Schweitzer**

1255 Powell St.
Emeryville, CA
94608
510-658-3600

-45-

DEFENDANT PRECISION VALVE & AUTOMATION, INC.'S OBJECTIONS TO EVIDENCE IN SUPPORT
MOTION FOR SUMMARY JUDGMENT

547 F.Supp. 1099, 1106, fn. 8 (C.D. Cal. 2007).

Mr. Mendoza is unable to testify that he worked with Ruben Juarez at any time or ever saw him perform work.  Plaintiff Juarez also was unable to recall ever working with Mr. Mendoza at SpaceX at his deposition.  Thus, Mendoza could not have spent any significant amount of time in the conformal coating room where Juarez worked for 60 percent of his 60-hour weeks at SpaceX.  FRE 401, 402, 403, 602, 802.

Separate Statement Paragraph 138:  It is irrelevant and immaterial that SpaceX purportedly started using Humiseal in some capacity in 2010.  Plaintiffs are "not allowed to use" Mr. Mendoza "to supply evidence on a motion" pursuant to F.R.C.P. 37(c)(1).  *Benjamin v. B&H Education, Inc.*, 877 F.3d 1139, 1150 (9th Cir. 2017); *Medina v. Multaler, Inc.*, 547 F.Supp. 1099, 1106, fn. 8 (C.D. Cal. 2007).  FRE 401, 402.

Separate Statement Paragraph 139:  Objection.  There is no admissible evidence or foundation to establish that any "Humiseal" materials including Humiseal thinner were ever "replaced."  Plaintiff's statement that Arathane "was introduced by David Hwang to replace the original chemical, *which I later found out* was Humiseal" has no foundation and constitutes inadmissible hearsay.  FRE 401, 402, 403, 602, 802.

Separate Statement Paragraph 140:  Objection.  There is no admissible evidence or foundation to establish that there was any "transition" or that PVA was aware of any "transition" away from using "Humiseal" materials including Humiseal thinner.  Plaintiff's statement that Arathane "was introduced by David Hwang to replace the original chemical, *which I later found out* was Humiseal" has no foundation and constitutes inadmissible hearsay.  FRE 401, 402, 403, 602, 802.

Separate Statement Paragraph 141:  Irrelevant that PVA later learned SpaceX was using certain chemicals.  Strict liability is prohibited even when it is "foreseeable that the products will be used together," unless such use is actually necessary.  *O'Neil v. Crane Co.*, 53 Cal.4th 335, 361 (2012).  Plaintiffs do not address this authority.  FRE 401, 402.

Becherer
Kannett &
Schweitzer

1255 Powell St.
Emeryville, CA
94608
510-658-3600

-46-

Separate Statement Paragraph 142: Irrelevant. This evidence is relevant to plaintiffs' general negligence claims which are not addressed in PVA's motion. Under California law, strict liability is prohibited even when it is "foreseeable that the products will be used together," unless such use is actually "necessary." *O'Neil v. Crane Co.*, 53 Cal.4th 335, 361 (2012). Plaintiffs do not address this authority. FRE 401, 402.

Separate Statement Paragraph 144: Whether plaintiff has no chemistry training is irrelevant and immaterial. Objection to the conclusion that this means he "was not allowed to mix chemical compounds." There is no evidence that mixing chemical compounds required chemistry training. His statements are also contradicted by his sworn deposition testimony that he mixed separate chemicals to create different compounds as part of his job, including Arathane and Humiseal materials. (Juarez Depo., March 30, 2015, Catalona Dec., 448:22-449:4, 458:14-459:8; Juarez Depo., March 8, 2018, Catalona Dec., 268:1-3, 268:15-17, 269:8-18.) No reasonable jury could believe plaintiff's explanation for this contradiction which is that his prior testimony only meant that he mixed a "single container" of chemicals. (Juarez Dec., 5:26.) This does not make sense because he testified at his deposition that he mixed the Humiseal conformal coating material with the Humiseal thinner that "we talked about before," and also that he had to mix Arathane Part A with Arathane part B which were "separate chemicals" that "would start to cure rather quickly" when mixed. (Catalona Dec., 269:10-15, 459:5-8.)

Objection to the Mendoza and Gutierrez declaration which lack foundation and contain speculation. Plaintiffs are "not allowed to use" either witness "to supply evidence on a motion" because they were not disclosed in plaintiffs' Rule 26 disclosures, in response to PVA's interrogatory or when asked to identify plaintiff's coworkers at his deposition and plaintiffs have not met their burden of establishing that this nondisclosure was substantially justified or harmless. (F.R.C.P. 37(c)(1); *Benjamin v. B&H Education, Inc.*, 877 F.3d 1139, 1150 (9th Cir. 2017); *Medina v.*

Becherer
Kannett &
Schweitzer

1255 Powell St.
Emeryville, CA
94608
510-658-3600

DEFENDANT PRECISION VALVE & AUTOMATION, INC.'S OBJECTIONS TO EVIDENCE IN SUPPORT
MOTION FOR SUMMARY JUDGMENT

*Multaler, Inc.*, 547 F.Supp. 1099, 1106, fn. 8 (C.D. Cal. 2007).

Mr. Gutierrez only overlapped with Mr. Juarez during an unidentified portion of 2012 and cannot say what SpaceX was like during the majority of Juarez's job history.

Mr. Mendoza is unable to testify that he worked with Ruben Juarez at any time or ever saw him perform work. Thus, he could not have spent any significant amount of time in the conformal coating room where Juarez worked for 60 percent of his 60-hour weeks at SpaceX. Plaintiff Juarez was unable to recall working with either Gutierrez or Mendoza.

Also irrelevant is the fact that these witnesses "never saw Ruben Juarez mix chemicals." Mendoza and Gutierrez have no foundation to testify about plaintiff's "hand mixing" of chemicals because they were not part of the team that designed SpaceX's conformal coating formula in 2012. (UF 19-20; Maxwell Dec., 2:21-23.) FRE 401, 402, 403, 602.

Separate Statement Paragraph 145: Objection. This statement is contradicted by plaintiff's sworn deposition testimony that he mixed separate chemicals to create different compounds as part of his job, including Arathane and Humiseal materials. (Juarez Depo., March 30, 2015, Catalona Dec., 448:22-449:4, 458:14-459:8; Juarez Depo., March 8, 2018, Catalona Dec., 268:1-3, 268:15-17, 269:8-18. No reasonable jury could believe plaintiff's explanation for this contradiction which is that his prior testimony only meant that he mixed a "single container" of chemicals. (Juarez Dec., 5:26.) This does not make sense because he testified at his deposition that he mixed the Humiseal conformal coating material with the Humiseal thinner that "we talked about before," and also that he had to mix Arathane Part A with Arathane part B which were "separate chemicals" that "would start to cure rather quickly" when mixed. (Catalona Dec., 269:10-15, 459:5-8.)

Objection to the Mendoza and Gutierrez declaration which lack foundation and contain speculation. Plaintiffs are "not allowed to use" either witness "to supply evidence on a motion" because they were not disclosed in plaintiffs' Rule 26

Becherer
Kannett &
Schweitzer

1255 Powell St.
Emeryville, CA
94608
510-658-3600

DEFENDANT PRECISION VALVE & AUTOMATION, INC.'S OBJECTIONS TO EVIDENCE IN SUPPORT
MOTION FOR SUMMARY JUDGMENT

1    disclosures, in response to PVA's interrogatory or when asked to identify plaintiff's

2    coworkers at his deposition and plaintiffs have not met their burden of establishing that

3    this nondisclosure was substantially justified or harmless.  (F.R.C.P. 37(c)(1);

4    *Benjamin v. B&H Education, Inc.*, 877 F.3d 1139, 1150 (9th Cir. 2017); *Medina v.*

5    *Multaler, Inc.*, 547 F.Supp. 1099, 1106, fn. 8 (C.D. Cal. 2007).

6        Juarez could not remember either witness as a coworker at SpaceX.  Mr.

7    Gutierrez only overlapped with Mr. Juarez during an unidentified portion of 2012 and

8    cannot say what SpaceX was like during the majority of Juarez's job history.

9        Mr. Mendoza is unable to testify that he worked with Ruben Juarez at any time

10   or ever saw him perform work.  Thus, he could not have spent any significant amount

11   of time in the conformal coating room where Juarez worked for 60 percent of his 60-

12   hour weeks at SpaceX.

13       Also irrelevant is the fact that these witnesses "never saw Ruben Juarez mix

14   chemicals."  Mendoza and Gutierrez have no foundation to testify about plaintiff's

15   "hand mixing" of chemicals because they were not part of the team that designed

16   SpaceX's conformal coating formula in 2012.  (UF 19-20; Maxwell Dec., 2:21-23.)

17   FRE 401, 402, 403, 602.

18       <u>Separate Statement Paragraph 146</u>:  Plaintiffs are "not allowed to use" witness

19   Gutierrez "to supply evidence on a motion" because he was not disclosed in plaintiffs'

20   Rule 26 disclosures, in response to PVA's interrogatory or when asked to identify

21   plaintiff's coworkers at his deposition and plaintiffs have not met their burden of

22   establishing that this nondisclosure was substantially justified or harmless.  (F.R.C.P.

23   37(c)(1); *Benjamin v. B&H Education, Inc.*, 877 F.3d 1139, 1150 (9th Cir. 2017);

24   *Medina v. Multaler, Inc.*, 547 F.Supp. 1099, 1106, fn. 8 (C.D. Cal. 2007).  FRE 401,

25   402, 403, 602.

26       <u>Separate Statement Paragraph 147</u>:  Plaintiffs are "not allowed to use" witness

27   Gutierrez "to supply evidence on a motion" because he was not disclosed in plaintiffs'

28   Rule 26 disclosures, in response to PVA's interrogatory or when asked to identify

**Becherer
Kannett &
Schweitzer**

1255 Powell St.
Emeryville, CA
94608
510-658-3600

DEFENDANT PRECISION VALVE & AUTOMATION, INC.'S OBJECTIONS TO EVIDENCE IN SUPPORT
MOTION FOR SUMMARY JUDGMENT

plaintiff's coworkers at his deposition and plaintiffs have not met their burden of establishing that this nondisclosure was substantially justified or harmless.  (F.R.C.P. 37(c)(1); *Benjamin v. B&H Education, Inc.*, 877 F.3d 1139, 1150 (9th Cir. 2017); *Medina v. Multaler, Inc.*, 547 F.Supp. 1099, 1106, fn. 8 (C.D. Cal. 2007).  FRE 401, 402, 403, 602.

Separate Statement Paragraph 148:  Objection that there is admissible, relevant evidence which can establish that Arathane was a "substitute" for any "Humiseal" materials including Humiseal thinner.  This suggestion has no foundation and is based on inadmissible hearsay that Juarez "found out" without explanation.  FRE 401, 402, 403, 602.

Separate Statement Paragraph 149:  Irrelevant that Juarez is "not the process engineer or materials engineer" or that they would also have mixed chemicals which is immaterial.  There is no evidence in the record that these individuals were the *only* individuals authorized to, or capable of, mixing chemicals.

Objection to the Mendoza declaration which lacks foundation and contain speculation.  Plaintiffs are "not allowed to use" Mr. Mendoza "to supply evidence on a motion" because he was not disclosed in plaintiffs' Rule 26 disclosures, in response to PVA's interrogatory or when plaintiff was asked to identify plaintiff's coworkers at his deposition and plaintiffs have not met their burden of establishing that this nondisclosure was substantially justified or harmless.  (F.R.C.P. 37(c)(1); *Benjamin v. B&H Education, Inc.*, 877 F.3d 1139, 1150 (9th Cir. 2017); *Medina v. Multaler, Inc.*, 547 F.Supp. 1099, 1106, fn. 8 (C.D. Cal. 2007).  Mr. Mendoza is unable to testify that he worked with Ruben Juarez at any time or ever saw him perform work.  Plaintiff Juarez also was unable to recall ever working with Mr. Mendoza at SpaceX at his deposition.  Thus, Mendoza could not have spent any significant amount of time in the conformal coating room where Juarez worked for 60 percent of his 60-hour weeks at SpaceX.    FRE 401, 402, 403, 602.

Separate Statement Paragraph 150: Irrelevant that plaintiff "installed the

Becherer
Kannett &
Schweitzer

1255 Powell St.
Emeryville, CA
94608
510-658-3600

separate dispensing canisters and materials lines."  Objection to the suggestion that he "did not mix any chemical compounds" which is unambiguously contradicted by his sworn deposition testimony that he mixed separate chemicals to create different compounds as part of his job, including Arathane and Humiseal materials.  (Juarez Depo., March 30, 2015, Catalona Dec., 448:22-449:4, 458:14-459:8; Juarez Depo., March 8, 2018, Catalona Dec., 268:1-3, 268:15-17, 269:8-18.  No reasonable jury could believe plaintiff's explanation for this contradiction which is that his prior testimony only meant that he mixed a "single container" of chemicals.  (Juarez Dec., 5:26.)  This does not make sense because he testified at his deposition that he mixed the Humiseal conformal coating material with the Humiseal thinner that "we talked about before," and also that he had to mix Arathane Part A with Arathane part B which were "separate chemicals" that "would start to cure rather quickly" when mixed. (Catalona Dec., 269:10-15, 459:5-8.)

Objection to the Manuel Gutierrez declaration which lacks foundation and contains speculation.  Plaintiffs are "not allowed to use" Mr. Gutierrez's testimony "to supply evidence on a motion" because he was not disclosed in their Rule 26 disclosures, in response to PVA's interrogatory or when asked to identify plaintiff's coworkers at his deposition and plaintiffs have not met their burden of establishing that this nondisclosure was substantially justified or harmless.  (F.R.C.P. 37(c)(1); *Benjamin v. B&H Education, Inc.*, 877 F.3d 1139, 1150 (9th Cir. 2017); *Medina v. Multaler, Inc.*, 547 F.Supp. 1099, 1106, fn. 8 (C.D. Cal. 2007).  Mr. Gutierrez only overlapped with Mr. Juarez during an unidentified portion of 2012 and cannot say what SpaceX was like during the majority of Juarez's job history.

Also irrelevant is the fact that these witnesses "never saw Ruben Juarez mix chemicals."  Mendoza and Gutierrez have no foundation to testify about plaintiff's "hand mixing" of chemicals because they were not part of the team that designed SpaceX's conformal coating formula in 2012.  (UF 19-20; Maxwell Dec., 2:21-23.) FRE 401, 402, 403, 602.

Becherer
Kannett &
Schweitzer

1255 Powell St.
Emeryville, CA
94608
510-658-3600

DEFENDANT PRECISION VALVE & AUTOMATION, INC.'S OBJECTIONS TO EVIDENCE IN SUPPORT MOTION FOR SUMMARY JUDGMENT

<u>Separate Statement Paragraph 151</u>: Objection.  Irrelevant and misleading.
Irrelevant that he was not provided with an SOP specifically "for programmers" for
"any assembly area" because SpaceX did not have any such SOPs.  This evidence does
not alter the fact that he did receive the SOP that is relevant to this case, for
"Polymeric Application on Electronic Assemblies."  This SOP which PVA submitted
with its motion for summary judgment was used by the entire Avionics department and
contained SpaceX's instructions for operating PVA's machine.  (Juarez Dec., 6:10-11;
Hwang Dec., 1:25-26.)  When asked directly about this particular SOP at his
deposition, plaintiff testified that he had "no idea" what a "Standard Operating
Procedure" or "SOP" even was, and could not remember ever receiving any written
instructions from SpaceX.  (Catalona Dec., 282:17-25, 283:25-284:5.)  Critically,
plaintiffs have put forward no evidence that negates the relevant SOP that required
Juarez to program the PVA 350 according to "the operating instructions in the PVA
manual."  (UF 25; Hwang Dec., 11.)

Objection to the Mendoza and Gutierrez declarations which lack foundation and
contain speculation.  Plaintiffs are "not allowed to use" either witness "to supply
evidence on a motion" because they were not disclosed in plaintiffs' Rule 26
disclosures, in response to PVA's interrogatory or when asked to identify plaintiff's
coworkers at his deposition and plaintiffs have not met their burden of establishing that
this nondisclosure was substantially justified or harmless.  (F.R.C.P. 37(c)(1);
*Benjamin v. B&H Education, Inc.*, 877 F.3d 1139, 1150 (9th Cir. 2017); *Medina v.
Multaler, Inc.*, 547 F.Supp. 1099, 1106, fn. 8 (C.D. Cal. 2007).  Mr. Gutierrez only
overlapped with Mr. Juarez during an unidentified portion of 2012 and cannot say
what SpaceX was like during the majority of Juarez's job history.  Mr. Mendoza is
unable to testify that he worked with Ruben Juarez at any time or ever saw him
perform work.  Thus, he could not have spent any significant amount of time in the
conformal coating room where Juarez worked for 60 percent of his 60-hour weeks at
SpaceX.  Plaintiff Juarez was unable to recall working with either Gutierrez or

Becherer
Kannett &
Schweitzer

1255 Powell St.
Emeryville, CA
94608
510-658-3600

DEFENDANT PRECISION VALVE & AUTOMATION, INC.'S OBJECTIONS TO EVIDENCE IN SUPPORT
MOTION FOR SUMMARY JUDGMENT

Mendoza.

Plaintiffs' counsel incorrectly used the term "Standards of Practice documents" in Gutierrez's declaration.  This term was never used by SpaceX employees and did not use to refer to the Avionics SOPs.  (Gutierrez Dec., 2:9-10.)

There is nothing in either declaration which negates PVA's undisputed evidence that the most up-to-date version of the Avionics department SOPs were kept on Juarez's computer that he used on a daily basis.  (UF 62; Maxwell Dec., 2:2-4; 2:17-19.)  FRE 401, 402, 403, 602.

Separate Statement Paragraph 155:  Irrelevant that the PVA 350 did not contain a conveyor belt.  Regarding the other features listed, there is nothing which indicates that any such features were necessary for safety and are therefore irrelevant.  Dr. Stevick also has no foundation to state how the PVA 350 was configured when it was sold to SpaceX in 2009.  To the extent that any purported features mentioned were "safety features" and were altered or removed after it was sold is irrelevant to plaintiff's negligence and product liability claims against PVA.  Notably, Dr. Stevick has never examined or tested the machine at issue in this case, or any PVA 350 in any way.  (Stevick Dec., 3:15-17.)    PVA's Director of Applications Engineering, Jonathan Urquhart, actually does have personal knowledge about what the machine was like in 2009 and there is no competent evidence which challenges that testimony.  FRE 401, 402, 403, 602.

Separate Statement Paragraph 157:  Inadmissible hearsay. Also irrelevant to the issues in PVA's motion which do not concern plaintiffs' general negligence claims.  FRE 401, 402, 802.

Separate Statement Paragraph 158:  Irrelevant because plaintiff never read PVA's manual and there is therefore "no conceivable causal connection between the representations or omissions that accompanied the product and plaintiff's injury."  *Ramirez v. Plough, Inc.*, 6 Cal.4th 539, 556 (1993).  Moreover, there is no evidence that facemasks and ventilators were required when the machine was sold: "*Unless it has*

Becherer
Kannett &
Schweitzer

1255 Powell St.
Emeryville, CA
94608
510-658-3600

DEFENDANT PRECISION VALVE & AUTOMATION, INC.'S OBJECTIONS TO EVIDENCE IN SUPPORT
MOTION FOR SUMMARY JUDGMENT

*been physically altered*, the machine is programmed to stop and will stop when the door is opened or ventilation is shut off, no matter what mode it is in."  (Urquhart Dec., 3:7-10.)  FRE 401, 402, 403, 602.

Separate Statement Paragraph 159:  Irrelevant because plaintiff never read PVA's manual and there is therefore "no conceivable causal connection between the representations or omissions that accompanied the product and plaintiff's injury." *Ramirez v. Plough, Inc.*, 6 Cal.4th 539, 556 (1993).  Moreover, there is no evidence that facemasks and ventilators were required when the machine was sold:  "*Unless it has been physically altered*, the machine is programmed to stop and will stop when the door is opened or ventilation is shut off, no matter what mode it is in."  (Urquhart Dec., 3:7-10.)  FRE 401, 402, 403, 602.

Separate Statement Paragraph 162:  Argumentative, conclusory and no foundation.  FRE 401, 402, 403, 602.

Separate Statement Paragraph 164:  Objection.  Argumentative, conclusory and no foundation.  Dr. Stevick's opinions about California substantive law are irrelevant and inadmissible.  (Stevick Dec., 5:5-10.)  *Pine Creek Group v. Newmont Mining Corp.*, 352 F.Supp.2d 1037, 1046 (D. Ariz. 2005) (expert from providing testimony regarding "the law that governs this case.")  Under California law, misuse must be "reasonably foreseeable," and removing safety devices from a machine including door interlocks and air sensors is not.  *Cronin v. J.B.E. Olson Corp.* 8 Cal.3d 121, 126 (1972).

Separate Statement Paragraph 165:  Argumentative, conclusory and no foundation.  FRE 401, 402, 403, 602.

Separate Statement Paragraph 166:  Argumentative, conclusory and no foundation.  FRE 401, 402, 403, 602.

Separate Statement Paragraph 167:  Objection.  Argumentative, conclusory and no foundation.  Not relevant to PVA's statute of limitations defense or plaintiffs' strict product liability cause of action or failure to warn claims.  FRE 401, 402, 403, 602.

Becherer
Kannett &
Schweitzer

1255 Powell St.
Emeryville, CA
94608
510-658-3600

DEFENDANT PRECISION VALVE & AUTOMATION, INC.'S OBJECTIONS TO EVIDENCE IN SUPPORT MOTION FOR SUMMARY JUDGMENT

1        <u>Separate Statement Paragraph 168</u>:  Objection.  Argumentative, conclusory and

2    no foundation.  When it was sold, the PVA 350 was equipped with both door

3    interlocks and air flow sensors.  (UF 12; Urquhart Dec., 2:23-3:6, 21, 86, 99, 130.)

4    PVA's 2009 sales records cited in Undisputed Fact 12 document a pre-sale "safety

5    check" which confirmed that (1) "All interlocks tested and confirmed operational," and

6    (2) "low level exhaust sensor tested and confirmed operational."  (Urquhart Dec., 21.)

7    Neither plaintiff nor Dr. Stevick have any idea how PVA configured its machine in

8    2009 and Stevick's testimony that the machine's "interlocks" and "air flow sensors"

9    were not present proves that it had been altered after it was sold which is completely

10    irrelevant to plaintiff's negligence and product liability claims against PVA.  (Stevick

11    Dec., 6:1-7.)  Notably, Dr. Stevick has never examined or tested the machine at issue

12    in this case, or any PVA 350 in any way.  (Stevick Dec., 3:15-17.)    In contrast, PVA's

13    Director of Applications Engineering, Jonathan Urquhart, actually does have personal

14    knowledge about what the machine was like in 2009 and there is no competent

15    evidence which challenges that testimony.

16        Dr. Stevick's opinions are also irrelevant because plaintiffs do not make these

17    product defect claims in the complaint.  Their sole claim in the complaint, which was

18    the basis for PVA's motion for summary judgment, was that the PVA 350 lacked a

19    warning that the machine was "designed to continue to spray chemicals even when the

20    ventilation/exhaust is not in operation." (Catalona Dec., 58:22-25.)  "On information

21    and belief, to add the automatic shutoff, PVA only needs to include an airflow sensor

22    or something similar."  (Catalona Dec., 58:26-27.)

23        Plaintiffs have never alleged other safety features could have avoided plaintiffs'

24    injuries.  If they had, PVA would have addressed them in its motion for summary

25    judgment.  For example, Dr. Stevick states without basis that the PVA 350 did not

26    have a camera.  When it was sold, the machine did have a camera had a "slim

27    programming camera with crosshair generator."  (Urquhart Dec., 12, 16.)  Plaintiffs'

28    new allegations which vary from the complaint are irrelevant and may not defeat

Becherer
Kannett &
Schweitzer

1255 Powell St.
Emeryville, CA
94608
510-658-3600

DEFENDANT PRECISION VALVE & AUTOMATION, INC.'S OBJECTIONS TO EVIDENCE IN SUPPORT
MOTION FOR SUMMARY JUDGMENT

summary judgment.  *Navajo Nation v. U.S. Forest Serv.*, 535 F.3d 1058, 1080 (9th Cir. 2008) (prohibiting oppositions to summary judgment motions based on factual theories not alleged in the complaint.)  FRE 401, 402, 403, 602.

Separate Statement Paragraph 169:  Objection.  Argumentative, conclusory and no foundation.  The manual states that toxic materials could be used with the machine and that users should consult the MSDS sheets for those materials.  The machine also ensured that it had adequate ventilation and could not be used without breathing protection when it was sold.  Dr. Stevick has no foundation to testify regarding how the machine was configured when it was sold in 2009.  His opinions are based on Mr. Juarez's testimony who first used the machine in 2012.  Notably, Dr. Stevick has never examined or tested the machine at issue in this case, or any PVA 350 in any way. (Stevick Dec., 3:15-17.)

The adequacy of PVA's warnings are immaterial and irrelevant because plaintiff never read PVA's manual and there is therefore "no conceivable causal connection between the representations or omissions that accompanied the product and plaintiff's injury."  *Ramirez v. Plough, Inc.*, 6 Cal.4th 539, 556 (1993).  Moreover, there is no evidence that facemasks and ventilators were required when the machine was sold: "Unless it has been physically altered, the machine is programmed to stop and will stop when the door is opened or ventilation is shut off, no matter what mode it is in." (Urquhart Dec., 3:7-10.)  FRE 401, 402, 403, 602.

Separate Statement Paragraph 170:  Objection.  Argumentative, conclusory and no foundation.  There is no evidence that the machine could "leak toxic chemicals or exposure could occur while using the PVA 350" when the safety features were in place.

The adequacy of PVA's warnings are immaterial because plaintiff never read PVA's manual and there is therefore "no conceivable causal connection between the representations or omissions that accompanied the product and plaintiff's injury." *Ramirez v. Plough, Inc.*, 6 Cal.4th 539, 556 (1993).  Moreover, there is no evidence that

Becherer
Kannett &
Schweitzer

1255 Powell St.
Emeryville, CA
94608
510-658-3600

facemasks and ventilators were required when the machine was sold: "*Unless it has been physically altered*, the machine is programmed to stop and will stop when the door is opened or ventilation is shut off, no matter what mode it is in." (Urquhart Dec., 3:7-10.) FRE 401, 402, 403, 602.

Separate Statement Paragraph 171: Objection. Argumentative, conclusory and no foundation. There is no evidence that breathing protection would have been necessary when the safety features were in place.

The adequacy of PVA's warnings are immaterial because plaintiff never read PVA's manual and there is therefore "no conceivable causal connection between the representations or omissions that accompanied the product and plaintiff's injury." *Ramirez v. Plough, Inc.*, 6 Cal.4th 539, 556 (1993). Moreover, there is no evidence that facemasks and ventilators were required when the machine was sold: "*Unless it has been physically altered*, the machine is programmed to stop and will stop when the door is opened or ventilation is shut off, no matter what mode it is in." (Urquhart Dec., 3:7-10.) FRE 401, 402, 403, 602.

Separate Statement Paragraph 172: Objection. Argumentative, conclusory and no foundation. Dr. Stevick's opinions about California substantive law are irrelevant and inadmissible. (Stevick Dec., 5:5-10.) *Pine Creek Group v. Newmont Mining Corp.*, 352 F.Supp.2d 1037, 1046 (D. Ariz. 2005) (expert from providing testimony regarding "the law that governs this case.") FRE 401, 402, 403, 602.

Separate Statement Paragraph 173: Objection. Argumentative, conclusory and no foundation. Dr. Stevick's opinions about California substantive law are irrelevant and inadmissible. (Stevick Dec., 5:5-10.) *Pine Creek Group v. Newmont Mining Corp.*, 352 F.Supp.2d 1037, 1046 (D. Ariz. 2005) (expert from providing testimony regarding "the law that governs this case.") FRE 401, 402, 403, 602.

Separate Statement Paragraph 174: Objection. Argumentative, conclusory and no foundation. Dr. Stevick's opinions about California substantive law are irrelevant and inadmissible. (Stevick Dec., 5:5-10.) *Pine Creek Group v. Newmont Mining*

Becherer
Kannett &
Schweitzer

1255 Powell St.
Emeryville, CA
94608
510-658-3600

DEFENDANT PRECISION VALVE & AUTOMATION, INC.'S OBJECTIONS TO EVIDENCE IN SUPPORT MOTION FOR SUMMARY JUDGMENT

*Corp.*, 352 F.Supp.2d 1037, 1046 (D. Ariz. 2005) (expert from providing testimony regarding "the law that governs this case.")  FRE 401, 402, 403, 602.

Separate Statement Paragraph 175: Objection.  Argumentative, conclusory and no foundation.  Dr. Stevick's opinions about California substantive law are irrelevant and inadmissible.  (Stevick Dec., 5:5-10.)  *Pine Creek Group v. Newmont Mining Corp.*, 352 F.Supp.2d 1037, 1046 (D. Ariz. 2005) (expert from providing testimony regarding "the law that governs this case.")  FRE 401, 402, 403, 602.

Separate Statement Paragraph 176: Objection.  Argumentative, conclusory and no foundation.  Dr. Stevick's opinions about California substantive law are irrelevant and inadmissible.  (Stevick Dec., 5:5-10.)  *Pine Creek Group v. Newmont Mining Corp.*, 352 F.Supp.2d 1037, 1046 (D. Ariz. 2005) (expert from providing testimony regarding "the law that governs this case.")  The fact that warnings in PVA's manual were not physically "on the product" is irrelevant.  *Temple v. Velcro USA, Inc.*, 148 Cal.App.3d 1090, 1094-1095 (1983).  FRE 401, 402, 403, 602.

Separate Statement Paragraph 177: Objection.  Argumentative, conclusory and no foundation.  Dr. Stevick's opinions about California substantive law are irrelevant and inadmissible.  (Stevick Dec., 5:5-10.)  *Pine Creek Group v. Newmont Mining Corp.*, 352 F.Supp.2d 1037, 1046 (D. Ariz. 2005) (expert from providing testimony regarding "the law that governs this case.")  The adequacy of PVA's warnings are immaterial because plaintiff never read PVA's manual and there is therefore "no conceivable causal connection between the representations or omissions that accompanied the product and plaintiff's injury."  *Ramirez v. Plough, Inc.*, 6 Cal.4th 539, 556 (1993). FRE 401, 402, 403, 602.

Separate Statement Paragraph 178: Objection.  Argumentative, conclusory and no foundation. Also immaterial to the issues in PVA's motion which do not concern plaintiffs' general negligence claims.  FRE 401, 402, 403, 602.

Separate Statement Paragraph 179: Objection.  Argumentative, conclusory and no foundation.  Dr. Stevick's opinions about California substantive law are irrelevant

Becherer
Kannett &
Schweitzer

1255 Powell St.
Emeryville, CA
94608
510-658-3600

1  and inadmissible.  (Stevick Dec., 5:5-10.)  *Pine Creek Group v. Newmont Mining*

2  *Corp.*, 352 F.Supp.2d 1037, 1046 (D. Ariz. 2005) (expert from providing testimony

3  regarding "the law that governs this case.")  FRE 401, 402, 403, 602.

4          Separate Statement Paragraph 180:  Objection.  Argumentative, conclusory and

5  no foundation.  Also immaterial what was "foreseeable" to PVA which concerns

6  plaintiffs' general negligence claims which are not addressed in PVA's motion.  Under

7  California law, strict liability is prohibited even when it is "foreseeable that the

8  products will be used together," unless such use is actually "necessary."  *O'Neil v.*

9  *Crane Co.*, 53 Cal.4th 335, 361 (2012).  Plaintiffs do not address this authority.  FRE

10  401, 402, 403, 602.

11          Separate Statement Paragraph 181:  Objection.  Argumentative, conclusory and

12  no foundation.  Dr. Stevick's opinions about California substantive law are irrelevant

13  and inadmissible. (Stevick Dec., 5:5-10.)  *Pine Creek Group v. Newmont Mining*

14  *Corp.*, 352 F.Supp.2d 1037, 1046 (D. Ariz. 2005) (expert from providing testimony

15  regarding "the law that governs this case.")  The fact that warnings in PVA's manual

16  were not physically "on the product" is irrelevant.  *Temple v. Velcro USA, Inc.*, 148

17  Cal.App.3d 1090, 1094-1095 (1983).  FRE 401, 402, 403, 602.

18          Separate Statement Paragraph 182:  Objection.  Argumentative and conclusory.

19  FRE 401, 402, 403.

20          Separate Statement Paragraph 183:  Objection.  Argumentative, conclusory and

21  no foundation.  Also immaterial whether PVA was "aware" which concerns plaintiffs'

22  general negligence claims which are not addressed in PVA's motion.  Under California

23  law, strict liability is prohibited even when it is "foreseeable that the products will be

24  used together," unless such use is actually "necessary."  *O'Neil v. Crane Co.*, 53

25  Cal.4th 335, 361 (2012).  Plaintiffs do not address this authority.  FRE 401, 402, 403,

26  602.

27          Separate Statement Paragraph 184:  Irrelevant.  This evidence is relevant to

28  plaintiffs' general negligence claims which are not addressed in PVA's motion.  Under

Becherer
Kannett &
Schweitzer

1255 Powell St.
Emeryville, CA
94608
510-658-3600

DEFENDANT PRECISION VALVE & AUTOMATION, INC.'S OBJECTIONS TO EVIDENCE IN SUPPORT
MOTION FOR SUMMARY JUDGMENT

1    California law, strict liability is prohibited even when it is "foreseeable that the

2    products will be used together," unless such use is actually "necessary." *O'Neil v.*

3    *Crane Co.*, 53 Cal.4th 335, 361 (2012).  Plaintiffs do not address this authority.  FRE

4    401, 402.

5         Separate Statement Paragraph 185:  Irrelevant. This evidence is relevant to

6    plaintiffs' general negligence claims which are not addressed in PVA's motion.  Under

7    California law, strict liability is prohibited even when it is "foreseeable that the

8    products will be used together," unless such use is actually "necessary." *O'Neil v.*

9    *Crane Co.*, 53 Cal.4th 335, 361 (2012).  Plaintiffs do not address this authority.  FRE

10   401, 402.

11        Separate Statement Paragraph 186:  Irrelevant. This evidence is relevant to

12   plaintiffs' general negligence claims which are not addressed in PVA's motion.  Under

13   California law, strict liability is prohibited even when it is "foreseeable that the

14   products will be used together," unless such use is actually "necessary." *O'Neil v.*

15   *Crane Co.*, 53 Cal.4th 335, 361 (2012).  Plaintiffs do not address this authority.  FRE

16   401, 402.

17        Separate Statement Paragraph 187:  Irrelevant. This evidence is relevant to

18   plaintiffs' general negligence claims which are not addressed in PVA's motion.  Under

19   California law, strict liability is prohibited even when it is "foreseeable that the

20   products will be used together," unless such use is actually "necessary." *O'Neil v.*

21   *Crane Co.*, 53 Cal.4th 335, 361 (2012).  Plaintiffs do not address this authority.  FRE

22   401, 402.

23        Separate Statement Paragraph 188:  Objection.  Argumentative and irrelevant.

24   This misleading, argumentative characterization is only relevant to plaintiffs' general

25   negligence claims which are not addressed in PVA's motion.  Under California law,

26   strict liability is prohibited even when it is "foreseeable that the products will be used

27   together," unless such use is actually "necessary." *O'Neil v. Crane Co.*, 53 Cal.4th 335,

28   361 (2012).  Plaintiffs do not address this authority.  FRE 401, 402, 403.

Becherer
Kannett &
Schweitzer

1255 Powell St.
Emeryville, CA
94608
510-658-3600

DEFENDANT PRECISION VALVE & AUTOMATION, INC.'S OBJECTIONS TO EVIDENCE IN SUPPORT
MOTION FOR SUMMARY JUDGMENT

1   Separate Statement Paragraph 189: Objection.  Argumentative and irrelevant.

2   This misleading, argumentative characterization is only relevant to plaintiffs' general

3   negligence claims which are not addressed in PVA's motion.  PVA does not dispute

4   what is stated in the documents which is immaterial to the issues before this Court.

5   FRE 401, 402, 403.

6   Separate Statement Paragraph 190:

7   Objection.  Argumentative and irrelevant.  This misleading, argumentative

8   characterization is only relevant to plaintiffs' general negligence claims which are not

9   addressed in PVA's motion.  PVA does not dispute what is stated in the documents

10   which is immaterial to the issues before this Court.  FRE 401, 402, 403.

11   Separate Statement Paragraph 191: Objection.  Argumentative and irrelevant.

12   This misleading, argumentative characterization is only relevant to plaintiffs' general

13   negligence claims which are not addressed in PVA's motion.  PVA does not dispute

14   what is stated in the documents which is immaterial to the issues before this Court.

15   FRE 401, 402, 403.

16   Separate Statement Paragraph 192: Objection.  Argumentative and irrelevant.

17   This misleading, argumentative characterization is only relevant to plaintiffs' general

18   negligence claims which are not addressed in PVA's motion.  PVA does not dispute

19   what is stated in the documents which is immaterial to the issues before this Court.

20   FRE 401, 402, 403.

21   Separate Statement Paragraph 193: Objection.  Argumentative and irrelevant.

22   This misleading, argumentative characterization is only relevant to plaintiffs' general

23   negligence claims which are not addressed in PVA's motion.  PVA does not dispute

24   what is stated in the documents which is immaterial to the issues before this Court.

25   FRE 401, 402, 403.

26   Separate Statement Paragraph 194: Objection.  Argumentative and irrelevant.

27   This misleading, argumentative characterization is only relevant to plaintiffs' general

28   negligence claims which are not addressed in PVA's motion.  PVA does not dispute

**Becherer
Kannett &
Schweitzer**

1255 Powell St.
Emeryville, CA
94608
510-658-3600

DEFENDANT PRECISION VALVE & AUTOMATION, INC.'S OBJECTIONS TO EVIDENCE IN SUPPORT
MOTION FOR SUMMARY JUDGMENT

1    what is stated in the documents which is immaterial to the issues before this Court.

2    Under California law, strict liability is prohibited even when it is "foreseeable that the

3    products will be used together," unless such use is actually "necessary." *O'Neil v.*

4    *Crane Co.*, 53 Cal.4th 335, 361 (2012). Plaintiffs do not address this authority. FRE

5    401, 402, 403.

6         <u>Separate Statement Paragraph 195</u>: Objection. Argumentative and irrelevant.

7    This misleading, argumentative characterization is only relevant to plaintiffs' general

8    negligence claims which are not addressed in PVA's motion. PVA does not dispute

9    what is stated in the documents which is immaterial to the issues before this Court.

10   Under California law, strict liability is prohibited even when it is "foreseeable that the

11   products will be used together," unless such use is actually "necessary." *O'Neil v.*

12   *Crane Co.*, 53 Cal.4th 335, 361 (2012). Plaintiffs do not address this authority. FRE

13   401, 402, 403.

14        <u>Separate Statement Paragraph 196</u>: Objection. Argumentative and irrelevant.

15   This misleading, argumentative characterization is only relevant to plaintiffs' general

16   negligence claims which are not addressed in PVA's motion. PVA does not dispute

17   what is stated in the documents which is immaterial to the issues before this Court.

18   Under California law, strict liability is prohibited even when it is "foreseeable that the

19   products will be used together," unless such use is actually "necessary." *O'Neil v.*

20   *Crane Co.*, 53 Cal.4th 335, 361 (2012). Plaintiffs do not address this authority. FRE

21   401, 402, 403.

22        <u>Separate Statement Paragraph 197</u>: Objection. Argumentative, ambiguous and

23   misleading. PVA's 2009 sales records showed that a safety check was performed

24   which showed that "low level exhaust sensor tested and confirmed operational."

25   (Urquhart Dec., 21.) FRE 401, 402, 403.

26        <u>Separate Statement Paragraph 199</u>: Irrelevant what safety items are included

27   "automatically." The PVA 350 at issue in this case included a camera, flow

28   monitoring, door interlocks and other safety features when it was sold. (UF 12;

**Becherer Kannett & Schweitzer**

1255 Powell St.
Emeryville, CA
94608
510-658-3600

DEFENDANT PRECISION VALVE & AUTOMATION, INC.'S OBJECTIONS TO EVIDENCE IN SUPPORT
MOTION FOR SUMMARY JUDGMENT

Urquhart Dec., 2:23-3:6, 21, 86, 99, 130.)  FRE 401-403.

Separate Statement Paragraph 200:  Irrelevant.  There is no evidence that a ventilator would have been needed when PVA's machine was sold and all necessary safety features were intact.  (UF 12; Urquhart Dec., 2:23-3:6, 21, 86, 99, 130.)  FRE 401-403.

Separate Statement Paragraph 201:  Irrelevant because it is undisputed that the PVA 350 sold to SpaceX had air flow monitors.  (UF 12; Urquhart Dec., 2:23-26, 21.)  Plaintiffs "undisputed fact" is highly misleading because this email **refers to a product that was being designed in December of 2014**, several months after Ruben Juarez stopped working at SpaceX.  This machine was actually **sold in 2015** and is a completely different product from the PVA 350, utilized "meter mix" technology which was not used in the PVA 350, and had a different model number, MX4000-VR.  (Loftus Brewer Dec., 462-463; Urquhart Dec., 34, 41.)  As shown by the referenced email, PVA recommended the use of flow monitors on this product too and there is no indication that flow monitors were not used on either this product or the PVA 350.  FRE 401-403.

Separate Statement Paragraph 202:  Objection.  Plaintiffs' characterization of this documents is highly misleading.  The document is dated May 1, 2009 and includes the following action items: (1) "fix or replace lexan side" and (2) "**label** camera cable @ rear of machine."  It does not state "add" camera cable.  In any event, next to these action items, it states they were "completed" by PVA workers "DL" and "DP" on May 14, 2009.  (Loftus Brewer Dec., 155.)  The product was then shipped to SpaceX on May 22, 2009.  (Urquhart Dec., 23.)  PVA does not dispute what is actually stated in these documents.

Separate Statement Paragraph 203:  Irrelevant what "not all PVA 350s have" or do not have.  On the PVA 350 at issue in this case, which was customized for SpaceX, the "door bypass switch" did not shut off any safety features of the machine.  (UF 12; Urquhart Dec., 2:23-3:6, 21, 86, 99, 130.)

Becherer
Kannett &
Schweitzer

1255 Powell St.
Emeryville, CA
94608
510-658-3600

DEFENDANT PRECISION VALVE & AUTOMATION, INC.'S OBJECTIONS TO EVIDENCE IN SUPPORT MOTION FOR SUMMARY JUDGMENT

1    Separate Statement Paragraph 206:  Irrelevant because plaintiff never read

2  PVA's manual and there is therefore "no conceivable causal connection between the

3  representations or omissions that accompanied the product and plaintiff's injury."

4  *Ramirez v. Plough, Inc.*, 6 Cal.4th 539, 556 (1993).  Moreover, there is no evidence that

5  facemasks and ventilators were required when the machine was sold:  "*Unless it has*

6  *been physically altered*, the machine is programmed to stop and will stop when the

7  door is opened or ventilation is shut off, no matter what mode it is in."  (Urquhart Dec.,

8  3:7-10.)

9    Separate Statement Paragraph 208:  Objection.  Plaintiff's characterization is

10  misleading and there is no foundation for plaintiff's counsel's suggestions about this

11  document.  Essentially nothing is checked on this document which on its face shows it

12  was never completed.  The relevant pre-sale checklist which immediately precedes this

13  document in PVA's document production (PVA 0270 to PVA 0271) states that all

14  safety systems for the machine were checked and confirmed.  The undisputed evidence

15  establishes that the PVA manual was sent to SpaceX on or before June 24, 2009

16  (Urquhart Dec., 2:15-22, 60, 61), and Plaintiffs elsewhere acknowledge it was sent.

17  (Pl. Sep. Stmt. 204.)

18    Separate Statement Paragraph 209:  Undisputed but immaterial.  "Unless it has

19  been physically altered, the machine is programmed to stop and will stop when the

20  door is opened or ventilation is shut off, no matter what mode it is in."  (Urquhart Dec.,

21  3:7-10.)

22

23  DATED: September 17, 2018            BECHERER KANNETT & SCHWEITZER

24

25                              By:     /s/     Alex P. Catalona
                                        _____
26                                      Alex P. Catalona
                                        Attorneys for Defendant
27                                      PRECISION VALVE & AUTOMATION, INC.

28

Becherer
Kannett &
Schweitzer
————
1255 Powell St.
Emeryville, CA
94608
510-658-3600

DEFENDANT PRECISION VALVE & AUTOMATION, INC.'S OBJECTIONS TO EVIDENCE IN SUPPORT
MOTION FOR SUMMARY JUDGMENT

1

## <u>CERTIFICATE OF SERVICE</u>

2          The undersigned hereby certifies that on September 17, 2018, a true and correct

3   copy of **DEFENDANT PRECISION VALVE & AUTOMATION, INC.'S**

4   **OBJECTIONS TO EVIDENCE IN SUPPORT MOTION FOR SUMMARY**

5   **JUDGMENT** has been served via ECF upon all counsel of record in the Court's

6   electronic filing system.

7

8                    By:    /s/ Jerry Dumlao

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Becherer
Kannett &
Schweitzer**
———
1255 Powell St.
Emeryville, CA
94608
510-658-3600