Shahrad Milanfar (SBN 201126)
smilanfar@bkscal.com
Alex P. Catalona (SBN 200901)
acatalona@bkscal.com
BECHERER KANNETT & SCHWEITZER
1255 Powell Street
Emeryville, CA 94608
Telephone: (510) 658-3600
Facsimile: (510) 658-1151

Attorneys for Defendant
PRECISION VALVE & AUTOMATION, INC.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RUBEN JUAREZ, an individual and ISELA HERNANDEZ, an individual, <br><br> Plaintiffs, <br><br> PRECISION VALVE & AUTOMATION, INC., a corporation and DOES 1-20, <br><br> Defendants. | CASE NO. CV17-03342-ODW (GJSX) [L.A.S.C. Case No. BC650229] <br><br> **DEFENDANT PRECISION VALVE & AUTOMATION, INC'S RESPONSE TO PLAINTIFF'S ADDITIONAL DISPUTED FACTS IN SUPPORT MOTION FOR SUMMARY JUDGMENT** <br><br> Date:        October 1, 2018 <br> Time:        1:30 p.m. <br> Ctrm:        5D, 5th Floor <br> Judge:       Hon. Otis D. Wright II |

Pursuant to this Court's Scheduling and Case Management Order dated July 5, 2017 [Doc. 14], subsection 6(f)(i) defendant Precision Valve & Automation, Inc. ("PVA") respectfully submits the following Response To Plaintiffs' Additional Disputed Material Facts.

\\\

\\\

Becherer
Kannett &
Schweitzer

1255 Powell St.
Emeryville, CA
94608
510-658-3600

## I.    RESPONSE TO ADDITIONAL DISPUTED MATERIAL FACTS

| Uncontroverted Facts And Supporting Evidence | PVA's Response |
| --- | --- |
| 84. PVA Inc. manufactured, designed, and sold the PVA 350 to Space X in 2009.<br><br>(Exhibit 36, PVA 4449-4452)<br>(Exhibit 22)<br>(Exhibit 34)<br>(Exhibit 31)<br>(Dec. Glen Stevick) | 84. Undisputed.[1] |
| 85. After selling the PVA 350 to Space X in 2009, PVA Inc. continued to service the PVA 350, modify the PVA 350, provide support services to Space X, maintain the PVA 350, and train end users of the PVA 350.<br><br>(Exhibit 22)<br><br>(Exhibit 36)<br><br>(Exhibit 25)<br><br>(Exhibit 13)<br><br>(Exhibit 34) | 85. Undisputed. |
| 86. Before working for Space X, Ruben Juarez attended a PVA Inc. training while working with his former EMI where he was trained to use the PVA 350 by placing his head inside the machine without any documents available in the conformal | 86. Undisputed.  The statement "without any documents available in the conformal protective gear" does not make sense.  Outside of the context of this motion, PVA will dispute that Juarez was trained to place his head inside the machine. |

---

[1] All of plaintiffs' evidence and facts which are "undisputed" are only undisputed for purposes of PVA's motion for summary judgment.  Several of these purported facts touch on issues of general negligence and liability which are not addressed in or relevant to PVA's motion but which may be relevant at trial.  PVA reserves its right to dispute any facts plaintiffs have alleged beyond the context of this motion.

Becherer
Kannett &
Schweitzer

1255 Powell St.
Emeryville, CA
94608
510-658-3600

DEFENDANT PRECISION VALVE & AUTOMATION, INC'S RESPONSE TO PLAINTIFF'S ADDITIONAL DISPUTED FACTS IN SUPPORT MOTION FOR SUMMARY JUDGMENT

| Uncontroverted Facts And Supporting Evidence | PVA's Response |
|---|---|
| protective gear.<br><br>(Exhibit 24) | |
| 87.  On October 2011, Mr. Juarez traveled to PVA Inc., while working with EMI to undergo a 4 day training to program the PVA Inc. machine.<br><br>(Dec. Ruben Juarez, paragraph 4)<br><br>(Exhibit 24)<br><br>(Ex 3 Depo. Ruben Juarez Volume 1: 30:16-18, 30:24-31 :5, 72:9-14.) | 87.  Undisputed that Mr. Juarez was trained at PVA for 4 days in October 2011.  Objection that this training was on "the PVA Inc. machine" which is vague, misleading and argumentative.  Plaintiffs' separate statement mischaracterizes the deposition testimony.  In October, 2011, Mr. Juarez was trained by SpaceX on a completely different machine, a "PVA **650**." (Catalona Dec., 301:17-303:21; Loftus Brewer Dec., 65:9-17, 79:12-24.) This training is irrelevant to plaintiffs' failure to warn claims and strict product liability cause of action about the PVA 350 designed and sold to SpaceX in 2009 which is at issue in PVA's motion for summary judgment.  FRE 401, 402, 403. |
| 88. Mr. Juarez was trained by PVA Inc. to put his head inside the PVA machine with the door open to check various spraying parameters on the circuit boards, operate and fine tune the fixtures inside the PVA machine, and check the chemical levels without the ventilation system being operational.<br><br>(Dec. Ruben Juarez, paragraph 4)<br><br>(Exhibit 24) | 88. Undisputed but irrelevant and immaterial.  Outside of the context of this motion, PVA will dispute that this particular training took place. |
| 89. Ruben Juarez worked at Space X from January 2012 to May or June 2014 as a programmer.<br><br>(Dec. Ruben Juarez, paragraph 2) | 89. Undisputed. |

Becherer Kannett & Schweitzer

1255 Powell St.
Emeryville, CA
94608
510-658-3600

DEFENDANT PRECISION VALVE & AUTOMATION, INC'S RESPONSE TO PLAINTIFF'S ADDITIONAL DISPUTED FACTS IN SUPPORT MOTION FOR SUMMARY JUDGMENT

| Uncontroverted Facts And Supporting Evidence | PVA's Response |
|---|---|
| 90. While working with Space X, Ruben Juarez's job duties were changed to include both AOI programming and SMT programming. <br><br> (Dec. Ruben Juarez, paragraph 2) | 90. Alough this contradicts hide deposition during which he said his duties never changed, this fact is immaterial and undisputed for the purposes PVA's motion. |
| 91. While employed at Space X, Ruben Juarez was never given MSDS sheets, he did not have access to the MSDS sheets, and he had no chemical training either formal or informal to understand the MSDS sheets. <br><br> (Dec. Ruben Juarez, paragraph 2) <br> (Dec. Ruben Juarez, paragraph 3) <br><br> (Dec. Manuel Gutierrez, paragraph 4) | 91. Objection.  Argumentative, conclusory, irrelevant and no foundation.  Objection to the Manuel Gutierrez declaration which lacks foundation and contains speculation and must be excluded by F.R.C.P. 37(c)(1).  FRE 401, 402, 403, 602.[2] |
| 92. There were no Standards of Practice documents available in the conformal coating area.  Further, there were no MSDS sheets in the conformal coating area or an MSDS binder. <br><br> (Dec. Manuel Gutierrez, paragraph 4) | 92. Objection to the Manuel Gutierrez declaration which lacks foundation and contains speculation and must be excluded by F.R.C.P. 37(c)(1).  FRE 401, 402, 403, 602. |
| 93. While working at Space X, Ruben Juarez started to experience various health problems including headaches. <br><br> (Dec. Ruben Juarez, paragraph 3) | 93. Undisputed. |
| 94. A physician initially suspected Mr. Juarez had vertigo and later suspected his | 94. Objection.  Inadmissible hearsay.  FRE 802. |

[2] Please see detailed evidentiary objections in PVA's accompanying <u>Objections to Evidence</u>.

Becherer Kannett & Schweitzer

1255 Powell St. Emeryville, CA 94608 510-658-3600

DEFENDANT PRECISION VALVE & AUTOMATION, INC'S RESPONSE TO PLAINTIFF'S ADDITIONAL DISPUTED FACTS IN SUPPORT MOTION FOR SUMMARY JUDGMENT

| Uncontroverted Facts And Supporting Evidence | PVA's Response |
|---|---|
| aneurysm was the cause of his condition.<br><br>(Dec. Ruben Juarez, paragraph 3) | |
| 95. Only after a successful surgery in 2013 and subsequent checkups did Mr. Juarez realize that he had recovered Juarez realize that he had recovered from the aneurysm.<br><br>(Dec. Ruben Juarez, paragraph 3)<br><br>(Ex 4 Depo. Juarez Volume II, 246: 12-18) | 95. Undisputed. |
| 96. But because Mr. Juarez' symptoms persisted, he realized the aneurysm was not causing his symptoms.<br><br>(Dec. Ruben Juarez, paragraph 3) | 96. Undisputed but immaterial. Plaintiffs' subjective beliefs are immaterial and irrelevant under California law. "Subjective suspicion is not required. If a person becomes aware of facts which would make a reasonably prudent person suspicious, he or she has a duty to investigate further and is charged with knowledge of matters which would have been revealed by such an investigation." *McCoy v. Gustafson*, 180 Cal.App.4th 56, 108 (2009.) |
| 97. Mr. Juarez thought his symptoms were caused by his aneurysm or because he was just unusually sensitive to the chemicals in the chemical baths.<br><br>(Dec. Ruben Juarez, paragraph 8)<br><br>(Ex 4 Depo. Juarez Volume II, 235:1-238:5, 238: 19-22)<br><br>(Ex 4 Depo. Juarez Volume II, 241:4-15) | 97. Undisputed but immaterial. Plaintiffs' subjective beliefs are immaterial and irrelevant under California law. "Subjective suspicion is not required. If a person becomes aware of facts which would make a reasonably prudent person suspicious, he or she has a duty to investigate further and is charged with knowledge of matters which would have been revealed by such an investigation." *McCoy v. Gustafson*, 180 Cal.App.4th 56, 108 (2009.) |
| 98. The Workers Compensation Claim was filed due to "repetitive and continuous | 98. Objection. The document speaks for itself. Counsel's insertion of the text "the chemical bath down the hall" is |

Becherer<br>Kannett &<br>Schweitzer<br><br>1255 Powell St.<br>Emeryville, CA<br>94608<br>510-658-3600

DEFENDANT PRECISION VALVE & AUTOMATION, INC'S RESPONSE TO PLAINTIFF'S ADDITIONAL DISPUTED FACTS IN SUPPORT MOTION FOR SUMMARY JUDGMENT

| Uncontroverted Facts And Supporting Evidence | PVA's Response |
|---|---|
| exposure to electronics parts cleaning (the chemical bath down the hall) & Lead SO ( the filters with the lead wiring).<br><br>(Exhibit 49) | misleading, argumentative and irrelevant. |
| 99. At this time, Mr. Juarez guessed that the cause of his injuries was lead solder wires and unknown chemicals used in the chemical cleaning baths at the Space X facility unconnected to the PVA 350.<br><br>(Dec. Ruben Juarez, paragraph 3)<br><br>(Ex 4 Depo. Juarez Volume II, 287:6-288:3, 288:24-289:6) | 99. Undisputed but this fact is not relevant or material to PVA's motion for summary judgment. Objection. Relevance. FRE 401, 402; *McCoy v. Gustafson*, 180 Cal.App.4th 56, 108 (2009). |
| 100. At the time Mr. Juarez filed his Workers Compensation Claim, there were no physicians who suggested Plaintiff examine all the chemicals utilized at Space X-there were no physicians telling Plaintiff to avoid anything or any place at work-there was no one informing Plaintiff that the PVA 350 was not working properly or that it was dangerous to program the PVA 350-Plaintiff did NOT see any MSDS sheets or Manual associated with the PVA 350-nor did Plaintiff see any Standard Operating Procedures issued by his employer regarding the use of MSDS sheets and/or the use of the PVA 350.<br><br>(Exhibit 49)<br><br>(Dec. Ruben Juarez, paragraph 2)<br><br>(Dec. Ruben Juarez, paragraph 3) | 100. Undisputed that plaintiffs' doctors never suggested he could have been exposed to chemicals which is irrelevant and immaterial. (UF 81.)<br><br>Undisputed that no one informed him that the PVA 350 was not working properly which is irrelevant and immaterial.<br><br>Objection to plaintiffs' characterization of plaintiff's deposition testimony regarding the SOPs as argumentative and irrelevant. Although Mr. Juarez could not recall this document at his deposition, this "does not constitute affirmative evidence raising a triable issue *concerning [PVA's undisputed] evidence* that he did receive and understand" this document. *Treatt USA v. Superior Court,* 2015 WL 5895495, *12 (Cal. Ct. App. 2015)<br><br>Also undisputed that he never looked at PVA's manual but this is irrelevant because he never asked to see it and there is no explanation why. (UF 16; Pl. Sep. |

Becherer Kannett & Schweitzer

1255 Powell St. Emeryville, CA 94608 510-658-3600

| Uncontroverted Facts And Supporting Evidence | PVA's Response |
|---|---|
| (Dec. Manuel Gutierrez, paragraph 4)<br><br>(Ex 4 Depo. Juarez Volume II, 262:21-263: 13) | Stmt., 79:5-7.)<br><br>Objection to the Manuel Gutierrez declaration which lacks foundation and contains speculation and plaintiffs are "not allowed to use" this declaration pursuant to F.R.C.P. 37(c)(1).<br><br>There is nothing in his declaration which negates PVA's undisputed evidence that the MSDS sheets were kept on Juarez's computer that he used on a daily basis. (UF 62; Maxwell Dec., 2:9.)  There is nothing which calls into question SpaceX's intranet site which contained all MSDS sheets, including for Arathane and Humiseal materials, and contained the most up-to-date version of the Avionics department SOPs.  (Maxwell Dec., 2:2-4; 2:17-19; Hwang Dec., 1:20-24, 1:27-2:2, Phan Dec., 1:14-18, 2:1-5.) |
| 101. During the work up of Mr. Juarez' claim, he was sent to see Dr. Regev.<br><br>(Dec. Ruben Juarez, paragraph 3)<br><br>(Exhibit 48) | 101.  Undisputed. |
| 102. Dr. Regev requested that Mr. Juarez obtain the MSDS sheets for the lead solder wire and chemical cleaning baths.<br><br>(Dec. Ruben Juarez, paragraph 3)<br><br>(Exhibit 48) | 102.  Objection.  Juarez's recollection of his conversation with Dr. Regev is inadmissible hearsay.  The business record of Dr. Regev speaks for itself.  Dr. Regev did not state "chemical cleaning baths" which is language added by plaintiffs' attorney.  The actual contents of Dr. Regev's report are undisputed. |
| 103. No doctor before Dr. Regev ever requested that Mr. Juarez obtain any MSDS sheets or suspected his illness was related to chemical exposure. | 103.  Undisputed that no doctor before Dr. Regev asked Juarez to obtain copies of the MSDS sheets.  There is no evidence to establish that no doctors "suspected his illness was related to chemical exposure."  This would be |

Becherer<br>Kannett &<br>Schweitzer<br><br>1255 Powell St.<br>Emeryville, CA<br>94608<br>510-658-3600

DEFENDANT PRECISION VALVE & AUTOMATION, INC'S RESPONSE TO PLAINTIFF'S ADDITIONAL DISPUTED FACTS IN SUPPORT MOTION FOR SUMMARY JUDGMENT

| Uncontroverted Facts And Supporting Evidence | PVA's Response |
|---|---|
| (Dec. Ruben Juarez, paragraph 3)<br><br>(Exhibit 48) | impossible because plaintiff's doctors were never informed that he was working with any chemicals.  (UF 81.) |
| 104.  During this appointment, Dr. Regev never indicated Mr. Juarez thought any of the chemicals he was working with were dangerous, and Dr. Regev did not tell Mr. Juarez to stay away from any chemicals.<br><br>(Dec. Ruben Juarez, paragraph 3)<br><br>(Exhibit 48) | 104.  Objection. Mr. Juarez's mischaracterization of this medical record is inadmissible hearsay.  At his deposition, he stated that he had never even heard of Dr. Regev:  "Q. This is a medical record from Isaac Regev, M.D. Do you remember who that guy is?  A. No, sir."  (Catalona Dec., 337:22-24.)  In any event, the actual medical record speaks for itself and is undisputed.  The actual medical record states: "[t]he patient believes his headaches were related to toxic exposure [and] believed they were associated with chemicals used to clean electrical parts."  (UF 38, 50-51; Catalona Dec., 370.)  At his deposition, Juarez stated that these chemicals included Humiseal thinner which was also used inside the PVA 350. (UF 45, 52-53.) |
| 105. In the "DISCUSSION" portion of the Regev Medical Records, Dr. Regev confirms Plaintiffs History by noting that: "The patient relates of frequent headaches at work and he believed they were associated with chemicals to clean electrical parts [ the chemical baths down the hall]. He also believes he was exposed to lead [the filters with the lead wiring in the building]. Dr. Regev then advised that Plaintiff see a toxicologist and obtain the MSDS sheets from Space X so a toxicologist could review said sheets and advised Plaintiff "I suggest the patient be seen by a toxicologist with the MSDS and working environment analysis." | 105.  Objection.  The document speaks for itself and does not state "the chemical baths down the hall."  The actual contents of the document are undisputed.  The actual medical record states: "[t]he patient believes his headaches were related to toxic exposure [and] believed they were associated with chemicals used to clean electrical parts."  (UF 38, 50-51; Catalona Dec., 370.)  At his deposition, Juarez stated that these chemicals included Humiseal thinner which was also used inside the PVA 350. (UF 45, 52-53.) |

Becherer
Kannett &
Schweitzer

1255 Powell St.
Emeryville, CA
94608
510-658-3600

DEFENDANT PRECISION VALVE & AUTOMATION, INC'S RESPONSE TO PLAINTIFF'S ADDITIONAL DISPUTED FACTS IN SUPPORT MOTION FOR SUMMARY JUDGMENT

| Uncontroverted Facts And Supporting Evidence | PVA's Response |
|---|---|
| (Exhibit 48) | |
| 106. Pursuant to Dr. Regev's request, Plaintiff requested the MSDS sheets and made an appointment with a toxicologist.<br><br>(Dec. Ruben Juarez, paragraph 3)<br><br>(Exhibit 48) | 106.   Undisputed. |
| 107. Pursuant to Dr. Regev, Mr. Juarez called Space X and requested a list of chemicals in the chemical baths and the lead wires attached the filters, but they did not provide Mr. Juarez with a list so Mr. Juarez called Francisco (a coworker at Space X) in early March of 2015 and during the conversation, he did not remember who suggested this, but Francisco ended up giving Mr. Juarez not only the list of chemicals involved in the cleaning baths and lead wire, but also the names of the chemicals that Mr. Juarez worked with when programming PVA 350.<br><br>(Dec. Ruben Juarez, paragraph 3)<br><br>(Exhibit 48)<br><br>(Exhibit 46)<br><br>(Ex 4 Depo. Juarez Volume II, 332:7-337:14)<br><br>(Ex 3 Depo. Ruben Juarez Volume 1, 43:12-46:19) | 107.   Objection.  These out of court statements consist of inadmissible hearsay.  The statements also lack relevance and are without foundation because Mr. Juarez "did not remember who suggested this."  There is also nothing in this document which suggests he ever requested chemicals in "baths." |
| 108. Mr. Juarez emailed Space X on | 108.   Objection.  The out of court |

Becherer<br>Kannett &<br>Schweitzer<br><br>1255 Powell St.<br>Emeryville, CA<br>94608<br>510-658-3600

DEFENDANT PRECISION VALVE & AUTOMATION, INC'S RESPONSE TO PLAINTIFF'S ADDITIONAL DISPUTED FACTS IN SUPPORT MOTION FOR SUMMARY JUDGMENT

| Uncontroverted Facts And Supporting Evidence | PVA's Response |
|---|---|
| March 3, 2015 asking for the MSDS sheets that Francisco indicated that Mr. Juarez worked with, and on March 3, 2015, Jane Malubag with Space X did not send Mr. Juarez the MSDS sheets but indicated Space X's insurance would send them to Mr. Juarez' workers' compensation attorneys, and on March 12, 2015 she indicated that the MSDS sheets were forwarded to Mr. Juarez' attorney and insurance company.<br><br>(Dec. Ruben Juarez, paragraph 3)<br><br>(Exhibit 46) | conversation with a "Francisco" is inadmissible hearsay.  PVA does not object to the contents of the emails which speak for themselves and are undisputed. |
| 109.  After receipt of the MSDS sheets, Mr. Juarez saw a toxicologist on March 25, 2015, Mr. Zlotolow M.D., and provided the MSDS sheets for review.<br><br>(Dec. Ruben Juarez, paragraph 3)<br><br>(Exhibit 47) | 109.   Undisputed. |
| 110. It was at the appointments with the toxicologist, starting March 2015 Plaintiff was first told his reactive airways disease and rhinitis were probably caused by industrial exposure on the job.<br><br>(Exhibit 47)<br><br>(Ex 4 Depo. Juarez Volume 11, 249:22-250: 12) | 110.   Objection.  Inadmissible hearsay.  PVA does not object to the contents of the actual medical record which speaks for itself and is undisputed, but to plaintiff's one-sided characterization of that conversation which is inadmissible hearsay.  This purported fact is also not relevant or material because plaintiffs do not allege that Mr. Juarez's purported "reactive airways disease and rhinitis" were caused by PVA's negligence or the PVA 350 in the complaint.  (Catalona Dec., 62:11-15.) |
| 111. Nobody else at Space X was getting sick so Mr. Juarez did not think anyone | 111.   Objection relevance.  Undisputed that no one at SpaceX got sick with the |

Becherer
Kannett &
Schweitzer

1255 Powell St.
Emeryville, CA
94608
510-658-3600

| Uncontroverted Facts And Supporting Evidence | PVA's Response |
|---|---|
| had done anything wrong.<br><br>(Dec. Ruben Juarez, paragraph 3) | exception of plaintiffs' alleged injuries but this does not mean that Juarez did not think anyone had done anything wrong. |
| 112. Only after Mr. Juarez reviewed the MSDS sheets did Mr. Juarez realize that the solder wire was actually lead-free and the chemical used in the chemical baths is only isopropyl alcohol.<br><br>(Dec. Ruben Juarez, paragraph 3) (Exhibit 28) | 112.  Undisputed but this fact is not material to PVA's motion for summary judgment.  Mr. Juarez's subjective (or purported) ignorance of his claims is irrelevant so long as "sufficient facts" are known which would "put a *reasonable person* on inquiry notice." C.C.P. § 340.8; *McCoy v. Gustafson*, 180 Cal.App.4th 56, 108 (2009); *Treatt USA v. Superior Court*, 2015 WL 5895495, *8 (Cal. Ct. App. 2015); *Mangini v. Aerojet-General Corporation* 230 Cal.App.3d 1125, 1150 (1991); *Simpson v. Robert Bosch Tool Corp.*, 2014 WL 985067, *4 (Cal. Ct. App. 2014). |
| 113.  Plaintiff was deposed on three occasions during the Workers Compensation Action-on March 30, 2015 and May 20, 2015 and October 21, 2015.<br><br>(Exhibit 1)<br><br>(Exhibit 2)<br><br>(Exhibit 53) | 113.  Undisputed. |
| 114. During these depositions, counsel (Exhibit 1, 51:17-24, 53:1-24, 59:20-for Space X continued to ask questions 24, 60:17-25, 61:12-25, 62:1-12) to Plaintiff about the PVA 350-the manner in which Plaintiff operated the (Exhibit 2) PVA 350-the training Plaintiff (Exhibit 3) received about the PVA 350 and about any warnings associated with the PVA 350. It was this series of questions which led Plaintiff to investigate the safety of the PVA 350 and which | 114.  Objection.  There is no evidence cited to support plaintiff's supposed "realization."  The Ruben Juarez declaration does not mention any such realization or discuss his deposition or discovery from the workers' compensation action.  Plaintiffs' characterization of this testimony is argument and not permitted in plaintiffs' Separate Statement.  PVA does not object to the actual contents of plaintiff's deposition testimony which is undisputed. |

Becherer Kannett & Schweitzer

1255 Powell St.
Emeryville, CA
94608
510-658-3600

DEFENDANT PRECISION VALVE & AUTOMATION, INC'S RESPONSE TO PLAINTIFF'S ADDITIONAL DISPUTED FACTS IN SUPPORT MOTION FOR SUMMARY JUDGMENT

| Uncontroverted Facts And Supporting Evidence | PVA's Response |
|---|---|
| triggered Plaintiffs actual suspicion that his injury was might have been caused by defects associated with the PVA 350.<br><br>(Exhibit 1, 51:17-24, 53:1-24, 59:20-24, 60:17-25, 61:12-25, 62:1-12)<br><br>(Exhibit 2)<br><br>(Exhibit 3) | |
| 115. In April 2012, Mr. Juarez traveled to PVA Inc. as a Space X employee with John Pena to see if the PVA machines could spray various chemicals.<br><br>(Dec. Ruben Juarez, paragraph 4)<br><br>(Exhibit 24) | 115.  Undisputed. |
| 116. Mr. Pena and Mr. Juarez were at PVA Inc. for 2 days, and during this time, PVA Inc. employees did not wear any safety gear.<br><br>(Dec. Ruben Juarez, paragraph 4)<br><br>(Exhibit 24) | 116.  Undisputed. |
| 117. Mr. Juarez always followed PVA Inc.'s exact training protocols while programming the PVA 350 including their instructions to bypass systems to ensure Mr. Juarez could open the door and examine the circuit boards and fixtures.<br><br>(Dec. Ruben Juarez, paragraph 4)<br>(Ex. 4 Depo. Juarez Volume 11232:1-7, 232: 23-25) | 117.  Undisputed but irrelevant and there is no foundation.  The "bypass systems" and any protocols did not stop operation any of the machine's safety mechanisms. |
| 118. Nobody at SpaceX ever told Mr. | 118.  Undisputed but irrelevant and |

- (Dec. Ruben Juarez, paragraph 4) (Exhibit 24)
- (Dec. Ruben Juarez, paragraph 4) (Exhibit 24)

Becherer<br>Kannett &<br>Schweitzer<br><br>1255 Powell St.<br>Emeryville, CA<br>94608<br>510-658-3600

-12-

| Uncontroverted Facts And Supporting Evidence | PVA's Response |
|---|---|
| (Dec. Ruben Juarez, paragraph 4) Juarez the way he worked with the PVA 350 was dangerous.<br><br>(Dec. Ruben Juarez, paragraph 4) | immaterial.  Plaintiff testified that he knew the way he used the PVA 350 was hazardous. |
| 119. No other co-workers at Space X (Dec. Ruben Juarez, paragraph 4) ever appeared to get sick while Mr. Juarez was working there.<br><br>(Dec. Ruben Juarez, paragraph 4) | 119.  Undisputed. |
| 120. The doctors never told Mr. Juarez (Dec. Ruben Juarez, paragraph 4) that the chemicals from the PVA 350 were making him sick.<br><br>(Dec. Ruben Juarez, paragraph 4)<br><br>(Exhibit 48) | 120.  Undisputed but irrelevant and immaterial.  This would be impossible because plaintiff's doctors were never informed that he was working with any chemicals.  (UF 81.) |
| 121. Mr. Juarez worked about 60 hours (Dec. Ruben Juarez, paragraph 5) a week while working at Space X.<br><br>(Dec. Ruben Juarez, paragraph 5) | 121.  Undisputed. |
| 122. As part of Mr. Juarez' job duties, Mr. Juarez would work in the conformal coating room programming the PVA 350 machine, at his work station next to the chemical baths, and Mr. Juarez would clean the work station filters.<br><br>(Dec. Ruben Juarez, paragraph 5)<br><br>(Ex. 2 Depo. Ruben Juarez Volume 2 p. 77:5-78:3) | 122.  Undisputed. |
| 123. Mr. Juarez had additional duties such as ordering parts, and maintaining other equipment, and cleaning various parts.<br><br>(Dec. Ruben Juarez, paragraph 5) | 123.  Undisputed. |

Becherer<br>Kannett &<br>Schweitzer<br><br>1255 Powell St.<br>Emeryville, CA<br>94608<br>510-658-3600

DEFENDANT PRECISION VALVE & AUTOMATION, INC'S RESPONSE TO PLAINTIFF'S ADDITIONAL DISPUTED FACTS IN SUPPORT MOTION FOR SUMMARY JUDGMENT

| Uncontroverted Facts And Supporting Evidence | PVA's Response |
|---|---|
| (Ex 1, Depo. Ruben Juarez Volume I, p. 49:22-50:8, 51:17, 52:8-16, 53:15-21, 54:11-55:15, 55:21-56:8, 56:14-18 , 57:16-23-58:18, 59: 4-5, 59: 22-24,60:17-61:20, 62:1-15) | |
| 124. The PVA 350 Is a selective (Dec. Ruben Juarez, paragraph 6) conformal coating machine. PVA 350 is not a "work cell." <br><br> (Dec. Ruben Juarez, paragraph 6) | 124.  Undisputed but irrelevant and lack of foundation.  The machine is referred to as a "work cell" in PVA's manual and the conformal coating industry.  (UF 3.)  Plaintiff has no foundation to dispute this terminology because he never read the manual, and the fact that he used different terminology in the aerospace industry to refer to the machine is irrelevant. |
| 125. The PVA 350 is a standalone device, which is a mechanism or system that can perform its function without the need of another device, computer, or connection. In contrast, a work cell is a term used in the manufacturing industry for an arrangement of resources in manufacturing to improve quality, speed, and the costs of the processes. <br><br> (Dec. Ruben Juarez, paragraph 6) | 125.  Undisputed.  The machine is referred to as a "work cell" in PVA's manual and the conformal coating industry.  (UF 3.)  Plaintiff has no foundation to dispute this terminology because he never read the manual, and the fact that he used different terminology in the aerospace industry to refer to the machine is irrelevant. |
| 126. There were a lot of standalone (Dec. Ruben Juarez, paragraph 6) devices at Space X other than the PVA 350. <br><br> (Dec. Ruben Juarez, paragraph 6) | 126.  Undisputed but immaterial. |
| 127. The PVA 350 is known as a (Dec. Ruben Juarez, paragraph 6) selective conformal coating machine, which means a user can program the equipment to skip or avoid designated areas. <br><br> (Dec. Ruben Juarez, paragraph 6) | 127.  Undisputed. |

Becherer
Kannett &
Schweitzer

1255 Powell St.
Emeryville, CA
94608
510-658-3600

DEFENDANT PRECISION VALVE & AUTOMATION, INC'S RESPONSE TO PLAINTIFF'S ADDITIONAL DISPUTED FACTS IN SUPPORT MOTION FOR SUMMARY JUDGMENT

| Uncontroverted Facts And Supporting Evidence | PVA's Response |
|---|---|
| 128. Further, the PVA 350 machine dispenses, sprays, and applies different chemicals on circuit boards.<br><br>(Dec. Ruben Juarez, paragraph 6) | 128.  Undisputed. |
| 129. The PVA 350 is not equipped with a positive or negative air pressure.<br><br>(Dec. Ruben Juarez, paragraph 6) | 129.  Objection.  Vague, ambiguous, irrelevant and immaterial.  Plaintiff has no foundation to testify how the PVA 350 was equipped in 2009.  For the purposes of this motion, it is undisputed that this feature was not present in 2012 when plaintiff started working at SpaceX. |
| 130. Mr. Juarez was never provided the equipment manual and the manual was not available in the computer connected to the PVA 350.<br><br>(Dec. Ruben Juarez, paragraph 7)<br><br>(Dec. Christopher Mendoza)<br><br>(Dec. Manuel Gutierrez)<br><br>(Exhibit 31) | 130.  Objection.  Vague, ambiguous, irrelevant and immaterial.  It is irrelevant whether SpaceX "provided" the manual to Juarez or that it was purportedly not on his computer because it was maintained the SpaceX campus.  To read PVA's manual, which plaintiffs admit PVA did provide to SpaceX, all plaintiff had to do was ask but he never asked to see it and there is no explanation why. (UF 16; Pl. Sep. Stmt., 79:5-7.)<br><br>Objection to the Mendoza and Gutierrez declaration which lack foundation and contain speculation.  Plaintiffs are "not allowed to use" either witness "to supply evidence on a motion."  (F.R.C.P. 37(c)(1); *Benjamin v. B&H Education, Inc.*, 877 F.3d 1139, 1150 (9th Cir. 2017); *Medina v. Multaler, Inc.*, 547 F.Supp. 1099, 1106, fn. 8 (C.D. Cal. 2007). |
| 131.  The PVA 350 is a standalone machine, the manual was not uploaded to the company network so he could not read the manual and it was not in the computer<br><br>(Dec. Ruben Juarez, paragraph 7)<br><br>(Exhibit 31) | 131.  Objection.  Vague, ambiguous, irrelevant and immaterial.  It is irrelevant whether SpaceX "provided" the manual to Juarez or that it was purportedly not on his computer because it was maintained the SpaceX campus.  To read PVA's manual, which plaintiffs admit PVA did provide to SpaceX, all plaintiff |

Becherer
Kannett &
Schweitzer

1255 Powell St.
Emeryville, CA
94608
510-658-3600

DEFENDANT PRECISION VALVE & AUTOMATION, INC'S RESPONSE TO PLAINTIFF'S ADDITIONAL DISPUTED FACTS IN SUPPORT MOTION FOR SUMMARY JUDGMENT

| Uncontroverted Facts And Supporting Evidence | PVA's Response |
|---|---|
| (Ex 3 Depo. Juarez Volume 1: 91:3-93:24, 96:10-19, 98:20-21, 100:4-9) | had to do was ask but he never asked to see it and there is no explanation why. (UF 16; Pl. Sep. Stmt., 79:5-7.) |
| 132. PVA Inc. specifically trained Mr. Juarez to bypass the safety systems so the machine could be utilized as it was designed defectively and could not be utilized otherwise.<br><br>(Dec. Ruben Juarez, paragraph 7)<br><br>(Exhibit 13)<br><br>(Exhibit 17) | 132. Objection. Vague, ambiguous, irrelevant, immaterial and lacking in foundation. The "door bypass switch" did not shut off any safety features of the machine.<br><br>. |
| 133. The PVA 350 does a quick check at the start up or a "0" check. However, PVA Inc. trained users to bypass this system with the bypass key easily.<br><br>(Dec. Ruben Juarez, paragraph 7)<br><br>(Exhibit 13)<br><br>(Exhibit 17) | 133. Undisputed but irrelevant and immaterial. The "bypass key" did not shut off any safety features of the machine. |
| 134. For years, Mr. Juarez worked with the PVA 350 without any suspicion that Space X or PVA Inc. were doing anything wrong.<br><br>(Dec. Ruben Juarez, paragraph 8) | 134. Objection. Contradicts prior deposition testimony that SpaceX had "bypass[ed] the safety switch" which allowed the machine to run while the door was open "which is *hazardous*, but that's the way they work," and that SpaceX also failed to make essential safety "upgrades" to the machine which was "obsolete" because "it didn't have the alarm system to advise the operator that the suction system was not working or pulling all of the fumes out of it." (UF 40, 42; Catalona Dec., 450:16-20, 473:2-6.) He also testified that these complaints "never went over" at SpaceX and admitted to his workers' compensation doctor that he told SpaceX he was personally exposed to "chemicals coating such as Arathane and Humiseal |

Becherer<br>Kannett &<br>Schweitzer<br><br>1255 Powell St.<br>Emeryville, CA<br>94608<br>510-658-3600

DEFENDANT PRECISION VALVE & AUTOMATION, INC'S RESPONSE TO PLAINTIFF'S ADDITIONAL DISPUTED FACTS IN SUPPORT MOTION FOR SUMMARY JUDGMENT

| Uncontroverted Facts And Supporting Evidence | PVA's Response |
|---|---|
| | *… to no avail*."  (UF 39; Catalona Dec., 402, 410, 450:17-24 (emphasis added).)<br><br>No reasonable jury could believe that his prior identification of hazards regarding the machine was simply a mistake and the truth is that he never suspected SpaceX (or PVA) had done anything wrong.  The fact that his admissions came after he filed his workers' compensation claim in 2014 and after his attorneys received the MSDS sheets in that proceeding is irrelevant because he admitted that he first believed the machine and its chemicals were "hazardous" in 2012-2014 when reported his concerns to SpaceX. |
| 135.  Mr. Juarez had no formal or informal chemical training, and he did not know about the toxicity of the chemicals he was working with.<br><br>(Dec. Ruben Juarez, paragraph 8) | 135.  Undisputed whether Mr. Juarez had formal or informal "chemical training" which is not explained.<br><br>Objection that he "did not know about the toxicity of the chemicals he was working with" which is unambiguously contradicted by his deposition testimony. |
| 136. Also, Mr. Juarez did not know the PVA 350 was defective.<br><br>(Dec. Ruben Juarez, paragraph 8) | 136.  Undisputed that he did not "know" that the machine was defective which is irrelevant and immaterial.  *Treatt USA v. Superior Court*, 2015 WL 5895495, *8 (Cal. Ct. App. 2015); *McCoy v. Gustafson*, 180 Cal.App.4th 56, 108 (2009);  *Norgart v. Upjohn Co.*, 21 Cal.4th 383, 397-398 (1999). |
| 137.  Now, Mr. Juarez believes Space X originally began using the chemicals Humiseal before he worked there as the machine was purchased before Mr. Juarez' time and the chemical containers only changed once, which was set up by Space X with the assistance of PVA Inc. in the end of 2011/2012. | 137.  Undisputed that this is now Mr. Juarez's current "belief" which is irrelevant.  Objection that this belief is supported by any evidence or adequate foundation.<br><br>Objection to the Mendoza declaration which lacks foundation and contain speculation.  Plaintiffs are "not allowed |

Becherer<br>Kannett &<br>Schweitzer<br><br>1255 Powell St.<br>Emeryville, CA<br>94608<br>510-658-3600

DEFENDANT PRECISION VALVE & AUTOMATION, INC'S RESPONSE TO PLAINTIFF'S ADDITIONAL DISPUTED FACTS IN SUPPORT MOTION FOR SUMMARY JUDGMENT

| Uncontroverted Facts And Supporting Evidence | PVA's Response |
|---|---|
| (Dec. Ruben Juarez, paragraph 9)<br><br>(Dec. Christopher Mendoza) | to use" Mr. Mendoza "to supply evidence on a motion" pursuant to F.R.C.P. 37(c)(1). *Benjamin v. B&H Education, Inc.*, 877 F.3d 1139, 1150 (9th Cir. 2017); *Medina v. Multaler, Inc.*, 547 F.Supp. 1099, 1106, fn. 8 (C.D. Cal. 2007). |
| 138.   Space X began using Humiseal in 2010.<br><br>(Dec. Christopher Mendoza, paragraph 2) | 138.   Undisputed that SpaceX purportedly started using Humiseal in some capacity in 2010, which is irrelevant and immaterial. |
| 139.   A new chemical, which Mr. Juarez later found out was Arathane was introduced at Space X with the assistance of PVA Inc. and David Hwang replaced the original chemical, which Mr. Juarez later found out was Humiseal.<br><br>(Dec. Ruben Juarez, paragraph 9)<br><br>(Exhibit 22) | 139.   Undisputed that Arathane was introduced in 2012 as testified to by David Hwang.  Objection on foundation and hearsay grounds that there is admissible evidence or foundation that any "Humiseal" materials including Humiseal thinner were ever "replaced." |
| 140.   PVA Inc. was aware of this transition, and David Hwang indicated he purchased parts to the PVA 350 to spray Arathane.<br><br>(Dec. Ruben Juarez, paragraph 9)<br><br>(Exhibit 22) | 140.   Undisputed that Arathane was introduced in 2012 as testified to by David Hwang.  Objection on foundation that there is admissible evidence that there was any "transition" or that PVA was aware of any "transition" away from using "Humiseal" materials including Humiseal thinner.  Plaintiff's statement that Arathane "was introduced by David Hwang to replace the original chemical, *which I later found out* was Humiseal" has no foundation and constitutes inadmissible hearsay. |
| 141.   PVA Inc. had knowledge of the chemicals being utilized by Space X and was involved in subsequent modifications to the machine involving various chemicals.<br><br>(Exhibit 36) | 141.   Undisputed but irrelevant and immaterial. |

Becherer
Kannett &
Schweitzer

1255 Powell St.
Emeryville, CA
94608
510-658-3600

| Uncontroverted Facts And Supporting Evidence | PVA's Response |
|---|---|
| (Exhibit 25)<br><br>(Exhibit 22) | |
| 142.   PVA Inc. recommended that Space X utilized a toxic chemicals such Xylene instead of a NVOC.<br><br>(Exhibit 22, 4449-4452)<br><br>(Exhibit 28) | 142.   Undisputed but immaterial. |
| 143.   PVA Inc. was involved in the modifications to the PVA 350 and the use of Arathane.<br><br>(Exhibit 22)<br><br>(Exhibit 26) | 143.   Undisputed but irrelevant and immaterial. |
| 144.   Mr. Juarez had no formal or informal chemistry training so he was not allowed to mix these chemical compounds.<br><br>(Dec. Ruben Juarez, paragraph 9)<br><br>(Dec. Christopher Mendoza)<br><br>(Dec. Manuel Gutierrez)<br><br>(Ex 3 Depo. Juarez Volume 1: 55:21-56:5) | 144.   Undisputed that plaintiff has no chemistry training which irrelevant and immaterial.  Objection to the conclusion that this means he "was not allowed to mix chemical compounds."<br><br>Objection to the Mendoza and Gutierrez declaration which lack foundation and contain speculation.  Plaintiffs are "not allowed to use" either witness "to supply evidence on a motion" pursuant to F.R.C.P. 37(c)(1); *Benjamin v. B&H Education, Inc.*, 877 F.3d 1139, 1150 (9th Cir. 2017); *Medina v. Multaler, Inc.*, 547 F.Supp. 1099, 1106, fn. 8 (C.D. Cal. 2007).<br><br>Mendoza and Gutierrez have no foundation to testify about plaintiff's "hand mixing" of chemicals because they were not part of the team that designed SpaceX's conformal coating formula in 2012.  (UF 19-20; Maxwell Dec., 2:21-23.) |
| 145.   Although   Mr.   Juarez   would | 145.   Objection. This statement is |

DEFENDANT PRECISION VALVE & AUTOMATION, INC'S RESPONSE TO PLAINTIFF'S ADDITIONAL DISPUTED FACTS IN SUPPORT MOTION FOR SUMMARY JUDGMENT

Becherer
Kannett &
Schweitzer

1255 Powell St.
Emeryville, CA
94608
510-658-3600

| Uncontroverted Facts And Supporting Evidence | PVA's Response |
|---|---|
| sometimes stir a single container with chemicals to get the proper viscosity to be placed in a machine to flush the lines and make sure the machines were spraying the correct amount of material, Mr. Juarez would not mix multiple chemicals and definitely would not have been involved in creating new compounds.<br><br>(Dec. Ruben Juarez, paragraph 9)<br><br>(Dec. Christopher Mendoza)<br><br>(Dec. Manuel Gutierrez)<br><br>(Exhibit 22) | contradicted by plaintiff's sworn deposition testimony. Objection to the Mendoza and Gutierrez declarations which lack foundation and contain speculation. Plaintiffs are "not allowed to use" either witness "to supply evidence on a motion" pursuant to F.R.C.P. 37(c)(1); *Benjamin v. B&H Education, Inc.*, 877 F.3d 1139, 1150 (9th Cir. 2017); *Medina v. Multaler, Inc.*, 547 F.Supp. 1099, 1106, fn. 8 (C.D. Cal. 2007).<br><br>Also irrelevant is the fact that these witnesses "never saw Ruben Juarez mix chemicals." Mendoza and Gutierrez have no foundation to testify about plaintiff's "hand mixing" of chemicals because they were not part of the team that designed SpaceX's conformal coating formula in 2012. (UF 19-20; Maxwell Dec., 2:21-23.) |
| 146.   Francisco was the operator of the PVA 350.<br><br>(Dec. Ruben Juarez, paragraph 9)<br><br>(Dec. Manuel Gutierrez, paragraph 5) | 146.   Undisputed but irrelevant and immaterial. |
| 147.   Mixing the chemicals was part of Francisco's job duties.<br><br>(Dec. Ruben Juarez, paragraph 9)<br><br>(Dec. Manuel Gutierrez, paragraph 5) | 147.   Undisputed that "Francisco" had these duties but irrelevant and immaterial. |
| 148.   David Hwang also mixed the chemicals since he was the main person to substitute Humiseal to Arathane.<br><br>(Dec. Ruben Juarez, paragraph 9)<br><br>(Exhibit 22) | 148.   Undisputed that David Hwang also mixed the chemicals. Objection that there is admissible evidence Arathane was a "substitute" for any "Humiseal" materials including Humiseal thinner. This suggestion has no foundation and is based on inadmissible hearsay that Juarez "found out" without explanation. |

Becherer<br>Kannett &<br>Schweitzer<br><br>1255 Powell St.<br>Emeryville, CA<br>94608<br>510-658-3600

DEFENDANT PRECISION VALVE & AUTOMATION, INC'S RESPONSE TO PLAINTIFF'S ADDITIONAL DISPUTED FACTS IN SUPPORT MOTION FOR SUMMARY JUDGMENT

| Uncontroverted Facts And Supporting Evidence | PVA's Response |
|---|---|
| 149.  Mr. Juarez is not the process engineer or materials engineer, and those were the individuals that would have mixed the chemicals.<br><br>(Dec. Ruben Juarez, paragraph 9)<br><br>(Dec. Christopher Mendoza, paragraph 4)<br><br>(Exhibit 22) | 149.   Undisputed that Juarez is "not the process engineer or materials engineer" or that they would also have mixed chemicals which is immaterial.  There is no evidence in the record that these individuals were the *only* individuals authorized to, or capable of, mixing chemicals.<br><br>Objection to the Mendoza declaration which lacks foundation and contain speculation.  Plaintiffs are "not allowed to use" Mr. Mendoza "to supply evidence on a motion" pursuant to F.R.C.P. 37(c)(1); *Benjamin v. B&H Education, Inc.*, 877 F.3d 1139, 1150 (9th Cir. 2017); *Medina v. Multaler, Inc.*, 547 F.Supp. 1099, 1106, fn. 8 (C.D. Cal. 2007). |
| 150.   Per David Hwang's instructions and with the support of PVA Inc, Mr. Juarez only installed the separate dispensing canisters and materials lines, and he did not mix any chemical compounds.<br><br>(Dec. Ruben Juarez, paragraph 9)<br><br>(Dec. Manual Gutierrez, paragraph 5)<br><br>(Exhibit 22) | 150.   Undisputed that plaintiff "installed the separate dispensing canisters and materials lines."  Objection to the suggestion that he "did not mix any chemical compounds" which is unambiguously contradicted by his sworn deposition testimony.<br><br>Objection to the Manuel Gutierrez declaration which lacks foundation and contains speculation.  Plaintiffs are "not allowed to use" Mr. Gutierrez's testimony "to supply evidence on a motion" pursuant to F.R.C.P. 37(c)(1); *Benjamin v. B&H Education, Inc.*, 877 F.3d 1139, 1150 (9th Cir. 2017); *Medina v. Multaler, Inc.*, 547 F.Supp. 1099, 1106, fn. 8 (C.D. Cal. 2007).<br><br>Also irrelevant is the fact that these witnesses "never saw Ruben Juarez mix chemicals."  Mendoza and Gutierrez have no foundation to testify about plaintiff's "hand mixing" of chemicals because they were not part of the team |

Becherer<br>Kannett &<br>Schweitzer<br><br>1255 Powell St.<br>Emeryville, CA<br>94608<br>510-658-3600

DEFENDANT PRECISION VALVE & AUTOMATION, INC'S RESPONSE TO PLAINTIFF'S ADDITIONAL DISPUTED FACTS IN SUPPORT MOTION FOR SUMMARY JUDGMENT

| Uncontroverted Facts And Supporting Evidence | PVA's Response |
|---|---|
| | that designed SpaceX's conformal coating formula in 2012. (UF 19-20; Maxwell Dec., 2:21-23.) |
| 151.   Mr. Juarez was never provided with a Standard Operating Procedure ("SOP") for programmers for any assembly area in Space X.<br><br>(Dec. Ruben Juarez, paragraph 10)<br><br>(Dec. Christopher Mendoza, paragraph 5)<br><br>(Dec. Manuel Gutierrez)<br><br>(Ex. 4 Depo. Juarez Volume II: 172:17-25) | 151.   Objection. Irrelevant and misleading. Undisputed that he was not provided with an SOP specifically "for programmers" for "any assembly area" because SpaceX did not have any such SOPs.  This evidence does not alter the fact that he did receive the SOP that is relevant to this case, for "Polymeric Application on Electronic Assemblies."<br><br>Objection to the Mendoza and Gutierrez declarations which lack foundation and contain speculation.  Plaintiffs are "not allowed to use" either witness "to supply evidence on a motion" pursuant to F.R.C.P. 37(c)(1); *Benjamin v. B&H Education, Inc.*, 877 F.3d 1139, 1150 (9th Cir. 2017); *Medina v. Multaler, Inc.*, 547 F.Supp. 1099, 1106, fn. 8 (C.D. Cal. 2007). |
| 152.   The subject machine, a PVA 350, was manufactured, designed, and sold by PVA Inc.<br><br>(Dec. Glen Stevick, paragraph 7)<br><br>(Exhibit 22)<br><br>(Exhibit 35)<br><br>(Exhibit 34) | 152.   Undisputed. |
| 153.   The purpose of the subject machine was to safely coat circuit boards with a layer of coating material after which the circuit boards were to be placed inside rockets.<br><br>(Dec. Glen Stevick, paragraph 7) | 153.   Undisputed. |

Becherer<br>Kannett &<br>Schweitzer<br><br>1255 Powell St.<br>Emeryville, CA<br>94608<br>510-658-3600

| Uncontroverted Facts And Supporting Evidence | PVA's Response |
|---|---|
| 154. PVA Inc. also manufactures a number of other PVA models for larger operations and plant conformal coating operations as well as small hand-held machines.<br><br>(Dec. Glen Stevick, paragraph 8) | 154. Undisputed. |
| 155. Each PVA model machine is different, and the PVA 350 machine does not contain vital safety features for its intended purposes as on other models including a conveyor belt, a heighted above-board clearance inside the machine, an exhaust blower (also known as a PVA Blower), flow monitoring, additional chemical supply heads, and an external on board computer and each safety measure was readily available at the time the PVA 350 was manufactured.<br><br>(Dec. Glen Stevick, paragraph 8)<br><br>(Exhibit 12)<br><br>(Exhibit 29)<br><br>(Exhibit 11) | 155. Undisputed but immaterial that the PVA 350 did not contain a conveyor belt. Regarding the other features listed, there is nothing which indicates that any such features were necessary for safety. Mr. Stevick also has no foundation to state how the PVA 350 was configured when it was sold to SpaceX in 2009. |
| 156. Following the sale of the PVA 350 machine, the purchasers and their designated employees undergo training to learn how to operate the PVA machines.<br><br>(Dec. Glen Stevick, paragraph 9)<br><br>(Exhibit 24)<br><br>(Exhibit 31) | 156. Undisputed but immaterial. |
| 157. Based on the statements of Ruben Juarez, he was trained by PVA Inc. to put his head inside the PVA 350 machine without a ventilation mask.<br><br>(Dec. Glen Stevick, paragraph 9) | 157. Inadmissible hearsay. Also immaterial to the issues in PVA's motion which do not concern plaintiffs' general negligence claims. |

Becherer
Kannett &
Schweitzer

1255 Powell St.
Emeryville, CA
94608
510-658-3600

DEFENDANT PRECISION VALVE & AUTOMATION, INC'S RESPONSE TO PLAINTIFF'S ADDITIONAL
DISPUTED FACTS IN SUPPORT MOTION FOR SUMMARY JUDGMENT

| Uncontroverted Facts And Supporting Evidence | PVA's Response |
|---|---|
| (Exhibit 24)<br><br>(Exhibit 31) | |
| 158.   The PVA manual does not warn individuals working the PVA machines to wear facemasks with ventilators.<br><br>(Dec. Glen Stevick, paragraph 9)<br><br>(Exhibit 31)<br><br>(Exhibit 16)<br><br>(Exhibit 15) | 158.   Undisputed but immaterial because plaintiff never read PVA's manual and there is therefore "no conceivable causal connection between the representations or omissions that accompanied the product and plaintiff's injury." *Ramirez v. Plough, Inc.*, 6 Cal.4th 539, 556 (1993).  Moreover, there is no evidence that facemasks and ventilators were required when the machine was sold:  "*Unless it has been physically altered*, the machine is programmed to stop and will stop when the door is opened or ventilation is shut off, no matter what mode it is in." (Urquhart Dec., 3:7-10.) |
| 159.   Further, based on the dimensions of the machine, the use of the PVA 350 machine with a ventilation face mask is not feasible.<br><br>(Dec. Glen Stevick, paragraph 9)<br><br>(Exhibit 15)<br><br>(Exhibit 18)<br><br>(Exhibit 16)<br><br>(Exhibit 31) | 159.   Undisputed but immaterial because plaintiff never read PVA's manual and there is therefore "no conceivable causal connection between the representations or omissions that accompanied the product and plaintiff's injury." *Ramirez v. Plough, Inc.*, 6 Cal.4th 539, 556 (1993).  Moreover, there is no evidence that facemasks and ventilators were required when the machine was sold:  "*Unless it has been physically altered*, the machine is programmed to stop and will stop when the door is opened or ventilation is shut off, no matter what mode it is in." (Urquhart Dec., 3:7-10.) |
| 160.   However, other PVA models are taller and thus users are able to utilize a ventilation face mask inside those machines.<br><br>(Dec. Glen Stevick, paragraph 9) | 160.   Undisputed but immaterial. |

Becherer<br>Kannett &<br>Schweitzer<br><br>1255 Powell St.<br>Emeryville, CA<br>94608<br>510-658-3600

| Uncontroverted Facts And Supporting Evidence | PVA's Response |
|---|---|
| (Exhibit 31)<br><br>(Exhibit 18) | |
| 161.   After installing the machine, PVA Inc.  continued to service the machine, make modifications to the machine, and assist Space X to make modifications to the machine.<br><br>(Dec. Glen Stevick, paragraph 10)<br><br>(Exhibit 36)<br><br>(Exhibit 25)<br><br>(Exhibit 34)<br><br>(Exhibit 22) | 161.   Undisputed but immaterial. |
| 162.   PVA Inc. did not ensure the safety of end users.<br><br>(Dec. Glen Stevick, paragraph 10) | 162.  Objection.  Argumentative, conclusory and no foundation. |
| 163.   Indeed,   PVA   Inc.   through   its continued support and maintenance of the machine knew of Space X's use of toxic sealants in the conformal coating process.<br><br>(Dec. Glen Stevick, paragraph 10)<br><br>(Exhibit 36)<br><br>(Exhibit 25)<br><br>(Exhibit 34)<br><br>(Exhibit 22 | 163.   Undisputed but immaterial. |
| 164.   It is the custom and practice for manufactures to anticipate a reasonable degree of   misuse   and   take   this   into account in designing their product.  As such, PVA Inc. has a duty to protect end users from anticipatable misuse. | 164.  Objection.  Argumentative, conclusory and no foundation.  Dr. Stevick's opinions about California substantive law are irrelevant and inadmissible.  Under California law, misuse must be "reasonably foreseeable," and removing safety |

Becherer<br>Kannett &<br>Schweitzer<br><br>1255 Powell St.<br>Emeryville, CA<br>94608<br>510-658-3600

| Uncontroverted Facts And Supporting Evidence | PVA's Response |
|---|---|
| (Dec. Glen Stevick, paragraph 11) | devices from a machine including door interlocks and air sensors is not. *Cronin v. J.B.E. Olson Corp.* (1972) 8 Cal.3d 121, 126. |
| 165. The PVA 350 was defectively designed as the risk of the design outweighed any potential benefits and also a reasonable consumer would not expect to be harmed while using the PVA 350 as instructed.<br><br>(Dec. Glen Stevick, paragraph 12) | 165. Objection. Argumentative, conclusory and no foundation. |
| 166. PVA Inc. failed to warn about the dangers of using the machine.<br><br>(Dec. Glen Stevick, paragraph 12)<br><br>(Exhibit 18)<br><br>(Exhibit 35)<br><br>(Exhibit 31)<br><br>(Exhibit 29)<br><br>(Exhibit 15) | 166. Objection. Argumentative, conclusory and no foundation. |
| 167. PVA Inc. was aware how the machine was being utilized and did not take steps to ensure the safety of the end users.<br><br>(Dec. Glen Stevick, paragraph 12)<br><br>(Exhibit 22)<br><br>(Exhibit 15)<br><br>(Exhibit 23)<br><br>(Exhibit 31)<br><br>(Exhibit 30) | 167. Objection. Argumentative, conclusory and no foundation. Not relevant to PVA's statute of limitations defense or plaintiffs' strict product liability cause of action or failure to warn claims. |

Becherer Kannett & Schweitzer

1255 Powell St.
Emeryville, CA
94608
510-658-3600

-26-

| Uncontroverted Facts And Supporting Evidence | PVA's Response |
|---|---|
| 168.  The PVA 350 is defective in design because PVA Inc. should have taken steps during the manufacturing and design process to mitigate the risk of harmful exposure by foreseeable use of the end users including the various available coating chemicals.  This could have been easily done by:<br><br>(i)    altering the design of the PVA 350 so that the interior can be monitored with cameras and/or mirrors so that the end user need not place their head within the confined space;<br><br>(ii)   equipping the PVA 350 with interlocks that prevent the operation of the PVA 350 unless the ventilation system is operating. Air flow sensors are commonly used to ensure ventilation systems are operating;<br><br>(iii)  equipping the PVA 350 with interlocks that prevent opening the PVA 350 until the ventilation system has cleared the interior airspace of the PVA 350 of harmful vapors.  This is commonly done with timers and/or chemical sensors; and,<br><br>(iv)   eliminating possible overriding systems of bypass/interlocks at the PVA 350.<br><br>(Dec. Glen Stevick, paragraph 13)<br><br>(Exhibit 22)<br><br>(Exhibit 12)<br><br>(Exhibit 36)<br><br>(Exhibit 31)<br><br>(Exhibit 15) | 168.  Objection.  Argumentative, conclusory and no foundation.  When it was sold, the PVA 350 was equipped with both door interlocks and air flow sensors.  (UF 12; Urquhart Dec., 2:23-3:6, 21, 86, 99, 130.)<br><br>Dr. Stevick's opinions are irrelevant because plaintiffs do not make these product defect claims in the complaint. Plaintiffs' new allegations which vary from the complaint are irrelevant and may not defeat summary judgment. *Navajo Nation v. U.S. Forest Serv.*, 535 F.3d 1058, 1080 (9th Cir. 2008) (prohibiting oppositions to summary judgment motions based on factual theories not alleged in the complaint.) |

Becherer
Kannett &
Schweitzer

1255 Powell St.
Emeryville, CA
94608
510-658-3600

DEFENDANT PRECISION VALVE & AUTOMATION, INC'S RESPONSE TO PLAINTIFF'S ADDITIONAL
DISPUTED FACTS IN SUPPORT MOTION FOR SUMMARY JUDGMENT

| <u>Uncontroverted Facts And<br>Supporting Evidence</u> | <u>PVA's Response</u> |
|---|---|
| (Exhibit 16) | |
| (Exhibit 29) | |
| (Exhibit 9) | |
| (Exhibit 5) | |
| (Exhibit 11) | |
| (Exhibit 8) | |
| (Exhibit 15) | |
| (Exhibit 20) | |
| (Exhibit 21) | |
| (Exhibit 18) | |
| (Exhibit 35) | |
| (Exhibit 25) | |
| (Exhibit 13) | |
| (Exhibit 17) | |
| (Exhibit 10) | |
| (Exhibit 34) | |
| (Exhibit 24) | |
| (Exhibit 23) | |
| (Exhibit 30) | |
| (Exhibit 11) | |
| (Exhibit 33) | |
| (Ex 3 Depo. Juarez Volume 1: 158:3-9) | |
| (Ex 3 Depo. Juarez Volume 1: 121:16-19) | |
| (Ex 3 Depo. Juarez Volume 1: 156:15- | |

Becherer
Kannett &
Schweitzer

1255 Powell St.
Emeryville, CA
94608
510-658-3600

DEFENDANT PRECISION VALVE & AUTOMATION, INC'S RESPONSE TO PLAINTIFF'S ADDITIONAL
DISPUTED FACTS IN SUPPORT MOTION FOR SUMMARY JUDGMENT

| Uncontroverted Facts And Supporting Evidence | PVA's Response |
|---|---|
| 157:2)<br><br>(Ex 3 Depo. Juarez Volume 1: 127:1-129:4)<br><br>(Ex 3 Depo. Juarez Volume I: 70:20-22) | |
| 169.   PVA Inc. likewise failed to provide proper warnings to its end users as to the use of toxic materials and proper ventilation/protection.<br><br>(Dec. Glen Stevick, paragraph 14)<br><br>(Exhibit 35)<br><br>(Exhibit 18) | 169.   Objection.  The Stevick declaration is argumentative, conclusory and no foundation.  The manual states that toxic materials could be used with the machine and that users should consult the MSDS sheets for those materials.  The machine also ensured that it could not be used without breathing protection when it was sold.<br><br>The adequacy of PVA's warnings are immaterial because plaintiff never read PVA's manual and there is therefore "no conceivable causal connection between the representations or omissions that accompanied the product and plaintiff's injury."  *Ramirez v. Plough, Inc.*, 6 Cal.4th 539, 556 (1993).  Moreover, there is no evidence that facemasks and ventilators were required when the machine was sold:  "*Unless it has been physically altered*, the machine is programmed to stop and will stop when the door is opened or ventilation is shut off, no matter what mode it is in." (Urquhart Dec., 3:7-10.) |
| 170.   Specifically, the PVA 350 failed to have an adequate warning because PVA Inc. failed to take steps to warn its customers and end users that the PVA 350 machine could leak toxic chemicals or exposure could occur while using the PVA 350.<br><br>(Dec. Glen Stevick, paragraph 14)<br><br>(Exhibit 10) | 170.   Objection.  Argumentative, conclusory and no foundation.  There is no evidence that the machine could "leak toxic chemicals or exposure could occur while using the PVA 350" when the safety features were in place.<br><br>The adequacy of PVA's warnings are immaterial because plaintiff never read PVA's manual and there is therefore "no conceivable causal connection between the representations or omissions that |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Becherer
Kannett &
Schweitzer

1255 Powell St.
Emeryville, CA
94608
510-658-3600

DEFENDANT PRECISION VALVE & AUTOMATION, INC'S RESPONSE TO PLAINTIFF'S ADDITIONAL DISPUTED FACTS IN SUPPORT MOTION FOR SUMMARY JUDGMENT

| Uncontroverted Facts And Supporting Evidence | PVA's Response |
|---|---|
| (Exhibit 35)<br><br>(Exhibit 18) | accompanied the product and plaintiff's injury." *Ramirez v. Plough, Inc.*, 6 Cal.4th 539, 556 (1993).  Moreover, there is no evidence that facemasks and ventilators were required when the machine was sold:  "*Unless it has been physically altered*, the machine is programmed to stop and will stop when the door is opened or ventilation is shut off, no matter what mode it is in." (Urquhart Dec., 3:7-10.) |
| 171.  PVA Inc. should have provided warnings and instruction that the PVA 350 should thus either not be utilized with dangerous chemicals -- and a more robust model would be more suitable for use with Space X; or the end user must use breathing protection during its operation.<br><br>(Dec. Glen Stevick, paragraph 14)<br><br>(Exhibit 31)<br><br>(Exhibit 15)<br><br>(Exhibit 16) | 171.  Objection. Argumentative, conclusory and no foundation.  There is no evidence that breathing protection would have been necessary when the safety features were in place.<br><br>The adequacy of PVA's warnings are immaterial because plaintiff never read PVA's manual and there is therefore "no conceivable causal connection between the representations or omissions that accompanied the product and plaintiff's injury." *Ramirez v. Plough, Inc.*, 6 Cal.4th 539, 556 (1993).  Moreover, there is no evidence that facemasks and ventilators were required when the machine was sold:  "*Unless it has been physically altered*, the machine is programmed to stop and will stop when the door is opened or ventilation is shut off, no matter what mode it is in." (Urquhart Dec., 3:7-10.) |
| 172.  PVA Inc. was negligent in the manufacture, design, testing, warnings, sale, and service of the PVA Inc. 350.<br><br>(Dec. Glen Stevick, paragraph 15)<br><br>(Exhibit 31)<br><br>(Exhibit 29) | 172.  Objection. Argumentative, conclusory and no foundation.  Dr. Stevick's opinions about California substantive law are irrelevant and inadmissible. |

Becherer
Kannett &
Schweitzer

1255 Powell St.
Emeryville, CA
94608
510-658-3600

| Uncontroverted Facts And Supporting Evidence | PVA's Response |
|---|---|
| (Exhibit 22) | |
| (Exhibit 9) | |
| (Exhibit 5) | |
| (Exhibit 11) | |
| (Exhibit 8) | |
| Exhibit 15) | |
| (Exhibit 20) | |
| (Exhibit 21) | |
| (Exhibit 18) | |
| (Exhibit 13) | |
| (Exhibit 35) | |
| 173.   As PVA Inc. knew, the PVA 350 Inc. lacked various safety features, PVA Inc. failed to adequate train and warn end users of the danger in their operation manual, during training sessions, or on the machine itself.<br><br>(Dec. Glen Stevick, paragraph 15)<br><br>(Exhibit 31)<br><br>(Exhibit 15)<br><br>(Exhibit 16)<br><br>(Exhibit 29)<br><br>(Exhibit 22)<br><br>(Exhibit 9)<br><br>(Exhibit 11)<br><br>(Exhibit 8) | 173.  Objection.  Argumentative, conclusory and no foundation.  Dr. Stevick's opinions about California substantive law are irrelevant and inadmissible. |

Becherer
Kannett &
Schweitzer

1255 Powell St.
Emeryville, CA
94608
510-658-3600

DEFENDANT PRECISION VALVE & AUTOMATION, INC'S RESPONSE TO PLAINTIFF'S ADDITIONAL
DISPUTED FACTS IN SUPPORT MOTION FOR SUMMARY JUDGMENT

| Uncontroverted Facts And Supporting Evidence | PVA's Response |
|---|---|
| (Exhibit 15) (Exhibit 20) (Exhibit 21) | |
| 174.   Further, PVA Inc. knew how Space X was utilizing the machine and the chemicals utilized during the conformal coating process, but PVA Inc. failed to provide sufficient safety features or warn of the danger and thus the PVA 350 caused dangerous and possibly life-threatening exposure and injures. (Dec. Glen Stevick, paragraph 15) (Exhibit 22) (Exhibit 25) (Exhibit 34) (Exhibit 24) (Exhibit 33) | 174.   Objection. Argumentative, conclusory and no foundation. Dr. Stevick's opinions about California substantive law are irrelevant and inadmissible. |
| 175.   PVA Inc. should have never sold this PVA 350 to Space X because it was involved in the avionics industry which often requires the use of dangerous chemicals in the coating process, but PVA Inc. sold and maintained this machine while in the service of Space X with the knowledge that the end users could easily be injured. (Dec. Glen Stevick, paragraph 15) (Exhibit 22) (Exhibit 25) (Exhibit 34) (Exhibit 29) | 175.   Objection. Argumentative, conclusory and no foundation. Dr. Stevick's opinions about California substantive law are irrelevant and inadmissible. |

Becherer
Kannett &
Schweitzer

1255 Powell St.
Emeryville, CA
94608
510-658-3600

DEFENDANT PRECISION VALVE & AUTOMATION, INC'S RESPONSE TO PLAINTIFF'S ADDITIONAL
DISPUTED FACTS IN SUPPORT MOTION FOR SUMMARY JUDGMENT

| Uncontroverted Facts And Supporting Evidence | PVA's Response |
|---|---|
| (Exhibit 5)<br><br>(Exhibit 9)<br><br>(Exhibit 11) | |
| 176. The PVA 350 was defective because it lacked adequate warnings and the only warning on the device pertained to the voltage hazard.<br><br>(Dec. Glen Stevick, paragraph 16)<br><br>(Exhibit 35) | 176. Objection. Argumentative, conclusory and no foundation. Dr. Stevick's opinions about California substantive law are irrelevant and inadmissible. The fact that warnings in PVA's manual were not physically "on the product" is irrelevant. *Temple v. Velcro USA, Inc.*, 148 Cal.App.3d 1090, 1094-1095 (1983). |
| 177. Specifically, there needed to be a warning of the risk of serious injury or death if an end user uses this machine in the avionics industry due to the use of the dangerous chemicals used in the conformal coating process.<br><br>(Dec. Glen Stevick, paragraph 16)<br><br>(Exhibit 22)<br><br>(Exhibit 29) | 177. Objection. Argumentative, conclusory and no foundation. Dr. Stevick's opinions about California substantive law are irrelevant and inadmissible. The adequacy of PVA's warnings are immaterial because plaintiff never read PVA's manual and there is therefore "no conceivable causal connection between the representations or omissions that accompanied the product and plaintiff's injury." *Ramirez v. Plough, Inc.*, 6 Cal.4th 539, 556 (1993). |
| 178. Further, PVA Inc. failed to adequately design and train its employees – and hence its end users -- how to safely utilize the bypass system.<br><br>(Dec. Glen Stevick, paragraph 16)<br><br>(Exhibit 13)<br><br>(Exhibit 17)<br><br>(Exhibit 22)<br><br>(Exhibit 29)<br><br>(Exhibit 9) | 178. Objection. Argumentative, conclusory and no foundation. Also immaterial to the issues in PVA's motion which do not concern plaintiffs' general negligence claims. |

Becherer
Kannett &
Schweitzer

1255 Powell St.
Emeryville, CA
94608
510-658-3600

DEFENDANT PRECISION VALVE & AUTOMATION, INC'S RESPONSE TO PLAINTIFF'S ADDITIONAL DISPUTED FACTS IN SUPPORT MOTION FOR SUMMARY JUDGMENT

| <u>Uncontroverted Facts And<br>Supporting Evidence</u> | <u>PVA's Response</u> |
|---|---|
| (Exhibit 5)<br><br>(Exhibit 11)<br><br>(Exhibit 8)<br><br>(Exhibit 15)<br><br>(Exhibit 20)<br><br>(Exhibit 21)<br><br>(Exhibit 18)<br><br>(Exhibit 24)<br><br>(Exhibit 23)<br><br>(Exhibit 30)<br><br>(Exhibit 33) | |
| 179.   Further, PVA Inc. failed to equip the PVA 350 with design protections, and failed to warn users how to safely operate the machine.<br><br>(Dec. Glen Stevick, paragraph 16)<br><br>(Exhibit 22)<br><br>(Exhibit 29)<br><br>(Exhibit 9)<br><br>(Exhibit 5)<br><br>(Exhibit 11)<br><br>(Exhibit 8)<br><br>(Exhibit 15)<br><br>(Exhibit 20)<br><br>(Exhibit 21) | 179. Objection. Argumentative, conclusory and no foundation.  Dr. Stevick's opinions about California substantive law are irrelevant and inadmissible. |

Becherer
Kannett &
Schweitzer

1255 Powell St.
Emeryville, CA
94608
510-658-3600

DEFENDANT PRECISION VALVE & AUTOMATION, INC'S RESPONSE TO PLAINTIFF'S ADDITIONAL
DISPUTED FACTS IN SUPPORT MOTION FOR SUMMARY JUDGMENT

| Uncontroverted Facts And Supporting Evidence | PVA's Response |
|---|---|
| (Exhibit 18)<br><br>(Exhibit 24)<br><br>(Exhibit 23)<br><br>(Exhibit 30)<br><br>(Exhibit 33) | |
| 180.   It was clearly foreseeable that end users such as those in the Avionics industry would utilize the PVA 350 with dangerous chemicals utilized in the conformal coating process, and PVA Inc. was aware of the specific chemicals being utilized by Space X as stated in the emails/Declarations.<br><br>(Dec. Glen Stevick, paragraph 16)<br><br>(Exhibit 22)<br><br>(Exhibit 28) | 180.   Objection.  Argumentative, conclusory and no foundation.  Also immaterial what was "foreseeable" to PVA which concerns plaintiffs' general negligence claims which are not addressed in PVA's motion.  Under California law, strict liability is prohibited even when it is "foreseeable that the products will be used together," unless such use is actually "necessary." *O'Neil v. Crane Co.*, 53 Cal.4th 335, 361 (2012).  Plaintiffs do not address this authority. |
| 181.   There should have been a stamp on the PVA 350 as well as a hardcopy set of instructions in the box specifically warning customers not to use the PVA 350 with dangerous chemicals commonly utilized in the avionics conformal coating process, or PVA should have provided sufficient safety measures to ensure its safe operating conditions under these circumstances.<br><br>(Dec. Glen Stevick, paragraph 16)<br><br>(Exhibit 35) | 181.   Objection.  Argumentative, conclusory and no foundation.  Dr. Stevick's opinions about California substantive law are irrelevant and inadmissible. The fact that warnings in PVA's manual were not physically "on the product" is irrelevant. *Temple v. Velcro USA, Inc.*, 148 Cal.App.3d 1090, 1094-1095 (1983). |
| 182.   Thus, Plaintiff timely filed his Complaint on 2/28/17—less than two years after the product of his reasonable investigation occurred in March of 2015.<br><br>(Exhibit 38) | 182.   Objection.  Argumentative and conclusory. |

Becherer<br>Kannett &<br>Schweitzer<br><br>1255 Powell St.<br>Emeryville, CA<br>94608<br>510-658-3600

-35-
DEFENDANT PRECISION VALVE & AUTOMATION, INC'S RESPONSE TO PLAINTIFF'S ADDITIONAL DISPUTED FACTS IN SUPPORT MOTION FOR SUMMARY JUDGMENT

| Uncontroverted Facts And Supporting Evidence | PVA's Response |
|---|---|
| 183.  PVA Inc was aware of the chemicals being utilized with the PVA 350 including the transition to Arathane.<br><br>(See Exhibit 22, PVA 4463-4481) | 183.  Objection. Argumentative, conclusory and no foundation.  Also immaterial whether PVA was "aware" which concerns plaintiffs' general negligence claims which are not addressed in PVA's motion.  Under California law, strict liability is prohibited even when it is "foreseeable that the products will be used together," unless such use is actually "necessary." *O'Neil v. Crane Co.*, 53 Cal.4th 335, 361 (2012).  Plaintiffs do not address this authority. |
| 184.  The April 11, 2012 conformal coating video with Space X boards utilized the **same chemicals as used at Space X at PVA Inc**.<br><br>(See Exhibit 9 and Exhibit 22) | 184.  Undisputed but immaterial. This evidence is relevant to plaintiffs' general negligence claims which are not addressed in PVA's motion.  Under California law, strict liability is prohibited even when it is "foreseeable that the products will be used together," unless such use is actually "necessary." *O'Neil v. Crane Co.*, 53 Cal.4th 335, 361 (2012).  Plaintiffs do not address this authority. |
| 185.  On September 19, 2013, PVA Inc. made further modifications to the subject machine including reworking the dispense system on the machine to connect one cartridge to the one gallon tank for "**automatic solvent flush of Arathane 5705**."<br><br>(Exhibit 22, PVA 23 and 24) | 185.  Undisputed but immaterial. This evidence is relevant to plaintiffs' general negligence claims which are not addressed in PVA's motion. Under California law, strict liability is prohibited even when it is "foreseeable that the products will be used together," unless such use is actually "necessary." *O'Neil v. Crane Co.*, 53 Cal.4th 335, 361 (2012).  Plaintiffs do not address this authority. |
| 186.  On July 30, 2009, PVA/Andrew Haraburda serviced the W3267 (subject PVA 350 machine) and this description of the work/changes included:  adding solvent flush option (6 oz cartridge, 3 way ball valve, O-ISPSI Precision Regulator, which shows PVA Inc. was continuing to | 186.  Undisputed but immaterial. This evidence is relevant to plaintiffs' general negligence claims which are not addressed in PVA's motion. Under California law, strict liability is prohibited even when it is "foreseeable that the products will be used together," |

Becherer
Kannett &
Schweitzer

1255 Powell St.
Emeryville, CA
94608
510-658-3600

-36-

| Uncontroverted Facts And Supporting Evidence | PVA's Response |
|---|---|
| modify and upgrade the machine. Then PVA Inc. specifically recommended Space X alter the solvent to a different solvent stating "Space X may need to use a different solvent (i.e. Xylene)."<br><br>(Exhibit 22 PVA 4449-4452) | unless such use is actually "necessary." *O'Neil v. Crane Co.*, 53 Cal.4th 335, 361 (2012). Plaintiffs do not address this authority. |
| 187. Pursuant to email chain dated March 13, 2012 Jonathan Urquhart (PVA) was aware of Space X's use of Arathane 5750  The email specifically states, "I think David has spoken to you about our customer Space X. They build full blown rocket ships. They plan on pre-mixing this material part A part B and a 3rd part, thinner in small batches apply to board and the purge system because of shelf life once mixed. Sounds screwy to me." They were looking for a demo on the 27th of March.<br><br>(Exhibit 22, PVA 4463-4481) | 187. Undisputed but immaterial. This evidence is relevant to plaintiffs' general negligence claims which are not addressed in PVA's motion. Under California law, strict liability is prohibited even when it is "foreseeable that the products will be used together," unless such use is actually "necessary." *O'Neil v. Crane Co.*, 53 Cal.4th 335, 361 (2012). Plaintiffs do not address this authority. |
| 188. Pursuant to email dated March 15, 2012 to Jonathan Urquhart, PVA was preparing a demo on the PVA 650 and **PVA were working with the same chemical materials Space X was utilizing, but PVA did not want Space X to know and PVA indicated they were going to convey to Space X that the materials were similar, but not the exact same**.<br><br>(Exhibit 22, PVA 4463-4481) | 188. Objection. Argumentative and irrelevant. This misleading, argumentative characterization is only relevant to plaintiffs' general negligence claims which are not addressed in PVA's motion. Under California law, strict liability is prohibited even when it is "foreseeable that the products will be used together," unless such use is actually "necessary." *O'Neil v. Crane Co.*, 53 Cal.4th 335, 361 (2012). Plaintiffs do not address this authority. |
| 189. Pursuant to email dated March 30, 2012, the test at PVA Inc. was rescheduled to 4-11-12 to view the 3 part mixing process. (Exhibit 22, PVA 4463-4481)<br><br>(Exhibit 22, PVA 4463-4481) | 189. Objection. Argumentative and irrelevant. This misleading, argumentative characterization is only relevant to plaintiffs' general negligence claims which are not addressed in PVA's motion. PVA does not dispute what is stated in the documents which is immaterial to the issues before this |

Becherer
Kannett &
Schweitzer

1255 Powell St.
Emeryville, CA
94608
510-658-3600

| Uncontroverted Facts And Supporting Evidence | PVA's Response |
|---|---|
| | Court. |
| 190. Pursuant to email from David Gomez to Johnathan (PVA) Urquhart dated May 11, 2012 at 2:11 p.m., Space X talked about retrofitting the PVA 350, and then subsequently there was confirmation from Jon indicating **Space X wanted to duplicate what was done during the visit.**<br><br>(Exhibit 22, PVA 4463-4481) | 190. Objection. Argumentative and irrelevant. This misleading, argumentative characterization is only relevant to plaintiffs' general negligence claims which are not addressed in PVA's motion. PVA does not dispute what is stated in the documents which is immaterial to the issues before this Court. |
| 191. Jon Urquart performed the demo for Space X on 4-11-12.<br><br>(Exhibit 22, PVA 4463-4481) | 191. Objection. Argumentative and irrelevant. This misleading, argumentative characterization is only relevant to plaintiffs' general negligence claims which are not addressed in PVA's motion. PVA does not dispute what is stated in the documents which is immaterial to the issues before this Court. |
| 192. On December 3, 2012 at 12:01 PM David Gomez (PVA) wrote Scott Abarta asking for the **two part material brand and part # as well as any MSDS and data sheets**. Also, there was a request for a shot size and cycle time per part if possible.<br><br>(Exhibit 22) | 192. Objection. Argumentative and irrelevant. This misleading, argumentative characterization is only relevant to plaintiffs' general negligence claims which are not addressed in PVA's motion. PVA does not dispute what is stated in the documents which is immaterial to the issues before this Court. |
| 193. On September 18, 2013 at 12:41 p.m., **Mr. Gomez (PVA) indicated that this is not the first time they have done a two part coating system and he thought they were putting to many resources into this. The email specifically references Arathane** 5750.<br><br>(Exhibit 22) | 193. Objection. Argumentative and irrelevant. This misleading, argumentative characterization is only relevant to plaintiffs' general negligence claims which are not addressed in PVA's motion. PVA does not dispute what is stated in the documents which is immaterial to the issues before this Court. |
| 194. On September 13, 2013, from Duc Phan (Space X) to Jonathan Connelly, Michael R. Leonard (ccing Richard | 194. Objection. Argumentative and irrelevant. This misleading, argumentative characterization is only |

Becherer
Kannett &
Schweitzer

1255 Powell St.
Emeryville, CA
94608
510-658-3600

| Uncontroverted Facts And Supporting Evidence | PVA's Response |
|---|---|
| Bievenue and David Filbert) explained the process with pictures. **Specifically, he indicated that Space X removed the hoses from the spray dispensing head and connected the hoses from the Arathane material and solvent to it. He further explained when the Arathane material was not in use they vaped the solvent hose and connect the Arathane material hose to the other head just for a place holder. He also explained that Arathane 5750 part A and B is mixed together and poured in the first reservoir and the second reservoir is the solvent use to thin out the mixed Arathane for spray requirement**.<br><br>(Exhibit 22) | relevant to plaintiffs' general negligence claims which are not addressed in PVA's motion.  PVA does not dispute what is stated in the documents which is immaterial to the issues before this Court.  Under California law, strict liability is prohibited even when it is "foreseeable that the products will be used together," unless such use is actually "necessary."  *O'Neil v. Crane Co.*, 53 Cal.4th 335, 361 (2012).  Plaintiffs do not address this authority |
| 195.   The sales order dated September 25, 2013   indicated   PVA   job   number SPCX2115 W3267 indicated **PVA was there to provide onsite support for Mechanical Electrical Programming Fluid Delivery.**<br><br>(Exhibit 22) | 195.  Objection.  Argumentative and irrelevant.  This misleading, argumentative characterization is only relevant to plaintiffs' general negligence claims which are not addressed in PVA's motion.  PVA does not dispute what is stated in the documents which is immaterial to the issues before this Court.  Under California law, strict liability is prohibited even when it is "foreseeable that the products will be used together," unless such use is actually "necessary."  *O'Neil v. Crane Co.*, 53 Cal.4th 335, 361 (2012).  Plaintiffs do not address this authority. |
| 196.   PVA Inc. circulated diagram clearly states **Arathane**.  Additionally, there is a quote work sheet for the 3 way assembly, pressure tank, hoses, fittings, valves as well as programming and engineering.<br><br>(Ex 22, PVA 340-347) | 196.  Objection.  Argumentative and irrelevant.  This misleading, argumentative characterization is only relevant to plaintiffs' general negligence claims which are not addressed in PVA's motion.  PVA does not dispute what is stated in the documents which is immaterial to the issues before this Court.  Under California law, strict liability is prohibited even when it is |

Becherer
Kannett &
Schweitzer

1255 Powell St.
Emeryville, CA
94608
510-658-3600

DEFENDANT PRECISION VALVE & AUTOMATION, INC'S RESPONSE TO PLAINTIFF'S ADDITIONAL DISPUTED FACTS IN SUPPORT MOTION FOR SUMMARY JUDGMENT

| Uncontroverted Facts And Supporting Evidence | PVA's Response |
|---|---|
| | "foreseeable that the products will be used together," unless such use is actually "necessary." *O'Neil v. Crane Co.*, 53 Cal.4th 335, 361 (2012). Plaintiffs do not address this authority. |
| 197.  The Exhaust Verification Process shows **some machines** have an auto shut down.<br><br>(Exhibit 29, PVA 64) | 197.  Objection.  Argumentative, ambiguous and misleading.  PVA's 2009 sales records showed that a safety check was performed which showed that "low level exhaust sensor tested and confirmed operational."  (Urquhart Dec., 21.) |
| 198.  A user has to visually inspect the position of a needle with respect to a calibration point and the user may have to physically reposition the needle.<br><br>(Exhibit 29, PVA 69) | 198.  Undisputed but irrelevant and immaterial. |
| 199.  The PVA Product Overview indicated a number of safety items are not included on the PVA 350 automatically such as:  conveyor type, passive programming camera, XY fiducial camera, exhaust blower, onboard computer, and flow monitoring.<br><br>(Exhibit 29, PVA 220) | 199.  Undisputed but immaterial what safety items are included "automatically."  The PVA 350 at issue in this case included a camera, flow monitoring, door interlocks and other safety features when it was sold.  (UF 12; Urquhart Dec., 2:23-3:6, 21, 86, 99, 130.) |
| 200.  Exhibit 5, Video of the PVA 350 shows the machine is far too small for someone to use while wearing a ventilator.<br><br>(Exhibit 5) | 200.  Undisputed but immaterial.  There is no evidence that a ventilator would have been needed when PVA's machine was sold and all necessary safety features were intact.  (UF 12; Urquhart Dec., 2:23-3:6, 21, 86, 99, 130.) |
| 201.  Pursuant to email dated December 15, 2014 on 11:47 a.m. Bievenue emailed to Matupang indicating the only way to know for sure the mix ratio is coming out of a spray valve is with flow monitors and if you don't have flow monitors you are | 201.  Undisputed but immaterial because it is undisputed that the PVA 350 sold to SpaceX had air flow monitors.  (UF 12; Urquhart Dec., 2:23-26, 21.)<br><br>Plaintiffs "undisputed fact" is highly misleading because this email refers to a |

Becherer
Kannett &
Schweitzer

1255 Powell St.
Emeryville, CA
94608
510-658-3600

DEFENDANT PRECISION VALVE & AUTOMATION, INC'S RESPONSE TO PLAINTIFF'S ADDITIONAL DISPUTED FACTS IN SUPPORT MOTION FOR SUMMARY JUDGMENT

| Uncontroverted Facts And Supporting Evidence | PVA's Response |
|---|---|
| "spraying blind."<br><br>(Exhibit 30) | product that was being designed in December of 2014, several months after Ruben Juarez stopped working at SpaceX. This machine which was actually sold in 2015 was a completely different product from the PVA 350, ultilized "meter mix" technology not used in the PVA 350, and had a different model number, MX4000-VR. (Loftus Brewer Dec., 462-463; Urquhart Dec., 34, 41.) As shown by the referenced email, PVA recommended the use of flow monitors on this product and there is no indication that flow monitors were not used. |
| 202. The system debug dated 5-1-09 indicates the machine needed the material lines, fixed or replaced the **Lexon side**, valve/2 micrometer needs to be, and they needed **to add a camera cable in the back of the machine**. Further, PVA Inc. presents no evidence the Lexon glass door was timely replaced or the camera cord was ever installed.<br><br>(Exhibit 13, PVA 277) | 202. Objection. Plaintiffs' characterization of this documents is highly misleading. The document is dated May 1, 2009 and includes the following action items: (1) "fix or replace lexan side" and (2) "**label** camera cable @ rear of machine." It does not state "add" camera cable. In any event, next to these action items, it states they were "completed" by PVA workers "DL" and "DP" on May 14, 2009. (Loftus Brewer Dec., 155.) The product was then shipped to SpaceX on or about May 22, 2009. (Urquhart Dec., 23.) PVA does not dispute what is actually stated in these documents. |
| 203. Not all PVA 350s have the alleged safety features including an exhaust fan/conveyer belt/an auto shut down/exhaust blower/flow monitoring, and cameras. Further, pursuant to training provided by PVA Inc., there are bypass systems that must be utilized so programmers can complete their jobs.<br><br>(Exhibit 17, PVA 63, 64, 219-220, 277, | 203. Undisputed and irrelevant what "not all PVA 350s have" or do not have. On the PVA 350 at issue in this case, which was customized for SpaceX, the "door bypass switch" did not shut off any safety features of the machine. (UF 12; Urquhart Dec., 2:23-3:6, 21, 86, 99, 130.) |

Becherer Kannett & Schweitzer

1255 Powell St.
Emeryville, CA
94608
510-658-3600

DEFENDANT PRECISION VALVE & AUTOMATION, INC'S RESPONSE TO PLAINTIFF'S ADDITIONAL
DISPUTED FACTS IN SUPPORT MOTION FOR SUMMARY JUDGMENT

| **Uncontroverted Facts And Supporting Evidence** | **PVA's Response** |
|---|---|
| 279-280)<br><br>(Ex 3 Depo. Juarez Volume I: 145:25-147:2) | |
| 204.  The manual was **only produced electronically**.  (No hardcopy.)<br><br>(Exhibit 31, PVA30-32) | 204.  Undisputed and immaterial. |
| 205.  On 6-23-2009 to 6-24-2009, PVA Inc. installed and serviced the W3267 machine at Space X.  The work was performed by Andrew Haraburde.  He trained Juan Sotelo and Marsha Thompson in installation and training.  The installation check list specifically indicated various items were working, but there is an X versus a check mark on the pump and SEMEA boxes. The description of the work/changes including "modified main program (mo2)."<br><br>(Exhibit 36 PVA 4449-4452) | 205.  Undisputed and immaterial.  None of this has anything to do with the safety features of the PVA 350. |
| 206.  The PVA Manual does not warn users to use a face mask or ventilator.<br><br>(Exhibit 18, PVA 40) | 206.  Undisputed but immaterial because plaintiff never read PVA's manual and there is therefore "no conceivable causal connection between the representations or omissions that accompanied the product and plaintiff's injury." *Ramirez v. Plough, Inc.*, 6 Cal.4th 539, 556 (1993).  Moreover, there is no evidence that facemasks and ventilators were required when the machine was sold: "*Unless it has been physically altered*, the machine is programmed to stop and will stop when the door is opened or ventilation is shut off, no matter what mode it is in."  (Urquhart Dec., 3:7-10.) |

Becherer
Kannett &
Schweitzer

1255 Powell St.
Emeryville, CA
94608
510-658-3600

DEFENDANT PRECISION VALVE & AUTOMATION, INC'S RESPONSE TO PLAINTIFF'S ADDITIONAL
DISPUTED FACTS IN SUPPORT MOTION FOR SUMMARY JUDGMENT

| Uncontroverted Facts And Supporting Evidence | PVA's Response |
|---|---|
| 207. The warning on the sides states, "WARNING, Hazardous voltage. Power shall be disconnected before enclosure is opened. Enclosure shall be closed before power is restored."<br><br>(Exhibit 35) | 207. Undisputed and immaterial. |
| 208. The Final Shipment Sign-Off does not indicate the operating manual was sent to Space X only machine photos were taken. Also, there is an issue of facts as to whether the **exhaust switch was included.**<br><br>(Exhibit 16, PVA 0272) | 208. Objection. Plaintiff's characterization is misleading and there is no foundation for plaintiff's counsel's suggestions about this document. Essentially nothing is checked on this document which on its face shows it was never completed. The relevant pre-sale checklist which immediately precedes this document in PVA's document production (PVA 0270 to PVA 0271) states that all safety systems for the machine were checked and confirmed. The undisputed evidence establishes that the PVA manual was sent to SpaceX on or before June 24, 2009 (Urquhart Dec., 2:15-22, 60, 61), and Plaintiffs elsewhere acknowledge it was sent. (Pl. Sep. Stmt. 204.) |
| 209. Mr. Juarez had to place his head into the machine to see what portions were covered because he would not be able to see into the machine by just looking through the window.<br><br>(Ex 4 Depo. Juarez Volume II: 226:12-227:6) | 209. Undisputed but immaterial. "Unless it has been physically altered, the machine is programmed to stop and will stop when the door is opened or ventilation is shut off, no matter what mode it is in." (Urquhart Dec., 3:7-10.) |
| 210. Mr. Juarez purchased the filtration system when the PVA 350 moved to the larger room with additional equipment. | 210. Undisputed. |

Becherer
Kannett &
Schweitzer

1255 Powell St.
Emeryville, CA
94608
510-658-3600

DEFENDANT PRECISION VALVE & AUTOMATION, INC'S RESPONSE TO PLAINTIFF'S ADDITIONAL
DISPUTED FACTS IN SUPPORT MOTION FOR SUMMARY JUDGMENT

| Uncontroverted Facts And Supporting Evidence | PVA's Response |
|---|---|
| (Ex 3 Depo. Juarez Volume 1: 77:21-78:2)<br><br>(Ex 3 Depo. Juarez Volume I, 79:25-80:4)<br><br>(Ex 3 Depo. Juarez Volume 1: 60:21-61:4) | |
| 211.   The equipment in the rooms where Mr. Juarez was working was constantly changing. | 211.  Undisputed and immaterial. |
| 212.  Mr. Juarez would work with John Pena, but only knew Gregory Maxwell was some kind of supervisor, but he did not work for him.   Occasionally, Mr. Juarez would informally let Mr. Maxwell know what he was working on.<br><br>(Ex 3 Depo. Ruben Juarez Volume 1, 35:1-36:6) | 212.  The referenced testimony given by Mr. Juarez is undisputed and immaterial. Undisputed that Mr. Maxwell was plaintiff's "supervisor." |

DATED:  September 17, 2018          BECHERER KANNETT & SCHWEITZER


                                By:    /s/     Alex P. Catalona_____
                                       Alex P. Catalona
                                       Attorneys for Defendant
                                       PRECISION VALVE & AUTOMATION, INC.

Becherer Kannett & Schweitzer

1255 Powell St.
Emeryville, CA 94608
510-658-3600

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on September 17, 2018, a true and correct copy of **DEFENDAN T PRECISION VALVE & AUTOMATION, INC'S RESPONSE TO PLAINTIFF'S ADDITIONAL DISPUTED FACTS IN SUPPORT MOTION FOR SUMMARY JUDGMENT** has been served via ECF upon all counsel of record in the Court's electronic filing system.

By:    /s/ Jerry Dumlao

Becherer
Kannett &
Schweitzer

1255 Powell St.
Emeryville, CA
94608
510-658-3600