O

# United States District Court
# Central District of California

| | |
|---|---|
| RUBEN JUAREZ; and ISELA HERNANDEZ<br><br>        Plaintiffs,<br><br>    v.<br><br>PRECISION VALVE & AUTOMATION, INC., a corporation; and DOES 1–20,<br><br>        Defendants. | Case No. 2:17-cv-03342-ODW(GJS)<br><br>**ORDER GRANTING, IN PART, AND DENYING, IN PART, DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [48]** |

## I. INTRODUCTION

Plaintiffs, Ruben Juarez ("Juarez") and Isela Hernandez ("Hernandez"), alleged that Defendant Precision Valve & Automation, Inc. ("Defendant") manufactured, designed, and sold a machine, the PVA 350, that caused Plaintiffs' injuries. (First Am. Compl. ("FAC") ¶ 4, ECF No. 32.) Specifically, Juarez worked at SpaceX and used the PVA 350 to spray chemicals on circuit boards. (FAC ¶ 14.) As a result of Juarez's inhalation of the chemicals used in the PVA 350, Juarez developed, among other symptoms, severe headaches, nausea, shortness of breath, dizziness, memory loss, respiratory issues, and stomach pains, and has been unable to work since approximately May or June of 2014. (FAC ¶¶ 14, 18, 27, 30.) Plaintiffs also bring a

claim for loss of consortium for Hernandez's loss of love, care, companionship, comfort, assistance, protection, society, and moral support. (FAC ¶¶ 48, 49.)

Currently before the Court is Defendant's Motion for Summary Judgment. (Mot. for Summ. J. ("MSJ"), ECF No. 49.)[1] Defendant argues that California's two-year statute of limitations bars Plaintiffs' claims. Additionally, Defendant moves for partial summary judgment on Plaintiffs' strict products liability failure to warn claim and on Plaintiffs' strict products liability design defect claim. (MSJ 1–2.)

For the following reasons, the Court **GRANTS, IN PART, AND DENIES, IN PART**, Defendant's Motion. (ECF No. 48.)[2]

## II. PRELIMINARY MATTERS

In response to Defendant's 32-page Statement of Uncontroverted Facts and Conclusions of Law (hereinafter, "DUF") (ECF No. 50), Plaintiffs filed a 591-page Statement of Genuine Disputes of Material Facts (hereinafter, "PSMF"). (ECF No. 64.) Not only did Plaintiffs violate Central District of California, Local Rule 56-2 requiring a "**concise** 'Statement of Genuine Disputes,'" but in many instances, the material facts are not in dispute, and are instead the result of Plaintiffs' counsel's lackadaisical response to the Statement of Uncontroverted Facts and overuse of copy and paste. C.D. Cal. L.R. 56-2 (emphasis added). For example, consider uncontroverted fact number 16: "Juarez testified that when he worked at SpaceX he never look[ed] at this manual or asked to look at this manual for the PVA 350." (DUF 16.) In response, Plaintiffs curiously offer resistance: "Disputed to the extent Defendant infers that Mr. Juarez saw the manual as Mr. Juarez was never provided the manual." The undisputed fact unambiguously states that Juarez never saw the manual, yet it is remarkable that Plaintiffs believe it suggests that Juarez saw the manual.

---

[1] On September 17, 2018, PVA filed its Reply in support of the Motion for Summary Judgment. (Reply, ECF No. 69.) The Reply exceeds the page limit set forth in this Court's local rules, Rule VII.A.3, which provides that "[r]eplies shall not exceed 12 pages." Accordingly, this Court does not consider anything in the Reply beyond page 12.

[2] After considering the papers filed in connection with this Motion, the Court deemed this matter appropriate for decision without oral argument. Fed. R. Civ. P. 78(b); C.D. Cal. L.R. 7-15.

Plaintiffs' 591-page Statement of Genuine Disputes of Material Facts is littered with the same repetitive statement that undisputed facts are disputed, when in fact, they are not. Plaintiffs' copy and paste job displays a lack of effort and a disregard for the Court. The same can be said of Plaintiffs' evidentiary objections in opposition to the motion for summary judgment. (ECF No. 65.) Plaintiffs are hoping that the Court will assume there are some material disputes of fact in the 591 pages. However, the Court "is not required to comb the record to find some reason to deny a motion for summary judgment." *Carmen v. San Francisco Unified School Dist.*, 237 F.3d 1026, 1029 (9th Cir. 2001) (internal quotation marks omitted); *see also Northwest Bank and Trust Co. v. First Illinois Nat'l Bank*, 354 F.3d 721, 725 (8th Cir. 2003) (affirming the district court's sanction that the defendant was deemed to have admitted all material facts due to the defendant's voluminous filings in violation of the local rules). Nor is it this Court's duty to find the needle in the haystack in a 591-page filing. *See Keenan v. Allan*, 91 F.3d 1275, 1278 (9th Cir. 1996).

The Court does not rely on most of the evidence under objection and thus many of the objections are largely moot. *See Smith v. Cty. of Humbolt*, 240 F. Supp. 2d 1109, 1115-16 (N.D. Cal. 2003). To the extent that any other evidence is relied on in this Order without discussion of the objection, the relevant objections are overruled. *See Burch v. Regents of Univ. of Cal.*, 433 F. Supp. 2d 1110, 1118, 1122 (E.D. Cal. 2006) (concluding that "the court will [only] proceed with any necessary rulings on defendants' evidentiary objections"). Moreover, after reviewing Plaintiffs' 591-page Statement of Genuine Disputes of Facts and the evidence in support of the facts, the Court finds that the facts as recited below, and unless otherwise noted, are undisputed.

### III. FACTUAL BACKGROUND

The PVA 350 is a conformal coating machine manufactured by Defendant. (DUF 3.) Defendant sold one PVA 350 to SpaceX in 2009. (DUF 4.) The machine coats printed circuit boards with a polymeric film that conforms to the board's

contours to protect against moisture, dust, chemicals, and temperature extremes. (DUF 5.)

The PVA 350 monitored the exhaust flow such that the machine would turn off if the exhaust system was not working. (DUF 7.) Additionally, if the door of the machine was opened, the spraying of materials will stop. (DUF 9–11.) The machine cannot be operated until a safety check is performed; specifically, the operator must enter the safety check and complete it successfully, otherwise, the machine halts all operation. (DUF 12.) The PVA 350's manual also warned users not to disable the safety features of the machine. (DUF 13.) However, PVA trained SpaceX employees on how to bypass these safety functions. (PSMF 11.)

Plaintiff Ruben Juarez worked as a programmer for SpaceX from January 2012 to March 2014. (DUF 27.) Juarez's job was to program the PVA 350 to spray Arathane 5750A, Arathane 5750B, Arathane 5750 A/B, and Humiseal thinner. (DUF 29, 30.) Juarez spent approximately 60% of his time inside the conformal coating room, which housed the machine. (DUF 31.) As part of Juarez's job, Juarez actually worked inside the machine to verify the thickness of the coatings sprayed on SpaceX's components. (DUF 32.)

Within two weeks of starting at SpaceX, while Juarez was programming the PVA 350, Juarez was exposed to the alleged toxic chemicals. (DUF 35.) Around August or September of 2012, Juarez began experiencing migraine headaches, dizziness, sinus symptoms, and difficulty walking. (DUF 36.) Starting in June 2012 to approximately May 2018, Juarez was hospitalized nine times and had at least twenty-one visits to urgent care and/or the emergency room for symptoms associated with the chemical exposure. (DUF 37.)

In January 2013, Juarez was diagnosed with a brain aneurysm and underwent brain surgery. (DUF 47.) As a result, Juarez missed approximately 33.6 weeks of work in 2013 and has not worked since May or June of 2014. (PSMF 48.) Juarez filed a workers' compensation action on September 24, 2014. (DUF 49.) On Juarez's

workers' compensation form, Juarez claimed his injury occurred on "COMPANY PREMISES; DUE TO REPETITIVE AND CONTINUOUS EXPOSURE TO ELECTRONIC PARTS CLEANING & LEAD SO." (DUF 49; PSMF 49.)

On February 3, 2015, Juarez told neurologist Dr. Isaac Regev that "almost from the beginning [Juarez] noted frequent headaches at work which he felt was associated with various chemicals." (DUF 38.) During this same visit, Dr. Regev recommended that Juarez be "seen by a toxicologist with the" material safety data sheet ("MSDS") "and working environment analysis." (DUF 56.) On March 3, 2015, Juarez emailed SpaceX's human resources department to obtain copies of the MSDS for: "1. Arathane two part mix. 2. Thinner 521. 3. 63/67 Eutectic solder wire. 4. Humiseal 1A33 conformal coating. 5. Isopropyl alcohol (IPA)." (DUF 57.) In March 2016, Juarez also made similar comments to psychologist Dr. Gayle K. Windman, which Dr. Windman documented: "A few months after he began working at SpaceX, Mr. Juarez developed symptoms of migraine headaches, dizziness, difficulty walking and sinus symptoms due to exposure to electronic materials such as tin and lead; chemical coatings such as Arathane and Humiseal; and cleaning substances such as thinners and isopropyl alcohol." (DUF 39.)

In Plaintiffs' initial complaint, Juarez alleged that he did not suspect "that the chemicals may have caused his injuries until March of 2015 when he, for the first time, received the MSDS of the chemicals." (DUF 61.) However, Plaintiff alleged in his First Amended Complaint that "[i]t was not until May of 2015, when Plaintiff Juarez saw the MSDS sheets from Space X . . . that he first suspected that the PVA 350 might have caused his injuries." (DUF 60.)

On February 28, 2017, Plaintiffs filed their initial complaint, which was subsequently removed. (DUF 78.)

### IV. LEGAL STANDARD

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a

matter of law." Fed. R. Civ. P. 56(a). Courts must view the facts and draw reasonable inferences in the light most favorable to the nonmoving party. *Scott v. Harris,* 550 U.S. 372, 378 (2007). A disputed fact is "material" where the resolution of that fact might affect the outcome of the suit under the governing law, and the dispute is "genuine" where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Conclusory or speculative testimony in affidavits is insufficient to raise genuine issues of fact and defeat summary judgment. *Thornhill's Publ'g Co. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979). Moreover, though the Court may not weigh conflicting evidence or make credibility determinations, there must be more than a mere scintilla of contradictory evidence to survive summary judgment. *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000).

Once the moving party satisfies its burden, the nonmoving party cannot simply rest on the pleadings or argue that any disagreement or "metaphysical doubt" about a material issue of fact precludes summary judgment. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Cal. Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987). Nor will uncorroborated allegations and "self-serving testimony" create a genuine issue of material fact. *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002). The court should grant summary judgment against a party who fails to demonstrate facts sufficient to establish an element essential to his case when that party will ultimately bear the burden of proof at trial. *See Celotex*, 477 U.S. at 322.

Pursuant to the Local Rules, parties moving for summary judgment must file a proposed "Statement of Uncontroverted Facts and Conclusions of Law" that should set out the material facts to which the moving party contends there is no genuine dispute. C.D. Cal. L.R. 56-1. A party opposing the motion must file a "Statement of Genuine Disputes" setting forth all material facts as to which it contends there exists a

genuine dispute. C.D. Cal. L.R. 56-2. "[T]he Court may assume that material facts as claimed and adequately supported by the moving party are admitted to exist without controversy except to the extent that such material facts are (a) included in the 'Statement of Genuine Disputes' and (b) controverted by declaration or other written evidence files in opposition to the motion." C.D. Cal. L.R. 56-3.

## V. DISCUSSION

Defendant argues that summary judgment should be entered in its favor because California's two-year statute of limitations bars Plaintiffs' claims. (MSJ 11–22.) Alternatively, Defendant moves for partial summary judgment on Juarez's strict products liability claims for failure to warn and design defect. (MSJ 22–25.) For the following reasons, the Court grants Defendant's motion for partial summary judgment on the strict products liability claim for failure to warn, and otherwise denies Defendant's motion for summary judgment on the remaining claims.

### A. Statute of Limitations

Defendant moves for summary judgment pursuant to California Code of Civil Procedure (C.C.P.) sections 340.8 (exposure to hazardous/toxic substances) and 335.1 (general liability for wrongful act or neglect). Under C.C.P. section 340.8, a plaintiff may commence a civil action for exposure to a hazardous material or toxic substance:

> [N]o later than either two years from the date of injury, or two years after the plaintiff becomes aware of, or reasonably should become aware of, (1) an injury, (2) the physical cause of the injury, and (3) sufficient facts to put a reasonable person on inquiry notice that the injury was caused or contributed by the wrongful act of another, whichever occurs later.

Cal. Civ. Proc. Code § 340.8. Under C.C.P. section 335.1, an action for "injury to . . . an individual caused by the wrongful act or neglect of another" must be brought within two years.

The accrual of the statute of limitations is subject to California's delayed discovery rule. *Rosas v. BASF Corp.*, 236 Cal. App. 4th 1378, 1389 (2015) (stating that "[a]n important exception to the general rule of accrual is the discovery rule, which postpones accrual of a cause of action until the plaintiff discovers, or has reason to discover, the cause of action") (internal quotation marks omitted). Although the identity of a defendant "is not an essential element of a products liability cause of action . . . a plaintiff's ignorance of wrongdoing involving a product's defect will usually delay accrual because such wrongdoing is essential to that cause of action." *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 813 (2005) (holding that "if a plaintiff's reasonable and diligent investigation discloses only one kind of wrongdoing when the injury was actually caused by tortious conduct of a wholly different sort, the discovery rule postpones accrual of the statute of limitations on the newly discovered claim"). Summary judgment is not warranted "when the facts are susceptible of more than one reasonable inference, or the undisputed facts do not support a finding . . . that a reasonable person would suspect that an injury was wrongfully caused." *Rosas*, 236 Cal. App. 4th at 1392.

Here, there are disputes of material fact as to whether Juarez acted reasonably and diligently in conducting his investigation in an attempt to discover the wrongful act causing his injury. Juarez started working at SpaceX in January 2012, and by August or September 2012, he began experiencing migraines, dizziness, sinus symptoms, and difficulty walking. (DUF 27, 36.) In January 2013, Juarez saw a doctor and was diagnosed with a brain aneurysm and had brain surgery the same month. (DUF 47.) As a result, Juarez missed over 30 weeks of work in 2013, and stopped working at SpaceX since May or June 2014. (DUF 48, 49.) On September 24, 2014, believing that the cause of his headaches and aneurysm were "due to repetitive and continuous exposure to electronic parts cleaning & lead so [sic]" on company premises, Juarez filed a workers' compensation claim. (DUF 49, PSMF 49.) During the course of Juarez's workers' compensation claim, on February 3, 2015, he

saw Dr. Regev, who prompted him to obtain the MSDS and to make an appointment with a toxicologist. (PSMF 106.) On March 3, 2015, Juarez emailed SpaceX's human resources department to obtain copies of the MSDS for "1. Arathane two part mix. 2. Thinner 521. 3. 63/67 Eutectic solder wire. 4. Humiseal 1A33 conformal coating. 5. Isopropyl alcohol (IPA)." (DUF 57.) Viewing the evidence in the light most favorable to the nonmoving party, this email suggests that the MSDS was either not available to Juarez or that he was not aware that the MSDS was readily available to him. Additionally, even assuming that the MSDS was available, there is a material dispute of fact as to whether Juarez would have known to review them prior to Dr. Regev's suggestion.

Additionally, Juarez's filing of his workers' compensation claim is not definitive proof that he was aware that the PVA 350 was the cause of his injuries. In *Nelson v. Indevus Pharms, Inc.*, the court reversed the grant of summary judgment after concluding that the "plaintiff's common and nonspecific symptoms did not establish, as a matter of law, that she should have investigated the possibility that she had been harmed by the diet drug." 142 Cal. App. 4th 1202, 1210–12 (2006). Here, prior to Juarez's visit to Dr. Regev, Juarez appeared to only have common and nonspecific symptoms such as migraines, dizziness, sinus issues, and difficulty walking. Although Juarez was aware that something at work was causing his injuries, he did not know the cause, and filing the workers' compensation claim was part of Juarez's investigative efforts.

Defendant argues that the filing of a workers' compensation claim is sufficient to start the accrual of the statute of limitations. (MSJ 19.) Defendant maintains this position is supported by the holding in *Rivas v. Safety-Kleen Corp.*, 98 Cal App. 3th 218 (2002). However, Defendant overstates the holding in *Rivas*. In *Rivas*, the plaintiff's doctors explicitly told the plaintiff to stay away from the solvent he was using at work, and it was this comment that should have triggered "a reasonable person's suspicion and lead to further investigation." *Id.* at 228. Here, Juarez's filing

of his workers' compensation claim did not indicate that he was even remotely aware that inhalation of chemicals such as Arathane and Humiseal caused his injuries. The workers' compensation claim form only indicates that the injury occurred on "company premises due to repetitive and continuous exposure to electronic parts cleaning & lead so." (DUF 49, PSMF 49.) It was through Juarez's filing of his workers' compensation claim and the ensuing doctor's visits that Juarez was made aware that these chemical exposures may have caused his injuries.

Accordingly, based on the record before the Court, there is a material dispute of fact regarding when Juarez reasonably should have become aware of the physical cause of his injury.

**B.      Strict Product Liability – Failure to Warn**

Defendant moves for partial summary judgment on Plaintiffs' strict product liability claim for failure to warn on the basis that warnings were provided with the machine and that Plaintiffs' injuries were not caused by the failure to warn because Plaintiffs did not read the warnings.

A manufacturer may be strictly liable for failing to warn consumers associated with the reasonably foreseeable use of the product even if the product was flawlessly manufactured and designed. *Carlin v. Superior Court*, 13 Cal. 4th 1104, 1112 (1996) (stating that "rules of strict liability require a plaintiff to prove only that the defendant did not adequately warn of a particular risk that was known or knowable . . . available at the time of manufacture and distribution"); *Karlsson v. Ford Motor Co.*, 140 Cal. App. 4th 1202, 1208 (2006). In the case of strict liability, "the reasonableness of the defendant's failure to warn is immaterial." *Carlin*, 13 Cal. 4th at 1112.

Central District of California Local Rule 7-9 states that opposing papers shall "contain a statement of all the reasons in opposition thereto and the points and authorities upon which the opposing party will rely." Here, in a blatant attempt to circumvent the page limitation for opposition papers, instead of opposing Defendant's summary judgment regarding the failure to warn, Plaintiffs provide the following:

"Plaintiffs' evidence supporting Plaintiffs' failure to warn claim is set forth in the declaration of Glen Stevick." Additionally, Plaintiffs violate this Court's standing order that "[e]vidence submitted in support of or in opposition to a motion for summary judgment . . . should not be attached to the memorandum of points and authorities." (Scheduling and Case Management Order 7–8, ECF No. 14.) If the page limit was insufficient, Plaintiffs could have filed a request for leave to exceed the page limit, which they did not do. Plaintiffs, effectively, did not set forth any evidence in their Opposition opposing summary judgment on this issue. Nevertheless, even after reviewing the declaration of Glen Stevick, the Court finds that there are no material disputes of fact to preclude partial summary judgment on this issue.

In support of its Motion for Summary Judgment, PVA argues that the warnings that came with the PVA 350 "explicitly warned users (1) never to bypass, disable or tamper with this feature and (2) that while the materials used in the machine could be hazardous, those materials came with MSDS sheets that specified known dangers and toxicity." (MSJ 22.) These facts are undisputed, and Plaintiffs only dispute these facts "to the extent that Defendant infers that Mr. Juarez saw the manual." (PSMF 13–16.) As such, the undisputed facts show that the warnings that came with the PVA manual appear to be adequate.

Additionally, as a separate reason for granting partial summary judgment on this issue, PVA established that there is no genuine dispute of material fact regarding the warning being the cause of Plaintiffs' injuries. In *Ramirez v. Plough, Inc.*, the court held that as a result of the plaintiff's failure to read and/or obtain a translation of a product labeling, "there is no conceivable causal connection between the representations or omissions that accompanied the product and plaintiff's injury." 6 Cal. 4th 539, 555–56 (1993). Here, Plaintiffs' only argument is that "the company inadequately trained Mr. Juarez on how to utilize the machine without providing a sufficient warning." (Opp'n to MSJ ("Opp'n") 20, ECF No. 63.) However, Defendant's training of Juarez is a separate issue from whether Juarez read the

warnings. It is undisputed that warnings were provided in the PVA 350's manual in at least an electronic format and that Juarez never read these warnings. As Juarez never read the warning labels, the adequacy of the warning labels is immaterial because Plaintiffs' injuries would have occurred even if Defendant issued adequate warnings. *See Mariscal v. Graco, Inc.*, 52 F. Supp. 3d 973, 989 (N.D. Cal. 2014) (stating "that a defendant is not liable to a plaintiff if the injury would have occurred even if the defendant had issued adequate warnings") (citing *Huitt v. S. Cal. Gas Co.*, 188 Cal. App. 4th 1586, 1604 (2014)) (internal quotation marks omitted).

Accordingly, partial summary judgment is granted on Plaintiffs' strict products liability failure to warn claim.

## C. Strict Product Liability – Design Defect

Defendant also moves for partial summary judgment on Plaintiffs' strict products liability design defect claim. Specifically, Defendant argues that partial summary judgment should be granted because "[Defendant] did not manufacture, sell, supply, or specify the Arathane and Humiseal materials" to be used with the PVA 350.

"[A] product may be found defective in design, so as to subject a manufacturer to strict liability for resulting injuries, under either of two alternative tests." *Barker v. Lull Engineering Co.*, 20 Cal. 3d 413, 432 (1978). First, under the "consumer expectations test," a product may be defective in design if the "product failed to perform as safely as an ordinary consumer would expect when used in an intended or reasonably foreseeable manner." *Id.* Second, and alternatively, under the "risk-benefit test," a product may be defective in design "if the plaintiff demonstrates that the product's design proximately caused his injury and the defendant fails to establish . . . the benefits of the challenged design outweigh the risk of danger inherent in such design." *Id.*

Defendant also attempts to argue that "[s]trict liability is prohibited even when it is 'foreseeable that the products will be used together,' unless such use is actually necessary." (MSJ 24 (citing *O'Neil v. Crane Co.*, 53 Cal. 4th 335, 361 (2012)).)

However, Defendant's citation is misleading as it omits the prefatory clause. *O'Neil* specifically held: "California law does not impose a *duty to warn* about dangers arising entirely from another manufacturer's product, even if it is foreseeable that the products will be used together." *O'Neil*, 53 Cal. 4th at 361 (emphasis added). Although Defendant may not have had a duty to warn about dangers arising from another manufacturer's product, Defendant may still be liable if Plaintiffs' injury results from a reasonably foreseeable use of the product or under the risk benefit test. *See Pooshs v. Phillip Morris USA, Inc.*, 904 F. Supp. 2d 1009, 1024 (N.D. Cal. 2012).

Here, there is a genuine dispute of material fact regarding whether the PVA 350 failed to perform as safely as an ordinary consumer would expect when used in an intended or reasonably foreseeable manner. Specifically, Plaintiffs have set forth evidence that Defendant was aware of the chemicals that were being used with the PVA 350, and perhaps even encouraged the use of certain chemicals, suggesting that the use of Arathane and Humiseal materials were reasonably foreseeable. (PSMF 30.) There is also a genuine dispute of material fact regarding whether the PVA 350's design proximately caused Plaintiffs' injuries, and Defendant has not set forth any facts regarding whether the benefits of the challenged design outweigh the risk of danger inherent in such design. Specifically, Plaintiffs have set forth evidence that Defendant trained Juarez to bypass certain safety mechanisms on the PVA 350, that in order to program the PVA 350, Juarez was trained by Defendant to have the door to the PVA 350 open so Juarez could see what area the PVA 350 was spraying, and the PVA 350 was designed in such a way that a mask could not be worn when observing the area that the PVA 350 was spraying. (PSMF 10.)[3] As Plaintiffs have made a prima facie showing that their injuries were proximately caused by the PVA 350's design, the burden shifts to Defendant to prove that the benefits of the challenged design outweigh the risk of danger inherent in such a design. *Perez v. VAS S.p.A*, 188

---

[3] This list is not exhaustive of the disputed facts in support of Plaintiffs' design defect claim.

Cal. App. 4th 658, 677–78 (2010). However, Defendants have not rebutted any of Plaintiffs' evidence regarding the PVA 350's alleged design defects.

Accordingly, Plaintiffs have presented sufficient evidence that a reasonable jury could conclude that the PVA 350's design was a substantial factor in causing Plaintiffs' injuries.

## VI. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendant's motion for partial summary on Plaintiff's strict products liability failure to warn claim and **DENIES** Defendant's motion for summary judgment on the remaining issues.

**IT IS SO ORDERED.**

December 27, 2018

　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　**OTIS D. WRIGHT, II
　　　　　　　　　　　　　　　　　　UNITED STATES DISTRICT JUDGE**